# EXHIBIT 16

I6t1gric

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    KATHRYN TOWNSEND GRIFFIN,
     HELEN McDONALD, THE ESTATE OF
4    CHERRIGALE TOWNSEND,

5                    Plaintiffs,

6           v.                          17 Civ. 5221 (RJS)

7    EDWARD CHRISTOPHER SHEERAN,
     personally known as Ed
8    Sheeran, ATLANTIC RECORDING
     CORPORATION, d/b/a Atlantic
9    Records, WARNER MUSIC GROUP
     CORPORATION, d/b/a Asylum
10   Records, SONY/ATV MUSIC
     PUBLISHING, LLC,
11
                 Defendants.           Conference
12
     ------------------------------x
13                                     New York, N.Y.
                                       June 29, 2018
14                                     10:08 a.m.

15   Before:

16                  HON. RICHARD J. SULLIVAN,

17                                         District Judge

18                        APPEARANCES

19   FRANK & RICE, P.A.
          Attorneys for Plaintiffs
20   BY:  PATRICK R. FRANK, ESQ. (Present Via Speakerphone)
          KEISHA D. RICE, ESQ. (Present Via Speakerphone)
21        KATHERINE L. VIKER, ESQ. (Present Via Speakerphone)

22   PRYOR CASHMAN LLP
          Attorneys for Defendants
23   BY:  DONALD S. ZAKARIN, ESQ.
          ILENE S. FARKAS, ESQ.
24        ANDREW M. GOLDSMITH, ESQ.

25

I6t1gric

1    and we provided your Honor with the law that's clear, that the

2    metes and bounds of a copyright are what's deposited, whether

3    it's a recording that was deposited or sheet music that was

4    deposited.  And it's not some interpreted expansion.  Copyright

5    protects that which you claim and you register with the

6    copyright office.  And what was registered here is sheet music.

7    So any embellishments, any changes, any bass line, anything

8    that Marvin Gaye added in the recording of that song is not

9    what's within the metes and bounds of their copyright.  That's

10   what they want it to be, but that's not what the law is, and

11   that's why they didn't cite any case law in their letter.

12          THE COURT:  Okay.  And Ms. Rice, I guess what's your

13   response to that?  What are you relying on to make this

14   argument that you've just articulated?

15          MS. RICE:  Your Honor, we're simply arguing that, you

16   know, the sound recording is certainly also copyrightable and

17   so there would be -- to the extent that it's something that has

18   been copyrighted and deposited as well, along with the sheet

19   music that we all have copies of, then that would be something

20   on which we would also be bringing an infringement, or entitled

21   to damages under infringement claim.  However --

22          THE COURT:  Whoa, whoa, whoa, whoa.

23          MS. RICE:  -- that's something that's kind of a little

24   bit above and beyond what we're really concentrating on, and I

25   think that a majority, at least of our argument, relies on the

I6t1gric

1    issues and similarities with the deposit copy.  We don't

2    necessarily need to go any further.  But we believe that we

3    would be able to --

4           THE COURT:  But I just want to be clear on the first

5    part of what you said.  You're saying that a sound recording is

6    copyrightable, which of course it is, but you're saying it's

7    infringement to sound like it -- not to copy it but to sound

8    like it.  That's your theory.

9           MS. RICE:  No, your Honor.  No, your Honor.  I think

10   to the extent that there are things within the deposit copy

11   that could be expressed, in the same way that they are

12   expressed by the original artist, I think in that respect --

13   and so I don't believe that it's necessarily an infringement

14   upon the sound recording.  We are arguing that in this

15   particular case, there's a difference between saying that

16   there's an infringement on the sound recording and saying that

17   there's an infringement on sound interpretation of the deposit

18   copy.  We are saying that there certainly is a sound

19   interpretation infringement of the copy.  However, you know, we

20   don't necessarily need to rely on that.  We believe that on the

21   deposit copy in and of itself, we have an ample analysis with

22   not only Mr. Sheeran's remarks and his own testimony, but also

23   with our expert analysis, that the deposit copy in and of

24   itself well represents the intentions of the plaintiffs.  So --

25          THE COURT:  Okay.

I6t1gric

1          MS. RICE:  I think those two things are a little bit

2     separated.  I think there's a difference between our argument

3     about the sound interpretation of the deposit copy and the

4     copyrightable sound recording.  And we're talking more about

5     the interpretation of the deposit copy, the sound

6     interpretation of the deposit copy.

7          THE COURT:  Okay.  I have no idea what you're talking

8     about, but I'm not going to ask you again.

9          I think clearly this is a motion that can be made.  It

10    is, generally speaking, an uphill climb on summary judgment to

11    win, to have a Court make a finding that there's no substantial

12    similarity, but it happens, and so I think we'll see.  I can't

13    say I'm that familiar with the songs.  But I don't think you

14    need to be a musicologist and I don't think you need to be that

15    familiar with the songs to be able to determine whether there's

16    substantial similarity or not.

17         So I guess I'll see what you have to say.  I'll see

18    what the experts have to say about similarity.  I don't much

19    care what they have to say about the law.  So be mindful of

20    that.  If some musicology professor is going to pop off and

21    tell me what's protectable and what's not protectable, he or

22    she loses all credibility at that point.  It makes me think

23    that they and their attorneys don't understand what is the

24    proper role of an expert.

25         But I think this is about sheet music, basically.  So

I6t1gric

1     Ms. Rice, I think if you're going to press this point that

2     you've twice tried to articulate and twice I've not understood

3     what the heck you're saying, I think you're going to need to do

4     that in your papers.

5                All right.  So let's talk about the schedule here.

6     Well, no.  I'm sorry.  There's another part of this motion now.

7     There's a motion for partial summary judgment with respect to

8     Ms. Griffin, right?  It's sort of an interesting issue of

9     whether or not a California probate court is entitled to sort

10    of preclusive effect, *res judicata*, in a federal copyright

11    action.  So do you want to be heard on that too?

12               MR. ZAKARIN:  Your Honor, in raising the issue, we're

13    mindful of the notion that it may be viewed as some sort of a

14    collateral attack, as it were, on a determination that was

15    made, that we were not a party to, and indeed, would not have

16    had at the time standing because there was no interest that we

17    had.  Indeed, "Thinking Out Loud" was not written for another

18    seven years thereafter.  But the copyright law does have a

19    specific section which addresses succession.

20               THE COURT:  Well, transfer of ownership.  You're

21    talking about 17 U.S. Code Section 201 --

22               MR. ZAKARIN:  Yes, your Honor.

23               THE COURT:  -- (d)?

24               MR. ZAKARIN:  Yes, and it refers to by intestate

25    succession and it refers to the laws of any particular state,