UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

                            *Plaintiffs*,

                 -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS,

                        *Defendants*.

ECF CASE

17-cv-5221 (RJS)

## RULE 56.1 STATEMENT

       Pursuant to Fed. R. Civ. P. 56.1 and Local Civil Rule 56.1, defendants Edward Christopher Sheeran p/k/a Ed Sheeran ("Sheeran"), Atlantic Recording Corporation d/b/a Atlantic Records ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV," together with Sheeran and Atlantic, the "Defendants" and each a "Defendant"), in support of their motion for summary judgment, respectfully submit this statement of material facts to which Defendants contend there exist no genuine issues to be tried:

**A.**     **Procedural Background**

       1.     Plaintiffs Kathryn Townsend Griffin ("Kathryn"), Helen McDonald ("McDonald") and the Estate of Cherrigale Townsend (the "Estate") commenced this action on July 11, 2017 by filing a Complaint (the "Complaint"). *See* Farkas Decl. at Exhibit 1.

       2.     This is the second action that Plaintiffs have commenced regarding the alleged infringement of *Let's Get It On*. *See* Dkt. No. 48.

3.      On August 9, 2016, Plaintiffs filed a complaint (the "First Complaint") against Defendants and certain foreign entities and individuals, alleging the same copyright infringement claim they allege in the Complaint (the "First Action").  *Id.*

4.      On February 2, 2017, the Court dismissed the First Complaint as against all defendants – with the exception of Atlantic and Warner Music Group Corporation d/b/a Asylum Records ("WMG") – because Plaintiffs failed to effect service of process in a timely fashion.  *Id.*

5.      On February 15, 2017, Plaintiffs voluntarily dismissed the First Complaint as against Atlantic and WMG.  *Id.*

6.      On August 3, 2017, Plaintiffs dismissed the Complaint filed in this action as against WMG.  *See* Dkt. No. 16.

7.      By stipulation dated September 15, 2017, Plaintiffs dismissed the third, fourth and fifth claims for relief alleged in the Complaint as against each of the Defendants.  *See* Dkt. No. 17.

8.      As such, the extant claims comprise:  (1) "Copyright Infringement" (the First Claim for Relief), (2) "Infringement of Copyright Claim for Statutory Damages" (the Second Claim for Relief), (3) "Demand for Accounting" (the Sixth Claim for Relief), and (4) "Preliminary and Permanent Injunction" (the Seventh Claim for Relief).  *Id.*[1]

9.      Defendants filed an Answer to the Complaint on September 18, 2017.  *See* Farkas Decl. at Exhibit 2.

10.     With the exception of three depositions that were rescheduled due to a snowstorm that affected the travel plans of Plaintiffs and their counsel, fact discovery closed on March 28, 2018.  *See* Dkt. No. 42.

---

[1] The latter two "Claims for Relief" are not really claims for relief but simply remedies available for copyright infringement, as is the Second Claim for Relief, which is really only an invocation of the availability of Statutory Damages as a remedy for an alleged infringement.

11. On December 8, 2017, Dr. Alexander Stewart ("Stewart") propounded an expert musicologist report on behalf of Plaintiffs (the "Stewart Report"). *See* Farkas Decl. at Exhibit 6.[2]

12. On January 12, 2018, Dr. Lawrence Ferrara ("Ferrara") propounded an expert musicologist report on behalf of Defendants (the "Ferrara Report"). *Id.* at Exhibits 3, 4 and 5.

13. Defendants deposed Stewart on May 30, 2018. *Id.* at Exhibit 7.

14. Plaintiffs waived their right to depose Ferrara. *Id.* ¶ 9 n.1.

15. Expert discovery closed on June 15, 2018. *See* Dkt. No. 32.

**B.**    ***Let's Get It On***

16. Plaintiffs purport to hold partial beneficial interests in the musical composition copyright of the composition *Let's Get It On* ("LGO"). *See* Complaint ¶ 18.

17. Assuming Plaintiffs were truly the legal heirs of Townsend, they have a 22.22% beneficial interest in the LGO composition, which derives solely from their alleged right to be paid a writer's share of royalties only (which equates to some 44.44% of 100% of the songwriter royalties attributable to LGO). *See* Ashby Decl. ¶ 7.[3]

18. Edward Benjamin Townsend ("Townsend") authored LGO in 1973. *See* Complaint ¶ 17; McDonald Tr. at 23:4-13.[4]

---

[2] Before Plaintiffs commenced this action, Stewart authored an earlier report, which is attached as Visual Exhibit H to the Ferrara Report.

[3] Plaintiffs are separately paid a share of the public performance income directly by their Performing Rights Organization (PRO).

[4] Excerpts of the McDonald Transcript ("McDonald Tr.") are annexed as Exhibit 10 to the Farkas Declaration.

19.     When he was staying at the house of his sister (Helen McDonald), Townsend created the music and lyrics for LGO while "he was sitting at the piano."  *See* McDonald Tr. at 23:19-24:10, 87:25-88:23.

20.     Upon authoring LGO, Townsend played the composition on piano and sang the lyrics for Helen.  *Id.*

21.     One day after creating the song, Townsend asked Marvin Gaye ("Gaye") if Gaye would agree to record the song; Gaye agreed to do so.  *Id.* at 24:19-25:11.

22.     Through a series of agreements, Townsend assigned away his interest in and to the copyright in LGO to Stone Diamond Music Co./Jobete Music Co., music publishing companies then owned by Berry Gordy and part of the Motown organization.  *See* Ashby Decl. ¶¶ 2-7.

23.     Townsend retained an interest in the right to receive songwriter royalties attributable to LGO.  *Id.*

24.     On information and belief, Townsend assigned to Gaye – or Gaye otherwise acquired – a right to receive one-third of the songwriter royalties attributable to LGO.  *Id.*; McDonald Tr. at 25:12-23.

25.     On information and belief, prior to his death, Townsend had the right to receive two-thirds of the songwriter royalties attributable to LGO.  *See* Ashby Decl. ¶ 6.

26.     Plaintiffs claim to have succeeded to Townsend's beneficial interest in the songwriter royalties attributable to LGO.  *See* Complaint ¶ 12.

27.     On or about July 17, 1973, music publishers Stone Diamond Music Corp. ("Stone Diamond") and Cherritown Music Co. ("Cherritown Music"), as copyright owners, filed an Application for Registration of a Claim to Copyright with the U.S. Copyright Office for the musical composition LGO (the "Copyright Application").  *See* Farkas Decl. at Exhibit 12.

28.     In support of the Copyright Application, Stone Diamond and Cherritown Music deposited sheet music with the U.S. Copyright Office for LGO (the "LGO Deposit Copy").  *Id.*

29.     The Copyright Application identifies Townsend as the sole author of LGO.  *Id.*

30.     The Copyright Application identifies February 14, 1973 as the date of publication of LGO.  *Id.*

31.     The Copyright Office ultimately registered LGO for copyright – as memorialized by the LGO Deposit Copy – under Registration No. EP 314589 (the "Copyright Registration"). *Id..*

32.     Gaye recorded what would become the first commercially released sound recording of *Let's Get It On* (the "LGO Recording") on March 22, 1973.  *See* Farkas Decl. at Exhibit 14.[5]

33.     Plaintiffs do not claim to have any right, title or interest of any kind in the sound recording copyright to the LGO Recording, nor do they claim to have any right, title or interest in the LGO Recording.  *See* Complaint ¶ 17.

34.     In discovery, Defendants requested that Plaintiffs provide "[a]ll documents concerning any copyright registrations or filings with the U.S. Copyright Office relating to LGO," and "[t]rue and correct copies of all published sheet music for LGO."  *See* Farkas Decl. at Exhibit 12.

35.     In response, Plaintiffs produced a single document:  the Copyright Registration for LGO that contained the sheet music deposited with the Copyright Office, *i.e.*, the LGO Deposit Copy.  *Id.*

---

[5] The album containing the LGO Recording – also titled *Let's Get It On* – contains the so-called "full" version of the LGO Recording.  Gaye also recorded a "single" version, shorter in length.

36.     The musical elements included in the LGO Deposit Copy include the composition's key, meter, harmony (*i.e.*, chord progressions), rhythm, melody, lyrics and song structure. *See* Ferrara Decl. ¶ 3.

37.     The LGO Deposit Copy does <u>not</u> include percussion/drums, bass-guitar, guitar, Marvin Gaye's vocal performance, horns, flute, piano, strings or any of the performance elements, such as the tempo in which to perform the composition, contained in the LGO Recording. *Id.* ¶ 4.

38.     Unlike the LGO Deposit Copy, the LGO Recording includes, among other things, tempo, percussion/drums, electric guitar, bass-guitar, piano, horns, flute, strings and Marvin Gaye's vocal performance. *Id.* ¶¶ 4, 15.

## C.     *Thinking Out Loud*

39.     On or about February 3, 2014, Sheeran and Amy Wadge ("Wadge") co-authored the musical composition titled *Thinking Out Loud* ("TOL") in Suffolk, England. *See* Sheeran Tr. at 62:12-20, 128:8-129:24; Wadge Decl. ¶¶ 3-7.[6]

40.     Sheeran testified that he did not copy LGO when authoring TOL, and that he and Wadge independently created TOL at his home. *See* Sheeran Tr. at 78:12-79:18.

41.     On February 5, 2014, Sheeran recorded what would become the commercially released version of TOL at Sticky Studios in Surrey, England. *Id.* at 128:8-129:24; *see also* Gosling Decl. ¶ 3.

42.     The commercially released recording of TOL includes, among other things, electric-guitar, bass-guitar, piano, organ, lyrics, vocals and percussion/drums. *See* Ferrara Decl. ¶ 4.

---

[6] Excerpts of the Sheeran Transcript ("Sheeran Tr.") are annexed as Exhibit 9 to the Farkas Declaration.

43.     Sheeran and Wadge did not compose the bass-guitar part in TOL, and they did not compose the drum part in TOL.  *See* Sheeran Tr. 128:8-130:23; Gosling Decl. ¶¶ 3-6.

**D.     Musical Comparison of the LGO Deposit Copy and TOL**

*Key & Meter*

44.     The LGO Deposit Copy is in the key of E-flat major and in 4/4 meter.  *See* Ferrara Decl. ¶ 5.

45.     TOL is in the key of D major and in 4/4 meter.  *Id.*

46.     4/4 meter is also termed "common time," it is a foundational musical building block and countless musical compositions are written in 4/4 meter (many of which predate LGO).  *Id.*

47.     Stewart testified at his deposition that he did not consider the key of the two works in performing his analysis.  *See* Stewart Tr. at 275:5-16.[7]

*Harmony*

48.     The LGO Deposit Copy features a I-iii-IV-V7 (or a 1-3-4-5) chord progression throughout most of the composition.  *See* Ferrara Decl. ¶¶ 6-8; Ferrara Report ¶¶ 14-29.[8]

49.     TOL features multiple, different chord progressions; some segments of the composition feature a chord progression that is similar, but not identical, to the chord progression used in LGO and reflected on the LGO Deposit Copy (and in the LGO Recording).  *Id.*

50.     Segments of TOL feature chord progressions that are substantially different from any chord progression in LGO; for example, the following chord progression occurs in the last two bars of the chorus sections in TOL: vi-V-IV-1/3  ii7-V-I.  *Id.*

---

[7] Excerpts of the Stewart Transcript ("Stewart Tr.") are annexed as Exhibit 7 to the Farkas Declaration.

[8] A "7" denotes the addition of a pitch that is the interval of a minor seventh above the root or name of the chord.  *Id.* ¶ 6 n.1; Ferrara Report ¶ 18 n. 9.

51.     In addition, TOL also features the following chord progressions, which are similar, but not identical, to the chord progression in LGO:

   a)     I5-I/3-IV-Vsus2

   b)     I5-I/3-IV5-V5

   c)     I-I/3-IV-Vsus4

   d)     I-I/3-IV-V

   e)     I-I/3-IV-V11

*Id.*

52.     The basic I-iii-IV-V chord progression used in LGO was commonplace prior to LGO.  *Id.*; *see also* Ferrara Report ¶¶ 19, 123-126; Stewart Tr. at 134:4-142:15.

53.     Ferrara identified at least thirteen songs that predate LGO that use the same chord progression used in LGO.  *See* Ferrara Report ¶¶ 19, 123-126.

54.     Of the thirteen artists who commercially released those thirteen songs, Townsend listened to at least four of them.  *See* McDonald Tr. at 20:16-23:3.

55.     The I-iii-IV-V chord progression also appears in at least two guitar method books.  *See* Ferrara Decl. ¶ 7; Ferrara Report at Visual Exhibits D and E.

56.     One such book noted that this chord progression is not original to LGO, but stated that LGO did not plagiarize prior songs using the same chord progression since the progression is so "common."  *See* Ferrara Report at Visual Exhibit E.

57.     Stewart, Plaintiffs' musicologist, admitted at his deposition that I-iii-IV-V is "a common progression," that "it's not original," "that other songs have this chord progression," and

that "[t]hese four chords have been used in other compositions prior to Let's Get It On."  *See* Stewart Tr. at 134:4-142:15.[9]

58.    Stewart also admitted that the claimed similarities in the chord progression, standing alone, are not indicative of copying.  *Id.*

59.    The harmonic rhythm in LGO is a four-bar progression, which features two chords in bar 1, one chord in bar 2, two chords in bar 3 and one chord in bar 4.  *See* Ferrara Decl. ¶ 8.

60.    The harmonic rhythm in TOL features a two-bar chord progression that generally features two chords per bar in which the second and fourth chords anticipate the third beat of their respective bars.  *Id.*

*Song Structure*

61.    Stewart testified that the LGO Deposit Copy has the following structure:  (1) verse (2) chorus (3) verse (4) verse (5) bridge (6) chorus/verse[10] (7) bridge, and (8) verse/outro.  *See* Stewart Tr. at 118:13-131:20.

62.    In the Stewart Report, Stewart opines that TOL has the following structure:  (1) verse A (2) verse B (3) bridge/pre-chorus (4) chorus (5) verse A2 (6) verse B2 (7) bridge/pre-chorus (8) chorus (9) interlude, and (10) chorus.  *See* Stewart Report at p. 2.

63.    Thus, objective differences exist between the structure of each work.  *See* Stewart Tr. at 118:13-131:20; Stewart Report p. 2; Ferrara Decl. ¶ 10.

---

[9] Stewart initially denied it was "common," but he later admitted that he had "no problem" with, and therefore agreed with, a sentence from an elementary guitar method book that described the chord progression as "common."  *See* Stewart Tr. 136:4-8 and 139:16-140:23.

[10] Stewart described the sixth section of the LGO Deposit Copy as "nebulous."  He could not resolve whether to identify it as a chorus or verse.

9

64.     In addition, countless songs in many different genres feature verses, choruses and bridges as these are generic structural building blocks.  *See* Ferrara Decl. ¶ 10.

*Lyrics*

65.     Stewart has admitted that "few important lyrical similarities exist" between the LGO Recording and TOL, and, as detailed below, the lyrics in the LGO Deposit Copy are substantially the same as the lyrics in the LGO Recording.  *See* Stewart Report pp. 12-13; *infra* ¶¶ 138-141.

66.     The Stewart Report does not identify any specific lyrical similarities.  *See* Stewart Report pp. 12-13.

67.     Stewart instead contends that both works contain themes of "sexual and erotic overtones" and that both works "are celebrations of love to a particular woman."  *Id.*

68.     The Stewart Report does not contain any further analysis of the lyrics.  *Id.*

69.     In fact, Townsend did not intend for the lyrics to LGO to have sexual or erotic themes; he actually intended the lyrics of LGO to express "the business of getting on with life" in the face of drug addiction.  *See* Farkas Decl. at Exhibit 14; Kathryn Tr. 113:7-114:16.[11]

70.     The lyrics of TOL address lasting romantic love.  *See* Ferrara Report at Visual Exhibit C.

*Vocal Melodies*

71.     The pitch sequences, melodic rhythms, and melodic phrase structures are objectively different in the melodies in the LGO Deposit Copy as compared to TOL.  *See* Ferrara Decl. ¶ 12.

_____

[11] Excerpts of the deposition transcript of plaintiff Kathryn Townsend Griffin ("Kathryn Tr.") are annexed as Exhibit 11 to the Farkas Declaration.

72.     Stewart did not provide an analysis of the melody of the LGO Deposit Copy.  *Id.*

73.     The overall vocal melodies in the LGO Deposit Copy are, for the most part, substantially the same as the overall vocal melodies in the LGO Recording.  *Id.*

74.     Stewart analyzes three specific melodies, Melodies A, B and C (defined below) in the LGO Recording.  *Id.*

75.     Melody B and Melody C are virtually identical in the LGO Deposit Copy and in Stewart's transcriptions of the LGO Recording.  *Id.*

76.     As for Melody A there are similarities and differences between the LGO Deposit Copy and the LGO Recording as transcribed by Stewart; for example, there are more pitches in the LGO Deposit Copy than in the LGO Recording, which makes Melody A in the LGO Deposit Copy even less similar to Melody A in TOL.  *Id.*

77.     Given the similarities in the vocal melodies in the LGO Deposit Copy and the LGO Recording, Defendants respectfully refer the Court to the analysis of the vocal melodies in the LGO Recording below.  *See* ¶¶ 93-137 *infra*.

### *The Two Works As A Whole*

78.     The LGO Deposit Copy and TOL both feature variants of the commonplace I-iii-IV-V chord progression (a chord progression that was commonplace prior to the LGO Deposit Copy); the key of each composition is different; no lyrical similarities exist, the vocal melodies and rhythms are objectively different; the song structures contain many differences and any structural similarity is generic; each composition embodies chord progressions that are significantly different to any chord progressions in the other composition; and 4/4 meter is "common time," a musical building block, and probably the most common meter used in popular music.  *See* Ferrara Decl. ¶¶ 13-14.

11

79.     Stewart conceded that the two works, as a whole, are not "identical" or "virtually identical" to one another.  *See* Stewart Tr. at 275:17-25.

E.     **Musical Comparison of the LGO Recording and TOL**[12]

*Key, Meter & Tempo*

80.     The LGO Recording is recorded in the key of E-flat major and in 4/4 meter.  *See* Ferrara Decl. ¶ 16.

81.     TOL is recorded in the key of D major and in 4/4 meter.  *Id.*

82.     The LGO Recording is recorded at 82 beats per minute; TOL is recorded at 79 beats per minute.  *Id.*

83.     Stewart testified at his deposition that he did not consider the keys or tempos (*i.e.*, the beats per minute) of the two recordings in performing his analysis.  *See* Stewart Tr. at 275:5-16.

*Harmony*

84.     The LGO Recording features a I-iii-IV-V7 (or a 1-3-4-5) chord progression throughout most of the recording.  *See* Ferrara Decl. ¶ 17.

85.     As detailed above, TOL features multiple chord progressions; while some segments of TOL feature a chord progression that is similar, but not identical, to the chord progression used in the LGO Recording (a chord progression that was commonplace and in usage prior to the

---

[12] The Stewart report only compares the LGO Recording with TOL and does not compare, as is required as a matter of law, the LGO Deposit Copy with TOL.  The entire analysis in this Section is therefore provided solely to show that even were one to compare TOL to the LGO Recording – which is contrary to applicable law as the metes and bounds of Plaintiffs' infringement claim is determined by reference solely to the LGO Deposit Copy – there is no similarity of protectible expression.  Although Ferrara correctly compared the actual copyrighted work allegedly infringed – the LGO Deposit Copy – with TOL, assuming, *arguendo,* that the Court believes a comparison of the LGO Recording and TOL is warranted, Ferrara also has compared the LGO Recording to TOL.

creation of LGO), other sections of TOL use an entirely different chord progression.  *See* ¶¶ 48-60 *supra*.

<u>*Song Structure*</u>

86.     Stewart opined in the Stewart Report that the "single" version of the LGO Recording (with a length of 4:02) has the following structure:  (1) verse (2) bridge (3) verse (4) short bridge, and (5) verse.  *See* Stewart Report p. 2.

87.     In regard to the "full" version of the LGO Recording (with a length of 4:51), Stewart opined that it has the following structure:  (1) verse (2) bridge (3) verse (4) bridge, and (5) verse.  *Id.*

88.     As detailed above, Stewart opines that TOL has the following structure:  (1) verse A (2) verse B (3) bridge/pre-chorus (4) chorus (5) verse A2 (6) verse B2 (7) bridge/pre-chorus (8) chorus (9) interlude, and (10) chorus.  *See* ¶¶ 61-64 *supra*.

89.     Thus, objective differences exist between the structure of each work.  *See* Stewart Report p. 2; Ferrara Decl. ¶¶ 9-10, 18.

90.     Countless songs in many genres feature verses, choruses and bridges, which are generic structural building blocks.  *See* Ferrara Decl. ¶¶ 9-10, 18.

<u>*The Use of An Occasional Blue Note*</u>

91.     In the Stewart Report, Stewart opines that the LGO Recording and TOL "occasionally" use a "blue" third note.  *See* Stewart Report p. 3.

92.     Stewart has admitted (and Ferrara agrees) that the occasional use of a "blue" third note was not original to LGO and in fact was commonplace prior to LGO.  *See* Stewart Tr. at 157:7-158:3; Ferrara Decl. ¶ 19.

*Vocal Melodies*

93.     Generally speaking, the vocal melodies in the LGO Recording contain many fully flatted third notes (notes that are fully a half-step lower than the third scale degree in a major key). *See* Ferrara Report ¶ 49.

94.     In contrast, the vocal melodies in TOL do not contain any fully flatted third notes. *Id.*

*Vocal Melody A*

95.     In Example 3 of the Stewart Report, Stewart transcribes and compares (a) the opening vocal melody of the LGO Recording and (b) the opening vocal melody of TOL ("Melody A").  *See* Stewart Report pp. 7-8.

96.     There are 9 pitches in Melody A of the LGO Recording and 11 pitches in Melody A of TOL.  *See* Ferrara Decl. ¶ 20; *see also* Ferrara Report ¶¶ 79-92.[13]

97.     Of the 11 pitches in TOL, as transcribed by Stewart, only 3 of the 11 pitches (less than 30%) in Melody A of TOL line up in the same order as the pitches in Melody A of the LGO Recording.  *Id.*

98.     Ferrara opines that the fact that only 3 pitches out of respective 9-pitch and 11-pitch melodies contained in the LGO Recording line up in the same order is insignificant and manifests fragmentary and minimal similarities, at best.  *Id.*

---

[13] Again, there are more pitches in Melody A in the LGO Deposit Copy than in the LGO Recording, which makes Melody A in the LGO Deposit even less similar to TOL.  In particular, there are 14 pitches in Melody A of the LGO Deposit Copy and only 3 (less than 22%) line up in the same order as the pitches in Melody A of TOL, even if one adopts Stewart's method (detailed below) of identifying in his charts, a "flatted 3" in LGO as the same pitch as a "3" in TOL.  *See* Ferrara Decl. ¶ 20 n.3.

99.     The third allegedly similar pitch in Melody A as identified in the Stewart Report results from Stewart omitting the difference between scale degree 3 in Melody A of TOL and scale degree (flatted) b3 in Melody A of the LGO Recording; in other words, the labeling by Stewart of a "3" rather than a "b3" is incorrect as these are two different notes, or pitches. *Id.*

100.    The Stewart Report then examines altered versions of Melody A; first, Stewart examines "eight" nonconsecutive pitches in Melody A from the LGO Recording, and then he compares them to the first eight pitches of Melody A in TOL. *Id.*

101.    In doing so, Stewart deletes the second scale degree "2" in Melody A of the LGO Recording. *Id.*

102.    Stewart has deleted the second scale degree "2" in the LGO Recording to manufacture a "3-2-1-2" order of pitches that does not exist in Melody A of the LGO Recording; this also contradicts Stewart's own transcription in Example 3 of the Stewart Report. *Id.*

103.    The "3-2-1-2" melody transcribed by Stewart is not the actual melody of Melody A as it appears in either the LGO Deposit Copy or the LGO Recording. *Id.*

104.    Stewart also continues to inaccurately transcribe the middle of the pitch sequence with a "3" when it should be a "b3." *Id.*

105.    The Stewart Report (on the top of Page 8) then creates another "version" of TOL (that does not exist in TOL) by deleting two more notes, or scale degrees (1 and 6) in Melody A of TOL. *Id.*

106.    Although Stewart claims that these deletions show similarities in "melodic contour," the notes deleted by Stewart (which highlight the differences between the two songs) are important in creating the actual melodic contour in TOL. *Id.*

107.    The deleted scale degree 6 (the first syllable of the last lyric "before" in Melody A) plays a significant role in the (different) melodic contour in TOL and deleting that note alters the melodic shape of this vocal melody.  *Id.*

108.    The aforementioned note, which Stewart deletes, occurs consistently in three out of the four iterations of Melody A in TOL.  *Id.*

109.    Even after making "deletions," only 4 of 9 pitches line up in the same order in Melody A of each recording; thus, more than 50% of the pitches are in a different order.  *Id.*

110.    The Stewart Report does not analyze the melodic rhythms in Melody A of each recording.  *See* Ferrara Decl. ¶ 21.

111.    The rhythmic durations of the pitches in Melody A of each recording are different:

a)    As transcribed by Stewart, bar 1 of Melody A of the LGO Recording consists of five eighth notes; in contrast, bar 1 of Melody A of TOL consists of two sixteenth notes, followed by three eighth notes (with a grace note preceding the third eighth note), followed by two sixteenth notes;

b)    As transcribed by Stewart, bar 2 of Melody A of the LGO Recording consists of a dotted eighth note (preceded by a grace note), followed by a sixteenth note tied to a sixteenth note (which equals an eighth note preceded by a grace note), followed by a dotted eighth note tied to an eighth note, followed by an eighth note; in contrast, bar 2 of Melody A of TOL consists of an eighth note, followed by two sixteenth notes, followed by a quarter note.

*See* Ferrara Report ¶¶ 88-91.

112.    Ferrara opines that any similarities between the pitches in Melody A of each recording are insignificant at best and, when combined with the significantly different melodic

rhythms to which these different pitches have been set, lack any meaningful musical similarities. *See* Ferrara Decl. ¶ 22; *see also* Ferrara Report at Audio Exhibit Track 4.

*Vocal Melody B*

113.    In Example 4 of the Stewart Report, Stewart transcribes and compares (a) the vocal melody at the end of verse 4 of the LGO Recording and (b) the vocal melody at the beginning of the chorus in TOL ("Melody B").  *See* Stewart Report p. 9.[14]

114.    Melody B is from very different parts of each song: the end of verse 4 of the LGO Recording, and the beginning of the chorus of TOL.  *See* Ferrara Decl. ¶ 23; *see also* Ferrara Report ¶¶ 93-104.

115.    As transcribed by Stewart, only 5 of 11 pitches in Melody B of each recording line up in the same order; thus, more than 50% of the pitches are different.  *Id.*

116.    One of the five "similar" notes is a grace note that Stewart transcribes at the beginning of Melody B of TOL, which makes Melody B in each recording appear more similar. *Id.*

117.    The aforementioned grace note was not included by Stewart in an earlier report he authored dated June 2015, it is not included in the published sheet music for TOL, and Ferrara does not believe it actually appears in TOL (consistent with the published sheet music for TOL). *Id.*[15]

---

[14] Melody B of the LGO Deposit Copy is virtually identical to Melody B in the LGO Recording. *See* Ferrara Decl. ¶ 12.

[15] In contrast to his transcription of Melody B, Stewart did not transcribe any grace notes in analyzing Melody A.  *Id.* ¶ 23.

118.     Although Stewart emphasizes scale degree 2 in Melody B (the second to last note), this pitch is a neighbor tone of extremely brief duration, which is the rationale Stewart used for omitting pitches (scale degree 1 and 6) in his analysis of Melody A.  *Id.*[16]

119.     The Stewart Report does not analyze the melodic rhythms in Melody B.  *See* Ferrara Decl. ¶ 24.

120.     The rhythmic durations of the pitches in Melody B are different:

a)     As transcribed by Stewart, bar 1 of Melody B of the LGO Recording consists of two pickup notes, followed by an eighth note, followed by a quarter note; in contrast bar 1 of Melody B of TOL does not contain any pick up notes;

b)     As transcribed by Stewart, bar 2 of Melody B of the LGO Recording consists of two sixteenth notes, followed by an eighth note tied to a sixteenth note, followed by an eighth note, followed by a sixteenth note tied to an eighth note, followed by two eighth notes, followed by a sixteenth note, followed by a sixteenth note tied to a quarter note; in contrast, bar 2 of Melody B of TOL consists of an eighth note (preceded by a miniature grace note), followed by a sixteenth note, followed by a triplet, followed by four sixteenth notes, followed by an eighth note;

c)     Melody B of the LGO Recording ends with a syncopated note on the final sixteenth note of beat 4; in contrast, Melody B of TOL ends on the downbeat, beat 1, of the next bar.

*Id.*; *see also* Ferrara Report ¶¶ 99-101.

121.     Stewart opines that "variants" of Melody B can be heard elsewhere in the LGO Recording at 0:17 and at 3:38.  *See* Stewart Report p. 9.

---

[16] Paragraph 97 of the Ferrara Report discusses this contradiction more fully.

122.    These "variants" actually have little in common with Melody B of the LGO Recording as detailed more fully at Paragraphs 103-104 of the Ferrara Report.  *See* Ferrara Decl. ¶ 24; Ferrara Report ¶¶ 103-104.

123.    Ferrara opines that any similarities between the pitches in Melody B are insignificant at best and, when combined with the significantly different melodic rhythms to which these different pitches have been set, lack meaningful musical similarities.  *See* Ferrara Decl. ¶ 25; Ferrara Report at Audio Exhibit Track 5.

*Vocal Melody C*

124.    In Example 5 of the Stewart Report, Stewart transcribes and compares (a) the vocal melody at the beginning of verse 1 in the LGO Recording and (b) the vocal and guitar melodies at the interlude of TOL ("Melody C").  *See* Stewart Report pp. 10-11.[17]

125.    Melody C is from very different parts of each song:  verse 1 of the LGO Recording and the interlude of TOL.  *See* Ferrara Decl. ¶¶ 26-27; *see also* Ferrara Report ¶¶ 105-117.

126.    Stewart opines that Melody C in each recording "consists of repeated notes on a descending scale."  *See* Stewart Report pp. 10-11.

127.    Stewart has admitted that repeating notes on a descending scale is not original to the LGO Recording.  *See* Stewart Tr. at 279:4-15; *see also* Ferrara Report Decl. ¶ 26.

128.    As transcribed by Stewart, only 6 of 14 pitches in Melody C of each recording line up in the same order.  *See* Ferrara Decl. ¶¶ 26-27; *see also* Ferrara Report ¶¶ 105-117.

129.    The first 12 of 13 notes in Melody C of TOL are repeated notes in a stepwise descending D major scale, a basic musical building block.  *Id.*

---

[17] Melody C of the LGO Deposit Copy is virtually identical to Melody C in the LGO Recording. *See* Ferrara Decl. ¶ 12.

130.    In contrast, Melody C of the LGO Recording does not descend consistently on the D major scale. *Id.*

131.    As transcribed by Stewart on page 10 of the Stewart Report in regard to the vocal melodies in Melody C, the melody of the LGO Recording starts with two iterations of scale degree 8 (not three as in TOL), followed by two iterations of scale degree 7 (not three as in TOL), then changes direction and moves back up to scale degree 8, and then descends in an order distinct from TOL. *Id.*

132.    The first scale degree "5" followed by scale degree "3" in Melody C of each recording is different – in the LGO Recording "5" to "3" is a leap up by a sixth whereas in TOL the "5" to "3" is a leap down by a third, resulting in distinct melodies and distinct musical expression. *Id.*[18]

133.    As charted by Stewart on the bottom of page 10 of the Stewart Report in regard to the guitar-part in Melody C of TOL and the vocal melody in Melody C of the LGO Recording, only 7 of 14 pitches line up in the same order.  *Id.*

134.    The similarities alluded to in the preceding Paragraph result from the fact that the guitar-part in Melody C of TOL descends down a D major scale, which is a basic musical building block. *Id.*

135.    The Stewart Report does not analyze the melodic rhythms in Melody C. *See* Ferrara Decl. ¶ 28.

136.    The rhythmic durations of the pitches in Melody C are different:

---

[18] The Stewart Report ignores this difference.

a)      As transcribed by Stewart, the first 11 of 13 notes in the vocal melody of Melody C of TOL are triplets; in contrast, there are no triplets in Melody C of the LGO Recording;

b)      As transcribed by Stewart, the first 12 of 14 notes in the guitar-part of Melody C of TOL are triplets; in contrast, there are no triplets in Melody C of the LGO Recording. *Id.*; Ferrara Report ¶¶ 113-116.

137.    Ferrara opines that any similarities between the pitches in Melody C are insignificant at best and, when combined with the significantly different melodic rhythms to which these different pitches have been set, lack meaningful musical similarities.  *See* Ferrara Decl. ¶ 29; Ferrara Report at Audio Exhibit Track 6.

*Lyrics*

138.    Apart from the two exceptions detailed below, the lyrics of the LGO Recording are substantially the same as the lyrics in the LGO Deposit Copy with a few deviations in terms of adding or omitting certain words such as "ooh" "oh" and "whoa."  *See* Farkas Decl. at Exhibit 13; Ferrara Report at Audio Exhibit Track 3.

139.    The "full" version of the LGO Recording contains the following lyrics, not present in the LGO Deposit Copy:

a)      Starting at approximately 3:06 and ending at approximately 3:40:  "I know you know what I been dreamin' of, don't you baby? / My whole body makes that feelin' of love, I'm happy / I ain't gonna worry, no I ain't gonna push / I won't push you baby, woo."

b)      Starting at approximately 4:32 through the conclusion of the recording:  "Oh dear I, baby / Nothing wrong with love / If you want to love me just let yourself go / Oh baby, let's get it on."

*Id.*

21

140. Stewart has admitted that "few important lyrical similarities exist" between the LGO Recording and TOL and states that "both ballads are celebrations of love to a particular woman. The main difference would be, then that the attraction in TOL seems to have been consummated while the singer in [LGO] is still yearning for fulfillment." *See* Stewart Report p. 12-13.

141. The Stewart Report does not identify any specific lyrical similarities other than at the abstract level of a theme of love. *Id.*

142. The Stewart Report does not contain any further analysis of the lyrics. *Id.*

*Bass-Lines*[19]

143. In the first 24 seconds of TOL, there is no bass guitar, there is only electric guitar; the lowest notes of the electric guitar being played for the first 24 seconds can be considered the "bass-line" of the song for the first 24 seconds of TOL (the "TOL Opening Bass Line"). *See* Ferrara Decl. ¶¶ 32-33.

144. In the Stewart Report, Stewart only transcribes the lowest notes of the electric guitar for the first 24 seconds of TOL; he does not transcribe the full guitar part that appears during the first 24 seconds of TOL. *Id.*; Ferrara Report ¶ 51.

145. The guitar part of the first 24 seconds of TOL has many differences from the bass line of the LGO Recording. *See* Ferrara Decl. ¶¶ 40-45.

146. The bass-guitar part in TOL starts at approximately 24 seconds and plays through the song's conclusion (the "TOL Bass Line"). *Id.* ¶ 33.[20]

[19] The bass line is not contained in the LGO Deposit Copy, only in the LGO Recording.

[20] Stewart testified at his deposition that he did not hear a bass-guitar in TOL and that the TOL Bass Line is played by keyboard. *See* Stewart Tr. at 173:4-174:8. In fact, the TOL Bass Line is played by an actual bass-guitar; it is not programmed by a computer or keyboard. *See* Gosling

147.    Stewart does not transcribe the TOL Bass Line in the Stewart Report.  *Id.*

148.    The TOL Bass Line differs from the TOL Opening Bass Line.  *See* Ferrara Decl. ¶¶ 34-39.

149.    The TOL Bass Line also differs from the bass-guitar part in the LGO Recording: the TOL Bass Line ascends the interval of a major third, while the bass-guitar part in the LGO Recording descends downward the interval of a sixth.  *See* Ferrara Decl. ¶¶ 34-39; Ferrara Report ¶¶ 53-63, 146-160.[21]

150.    During expert discovery, pursuant to requests made at Stewart's deposition, Stewart provided his full transcription of TOL; this transcription includes a full transcription of the bass-line to TOL.  *See* Farkas Decl. at Exhibit 8.[22]

151.    Stewart's transcription indicates that the bass-line for TOL <u>is</u> the bass-guitar part (*i.e.*, the TOL Bass Line), and <u>not</u> the lowest notes played on the electric guitar (*i.e.*, the TOL Opening Bass Line).  *Id.*; *see also* Ferrara Decl. ¶ 39.

152.    At his deposition, Stewart testified that TOL simultaneously features two distinct bass-lines from 24 seconds until the song's conclusion (*i.e.*, both the TOL Bass Line and the TOL Opening Bass Line).  *See* Stewart Tr. at 191:15-197:13.

153.    At Page 13 of the Stewart Report, Stewart opines regarding the supposed similarities between the bass-guitar part in the LGO Recording and the TOL Opening Bass Line

---

Decl. ¶¶ 3-6.  In any event, from a musicological perspective the TOL Bass Line, whether played by bass-guitar or a keyboard programmed to simulate a bass line, is a bass-line.  *See* Ferrara Decl. ¶ 32 n.6.

[21] The LGO Deposit Copy is transcribed in treble clef, and it does not include a bass-guitar part or a bass clef transcription.

[22] The bass-line is identified by the bass-clef symbol in Stewart's transcription; it begins on the second page of Stewart's transcription, in the third full-line of transcriptions.

(*i.e.*, the lowest notes played on the guitar during the first 24 seconds of TOL). *See* Stewart Report p. 13.

154. Specifically, he presents five "characteristics" that he finds in common: (1) 1-3-4-5 sequence, (2) two-measures, (3) descending sixth, (4) anticipation of 3 and 5, and (5) syncopation. *Id.*

155. *First*, the actual bass-line of the LGO Recording, as transcribed by Stewart, is 1-3-3-4-5-5-5-6, not 1-3-4-5; the TOL Opening Bass Line, as transcribed by Stewart, is 1-3-4-5-5. *See* Ferrara Decl. ¶ 41; Ferrara Report ¶¶ 60-63, 146-152.

156. The Stewart Report thus omits pitches, omits differences in the actual order of the pitches and does not provide an analysis of the full order of the pitches and the melodic rhythms to which those pitches are set; instead, Stewart labels differences in the order of pitches and in the melodic rhythms as "slight embellishments" or "fills" and selectively does not consider them. *Id.*

157. *Second*, countless songs have bass-lines that consist of two measures. *See* Ferrara Decl. ¶ 42.

158. *Third*, the descending sixth is never present in the TOL Bass Line played by the bass guitar, which comprises the bass-line of TOL from 24 seconds until the song's conclusion at 4:42 (*i.e.*, approximately 91% of TOL features a bass-line that does not include a descending sixth). *See* Ferrara Decl. ¶ 43; Ferrara Report ¶¶ 60-63, 146-152.

159. *Fourth*, the "anticipation of 3 and 5" causes, and functionally, is the "syncopation" in the bass-lines, which renders the fourth and fifth characteristics redundant. *See* Ferrara Decl. ¶ 44; Ferrara Report ¶¶ 60-63, 146-152.

160. As the Ferrara Report confirms, the "characteristics" in common between the bass-guitar part of the LGO Recording and the TOL Opening Bass Line in the lowest notes in the guitar

part were also commonplace prior to LGO.  *See* Ferrara Report ¶¶ 153-160; *see also* Ferrara Decl.
45.

161.    In regard to the actual bass-guitar parts in each recording, Examples 2 and 3 of the
Ferrara Report include a comparative transcription of representative portions of each.  *See* Ferrara
Report ¶¶ 53-59.

162.    The transcriptions in Examples 2 and 3 of the Ferrara Report confirm that the
melodic contours of the bass-guitar parts in each recording are distinct:

a)    Bar 1 of the LGO Recording leaps downward; bar 1 of TOL leaps upward;

b)    Bar 1 of the LGO Recording includes the interval of a sixth; bar 1 of TOL
does not include the interval of a sixth;

c)    Bar 1 of TOL includes the interval of a third; bar 1 of the LGO Recording
does not include the interval of a third;

d)    Bar 2 of the LGO Recording moves upward; bar 2 of TOL contains a
combination of upward and downward movements;

e)    Bar 2 of the LGO Recording consists of stepwise intervals; bar 2 of TOL
includes a downward leap to scale degree 7;

f)    Bar 3 of the LGO Recording leaps downward; bar 3 of TOL leaps upward;

g)    Bar 3 of the LGO Recording includes the interval of a sixth; bar 3 of TOL
does not include the interval of a sixth;

h)    Bar 3 of TOL includes the interval of a third; bar 3 of the LGO Recording
does not include the interval of a third;

i)    Bar 4 of the LGO Recording includes the upward leap of a third; bar 4 of
TOL does not include the upward leap of a third; and

j)      Bar 4 of TOL includes a downward leap down to scale degree 7; bar 4 of the LGO Recording does not include a downward leap down to scale degree 7.

*Id.*

163.    The transcriptions in Examples 2 and 3 also confirm that the melodic rhythms of the bass-guitar parts in each recording are distinct:

a)      The rhythmic durations of two of the three notes in bar 1 are different;

b)      The rhythmic durations of three of the five notes in bar 2 are different;

c)      Bar 2 of the LGO Recording includes two sixteenth notes; bar 2 of TOL does not contain sixteenth notes;

d)      The rhythmic durations of two of the three notes in bar 3 are different;

e)      The rhythmic durations of four of the seven notes in bar 4 are different; and

f)      Bar 4 of the LGO Recording includes four sixteenth notes; bar 4 of TOL does not contain sixteenth notes.

*Id.*

### *The Drums*[23]

164.    The drums in TOL commence at approximately 24 seconds into the recording, along with the bass-guitar.  *See* Ferrara Report at Audio Exhibit Track 1.

165.    The drums in the LGO Recording commence at approximately 4 seconds into the recording.  *Id.* at Audio Exhibit Track 3.

166.    Stewart claims that similarities exist between the drum parts in the LGO Recording and TOL because each drum part features:  (1) the use of eighth-notes on the hi-hat cymbals; (2)

---

[23] The Drums are not contained in the LGO Deposit Copy, only the LGO Recording.

single snare drum hits on the backbeats (*i.e.*, beats 2 and 4); and (3) kick drum hits on beat 1 and on two "off-beats."  *See* Stewart Report p. 6.

167.    The use of eighth-notes on the hi-hat cymbals was commonplace prior to LGO in numerous genres of music.  *See* Ferrara Decl. ¶ 47; Ferrara Report ¶ 70; Stewart Tr. at 243:7-244:2.

168.    Snare drum notes on the backbeats (beats 2 and 4) were commonplace prior to the LGO Recording in numerous genres of music.  *See* Ferrara Decl. ¶ 47; Ferrara Report ¶ 70; Stewart Tr. at 245:9-22.

169.    Kick drum notes on beat 1 and on the off-beats between beats 2 and 3 and beats 3 and 4 were commonplace prior to LGO in numerous genres of music.  *See* Ferrara Decl. ¶ 47; Ferrara Report ¶ 70.

170.    The drum part, as a whole, was commonplace prior to LGO.  *See* Ferrara Decl. ¶ 47; Stewart Tr. at 246:4-22.

171.    Stewart admitted at his deposition that the claimed similarities in the drum patterns, standing alone, are not indicative of copying.  *See* Stewart Tr. at 258:20-259:9.

172.    Despite his testimony that he did not consider tempo significant to his analysis, Stewart admitted at his deposition that he relied on the tempo of each recording (*i.e.*, the number of beats per minute) in opining that the drum parts possess similarities.  *Id.* at 255:20-256:7.[24]

173.    As transcribed by Stewart, the drum parts also contain several differences:

a)    There is a hi-hat cymbal note on the second half of beat 1 in bar 1 of TOL, but there is no corresponding hi-hat cymbal note in the LGO Recording;

---

[24] As detailed in the accompanying memorandum of law, tempo is an unprotectible musical building block.

b)      There is a kick drum note on beat 4 in bar 1 of the LGO Recording, but there is no corresponding kick drum note in TOL;

c)      There is a kick drum note on beat 4 in bar 2 in the LGO Recording, but there is no corresponding kick drum note in TOL;

d)      There is only one syncopation in the kick drum in each bar of the LGO Recording, but there are two syncopations in the kick drum in each bar of TOL;

e)      The kick drum note on the second half of beat 3 in TOL is isolated and disrupts the basic rhythm whereas the kick drum note on the second half of beat 3 in the LGO Recording is not isolated, but instead leads to an additional kick drum note on beat 4, which is not present in TOL.

*See* Stewart Report p. 7; Ferrara Decl. ¶ 47; Ferrara Report 67-69.

   _The Two Works As A Whole_

174.    Stewart admitted at his deposition that the two works, as a whole, are not "identical" or "virtually identical" to one another.  *See* Stewart Tr. 275:17-25.

175.    Both recordings feature variants of the commonplace I-iii-IV-V chord progression and the chord progressions are not identical in the LGO Recording and TOL; there is an objectively insignificant similarity between the bass guitar line in the LGO Recording and the lowest notes in the guitar during the first 24 seconds of TOL (the two parts are not identical in the two recordings and the elements were commonplace prior to the LGO Recording); the bass line in the bass-guitar in the remaining 91% of TOL has significant differences to the bass line in the LGO recording; the similarities in the drum patterns which are not identical, contain several differences, and were in use in songs prior to the LGO Recording and also found in student method books; the key of each recording is different, no lyrical similarities exist, the vocal melodies and rhythms are

objectively different, the song structures contain many differences and any structural similarity is generic; each work embodies additional chord progressions that are significantly different to the chord progressions in the other; and 4/4 meter is "common time," a musical building block, and probably the most common meter used in popular music.  *See* Ferrara Decl. ¶¶ 48-49.

176.    The LGO Recording is characterized by optimistic, positive feelings and tones, and it is a "beguiling anthem of sexual seduction" that repeatedly encourages the listener to "get it on." *See* Ferrara Report at Audio Exhibit Track 3; <https://slate.me/2mtz90Y>, last accessed July 27, 2018.

177.    TOL is characterized by somber and often melancholic emotions and tones; it is a song about lasting romantic love.  *See* Ferrara Report at Audio Exhibit Track 1.

**F.    Kathryn Townsend Griffin's Standing**

178.    Kathryn claims to be the biological daughter and an intestate heir of Townsend. *See* Kathryn Tr. at 68:22-24; Farkas Decl. at Exhibit 15.

179.    While Kathryn stated at her deposition that she could provide a copy of her birth certificate, no copy of her birth certificate has been provided despite Defendants' requests for a copy.  *See* Kathryn Tr. at 70:24-72:9; Farkas Decl. ¶ 13 n.2.

180.    Kathryn was adopted shortly after her birth by Shirley and Ernest Griffin.  *See* Kathryn Tr. at 36:24-37:14, 41:24-42:9, 70:24-72:4, 81:12-82:25.

181.    Townsend had two biological sons with Cherrigale Townsend: Edward David Townsend ("David") and Clef Michael Townsend ("Clef").  *See* McDonald Tr. at 38:23-40:12.

182.    Townsend died intestate in California in 2003.  *See* McDonald Tr. at 38:23-40:12, 51:25-52:6; Farkas Decl. at Exhibit 15.

183. David died intestate in California in or around 2005. *See* McDonald Tr. at 38:23-40:12; Farkas Decl. at Exhibit 15.

184. Clef died in or around 2017. *See* McDonald Tr. at 38:23-39:18.

185. Before his death, in or around June 2004, Clef assigned whatever interest he had in LGO to Structured Asset Sales, LLC, a company owned by David Pullman ("Pullman"). *Id.* at 72:21-24; *see also McDonald v. Structured Asset Sales, LLC*, 154 Cal. App. 4th 1068 (Cal. 2007).[25]

186. McDonald is Townsend's sister. *See* McDonald Tr. at 16:21-24.

187. After Townsend died, Kathryn and the Estate of David each purported to assign to McDonald 3 ⅓ % of Townsend's share of the songwriter royalties attributable to LGO. *Id.* at 30:21-32:7, 72:21-76:7.

188. Cherrigale was the sole intestate heir of David and succeeded to his interest in Townsend's estate. *Id.* at 76:11-18; Farkas Decl. at Exhibit 15.

189. Cherrigale died in Tennessee in 2017, with a Last Will and Testament. *See* McDonald Tr. at 49:19-21.

190. The terms of Cherrigale's Last Will and Testament provide that her interest in Townsend's estate shall pass to McDonald. *Id.* at 76:22-78:6.

191. On information and belief, the Estate of Cherrigale has not been settled. *Id.*

192. Upon Townsend's death, proceedings were held in California probate court to dispose of his assets in accordance with the laws of California intestacy. *See* Farkas Decl. at Exhibit 15.

---

[25] McDonald and Kathryn harbor ill-will for Pullman and believe that Pullman "stole" Clef's rights in Townsend's catalog. *See* McDonald Tr. at 101:23-102:25; Kathryn Tr. at 152:15-153:10.

193.    McDonald initially served as the "Personal Representative" of Townsend's estate in the probate proceedings.  *Id.*

194.    In her capacity as "Personal Representative," McDonald filed a Notice of Petition To Administer Estate (the "Petition") dated November 20, 2003.  *Id.*

195.    McDonald executed the Petition (a pre-printed form that contains a series of items to "check off" or leave blank) and declared, under penalty of perjury, that the Petition contained "true and correct" information.  *Id.*

196.    The Petition identifies Kathryn as an adult daughter of Townsend.  *Id.*

197.    The box that would have identified Kathryn as having been "adopted by a third party" was left blank.  *Id.*

198.    McDonald submitted at least two sworn declarations in the probate proceedings in which she swore that Kathryn was a "natural" child of Townsend and an "heir" of Townsend, without mentioning that Kathryn had been adopted by another family.  *Id.*

199.    Kathryn also submitted numerous sworn declarations in which she averred that she was the daughter of Townsend without mentioning her adoption by another family.  *Id.*

200.    The sole reference in the record of the probate court to any adoption is in an invoice attached to a fee application of the attorney for McDonald.  One line-item in the invoices states: "Lengthy telephone call with Kathy Griffin regarding her paternity and proof thereof and various elements of her background including who her mother might be and the circumstances of her adoption and advice to her regarding advice in this regard."  *Id.*

201.    McDonald testified that she has no reason to believe that the California probate court was made aware of Kathryn's adoption.  *See* McDonald Tr. at 70:14-71:9.

202.   On September 25, 2008, the California probate court granted an "ex parte application for approval of schedule of distribution" regarding Townsend's estate, through which it decreed that "Kathryn Griffin Townsend" was entitled, on a prospective basis, to 30% of the royalty income derived from Townsend's "Music Catalog" – *i.e.*, one-third of the whole minus the 3 ⅓ % she already had purported to assign to McDonald.  *See* Farkas Decl. at Exhibit 15.

203.   Kathryn's legal name is not now, and has never been, "Townsend."  *See* Kathryn Tr. at 192:14-194:6.

204.   In this lawsuit, Kathryn has identified herself as Kathryn Townsend Griffin; the probate order of the California probate court identifies Kathryn as "Kathryn Griffin Townsend." *See* Dkt. No. 1; Farkas Decl. at Exhibit 15.

Dated: New York, New York
       July 27, 2018

                                        PRYOR CASHMAN LLP

                                        By:*/s/ Ilene S. Farkas*
                                            Donald S. Zakarin
                                            dzakarin@pryorcashman.com
                                            Ilene S. Farkas
                                            ifarkas@pryorcashman.com
                                            Andrew M. Goldsmith
                                            agoldsmith@pryorcashman.com
                                        7 Times Square
                                        New York, New York 10036-6569
                                        Telephone:  (212) 421-4100

                                        *Attorneys for Defendants*