UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

         *Plaintiffs*,

      -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

         *Defendants*.

ECF CASE

17-cv-5221 (RJS)


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**


PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569
(212) 421-4100

*Attorneys for Defendants
Edward Christopher Sheeran,
Atlantic Recording Corporation
and Sony/ATV Music Publishing LLC*


*Of Counsel:*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 5

ARGUMENT .................................................................................................................. 5

   I     THE COPYRIGHT INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW ........ 5

      A.  Legal Standard .................................................................................... 5

      B.  The LGO Deposit Copy Defines The Scope of Copyright Protection ....................... 9

      C.  Actionable Similarities Do Not Exist
          Between the LGO Deposit Copy and TOL ............................................... 12

          1.  The Chord Progression Is Not Protectible As A Matter of Law ..................... 12

          2.  The Remaining Elements .................................................................... 15

          3.  The Total Concept And Overall Feel Of Each Composition ......................... 18

      D.  Even If The Court Were To Consider Elements In The LGO
          Recording, As a Matter Of Law, There Is No Infringement ....................... 19

          1.  The Drum Pattern Is Not Protectible As A Matter of Law ........................... 19

          2.  The Remaining Elements .................................................................... 20

             a.  Structure ............................................................................. 20

             b.  Lyrics ................................................................................. 21

             c.  Melody ............................................................................... 21

             d.  Bass-Lines ........................................................................... 22

          3.  The Total Concept And Overall Feel Of Each Recording ........................... 24

   II.    KATHRYN TOWNSEND GRIFFIN LACKS STANDING ........................................... 27

CONCLUSION ............................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                      <u>PAGE(s)</u>

*ABKCO Music, Inc. v. Lavere,*
    217 F.3d 684 (9th Cir. 2000) ...................................................................... 10

*Allen v. Scholastic Inc.,*
    739 F. Supp. 2d 642 (S.D.N.Y. 2011)......................................................... 8

*Batiste v. Najm,*
    28 F. Supp. 3d 595 (E.D. La. 2014)............................................................ 13

*Beaudin v. Ben & Jerry's Homemade, Inc.,*
    95 F.3d 1 (2d Cir. 1996)........................................................................ 7, 26

*Boisson v. Banian, Ltd.,*
    273 F.3d 262 (2d Cir. 2001).................................................................... 6, 7

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
    982 F.2d 693 (2d Cir. 1992)....................................................................... 8

*Consolidated Rock Products Co. v. Higgins,*
    54 Cal. App. 2d 779 (1942) ..................................................................... 29

*Dolman v. Agee,*
    157 F.3d 708 (9th Cir. 1998) ...................................................................... 9

*Edwards v. Raymond,*
    22 F. Supp. 3d 293 (S.D.N.Y. 2014)......................................................... 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991).................................................................................. 14

*Francescatti v. Germanotta,*
    No. 11-cv-5270 (MEA), 2014 WL 2767231 (N.D. Ill. Jun. 17, 2014).................................... 21

*Gaste v. Kaiserman,*
    863 F.2d 1061 (2d Cir. 1988)..................................................................... 14

*Gordon v. McGinley,*
    No. 11-cv-1001 (RJS), 2011 WL 3648606 (S.D.N.Y. Aug. 18, 2011), *aff'd in part,
    vac'd in part on other grounds*, 502 F. App'x 89 (2d Cir. 2012) ................................. 7

**<u>CASES</u>** <u>PAGE(s)</u>

*Hearn v. Meyer*,
  664 F. Supp. 832 (S.D.N.Y. 1987) ....................................................... 27

*Intersong-USA v. CBS, Inc.*,
  757 F. Supp. 274 (S.D.N.Y. 1991) ...................................................... 14

*Jean v. Bug Music, Inc.*,
  No. 00-cv-4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) ................... 8, 13

*Johnson v. Gordon*,
  409 F.3d 12 (1st Cir. 2005) .......................................................... 14, 21

*Laureyssens v. Idea Grp., Inc.*,
  964 F.2d 131 (2d Cir. 1992) ............................................................. 8

*McDonald v. West*,
  138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ................. *passim*

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,
  367 F. Supp. 2d 514 (S.D.N.Y. 2005) .................................................... 9

*Odegard Inc. v. Safavieh Carpets, Inc.*,
  398 F. Supp. 2d 275 (S.D.N.Y. 2005) ................................................. 7, 26

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ......................................................... *passim*

*Peters v. West*,
  776 F. Supp. 2d 742 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) ............... 26

*Riley v. New York Trust Co.*,
  315 U.S. 343 (1942) ................................................................... 29

*Rose v. Hewson*,
  No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ............ 9, 18, 26

*Rosette v. Rainbo Record Mfg. Corp.*,
  354 F. Supp. 1183 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976) ................ 10

*Sheldon Abend Revocable Trust v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010) .................................................... 8

*Skidmore v. Led Zeppelin*,
  No. 15-cv-3462 (RGK), 2016 WL 1442461 (C.D. Cal. Apr. 8, 2016) ....................... 9

**CASES**                                                                                      **PAGE(s)**

*Stop The Beach Renourishment, Inc. v. Florida Dep't of Envt'l Protection*,
    560 U.S. 702 (2010) ................................................................................................... 29

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000) ............................................................... *passim*

*Velez v. Sony Discos*,
    No. 05-cv-615 (PKC), 2007 WL 120686 (S.D.N.Y. Jan. 16, 2007) ........................ 14

*VMG Salsoul, LLC v. Ciccone*,
    No. 12-cv-5967 (BRO), 2013 WL 8600435 (C.D. Cal. Nov. 18, 2013), *aff'd in part*,
    *vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016) ................................. 14

*Warner Bros. Inc. v. American Broad. Cos.*,
    654 F.2d 204 (2d Cir. 1981) ................................................................................... 22

*Williams v. Bridgeport Music, Inc.*,
    No. 13-cv-06004 (JAK), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014), *aff'd as*
    *amended*, *Williams v. Gaye*, --- F.3d ---, 2018 WL 3382875 (9th Cir. Jul. 11, 2018).......... 9, 10

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014) ................................................................................ 6, 7, 26


**TREATISES**

M. Nimmer & D. Nimmer, 1 *Nimmer on Copyright* § 2.05[A] (Rev. Ed. 2018) ................... 10, 11

Mark S. Lee, *Entertainment & Intellectual Property Law*, § 7:4 (Aug. 2017 Update) ............... 10


**STATUTORY**

17 U.S.C. §§ 9-13 (1909 Act) ............................................................................................ 10

17 U.S.C. § 303(b) ........................................................................................................... 10

17 U.S.C. § 501(b) ........................................................................................................... 27

California Prob. Code § 6402 ........................................................................................... 28

California Prob. Code § 6451 ........................................................................................... 28


**LEGISLATIVE MATERIALS**

H.R. Rep. No. 94-1476(1976), reprinted in 1976 U.S.C.C.A.N. 5659 ........................................ 10

## PRELIMINARY STATEMENT

Plaintiffs, claiming to hold a 22% beneficial interest in the copyright of the musical composition *Let's Get It On* ("LGO") as putative heirs of Edward B. Townsend, brought this action for copyright infringement.[1]   Plaintiffs claim that certain musical elements in the musical composition titled *Thinking Out Loud* ("TOL"), co-written by non-party Amy Wadge and defendant Edward Christopher Sheeran ("Sheeran"), infringe the copyright in LGO.   Defendants Sheeran, Atlantic Recording Corporation d/b/a Atlantic Records ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV," collectively the "Defendants" and each a "Defendant"), dispute that any copying occurred, maintain that any alleged "similarities" concern unprotectible and commonplace elements, and now move for summary judgment dismissing the Complaint.

Plaintiffs do not claim that the two works share any lyrical similarities.   Nor do Plaintiffs have or claim any rights in the sound recording of *Let's Get It On* (the "LGO Recording").   Instead, relying solely on an "expert" report of Dr. Alexander Stewart ("Stewart"), Plaintiffs assert that the musical compositions, TOL and LGO, supposedly have three primary similarities: (1) a similar, but not identical, chord progression (a chord progression that even Stewart admits was commonplace prior to LGO and hence unprotectible); (2) a similar, but not identical, drum pattern (a drum pattern that Stewart also admits was unoriginal to LGO and hence unprotectible); and (3) a similar, but not identical, bass-line (a bass-line that is present for less than 10% of TOL, and which also features musical elements that were commonplace prior to LGO and hence unprotectible).   It is also undisputed that more than 90% of TOL features a bass-line that is markedly different from LGO's bass-line.[2]

---

[1] Undefined capitalized terms have the meanings given to them in the accompanying Rule 56.1 Statement of Undisputed Facts (the "56.1 Statement" or "Rule 56.1").

[2] Plaintiffs also allege that three portions of the works have similar, but not identical, melodies. In fact, as demonstrated below and in the accompanying Ferrara Declaration, the melodies are

Plaintiffs concede that each of these three alleged similar elements is not original to LGO. They concede that each standing alone does not support a claim for infringement. Plaintiffs also admit that differences exist between these elements as expressed in each work. Notably, of these three alleged similarities, two of them, the bass-guitar line and the drum pattern in TOL, were authored by two other individuals subsequent to the original writing session between Sheeran and Wadge. Thus, four different individuals created the elements identified by Plaintiffs, and at different times.

But the overarching, fundamental and dispositive flaw in Plaintiffs' infringement claim is that while LGO's compositional copyright is defined solely by the sheet music deposited with the U.S Copyright Office (the "LGO Deposit Copy"), two of the three primary elements of Plaintiffs' claim – the drum pattern and the bass-guitar line – do not appear in the LGO Deposit Copy but are found only in the LGO Recording (in which Plaintiffs have no rights). As this Court noted at the Pre-Motion Conference, it is the LGO Deposit Copy that defines the scope of copyright protection in LGO, not what is contained in the LGO Recording. *See* Farkas Decl. at Ex. 16, 31:25 (THE COURT: "I think this is about the sheet music").

As a matter of law, Plaintiffs' infringement claim cannot be based on a comparison of TOL with elements that appear only in the LGO Recording and not in the LGO Deposit Copy.[3] Once the claimed "similarities" that do not appear in the LGO Deposit Copy – the bass-line and drum part – are stripped away, virtually the sole basis for the claim of infringement is the alleged

---

objectively dissimilar. Stewart has improperly manipulated the pitches in the melodic sequences to manufacture an illusion of similarity that does not exist to make the works appear more similar. Even with these manipulations, the melodic differences are obvious to the naked ear.

[3] As detailed below, LGO, written and published in 1973, is governed by the 1909 Copyright Act. The 1909 Copyright Act required the publication and deposit of "copies," and "copies" were required to be in a "written or printed record in intelligible notation," which constituted either sheet music or other manuscript form, and that was the form of the deposit copy for LGO.

2

similarity of the chord progression, which even Stewart admits is exceedingly commonplace and which provides no basis for an infringement claim.[4]

It is undisputed that this chord progression appears in many songs that predate LGO. In fact, it is such a basic chord progression that it is taught in elementary guitar method books, one of which ironically opines that LGO did not infringe earlier songs using the same progression since it is so "common." Plaintiffs have admitted that the chord progression is "common," that "it's not original," "that other songs have this chord progression," and that "[t]hese four chords have been used in other compositions prior to *Let's Get It On*." As a matter of settled copyright jurisprudence – which uniformly holds that common chord progressions are unprotectible as a matter of law – a claim of infringement cannot rest upon an unoriginal and unprotectible chord progression. *See* pp. 13-14 *infra* (citing cases). According a monopoly over the use of a common chord progression to any author would undermine the central aim of copyright law (to promote and foster the progress of the useful arts) and unduly chill future expression.

Even if one were, solely for the sake of argument, to consider elements contained in the LGO Recording (rather than restricting the analysis to the LGO Deposit Copy as is required by applicable law), the infringement claim still fails as a matter of law. Plaintiffs admit that the drum pattern was in existence prior to the LGO Recording and that the bass-guitar line actually used in TOL, which is present for more than 90% of TOL, is distinctly different from the bass-guitar line in the LGO Recording (which is why Stewart focuses solely on the "bass-line" for the first 24 seconds of TOL, less than 10% of TOL, which comprises the lowest notes played on the electric guitar). And even if one focuses on the alleged similarities between the "bass-line" in

---

[4] Moreover, TOL's chord progression is not even identical to the chord progression reflected in the LGO Deposit Copy (or the LGO Recording) and other portions of TOL use distinctly different chord progressions than the chord progression used in the LGO Deposit Copy (and the LGO Recording).

the first 24 seconds of TOL and the bass-line in the LGO Recording, they are attributable to commonplace musical elements that predate LGO.

Because Plaintiffs recognize that none of the musical elements they claim are infringing are original or protectible, Plaintiffs argue that a combination of commonplace and unprotectible elements can somehow become protectible (ignoring that two of these elements, the drum pattern and bass-guitar line, do <u>not</u> appear in the LGO Deposit Copy).  Assuming, *arguendo*, that a combination of unprotectible elements could morph into something protectible, such resulting protection in the "combination" of individually unprotectible elements is extremely "thin."  And, as Second Circuit jurisprudence unequivocally mandates, infringement in such cases will only be established by identical, or near identical, copying.  As the Court can hear for itself, TOL is not even remotely identical or nearly identical to the LGO Recording.

It is undisputed that no lyrical similarities exist.  It is indisputable that no legitimate similarities exist with regard to the vocal melodies.  It is undisputed that the chord progressions and drum parts are not identical and are not original in any event.  It is undisputed that TOL features an additional chord progression that is substantially different from any chord progression in the LGO Deposit Copy and the LGO Recording.  It is undisputed that the bass-guitar line in more than 90% of TOL is substantially different than the bass-guitar line in the LGO Recording (and the bass-guitar line is not in the LGO Deposit Copy).  It is undisputed that the opening "bass-line" of TOL is not identical to the bass-guitar line in the LGO Recording.  And, finally, it is undisputed that the bass-guitar line that accompanies the drums in TOL is <u>never</u> remotely similar to the bass-guitar line that accompanies the drums in the LGO Recording (the drums in TOL commence with the bass-guitar line at 24 seconds).  Thus, Stewart's claim that TOL simultaneously features a similar bass-line and drum part to the LGO Recording is not

only irrelevant for purposes of copyright infringement analysis (since these elements do not appear in the LGO Deposit Copy), but it is also objectively and utterly untrue.

Finally, Stewart admitted that the two works, as a whole, are not identical or virtually identical to one another.  The total "concept and feel" of the two recordings (again, the recordings are not at issue in this case) could not be more different.  TOL is characterized by somber, melancholic tones, addressing long lasting romantic love whereas the LGO Recording is a sexual anthem that radiates positive emotions and encourages the listener to "get it on."

In sum, no issues of fact exist because no reasonable juror could conclude that anything protectible has been copied from the LGO Deposit Copy that remotely rises to the level of actionable similarity.[5]

## STATEMENT OF FACTS

For a full recitation of the facts germane to this motion, Defendants respectfully refer the Court to the accompanying Rule 56.1 Statement and the supporting Declarations.

## ARGUMENT

## I.   THE COPYRIGHT INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW

### A.   Legal Standard

To succeed on a copyright infringement claim, a plaintiff must establish, among other things, that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation & quotation omitted).

---

[5] Again, even if one, contrary to established law, compared elements appearing only in the LGO Recording, there still would be no actionable similarity.

As the Second Circuit has cautioned, "copying and wrongful copying … are often confused." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014). Because "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection," "[c]opying [unprotected] aspects of a work is not wrongful, and thus not <u>all</u> copying is wrongful." *Id.* (emphasis in original). To be sure, "an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001). Thus, "the term 'substantial similarity' is properly reserved for similarity that exists between the protected elements of a work and another work. If two works are 'substantially similar,' any copying [is] wrongful. By contrast, similarity that relates to unprotected elements is probative only of copying – not wrongful copying – and is referred to as 'probative similarity.'" *Zalewski*, 754 F.3d. at 101.

"To determine whether two works are substantially similar … [courts] usually apply the 'ordinary observer' test and ask whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* at 102 (citation & quotation omitted). But "when faced with works that have both protectible and unprotectible elements, [the] analysis must be more discerning." *Peter F. Gaito*, 602 F.3d at 66 (internal citations & quotations omitted). Then, the Court "must attempt to extract the unprotectible elements," and the question becomes "<u>whether the protectible elements, standing alone, are substantially similar</u>." *Id.* (emphasis added; citations & quotations omitted); *see also McDonald v. West*, 138 F. Supp. 3d 448, 455 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ("When a plaintiff alleges infringement of a copyrighted work that incorporates significant elements from the public domain … the 'ordinary observer' test must become 'more discerning'" because "[i]t would be unfair to impose copyright liability if the defendant copied something

6

from the plaintiff that the latter had no right to control") (internal citation omitted); *Gordon v. McGinley*, No. 11-cv-1001 (RJS), 2011 WL 3648606, at *3 (S.D.N.Y. Aug. 18, 2011) (applying rule and dismissing copyright claims as a matter of law) (J. Sullivan).[6]   Still, Courts assess the "total concept and overall feel" of the works "as instructed by [] good eyes and common sense." *Peter F. Gaito*, 602 F.3d at 66; *Gordon*, 2011 WL 3648606, at *3 (citation omitted).

Critically, "[w]here the quantum of originality" in the original work "is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying because the majority of the [plaintiff's] work is unprotectible."  *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996) (citation omitted); *see also Zalewski*, 754 F.3d at 107 (because the plaintiff owned a "very thin" copyright, "[o]nly very close copying would have taken whatever actually belonged to Plaintiff"); *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) ("copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is 'thin'" and "a subsequent author remains free to use the public domain elements to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement") (citations, quotations and brackets omitted); *Boisson*, 273 F.3d at 268 ("Some material is unprotectible because it is in the public domain, which means that it is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work") (citation & quotation omitted).

In the context of musical compositions, unprotectible elements, or *scenes-a-faire*, include, among other things, key, meter, tempo, common song structures, common chord progressions, common melodies and common percussive rhythms.  *See McDonald*, 138 F. Supp. 3d at 454 ("common rhythms, song structures, and harmonic progressions are not protected") (citations

---

[6] The Second Circuit later affirmed the dismissal of the copyright claims but vacated the dismissal of the plaintiff's pendent state law claims.  *See* 502 F. App'x. 89 (2d Cir. 2012).

omitted); *id.* at 458 ("Tempo … is a basic element of music that is part of the public domain") (citation omitted); *Jean v. Bug Music, Inc.*, No. 00-cv-4022 (DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (common melodic sequence); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 543-44 (S.D.N.Y. 2000) (key, common structure, harmonic progression and percussive rhythm).

On a motion for summary judgment, "[i]t is entirely appropriate for a district court to resolve [the] question [of substantial similarity] as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63 (citations & quotations omitted).   This is true even where a plaintiff adduces expert opinion that two works are substantially similar.   That is because expert opinion on the ultimate issue of substantial similarity is <u>not</u> admissible.  *See, e.g.*, *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992); *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 204 n.4 (S.D.N.Y. 2010); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 655 n.122 (S.D.N.Y. 2011).[7]  For the avoidance of doubt, expert musicologists can opine regarding probative similarities between two works and whether they possess objective similarities, they can opine that the plaintiff's work, or constituent elements of it, existed in prior art and that it therefore is not original to the plaintiff, and they can provide guidance by translating musical notation and musical concepts into plain English; however, expert musicologists <u>cannot</u> opine that a defendant's work is substantially similar to the plaintiff's work.  *Id.*

---

[7] The Second Circuit has recognized a limited exception where highly technical training is necessary to analyze two works, such as computer code for software.  *See Peter F. Gaito*, 602 F.3d at 65 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992)). This limited exception has not been applied to expert musicologists.

**B.**   **The LGO Deposit Copy Defines The Scope of Copyright Protection**

Where a plaintiff alleges "infringement of a musical composition, a court considers only a song's composition – the notes, rhythm, and harmony, for example – and does not consider elements of performance of the composition."   *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018) (citations omitted); *see also Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) ("a copyright does not encompass [elements] that vary in essential respects from what was presented to the Copyright Office.   Otherwise, the purposes of the deposit requirement would be nullified") (citation omitted).

That rule holds particular force with regard to musical compositions – like LGO – governed by the 1909 Copyright Act (the "1909 Act").[8]   Under the 1909 Act, "elements in the sound recordings" may <u>not</u> be considered in assessing the scope of copyright.   *Skidmore v. Led Zeppelin*, No. 15-cv-3462 (RGK), 2016 WL 1442461, at *15 (C.D. Cal. Apr. 8, 2016) (citations omitted); *see also Williams v. Bridgeport Music, Inc.*, No. 13-cv-06004 (JAK), 2014 WL 7877773, at *9 (C.D. Cal. Oct. 30, 2014) ("the recording of a pre-1978 work does not add to the subject matter protected by the copyright in the published work … the deposit copy or a comparable writing defines the scope of what is protected"), *aff'd as amended*, *Williams v. Gaye*, --- F.3d ---, 2018 WL 3382875 (9th Cir. Jul. 11, 2018).

The 1909 Act provides that a musical work receives copyright protection either by (1) the publication of "copies" with proper notices (and the "prompt[]"deposit with the Copyright Office

---

[8] The 1909 Act, as it relates to the LGO Deposit Copy, governs in this case because it "is the applicable law in cases in which creation and publication of a work occurred before January 1, 1978, the effective date of the 1976 Act."   *Dolman v. Agee*, 157 F.3d 708, 712 n.1 (9th Cir. 1998) (citation omitted).   It is undisputed that Townsend co-authored and published LGO in 1973 and that the LGO copyright is reflected in the LGO Deposit Copy deposited with the Copyright Office in 1973.

of "two complete copies of the best edition" of the work "then published"), or (2) the deposit of one complete unpublished "copy" with the Copyright Office.  *See* 17 U.S.C. §§ 9-13 (1909 Act).[9]  To constitute a "copy" under the 1909 Act, a work needed to be "visibly intelligible" – the law required a "written or printed record in intelligible notation."  M. Nimmer & D. Nimmer, 1 *Nimmer on Copyright* ("Nimmer") § 2.05[A] (Rev. Ed. 2018).  Thus, "to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form."  *Id.*; *see also id.* ("copyright protection required the placement of notice on <u>copies</u>, and likewise the deposit copies" and thus "a musical work could not claim copyright unless the notice and deposit requirements were satisfied with respect to an object that constituted a visibly intelligible notation") (emphasis in original; parentheticals omitted); *see also* Mark S. Lee, *Entertainment & Intellectual Property Law*, § 7:4 (Aug. 2017 Update).  Sound recordings (also termed phonograph records or phonorecords) did <u>not</u> constitute "copies" under the 1909 Act.  *See Nimmer* § 2:05[A] (sound recordings "did not qualify as copies of the musical works" because they could not "be said to embody intelligible notations").  Moreover, the distribution or sale of sound recordings did not constitute "publication" of the underlying composition under the 1909 Act.[10]

---

[9] A copyright claimant depositing an unpublished work under the 1909 Act also was required to register the work a second time upon its publication.  *Id.* at § 11; H.R. Rep. No. 94-1476, at 5771 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659.

[10] Congress dispelled any lingering doubts regarding that question when it enacted a 1997 Amendment to the Copyright Act – which has "retroactive effect because it was a statement of what the 1909 Copyright Act has meant all along" – providing that "[t]he distribution before January 1, 1978, of a phonorecord shall not for any purpose constitute a publication of the musical work embodied therein."  *See Williams*, 2014 WL 7877773, at *9 (quoting, 17 U.S.C. § 303(b) (1997)) (brackets & other citations omitted); *see also Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183, 1190, 1192 n. 8 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976). ("A phonograph record or other sound recording is not considered a copy of the compositions recorded on it, and is not acceptable for copyright registration") (quoting, 1909 Act); *ABKCO*

Here, the scope of copyright in LGO is defined by the LGO Deposit Copy.  In discovery, Defendants requested that Plaintiffs provide "[a]ll documents concerning any copyright registrations or filings with the U.S. Copyright Office relating to LGO," and "[t]rue and correct copies of all published sheet music for LGO."  *See* Farkas Decl. at Exhibit 12.  In response, Plaintiffs produced a single document:  the copyright application for the LGO composition that contained the sheet music deposited with the Copyright Office, *i.e.*, the LGO Deposit Copy.  *Id.*

In addition, the Copyright Application for LGO reflects that LGO was published on February 14, 1973.  As such, the sheet music appended to the Copyright Application and deposited with the Copyright Office was required to represent the "best edition" of LGO "then published."  The LGO Deposit Copy thus necessarily represented the "best edition" of LGO in existence as of the date the copyright claimants registered the copyright, the prior "publication" copies of LGO did not differ (and they could not differ) in material respect from the LGO Deposit Copy, and the LGO Deposit Copy therefore delineates the scope of copyright protection.[11]

---

*Music, Inc. v. Lavere*, 217 F.3d 684, 691-92 (9th Cir. 2000) (1997 Amendment to Copyright Act has retroactive effect).  For the avoidance of doubt, the 1997 Amendment "does not detract from the proposition … that, to claim copyright via publication under the 1909 Act [of a musical composition], sheet music was required."  Nimmer, § 2.05[A].

[11] Stewart theorized at his deposition, without personal knowledge or evidentiary support, that the sheet music for the LGO composition may have been created after Marvin Gaye recorded the LGO Recording.  *See* Stewart Tr. at 85:23-89:10.  Therefore, Stewart speculated, the sheet music for the LGO composition may have been "derived from" the LGO Recording.  *Id.*  Stewart's speculation is entirely erroneous.  Townsend authored the LGO composition before Marvin Gaye had any involvement with the song.  *See* McDonald Tr. at 23:4-25:11.  Further, documentary evidence establishes that Marvin Gaye recorded LGO on March 22, 1973.  *See* Farkas Decl. at Exhibit 14.  The LGO composition (*i.e.*, the sheet music), however, was first published on February 14, 1973.  *Id.* at Exhibit 12.  Stewart's speculation is also illogical given that the structure of the LGO Recording is dramatically different from the structure of the LGO Deposit Copy.  For example, at Page 2 of the Stewart Report, Stewart finds no chorus or outro (*i.e.*, ending) sections in the LGO Recording, yet his deposition testimony regarding the structure of

### C.      Actionable Similarities Do Not Exist Between the LGO Deposit Copy and TOL

#### 1.      The Chord Progression Is Not Protectible As A Matter of Law

Identifying the LGO Deposit Copy as establishing the boundaries of LGO's copyright is the first step in the infringement analysis in this case.  The next step, consistent with applicable law, is to extract the unprotectible and public domain elements from the comparison between the works.  *See Peter F. Gaito*, 602 F.3d at 66; *McDonald*, 138 F. Supp. 3d at 455.

The LGO Deposit copy is 165 bars in length.  The musical elements included in the LGO Deposit Copy include the composition's key, harmony (*i.e.*, chord progression), rhythm, melody, lyrics and song structure.  *See* Rule 56.1 ¶ 36.  But the LGO Deposit Copy does <u>not</u> include percussion elements (*i.e.*, drums), and it does <u>not</u> contain a bass-guitar part.  *Id.* ¶¶ 37-38.  It also does not contain Marvin Gaye's vocal performance (or anyone else's vocal performance).  In fact, it contains none of the performance elements contained in the LGO Recording.  *Id.*

Of the elements included in the LGO Deposit Copy, the principle "similarity" of TOL claimed by Plaintiffs is LGO's chord progression.  LGO, as reflected in the LGO Deposit Copy, features a I-iii-IV-V7 chord progression, an exceedingly common chord progression that appears in many songs that predate LGO.  *Id.* ¶¶ 48-60.[12]  In contrast, TOL features multiple, different chord progressions.  Although some segments of TOL feature a chord progression that is similar, but not identical, to the unoriginal chord progression used in LGO, TOL also uses other chord progressions that are substantially different than the LGO chord progression.  *Id.*

the LGO Deposit Copy notes the presence of chorus and outro sections.  *See* Stewart Tr. at 118:13-131:20.  If the LGO Deposit Copy was created after and were based on the LGO Recording, then it surely would have had the same structure as the LGO Recording.

[12] A "7" denotes the addition of a pitch that is the interval of a minor seventh above the root or name of the chord.  *See* Ferrara Decl. ¶ 6 n.1.

It is undisputed that the basic I-iii-IV-V chord progression used in LGO was commonplace prior to LGO.  Ferrara identified thirteen compositions that predate LGO that use the same basic chord progression.  *Id.* ¶ 53.  In fact, the I-iii-IV-V chord progression is so commonplace that it appears in at least two elementary guitar method books.  *Id.* ¶ 55.  One such book even opined that LGO itself was not infringing prior works because the chord progression was so "common."  *Id.* ¶ 56.  Even Stewart admitted that I-iii-IV-V is "a common progression," that "it's not original," "that other songs have this chord progression," that "[t]hese four chords have been used in other compositions prior to Let's Get It On," and that the claimed similarities are not indicative of copying.  *Id.* ¶ 57.

The undisputed evidence, including Stewart's admissions, makes clear that even were the chord progression in TOL identical to the LGO chord progression – and it is not – no finding of probative or actionable similarity can be based on the commonplace chord progression used in LGO.  *See McDonald*, 138 F. Supp. 3d at 454 ("common … harmonic progressions are not protected") (citations omitted); *Tisi*, ("Although both songs feature … a basic 'I–IV' harmonic progression … this harmonic progression can be found in songs in all genres and therefore its use in both [songs] does not constitute a significant similarity"); *Jean*, 2002 WL 287786, at *6 ("Because C, B-flat, C is a common musical sequence, a reasonable jury could only find that the authors of [the song] did not create the musical excerpt, and, therefore, this musical phrase is not susceptible to copyright protection") (citations omitted); *Batiste v. Najm*, 28 F. Supp. 3d 595, 615-16 (E.D. La. 2014) ("the basic harmonic and rhythmic building blocks of music, especially popular music, have long been treated by courts as well-worn, unoriginal elements that are not entitled to copyright protection … the basic beats and chord progressions used in the plaintiff's songs" – the plaintiff alleged that the chord progressions in 22 of his compositions had been

infringed – "are customary throughout the funk and R & B genres, making them unprotectible *scènes à faire*"); *VMG Salsoul, LLC v. Ciccone*, No. 12-cv-5967 (BRO), 2013 WL 8600435, at *7 (C.D. Cal. Nov. 18, 2013) ("Easily arrived at phrases and chord progressions are usually non-copyrightable") (citations omitted), *aff'd in part*, *vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016); *Johnson v. Gordon*, 409 F.3d 12, 23 (1st Cir. 2005) ("Virtually by definition, expressions that are common are also unoriginal. So it is here: this harmonic progression, which is a stereotypical building block of musical composition, lacks originality. Accordingly, it is unprotectable") (internal citations omitted).

Only seven notes exist in the traditional Western scale of music, which, in turn, circumscribes the number of chords in existence (a chord is a combination of three or more notes sounded together). The Second Circuit has thus cautioned that courts must be "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music." *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) (citation omitted). To accord any one user in a long chain of prior users of common chord progressions a protectible right in such chords would stifle the creation of new music and thereby undermine the central aim of copyright law – to promote and foster the progress of the useful arts – and unduly chill future expression. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991).[13]

---

[13] In addition to commonplace chord progressions, key and meter are likewise unprotectible musical building blocks. *See, e.g.*, *Tisi*, 97 F. Supp. 2d at 548; *Velez v. Sony Discos*, No. 05-cv-615 (PKC), 2007 WL 120686, at *10 (S.D.N.Y. Jan. 16, 2007); *see also Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) ("common elements [that] are found in many other well-known songs ... are unoriginal and constitute 'scenes a faire' or ordinary, unprotectible expression") (citations omitted). In regard to key, the two compositions are written in distinct keys and Stewart admitted that he did not consider key in performing his analysis. *See* Rule 56.1 ¶ 47. In regard to meter (both works are written in 4/4 meter, which is also termed "common

### 2. __The Remaining Elements__

Having extracted the unprotectible elements from the LGO Deposit Copy, what remains is unremarkable and not remotely similar, let alone substantially similar, to TOL.

*First*, it is indisputable that no significant probative similarities exist between the melodies of the LGO Deposit Copy and TOL. The pitches in the melodies in the LGO Deposit Copy and TOL are different, as are the rhythmic durations of those pitches and the melodic phrase structures in the vocal melodies. *Id.* ¶¶ 71-77, 93-137.[14] While Stewart did not compare the LGO Deposit Copy with TOL – because, in an effort to maximize the alleged similarities, he improperly focused his attention on the LGO Recording – he identified three vocal melodies from the LGO Recording that he contends are similar to portions of TOL. However, as demonstrated in the Ferrara Declaration, Stewart's transcription of these melodies proves that they are objectively and significantly different. *See* Ferrara Decl. ¶¶ 12, 20-30.

Moreover, Stewart had to intentionally delete pitches and alter the melodic sequences in order to create the appearance of similarity, which renders his opinion defective as a matter of law. *See* pp. 21-22 *infra* (citing cases). Even after this inappropriate omission and manipulation of the pitches, Stewart's claimed similarity in the pitches is objectively fragmentary and minimal. Further, Stewart failed to provide any analysis of the rhythmic durations of the pitches in the vocal melodies, presumably because the rhythmic durations of the pitches are significantly different as transcribed in the Stewart Report. The Ferrara Declaration includes objective

---

time"), it is undisputed that countless compositions are written in 4/4 meter (many of which predate LGO), and that 4/4 meter is a foundational musical building block. *Id.* ¶ 46.

[14] Melody is a single line of music that consists primarily of a succession (*i.e.*, a sequence or order) of pitches and the rhythmic durations of those pitches within a melodic phrase structure. Pitch is the specific high or low placement of a musical sound, often identified within a musical scale. *See* Ferrara Report ¶ Paragraph 7(d).

evidence of the vast differences in melodic rhythm in the vocal melodies in LGO and the vocal melodies of TOL, which demonstrates that no probative or actionable similarities exist.  *See* Ferrara Decl. ¶¶ 12, 20-25.

*Second*, the harmonic rhythm – which derives from the exceedingly common and unprotectible harmonic progression (the commonplace chord progression) – in the LGO Deposit Copy and TOL is not the same.  The harmonic rhythm in the LGO Deposit Copy features a <u>four-bar</u> chord progression with two chords in bar 1, one chord in bar 2, two chords in bar 3 and one chord in bar 4.  *See* Rule 56.1 ¶¶ 59-60.  In contrast, the harmonic rhythm in TOL features a two-bar chord progression, not a four-bar chord progression, that generally features two chords per bar in which the second and fourth chords anticipate the third beat of their respective bars.  *Id.* To achieve the same harmonic rhythm in both works, one would need to cut in half the value of the notes and chords in the LGO Deposit Copy.  *See* Ferrara Decl. ¶ 8.  That, of course, requires rewriting the LGO Deposit Copy to make it something other than the work that is actually protected by copyright and then comparing the rewritten and non-copyrighted version of LGO with TOL.

*Third*, Plaintiffs have admitted that "few important lyrical similarities exist" between the two works.  *See* Rule 56.1 ¶¶ 65-70, 138-141.  Even this concession overstates what is a complete absence of "similarities."  The only arguable similarities identified by Stewart are themes of "sexual and erotic overtones" and "celebrations of love to a particular woman."  *Id.* However, even if one assumes such abstract "similarities" existed (and a listener can readily determine that they do not actually exist), these abstract ideas are expressed completely differently and ideas are, in any event, not copyrightable.  *See, e.g.*, *Edwards v. Raymond*, 22 F. Supp. 3d 293, 301 (S.D.N.Y. 2014) ("Nor does the fact that both songs' lyrics tell the story of 'a

16

man caught up in love' save the Plaintiffs' claim.  Themes are not independently protectable")

(citation omitted); *id.* at 300 ("the idea of a man in love … is [a] non-protectable idea").[15]

    *Fourth*, the structures of the two works are markedly different.  In regard to TOL,

Stewart opines that it has the following structure:  (1) verse A (2) verse B (3) bridge/pre-chorus

(4) chorus (5) verse A2 (6) verse B2 (7) bridge/pre-chorus (8) chorus (9) interlude, and (10)

chorus.  *See* Rule 56.1 ¶ 62.  In contrast, Stewart testified that the LGO Deposit Copy has the

following structure:  (1) verse (2) chorus (3) verse (4) verse (5) bridge (6) chorus/verse[16] (7)

bridge and (8) verse/outro.  *Id.* ¶ 61.

    Even assuming, *arguendo,* that such a structure of a piece of popular music could be

monopolized by anyone, the two song structures here are substantially different.  Moreover, the

fact that both works have verses, choruses and bridges is unremarkable as countless songs in

many different genres feature these generic structural building blocks.  *Id.* ¶¶ 63-64.  Courts

routinely find that alleged similarities such as these are not probative or actionable.  *See, e.g.*,

*Tisi*, 97 F. Supp. 2d at 543 ("As to structure, to the extent that the two songs share any structural

similarities, those similarities are not significant because they are uniformly shared with most

modern popular rock music.  Both songs employ a standard usage of introduction, verse, chorus

and bridge sections"); *McDonald*, 138 F. Supp. 3d at 454 ("common … song structures … are

not protected") (citation omitted).

---

[15] In addition, notwithstanding Stewart's interpretation of Townsend's lyrics, Townsend did not
actually intend for LGO to have sexual or erotic themes; he intended the lyrics to express "the
business of getting on with life" in the face of drug addiction.  *See* Rule 56.1 ¶ 69.

[16] Stewart described this section as "nebulous."  He could not resolve whether to identify it as a
chorus or verse.

### 3.     The Total Concept And Overall Feel Of Each Composition

Comparing the "total concept and feel of the [works] with good eyes and common sense" reinforces the conclusion that no infringement exists.  *Peter F. Gaito*, 602 F.3d at 67 (citations & quotations omitted); *see also Rose*, 2018 WL 626350, at *3.

The component elements of the LGO Deposit Copy and TOL – individually and in the aggregate – represent very different musical expression.  A side-by-side comparison of the two compositions illustrates that the only arguable similarity between the LGO Deposit Copy and TOL is that both contain variants of the commonplace I-iii-IV-V chord progression, which is not protectible as a matter of law.  The key of each composition is different (and key is not protectible), no lyrical similarities exist, the vocal melodies, including their constituent pitches and the rhythmic durations of those pitches, are decidedly different, the song structures are banal and contain many differences, and TOL features an additional chord progression that is substantially different to the I-iii-IV-V chord progression in the LGO composition.[17]  Even Stewart has conceded that the two works, as a whole, are not "identical" or "virtually identical" to one another, which is required in order for Plaintiffs to establish an infringement based on the combination of unprotectible elements.  *See* Rule 56.1 ¶ 79.  Restricting comparison to the LGO Deposit Copy, as required by law, Plaintiffs cannot establish an infringement simply because the two compositions contain a similar, but not identical, chord progression – a chord progression that was commonplace prior to LGO and is not protectible as a matter of law.

Accordingly, summary judgment dismissing the Complaint is warranted.

---

[17] The fact that the two works are written in 4/4 meter does not and cannot demonstrate, or even suggest, probative similarities or wrongful copying because 4/4 meter is "common time" and the most common meter used in popular music.

**D.    Even If The Court Were To Consider Elements In The LGO Recording, As a Matter Of Law, There Is No Infringement**

As demonstrated above, LGO's copyright is defined by the LGO Deposit Copy and does not include any additional elements that are found in the LGO Recording.  However, purely for the sake of argument, even were the Court to consider elements in the LGO Recording, there are no probative or actionable similarities with TOL as a matter of law.

**1.    The Drum Pattern Is Not Protectible As A Matter of Law**

The key, meter and chord progression of the LGO Recording are identical to those contained in the LGO Deposit Copy, and they are unprotectible and have already been addressed. The drum pattern, one of the two additional allegedly similar elements pointed to by Plaintiffs as existing in the LGO Recording (not the LGO Deposit Copy), is similarly unprotectible.[18]

It is undisputed that there is nothing original about the drum pattern in the LGO Recording.  Both its constituent elements and the drum pattern as a whole were commonplace prior to the LGO Recording.  The drum pattern consists of extremely commonplace, elementary rhythmic elements.  *See* Rule 56.1 ¶¶ 164-171.  Like the I-iii-IV-V chord progression, the drum pattern is simple, rudimentary and used in multiple genres of music, even existing in drum method books.  *Id.*  Moreover, as detailed in the Ferrara Declaration (and as conceded by Stewart), the drum patterns are not identical and they contain several notable differences.  *Id.* ¶ 173.  Finally, Stewart admitted that if the two recordings did not have similar tempos – and

---

[18] Stewart also identifies similarities between the LGO Recording and TOL because each has a similar tempo (*i.e.*, beats per minute) and because each uses an occasional "blue" third note. However, Stewart correspondingly admitted that he did not consider the tempos of the two recordings in performing his analysis and that the occasional use of a "blue" third note was commonplace prior to the LGO Recording and not original to the LGO Recording.  *See* Rule 56.1 ¶¶ 83, 91-92.  In addition, it is settled that tempo is not protected by copyright law.  *See McDonald*, 138 F. Supp. 3d at 458 ("Tempo … is a basic element of music that is part of the public domain") (citation omitted); *see also Tisi*, 97 F. Supp. 2d at 548-49.

tempo is not protectible – then he would have found the drum patterns to be even less similar. *Id.* ¶ 172.

### 2.   The Remaining Elements

The remaining elements at issue – as identified in the Stewart Report from the LGO Recording, not the LGO Deposit Copy – comprise (1) the structure of the recordings, (2) the lyrics of the recordings, (3) three melodies and (4) the bass-lines in the recordings. Beyond the fact that it is what is contained in the LGO Deposit Copy, not in the LGO Recording, that defines the scope of copyright protection for LGO, these elements in the LGO Recording are not similar, let alone substantially similar, to the corresponding elements in TOL.

### a.   Structure

Stewart concedes that the structure of each song is different and his charting of the structure of each song reflects these differences. He charts the "single" version of the LGO Recording with the following structure: (1) verse (2) bridge (3) verse (4) short bridge, and (5) verse. *See* Rule 56.1 ¶ 86. In regard to the "full" version of the LGO Recording, Stewart charts it as follows: (1) verse (2) bridge (3) verse (4) bridge, and (5) verse. *Id.* ¶ 87. In contrast, as detailed above, Stewart opines that TOL has the following structure: (1) verse A (2) verse B (3) bridge/pre-chorus (4) chorus (5) verse A2 (6) verse B2 (7) bridge/pre-chorus (8) chorus, (9) interlude, and (10) chorus. *Id.* ¶ 88.

A simple comparison of each work's structure reveals they are substantially different. Stewart concedes as much. Moreover, the fact that each pop music recording features verses, choruses and bridges is not original, capable of monopoly by any user nor probative of copying or substantial similarity because thousands of songs have these same generic structures. *See* Ferrara Decl. ¶ 18; *see also Tisi*, 97 F. Supp. 2d at 543; *McDonald*, 138 F. Supp. 3d at 454.

**b.**   <u>**Lyrics**</u>

The LGO Recording has the exact same lyrics as the LGO Deposit Copy, subject to minor variations plus the addition of two lyrical stanzas in the "full" version that indisputably have no similarities with any of the lyrics of TOL.  No actionable similarities in the lyrics exist as demonstrated above in Section I.C.2.  Plaintiffs and their expert concede that their claim is not based on the lyrics of each song.

**c.**   <u>**Melody**</u>

Stewart identifies three melodies in the LGO Recording that are allegedly "copied" in some way in TOL: (1) the opening vocal melody of the LGO Recording is allegedly similar to the opening vocal melody of TOL ("Melody A"), (2) the vocal melody at the end of verse 4 of the LGO Recording is allegedly similar to the vocal melody at the beginning of the chorus in TOL ("Melody B"), and (3) the vocal melody at the beginning of verse 1 in the LGO Recording is allegedly similar to the vocal and guitar melodies at the interlude of TOL ("Melody C").  The Court can hear for itself that the melodies in these two recordings are entirely different.  *See* Ferrara Report at Audio Exhibit 1 Tracks 4, 5 and 6.

As detailed in the Ferrara Declaration, Stewart has manufactured similarities between the melodies in his transcriptions by omitting certain notes which differ and by adding certain "similar" notes that do not actually exist.  That Stewart felt it necessary to alter the melodies to create the illusion of similarity where none exists tacitly admits that even the recordings are not similar.  His analysis should be rejected for its purposeful misrepresentation alone.  *See Francescatti v. Germanotta*, No. 11-cv-5270 (MEA), 2014 WL 2767231, at *13 (N.D. Ill. Jun. 17, 2014) ("We may not compare the melodies in their altered states"); *Johnson*, 409 F.3d at 21 (affirming grant of summary judgment to defendant and rejecting expert analysis of plaintiff in

21

which he "altered the melody" and "altered the rhythm" of the defendant's song to make it more similar to the plaintiff's song); *see also Warner Bros. Inc. v. American Broad. Cos.*, 654 F.2d 204, 211 (2d Cir. 1981) (rejecting "an analysis which alters the actual sequence or construction of plaintiffs' work in order to achieve a juxtaposition that makes for greater similarity with defendants' work") (citation & internal parentheticals omitted).

Moreover, even ignoring Stewart's purposeful misrepresentation of the melodies in the recordings, after his alterations, only 4 of 9 pitches in Melody A are the same, only 5 of 11 pitches in Melody B are the same, and only 6 of 14 pitches in Melody C are the same. *See* Rule 56.1 ¶¶ 109, 115, 128. Thus, even if one accepted Stewart's fundamentally distorted analysis, the similarities between the pitches contained in the recordings are fragmentary, minimal and insignificant at best. *Id.* ¶¶ 95-137.

Compounding his distortion of the melodies, Stewart examines the (altered) pitch sequences without analyzing the rhythmic durations of those pitches, undoubtedly because the rhythmic durations of the pitches in each melody are markedly different, underscoring the manifest differences between the melodies. *Id.* ¶¶ 110-111, 119-120, 135-136. The different pitches and different melodic rhythms confirm that the melodies lack any meaningful musical similarities. *Id.* ¶¶ 112, 123, 137. A simple listening to these alleged melodic "similarities" confirms that Stewart's improper reaching should be rejected, and that no probative or actionable similarities exist. *See* Ferrara Report at Audio Exhibit 1 Tracks 4, 5 and 6.

### d.    <u>Bass-Lines</u>

Plaintiffs' argument regarding the "bass lines" of each recording completely ignores the actual bass-guitar line of TOL, *i.e.*, the TOL Bass Line, which begins at 24 seconds and continues throughout the remainder of the song. Instead, Stewart <u>solely</u> focuses on the lowest

guitar notes that appear only in the first 24 seconds of TOL (the "TOL Opening Bass Line"), and even then, he does not consider the remainder of the simultaneously sounding guitar notes as a whole.  By restricting his focus to the first 24 seconds of TOL, Stewart identifies five common "characteristics" between the bass-guitar part in the LGO Recording and the TOL Opening Bass Line played on the lowest notes on the guitar.  However, as set forth in the accompanying Ferrara Declaration, these "characteristics" (which appear only in the LGO Recording) are either not actually "common" to each recording or they were commonplace prior to the LGO Recording – or both.  *See* Ferrara Decl. ¶¶ 40-45.

By comparing only the first 24 seconds of the TOL recording to the LGO Recording, Stewart altogether ignores the TOL Bass Line, which is the bass-line of TOL for approximately 91% of the recording (258 of 282 seconds).  It is undisputed that significant differences exist between the bass-guitar part in the LGO Recording and the TOL Bass Line.  *See* Rule 56.1 ¶¶ 149, 161-163, 175.  But in an effort to create similarities between the LGO Recording (not the LGO Deposit Copy) and TOL where none exists, Stewart simply ignores these differences, and instead compares only the TOL Opening Bass Line on the guitar, which comprises less than 10% of TOL, to the bass guitar part in the LGO Recording.  Stewart's own full transcription of TOL – conspicuously omitted from the Stewart Report – confirms that the bass-line in 91% of TOL is the bass-guitar part, *i.e.*, the TOL Bass Line, commencing as of 24 seconds into the recording.  *Id.* ¶¶ 150-151.

Thus, as detailed more fully in the Ferrara Declaration, Stewart's analysis of the bass-lines is inherently flawed.  First, the comparison is improperly based on the LGO Recording, not the LGO Deposit Copy (the LGO Deposit Copy does not include a bass-guitar line).  Second, because he altogether ignores the TOL Bass Line starting at 24 seconds into the recording

(ignoring his own earlier admission, reflected in his full transcription of TOL, that the bass guitar commencing at 24 seconds into the recording is the bass-line of TOL), the allegedly similar "characteristics" between the bass-guitar part in the LGO Recording and the TOL Bass Line are actually insignificant.  Third, the bass line played in the LGO Recording was commonplace prior to LGO and would not be protectible even as to the initial 24 seconds of the TOL Opening Bass Line.  Finally, the actual bass-guitar lines in each recording are very different.  The objective and significant differences between the bass-lines, not to mention Stewart's studied effort to avoid them, confirms that no probative or actionable similarities exist.

### 3.      The Total Concept And Overall Feel Of Each Recording

Ignoring for the moment that it is the LGO Deposit Copy that defines the metes and bounds of Plaintiffs' copyright, comparison of the total concept and feel of the LGO Recording to TOL confirms that no infringement exists.

A side-by-side comparison of the recordings shows that the keys are different (and key is not protectible), that no lyrical similarities exist, that the melodies are very different, that the song structures are not only trite but also have important differences, and that TOL features an additional chord progression that is substantially different than the I-iii-IV-V chord progression in the LGO Recording (and the chord progression in LGO is, in any event, commonplace and not protectible).  In addition, the "concept and feel" of each recording is quite different.  The LGO Recording is characterized by optimistic, positive feelings and tones and it repeatedly encourages the listener to "get it on."  Despite Townsend's intentions for the song, Gaye's recording undoubtedly transformed the song into what one critic has fittingly referred to as a "beguiling anthem of sexual seduction."[19]  In contrast, TOL is characterized by somber and often

---

[19] *See* <https://slate.me/2mtz90Y>, last accessed July 27, 2018.

melancholic emotions and tones.  It does not evoke or encourage sex or seduction; rather, it is a song about lasting romantic love.  Sheeran sings, for example, "I will be loving you 'til we're 70," and "When my hair's all but gone and my memory fades … I know you will still love me the same."[20]

Ultimately, even if the appropriate comparison were between the LGO Recording and TOL – which it is not – the only arguable similarities are (a) that both recordings feature variants of the commonplace I-iii-IV-V chord progression, which is not protectible as a matter of law, (b) that both recordings feature a similar, but not identical, drum pattern (not present in the LGO Deposit Copy), which also was commonplace prior to LGO and not protectible as a matter of law, and (c) that less than 10% of TOL features a bass-line that has marginal similarities with the bass-line in the LGO Recording (which was also commonplace prior to the LGO Recording).

In an effort to salvage a theoretical infringement claim that is itself already improperly founded on the LGO Recording rather than the LGO Deposit Copy, Stewart offers up the notion that "[t]he combination of th[e] drum part with the bass line and harmonies" "could not be a result of independent creation and can only indicate copying."  *See* Stewart Report pp. 6-7. Stewart's rank conjecture and improper conclusion, even if one were to accept it for the sake of argument, still does not create a viable claim of infringement.  It is the substantial similarity of **protectible** elements that constitutes unlawful copying, not alleged copying of unprotectible elements.

Where a plaintiff claims copyright protection in the "combination" "of otherwise uncopyrightable elements," any resulting copyright protection is "thin" and "a subsequent author

---

[20] Sheeran's song is most assuredly not about sex or drugs or anything other than enduring love. It is a romantic ballad.  Even assuming that something as abstract as the theme of a song were protectible, there is no conceivable way that anyone could argue that LGO and TOL have any thematic similarities.

remains free to use the public domain elements to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Rose*, 2018 WL 626350, at *3 (citation omitted); *Odegard*, 398 F. Supp. 2d at 279 (citations, quotations and brackets omitted).  Infringement in such cases "will be established only by very close copying because the majority of the [plaintiff's] work is unprotectable." *Beaudin*, 95 F.3d at 2 (citation omitted); *see also Zalewski*, 754 F.3d at 103, 107 (finding plaintiff had "thin copyright" and "[o]nly very close copying would have taken whatever actually belonged to Plaintiff") (citation & quotation omitted); *Peters v. West*, 776 F. Supp. 2d 742, 750-51 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (dismissing complaint because, even assuming the plaintiff's song qualified for protection due to its "combination of unprotectible elements," the defendant's song did "not use the contested combination of unprotectible elements … in their entirety in a nearly identical format").

Thus, even comparing elements contained solely in the LGO Recording and even if one assumed that sufficient originality exists to warrant protection for the LGO Recording's "combination" of the commonplace chord progression, bass-line and drum part, actionable similarities with TOL still do not exist because TOL has wholly distinct lyrics and uses markedly different melodies, and it does not otherwise use the aforementioned elements in the "same" or "nearly identical" manner.  The Court can hear this for itself by listening to the two recordings.

It is undisputed that the bass-guitar line and drum parts found only in the LGO Recording and not the LGO Deposit Copy are not identical to TOL (and TOL features an additional chord progression that is substantially different from any chord progression in the LGO Recording). *See* Rule 56.1 ¶¶  85, 145, 149, 161-163, 173, 175.  It is likewise undisputed that the TOL Bass Line, present for more than 90% of TOL, is substantially different than the bass-guitar line in the

LGO Recording.  *Id.* ¶¶ 149, 161-163.  It is also undisputed that the TOL Opening Bass Line is not identical to the bass-guitar line in the LGO Recording, and that it features commonplace elements that predated LGO.  *Id.* ¶ 145, 154-160.

Further, the first 24 seconds of TOL do <u>not</u> include drums; the drums commence at 24 seconds along with the bass-guitar.  Stewart's opinion that TOL simultaneously features a similar bass-line and drum part as compared to the LGO Recording is demonstrably false.  The bass-guitar line that accompanies the drums in TOL, *i.e.*, the TOL Bass Line, is <u>never</u> remotely similar to the bass-guitar line that accompanies the drums in the LGO Recording.  Finally, it is undisputed, and Stewart has admitted, that the two recordings, as a whole, are not "identical" or "virtually identical" to one another.  *Id.* ¶ 174.

It is extremely rare where a "combination" of unprotectible elements can be conjoined to find protection and, as shown above, where such protection exists, the similarity must be identical or nearly identical for an infringement claim to lie.  This is not such a case.

For all of these reasons, even if one were to expand the copyright protection for LGO to include material contained only in the LGO Recording and not in the LGO Deposit Copy – again, contrary to applicable law – TOL does not infringe the LGO Recording as a matter of law.

## II.  <u>KATHRYN TOWNSEND GRIFFIN LACKS STANDING</u>

Plaintiff Kathryn Townsend Griffin's standing only need be reached if summary judgment dismissing the Complaint is not granted.  To have standing to sue for copyright infringement, a plaintiff must prove that he or she is either the legal or beneficial owner of the copyright in the work that allegedly has been infringed.  *See, e.g.*, *Hearn v. Meyer*, 664 F. Supp. 832, 840 (S.D.N.Y. 1987), citing, 17 U.S.C. § 501(b).[21]

---

[21] The 1909 Act confers standing upon a "copyright proprietor."  *See* 1909 Act § 25(b).

Here, Kathryn Townsend Griffin ("Kathryn") claims to have acquired a beneficial interest in the copyright to LGO by virtue of her supposed status as an intestate heir of Townsend. *See* Rule 56.1 ¶ 178.  Under California law, where Townsend died intestate without a spouse, his surviving biological children were entitled to inherit his assets in equal proportion.  *See* California Prob. Code § 6402.  However, children that have been adopted by others have no right to inherit from their biological parents under California law.  *Id.* § 6451.  Putting aside whether Kathryn actually is a biological child of Townsend – for which there is no proof – she admitted that she was adopted shortly after her birth by the Griffin family.  *See* Rule 56.1 ¶ 180.

Kathryn's claim of standing exists solely based on an order of a California probate court (the "Probate Court") dated September 25, 2008 (the "Probate Order").  The Probate Order granted an "ex parte application for approval of schedule of distribution" and decreed that "Kathryn Griffin Townsend," as an intestate heir of Townsend, was entitled to 30% of the royalty income derived from his "Music Catalog."  *Id.* ¶ 202.[22]  But the records of the Probate Court show that Kathryn and McDonald withheld material information from the Probate Court. McDonald, who initially served as the "Personal Representative" of Townsend's estate, not only failed to disclose Kathryn's adoption but misrepresented to the Probate Court that Kathryn had <u>not</u> been adopted.  *Id.* ¶¶ 193-198.  Kathryn similarly represented to the Probate Court that she was a biological child and heir of Townsend, never mentioning that she had been adopted by others.  *Id.* ¶ 199.

As discussed at the Pre-Motion Conference, Defendants had no standing to participate in the probate proceedings (and likely lack standing to attack the Probate Order in California now) because the claim in this case did not exist until years after the probate proceeding.  *See, e.g.*,

---

[22] The Probate Order reflects that Townsend had two other intestate heirs, and that Kathryn had previously purported to convey 3 ⅓ % of her prospective interest to McDonald.

*Consolidated Rock Products Co. v. Higgins*, 54 Cal. App. 2d 779, 781 (1942) (for a stranger to attack a prior judgment, he must show "that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition") (citation & quotation omitted).   Applying the Probate Order against Defendants deprives them of any opportunity to challenge Kathryn's standing, depriving them of constitutional due process and, potentially resulting in an unconstitutional judicial taking of property.   *See, e.g.*, *Riley v. New York Trust Co.*, 315 U.S. 343, 353-54 (1942) (stranger to probate decree not barred from later challenging it because, to hold otherwise, would "deny procedural due process"); *Stop The Beach Renourishment, Inc. v. Florida Dep't of Envt'l Protection*, 560 U.S. 702, 713-14 (2010) (The Takings Clause applies to actions effected by the judicial branch).   Thus, in the event that the infringement claim survives this motion, Kathryn lacks standing to pursue that claim.

## CONCLUSION

It is respectfully submitted that the Complaint should be dismissed and that judgment should be entered in favor of Defendants.

Dated: New York, New York
      July 27, 2018

                                  PRYOR CASHMAN LLP

                                  By: */s/ Ilene S. Farkas*
                                      Donald S. Zakarin
                                      Ilene S. Farkas
                                      Andrew M. Goldsmith
                                  7 Times Square
                                  New York, NY 10036
                                  (212) 421-4100

                                  *Attorneys for Edward Christopher Sheeran,*
                                  *Atlantic Recording Corporation and*
                                  *Sony/ATV Music Publishing LLC*