UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KATHRYN TOWNSEND GRIFFIN, HELEN  :
MCDONALD, and The Estate of CHERRIGALE  :
TOWNSEND,  :
 :
                        Plaintiffs,  :        Docket No. 17-cv-5221 (RJS)
 :
        -against-  :
 :
EDWARD CHRISTOPER SHEERAN, p/k/a  :
ED SHEERAN, ATLANTIC RECORDING  :
CORPORATION, d/b/a ATLANTIC RECORDS,  :
SONY/ATV MUSIC PUBLISHING, LLC and  :
WARNER MUSIC GROUP CORPORATION  :
d/b/a ASYLUM RECORDS,  :
 :
                    Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' OBJECTIONS AND RESPONSES
## TO DEFENDANTS' RULE 56.1 STATEMENT

       Plaintiffs Kathryn Townsend Griffin, Helen McDonald, and The Estate of Cherrigale

Townsend hereby object and respond to the Rule 56.1 Statement submitted by defendants

Edward Christopher Sheeran p/k/a Ed Sheeran ("Sheeran"), Atlantic Recording Corporation

d/b/a Atlantic Records ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV"),

collectively referred to herein as "Defendants".

       Plaintiffs object to the Rule 56.1 Statement (Dkt. No. 72), for failure to identify "facts"

that are "material" to its motion. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)

(explaining that a fact is "material" only if it "might affect the outcome of the suit under the

governing law"). Rather than providing only material facts, Plaintiffs offer, instead, 32 pages

with over 200 numbered assertions, including general background information, legal arguments

and matters otherwise immaterial to this case. In addition, contrary to the requirement in Local

Rule 56.1(a), Defendants have failed to submit "separate, short and concise statement" of the

undisputed material facts. Defendants' individual assertions are verbose and include as many as

10 subparts and sometimes footnoted, factual assertions. "It is basically a compendium of the

arguments plaintiff plans to make at trial, rather than a short and concise statement of facts."

*Union Carbide Corp. v Montell N.V.,* 179 FRD 425, 428 (S.D.N.Y. 1998).

Subject to these objections, Plaintiffs, by their undersigned counsel, respectfully submit

the following response to Defendants' Rule 56.1 Statement.

## A.    Procedural Background

**Defendant Fact No. 1**

> **Plaintiffs Kathryn Townsend Griffin ("Kathryn"), Helen McDonald ("McDonald") and the Estate of Cherrigale Townsend (the "Estate") commenced this action on July 11, 2017 by filing a Complaint (the "Complaint").** *See* **Farkas Dec., at Exhibit 1.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 2**

> **This is a second action that Plaintiffs have commenced regarding the alleged infringement of Let's Get It On.** *See* **Dkt. No. 48.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 3**

> **On August 9, 2016, Plaintiffs filed a complaint (the "First Complaint") against Defendants and certain foreign individuals, alleging the same copyright infringement claim they allege in the Complaint (the "First Action").** *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 4**

On February 2, 2017, the Court dismissed the First Complaint as against all defendants – with the exception of Atlantic and Warner Music Group Corporation d/b/a Asylum Records ("WMG") – because Plaintiffs failed to effect service of process in a timely fashion. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 5**

On February 15, 2017, Plaintiffs voluntarily dismissed the First Complaint as against Atlantic and WMG. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 6**

On August 3, 2017, Plaintiffs dismissed the Complaint filed in this action as against WMG. *See* Dkt. No. 16.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 7**

By stipulation dated September 15, 2017, Plaintiffs dismissed the third, fourth and fifth claims for relief alleged in the Complaint as against each of the Defendants. *See* Dkt. No. 17.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 8**

As such, the extant claims comprise: (1) "Copyright Infringement" (the First Claim for Relief), (2) "Infringement of Copyright Claim for Statutory Damages" (the Second Claim for Relief), (3) "Demand for Accounting" (the Sixth Claim for Relief), and (4) "Preliminary and Permanent Injunction" (the Seventh Claim for Relief). *Id.*[1]

[1] The latter two "Claims for Relief" are not really claims for relief but simply remedies available for copyright infringement, as is the Second Claim for Relief, which is really on an invocation of the availability of Statutory Damages as a remedy for an alleged infringement.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 9**

Defendants filed an Answer to the Complaint on September 18, 2017. *See* Farkas Dec. at Exhibit 2.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 10**

With the exception of three depositions that were rescheduled due to a snowstorm that affected the travel plans of Plaintiffs and their counsel, fact discovery closed on March 28, 2018. *See* Dkt. No. 42.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 11**

On December 8, 2017, Dr. Alexander Stewart ("Stewart") propounded an expert musicologist report on behalf of Plaintiffs (the "Stewart Report"). *See* Farkas Dec. at Exhibit 6.[2]

[2] Before Plaintiffs commenced this action, Stewart authored an earlier report, which is attached as Visual Exhibit H to the Ferrara Report.

**Plaintiffs' Response**

Disputed in part. Dr. Stewart propounded a report on December 8, 2017 (Farkas Dec.

Exh. 6), and an earlier report dated June 3, 2015 (Visual Exhibit H to the Ferrara Report (Farkas

Dec., Exh. 4)) but Plaintiffs note that Dr. Stewart also propounded a preliminary report dated

June 9, 2015 which was also served on counsel for defendants, a copy of which is annexed to this

Rule 56 response as Exhibit 7.

**Defendant Fact No. 12**

On January 12, 2018, Dr. Lawrence Ferrara ("Ferrara") propounded an expert musicologist report on behalf of Defendants (the "Ferrara Report"). *Id*. at Exhibits 3, 4, 5.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 13**

Defendants deposed Stewart on May 30, 2018. *Id*. at Exhibit 7.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 14**

Plaintiffs waived their right to depose Ferrara. *Id*. at ¶ 8 n.1.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 15**

Expert discovery closed on June 15, 2018. *See* Dkt. No. 32.

**Plaintiffs' Response**

Undisputed

**B.**     *Let's Get It On*

**Defendant Fact No. 16**

Plaintiffs purport to hold partial beneficial interests in the musical composition copyright of the composition Let's Get It On ("LGO") *See* Complaint ¶ 18.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 17**

Assuming Plaintiffs were truly the legal heirs of Townsend, they have a 22.2% beneficial interest in the LGO composition, which derives solely from their alleged right to be paid a writer's share of royalties only (which equates to some 44.44% of 100% of the songwriter royalties attributable to LGO). See Ashby. ¶ 7.[3]

[3] Plaintiffs are separately paid a share of the public performance income directly by their Performing Rights Organization (PRO).

## Plaintiffs' Response

Undisputed.

## Defendant Fact No. 18

Edward Benjamin Townsend ("Townsend") authored LGO in 1973. See Complaint ¶ 17; McDonald Tr. at 23:4-13.[4]

[4] Excerpts of the McDonald Transcript ("McDonald Tr.") are annexed as Exhibit 10 to the Farkas Declaration.

## Plaintiffs' Response

Undisputed.

## Defendant Fact No. 19

When he was staying at the house of sister (Helen McDonald), Townsend created the music and lyrics for LGO while "he was sitting at the piano." *See* McDonald Tr. at 23:19-24:10, 87:25-88:23.

## Plaintiffs' Response

Undisputed.

## Defendant Fact No. 20

Upon authoring LGO, Townsend played the composition on piano and sang the lyrics for Helen. *Id.*

## Plaintiffs' Response

Undisputed.

## Defendant Fact No. 21

One day after creating the song, Townsend asked Marvin Gaye ("Gaye") if Gaye would agree to record the song; Gaye agreed to do so. *Id.* at 24:19-25:11.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 22**

Through a series of agreements, Townsend assigned away his interest in and to the copyright in LGO to Stone Diamond Music Co./Jobete Music Co., music publishing companies then owned by Berry Gordy and part of the Motown organization. See Ashby Dec. ¶¶ 2-7.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 23**

Townsend retained an interest in the right to receive songwriter royalties attributable to LGO.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 24**

On information and belief, Townsend assigned to Gaye – or Gaye otherwise acquired – a right to receive one-third of the songwriter royalties attributable to LGO. *Id.*; McDonald Tr. at 25:12-23.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 25**

On information and belief, prior to his death, Townsend had the right to receive two-thirds of the songwriter royalties attributable to LGO. *See* Ashby Dec. ¶ 6.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 26**

>Plaintiffs have succeeded to Townsend's beneficial interest in the songwriter royalties attributable to LGO. *See* Complaint ¶ 12.

**Plaintiffs' Response**

>Undisputed.

**Defendant Fact No. 27**

>On or about July 17, 1973, music publishers Stone Diamond Music Corp. ("Stone Diamond") and Cherritown Music Co. ("Cherritown Music"), as copyright owners, filed an Application for Registration of a Claim to Copyright with the U.S. Copyright Office for the musical composition LGO (the "Copyright Application"). *See* Farkas Dec. at Exhibit 12.

**Plaintiffs' Response**

>Undisputed.

**Defendant Fact No. 28**

>In support of the Copyright Application, Stone Diamond and Cherritown Music deposited sheet music with the U.S. Copyright Office for LGO  (the "LGO Deposit Copy"). *Id.*

**Plaintiffs' Response**

>Disputed in part. Sheet music was deposited with the U.S. Copyright Office in support of the Copyright Application, however from the face of the application it was Stone Diamond that prepared the application and deposited the sheet music, not Cherritown Music. Farkas Dec., Exh. 12 (Dkt. No. 67-12).

**Defendant Fact No. 29**

>The Copyright Application identifies Townsend as the sole author of LGO. *Id.*

**Plaintiffs' Response**

>Undisputed.

**Defendant Fact No. 30**

**The Copyright Application identifies February 14, 1973 as the date of publication of LGO.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 31**

**The Copyright Office ultimately registered LGO for copyright – as memorialized by the LGO Deposit Copy – under Registration No. EP 314589 (the "Copyright Registration").** *Id.*

**Plaintiffs' Response**

Disputed in part. The Copyright Office registered the copyright for LGO under

Registration No. EP 314589 but Plaintiffs contend that the copyright registration for LGO is

memorialized in the Certificate of Registration, not the deposit copy.

**Defendant Fact No. 32**

**Gaye recorded what would become the first commercially released sound recording of Let's Get It On (the "LGO Recording") on March 22, 1973. See Farkas Dec. at Exhibit 14.[5]**

[5] **The album containing the LGO Recording – also titled Let's Get It On – contains the so-called "full" version of the LGO Recording. Gaye also recorded a "single" version, shorter in length.**

**Plaintiffs' Response**

Undisputed. With respect to footnote 5, Plaintiffs contend that there were not two

separate recordings; rather, the "single" version is the same recorded material as the "full" album

version, but edited to be shorter in length.

**Defendant Fact No. 33**

**Plaintiffs do not claim to have any right, title or interest of any kind in the sound recording copyright to the LGO Recording, nor do they claim to have any right, title or interest in the LGO Recording. *See* Complaint ¶ 17.**

**Plaintiffs' Response**

Disputed. Plaintiffs are beneficial owners of Ed Townsend's producer interest and related

royalties in the sound recording because Ed Townsend is the producer of the recording. Exh. 9

(liner notes indicating Townsend is the producer of Let's Get It On).

**Defendant Fact No. 34**

> In discovery, Defendants requested that Plaintiffs provide "[a]ll documents concerning any copyright registrations or filings with the U.S. Copyright Office relating to LGO," and "[t]rue and correct copies of all published sheet music for LGO." *See* Farkas Dec. at Exhibit 12.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 35**

> In response, Plaintiffs produced a single document: the Copyright Registration for LGO that contained the sheet music deposited with the Copyright Office, *i.e.,* the LGO Deposit Copy. *Id.*

**Plaintiffs' Response**

Disputed only to the extent that the copyright registration for Let's Get it On (Dkt No.

67-4, pp. 4-5) and the sheet music deposited with the Copyright Office (Dkt No. 67-4, pp. 6-10)

are separate documents.

**Defendant Fact No. 36**

> The musical elements included in the LGO Deposit Copy include the composition's key, meter, harmony (i.e., chord progressions), rhythm, melody, lyrics and song structure. *See* Ferrara Dec. ¶ 3.

**Plaintiffs' Response**

Disputed to the extent that the LGO Deposit Copy also includes implies musical

elements. The bass-line, for example, is not notated but it is implied in the LGO Deposit Copy

which indicates where each chord change occurs and that dictates where the bass notes go,

rhythmically and the actual notes based on the root of the chord. Stewart Tr., 148:9--149:6.

Similarly, the guitar part is also implied in the chord changes of the LGO Deposit Copy. *Id.*

149:7-18 ("any guitarist could pick up guitar and play the chords along with [the deposit

copy].").

**Defendant Fact No. 37**

> **The LGO Deposit Copy does not include percussion/drums, bass-guitar, guitar, Marvin Gaye's vocal performances, horns, flute, piano, strings or any of the performance elements, such as the tempo in which to perform the composition, contained in the LGO Recording. *Id.* ¶ 4.**

**Plaintiffs' Response**

Disputed. The bass-line is not notated but it is implied in the LGO Deposit Copy because

the LGO Deposit Copy indicates where each chord change occurs and that dictates where the

bass notes go, rhythmically and the actual notes based on the root of the chord. Stewart Tr.,

148:9:-149:6. The guitar part is also implied in the chord changes of the LGO Deposit Copy Id.

149:7-18 ("any guitarist could pick up guitar and play the chords along with [the deposit

copy]."). Further, the melody in the LGO Deposit Copy is a very close transcription of Marvin

Gaye's actual vocal performances on the LGO Recording. Stewart Dec. ¶ 81. Tempo is a

compositional element, as well as a performance element.  Stewart Dec., ¶ 79.

**Defendant Fact No. 38**

> **Unlike the LGO Deposit Copy, the LGO Recording includes, among other things, tempo, percussion/drums, electric guitar, bass-guitar, piano, horns, flute, strings and Marvin Gaye's vocal performances. *Id.* ¶¶ 4, 15.**

**Plaintiffs' Response**

Disputed to the extent that the LGO Deposit Copy also includes implies musical

elements. The bass-line, for example, is not notated but it is implied in the LGO Deposit Copy

which indicates where each chord change occurs and that dictates where the bass notes go,

rhythmically and the actual notes based on the root of the chord. Stewart Tr., 148:9-149:6.

Similarly, the guitar part is also implied in the chord changes of the LGO Deposit Copy Id. 149:7-18 ("any guitarist could pick up guitar and play the chords along with [the deposit copy].").

C.   *Thinking Out Loud*

**Defendant Fact No. 39**

> **On or about February 3, 2014, Sheeran and Amy Wadge ("Wadge") co-authored the musical composition titled Thinking Out Loud ("TOL") in Suffolk, England. See Sheeran Tr. at 62:12-20, 128:8-129:24; Wadge Dec. ¶¶ 3-7.[6]**

> [6] **Excerpts of the Sheeran Transcript ("Sheeran Tr.") are annexed as Exhibit 9 to the Farkas Declaration.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 40**

> **Sheeran testified that he did not copy LGO when authoring TOL, and that he and Wadge independently created TOL at his home. *See* Sheeran Tr. 78:12-79:18.**

**Plaintiffs' Response**

Disputed. Sheeran was never asked about copying and the testimony cited contains no denial of copying or claim of independent creation. Here is the actual testimony:

> Q.   At the time that Ms. Wadge and you were writing "Thinking Out Loud", was there any discussion about any similarities or possible perceptions to that and "Let's Get It On"?

> A.   No.

> Q.   Okay. Any time after that, before it was released?

> A.   No.

> Q.   Okay.

> A.   It was always called the Van Morrison song, always.

Q.      Okay.

MR. FRANK: Why was it called the Van Morrison song?

Q.      Yeah, why was it called the Van Morrison song?

A.      It emulates the sounds, I guess; piano, guitar, drums, song about love.

Sheeran Tr.,78:23-79:18.

**Defendant Fact No. 41**

On February 5, 2014, Sheeran recorded what would become the commercially released version of TOL at Sticky Studios in Surrey, England. *Id*. at 128:8-129:24; *see also* Gosling Dec. ¶ 3.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 42**

The commercially released recording of TOL includes, among other things, electric-guitar, bass-guitar, piano, organ, lyrics, vocals and percussion/drums. See Ferrara Dec. ¶ 4.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 43**

Sheeran and Wadge did not compose the bass-guitar part in TOL, and they did not compose the drum part in TOL. See Sheeran Tr. 128:8-130:23; Gosling Dec. ¶¶ 3-6.

**Plaintiffs' Response**

Disputed. Sheeran testified that Gosling "added" the drums and bass; there is no

testimony as to who composed the drums and bass. Sheeran Tr., 128:8-130:23; Gosling Dec. ¶¶

3-6.

**D.      Musical Composition of the LGO Deposit Copy and TOL**

*Key & Meter*

**Defendant Fact No. 44**

> The LGO Deposit Copy is in the key of E-flat major and in 4/4 meter. See Ferrara Dec. ¶ 5.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 45**

> TOL is in the key of D major and in 4/4 meter. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 46**

> 4/4 meter is also termed "common time," it is a foundational musical building block and countless musical compositions are written in 4/4 meter (many of which predate LGO). *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 47**

> Stewart testified at his deposition that he did not consider the key of the two works in performing his analysis. See Stewart Tr. at 275:5-16.[1]

**Plaintiffs' Response**

Disputed. Stewart testified only that he excluded key as an element not original to "Let's Get It On" when comparing the two songs. The Stewart Report makes clear his analysis of similarity of key between the two works. Farkas Dec., Exh. 6, Stewart Report, at p. 2; Stewart Tr., 102:3-103:4 ("these songs [have] almost exactly the same tempo . . . [and have] two keys

---

[1] Excerpts of the Stewart Transcript ("Stewart Tr.") are annexed as Exhibit 7 to the Farkas Declaration.

that are as close together as can possibly be in Western music, E-flat and D, these keys are so close, that unless you have perfect pitch, which is something that probably less than one one/hundredth  of one percent of people have, you would not even realize they were in different keys because they would sound the same because they're so close.")

*Harmony*

**Defendant Fact No. 48**

> **The LGO Deposit Copy features a I-iii-IV-V7 (or a 1-3-4-5) chord progression throughout most of the composition. See Ferrara Dec. ¶¶6-8; Ferrara Report ¶¶ 14-29.[8]**

[8] A "7" denotes the addition of a pitch that is the interval of a minor seventh above the root or name of the chord. *Id.* ¶ 6 n.1; Ferrara Report ¶ 18 n. 9.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 49**

> **TOL features multiple, different chord progressions; some segments of the composition feature a chord progression that is similar, but not identical, to the chord progression used in LGO and reflected on the LGO Deposit Copy (and in the LGO Recording). *Id.***

**Plaintiffs' Response**

Disputed. Plaintiff contends that for at least the first 24 seconds of TOL, the chords progressions in the two songs are identical [and the single pitch that would make the second chord different is notably absent in the transcriptions of both experts], and that for more than 70% of TOL, the chord progression is "extremely similar" to LGO. Stewart Dec., ¶¶ 9, 13, 76; Farkas Dec., Exh. 3 (Ferrara Report, Musical Example 1 on p. 17.); Stewart Tr.,134:24-135:05.

**Defendant Fact No. 50**

> **Segments of TOL feature chord progressions that are substantially different from any chord progression in LGO; for example, the following**

chord progression occurs in the last two bars of the chorus sections in TOL: vi-V-IV-1/3 ii7-V-I. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 51**

In addition, TOL also features the following chord progressions, which are similar, but not identical, to the chord progressions in LGO: (a) I5-I/3-IV-Vsus2; (b) I5-I/3-IV5-V5; (c) I-I/3-IV-Vsus4; (d) I-I/3-IV-V; and (e) I-I/3-IV-V11. *Id.*

**Plaintiffs' Response**

Disputed. Many of the harmonic details added to the chord progressions above have not

been supported by actual transcriptions of the piano and guitar parts in either song.

**Defendant Fact No. 52**

The basic I-iii-IV-V chord progression used in LGO was commonplace prior to LGO. *Id.*; *see also* **Ferrara Report ¶¶ 19, 123-126; Stewart Tr. at 134:4-142:15.**

**Plaintiffs' Response**

Disputed. The chord progression was not "commonplace" before the release of Let's Get

It On. Stewart Tr., 136:4-8. Out of hundreds of thousands of songs composed prior to Let's Get

It On, only a dozen or so were identified that contained this chord progression. *Id.* at 136:11-

137:7; Ferrara Report, pp. 123, 142. Stewart: "I wouldn't say it's that common" Stewart Tr.,

136:7-8.

**Defendant Fact No. 53**

Ferrara identified at least thirteen songs that predate LGO that use the same chord progression used in LGO. See Ferrara Report ¶¶ 19, 123-126.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 54**

> **Of the thirteen artists who commercially released those thirteen songs, Townsend listened to at least four of them. See McDonald Tr. at 20:16-23:3.**

**Plaintiffs' Response**

Disputed. Townsend listened to four artists, Buddy Holly, Elton John, Beach Boys and Rolling Stones in a general sense. McDonald Tr., 20:16-23:3. There is no evidence that Townsend ever listened to the specific songs by these artists identified by Dr. Ferrara. Ferrara Report, ¶¶ 19, 26.

**Defendant Fact No. 55**

> **The I-iii-IV-V chord progression also appears in at least two guitar method books. See Ferrara Dec. ¶ 7; Ferrara Report at Visual Exhibits D and E.**

**Plaintiffs' Response**

Undisputed. Plaintiffs note that the two guitar method books were both published more than twenty-five years after Let's Get It On was written. *See* Ferrara Report at Visual Exhibits D and E indicating copyright notices of 2000 and 2016, respectively.

**Defendant Fact No. 56**

> **One such book noted that this chord progression is not original to LGO, but stated that LGO did not plagiarize prior songs using the same chord progression since the progression is so "common." *See* Ferrara Report at Visual Exhibit E.**

**Plaintiffs' Response**

Disputed. Plaintiffs do not dispute that one of the books says this but dispute that the chord progression was "common." Stewart Tr., 136:4-8. Out of hundreds of thousands of songs composed prior to Let's Get It On, only a dozen or so were identified that contained this chord progression. *Id.* at 136:11-137:7; Ferrara Report, pp. 123, 142. Stewart: "I wouldn't say it's that common" Stewart Tr., 136:7-8.

**Defendant Fact No. 57**

> Stewart, Plaintiffs' musicologist, admitted at his deposition that I-iii-IV-V is "a common progression," that "it's not original," "that other songs have this chord progression," and that "[t]hese four chords have been used in other compositions prior to Let's Get It On," See Stewart Tr. at 134:4-142:15.[9]

> [9] Stewart initially denied it was "common," but later admitted that he had "no problem" with, and therefore agreed with, a sentence from an elementary guitar method book that described the chord progression as "common." See Stewart Tr. 136:4-8 and 139:16-140:23.

**Plaintiffs' Response**

Disputed. Stewart explained that by "not original" he meant other songs used this chord progression prior to Let's Get it On. Stewart Tr.,135:21-136:3. Stewart was consistent in this use of "original" through the deposition as was defense counsel. Stewart Tr., 246:8-15, 279:8-15.

With respect to footnote 9, Stewart's statement "no problem" referred to the book's statement that Let's Get It On did not plagiarize any work, not that it was common before the release of LGO. Stewart Dec., ¶ 7, n. 2; Stewart Tr., 140:23 – 142:15.

**Defendant Fact No. 58**

> Stewart also admitted that the claimed similarities in the chord progression, standing alone, are not indicative of copying. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 59**

> The harmonic rhythm in LGO is a four-bar progression, which features two chords in bar 1, one chord in bar 2, two chords in bar 3 and one chord in bar 4. See Ferrara Dec. ¶ 8.

**Plaintiffs' Response**

Disputed. The harmonic rhythm in Let's Get It On is a four-chord progression in which the second and fourth chords are anticipated and is identical to the harmonic rhythm in TOL.

Stewart Dec., ¶¶ 18-22. Harmonic rhythm concerns "the rate of *change* of the chords" Ferrara

Report, 1-12-18 ¶ 7b, p. 4. (emphasis added); Stewart Dec. ¶18. The harmonic rhythm of LGO

can be notated as a four-bar progression or a two-bar progression and the internal relationship of

the rhythms would remain the same. Stewart Dec.,¶ 22.

**Defendant Fact No. 60**

> **The harmonic rhythm in TOL features a two-bar chord progression that generally features two chords per bar in which the second and fourth chords anticipate the third beat of their respective bars. *Id.***

**Plaintiffs' Response**

Undisputed that it has been notated this way. Plaintiff notes that it could also be notated

as a four-bar chord progression. Stewart Dec. ¶ 22.

*Vocal Melodies*

**Defendant Fact No. 61**

> **Stewart testified that the LGO Deposit Copy has the following structure: (1) verse (2) chorus (3) verse (4) verse (5) bridge (6) chorus/verse[10] (7) bridge, and (8) verse/outro. *See* Stewart Tr. at 118:13-131:20.**

[10] Stewart described the sixth section of the LGO Deposit Copy as "nebulous." He could not resolve whether to identify it as a chorus or verse.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 62**

> **In the Stewart Report, Stewart opines that TOL has the following structure: (1) verse A (2) verse B (3) bridge/pre-chorus (4) chorus (5) verse A2 (6) verse B2 (7) bridge/pre-chorus (8) chorus (9) interlude, and (10) chorus. *See* Stewart Report at p. 2.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 63**

Thus, objective differences exist between the structure of each work. See Stewart Tr. at 118:13-131:20; Stewart Report p. 2; Ferrara Dec. ¶10.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 64**

In addition, countless songs in many different genres feature verses, choruses and bridges as these are generic structural building blocks. *See* Ferrara Dec. ¶ 10.

**Plaintiffs' Response**

Undisputed.

*Lyrics*

**Defendant Fact No. 65**

Stewart has admitted that "few important lyrical similarities exist" between the LGO Recording and TOL, and, as detailed below the lyrics in the LGO Deposit Copy are substantially the same as the lyrics in the LGO Recording. *See* Stewart Report pp. 12-13; infra ¶¶ 138-141.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 66**

The Stewart Report does not identify any specific lyrical similarities. *See* Stewart Report pp. 12-13.

**Plaintiffs' Response**

It is undisputed that there are no lyrical similarities between the two songs at issue in this

case.

**Defendant Fact No. 67**

Stewart instead contends that both works contain themes of "sexual and erotic overtones" and that both works "are celebrations of love to a particular woman." *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 68**

The Stewart Report does not contain any further analysis of the lyrics. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 69**

In fact, Townsend did not intend for the lyrics to LGO to have sexual or erotic themes; he actually intended the lyrics of LGO to express "the business of getting on with life" in the face of drug addiction. See Farkas Dec. at Exhibit 14; Kathryn Tr. 113:7-114:16.[11]

[11] Excerpts of the deposition transcript of plaintiff Kathryn Townsend Griffin ("Kathryn Tr.") are annexed as Exhibit 11 to the Farkas Declaration.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 70**

The lyrics of TOL address lasting romantic love. See Ferrara Report at Visual Exhibit C.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 71**

The pitch sequence, melodic rhythms, and the melodic phrase structures are objectively different in the melodies in the LGO Deposit Copy as compared to TOL. *See* Ferrara Dec. ¶ 12.

**Plaintiffs' Response**

Disputed. The melodic hook and opening phrase (Melody "A") of Let's Get It On are very similar to the pitch sequence, melodic contour, and rhythmic placement of the verses in

Thinking Out Loud. Stewart Dec., ¶¶ 56-68. Melody "A" also has similar phrasing as the verse melody in TOL. Melody "B" in LGO is similar to the chorus melodies in TOL. Stewart Dec., ¶¶ 69-72.  Melody "C" in LGO is similar to the interlude section of TOL.  Stewart Dec., ¶¶7 3-75.

**Defendant Fact No. 72**

> **Stewart did not provide an analysis of the melody of the LGO Deposit Copy.** *Id.*

**Plaintiffs' Response**

Disputed. Stewart analyzed the melody of the Let's Get It On recording and then compared the deposit copy and found that is supported all of his opinions. Stewart Tr. 82:16-24; p. 85:12-22. Moreover, the deposit copy is a transcription of the single version recording of Let's Get It On. Stewart Dec., ¶¶ 81-86;

**Defendant Fact No. 73**

> **The overall vocal melodies in the LGO Deposit Copy are, for the most part, substantially the same as the overall melodies in the LGO Recording.** *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 74**

> **Stewart analyzes threes specific melodies, Melodies A, B and C (defined below) in the LGO Recording.**

**Plaintiffs' Response**

Disputed to the extent that, in addition to Melodies A, B and C, Dr. Stewart also analyzed additional material in the LGO Recording. Stewart Tr., 276:23-277:13; Stewart Dec., ¶¶ 56-61; Frank Dec., Exh. 7 (Stewart June 9, 2015 Report), p. 7.

**Defendant Fact No. 75**

**Melody B and Melody C are virtually identical in the LGO Deposit Copy and in Stewart's transcriptions of the LGO Recording.** *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 76**

**As for Melody A there are similarities and differences between the LGO Deposit Copy and the LGO Recording as transcribed by Stewart; for example, there are more pitches in the LGO Deposit Copy than in the LGO Recording, which makes Melody A in the LGO Deposit Copy even less similar to Melody A in TOL.** *Id.*

**Plaintiffs' Response**

Disputed. The cited portion of Dr. Ferrara's declaration does not contain any source for this statement. The deposit copy is a transcription of the LGO single with no significant differences. Stewart Dec., ¶¶ 81-86. There are more pitches in Melody A as it is transcribed in the deposit copy.

**Defendant Fact No. 77**

**Given the similarities in the vocal melodies in the LGO Deposit Copy and the LGO Recording, Defendants respectfully refer the Court to the analysis of the vocal melodies in the LGO Recording below.** *See* ¶¶ 93-137 *infra.*

**Plaintiffs' Response**

Plaintiffs object to Defendant Fact No. 88 because there is not statement of fact.

*The Two Works As A Whole*

**Defendant Fact No. 78**

**The LGO Deposit Copy and TOL both feature variants of the commonplace I-iii-IV-V chord progression (a chord progression that was commonplace prior to the LGO Deposit Copy); the key of each composition is different; no lyrical similarities exist; the vocal melodies and rhythms are objectively different; the song structures contain many differences and any structural similarity is generic; each composition embodies chord progressions that are significantly different to any chord progressions in the**

**other compositions; and 4/4 meter is "common time," a musical building block, and probably the most common meter used in popular music. See Ferrara Dec. ¶¶ 13-14.**

**Plaintiffs' Response**

Disputed. The I-iii-IV-V chord progression was not commonplace prior to the LGO deposit copy. Stewart Tr., 136:4-8.; the key of each composition is as close as is physically possible; the vocal melodies and rhythms have significant similarities. Stewart Dec., ¶ 14, 47, 56-75, 79. The same fundamental chord progression is embodied in the vast majority of both songs. Stewart Dec., ¶¶ 7, 13, 76, 78.

**Defendant Fact No. 79**

**Stewart conceded that the two works, as a whole, are not "identical" or "virtually identical" to one another. *See* Stewart Tr. at 275:17-25.**

**Plaintiffs' Response**

Undisputed.

**E.    Musical Comparison of the LGO Recording and TOL[12]**

[12] The Stewart Report only compares the LGO Recording with TOL and does not compare, as is required as a matter of law, the LGO Deposit Copy with TOL. The entire analysis in this Section is therefore provided solely to show that even were one to compare TOL to the LGO Recording – which is contrary to applicable law as the metes and bounds of Plaintiffs' infringement claim is determined by reference solely to the LGO Deposit Copy – there is no similarity of protectible expression. Although Ferrara correctly compared the actual copyrighted work allegedly infringed – the LGO Deposit Copy – with TOL, assuming arguendo, that the Court believes a comparison of the LGO Recording and TOL is warranted, Ferrara also has compared the LGO Recording to TOL.

**Plaintiffs' Response**

Disputed with respect to footnote 12. Dr. Stewart reviewed the deposit copy for Let's Get It On and found that it supported the opinions in his report, but he did not reference it in his report. Stewart Tr., 85:12-22; 155:12-22. Dr. Stewart also identified that the LGO deposit copy is

a transcription of the LGO single. Stewart Dec., ¶¶ 81-86. Plaintiff objects to the remainder of

footnote 12 as failing to state facts, but instead defendants' analysis of the law.

*Key, Meter & Tempo*

**Defendant Fact No. 80**

> **The LGO Recording is recorded in the key of E-flat major and in 4/4 meter.** ***See*** **Ferrara Dec. ¶ 16.**

**Plaintiffs' Response**

> Undisputed.

**Defendant Fact No. 81**

> **TOL is recorded in the key of D major and in 4/4 meter.** ***Id.***

**Plaintiffs' Response**

> Undisputed.

**Defendant Fact No. 82**

> **The LGO Recording is recorded at 82 beats per minute; TOL is recorded at 79 beats per minute.** ***Id.***

**Plaintiffs' Response**

> Undisputed.

**Defendant Fact No. 83**

> **Stewart testified at his deposition that he did not consider the keys or tempos (i.e., the beats per minute) of the two recordings in performing his analysis. See Stewart Tr. at 275:5-16.**

**Plaintiffs' Response**

> Disputed. Stewart testified only that he excluded key and tempo as an element not

original to "Let's Get It On" when comparing the two songs. The Stewart Report makes clear his

analysis of similarity of key and tempo between the two works. Stewart Tr,, 101:18-102:3

("these songs [have] almost exactly the same tempo . . . [and have] two keys that are as close

together as can possibly be in Western music, E-flat and D, these keys are so close, that unless

you have perfect pitch, which is something that probably less than one one/hundredth of one

percent of people have, you would not even realize they were in different keys because they

would sound the same because they're so close.") Stewart Report, p. 2.; Stewart Dec., ¶ 79.

*Harmony*

**Defendant Fact No. 84**

> **The LGO Recording features a I-iii-IV-V7 (or a 1-3-4-5) chord
> progression throughout most of the recording. See Ferrara Dec. ¶ 17.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 85**

> **As detailed above, TOL features multiple chord progressions; while
> some segments feature a chord progression that is similar, but not identical,
> to the chord progression used in the LGO Recording (a chord progression
> that was common place and in usage prior to the creation of LGO), other
> sections of TOL use an entirely different chord progression. See ¶¶48-60
> *supra*.**

**Plaintiffs' Response**

Disputed. Plaintiffs contend that the chord progressions in the two songs are virtually

identical throughout. Stewart Tr.,134:24-135:05; Stewart Dec., ¶¶ 5-13. Plaintiffs also dispute

that the chord progression was "commonplace." Stewart Tr., 136:4-8. Out of hundreds of

thousands of songs composed prior to Let's Get It On, only a dozen or so were identified that

contained this chord progression. *Id*. at 136:11-137:7; Ferrara Report, pp. 123, 142. Stewart: "I

wouldn't say it's that common" Stewart Tr., 136:7-8.

**E.    Musical Comparison of the LGO Recording and TOL[13]**

[13] The Stewart Report only compares the LGO Recording with TOL and does not compare, as is
required as a matter of law, the LGO Deposit Copy with TOL. The entire analysis in this Section is
therefore provided solely to show that even were one to compare TOL to the LGO Recording – which

is contrary to applicable law as the metes and bounds of Plaintiffs' infringement claim is determined by reference solely to the LGO Deposit Copy – there is no similarity of protectible expression. Although Ferrara correctly compared the actual copyrighted work allegedly infringed – the LGO Deposit Copy – with TOL, assuming arguendo, that the Court believes a comparison of the LGO Recording and TOL is warranted, Ferrara also has compared the LGO Recording to TOL.

*Song Structure*

**Plaintiffs' Response**

Disputed. Footnote 13 only contains legal arguments and no statement of fact. Dr.

Stewart analyzed the deposit copy. See Plaintiff's Response to Defendant Fact No. 72.

**Defendant Fact No. 86**

Stewart opined in the Stewart Report that the "single" version of the LGO Recording (with a length of 4:02) has the following structure: (1) verse (2) bridge (3) verse (4) short bridge, and (5) verse. *See* Stewart Report p. 2.

**Plaintiffs' Response**

Disputed. Stewart now agrees with Dr. Ferrara's analysis that that single version of the

LGO Recording has the same structure as the deposit copy. Ferrara Report, ¶¶ 11, 46; Stewart

Tr. at 118:13-131:20 (agreeing with Dr. Ferrara's structure of deposit copy). This is because it is

a transcription of it. Stewart Dec., ¶¶ 81-86.

**Defendant Fact No. 87**

In regard to the "full" version of the LGO Recording (with a length of 4:51), Stewart opined that it has the following structure: (1) verse (2) bridge (3) verse (4) bridge, and (5) verse. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 88**

As detailed above, Stewart opines that TOL has the following structure: (1) verse A (2) verse B (3) bridge/pre-chorus (4) chorus (5) verse A2 (6) verse B2 (7) bridge/pre-chorus (8) chorus (9) interlude, and (10) chorus. See ¶¶ 61-64 *supra*.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 89**

Thus, objective differences exist between the structure of each work. See Stewart Report p. 2; Ferrara Dec. ¶¶ 9-10, 18.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 90**

Countless songs in many genres feature verses, choruses and bridges, which are generic structural building blocks. See Ferrara Dec. ¶¶ 9-10, 18.

**Plaintiffs' Response**

Undisputed.

*The Use of An Occasional Blue Note*

**Defendant Fact No. 91**

In the Stewart Report, Stewart opines that the LGO Recording and TOL "occasionally" use a "blue" third note. See Stewart Report p. 3.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 92**

Stewart has admitted (and Ferrara agrees) that the occasional use of a "blue" third note was not original to LGO and in fact was commonplace prior to LGO. See Stewart Tr at 157:7-158:3; Ferrara Dec. ¶ 19.

**Plaintiffs' Response**

Undisputed.

*Vocal Melodies*

**Defendant Fact No. 93**

> **Generally speaking, the vocal melodies in the LGO Recording contain many fully flatted third notes (notes that are fully a half-step lower than the third scale degree in a major key). See Ferrara Report ¶ 49.**

**Plaintiffs' Response**

Undisputed, but subject to clarification. As would be expected given the blues aesthetic at play in both these songs, these thirds contain microtonal variations that are difficult to represent precisely in notation. See Stewart Report at pp. 3, 12; Stewart Dec., ¶ 66.

**Defendant Fact No. 94**

> **In contrast, the vocal melodies in TOL do not contain any fully flatted third notes.** *Id.*

**Plaintiffs' Response**

Disputed. Many of Sheeran's thirds in TOL begin on or pass through a fully-flatted third before coming to rest on a major or non-flatted third. Stewart Report, p. 3.

*Vocal Melody A*

**Defendant Fact No. 95**

> **In Example 3 of the Stewart Report, Stewart transcribes and compares (a) the opening vocal melody of the LGO Recording and (b) the opening vocal melody of TOL ("Melody A").** *See* **Stewart Report pp. 7-8.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 96**

> **There are 9 pitches in Melody A of the LGO Recording and 11 pitches in Melody A of TOL.** *See* **Ferrara Dec. ¶ 20;** *see also* **Ferrara Report ¶¶ 79-92.[13]**

[13] Again, there are more pitches in Melody A in the LGO Deposit Copy than in the LGO Recording, which makes Melody A in the LGO Deposit even less similar to TOL. In particular, there are 14 pitches in Melody A of the LGO Deposit Copy and only 3 (less than 22%) line up in the same order as the pitches in Melody A of TOL, even if one adopts Stewart's method (detailed below) of identifying in his charts, a "flatted 3" in LGO as the same pitch as a "3" in TOL. *See* Ferrara Dec. ¶ 20 n.3.

**Plaintiffs' Response**

Undisputed except, with respect to footnote 13, there are only insignificant variances in

the LGO deposit copy and single version recording. Stewart Dec., ¶ 82.

**Defendant Fact No. 97**

> Of the 11 pitches in TOL, as transcribed by Stewart, only 3 of the 11
> pitches (less than 30%) in Melody A of TOL line up in the same order as the
> pitches in Melody A of the LGO Recording. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 98**

> Ferrara opines that the fact that only 3 pitches out of respective 9-
> pitch and 11-pitch melodies contained in the LGO Recording line up in the
> same order is insignificant and manifests fragmentary and minimal
> similarities, at best. *Id.*

**Plaintiffs' Response**

Undisputed that this is Dr. Ferrara' opinion. Disputed. The insertion of a single brief

repeated note (2) does not significantly alter the pitch sequence. Stewart Report, p. 7-8. While

the pitch sequences of the melodies are not perfectly aligned, the pitch sequences themselves

have significant similarities. Stewart Dec., ¶ 63.

**Defendant Fact No. 99**

> The third allegedly similar pitch in Melody A as identified in the
> Stewart Report results from Stewart omitting the difference between scale
> degree 3 in Melody A of TOL and scale degree (flatted) b3 in Melody A of the
> LGO Recording; in other words, the labeling by Stewart of a "3" rather than
> a "b3" is incorrect as these are two different notes, or pitches. *Id.*

**Plaintiffs' Response**

Disputed. The labeling by Dr. Stewart of a "3" rather than a "b3" is correct because

"[c]ontemporary musicological research regards blue thirds ranging from minor to major (and

sevenths) as a single tonal area (toneme) rather than as different scale degrees or than as a series

of discrete pitches thereby justifying the use of a single integer (3) to represent the entire

spectrum of thirds." Stewart Report, p. 3 (internal citations omitted); Stewart Dec., ¶ 66..

**Defendant Fact No. 100**

> **The Stewart Report then examines altered versions of Melody A; first, Stewart examines "eight" nonconsecutive pitches in Melody A from the LGO Recording, and then he compares them to the first eight pitches of Melody A in TOL.** *Id.*

**Plaintiffs' Response**

Disputed. The Stewart report does not examine "altered" versions of Melody A. The

Stewart report plainly examines the first eight syllabic pitches in LGO and TOL. Stewart Report,

p. 7. ("[t]he first phrase from LGIO contains eight syllables. Comparing the pitches to which

these syllables are set with those of the first eight of TOL yields a very similar sequence"

**Defendant Fact No. 101**

> **In doing so, Stewart deletes the second scale degree "2" in Melody A of the LGO Recording.** *Id.*

**Plaintiffs' Response**

Disputed. There are no "deletions."  This note is not part of Dr. Stewart's analysis

because it is not a syllabic pitch. The Stewart report plainly examines the first eight syllabic

pitches in LGO and TOL. Stewart Report, p. 7. ("[t]he first phrase from LGIO contains eight

syllables. Comparing the pitches to which these syllables are set with those of the first eight of

TOL yields a very similar sequence"

**Defendant Fact No. 102**

> **Stewart has deleted the second scale degree "2" in the LGO Recording to manufacture a "3-2-1-2" order of pitches that does not exist in Melody A of the LGO Recording; this also contradicts Stewart's own transcription in Example 3 of the Stewart Report.** *Id.*

**Plaintiffs' Response**

Disputed. The Stewart Report plainly examines the first eight syllabic pitches in LGO and TOL. Stewart Report p. 7. The second scale degree "2" in the LGO Recording is not a syllabic pitch. *Id.*

**Defendant Fact No. 103.**

> **The "3-2-1-2" melody transcribed by Stewart is not the actual melody of Melody A as it appears in either the LGO Deposit Copy or the LGO Recording. *Id.***

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 104**

> **Stewart also continues to inaccurately transcribe the middle of the pitch sequence with a "3" when it should be a "b3." *Id.***

**Plaintiffs' Response**

Disputed. Stewart has accurately transcribed the middle pitch sequence. The labeling by Dr. Stewart of a "3" rather than a "b3" is correct because "[c]ontemporary musicological research regards blue thirds ranging from minor to major (and sevenths) as a single tonal area (toneme) rather than as different scale degrees or than as a series of discrete pitches thereby justifying the use of a single integer (3) to represent the entire spectrum of thirds." Stewart Report, p. 3 (internal citations omitted).

**Defendant Fact No. 105**

> **The Stewart Report (on the top of Page 8) then creates another "version" of TOL (that does not exist in TOL) by deleting two more notes, or scale degrees (1 and 6) in Melody A of TOL. *Id.***

**Plaintiffs' Response**

Disputed. The top of page 8 of the Stewart Report presents "[a]nother way to analyze this melodic sequence is to look at pitches that have important structural functions." Stewart Report, p. 8. The top of page 8 does not create another version of TOL. *Id.*

**Defendant Fact No. 106**

      **Although Stewart claims that these deletions show similarities in "melodic contour," the notes deleted by Stewart (which highlight the differences between the two songs) are important in creating the actual melodic contour in TOL. *Id.***

**Plaintiffs' Response**

Disputed. Dr. Stewart "placed two pitches in TOL in parentheses because melodically they function as neighbor tones and/or because of their extremely brief duration and weak rhythmic placement." Stewart Report, p. 8.

**Defendant Fact No. 107**

      **The deleted scale degree 6 (the first syllable of the last lyric "before" in Melody A) plays a significant role in the (different) melodic contour in TOL and deleting that note alters the melodic shape of this vocal melody. *Id.***

**Plaintiffs' Response**

Disputed. There are no "deletions". Dr. Stewart placed this note in parentheses because melodically it functions as a neighbor tone and/or because of its extremely brief duration and weak rhythmic placement. Stewart Report, p. 8.

**Defendant Fact No. 108**

      **The aforementioned note, which Stewart deletes, occurs consistently in three out of the four iterations of Melody A in TOL. *Id.***

**Plaintiffs' Response**

  Disputed. There are eight, not four, iterations of Melody A in TOL. Stewart June 9 2015 Report, p. 5; Stewart Report, p. 7. The note occurs only in five out of eight iterations. Frank Dec., Exh. 6.

**Defendant Fact No. 109**

>    **Even after making "deletions," only 4 of 9 pitches line up in the same order in Melody A of each recording; thus, more than 50% of the pitches are in a different order.** *Id.*

**Plaintiffs' Response**

Disputed. Stewart made no deletions; rather, he notated "two pitches in TOL in parentheses because melodically they function as neighbor tones and/or because of their extremely brief duration and weak rhythmic placement." Stewart Report, p. 8. Plaintiffs do not dispute that 4 of the 9 pitches in Melody A of each recording are aligned.

**Defendant Fact No. 110**

>    **The Stewart Report does not analyze the melodic rhythms in Melody A of each recording.** *See* **Ferrara Dec. ¶ 21.**

**Plaintiffs' Response**

Disputed. Stewart Report p. 7 "Example 3 compares the opening phrase in both songs. As can be easily seen, the phrases are a similar length overlapping the bar line. They begin on exactly the same beat (halfway between beats two and three – the "and" of two). Stewart Report p. 8: "As mentioned earlier, in terms of the rhythms, phrasing, and metric placement, the phrases in example [3] also share significant similarities. Both begin on the same beat (the "and" of two), straddle the bar line of the two-measure pattern repeated in the bass line, harmony, and drums, and end in the middle of the second measure." Stewart Report p. 8.

**Defendant Fact No. 111**

>    **The rhythmic durations of the pitches in Melody A of each recording are different: (a) as transcribed by Stewart, bar 1 of Melody A of the LGO Recording consists of five eighth notes; in contrast, bar 1 of Melody A of TOL consists of two sixteenth notes, followed by three eighth notes (with a grace note preceding the third eighth note), followed by two sixteenth notes; (b) As transcribed by Stewart, bar 2 of Melody A of the LGO Recording consists of a dotted eighth note (preceded by a grace note), followed by a sixteenth note tied to a sixteenth note (which equals an eighth note preceded**

by a grace note), followed by a dotted eighth note tied to an eighth note, followed by an eighth note; in contrast, bar 2 of Melody A of TOL consists of an eighth note, followed by two sixteenth notes, followed by a quarter note. *See* **Ferrara Report ¶¶ 88-91.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 112**

Ferrara opines that any similarities between the pitches in Melody A of each recording are insignificant at best and, when combined with the significantly different melodic rhythms to which these different pitches have been set, lack any meaningful musical similarities. *See* **Ferrara Dec. ¶ 22;** *see also* **Ferrara Report at Audio Exhibit Track 4.**

**Plaintiffs' Response**

Undisputed that this is Ferrara's opinion; Plaintiffs note that Stewart opines differently.

*Vocal Melody B*

**Defendant Fact No. 113**

In Example 4 of the Stewart Report, Stewart transcribes and compares (a) the vocal melody at the end of verse 4 of the LGO Recording and (b) the vocal melody at the beginning of the chorus in TOL ("Melody B"). *See* **Stewart Report p. 9.**[14]

[14] Melody B of the LGO Deposit Copy is virtually identical to Melody B in the LGO Recording. *See* Ferrara Dec. ¶ 12.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 114**

Melody B is from very different parts of each song: the end of verse 4 of the LGO Recording, and the beginning of the chorus of TOL. *See* **Ferrara Dec. ¶ 23;** *see also* **Ferrara Report ¶¶ 93-104.**

**Plaintiffs' Response**

Undisputed. It does not matter which section of the song melodic similarities come from particularly when they are underpinned by the same harmony and rhythm structures. Stewart Dec., ¶ 69.

**Defendant Fact No. 115**

> **As transcribed by Stewart, only 5 of 11 pitches in Melody B of each recording line up in the same order; thus, more than 50% of the pitches are different.** *Id.*

**Plaintiffs' Response**

Disputed to the extent Defendants claim the pitches are "different". While the pitches may not line up exactly, the overall melodic gestures are very similar: a skip up from 3 to 5 and gradual mostly stepwise descent to 2 and then 3. These melodies are placed over virtually identical harmonies, harmonic rhythms, bass melodies and drum parts in LGO and TOL. The harmonic, rhythmic and bass line patterns over which these melodies are placed minimizes the slight pitch differences in the repeated pattern of notes. Stewart Dec., ¶ 70-71.

**Defendant Fact No. 116**

> **One of the five "similar" notes is a grace note that Stewart transcribes at the beginning of Melody B of TOL, which makes Melody B in each recording appear more similar.** *Id.*

**Plaintiffs' Response**

Disputed. The first note of Melody B is a grace note, however this does not negate the similarity of Melody B because it is a pick up to the phrase. Stewart Dec., ¶ 72.

**Defendant Fact No. 117**

> **The aforementioned grace note was not included by Stewart in an earlier report he authored dated June 2015, it is not included in the published sheet music for TOL, and Ferrara does not believe it actually appears in TOL (consistent with the published sheet music for TOL).** *Id.*[15]

[15] In contrast to his transcription of Melody B, Stewart did not transcribe any grace notes in analyzing Melody A. *Id.* ¶ 23.

**Plaintiffs' Response**

Disputed. The June 9, 2015 report by Dr. Stewart that was submitted did include this

note. Stewart Dec., ¶ 71, Frank Dec., Exh. 7 (Stewart June 9, 2015 Report), p. 8.

**Defendant Fact No. 118**

> **Although Stewart emphasizes scale degree 2 in Melody B (the second
> to last note), this pitch is a neighbor tone of extremely brief duration, which is
> the rationale Stewart used for omitting pitches (scale degree 1 and 6) in his
> analysis of Melody A.** *Id.* [16]
>
> [16] **Paragraph 97 of the Ferrara Report discusses this contradiction more fully.**

**Plaintiffs' Response**

Disputed. The analysis does not emphasize scale degree 2. It merely mentions its

presence. Stewart Report, p. 9. The scale degree 2 in this melody in both songs is exactly the

same duration. Stewart Report, p. 9.

**Defendant Fact No. 119**

> **The Stewart Report does not analyze the melodic rhythms in Melody
> B.** *See* **Ferrara Dec. ¶ 24.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 120**

> **The rhythmic durations of the pitches in Melody B are different: (a) As
> transcribed by Stewart, bar 1 of Melody B of the LGO Recording consists of
> two pickup notes, followed by an eighth note, followed by a quarter note; in
> contrast bar 1 of Melody B of TOL does not contain any pick up notes; (b)
> As transcribed by Stewart, bar 2 of Melody B of the LGO Recording consists
> of two sixteenth notes, followed by an eighth note tied to a sixteenth note,
> followed by an eighth note, followed by a sixteenth note tied to an eighth
> note, followed by two eighth notes, followed by a sixteenth note, followed by a
> sixteenth note tied to a quarter note; in contrast, bar 2 of Melody B of TOL
> consists of an eighth note (preceded by a miniature grace note), followed by a
> sixteenth note, followed by a triplet, followed by four sixteenth notes,
> followed by an eighth note; (c) Melody B of the LGO Recording ends with a
> syncopated note on the final sixteenth note of beat 4; in contrast, Melody B of**

**TOL ends on the downbeat, beat 1, of the next bar.** *Id.*; *see also* **Ferrara Report ¶¶ 99-101.**

**Plaintiffs' Response**

Disputed. With respect to (a), the first note of Melody B in TOL does contain a pick-up note in the form of a grace note. Stewart Dec., ¶ 72.

**Defendant Fact No. 121**

> **Stewart opines that "variants" of Melody B can be heard elsewhere in the LGO Recording at 0:17 and at 3:38.** *See* **Stewart Report p. 9.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 122**

> **These "variants" actually have little in common with Melody B of the LGO Recording as detailed more fully at Paragraphs 103-104 of the Ferrara Report.** *See* **Ferrara Dec. ¶ 24; Ferrara Report ¶¶ 103-104.**

**Plaintiffs' Response**

Disputed. See Ferrara Report ¶ 103 acknowledging the variants as "vaguely related."

**Defendant Fact No. 123**

> **Ferrara opines that any similarities between the pitches in Melody B are insignificant at best and, when combined with the significantly different melodic rhythms to which these different pitches have been set, lack meaningful musical similarities.** *See* **Ferrara Dec. ¶ 25; Ferrara Report at Audio Exhibit Track 5.**

**Plaintiffs' Response**

Undisputed that this is Ferrara's opinion; Plaintiffs note that Stewart opines differently.

*Vocal Melody C*

**Defendant Fact No. 124**

> **In Example 5 of the Stewart Report, Stewart transcribes and compares (a) the vocal melody at the beginning of verse 1 in the LGO Recording and (b) the vocal and guitar melodies at the interlude of TOL ("Melody C").** *See* **Stewart Report pp. 10-11.[17]**

[17] Melody C of the LGO Deposit Copy is virtually identical to Melody C in the LGO  Recording. *See* Ferrara Dec. ¶ 12.

**Plaintiffs' Response**

Disputed. Dr. Stewart transcribed the melodies at the beginning of Verse 2 of Let's Get It On and the interlude in Thinking Out Loud. Stewart, Dec., ¶ 73.

**Defendant Fact No. 125**

**Melody C is from very different parts of each song: verse 1 of the LGO Recording and the interlude of TOL.** *See* **Ferrara Dec. ¶¶ 26-27;** *see also* **Ferrara Report ¶¶ 105-117.**

**Plaintiffs' Response**

Disputed. Melody C is from Verse 2 of LGO Recording. Stewart Dec., ¶ 73. While the structural analysis of the form labels these as different sections or TOL, the interlude is simply a verse that is primarily instrumental (except for the "la, la, la" vocables) Stewart, Dec. ¶ 73; Frank Dec., Exh. 5.

**Defendant Fact No. 126**

**Stewart opines that Melody C in each recording "consists of repeated notes on a descending scale."** *See* **Stewart Report pp. 10-11.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 127**

**Stewart has admitted that repeating notes on a descending scale is not original to the LGO Recording.** *See* **Stewart Tr. at 279:4-15;** *see also* **Ferrara Report Dec. ¶ 26.**

**Plaintiffs' Response**

Disputed to the extent that Dr. Stewart's analysis is that it is original in that it was "not copied" and in its musical placement and context. See Plaintiff's Response to Defendant Fact No. 57; Stewart Dec., ¶ 75.

**Defendant Fact No. 128**

      **As transcribed by Stewart, only 6 of 14 pitches in Melody C of each recording line up in the same order.** *See* **Ferrara Dec. ¶¶ 26-27;** *see also* **Ferrara Report ¶¶ 105-117.**

**Plaintiffs' Response**

      Undisputed.

**Defendant Fact No. 129**

      **The first 12 of 13 notes in Melody C of TOL are repeated notes in a stepwise descending D major scale, a basic musical building block.** *Id.*

**Plaintiffs' Response**

      Disputed. Repeating notes on a descending D major scale is not "a basic musical building block." Stewart Dec., ¶ 75.

**Defendant Fact No. 130**

      **In contrast, Melody C of the LGO Recording does not descend consistently on the D major scale.** *Id.*

**Plaintiffs' Response**

      Disputed. The LGO melody C does descend consistently except for three notes. Stewart Dec., ¶ 73.

**Defendant Fact No. 131**

      **As transcribed by Stewart on page 10 of the Stewart Report in regard to the vocal melodies in Melody C, the melody of the LGO Recording starts with two iterations of scale degree 8 (not three as in TOL), followed by two iterations of scale degree 7 (not three as in TOL), then changes direction and moves back up to scale degree 8, and then descends in an order distinct from TOL.** *Id.*

**Plaintiffs' Response**

      Undisputed.

**Defendant Fact No. 132**

      **The first scale degree "5" followed by scale degree "3" in Melody C of**

each recording is different – in the LGO Recording "5" to "3" is a leap up by a sixth whereas in TOL the "5" to "3" is a leap down by a third, resulting in distinct melodies and distinct musical expression. *Id.*[18]

[18] The Stewart Report ignores this difference.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 133**

As charted by Stewart on the bottom of page 10 of the Stewart Report in regard to the guitar-part in Melody C of TOL and the vocal melody in Melody C of the LGO Recording, only 7 of 14 pitches line up in the same order. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 134**

The similarities alluded to in the preceding Paragraph result from the fact that the guitar-part in Melody C of TOL descends down a D major scale, which is a basic musical building block. *Id.*

**Plaintiffs' Response**

Disputed. There myriad ways in which a melody may descend down a D major scale. The similarity is not an inevitable result and is the result of copying. Stewart Dec., ¶ 75.

**Defendant Fact No. 135**

The Stewart Report does not analyze the melodic rhythms in Melody C. *See* Ferrara Dec. ¶ 28.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 136**

The rhythmic durations of the pitches in Melody C are different: (a) As transcribed by Stewart, the first 11 of 13 notes in the vocal melody of Melody C of TOL are triplets; in contrast, there are no triplets in Melody C of the LGO Recording; (b) As transcribed by Stewart, the first 12 of 14 notes

in the guitar-part of Melody C of TOL are triplets; in contrast, there are no triplets in Melody C of the LGO Recording. *Id.*; Ferrara Report ¶¶ 113-116.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 137**

Ferrara opines that any similarities between the pitches in Melody C are insignificant at best and, when combined with the significantly different melodic rhythms to which these different pitches have been set, lack meaningful musical similarities. See Ferrara Dec. ¶ 29; Ferrara Report at Audio Exhibit Track 6.

**Plaintiffs' Response**

Undisputed.

*Lyrics*

**Defendant Fact No. 138**

Apart from the two exceptions detailed below, the lyrics of the LGO Recording are substantially the same as the lyrics in the LGO Deposit Copy with a few deviations in terms of adding or omitting certain words such as "ooh" "oh" and "whoa." *See* Farkas Dec. at Exhibit 13; Ferrara Report at Audio Exhibit Track 3.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 139**

The "full" version of the LGO Recording contains the following lyrics, not present in the LGO Deposit Copy: (a) Starting at approximately 3:06 and ending at approximately 3:40: "I know you know what I been dreamin' of, don't you baby? / My whole body makes that feelin' of love, I'm happy / I ain't gonna worry, no I ain't gonna push / I won't push you baby, woo."; (b) Starting at approximately 4:32 through the conclusion of the recording: "Oh dear I, baby / Nothing wrong with love / If you want to love me just let yourself go / Oh baby, let's get it on." *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 140**

Stewart has admitted that "few important lyrical similarities exist" between the LGO Recording and TOL and states that "both ballads are celebrations of love to a particular woman. The main difference would be, then that the attraction in TOL seems to have been consummated while the singer in [LGO] is still yearning for fulfillment." *See* Stewart Report p. 12-13.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 141**

The Stewart Report does not identify any specific lyrical similarities other than at the abstract level of a theme of love. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 142**

The Stewart Report does not contain any further analysis of the lyrics. *Id.*

**Plaintiffs' Response**

Undisputed.

*Bass-Lines*[19]

[19] The bass line is not contained in the LGO Deposit Copy, only in the LGO Recording.

**Plaintiffs' Response**

Disputed. The basic bass line is implied in the LGO Deposit Copy by the placement of

the chords. Stewart Dec., ¶ 3, 25, 44.

**Defendant Fact No. 143**

In the first 24 seconds of TOL, there is no bass guitar, there is only electric guitar; the lowest notes of the electric guitar being played for the first 24 seconds can be considered the "bass-line" of the song for the first 24 seconds of TOL (the "TOL Opening Bass Line"). *See* Ferrara Dec. ¶¶ 32-33.

**Plaintiffs' Response**

Disputed to the extent that Plaintiffs contend that the lowest notes of the opening electric

guitar *is* the bass-line of the song for the 24 seconds of Thinking Out Loud. Stewart Tr., 176:2-6;

Stewart Dec., ¶ 25. Defendants' own expert concedes that "the lowest notes in the guitar are the

'bass line' only during the first 24 seconds of TOL". Ferrara Report ¶ 153.

**Defendant Fact No. 144**

> **In the Stewart Report, Stewart only transcribes the lowest notes of the electric guitar for the first 24 seconds of TOL; he does not transcribe the full guitar part that appears during the first 24 seconds of TOL.** *Id.***; Ferrara Report ¶ 51.**

**Plaintiffs' Response**

Undisputed. Stewart has provided the full guitar part in his full transcription provided to

the defendants. Frank Dec., Exh. 4.

**Defendant Fact No. 145**

> **The guitar part of the first 24 seconds of TOL has many differences from the bass line of the LGO Recording.** *See* **Ferrara Dec. ¶¶ 40-45.**

**Plaintiffs' Response**

Disputed. As transcribed by Dr. Ferrara, all of the notes in the bass line played by TOL

exist in LGO.  Stewart Dec., ¶ 26. Dr. Ferrara transcribed 3 additional bass notes in LGO that he

did not transcribe in TOL's bass line in the first 24 seconds.  Stewart Dec., ¶ 26.

**Defendant Fact No. 146**

> **The bass-guitar part in TOL starts at approximately 24 seconds and plays through the song's conclusion (the "TOL Bass Line").** *Id.* **¶ 33.[20]**

[20] Stewart testified at his deposition that he did not hear a bass-guitar in TOL and that the TOL Bass Line is played by keyboard. *See* Stewart Tr. at 173:4-174:8. In fact, the TOL Bass Line is played by an actual bass-guitar; it is not programmed by a computer or keyboard. *See* Gosling Decl. ¶¶ 3-6. In any event, from a musicological perspective the TOL Bass Line, whether played by bass-guitar or a keyboard programmed to simulate a bass line, is a bass-line. See Ferrara Decl. ¶ 32 n.6.

**Plaintiffs' Response**

Disputed in part. The bass-guitar part beginning at 25 seconds in TOL is an additional bass line ("bass line B") that is concurrent with the opening bass line played on the electric guitar. Stewart Tr., 176:2-12.

**Defendant Fact No. 147**

> **Stewart does not transcribe the TOL Bass Line in the Stewart Report.**
> *Id.*

**Plaintiffs' Response**

Disputed. Dr. Stewart transcribed the bass line played by the electric guitar for the first 24 seconds of Thinking Out Loud in the Stewart Report, and this base line continues through Thinking Out Loud. Stewart Tr., 174:17-176:6. Dr. Stewart did not transcribe "bass line B" which begins at 25 seconds into the recording of Thinking out Loud. Stewart Tr., 194:13 – 195:24.

Plaintiff objects to calling the bass line that appears at 25 seconds the "TOL Bass Line" and specifically objected to, and disagreed with the same, at Dr. Stewart's deposition. Stewart Tr. p. 210:5:12. At the Dr. Stewart's deposition, the parties agreed to refer to the additional bass line that appears at 25 seconds into Thinking Out Loud as "bass line B." Stewart Tr., 194:13-24. After 25 seconds into Thinking out Loud bass line B is an additional bass line happening concurrently with the opening bass line. *Id.* at 210:5-12.

**Defendant Fact No. 148**

> **The TOL Bass Line differs from the TOL Opening Bass Line.** *See* Ferrara Dec. ¶¶ 34-39.

**Plaintiffs' Response**

Undisputed to the extent "TOL Bass Line" refers to "bass line B" and "TOL Opening Bass Line" refers to the bass line played on the electric guitar during the first 24 seconds of Thinking Out Loud.

Plaintiff objects to calling the bass line that appears at 25 seconds the "TOL Bass Line" and specifically objected to, and disagreed with the same, at Dr. Stewart's deposition. Stewart Tr. p. 210:5:12. It was identified as "bass line B" at Dr. Stewart's deposition. Stewart Tr., 194:13-24. After 25 seconds into Thinking out Loud bass line B is an additional bass line happening concurrently with the opening bass line. Id. at 210:5-12.

**Defendant Fact No. 149**

> **The TOL Bass Line also differs from the bass-guitar part in the LGO Recording: the TOL Bass Line ascends the interval of a major third, while the bass-guitar part in the LGO Recording descends downward the interval of a sixth.** *See* **Ferrara Dec. ¶¶ 34-39; Ferrara Report ¶¶ 53-63, 146-160.[21]**

> **[21] The LGO Deposit Copy is transcribed in treble clef, and it does not include a bass-guitar part or a bass clef transcription.**

**Plaintiffs' Response**

Disputed. The bass line in Thinking Out Loud and Let's Get It On is the same. Stewart Dec., ¶ 41-42 Stewart Tr., 218:2-14 ("There are measures in Let's Get It On and Thinking out Loud that have the same notes in the bass line of Let's Get It On and Bass Line B of Thinking Out Loud.") The notes referred to in Defendant Fact No. 149 as "ascends the interval of a major third" and "descends downward the interval of a sixth" have the same note value. Stewart Dec. ¶¶ 34-35.

**Defendant Fact No. 150**

> **During expert discovery, pursuant to requests made at Stewart's deposition, Stewart provided his full transcription of TOL; this transcription includes a full transcription of the bass- line to TOL.** *See* **Farkas Dec. at Exhibit 8.[22]**

> **[22] The bass-line is identified by the bass-clef symbol in Stewart's transcription: it begins on the second page of Stewart's transcription, in the third full-line of transcriptions.**

**Plaintiffs' Response**

Disputed in part. Plaintiffs object to calling the bass line that appears at 25 seconds the

"TOL Bass Line" and specifically objected to, and disagreed with the same, at Dr. Stewart's

deposition. Stewart Tr. p. 210:5:12. It was identified as "bass line B" at Dr. Stewart's deposition.

Stewart Tr., 194:13-24. After 25 seconds into Thinking out Loud bass line B is an additional bass

line happening concurrently with the opening bass line. *Id.* at 210:5-12; Stewart Report, p. 5.

**Defendant Fact No. 151**

> **Stewart's transcription indicates that the bass-line for TOL is the
> bass-guitar part (*i.e.*, the TOL Bass Line), and not the lowest notes played on
> the electric guitar (*i.e.*, the TOL Opening Bass Line). *Id.*; *see also* Ferrara
> Dec. ¶ 39.**

**Plaintiffs' Response**

Disputed. After 25 seconds into Thinking out Loud, bass line B is an additional bass line

happening concurrently with the opening bass line exclusively used during the first 24 seconds of

TOL. Id. at 210:5-12; Stewart Dec., ¶ 39.

Plaintiff objects to calling the bass line that appears at 25 seconds the "TOL Bass Line"

and specifically objected to, and disagreed with the same, at Dr. Stewart's deposition. Stewart

Tr. p. 210:5:12. It was identified as "bass line B" at Dr. Stewart's deposition. Stewart Tr.,

194:13-24.

**Defendant Fact No. 152**

> **At his deposition, Stewart testified that TOL simultaneously features
> two distinct bass-lines from 24 seconds until the song's conclusion (*i.e.*, both
> the TOL Bass Line and the TOL Opening Bass Line). *See* Stewart Tr. at
> 191:15-197:13.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 153**

> **At Page 13 of the Stewart Report, Stewart opines regarding the**

supposed similarities between the bass-guitar part in the LGO Recording
and the TOL Opening Bass Line (*i.e.*, the lowest notes played on the guitar
during the first 24 seconds of TOL). *See* Stewart Report p. 13.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 154**

Specifically, he presents five "characteristics" that he finds in
common: (1) 1-3-4- 5 sequence, (2) two-measures, (3) descending sixth, (4)
anticipation of 3 and 5, and (5) syncopation. *Id.*

**Plaintiffs' Response**

Disputed to the extent that Stewart identified additional similarities in the bass lines.

Stewart Report, pp. 4-5; Stewart Dec., ¶ 33, 37, 39-44.

**Defendant Fact No. 155**

*First*, the actual bass-line of the LGO Recording, as transcribed by
Stewart, is 1-3-3-4-5-5-5-6, not 1-3-4-5; the TOL Opening Bass Line, as
transcribed by Stewart, is 1-3-4-5-5. *See* Ferrara Dec. ¶ 41; Ferrara Report
¶¶ 60-63, 146-152.

**Plaintiffs' Response**

Disputed. Both Dr. Ferrara and Dr. Stewart have described 1-3-4-5 as the "*basic* bass

line" in both songs. Stewart Dec., ¶ 25; Ferrara Report, ¶ 147. The bass line at the beginning of

the Let's Get It On recording is 1-3-3-4-5-5-5-6 and the bass line at the beginning of the

Thinking Out Loud recording is 1-3-4-5-5 with the decorative 5-6 played an octave higher.

Stewart Dec., ¶¶ 30, 32. Beginning in measures 9 and 10 of the Let's Get It On recording the

bass line is 1-3-3-3-4-5-5-5-6 which is the same as the bass line and guitar part during the last

chorus of Thinking Out Loud, 1-3-3-3-4-5-5-5-6. Stewart Dec., ¶¶ 41-43.

**Defendant Fact No. 156**

The Stewart Report thus omits pitches, omits differences in the actual
order of the pitches and does not provide an analysis of the full order of the

pitches and the melodic rhythms to which those pitches are set; instead, Stewart labels differences in the order of pitches and in the melodic rhythms as "slight embellishments" or "fills" and selectively does not consider them. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 157**

*Second*, countless songs have bass-lines that consist of two measures. *See* **Ferrara Dec. ¶ 42.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 158**

*Third*, the descending sixth is never present in the TOL Bass Line played by the bass guitar, which comprises the bass-line of TOL from 24 seconds until the song's conclusion at 4:42 (*i.e.*, approximately 91% of TOL features a bass-line that does not include a descending sixth). *See* **Ferrara Dec. ¶ 43; Ferrara Report ¶¶ 60-63, 146-152.**

**Plaintiffs' Response**

Disputed. The bass line beginning at 24 seconds ("bass line B") is an additional bass line concurrent with the bass line in the first 24 seconds of Thinking Out Loud that continue to be present in much of the song.  Stewart Tr., 194:13-24; 210:5:12; Stewart Report, p. 5. The descending sixth is present 31 times in the sheet music of TOL. Stewart Dec. ¶ 37. The descending sixth is present 34 times in the TOL demo. Stewart Dec. ¶ 38. The ascending third is never heard in the demo. Stewart Dec. ¶ 38.

**Defendant Fact No. 159**

*Fourth*, the "anticipation of 3 and 5" causes, and functionally, is the "syncopation" in the bass-lines, which renders the fourth and fifth characteristics redundant. *See* **Ferrara Dec. ¶ 44; Ferrara Report ¶¶ 60-63, 146-152.**

**Plaintiffs' Response**

Disputed. Stewart clarifies in his report that "syncopation" refers to *other* notes in the bass line besides the anticipation of 3 and 5. Stewart Dec., ¶ 44.

**Defendant Fact No. 160**

As the Ferrara Report confirms, the "characteristics" in common between the bass- guitar part of the LGO Recording and the TOL Opening Bass Line in the lowest notes in the guitar part were also commonplace prior to LGO. *See* **Ferrara Report ¶¶ 153-160;** *see also* **Ferrara Dec. 45.**

**Plaintiffs' Response**

Disputed. Only one song "Georgy Girl" was identified as "prior art" that contained anticipated 3 and 5 bass notes (second and fourth chords), however, it does not contain a descending sixth like the bass line in Let's Get It On and Thinking Out Loud. Stewart Report, p. 13-14; Stewart Dec., ¶ 91. None of the prior art songs contain simultaneous ascending third and descending sixth bass notes. Stewart Dec., ¶ 91. Only "Crocodile Rock" contains syncopated note other than the anticipated "3" and "5" of the harmony which are featured in LGO and TOL. Stewart Dec., ¶ 91. The bass lines in LGO and TOL sound much more similar to each other than any of those identified by Ferrara as prior art. Stewart Report, p. 13-14.

**Defendant Fact No. 161**

In regard to the actual bass-guitar parts in each recording, Examples 2 and 3 of the Ferrara Report include a comparative transcription of representative portions of each. *See* **Ferrara Report ¶¶ 53-59.**

**Plaintiffs' Response**

Disputed. The transcriptions provided do not provide accurate representation of the durations of the actual bass notes. Stewart Dec., ¶ 27-30.

**Defendant Fact No. 162**

The transcriptions in Examples 2 and 3 of the Ferrara Report confirm that the melodic contours of the bass-guitar parts in each recording are

distinct: (a) Bar 1 of the LGO Recording leaps downward; bar 1 of TOL leaps upward; (b) Bar 1 of the LGO Recording includes the interval of a sixth; bar 1 of TOL does not include the interval of a sixth; (c) Bar 1 of TOL includes the interval of a third; bar 1 of the LGO Recording does not include the interval of a third; (d) Bar 2 of the LGO Recording moves upward; bar 2 of TOL contains a combination of upward and downward movements; (e) Bar 2 of the LGO Recording consists of stepwise intervals; bar 2 of TOL includes a downward leap to scale degree 7; (f) Bar 3 of the LGO Recording leaps downward; bar 3 of TOL leaps upward; (g) Bar 3 of the LGO Recording includes the interval of a sixth; bar 3 of TOL does not include the interval of a sixth; (h) Bar 3 of TOL includes the interval of a third; bar 3 of the LGO Recording does not include the interval of a third; (i) Bar 4 of the LGO Recording includes the upward leap of a third; bar 4 of TOL does not include the upward leap of a third; and (j) Bar 4 of TOL includes a downward leap down to scale degree 7; bar 4 of the LGO Recording does not include a downward leap down to scale degree 7. *Id.*

**Plaintiffs' Response**

Undisputed to the extent that Defendants are only referring to bars 1-4 of the additional bass line B part as heard in the bass guitar after 24 seconds in TOL.

**Defendant Fact No. 163**

The transcriptions in Examples 2 and 3 also confirm that the melodic rhythms of the bass-guitar parts in each recording are distinct: (a) The rhythmic durations of two of the three notes in bar 1 are different; (b) The rhythmic durations of three of the five notes in bar 2 are different; (c) Bar 2 of the LGO Recording includes two sixteenth notes; bar 2 of TOL does not contain sixteenth notes; (d) The rhythmic durations of two of the three notes in bar 3 are different; (e) The rhythmic durations of four of the seven notes in bar 4 are different; and (f) Bar 4 of the LGO Recording includes four sixteenth notes; bar 4 of TOL does not contain sixteenth notes. *Id.*

**Plaintiffs' Response**

Disputed. The transcriptions provided do not provide accurate representation of the durations of the actual bass notes. Stewart Dec. ¶ 27-30.

***The Drums***[23]

[23] The Drums are not contained in the LGO Deposit Copy, only the LGO Recording.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 164**

The drums in TOL commence at approximately 24 seconds into the recording, along with the bass-guitar. *See* **Ferrara Report at Audio Exhibit Track 1.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 165**

The drums in the LGO Recording commence at approximately 4 seconds into the recording. *Id.* at Audio Exhibit Track 3.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 166**

Stewart claims that similarities exist between the drum parts in the LGO Recording and TOL because each drum part features: (1) the use of eighth-notes on the hi-hat cymbals; (2) single snare drum hits on the backbeats (*i.e.*, beats 2 and 4); and (3) kick drum hits on beat 1 and on two "off-beats." *See* **Stewart Report p. 6.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 167**

The use of eighth-notes on the hi-hat cymbals was commonplace prior to LGO in numerous genres of music. *See* **Ferrara Dec. ¶ 47; Ferrara Report ¶ 70; Stewart Tr. at 243:7-244:2.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 168**

Snare drum notes on the backbeats (beats 2 and 4) were commonplace prior to the LGO Recording in numerous genres of music. *See* **Ferrara Dec.**

¶ 47; Ferrara Report ¶ 70; Stewart Tr. at 245:9-22.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 169**

> **Kick drum notes on beat 1 and on the off-beats between beats 2 and 3 and beats 3 and 4 were commonplace prior to LGO in numerous genres of music.** *See* **Ferrara Dec. ¶ 47; Ferrara Report ¶ 70.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 170**

> **The drum part, as a whole, was commonplace prior to LGO.** *See* **Ferrara Dec. ¶ 47; Stewart Tr. at 246:4-22.**

**Plaintiffs' Response**

Disputed. The same drum part to the drum part in Let's Get It On has not been produced

in any examples provided by defendants. Stewart Dec., ¶ 49-54. The drum part in LGO is

creative and not common. Stewart Tr., 246:19-26; Stewart Dec., ¶¶ 45, 49.

**Defendant Fact No. 171**

> **Stewart admitted at his deposition that the claimed similarities in the drum patterns, standing alone, are not indicative of copying.** *See* **Stewart Tr. at 258:20-259:9.**

**Plaintiffs' Response**

Disputed. The similarities in the drum patterns, standing alone, are probative of copying.

Stewart Tr., 259:2-9. Stewart Dec., ¶ 49.

**Defendant Fact No. 172**

> **Despite his testimony that he did not consider tempo significant to his analysis. Stewart admitted at his deposition that he relied on the tempo of each recording (*i.e.*, the number of beats per minute) in opining that the drum parts possess similarities.** *Id.* **at 255:20-256:7.**[24]

[24] As detailed in the accompanying memorandum of law, tempo is an unprotectible musical building block.

**Plaintiffs' Response**

Disputed. Stewart Tr., p. 255:2-256:19. Stewart did not state that he "relied" on tempo in his analysis. In response to a question regarding the drum parts in other songs, he mentioned differences in tempo between them and LGO and TOL. Stewart Tr., p. 255:11-19. When he attempted to provide other more "significant differences" with the "prior art" cited by defense he was not permitted. Stewart Tr., 256 line 19. The tempos of TOL (82 bpm) and LGO (79 bpm) add to their similarity.  Stewart Dec., ¶ 79.

**Defendant Fact No. 173**

> **As transcribed by Stewart, the drum parts also contain several differences: (a) There is a hi-hat cymbal note on the second half of beat 1 in bar 1 of TOL, but there is no corresponding hi-hat cymbal note in the LGO Recording; (b) There is a kick drum note on beat 4 in bar 1 of the LGO Recording, but there is no corresponding kick drum note in TOL; (c) There is a kick drum note on beat 4 in bar 2 in the LGO Recording, but there is no corresponding kick drum note in TOL; (d) There is only one syncopation in the kick drum in each bar of the LGO Recording, but there are two syncopations in the kick drum in each bar of TOL; (e) The kick drum note on the second half of beat 3 in TOL is isolated and disrupts the basic rhythm whereas the kick drum note on the second half of beat 3 in the LGO Recording is not isolated, but instead leads to an additional kick drum note on beat 4, which is not  present in TOL. *See* Stewart Report p. 7; Ferrara Dec. ¶ 47; Ferrara Report 67-69.**

**Plaintiffs' Response**

Disputed. (a) there is a hi-hat cymbal note on the second half of beat 1 in bar of Thinking Out Loud and Let's Get It On (except in the opening measure). Stewart Dec., ¶ 47. The kick drum note on the second half of beat 3 in Thinking Out Loud is not isolated and does not disrupt the basic rhythm since it is immediately followed by a prominent accented note on the snare drum on beat 4. Stewart Dec., ¶ 55.

*The Two Works As A Whole*

**Defendant Fact No. 174**

> Stewart admitted at his deposition that the two works, as a whole, are not "identical" or "virtually identical" to one another. *See* Stewart Tr. 275:17-25.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 175**

> Both recordings feature variants of the commonplace I-iii-IV-V chord progression and the chord progressions are not identical in the LGO Recording and TOL; there is an objectively insignificant similarity between the bass guitar line in the LGO Recording and the lowest notes in the guitar during the first 24 seconds of TOL (the two parts are not identical in the two recordings and the elements were commonplace prior to the LGO Recording); the bass line in the bass-guitar in the remaining 91% of TOL has significant differences to the bass line in the LGO recording; the similarities in the drum patterns which are not identical, contain several differences, and were in use in songs prior to the LGO Recording and also found in student method books; the key of each recording is different, no lyrical similarities exist, the vocal melodies and rhythms are objectively different, the song structures contain many differences and any structural similarity is generic; each work embodies additional chord progressions that are significantly different to the chord progressions in the other; and 4/4 meter is "common time," a musical building block, and probably the most common meter used in popular music. *See* Ferrara Dec. ¶¶ 48-49.

**Plaintiffs' Response**

Disputed. Both recordings feature the I-iii-IV-V chord progression with the same harmonic rhythm of anticipated second and fourth chords; the bass line was not commonplace prior to LGO (defendants have not produced any songs with bass lines as similar to these songs as they are to each other the bass lines are virtually identical throughout and, and in fact are nearly identical during the first 24 seconds, the second verse and the last chorus of TOL; the drum parts are virtually identical (LGO has two additional kick drum notes); defendant has identified no song with drum parts as similar to these songs as they are to each other; the drum

method books cited by defendant's musicologist all post-date LGO by many years; the keys of both songs, while different, are as close in pitch level as is possible in Western music; the vocal melodies contain many significant similarities; and structurally, the verses and choruses of both songs are built on the same distinctive harmonic, melodic, and rhythmic matrix. Stewart Dec., ¶¶ 2-3, 5-7, 11-13, 14-15, 27, 30, 34, 41-44, 45-53, 56-75, 76-79.

**Defendant Fact No. 176**

> **The LGO Recording is characterized by optimistic, positive feelings and tones, and it is a "beguiling anthem of sexual seduction" that repeatedly encourages the listener to "get it on." See Ferrara Report at Audio Exhibit Track 3; <https://slate.me/2mtz90Y>, last accessed July 27, 2018.**

**Plaintiffs' Response**

Undisputed

**Defendant Fact No. 177**

> **TOL is characterized by somber and often melancholic emotions and tones; it is a song about lasting romantic love. See Ferrara Report at Audio Exhibit Track 1.**

**Plaintiffs' Response**

Undisputed

**F.    Kathryn Townsend Griffin's Standing**

**Defendant Fact No. 178**

> **Kathryn claims to be the biological daughter and an intestate heir of Townsend. See Kathryn Tr. at 68:22-24; Farkas Decl. at Exhibit 15.**

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 179**

While Kathryn stated at her deposition that she could provide a copy of her birth certificate, no copy of her birth certificate has been provided despite Defendants' requests for a copy. See Kathryn Tr. at 70:24-72:9; Farkas Decl. ¶ 13 n.2.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 180**

Kathryn was adopted shortly after her birth by Shirley and Ernest Griffin. See Kathryn Tr. at 36:24-37:14, 41:24-42:9, 70:24-72:4, 81:12-82:25.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 181**

Townsend had two biological sons with Cherrigale Townsend: Edward David Townsend ("David") and Clef Michael Townsend ("Clef"). See McDonald Tr. at 38:23-40:12.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 182**

Townsend died intestate in California in 2003. See McDonald Tr. at 38:23-40:12, 51:25-52:6; Farkas Decl. at Exhibit 15.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 183**

David died intestate in California in or around 2005. See McDonald Tr. at 38:23-40:12; Farkas Decl. at Exhibit 15.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 184**

      Clef died in or around 2017. See McDonald Tr. at 38:23-39:18.

**Plaintiffs' Response**

    Undisputed.

**Defendant Fact No. 185**

      Before his death, in or around June 2004, Clef assigned whatever interest he had in LGO to Structured Asset Sales, LLC, a company owned by David Pullman ("Pullman"). Id. at 72:21-24; see also McDonald v. Structured Asset Sales, LLC, 154 Cal. App. 4th 1068 (Cal. 2007).[25]

[25] McDonald and Kathryn harbor ill-will for Pullman and believe that Pullman "stole" Clef's rights in Townsend's catalog. *See* McDonald Tr. at 101:23-102:25; Kathryn Tr. at 152:15-153:10.

**Plaintiffs' Response**

    Undisputed.

**Defendant Fact No. 186**

      McDonald is Townsend's sister. See McDonald Tr. at 16:21-24.

**Plaintiffs' Response**

    Undisputed.

**Defendant Fact No. 187**

      After Townsend died, Kathryn and the Estate of David each purported to assign to McDonald 3 ⅓ % of Townsend's share of the songwriter royalties attributable to LGO. Id. at 30:21-32:7, 72:21-76:7.

**Plaintiffs' Response**

    Undisputed.

**Defendant Fact No. 188**

      Cherrigale was the sole intestate heir of David and succeeded to his interest in Townsend's estate. Id. at 76:11-18; Farkas Decl. at Exhibit 15.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 189**

Cherrigale died in Tennessee in 2017, with a Last Will and Testament. See McDonald Tr. at 49:19-21.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 190**

The terms of Cherrigale's Last Will and Testament provide that her interest in Townsend's estate shall pass to McDonald. Id. at 76:22-78:6.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 191**

On information and belief, the Estate of Cherrigale has not been settled. *Id.*

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 192**

Upon Townsend's death, proceedings were held in California probate court to dispose of his assets in accordance with the laws of California intestacy. See Farkas Decl. at Exhibit 15.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 193**

McDonald initially served as the "Personal Representative" of Townsend's estate in the probate proceedings. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 194**

In her capacity as "Personal Representative," McDonald filed a Notice of Petition To Administer Estate (the "Petition") dated November 20, 2003. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 195**

McDonald executed the Petition (a pre-printed form that contains a series of items to "check off" or leave blank) and declared, under penalty of perjury, that the Petition contained "true and correct" information. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 196**

The Petition identifies Kathryn as an adult daughter of Townsend. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 197**

The box that would have identified Kathryn as having been "adopted by a third party" was left blank. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 198**

McDonald submitted at least two sworn declarations in the probate proceedings in which she swore that Kathryn was a "natural" child of

Townsend and an "heir" of Townsend, without mentioning that Kathryn had been adopted by another family. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 199**

Kathryn also submitted numerous sworn declarations in which she averred that she was the daughter of Townsend without mentioning her adoption by another family. Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 200**

The sole reference in the record of the probate court to any adoption is in an invoice attached to a fee application of the attorney for McDonald. One line-item in the invoices states: "Lengthy telephone call with Kathy Griffin regarding her paternity and proof thereof and various elements of her background including who her mother might be and the circumstances of her adoption and advice to her regarding advice in this regard." Id.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 201**

McDonald testified that she has no reason to believe that the California probate court was made aware of Kathryn's adoption. See McDonald Tr. at 70:14-71:9.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 202**

On September 25, 2008, the California probate court granted an "ex parte application for approval of schedule of distribution" regarding Townsend's estate, through which it decreed that "Kathryn Griffin Townsend" was entitled, on a prospective basis, to 30% of the royalty income

derived from Townsend's "Music Catalog" – i.e., one-third of the whole
minus the 3 ⅓ % she already had purported to assign to McDonald. See
Farkas Decl. at Exhibit 15.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 203**

Kathryn's legal name is not now, and has never been, "Townsend."
See Kathryn Tr. at 192:14-194:6.

**Plaintiffs' Response**

Undisputed.

**Defendant Fact No. 204**

In this lawsuit, Kathryn has identified herself as Kathryn Townsend
Griffin; the probate order of the California probate court identifies Kathryn
as "Kathryn Griffin Townsend." See Dkt. No. 1; Farkas Decl. at Exhibit 15.

**Plaintiffs' Response**

Undisputed.

## PLAINTIFF'S ADDITIONAL STATEMENT OF RELEVANT FACTS

205.    In 1973, Ed Townsend wrote the musical composition, Let's Get It On. (Farkas

Dec at Exh. 12)(Dkt. No. 67-12, p. 7 of 12; McDonald Tr., p. 23:4-25:14).

206.    The copyright application and registration for Let's Get It On is dated July 17,

1973. (Frank Dec., Exh. *). (Farkas Dec at Exh. 12)(Dkt. No. 67-12, p. 7 of 12).

207.    Let's Get it On features a unique selection, coordination and arrangement of

elements, specifically (a) I-iii-IV-V harmonic progression; (b) harmonic rhythm of anticipated

second and fourth chords; (c) a basic bass line of 1-3-4-5; (d) drum part that consists of 8 eighth

notes on the closed hi-hat, accented snare drum on beats 2 and 4, and bass or "kick" drum on "1"

and syncopated on the "and" of two and the "and" of three and "4"; (e) in the key of E flat major; (f) tempo of 82 beats per measure. (Stewart Dec., ¶ 47)

208.    Thinking Out Loud also features (a) I-iii-IV-V harmonic progression; (b) anticipated second and fourth chords; (c) a basic bass line of 1-3-4-5; (d) drum part that consists of 8 eighth notes on the closed hi-hat, snare drum on beats 2 and 4, and bass or kick drum on bass or "kick" drum on 1 and syncopated on the "and" of two and the "and" of three; (e) in the key of D major; (f) tempo of 79 beats per minute. (Stewart Dec., ¶ 47)

209.    The difference between the drum parts in LGO and TOL is two bass drum notes. (Stewart Dec., ¶ 48).

210.    Open hi-hats are notated differently than closed hi-hats. (Stewart Dec., ¶ 50).

211.    Rim clicks are notated differently than snare drum hits. (Stewart Dec. ¶ 50).

212.    Open hi-hats have and ride cymbals have more legato (note duration) than closed hi-hats. (Stewart Dec., ¶ 50-51).

213.    Thinking Out Loud has no pitch "D" on the second chord for the first 24 seconds of the recording.  Stewart Dec., ¶ 9; Farkas Dec., Exh. 3 (Ferrara Report, Musical Example 1 on p. 17.)

214.    The combination of notes F# and A and absence of D (the root) strongly indicate that this chord should be analyzed as F# minor (as in LGO).  (Stewart Dec. ¶ 8).

215.    In an email dated April 1, 2015, Ed Sheeran stated to his manager that the drum the part in Thinking Out Loud made it sound like Marvin Gaye. (Frank Dec., Exh. 13).

216.    Ed Sheeran had heard Let's Get It On at the time of writing Thinking Out Loud. Frank Dec., Exh. 12 (Sheeran Tr., p. 77:11-15).

217.    Ed Sheeran knew the words to the chorus of Let's Get It On. At a concert in November 2014 in Zurich, Ed Sheeran performed the chorus of Let's Get It On during the interlude of Thinking Out Loud. (Frank Dec., Exh. 2 (Video Exh. 1); Frank Dec,. Exh. 12 (Sheeran Tr., p. 95-96, 110-111)).

218.    The chorus of Let's Get It On contains similar pitch sequences to the verses of Thinking Out Loud. (Stewart Dec., ¶ 58).

219.    The overall similarity of the harmony, anticipated second and fourth chords, basic bass line, minimizes any differences in pitch sequences between the pitch sequence of the chorus of Let's Get It On sang by Ed Sheeran in Video Exhibit 2 and Thinking Out Loud.  (Stewart Dec., ¶ 59-60).

220.    The LGO sheet music deposit copy and the LGO single version recording have the same form/structure.  (Farkas Dec., Exh. 3 Ferrara Report, ¶¶ 11, 46).

221.    The overall melodies in the LGO Deposit Copy are substantially the same as the overall vocal melodies in the LGO Recording.  (Ferrara Dec., ¶ 12).

222.    Melody B and Melody C are virtually identical in the LGO Deposit Copy and LGO Recording, and Melody A contain insignificant variances. (Ferrara Dec., ¶ 12).

223.    The defendants have only identified one song with the same I-iii-IV-V chord progression and anticipated second and fourth chords, "Georgy Girl," that pre-dates Let's Get It On. (Stewart Dec., ¶ 91).

224.    The bass line for the first 24 seconds of TOL is performed on the guitar. (Stewart Dec., ¶¶ 24-25; Ferrara Report ¶¶ 50, 52, 60).

225.    The basic bass line in TOL and LGO is 1-3-4-5. (Stewart Dec., ¶ 25; Ferrara Report ¶ 147).

226.  The basic bass line is implied in the deposit copy of LGO by the chords and their placement.  Stewart Dec., ¶ 3, 25.

September 7, 2018

**FRANK & RICE, P.A.**
**Attorneys for Plaintiffs**

By:

Patrick R. Frank, Esq.
Florida Bar Number: 0642770
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184
Attorney(s) for Plaintiffs