UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

                  *Plaintiffs*,

           -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

                *Defendants*.

ECF CASE

17-cv-5221 (RJS)


# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Edward Christopher Sheeran,*
*Atlantic Recording Corporation and*
*Sony/ATV Music Publishing LLC*

*Of Counsel:*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...............................................................................................................2

    I.    The LGO Deposit Copy Delineates the Scope of Copyright Protection .........................2

    II.    A Correct Restatement of the Law Applicable to this Motion ........................................6

    III.    Actionable Similarities Do Not Exist Between the LGO Deposit Copy and TOL.........11

    IV.    Actionable Similarities Do Not Exist Between the LGO Recording and TOL ..............14

    V.    Standing – Plaintiffs Have Admitted They Defrauded the California Probate Court.....15

CONCLUSION ...........................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                                        <u>PAGE(s)</u>

*Batiste v. Najm*,
    28 F. Supp. 3d 595 (E.D. La. 2014) .................................................................. 7, 12

*Beaudin v. Ben & Jerry's Homemade, Inc.*,
    95 F.3d 1 (2d Cir. 1996)....................................................................................... 8, 9

*Bernal v. Paradigm Talent & Literary Agency*,
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) ................................................................. 10

*Boisson v. Banian, Ltd.*,
    273 F.3d 262 (2d Cir. 2001)...................................................................................... 6

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
    585 F.3d 267 (6th Cir. 2009) .................................................................................... 3

*In re Fosomax Prods. Liability Litig.*,
    707 F.3d 189 (2d Cir. 2013)..................................................................................... 12

*Green v. Lindsey*,
    885 F. Supp. 469 (S.D.N.Y. 1992), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) ...................... 9

*Johnson v. Gordon*,
    409 F.3d 12 (1st Cir. 2005) ................................................................................ 7, 12

*Laureyssens v. Idea Group, Inc.*,
    964 F.2d 131 (2d Cir. 1992).................................................................................... 9

*Lefkowitz v. Bank of N.Y.*,
    528 F.3d 102 (2d Cir. 2007).................................................................................... 15

*Lessem v. Taylor*,
    766 F. Supp. 2d 504 (S.D.N.Y. 2011)...................................................................... 9

*Levine v. McDonald's Corp.*,
    735 F. Supp. 92 (S.D.N.Y. 1990) ............................................................................ 8

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 674 (2d Cir. 1998).................................................................................... 6

*McDonald v. West*,
    138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015),
    *aff'd*, 669 F. App'x 59 (2d Cir. 2016).......................................................... 7, 8, 12, 13

**CASES**                                                              **PAGE(s)**

*Mowry v. Viacom Int'l, Inc.*,
  No. 03-cv-3090(AJP), 2005 WL 1793773 (S.D.N.Y. Jul. 29, 2005) ..................................... 10

*Narell v. Freeman*,
  872 F.2d 907 (9th Cir. 1989) ................................................................................. 10

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,
  367 F. Supp. 2d 514 (S.D.N.Y. 2005)....................................................................... 5

*Odegard Inc. v. Safavieh Carpets, Inc.*,
  398 F. Supp. 2d 275 (S.D.N.Y. 2005)....................................................................... 8

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010)................................................................................... 6, 10

*Peters v. West*,
  776 F. Supp. 2d 742 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) ............... 8

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ................................................................................. 10

*Riley v. New York Trust Co.*,
  315 U.S. 343 (1942)................................................................................................ 15

*Ringgold v. Black Entm't Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997)..................................................................................... 10

*Santrayll v. Burrell*,
  No. 91-cv-3166(PKL), 1996 U.S. Dist. LEXIS 3538 (S.D.N.Y. Mar. 25, 1996)...................... 8

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ............................................................................... 3, 5

*TufAmerica, Inc. v. Diamond*,
  968 F. Supp. 2d 588 (S.D.N.Y. 2013)...................................................................... 10

*Vargas v. Pfizer, Inc.*,
  352 F. App'x 458 (2d Cir. 2009) ............................................................................ 10

*VMG Salsoul, LLC v. Ciccone*,
  No. 12-cv-5967 (BRO), 2013 WL 8600435 (C.D. Cal. Nov. 18, 2013)
  *aff'd in part, vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016)...................... 7, 12

**CASES**                                                              **PAGE(s)**

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) ......................................................... 4

*Zalewski v. Cicero Builder Dev., Inc.*,
  754 F.3d 95 (2d Cir. 2014)........................................................ 6, 8, 9, 10

**STATUTES**

17 U.S.C. § 12................................................................................... 5

17 U.S.C. § 102(b) ........................................................................... 13

17 U.S.C. § 303(b) ............................................................................. 5

17 U.S.C. § 408(b) ............................................................................. 5

17 U.S.C. § 411................................................................................... 5

**TREATISES**

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (Rev. Ed. 2018) ........................... 4

4 M. Nimmer & D. Nimmer, Nimmer, *Nimmer on Copyright* § 13.01[B]) (Rev. Ed. 2018)......... 9

Richard Rogers Bowker, *Copyright: Its History and Its Law* (1912)............................................ 2

William F. Patry, *Patry on Copyright*, § 9:209.20 (Sept. 2018)...................................................... 3

## PRELIMINARY STATEMENT

The 1909 Act specifically limits the scope of copyright to matter legibly notated in the LGO Deposit Copy. Plaintiffs offer no basis to ignore the law. The only elements notated in the deposit copy that Plaintiffs contend are allegedly similar to TOL are the chords and vocal melodies.

Plaintiffs admit the chord progression was in common use prior to LGO and ignore Defendants' authorities holding that commonplace harmonic progressions are unprotectible as a matter of law. Likewise, objective and empirically verified differences exist between the harmonic rhythms in each work, and the common musical technique of "anticipating" chord changes (newly emphasized by Plaintiffs) is also unprotectible. As for the allegedly similar vocal melodies, they are not. Instead, Plaintiffs omitted many of the notes and disregarded the rhythmic placement of the remaining notes to create an illusion of similarity (and even then, the melodies are demonstrably different). Because the deposit copy has no bass-guitar line (which appears only in the LGO Recording), Plaintiffs pretend it is "implied." Copyright protects what is registered, not what is supposedly "implied." Finally, the "combination of elements" argument also fails – the copyright for LGO is "thin" for good reason, Plaintiffs have admitted the works are not "identical" or "virtually identical" and it is indisputable that TOL does not "very closely copy" the combination of elements at issue in LGO.

While the LGO Recording is irrelevant to this action, even were it considered (there are no lyrical similarities alleged), there is no infringement. Plaintiffs admit all elements of the drum pattern are commonplace and existed before LGO. They admit 91% of TOL features a bass-line distinctly different from the supposedly "unusual" bass-line in the LGO Recording. And even the supposed similarities in the first 24 seconds of TOL's bass-line to the LGO Recording are objectively insignificant and comprise commonplace elements predating LGO.

In short, no protectible elements of expression have been copied in TOL, no actionable

copying can be proved, and no reasonable juror, properly instructed, could find these two compositions substantially similar as a matter of law.[1]

## ARGUMENT

### I.     The LGO Deposit Copy Delineates the Scope of Copyright Protection

That which Plaintiffs do not and cannot dispute determines the outcome of this case: (i) the 1909 Act required the deposit of "copies," (ii)"copies" were required to be in a "written or printed record in intelligible notation," and (iii) musical works "had to be reduced to sheet music or other manuscript form."  Mov. Mem. pp. 9-10 (quoting authorities).  Further, (i) phonorecords "did not qualify as copies of [] musical works" under the 1909 Act as they did not "embody intelligible notations," and (ii) the distribution and publication of phonorecords did not constitute "publication" of the musical composition.  *Id.*  Because these indisputable legal principles, applied to equally indisputable facts, inexorably lead to the dismissal of their claims, Plaintiffs simply ignore them.

Instead, Plaintiffs offer diversions.  *First*, oddly invoking the mechanical compulsory license created by the 1909 Act (for piano rolls), Plaintiffs contend "[t]he design of the 1909 Act was to extend a musical composition's copyright to its first mechanical reproduction."  Opp. Mem. p. 25 (citing, Richard Rogers Bowker, *Copyright: Its History and Its Law* (1912)).  However, as Bowker explained, the mechanical reproduction right referenced in the 1909 Act relates to compulsory licensing once a work is first licensed; it has nothing to do with the scope of copyright. *See* Reply Farkas Aff. Ex. 17.  The 1960 Copyright Office Study cited by Plaintiffs confirms this. *Id.* Ex. 18 ("While the copyright law since 1909 has protected … musical compositions against recording and mechanical reproduction, it has not changed the ruling in *White-Smith Music*

---

[1] Plaintiffs' opening statement: "[t]he defendants do not dispute that they copied Let's Get It On in Thinking Out Loud," defies belief.  The very first paragraph of Defendants' moving memorandum of law unequivocally "dispute[s] that any copying occurred," which is consistent with Defendants' Answers.

*Publishing Co. v. Apollo Co.* that recordings were <u>not</u> 'copies' of the musical composition or 'writings' of an author within the scope of the existing copyright statute. Accordingly, the copyright statute provides <u>no basis</u> for protecting the recording itself") (emphases added).

*Second*, Plaintiffs cite two cases from outside the Second Circuit and contend the law "extends protection to a work's embodiment on the first recording."  *See* Opp. Mem. pp. 26-27 (citing, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000); *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267 (6th Cir. 2009).  Plaintiffs misunderstand these cases.

*Three Boys* involved a challenge to subject matter jurisdiction tied to registration – not to the scope of copyright protection – based on the alleged failure to deposit a "complete copy" of the work as required by the 1909 Act.  The Ninth Circuit rejected the defendants' argument because the "definition of 'complete copy' is broad and deferential."  212 F.3d at 486.  The Court did not rule on, much less consider, whether the scope of the claimant's copyright extended to elements beyond what had been deposited with the Copyright Office.

In *Bridgeport* – a case decided under the 1976 Act, not the 1909 Act – the Sixth Circuit refused to reverse a jury instruction permitting the jury to consider dog panting heard on a sound recording because the composition and recording were "composed and recorded in the studio simultaneously."  585 F.3d at 276.  The Court provided no support for its conclusion, and its opinion has been roundly criticized by leading commentators.  For example, Patry remarked the Court "single-handedly destroy[ed] the field of musical copyright" and "confused musical compositions with sound recordings, thereby giving standing to a party who did not own any copyright interest."  William F. Patry, *Patry on Copyright* § 9:209.20 (Sept. 2018 Update). Nimmer similarly faulted the Court for "[b]lurring the boundaries" "between musical compositions and sound recordings" and concluded "this decision would seem to push the boundaries of musical

copyright too far." 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (Rev. Ed. 2018).[2]

*Third*, Plaintiffs' expert speculates that he is "certain" the deposit copy is "based on" and a "direct transcription" of the single version of the LGO Recording.  *See* Stewart Decl. ¶ 81.  Even if Stewart's rank speculation were true, it is meaningless as it does not alter what is in the deposit copy or enlarge the scope of copyright beyond the deposit copy.  The deposit copy is what it is.[3]

Confirming their first two arguments are meritless, Plaintiffs finally suggest the Court should simply disregard the 1909 Act on supposed public policy grounds.  Disregarding statutory text and over six decades of practice, Plaintiffs pretend that composers "had no reason to transcribe every element of every recording" because the law was supposedly unclear prior to 1978.  This assertion is factually and legally baseless, and ignores the distinction between compositions and recordings.  The law prior to 1978 was clear – "protection required the placement of notice on copies and likewise the deposit of copies," and "a musical work could not claim copyright unless the notice and deposit requirements were satisfied with respect to an object that constituted a visibly intelligible notation."  *See* 1 Nimmer, *supra* § 2.05[A] (emphasis & parentheticals omitted); *see also* Reply Farkas Decl. Ex. 18.  Sheet music (or a comparable writing) authored by a composer

---

[2] Plaintiffs also incorrectly claim the Ninth Circuit "rejected" the lower court's reasoning on appeal in *Williams v. Gaye*.  In fact, the Ninth Circuit "decline[d]" to reach the issue.  895 F.3d 1106, 1121 n.9 (9th Cir. 2018).  Although the Court noted that prior to the District Court's opinion the argument "had not found support in the case law," that merely reflects that this precise issue had not arisen.  *Id.*  That does not alter the unequivocal language of the 1909 Act nor the settled rule that deposit copies with intelligible notation were required and that phonorecords did not suffice.

[3] Stewart's new speculation requires him to disavow his earlier admission that the structures of the deposit copy and single are starkly different, now claiming they are identical.  *See* Rule 56.1 ¶¶ 61, 86; Stewart Decl. ¶ 86.  Defendants previously pointed out that Stewart's admission undercut his claim that the deposit copy was derived from the recording; Defendants never "conceded" that if the two had the same structure it would show the deposit copy had been derived from the recording, much less that one could then consider elements not found in the deposit copy.  Stewart offers only rank speculation regarding Gaye's musical abilities (whether he could faithfully follow the deposit copy) and whether the unequivocal February 1973 date on the application might be an "error."

and deposited with the Copyright Office specifically delineated the scope of what the composer claimed to own.  If a composer intended to claim more, nothing precluded him from doing so.[4]

Allowing *ex post facto* expansion of copyright by including what is supposedly "implied" but not contained in the deposit copy is contrary to the express limits on protection and the certainty of copyright scope provided by the Copyright Act.  The Copyright Act requires "the deposit of copies and registration of [the] work" <u>before</u> an infringement action may be commenced for an obvious reason – to ensure that a proper comparison ensues between the defendant's work and what has been deposited by the plaintiff.  *See* 17 U.S.C. § 12 (1909 Act); 17 U.S.C. § 411 (Current Act); *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) ("deposit requirement" has "dual purpose[]" – "(1) to provide the Copyright Office with sufficient material to identify the work in which the registrant claims a copyright and (2) to furnish the Copyright Office with an opportunity to assess the copyrightability of the applicant's work").

Plaintiffs effectively are asking this Court to rewrite the 1909 Act, which Congress already did <u>prospectively</u>, <u>not retroactively</u>, in the 1976 Copyright Act, to permit the deposit of "phonorecords."  *See* 17 U.S.C. § 408(b).  And a 1997 Amendment to the Copyright Act (which did have retroactive effect) specifically clarifies that "[t]he distribution before January 1, 1978, of a phonorecord [the effective date of the 1976 Amendment] shall not for any purpose constitute a publication of [the] musical work … embodied therein." 17 U.S.C. § 303(b) (1997).[5]

---

[4] Townsend authored the chords, the melody and the lyrics, which are notated in the deposit copy. He did not write the drum or bass-guitar part, and, consistent with that fact, these elements are not notated in the deposit copy.  *See* Rule 56.1 ¶¶ 18-20; Farkas Decl. Ex. 13.

[5] Plaintiffs' claim of "no prejudice" fails, as this issue of prejudice only arises if the deposit copy contains inadvertent errors.  *See Three Boys Music*, 212 F.3d at 486-87.  That is not the issue here.

## II.     A Correct Restatement of the Law Applicable to this Motion

Plaintiffs spend over a page arguing that LGO, as a whole, is "original" and that the existence of "prior art" does not "determine[] whether a work is protectable."  But that is not the point.  As Defendants explained, "an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).  Simply put, a work may be protectible but that does not extend copyright protection to unprotectible elements in it – *scenes-a-faire,* public domain elements or generic musical building blocks.  *See* Mov. Mem. pp. 7-8, 13-14 (citing authorities).

Plaintiffs next argue that the "question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection [is] a question for the factfinder."  Opp. Mem. p. 23 (quoting, *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 681 (2d Cir. 1998)).  But that also is not the question presented by this motion.  The question of whether a work contains non-copyrightable matter (such as commonly used elements, *scenes-a-faire*, basic musical building blocks or public domain elements) and the question of substantial similarity – which are the questions presented here – may be decided as a matter of law.  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010).

The Second Circuit has made clear that it is the province of the Court – not the jury – to extract unprotectible elements from consideration.  *See Gaito*, 602 F.3d at 66, 69 (on a motion to dismiss, "extract[ing] the unprotectible elements from [its] consideration," and concluding that the "plaintiffs [] failed to allege that a substantial similarity exists between defendants' work and the protectible elements of plaintiffs'") (citation, quotation & brackets omitted); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 106 (2d Cir. 2014) (same result on summary judgment); *see also Gaito*, 602 F.3d at 66 ("when faced with works that have both protectible and unprotectible

elements, <u>our</u> analysis must be more discerning, and [] <u>we</u> instead must attempt to extract the unprotectible elements from <u>our</u> consideration and ask whether the protectible elements, standing alone, are substantially similar") (emphases added; citations & quotations omitted).[6]

For example, in *McDonald v. West*, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016), the District Court held on a motion to dismiss that certain elements of the plaintiff's musical composition were "not copyrightable" because they were "far too … common, and unoriginal to create any exclusive right vested in Plaintiff."  *See also id.* at 458 (certain musical elements "are so commonplace that they … are not protectable"); *id.* (ruling that tempo "is a basic element of music that is part of the public domain"); *id.* at 454 (ruling that "common … harmonic progressions are not protected").  The Court removed the unprotectible elements from its consideration and granted the defendant's motion to dismiss.  The Second Circuit affirmed.  Other music copyright cases have done the same.  *See Batiste v. Najm*, 28 F. Supp. 3d 595, 615-16 (E.D. La. 2014) (chord progressions in 22 distinct compositions were "not entitled to protection" because they were "basic" "building blocks of music" and "*scènes à faire*"); *Johnson v. Gordon*, 409 F.3d 12, 23 (1st Cir. 2005) (granting defendant summary judgment because chord progression was "a stereotypical building block of musical composition"); *VMG Salsoul, LLC v. Ciccone*, No. 12-cv-5967 (BRO), 2013 WL 8600435, at *7 (C.D. Cal. Nov. 18, 2013) ("Easily arrived at phrases and chord progressions are usually non-copyrightable"), *aff'd in part, vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016).  Plaintiffs ignore these authorities.

Plaintiffs also contend a combination of unprotectible elements may qualify for protection. Opp. Mem. p. 4.  They ignore, however, that any copyright afforded a combination of unprotectible

---

[6] Even if it were the function of the jury to extract unprotectible elements, no reasonable juror could find the elements at issue in this case to be copyrightable.

elements will, by necessity, be "thin" and infringement "will be established only by very close copying because the majority of the [plaintiff's] work is unprotectable" – the copying in its "entirety" must be "in a nearly identical format."  Mov. Mem. p. 24-25 (quoting authorities).[7]

Confronted with that settled legal proposition, Plaintiffs assert "[t]he law is clear that 'thin' protection applies [sic] factual compilations such as phone books, not musical works." Opp. Mem. p. 22.  Plaintiffs have simply made this up.  The Second Circuit (and other courts) have applied the "thin" copyright principle to all categories of works.  *See Zalewski*, 754 F.3d at 107 (architectural works); *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996) (artwork); *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) (carpets); *McDonald,* 138 F. Supp. 3d at 459 (musical work); *see also Peters v. West*, 776 F. Supp. 2d 742, 750-51 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (musical work).

Plaintiffs also misrepresent Ninth Circuit precedent, arguing that musical works as a general matter are entitled to "broad" and not "thin" protection.  Opp. Mem. p. 22.  This is dicta that is not only inapplicable here, it is also not accurately stated.  An original musical work may be entitled to "broad" protection but that does not mean that a work filled with unprotectible elements is not subject only to "thin" protection.  In any event, the law in this Circuit respecting the "thin" copyright protection afforded a combination of unprotectible elements is clear.

---

[7] Plaintiffs cite only the unusual cases, unlike this one, where the "combination" of elements at issue were not only highly distinctive or complex but they also were copied by the defendant in a near identical manner – which is simply not the case here.  *See Santrayll v. Burrell*, No. 91-cv-3166 (PKL), 1996 U.S. Dist. LEXIS 3538, at *4-5 (S.D.N.Y. Mar. 25, 1996) (finding "the repetition of the non-protectible word 'uh-oh' in a distinctive rhythm" sufficed and that an issue of fact existed as to whether the defendant's song used the distinctive combination in a "strikingly similar" manner); *Levine v. McDonald's Corp.*, 735 F. Supp. 92, 99 (S.D.N.Y. 1990) (complex and unique "patter" technique, expressed by using a "certain pitch 128 consecutive times" which "move[s] up to the next pitch for eight repetitions, and then return[s] to the original pitch for eight additional repetitions" where each repetition was "given a durational value of one sixteenth note").

Plaintiffs then misrepresent Defendants' position to be "that copying must be identical" where a "thin" copyright exists. Opp. Mem. p. 22. Defendants precisely cited the applicable law: the copying must be "very close" or "nearly identical." Mov. Mem. p. 18. Plaintiffs rewrite Defendants' cases contending "close copying" is sufficient under *Zalewski* when *Zalewski* requires "very close copying." 754 F.3d at 107; Opp. Mem. p. 22. In *Beaudin*, the Court did not "reject" a requirement of "identical copying." Rather, it ruled it did not need to reach the question because the plaintiff could not even satisfy the lesser standard of "very close copying." 95 F.3d at 2.

Plaintiffs' memorandum section titled "Unauthorized Copying" also blurs the distinction between actual copying and wrongful copying. Plaintiffs claim that "[t]o prove copying, the similarities between the two works need not be extensive, and need not involve protected elements of the plaintiffs [sic] work." Opp. Mem. p. 6 (citing, *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992); 4 Nimmer, *supra* § 13.01[B]). On the contrary, these authorities hold that to prove <u>wrongful</u> copying, a plaintiff must show the defendant copied protectible elements. *See Laureyssens*, 964 F.2d at 140 (to show "'improper' or 'unlawful' appropriation," a plaintiff must show "that substantial similarities relate to protectible material"); 4 Nimmer, *supra* § 13.01[B] ("the rule applicable to substantial similarity … does indeed require similarities as to protectible elements"). Claiming that an "aggregate of commonplace similarities not found in any other work compels the conclusion of copying" (Opp. Mem. p. 6), Plaintiffs misrepresent *Lessem v. Taylor*, 766 F. Supp. 2d 504, 512 (S.D.N.Y. 2011), which was addressing actual, not wrongful, copying.[8]

While Plaintiffs cite the ordinary observer test, they ignore that it becomes more "discerning" where, as here, the plaintiff's work has unprotectible elements. *See* Mov. Mem. p. 6.

_____

[8] Plaintiffs also try to invoke the inverse ratio rule, but this Circuit has rejected it. *See Green v. Lindsey*, 885 F. Supp. 469, 480 (S.D.N.Y. 1992), *aff'd*, 9 F.3d 1537 (2d Cir. 1993).

Precisely because their infringement claim is founded on unprotectible elements, Plaintiffs then jettison the ordinary observer test and claim the "appropriate inquiry is quantitative and qualitative significance of the copied material."  Opp. Mem. p. 18 (citing, *Warner Bros. Entm't v. RDR Books*, 575 F. Supp. 2d 513, 534; *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 598 (S.D.N.Y. 2013)).  Plaintiffs ignore the context of these cases.  In *Warner Bros.* and *Ringgold* that test was applied because "the original and secondary works [were] of different genres."  575 F. Supp. 2d at 534 n.13.  In *TufAmerica*, the plaintiff claimed fragmented literal similarity, which is not claimed here (nor could it be).  In its two recent copyright opinions, the Second Circuit has made clear that the ordinary observer test, as often modified by the more "discerning" standard, is the appropriate inquiry.  *See Zalewski*, 754 F.3d at 102; *Gaito*, 602 F.3d at 66.

*Finally*, Plaintiffs rest their hopes on the notion that since experts supposedly "disagree on whether … Let's Get It On is original," summary judgment cannot be granted.  Opp. Mem. p. 23. This assertion ignores the legion of copyright cases granting summary judgment to defendants despite dueling experts.  *See Vargas v. Pfizer, Inc.*, 352 F. App'x 458, 460 (2d Cir. 2009); *Mowry v. Viacom Int'l, Inc.*, No. 03-cv-3090 (AJP), 2005 WL 1793773, at *14 (S.D.N.Y. Jul. 29, 2005); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003); *Narell v. Freeman*, 872 F.2d 907, 912-13 (9th Cir. 1989); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1062 (C.D. Cal. 2010).  In any event, Dr. Ferrara does not opine whether LGO is original; he opines that the allegedly similar elements at issue are not indicative of copying.  But perhaps most important, expert opinion on the issue of substantial similarity is <u>not</u> admissible.  *See* Mov. Mem. p. 8 (citing

10

authorities).  Thus, Stewart's opinions, as a matter of law, do not preclude summary judgment.[9]

**III.    Actionable Similarities Do Not Exist Between the LGO Deposit Copy and TOL**

The deposit copy defines the scope of protection.  Of the elements identified by Plaintiffs as being "copied" from LGO, it is undisputed that the drums and the "unusual" bass-line featured in the LGO Recording are <u>not</u> contained in the deposit copy (and, as detailed below, the suggestion that the bass-line is "implied" fails).  *See* Rule 56.1 n.23, Response n. 19, ¶ 38.  Of the remaining elements identified, the deposit copy only includes the composition's chords and vocal melodies.[10] Before comparing these elements to TOL, case law requires that unprotectible, public domain elements be extracted from consideration.  Chief among those elements is the chord progression.

As Plaintiffs have admitted, at least twelve compositions that predate LGO use the same basic chord progression.  *Id.* ¶ 53.  It is also undisputed that the chord progression is so rudimentary, that it appears in two elementary guitar method books.  *Id.* ¶ 55.  At his deposition, Stewart admitted that "[t]hese four chords have been used in other compositions prior to Let's Get It On," that "it's not original" to LGO, and that "other songs have this chord progression."  Defendants also read the following excerpt from one of the guitar method books to Stewart at his deposition:

> By the way, even though "Let's Get It On" was recorded in 1973, which is AFTER dozens of other *I-iii-IV-V* songs were recorded, I firmly believe that Marvin Gaye did not plagiarize the song – he was simply writing a song using a <u>common</u> progression, just like every other professional songwriter does.

*See* Farkas Aff. Ex. 7, 139:16-24; Ex. 4 at Visual Ex. E (capitalization & italics in original; underlined emphasis added).  Defendants then asked Stewart if he "agreed" with that sentence and

---

[9] Plaintiffs claim a musicologist cannot opine on whether prior art exists and whether elements in the plaintiff's work are original to the plaintiff.  An expert musicologist most certainly can provide examples of and opine on prior art that has actual similarities with the plaintiff's work.  Of course, the more examples of prior art, the stronger the showing is that an element is in common use.

[10] Plaintiffs do <u>not</u> claim similarities between the lyrics or song structures.  Rule 56.1 ¶¶ 61-62, 66.

if there was "anything in that sentence that [he] disagreed with." *Id.* Ex. 7, 139:16-141:6.  Stewart responded, "in terms of the sentence you just read, I don't think I have a problem with that." *Id.* Stewart now pretends that he only intended to say that LGO had not been plagiarized (ignoring he already admitted that the chords were in common usage before LGO).

Stewart's attempt to walk back one admission does not change his other admissions or the fact that the chord progression is an elementary musical building block, that it was in common use prior to LGO, and that it is not copyrightable as a matter of law.  *See Batiste*, 28 F. Supp. 3d at 615-16 (finding 22 chord progressions unprotectible because they were "basic … building blocks of music" and "*scènes à faire*"); *VMG Salsoul*, 2013 WL 8600435, at *7 ("Easily arrived at phrases and chord progressions are usually non-copyrightable"); *Johnson*, 409 F.3d at 23 (harmonic progression was "unprotectable" "stereotypical building block of musical composition"); *McDonald*, 138 F. Supp. 3d at 454 ("common … harmonic progressions are not protected").[11] Plaintiffs have no rejoinder to these authorities, so they ignore them entirely.  Conferring any one user a monopoly in a common progression would defeat the aim of the Copyright Act.

As for harmonic rhythm, the harmonic rhythm in LGO and TOL are objectively different, and the differences between them are empirically verified by the LGO Deposit Copy.  *See* Reply Ferrara Decl. ¶¶ 6-7.  Stewart either confuses or purposely misrepresents Ferrara's analysis. Contrary to Stewart's claim, Ferrara analyzed four chords, not six chords, in the deposit copy.  *Id.* Moreover, Ferrara's definition of harmonic rhythm is entirely consistent with the definition used in music dictionaries.  *Id.*  In addition, "anticipating" chord changes between beats is a well-worn

---

[11] Plaintiffs were provided with a copy of Stewart's deposition transcript and never provided an errata sheet or otherwise "corrected" his testimony.  *See* Reply Farkas Decl. ¶ 9.  Stewart also cannot manufacture an issue of fact by contradicting his unambiguous testimonial admissions.  *See In re Fosomax Prods. Liability Litig.*, 707 F.3d 189, 193 (2d Cir. 2013).

musical technique that is not remotely unique to LGO (*id.*), and common musical techniques are not entitled to copyright protection. *See McDonald*, 138 F. Supp. 3d at 458 ("Plaintiff cannot own a common musical technique like melisma"); *see also* 17 U.S.C. § 102(b).

Nor can Plaintiffs credibly claim the combination of the chord progression and rhythm in TOL is "nearly identical" or "very close" to LGO. It is indisputable that the chord progression in TOL is <u>not</u> identical or nearly identical to the commonplace LGO progression, that objective differences in the rhythms exist and that "anticipated" chord changes are a common musical technique. Thus, a combination of these mundane elements cannot support an infringement claim.

Plaintiffs' attempt to manufacture similarities in the objectively dissimilar vocal melodies ignores that it is undisputed that (1) the pitch sequences, even using Stewart's highly manipulated transcriptions, are not remotely similar (50% or fewer of the pitches line up in the same order for each melody),[12] (2) the melodic rhythms of each work are different, and (3) the rhythmic durations of the pitches in the vocal melodies in each work are different. *See* Reply Ferrara Decl. ¶¶ 8-10. Thus, even if one ignores that Stewart materially and improperly manipulated the melodies, objective and obvious differences exist. One does not need to be literate in music to discern the stark differences – they leap off the page. *Id.*; Stewart Decl. pp. 16, 18-19.

As for the bass-line, Plaintiffs admit "[t]he bass-line … is not notated" in the deposit copy but argue it is "implied." *See* 56.1 Response n.19, ¶ 38. Plaintiffs' admission that the bass-line is not notated in the deposit copy ends the inquiry as the 1909 Act required intelligible notation, not imagination of what might have been but is not. But even if one could "imply" <u>a</u> bass-line in the deposit copy, the notion that only one bass-line may be implied and that it is <u>the</u> specific, "unusual" bass line in the LGO Recording – which features the "descending sixth" on which Stewart relies

---

[12] Ferrara's accurate analysis reveals even starker differences. *See* Ferrara Report ¶¶ 85-117.

– is utterly untrue (and not even argued by Plaintiffs).  The deposit copy merely sets parameters for what a bass-line could encompass – it must be in the same key, it must include notes in that key and be related to the chord progression and it must be played in 4/4 meter.  However, within those parameters, there are dozens of possible bass-lines that could be devised, including – but not limited to – the "unusual" bass-guitar part in the LGO Recording.  *See* Ferrara Reply Decl. ¶ 11.

Finally, it is undisputed that the total concept and feel of each work is distinctly different. Stewart admitted under oath that the two works are "not identical" or "virtually identical" (Rule 56.1 Response ¶¶ 79, 174), and Ferrara has articulated at length in his Report and Moving Declaration the global differences between the total concept and feel of each work.[13]   These differences include the vastly different vocal melodies and lyrics of each work, the different song structures, the different moods each song creates and the differences in chord progressions and harmonic rhythms, to name a few (most if not all of which are undisputed).[14]

## IV.    Actionable Similarities Do Not Exist Between the LGO Recording and TOL

Even were the Court to consider the drums and the bass-guitar part that exist only in the LGO Recording, the same result holds.  It is undisputed that 91% of TOL features a bass-line that is markedly different from the bass-guitar in the LGO Recording, and it is objectively indisputable that TOL features a single bass-line and that the TOL Opening Bass Line (present for less than 9%

---

[13] Plaintiffs' contention that Defendants merely claim to have "chang[ed] the words" of TOL to "change[] [its] total concept and feel" is simply untrue.  TOL has a different concept and feel because it possesses distinct musical elements.  The musical expression in TOL, not merely the vocal melody and lyrics sang by Sheeran, expresses a somber and melancholic sentiment.

[14] One of the more astonishing distortions is Plaintiffs' citation to Stewart's "Full Score Comparison" (Opp. Mem. pp. 19-20), claiming that 87% of TOL is found in the chorus of LGO. Plaintiffs simply count the pool of common notes, regardless of the order of those notes, their rhythmic durations or their rhythmic placements.  If this case involved words instead of musical notes, it would be the equivalent of arguing the word "roasting" is substantially similar to "organist" because each uses the same 8 letters.  *See* Reply Ferrara Decl. ¶¶ 24-25.

of TOL) has insignificant similarities with the bass-guitar part in the LGO Recording, which were commonplace prior to LGO.  *See* Reply Ferrara Decl. ¶¶ 17-21; *see also* Ferrara Decl. ¶¶ 40-45.

As for the drums, it is undisputed that each element of the drum part was commonplace prior to LGO, that the drum part, as a whole, existed prior to LGO and that the drums in TOL are <u>not</u> identical to LGO.  *See* Rule 56.1 Response ¶¶ 167-169; Stewart Tr. 246:4-22; Stewart Decl. ¶ 48; Reply Ferrara Decl. ¶¶ 19-20.[15]  Finally, as a matter of law, Plaintiffs cannot prevail in pretending that the "combination" of elements in TOL is "nearly identical" or "very close" to the LGO Recording.  The rudimentary drum-pattern in TOL is not identical to LGO, and more than 91% of TOL features a bass-line that is very different to the bass-guitar part in the LGO Recording.

## V.   <u>Standing – Plaintiffs Have Admitted They Defrauded the California Probate Court</u>

Plaintiffs have all but admitted they committed a fraud on the Probate Court, having admitted every statement in Section F of the Rule 56.1 Statement.  Nevertheless, Plaintiffs claim this Court must abide by the Probate Order, citing the "probate exception" to federal jurisdiction.  However, as the Second Circuit has clarified, the probate exception only applies if the plaintiff in the federal action either seeks to "(1) "administer an estate, probate a will, or do any other <u>purely</u> probate matter," or (2) "to reach a res in the custody of a state court."  *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007) (citations, quotations, brackets & ellipses omitted; emphasis in original).  Here, the probate proceedings were completed long ago.  Defendants merely maintain that Plaintiffs cannot use the Probate Order against them in this action as it would deprive them an opportunity to challenge Kathryn's standing and deprive them of due process.  *See Riley v. New York Trust Co.*, 315 U.S. 343, 353-54 (1942).

---

[15] Plaintiffs attack the prior art drum pattern examples provided by Ferrara but concede that other unidentified on-point examples exist.  Their point is self-defeating.

## CONCLUSION

It is respectfully submitted that the Complaint should be dismissed and that judgment should be entered in favor of Defendants.

Dated: New York, New York
       September 28, 2018

                                   PRYOR CASHMAN LLP

                                   By: */s/ Ilene S. Farkas*
                                        Donald S. Zakarin
                                        Ilene S. Farkas
                                        Andrew M. Goldsmith
                                   7 Times Square
                                   New York, NY 10036
                                   (212) 421-4100

                                   *Attorneys for Edward Christopher Sheeran,*
                                   *Atlantic Recording Corporation and*
                                   *Sony/ATV Music Publishing LLC*