ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/3/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF
CHERRIGALE TOWNSEND,

              Plaintiffs,

      - against -

EDWARD CHRISTOPHER SHEERAN, p/k/a
ED SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC
RECORDS, SONY/ATV MUSIC PUBLISHING,
LLC, and WARNER MUSIC GROUP
COPRORATION, d/b/a ASYLUM RECORDS,

              Defendants.

- - - - - - - - - - - - - - - - - -X

17 Civ. 5221 (LLS)

OPINION & ORDER

Plaintiffs, claiming to own a partial interest in the copyright of the musical composition "Let's Get It On" ("LGO") as heirs of Edward B. Townsend, brought this action for copyright infringement. They allege that a musical composition "Thinking Out Loud" ("TOL"), co-written by defendant Edward Christopher Sheeran and non-party Amy Wadge, infringes their copyright in LGO. Defendants maintain that the deposit copy (not the sound recording) of LGO defines the scope of the copyright, that the two works are not substantially similar, that any alleged similarities concern unprotectable and commonplace elements, and that plaintiff Kathryn Townsend Griffin lacks standing to bring

-1-

suit. They move for summary judgment dismissing the complaint on those grounds. The parties have submitted reports by expert musicologists, who dispute whether substantial similarities exist between the two works and whether those alleged similarities were commonplace prior to LGO.

Regardless of whether the deposit copy or sound recording of LGO defines the scope of the composition's copyright, material facts are in dispute: whether the harmony and harmonic rhythm were commonplace prior to LGO, and whether numerous musical elements in the two works are substantially similar and so uncommon that an ordinary observer would recognize TOL as having been appropriated from LGO. Accordingly, defendants' motion for summary judgment (Dkt. No. 66) is denied.

## BACKGROUND

### *Let's Get It On*

Plaintiffs own partial interests in the musical composition copyright of the song LGO. They claim to be heirs of Townsend, who co-wrote LGO with Marvin Gaye in 1973.[1] Townsend created the

---

[1] At the time of Townsend's death, he retained the right to two-thirds of the songwriter royalties attributable to LGO. The remaining one-third of the songwriter royalties were assigned to Gaye. The beneficial owners of Gaye's one-third interest have commenced a related action, in which formal discovery is stayed pending the resolution of this motion. See Order, Structured Asset Sales, LLC v. Sheeran et al., 18-cv-5839 (S.D.N.Y. Sept. 4, 2018) (Dkt.

music and lyrics for LGO while he was sitting at the piano. The following day, Gaye agreed to record the song. Gaye recorded what would become the first commercially released sound recording of LGO on March 22, 1973.

On July 17, 1973, music publishers filed a copyright application for LGO with the U.S. Copyright Office. The copyright application identifies Townsend as the sole author of LGO, and identifies February 14, 1973, as the date of publication of LGO.

Sheet music for LGO (the "deposit copy") was deposited in support of the copyright application. The first page of the LGO deposit copy appears as follows:

---

No. 68).



Farkas Decl. (Dkt. No. 67, Ex. 12 at 8).

The parties agree that the LGO deposit copy includes the composition's key, meter, harmony (i.e., chord progressions), rhythm, melody, lyrics, and song structure, but they dispute whether the deposit copy also implies or includes other musical elements. Add'l Rule 56.1 Stmt. (Dkt. No. 79) ¶¶ 36-37. Defendants claim that the deposit copy does not include percussion/drums, bass-guitar, guitar, Gaye's vocal performance, horns, flute, piano, strings, or any of the performance elements - such as the tempo in which to perform the composition - contained in the LGO recording. Plaintiffs claim that the chord progressions on the deposit copy imply the bass-line and guitar, by indicating the rhythm and notes for those elements. Plaintiffs also claim that the melody in the deposit copy is a close transcription of Marvin Gaye's actual vocal performances on the recording, and that tempo is a compositional element as well as a performance element.

The U.S. Copyright Office registered LGO for copyright under Registration No. EP 314589.

LGO has become one of the most famous songs in R&B and soul music history.

### *Thinking Out Loud*

On or about February 3, 2014, defendant Ed Sheeran and non-

party Amy Wadge co-authored the musical composition TOL at Ed Sheeran's home in Suffolk, England. On February 5, 2014, Sheeran recorded what would become the commercially released version of TOL. That commercially released recording includes electric guitar, bass-guitar, piano, organ, lyrics, vocals, and percussion/drums. TOL has hit the number one position on the national charts in eleven countries since 2014, and it has been certified platinum numerous times by the Recording Industry Association of America.

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the district court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Courts may determine non-infringement of a copyright as a matter of law on a motion for summary judgment, although "the issue of substantial similarity is frequently a fact issue for jury resolution." Warner Bros. Inc. v. Am. Broad. Cos., Inc., 720 F.2d 231, 239-40 (2d Cir. 1983) (citations

omitted). Expert musicologists may opine on probative or objective similarities between the works and they can provide guidance by translating musical notation and musical concepts into plain English, but they may not opine that a defendant's work is substantially similar to the plaintiff's work. Laureyssens v. Idea Grp., Inc., 964 F.2d 131, 140 (2d Cir. 1992) (expert testimony is "irrelevant when the issue turns to unlawful appropriation").

## DISCUSSION

### *Scope of Copyright Protection*

As a threshold matter, the parties disagree over the metes and bounds of the copyright in LGO. Defendants argue that the LGO deposit copy defines the scope of the copyright protection. Plaintiffs argue that the composition is embodied on the Gaye recording, which is the first mechanical reproduction of LGO.

That issue is the subject of the supplemental authority submitted by defendants, Skidmore for Randy Craig Wolfe Tr. v. Led Zeppelin, 905 F.3d 1116 (9th Cir. Sept. 28, 2018). There, the Ninth Circuit discussed the point fully and thoughtfully, and held that, for an unpublished musical composition under the 1909 Act, "the deposit copy of 'Taurus' [the plaintiff's work], rather than a sound recording, defined the scope of the protectable

-7-

copyright." Id. at 1131. The court was persuaded by "cases that, in the context of discussing the current copyright scheme, opined that one of the purposes of the deposit requirement is to provide 'sufficient material to identify the work in which the registrant claims a copyright.'" Id. at 1133 (citations omitted).

The question whether this Circuit would concur is open, and unnecessary for decision at this point, for the outcome of this motion is the same under either view. Hearing the percussion and bass increases the perception of similarity between the works.

### *Commonplace Musical Elements*

*Law*

"To qualify for copyright protection, a work must be original to the author." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991) (citations omitted). The Second Circuit has explained when a work's originality suffices to be copyrightable:

> As the Supreme Court's decision in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), makes clear, a work may be copyrightable even though it is entirely a compilation of unprotectible elements. *See id.* at 362, 111 S.Ct. at 1296 (even telephone directory may be copyrightable if its listings are selected, coordinated, or arranged in an original fashion). What

-8-

> is protectible then is "the author's original
> contributions," *id.* at 350, 111 S.Ct. at 1290—the
> original way in which the author has "selected,
> coordinated, and arranged" the elements of his or her
> work. *Id.* at 358, 111 S.Ct. at 1294.

Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1003-04 (2d Cir. 1995).

In the context of musical compositions, common elements are not entitled to copyright protection because they are no longer original and already in the public domain. Those unprotectable elements include key, meter, tempo, common song structures, common chord progressions, common melodies, and common percussive rhythms. See McDonald v. West, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), aff'd, 669 F. App'x 59 (2d Cir. 2016) (tempo, common rhythms, song structure, and harmonic progressions); Jean v. Bug Music, Inc., No. 00-cv-4022 (DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (common melodic sequence); Tisi v. Patrick, 97 F. Supp. 2d 539, 543-44 (S.D.N.Y. 2000) (key, common structure, harmonic progression, and percussive rhythm).

Courts "treat the question whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder." Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 674, 681 (2d Cir. 1998). Where experts disagree as to whether a particular musical element is original, summary judgment is inappropriate. See Ulloa v.

Universal Music & Video Distribution Corp., 303 F. Supp. 2d 409, 413-14 (S.D.N.Y. 2004) ("It would be improper for this Court, on a motion for summary judgment, to draw its own conclusions from this competing evidence regarding the originality of the Vocal Phrase.").

*Application*

The parties and their experts agree that many of the elements in LGO are protectable, but they disagree as to whether the I-iii-IV-V chord progression and harmonic rhythm present in both compositions are unprotectable as commonplace musical elements. See Add'l Rule 56.1 Stmt. ¶¶ 52-60. That disagreement precludes summary judgment. The question whether those elements in LGO demonstrate "sufficient originality and creativity to warrant copyright protection" is a factual question to be determined at trial.

The parties squarely dispute whether "The basic I-iii-IV-V chord progression used in LGO was commonplace prior to LGO." Id. ¶ 52. Their expert musicologists also disagree on that point: defendants' expert opined that "the I-iii-IV-V chord progression was already commonplace prior to the LGO Recording," (Ferrara Decl. (Dkt. No. 68) ¶ 17), whereas plaintiffs' expert opined, "This chord progression was not commonplace prior to LGO"

(Stewart Decl. (Dkt. No. 81) ¶ 7).

Plaintiffs concede that the defense expert "identified at least thirteen songs that predate LGO that use the same chord progression used in LGO," (id. ¶ 53), although they note, "Out of hundreds of thousands of songs composed prior to Let's Get It On, only a dozen or so were identified that contained this chord progression," (id. ¶ 52). Similarly, plaintiffs concede that the "I-iii-IV-V chord progression also appears in at least two guitar method books," (id. ¶ 55), although they note that "the two guitar method books were both published more than twenty-five years after Let's Get It On was written" (id.). In view of the parties' disagreement as to whether the chord progression in LGO is sufficiently uncommon to warrant copyright protection, the Court has no basis on which to determine it as a matter of law.

The parties also dispute whether the harmonic rhythm of that four-chord progression – the second and fourth chords being "anticipated" or placed ahead of the beat – is protectable. Defendants claim that "anticipating" chord changes is a common musical technique that is not entitled to copyright protection. But plaintiffs argue that the harmonic rhythm in LGO is distinctive, and note that defendants have identified only one pre-LGO song ("Georgy Girl") with the same harmony and harmonic progression as LGO. Again, those raise questions that are not

resolvable by summary judgment, but require trial.

## Substantial Similarity

*Law*

To prevail on a copyright infringement claim, a plaintiff must establish that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Peter F. Gaito Architecture LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (citation and internal quotation marks omitted). The Second Circuit has also set forth the test that courts should use to assess substantial similarity:

> "The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir.2001) (quoting *Hamil Am.*, 193 F.3d at 100). In applying the so-called "ordinary observer test," we ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995) (internal quotation marks omitted). On occasion, though, we have noted that when faced with works "that have both protectible and unprotectible elements," our analysis must be "more discerning," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir.1994), and that we instead "must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are

-12-

> substantially similar," *Knitwaves, Inc.,* 71 F.3d at 1002 (emphasis omitted).
>
> No matter which test we apply, however, we have disavowed any notion that "we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Id.* at 1003; *see Boisson,* 273 F.3d at 272-73. Instead, we are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 133 (2d Cir.2003); *see Boisson,* 273 F.3d at 272; *Knitwaves Inc.,* 71 F.3d at 1003, as instructed by our "good eyes and common sense," *Hamil Am.,* 193 F.3d at 102 (alteration omitted).

Id. at 66.

*Application*

Expert musicologists for both parties have opined on probative similarities between the musical elements of the two works. Construing those musical elements in the light most favorable to plaintiffs, a jury could find several probative similarities between LGO and TOL. Those elements include the I-iii-IV-V harmonic progression, harmonic rhythm with anticipated second and fourth chords, melody, bass-line, and percussion. Although the two compositions are not identical, an average lay observer could conclude that parts of TOL were appropriated from LGO. Even applying the "more discerning" analysis for works that have both protectable and unprotectable elements, the overlap of

the protectable elements alone prevents a judgment of
noninfringement as a matter of law.

Harmony. The parties dispute not only whether the beginning
harmony (i.e., the I-iii-IV-V chord progression discussed above)
is protectable in LGO, but also whether it is substantially
similar in the two works. That chord progression is identical in
both songs for the first 24 seconds of TOL. Stewart Decl. ¶ 5.
TOL features multiple chord progressions in addition to the
I-iii-IV-V chord progression, some of which are similar but not
identical to the chord progression in LGO. Add'l Rule 56.1 Stmt.
¶ 85. Plaintiffs' expert opines that the remaining chord
progressions in TOL are "extremely similar" to those used in LGO,
and are used throughout approximately 70% of TOL and 86.7% of
LGO. Stewart Decl. ¶ 13.

Harmonic Rhythm. Similarly, the parties dispute whether the
harmonic rhythm discussed above (i.e., "anticipating" the second
and fourth beats) in the two works is substantially similar.
Plaintiffs argue that the distinctive harmonic rhythm of the
four-chord progression of LGO discussed above, which is notated
on the deposit copy by the placement of chord changes above
particular rhythms, also occurs throughout TOL. In defendants'
view, the harmonic rhythms are different because, although the
rate of chord change is identical, the rate at which chords are

-14-

played is twice as fast in TOL, where the four-chord progression is played over two bars instead of four bars as in LGO. Plaintiffs counter that harmonic rhythm is defined as the rate at which chords change (not the rate at which chords are played), and that defendants' distinction is superficial because the harmonic rhythm in LGO can be written either as a two-bar progression or four-bar progression without changing the internal relationship of the rhythms.

Vocal Melody. The similarity of the vocal melody in the two works is also in dispute. Plaintiffs argue that the distinctive eleven-note pitch sequence 6-5-3-2-6-5-3-5-6-5-3 in the melodic "hook"[2] or chorus of LGO is substantially copied and used as the verse melody of TOL, including in its opening lines:



Pl. Br. at 10. Defendants argue that plaintiffs' expert's

---

[2] A hook is a device used in music that catches the attention.

-15-

opinion fails as a matter of law because he "had to intentionally delete pitches and alter the melodic sequences in order to create the appearance of similarity." Def. Br. at 15. Plaintiffs concede that there are differences in the pitch sequences, but claim that those differences are minimized by the overall similarity of the melody's accompaniment. Pl. Br. at 10 (citing Swirsky v. Carey, 376 F.3d 841, 848 (9th Cir. 2004) ("no approach can completely divorce pitch sequence and rhythm from harmonic chord progression, tempo, and key")).

Bass-Line and Percussion. The bass-line and percussion parts in TOL may be the elements that are most similar to the sound recording of LGO, although they are not present in the deposit copy. The bass-lines are both syncopated, feature a distinctive "descending sixth" note, and develop in the same way; the drums both include eight-note high hats,[3] snare drum on beats 2 and 4, and bass drum on beat 1 and syncopated on the "and" of beats 2 and 3. Plaintiffs argue that the bass-line is "implied" in the deposit copy because the chord names written above certain lyrics indicate the bass notes and rhythm. But those chord names merely set parameters for what a potential bass-line could encompass, and do not imply the unusual bass-line in the LGO

---

[3] Foot-operated cymbals.

recording that features a descending sixth.

Key, Tempo, and Meter. The key, tempo, meter, and genre of the two compositions are similar, albeit unprotectable elements. LGO is in the key of E-flat major, has a tempo of 82 beats per minute, and is in 4/4 meter ("common time"). TOL is in the key of D major (a "half-step" or "semitone" below E-flat), has a tempo of 79 beats per minute, and is also in common time.

Total Concept and Feel. Not only are there substantial similarities between several of the two works' musical elements, but an ordinary observer might experience the aesthetic appeal of both works as the same. Nevertheless, defendants point to other elements – song structure, lyrics, and tone – to highlight the difference in "total concept and feel" between the works (plaintiffs do not claim similarities between the lyrics or song structures, (Add'l Rule 56.1 Stmt. ¶¶ 61-22, 65-66)), and contend that that the total concept and feel of the two works is different because "TOL is characterized by somber, melancholic tones, addressing long-lasting romantic love whereas the LGO Recording is a sexual anthem that radiates positive emotions and encourages the listener to 'get it on.'" Def. Br. at 5. A jury might side with either view; it may be impressed by footage of a Sheeran performance which shows him seamlessly transitioning between LGO and TOL. Frank Decl. (Dkt. No. 82), Ex. 2, Video

Ex. 1.

Even without considering the bass-line and drum parts, which are not present in the LGO deposit copy, the question whether TOL infringes on LGO should be determined by trial rather than summarily.

### *Kathryn Townsend Griffin's Standing*

Defendants argue that one of the plaintiffs, Kathryn Townsend Griffin ("Kathryn") lacks standing to sue for copyright infringement of LGO because she is not a proper owner of the copyright in LGO. Kathryn claims to be the biological daughter and an intestate heir of Townsend, who died intestate in 2003. Defendants contend that, although the Superior Court of California, County of Riverside, Riverside Probate Division ordered in 2008 that Kathryn was an intestate heir of Townsend and thus entitled to 30% of the royalties from his music catalog, Kathryn obtained that order by withholding material information from that Court. Kathryn submitted numerous declarations that she was Townsend's biological daughter but did not disclose that she had been adopted as a child by other parents, Shirley and Ernest Griffin. Defendants claim that, under California law, children who have been adopted by others have no right to inherit from their biological parents, citing Cal. Prob. Code § 6451(a)

-18-

("An adoption severs the relationship of parent and child between an adopted person and a natural parent of the adopted person", with applications and exclusions dependent on circumstances).[4]

Defendants ask this Court to revise the Superior Court of California's order, by determining in this case the effect that knowledge of Kathryn's adoption would have had on the California Superior Court's acceptance of her as an heir of Townsend. Under 28 U.S.C. § 1738, authenticated judicial proceedings of any State, including California, "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." Thus, this Court must give the same effect to the Superior Court's disposition as it would be given by California

---

[4] Although the petition to administer Townsend's estate does not expressly mention Kathryn's adoption, it states:

> Furthermore, both Clef Michael Townsend [Kathryn's surviving half-brother] and Cherrigale Townsend, who is the personal representative of Edward David Townsend's [Kathryn's deceased half-brother's] estate and the former spouse of Edward B. Townsend, have specifically stated that they wish to acknowledge Kathryn Griffin as the natural child and heir of Edward B. Townsend. It is therefore requested of this Court that it confirm the paternity of Kathryn Griffin as the daughter of Edward B. Townsend for purposes of inheriting her one-third intestate share of Edward B. Townsend's estate.

Pet. to Adm'r Estate (Dkt. No. 67, Ex. 15 ¶ 17). It is almost inconceivable that Clef, Kathryn's half-brother, and Cherrigale, Townsend's former wife, were not aware of Kathryn's adoption.

-19-

courts. The record gives no indication that the California Superior Court was aware of the point: it did not mention it, nor express any view on it. Neither side's brief discusses what the Superior Court would do with an attempt to reopen its determination (or even whether that is possible) or what other California courts would do with such a disposal of estate distribution issues in the way sought by all parties.

**CONCLUSION**

The motion for partial summary judgment (Dkt. No. 66) is denied.

So ordered.

Dated: New York, New York
January 2, 2019

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.