UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

        *Plaintiffs*,

       -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

        *Defendants*.

ECF CASE

17-cv-5221 (RJS)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR REARGUMENT OR, IN THE ALTERNATIVE, CERTIFICATION OF AN INTERLOCUTORY APPEAL

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Edward Christopher Sheeran,
Atlantic Recording Corporation and
Sony/ATV Music Publishing LLC*

*Of Counsel:*
   Donald S. Zakarin
   Ilene S. Farkas
   Andrew M. Goldsmith

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMARY STATEMENT ...............................................................................1

ARGUMENT ......................................................................................................6

I.   RECONSIDERATION SHOULD BE GRANTED AND
     SUMMARY JUDGMENT AWARDED TO DEFENDANTS ............................................6

     A.   Legal Standard .....................................................................................6

     B.   The Court Overlooked Controlling Law ...............................................7

          1.   The Court, Not the Factfinder, Must Extract Unprotectable Elements................8

          2.   A Mere Disagreement Between Competing Experts Concerning
               Supposed Factual Matters Does Not Preclude Summary Judgment..................11

     C.   Application of the Appropriate Legal Standards ...........................................14

          1.   The Harmonic Progression ...............................................14

          2.   The Harmonic Rhythm .....................................................18

          3.   Upon Extracting the Unprotectable Elements From
               Consideration, Actionable Similarities Do Not Exist .........................19

II.  IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY
     AN APPEAL TO THE SECOND CIRCUIT ON TWO ISSUES ......................................22

     A.   Legal Standard .....................................................................................22

     B.   If Reconsideration Is Denied, Certification Should Be
          Granted  to Decide Whether the LGO Deposit Copy
          Defines the Scope of Copyright Protection ...............................................23

     C.   Certification Should Be Also Be Granted As To Whether
          Protectability Is To Be Determined By The Court .......................................25

CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
     No. 12-cv-8852 (JMF), 2014 WL 1881075 (S.D.N.Y. May 9, 2014) .............................. 22, 25

*Batiste v. Najm*,
     28 F. Supp. 3d 595 (E.D. La. 2014)........................................................................ 10, 11, 16

*Batts v. Adams*,
     No. 10-cv-8123 (JFW), 2011 U.S. Dist. LEXIS 161401 (C.D. Cal. Oct. 21, 2011) .............. 13

*Bernal v. Paradigm Talent & Literary Agency*,
     788 F. Supp. 2d 1043 (C.D. Cal. 2010) ................................................................................ 13

*Bickerstaff v. Vassar College*,
     196 F.3d 435 (2d Cir. 1999)................................................................................................. 12

*Computer Associates International, Inc. v. Altai, Inc.*,
     982 F.2d 693 (2d Cir. 1992)............................................................................................. 9, 10

*Darrell v. Joe Morris Music Co.*,
     113 F.2d 80 (2d Cir. 1940)................................................................................................... 15

*In re Del–Val Fin. Corp. Sec. Litig.*,
     874 F. Supp. 81 (S.D.N.Y.1995) ........................................................................................ 22

*In re Dynex Capital, Inc. Securities Litig.*,
     No. 05-cv-1897 (HB), 2006 WL 1517580 (S.D.N.Y. Jun. 2, 2006).................................. 22, 25

*Garcia v. Hartford Police Dep't*,
     706 F.3d 120 (2d Cir. 2013)................................................................................................. 12

*Hayes v. New York City Dep't of Corrections*,
     84 F.3d 614 (2d Cir. 1996)................................................................................................... 15

*Intersong-USA v. CBS, Inc.*,
     757 F. Supp. 274 (S.D.N.Y. 1991) ...................................................................................... 16

*Estate of Jaquez v. City of N.Y.*,
     104 F. Supp.3d 414 (S.D.N.Y. 2015) ), *aff'd*, 706 F. App'x. 709 (2d Cir. 2017) .................. 12

*Johnson v. Gordon*,
     409 F.3d 12 (1st Cir. 2005).................................................................................................. 11

**CASES** <span style="float:right">**PAGE(s)**</span>

*Katel Ltd. Liability Co. v. AT&T Corp.*,
607 F.3d 60 (2d Cir. 2010).........................................................................................11

*Lil' Joe Wein Music, Inc. v. Jackson*,
245 F. App'x. 873 (11th Cir. 2007) ..........................................................................16

*Major League Baseball Props., Inc. v. Salvino*,
542 F.3d 290 (2d Cir. 2008)...............................................................................11, 12

*Matthew Bender & Co. v. W. Publishing. Co.*,
158 F.3d 674 (2d Cir. 1998)...................................................................................7, 8

*McDonald v. West*,
138 F. Supp. 3d 448 (S.D.N.Y. 2015) ), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ..... 8, 10, 18, 20

*Mei Xing Yu v. Hasaki Rest., Inc.*,
319 F.R.D. 111 (S.D.N.Y. 2017) .........................................................................22, 25

*Moore v. Columbia Pictures Indus., Inc.*,
972 F.2d 939 (8th Cir. 1992) ......................................................................................13

*Mowry v. Viacom Int'l, Inc.*,
No. 03-cv-3090 (AJP), 2005 WL 1793773 (S.D.N.Y. Jul. 29, 2005) ......................13

*Narell v. Freeman*,
872 F.2d 907 (9th Cir. 1989) ......................................................................................13

*Newton v. Diamond*,
204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th Cir. 2004)........................19

*Nobile v. Watts*,
289 F. Supp. 3d 527 (S.D.N.Y. 2018) ), *aff'd*, -- F. App'x --, No. 17-3752, 2018 WL
4523112, (2d Cir. Sept. 21, 2018) ..........................................................................8, 10

*Pearson Educ., Inc. v. Liu*,
No. 08-cv-6152 (RJH), 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010)...............................22, 25

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010).........................................................................................8, 9

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997)..........................................................................................12

**CASES**                                                                   **PAGE(s)**

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ................................................................ 13

*Rose v. Hewson*,
   No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) .................................... 20

*Schoolcraft v. City of New York*,
   298 F.R.D. 134 (S.D.N.Y. 2014) ........................................................... 6

*Shrader v. CSX Transportation, Inc.*,
   70 F.3d 255 (2d Cir. 1995)................................................................. 6

*Skidmore v. Led Zeppelin*,
   905 F.3d 1116 (9th Cir. 2018) ............................................................ 23

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000)...................................................... 16

*Ulloa v. Universal Music & Video Distrib. Corp.*,
   303 F. Supp. 2d 409 (S.D.N.Y. 2004)................................................... 7, 8

*Vargas v. Pfizer, Inc.*,
   514 F. Supp. 2d 439 (S.D.N.Y. 2007), *aff'd*, 352 F. App'x. 458 (2d Cir. 2009).................... 12

*VMG Salsoul, LLC v. Ciccone*,
   No. 12-cv-5967 (BRO), 2013 WL 8600435 (C.D. Cal. Nov. 18, 2013) *aff'd in part,*
   *vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016) ........................... 11, 13

*Zalewski v. Cicero Builder Dev., Inc.*,
   754 F.3d 95 (2d Cir. 2014).................................................................. 8, 9


**STATUTES**

17 U.S.C. § 102(b) ............................................................................. 19

28 U.S.C. § 1292(b) ......................................................................... 1, 22

## RULES & REGULATIONS

Local Civil Rule 6.3 ................................................................................................................... 15

## BOOKS & TREATISES

Oliver Holmes.Sr, Pages From an Old Volume of Life; a collection of essays, 1857-1881 (1883) ............................................................................................................................................1

II Paul Goldstein, Copyright Principles, Law & Practice, § 8.3 (1989). .........................................1

Defendants Edward Christopher Sheeran, Atlantic Recording Corporation d/b/a Atlantic Records and Sony/ATV Music Publishing LLC (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for an Order: (i) pursuant to Local Civil Rule 6.3, granting reargument/reconsideration of the Court's Opinion and Order dated January 3, 2019 (the "Decision") and, upon granting reargument/reconsideration, declaring the harmonic progression and the harmonic rhythm in LGO unprotectable, commonplace musical building blocks and awarding summary judgment to Defendants; or (ii) in the alternative, if the Court does not grant this motion, then, pursuant to 28 U.S.C. § 1292(b), certifying an interlocutory appeal to the Court of Appeals for the Second Circuit to determine (a) whether the LGO Deposit Copy defines the scope of copyright protection and (b) whether the determination of protectable elements is, consistent with Second Circuit precedent, a legal question committed to the Court, not the trier of fact.[1]

## PRELIMINARY STATEMENT

Over a century ago, Oliver Wendell Holmes, Sr. noted that "literature is full of coincidences which some love to believe plagiarisms.  There are thoughts always abroad in the air which it takes more wit to avoid than to hit upon."[2]  This observation is even more pronounced in music where, as Professor Goldstein (citing other commentators) noted, "the vocabulary available for musical composition is far less rich and enables far less invention than the vocabulary of literature, drama and the visual arts."[3]  Consistent with these observations, LGO is based on musical elements that were in common use prior to LGO and which have continued to be used

---

[1] Undefined capitalized terms have the meanings given to them in Defendants' summary judgment papers.

[2] Oliver Holmes.Sr, Pages From an Old Volume of Life; a collection of essays, 1857-1881 (1883).

[3] II Paul Goldstein, Copyright Principles, Law & Practice, § 8.3 (1989).

thereafter.  Ed Sheeran and non-party Amy Wadge did not copy, but independently created TOL, and the limited alleged similarities between LGO and TOL are entirely due to the fact that both songs employ some of the same basic musical building blocks that have been used in dozens of other songs, both before and after LGO's release.  Plaintiffs are not entitled to exclusive possession of these basic musical building blocks.

In those copyright cases where the Court cannot summarily determine, on a motion to dismiss or for summary judgment, whether protectable elements in a work have been infringed, it nevertheless remains the Court's role – not that of the trier of fact – to extract unprotectable elements from consideration and, upon doing so, to determine whether there are questions of material fact as to whether a defendant's work is substantially similar to protectable elements in the plaintiff's work.  Consistent with these principles, where a copyright infringement case proceeds to trial, the Court must limit the jury's consideration solely to that which is protectable.

It is respectfully submitted that the Court appears to have overlooked these principles, as it did not determine the issue of protectability as to any of the elements at issue in its Decision, but instead delegated this essential function to the jury, ruling that "whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection [is] a question for the factfinder."  Respectfully, that holding, premised on a Second Circuit decision from 1998, is clearly erroneous, as confirmed by subsequent and ample Second Circuit jurisprudence.

Applicable law confirms that the question of protectability is for the Court to decide in the first instance and, even if there were a factual question to be determined by the trier of fact, it is settled law that on a motion for summary judgment – both in copyright cases and non-copyright

cases alike – a factual question is not created merely because the party opposing summary judgment offers conclusory assertions contradicted by the evidence in the record.

And this principle is no different where the conclusory assertion comes from an expert witness.  Expert opinions do not exist in the ether but must be tethered to the evidence in a case.  In holding that factual questions exist as to whether certain elements in LGO were "unprotectable as commonplace musical elements" merely because the Plaintiffs' expert offered the wholly unsupported conclusion that they were not commonplace, the Court overlooked both this controlling legal principle and the fact that the undisputed evidence was to the contrary.

In particular, the Court overlooked that Defendants' expert, Dr. Ferrara, predicated his opinion on actual, objective evidence establishing that the harmonic progression in LGO is a commonplace musical building block used in no less than a dozen songs preceding LGO, that the supposed "distinctive" aspect of LGO's harmonic rhythm – the anticipation of chord changes – is a commonplace musical technique (techniques are unprotectable as a matter of law), and that objective differences otherwise exist between the harmonic rhythms in LGO and TOL.  Plaintiffs' expert, Dr. Stewart, conceded the exemplars of well-known prior art identified by Dr. Ferrara and that numerous songs preceding LGO use the identical harmonic progression as LGO, and it is undisputed that the anticipation of chord changes is a commonplace musical technique.  In fact, the Court noted that Dr. Stewart "conceded" that the evidence of prior art presented by Dr. Ferrara was accurate.  Yet, the Court found issues of fact precluded summary judgment based solely on Dr. Stewart's naked conclusion – contradicted by all of the undisputed evidence – that the harmonic progression and harmonic rhythm in LGO were "not commonplace."

Simply put, an issue of fact is not created where the party opposing summary judgment admits that the movant's evidence is correct and offers no contradictory evidence but instead relies

solely on an expert "opinion" that is contrary to the undisputed evidence.  The Decision overlooked that Dr. Stewart's naked conclusion cannot create a question of fact in the face of undisputed contrary factual evidence – especially where, as here, Dr. Stewart's conclusion, offered in his declaration opposing summary judgment, contradicted his own deposition testimony.

Accordingly, reargument should be granted, as the Decision overlooks and is inconsistent with these controlling legal principles.  Because the undisputed evidence is that the harmonic progression and the harmonic rhythm in LGO were commonplace, unprotectable musical building blocks, which were well-known and often used long before LGO, the Court should reconsider the Decision and extract from consideration these indisputably commonplace elements.  Once the harmonic progression and harmonic rhythm are extracted from consideration, one is led to an inexorable conclusion: TOL is not substantially similar to the protectable elements in the LGO Deposit Copy.  Summary judgment should have been awarded to Defendants.

Beyond failing to extract unprotectable elements, the Decision specifically declined to address whether the scope of copyright protection is defined by the LGO Deposit Copy – even though the Court noted the comprehensive Ninth Circuit decision so holding – based on its conclusion that questions of fact remained to be determined by a jury (the precise questions of "disputed fact" addressed above).  But it is unquestionably the Court's role – not that of a jury – to identify the metes and bounds of what constitutes the copyrighted work.  It is a legal issue whether the scope of copyright protection is defined by the deposit copy or whether Plaintiffs can put before the jury elements that are nowhere embodied in the tangible medium of expression that was deposited with the Copyright Office.

Were this Court not to resolve this purely legal question, any trial of this case would allow a jury to consider musical elements not contained in the LGO Deposit Copy – including various

recorded versions of LGO which, as the Ninth Circuit agreed, are not encompassed by the copyright at issue.[4]  This legal question must be decided before trial because the jury will either be tasked with comparing TOL to the LGO Deposit Copy, or it will be tasked with comparing TOL with elements contained in the LGO Recording.  And, as the Court noted, because the Second Circuit has not yet spoken directly on this precise question, it is a question which should be certified to the Second Circuit before trial.

This legal question is likely outcome determinative.  As the Decision itself recognized, the bass-line and percussion elements in TOL "may be the elements that are most similar to the sound recording of LGO, although they are not present in the deposit copy."  This case cannot be tried without this question first being decided.  The Court deferred consideration of this question, but it is not a jury question and it must be determined in advance of trial.

Yet, because the issue has not yet been determined by the Second Circuit, whatever determination the Court may make on this outcome determinative question could require a new trial in the event the Second Circuit ultimately disagrees.  If the Court permits the jury to consider elements in the LGO Recording, and the Second Circuit finds that to be error, it would require a new trial (in the event a verdict were returned for Plaintiffs) because it would be impossible to ascertain whether the jury's decision resulted from or was influenced by improperly considered elements in the LGO Recording.  If the Court prohibits the jury from considering the LGO Recording, and the Second Circuit finds that to be error, it would again require a new trial (in the event a verdict is returned for Defendants) because it will be impossible to determine whether the jury's consideration of the elements in the LGO Recording would have produced a different result.

---

[4] As discussed in detail in Defendants' motion for summary judgment, the supposedly similar elements contained in the LGO Recording are also unprotectable and were not, in any event, copied.  But Defendants should not be saddled with the additional burden and potential prejudice of addressing elements before a jury that are unprotectable and which will be impossible for the jury to disregard.

In either case, this Court's ruling on the scope of protection could require the parties – and the Court – to expend substantial resources in vain.  As the case law cited below makes plain, this is precisely the type of case where an interlocutory appeal should be certified.  Accordingly, if the Court does not reconsider the Decision and grant summary judgment to Defendants, it is respectfully submitted that the Court should certify an interlocutory appeal to the Second Circuit to resolve whether the LGO Deposit Copy defines the scope of the copyrighted work at issue.[5]

## ARGUMENT

## I.   RECONSIDERATION SHOULD BE GRANTED AND SUMMARY JUDGMENT AWARDED TO DEFENDANTS

### A.   Legal Standard

On a motion for reconsideration, the movant must "demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, [which] might materially have influenced its earlier decision." *Schoolcraft v. City of N.Y.*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (citations & quotations omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (affirming district court's decision to reconsider its earlier ruling and holding that reconsideration is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court") (citations omitted).  Although such motions are rarely granted, reargument is appropriate here because the Court inadvertently overlooked controlling law that necessarily affects its prior ruling.

---

[5] Of course, in the event the Court reconsiders its Decision, finds that the LGO Deposit Copy defines the scope of protection and grants summary judgment to Defendants, an interlocutory appeal would be unnecessary as the Plaintiffs could appeal from such a final judgment as of right.

B.    **The Court Overlooked Controlling Law**

The Court concluded that the "disagreement" between "[t]he parties and their experts" "as to whether the I-iii-IV-V chord progression and harmonic rhythm … are unprotectable as commonplace musical elements" "is a <u>factual</u> question" and therefore "precludes summary judgment."  *See* Decision at 10 (emphasis added).  In reaching that conclusion, the Court overlooked controlling law and relied only on a naked conclusion of Dr. Stewart that is contrary to undisputed evidence which Dr. Stewart admitted was accurate.

After stating the applicable legal principle that "common [musical] elements are not entitled to copyright protection because they are no longer original and already in the public domain," the Court then held that "Courts 'treat the question whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder.'"  *Id.* at 9 (quoting *Matthew Bender & Co. v. W. Publ'g. Co.*, 158 F.3d 674, 681 (2d Cir. 1998)).  The Court also held that "[w]here experts disagree as to whether a particular musical element is original, summary judgment is inappropriate."  *See* Decision at 9-10 (citing *Ulloa v. Universal Music & Video Distrib. Corp.*, 303 F. Supp. 2d 409, 413-14 (S.D.N.Y. 2004)).  The Court's reliance on these cases was misplaced because they are contrary to subsequent controlling law.

In *Bender,* the Second Circuit was not addressing whether, in a copyright infringement action, elements allegedly infringed were protectable.  Rather, in a declaratory judgment action, the issue was whether a work was copyrightable.  Subsequent Second Circuit cases make clear that this is a different inquiry than whether constituent elements of a work alleged to be infringed are protectable.  Regardless, even assuming, *arguendo,* that *Bender* held that the factfinder must determine, in all instances, whether constituent elements of a work are protectable (which was

neither the holding nor issue addressed in *Bender*), such holding conflicts with controlling Second Circuit jurisprudence which makes clear that it is the function – and, in fact, the duty – of the Court to determine whether the constituent elements of a work alleged to be infringed are protectable and to extract commonplace unprotectable elements from consideration.

In *Ulloa,* it appears that the District Court misunderstood these two very different inquiries. In any event, to the extent that *Ulloa* concluded that a mere difference of opinion between competing experts precludes summary judgment, that too, has been clearly rejected by subsequent, controlling Second Circuit jurisprudence, which makes clear that a party opposing summary judgment does not raise an issue of fact merely by making conclusory assertions, and that an expert must base his or her opinions on actual facts and data, as opposed to anecdotal evidence and conclusory *ipse dixit*.

## 1.    The Court, Not the Factfinder, Must Extract Unprotectable Elements

As overwhelming Second Circuit jurisprudence post-dating *Bender* confirms, in an infringement case, where, as here, objective, undisputed evidence of the commonplace nature of elements in a plaintiff's work exists, it is the function of the Court, and not the factfinder, to (1) determine whether particular elements in a plaintiff's work qualify for protection, (2) extract unprotectable elements from consideration, and (3) determine whether the protectable elements, standing alone, are substantially similar.  *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102-107 (2d Cir. 2014); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-66 (2d Cir. 2010); *McDonald v. West*, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016); *Nobile v. Watts*, 289 F. Supp. 3d 527, 534-36 (S.D.N.Y. 2018), *aff'd*, -- F. App'x --, No. 17-3752, 2018 WL 4523112, at *1-2 (2d Cir. Sept. 21, 2018).

For example, in *Gaito*, the Second Circuit, on a motion to dismiss, clarified that "when faced with works that have both protectible and unprotectible elements, <u>our</u> analysis must be more discerning, and that <u>we</u> instead must attempt to extract the unprotectible elements from <u>our</u> consideration and ask whether the protectible elements, standing alone, are substantially similar." 602 F.3d. at 66 (emphases added); *see also id.* at 69 ("<u>we</u> are called upon to determine whether defendants misappropriated the protectible elements of [plaintiff's] designs") (emphasis added). The Court further clarified that "[w]here, as here, plaintiffs point to a variety of alleged similarities between two works, <u>we</u> are required to determine whether any alleged similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." *Id.* at 67 (citation & quotation omitted; emphasis added).  Having performed that analysis, and having concluded that the defendants did <u>not</u> copy any protectable expression in the plaintiffs' work, the Second Circuit upheld the defendants' motion to dismiss "because plaintiffs have failed to allege that a substantial similarity exists between defendants' work and the protectible elements of plaintiffs' [work]." *Id.* at 68-69 (citation, quotation & brackets omitted).

Similarly, in *Zalewski*, on a motion for summary judgment, the plaintiff-architect claimed that the defendants infringed his designs for colonial homes.  *See* 754 F.3d at 98.  On appeal, the Second Circuit's decision begins with the apt recognition that "[t]his case calls on <u>us</u> to explore the limits of copyright protection for architectural works."  *Id.* (emphasis added).  The Court, having concluded that "[t]here are scènes-à-faire in architecture" and that it is the Court that must "[d]etermin[e] the boundaries of copyright protection,"[6] reviewed the designs in question and

---

[6] This quotation derives from the Court's discussion that when it is faced with "copyright protection in non-traditional areas of creative expression," it must "determine for the first time what elements … are protectable," and to do so, the Court "simply applie[s] the usual copyright doctrines of merger, public domain, and scènes-à-faire to these new circumstances."  *Id.* at 105 (citing *Computer Assocs. Int'l, Inc. v.*

concluded the defendants "copied only the unprotected elements of [the plaintiff's] designs." *Id.* at 105-106. As such, the Court upheld summary judgment for defendants. *Id.* at 106-107.

Perhaps most salient, in *McDonald* – where a plaintiff-composer alleged that the defendants wrongfully copied his musical composition – the Southern District of New York granted the defendants' motion to dismiss because the Court concluded that the elements the defendants allegedly copied from the plaintiff's composition were "not copyrightable," as they were "far too … common, and unoriginal to create any exclusive right vested in Plaintiff." *See* 138 F. Supp. 3d at 456; *id.* at 458 (certain musical elements "are so commonplace … that [they] are not protectable"); *id.* at 454 (ruling that "common … harmonic progressions are not protected"). Thus, the Court removed these unprotectable elements from its consideration and granted judgment to the defendants as a matter of law. The Second Circuit affirmed. *See* 669 F. App'x at 60-61.

Most recently, in *Nobile*, the Southern District of New York dismissed a plaintiff-screenwriter's copyright infringement claim on a motion to dismiss, finding that the defendants only copied unprotectable scènes-à-faire from the plaintiff's work. *See* 289 F. Supp. 3d at 534-536. On appeal, the Second Circuit affirmed, reiterating that "scènes-à-faire" are "unprotectible," and that it is the function of the Court, not the jury, to extract these elements from consideration. *See* 2018 WL 4523112, at *1.

Music copyright cases from this jurisdiction and others further reinforce that it is the function of the Court, not the factfinder, to determine protectability and to extract unprotectable elements from consideration and that, upon doing so, the Court may grant judgment to a copyright defendant as a matter of law. *See, e.g., Batiste v. Najm*, 28 F. Supp. 3d 595, 615-16 (E.D. La. 2014)

---

*Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992) (wherein the Court, for the first time, ruled on the scope of protection afforded a computer program)).

(ruling on summary judgment that chord progressions in twenty-two distinct compositions were "not entitled to protection" because they were "basic" "building blocks of music" and "*scènes à faire*");[7] *Johnson v. Gordon*, 409 F.3d 12, 23 (1st Cir. 2005) (granting defendant summary judgment because chord progression was "a stereotypical building block of musical composition"); *VMG Salsoul, LLC v. Ciccone*, No. 12-cv-5967 (BRO), 2013 WL 8600435, at *7 (C.D. Cal. Nov. 18, 2013) (granting summary judgment to defendant and ruling that "[e]asily arrived at phrases and chord progressions are usually non-copyrightable"), *aff'd in part, vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016).

## 2. A Mere Disagreement Between Competing Experts Concerning Supposed Factual Matters Does Not Preclude Summary Judgment

Disputed issues of material fact are not created by an expert simply offering a conclusion contrary to the undisputed evidence in the record. Consistent with Second Circuit precedent, "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory." *Katel Ltd. Liability Co. v. AT&T Corp.*, 607 F.3d 60, 67 (2d Cir. 2010) (quoting *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 310 (2d Cir. 2008)). Rather, "to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that sets forth specific facts showing a genuinely

---

[7]In *Batiste*, Dr. Ferrara (Defendants' expert musicologist in this case) opined in his expert report on behalf of the defendants, in most instances, either that he "found no significant similarities in the chords" or that the "purported 'chord' similarit[ies] represent[ed] a musical building block." In granting summary judgment to the defendants and finding that all twenty-two of the chord progressions were "unprotectable *scènes à faire*" (28 F. Supp. 3d at 615), the Court found five examples of prior art sufficient to preclude protection as a matter of law. For example, for the song "Space Station," Dr. Ferrara identified in his expert report five examples of prior art that used the same chord progression – eight fewer examples than he identified here. Furthermore, as explained below, to the extent Dr. Ferrara identified prior art with regard to other elements at issue, he identified <u>fewer</u> examples of prior art than he identified in this case. For example, in regard to certain "chants" at issue, he identified only <u>three</u> prior examples. *Id.* at 618. The Court found these examples sufficient to show that the plaintiff's chant was an "unoriginal element." *Id.* A copy of Dr. Ferrara's expert report in *Batiste*, of which this Court may take judicial notice, is available on the *Batiste* public docket as Document No. 58-4.

disputed factual issue that is material under the applicable legal principles." *Major League Baseball*, 542 F.3d at 310 (citations, quotations & brackets omitted); *see also Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment") (citation omitted).

Further, as relevant here, "[a]n expert's opinions that are without factual basis and are based on speculation or conjecture" – or, as here, based on nothing at all but the expert's naked conclusion – "are similarly inappropriate material for consideration on a motion for summary judgment." *Major League Baseball*, 542 F.3d at 311 (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("an expert's report is not a talisman against summary judgment"); *see also Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127-28 (2d Cir. 2013) (noting that "speculative or conclusory" expert opinions are "inappropriate for consideration on summary judgment" and concluding that the expert report at issue did "not add any <u>facts</u> to the record that create a genuine dispute as to any material fact") (citations omitted; emphasis in original); *Estate of Jaquez v. City of N.Y.*, 104 F.Supp.3d 414, 426 (S.D.N.Y. 2015), *aff'd*, 706 F. App'x. 709 (2d Cir. 2017) ("even otherwise qualified experts may not simply offer conclusory opinions … [c]onclusory opinions are a form of '*ipse dixit*,' and often provide an insufficient basis upon which to assess reliability") (internal citation omitted).

Were the law otherwise, summary judgment would be a dead letter as an expert could always be found to offer a conclusion, unsupported by the record, and thereby defeat summary judgment.  That there are a legion of copyright cases granting summary judgment in the face of dueling experts confirms that a conclusory opinion from an expert contrary to the evidence provides no basis on which to deny summary judgment.  *See, e.g.*, *Vargas v. Pfizer, Inc.*, 514 F.

Supp. 2d 439, 446-47 (S.D.N.Y. 2007), *aff'd*, 352 F. App'x. 458 (2d Cir. 2009); *Mowry v. Viacom Int'l, Inc.*, No. 03-cv-3090 (AJP), 2005 WL 1793773, at *14 (S.D.N.Y. Jul. 29, 2005); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003); *Narell v. Freeman*, 872 F.2d 907, 912-13 (9th Cir. 1989); *see also Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1062 (C.D. Cal. 2010); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 945-47 (8th Cir. 1992).

Indeed, in a copyright infringement case involving these same two experts, a California district court rejected the notion that dueling experts bar summary judgment. *See Batts v. Adams*, No. 10-cv-8123 (JFW), 2011 U.S. Dist. LEXIS 161401, at *12 n.6 (C.D. Cal. Oct. 21, 2011) ("Plaintiffs also argue that, at a minimum, a genuine issue of material fact exists with respect to whether the works are substantially similar because of the conflicting expert reports of Dr. Stewart, and the Adams Defendants' expert musicologist, Dr. Lawrence Ferrara. However, the mere existence of dueling expert reports does not necessarily create a triable issue of fact") (citations & quotations omitted); *see also Vargas*, 514 F. Supp. 2d at 446-47 ("Although plaintiffs' expert opines that the songs are strikingly similar, an issue of fact cannot be created by merely reciting the magic words 'strikingly similar'") (citations, quotations & brackets omitted). Here, Dr. Stewart admitted that more than a dozen other songs prior to LGO utilized the same harmonic progression, he did not dispute that the anticipation of chord changes is a commonplace musical technique and his attempt to otherwise fault Dr. Ferrara's analysis of the harmonic rhythms – which Dr. Ferrara proved to be objectively dissimilar – was wholly feigned. As in *Batts,* the evidence in this case is undisputed and all that exists is Dr. Stewart's naked conclusion. It does not create a question of fact.

13

### C.      Application of the Appropriate Legal Standards

In this case, Defendants adduced objective, unrefuted evidence – not mere conclusory expert opinion – that (1) the I-iii-IV-V harmonic progression was a basic musical building block, contained in at least a dozen well-recognized songs prior to LGO and (2) that the harmonic rhythm, and the "anticipation" of chord changes, is a commonplace musical technique, and that an objective comparison of the sheet music for each work reveals obvious differences between the rhythms.

### 1.      The Harmonic Progression

The undisputed evidence is that the I-iii-IV-V chord progression is not original to LGO and that it appeared in at least thirteen prominent compositions predating LGO – which by no means suggests that was the sum total of "prior art."   It is also undisputed that this chord progression is so basic that it is taught in elementary guitar method books.   One of those elementary guitar method books states that "dozens of other I-iii-IV-V songs" predated LGO and that the authors of LGO were "simply writing a song using a common progression, just like every other professional songwriter does."   *See* Farkas Decl. Ex. 4 at Visual Ex. E (emphases added).   At his deposition, Dr. Stewart did not challenge Dr. Ferrara's identification of prior art and specifically admitted that **he agreed with this latter passage** from the guitar method book.   *Id.* at Ex. 7, 139:16-141:6.

After admitting at his deposition that he had no comment as to the accuracy of Dr. Ferrara's identification of prior art, Dr. Stewart belatedly professed to be infused with contrary knowledge in his declaration opposing summary judgment, offering the naked conclusion that "'[t]his chord progression was not commonplace prior to LGO," a conclusion contrary to both his deposition admission and the undisputed evidence in the record.   *See* Decision at 10-11 (quoting Stewart Decl. ¶ 7).   Given  the undisputed fact that this chord progression existed in at least a dozen songs prior

to LGO, Dr. Stewart's conclusory assertion that the progression was "not commonplace" has no evidentiary foundation.   Dr. Stewart's belated conclusion also violates the established legal principle that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) (citations omitted).

Moreover, in their response to Defendants' Rule 56.1 Statement of Undisputed Facts, Plaintiffs cited a completely irrelevant observation made by Dr. Stewart at his deposition to argue that because there are "hundreds of thousands of songs" that do not use this chord progression (pointedly omitting any mention of the fact that the hundreds of thousands of other songs themselves undoubtedly use other commonplace chords) and because Dr. Ferrara "only" identified thirteen songs that contain the I-iii-IV-V chord progression, that must mean that the I-iii-IV-V chord progression is uncommon (an impossibility given the use of the same progression in prior songs).

In fact, there are millions of songs.  Because there are only a limited number of pleasing combinations of music, as the Courts in this Circuit have long recognized, songs will necessarily share commonplace chords.  *See Darrell v. Joe Morris Music Co.*, 113 F.2d 80, 80 (2d Cir. 1940) (per curiam) ("[W]hile there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear.  Recurrence is not therefore an inevitable badge of plagiarism").  And there are undoubtedly many more than the thirteen songs identified by Dr. Ferrara that have the exact same musically pleasing I-iii-IV-V chord progression as LGO (a fact confirmed by the guitar method book that Dr. Stewart did not challenge).

15

There is no minimum number of prior works necessary to establish that a given chord progression is an unprotectable musical building block – or a musical scène-à-faire.  Rather, having shown that the very same chord progression had already been used in no less than thirteen prominent songs before LGO was created, there can be no factual dispute that the I-iii-IV-V chord progression is an unprotectable musical building block.

The case authority supports the conclusion that the thirteen examples of prominent prior art identified by Dr. Ferrara and the "dozens" of examples cited in the guitar method book overwhelmingly establish that the harmonic progression is unprotectable as a matter of law.  *See, e.g.*, *Batiste*, 28 F. Supp. 3d at 615 (as detailed above in footnote 7, the Court ruled that all twenty-two progressions were unprotectable and found as few as five examples of prior art sufficient to preclude a finding of protectability); *id.* at 618 (three examples of prior art established that "chant" was commonplace); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 544 (S.D.N.Y. 2000) (chord progression found "so common" that it did not support infringement where Dr. Ferrara identified ten examples of prior art);[8] *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (ruling, after a bench trial, that harmonic progression "found in many other well-known songs" was "unoriginal and constitute[s] 'scenes a faire,' or ordinary, unprotectible expression") (citations omitted); *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x. 873, 878 (11th Cir. 2007) (three prior examples of rap chant identified by Dr. Ferrara found sufficient).

---

[8] In *Tisi*, Dr. Ferrara served as the defense-expert.  Dr. Ferrara identified ten examples of songs that predated the plaintiff's song that used the same chord progression – three fewer examples than Dr. Ferrara identified in this case.  As Dr. Ferrara's opinion was filed publicly in that case, the Court can take judicial notice of this fact.  Unfortunately, *Tisi* was decided before electronic filing, and an electronic docket does not exist for the case.  Further, as Local Rule 6.3 prohibits the filing of declarations on this motion without leave of Court, Defendants have refrained from filing Dr. Ferrara's report from *Tisi* as an exhibit to this motion.  Nevertheless, should the Court deem Dr. Ferrara's report from *Tisi* germane and grant Defendants leave to file it, Defendants will make a supplemental submission.

Further, Plaintiffs' suggestion that Dr. Ferrara reviewed hundreds of thousands of songs and only identified thirteen with this same chord progression is both misleading and erroneous. It would have been impractical, if not impossible, for Dr. Ferrara to have reviewed that many songs. Instead, Dr. Ferrara surveyed well-known songs in similar genres and, having identified thirteen famous examples of songs predating LGO that used the same progression, reasonably concluded that was sufficient to establish the point (and consistent with case law, it is more than sufficient to establish the point). Others surely exist, as confirmed by the "dozens" cited in the guitar method book. The undisputed existence of these thirteen songs – which is a fact, not an opinion – demonstrates that the I-iii-IV-V chord progression was in common use prior to LGO and is unprotectable as a matter of law.[9]

This is not a matter of conflicting opinions on which experts may disagree. The undisputed evidence establishes that the chord progression was unprotectable. The Court should have so held and not deferred it for consideration by a jury. The Court should not have credited Dr. Stewart's naked conclusion – which is based on no evidence at all and instead contradicts the undisputed record evidence – to find a question of fact. Dr. Stewart does not and cannot explain how a harmonic progression that has been used over and over again before (and after) LGO can somehow become the exclusive property of Plaintiffs such that it is no longer available to future writers, undercutting the exact purpose of the Copyright Act: to encourage the creation of new works.

Accordingly, based on the undisputed record evidence that the harmonic progression was in common use as a basic musical building block both before and after LGO, Dr. Stewart's declaration conclusion, itself contrary to his sworn deposition testimony, is insufficient as a matter of law to create an issue of fact. Plaintiffs failed to raise a question of fact as to the protectability

---

[9] It also undisputed that numerous famous songs authored after LGO but before TOL use this same chord progression, further underscoring that it is, was and always has been a commonplace musical building block.

of the I-iii-IV-V chord progression, and this Court should have extracted the chord progression

from its consideration of the alleged similarities between the two works on summary judgment.

### 2.     The Harmonic Rhythm

Defendants propounded objective documentary evidence (sheet music and a guitar method

book) demonstrating that the harmonic rhythms in each work are different and that "anticipation"

of chord changes is a commonplace technique.  *See* Ferrara Decl. ¶ 8; Farkas Decl. Ex. 4 at Visual

Ex. A and C; Reply Ferrara Decl. ¶¶ 6-7 and Ex. 22; *see also* www.berklee.edu/core/glossary.html

(defining anticipation as "[a] technique of melodic or rhythmic alteration which changes a note

that occurs on-the-beat to be played early resulting in syncopation"), last accessed, January 17,

2019.

Objective differences exist between the harmonic rhythms, as LGO features a four-bar

chord progression, whereas TOL features a two-bar chord progression.  To achieve the same

rhythm, one would need to halve the value of the notes and chords in LGO.  These differences are

objective and empirically verified by reference to the sheet music.  In his declaration in opposition

to summary judgment, Dr. Stewart attempted to sow confusion by misleadingly claiming that Dr.

Ferrara identified six chords instead of four chords in LGO.  *See* Stewart Decl. ¶ 20.  In fact, as

Dr. Ferrara explained in his reply declaration, he indicated four discrete chords in LGO, not six

chords (the chord in bar 2 carries over and is the same as the second chord in bar 1, and the chord

in bar 4 carries over and is the same as the second chord in bar 3).  *See* Reply Ferrara Decl. ¶ 6.

Dr. Stewart intentionally distorted Dr. Ferrara's analysis to manufacture a feigned question of fact.

In addition, Defendants also demonstrated that the "anticipation" of chord changes – both

as a general manner and in the specific manner indicated in LGO and TOL – is a common musical

technique.  As a matter of law, a technique cannot be copyrighted.  *See McDonald*, 138 F. Supp.

3d at 458 ("Plaintiff cannot own a common musical technique like melisma"); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th Cir. 2004) (finding "widely used vocalization technique" unprotectable as a matter of law); *see also* 17 U.S.C. § 102(b).   Dr. Stewart's unsupported conclusion that "the harmonic rhythm in LGO is distinctive" (Decision at 11), does not convert this unprotectable technique into protectable expression over which Plaintiffs can claim a monopoly.   The Court should have found the harmonic rhythm unprotectable as a matter of law, and it should have extracted it from its consideration of the two works.

### 3.   Upon Extracting the Unprotectable Elements From Consideration, Actionable Similarities Do Not Exist

Once the unprotectable harmonic progression and the unprotectable harmonic rhythm are extracted from consideration, the only remaining allegedly similar element identified by Plaintiffs in the LGO Deposit Copy is select portions of the vocal melody.[10]   However, as Defendants demonstrated, documentary evidence (the sheet music or even an untrained ear) confirms that the vocal melodies are objectively dissimilar.   One does not need to be literate in music to discern the stark differences, which leap off the page as illustrated by the sheet music included at page 15 of the Decision.   Even accepting Dr. Stewart's highly manipulated transcriptions (which are improper as a matter of law), Defendants proved that (1) the pitch sequences are not remotely similar, as 50% or fewer of the pitches line up in the same order for each melody, (2) the melodic rhythms of each work are different, and (3) the rhythmic durations of the pitches in the vocal melodies in each work are different.   *See* Ferrara Decl. ¶¶ 12, 20-30; Reply Ferrara Decl. ¶¶ 8-10.   Plaintiffs have not disputed these objective facts.

---

[10] Respectfully, this Court should decide now whether the deposit copy defines the scope of protection for this copyrighted work, as it will be necessary to decide this issue in advance of trial.  Defendants also submit, as detailed in Section II. below, that the Court should certify the question to the Court of Appeals if summary judgment is not granted.

Nevertheless, at page 16 of its Decision, the Court appears to have credited Dr. Stewart's conclusion that, despite the conceded differences between the vocal melodies, sufficient similarities exist simply because the melodies "occur" at the same time as other allegedly similar elements – the unprotectable harmonic progression, the unprotectable harmonic rhythm, the bass-line that is not included in the deposit copy, and the drum part that is not included in the deposit copy.[11]

Having tacitly admitted that the vocal melodies are dissimilar on their face, Dr. Stewart has attempted to transform them into something he can claim is "similar" solely by virtue of the fact that they occur at the same time as other allegedly similar elements (all of which, as shown above, are either unprotectable as a matter of law, not included in the deposit copy, or both).  If the basis for alleged similarity of admittedly dissimilar elements is whether the dissimilar elements appear in tandem with a basic, similar chord progression, or drum beat or any other basic musical building block, there is no limit to what a plaintiff could claim as allegedly infringing.  That which is patently different cannot become similar because it is in a song that otherwise is alleged to have other similarities (which in this case are unprotectable).  Ultimately, the vocal melodies are not remotely similar, let alone substantially similar.

Moreover, it is respectfully submitted that the Court can hear for itself that there is no basis to claim similarity between the vocal melodies identified by Plaintiff.  It is well-settled that on a motion for summary judgment, the Court can (and should) compare the two works at issue, as a Court can often hear for itself that no reasonable juror could determine that the elements at issue are similar.  *See, e.g.*, *McDonald*, 138 F. Supp. 3d at 453; *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018).  Here, the vocal melodies identified by the Court

---

[11] The Court cited page 10 of Plaintiffs' memorandum of law, which in turn cited paragraphs 59, 63 and 71 of Dr. Stewart's declaration.

(which were not even identified by Dr. Stewart in his report or at his deposition, but only after Defendants exposed the manipulations of and the objective differences between the vocal melodies Dr. Stewart originally identified) are set to "When your legs don't work like they used to before, and I can't sweep you off of your feet" in TOL, and set to "Let's get it on … sugar, Let's get it on" in LGO (which is hardly the "hook" of LGO as it appears in this form only once).  These vocal melodies are so patently different that even an untrained ear cannot be fooled.  Even with Dr. Stewart's selective omission of notes, the Court can see (and hear) for itself that no reasonable juror could find substantial similarity between 1-1-1-6-5-3-2-6-5-3-5-6-5-3 and 3-5-6-5-3-2-1-2-3-6-1-3-5-6-5-3-3-2-1-1.  *See* Ferrara Reply Decl. ¶¶ 8-10; Ferrara Report, Audio Exhibit 1, Track 1 (starting at 1 second and ending at 10 seconds) and Track 2 (starting at 35 seconds and ending at 44 seconds).

Finally, Plaintiffs' argument regarding the combination of unprotectable elements should not preclude summary judgment for the reasons set forth in Defendants' moving and reply memoranda of law.  *See* Mov. Mem. at 18, 25-27; Reply Mem. at 7-8, 13.  In short, Plaintiffs have not shown and cannot remotely show a "combination" of copying that is "nearly identical" or "very close" to LGO.  The songs are materially different and their alleged similarities consist of commonplace musical elements freely available to be used by songwriters in the past, present and future.

In conclusion, consistent with the gatekeeping role of this Court to extract unprotectable elements from consideration, it is indisputable that actionable similarities of protectable elements do not exist between LGO and TOL, and summary judgment should have been granted to Defendants.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD CERTIFY <u>AN APPEAL TO THE SECOND CIRCUIT ON TWO ISSUES</u>

### A.   <u>Legal Standard</u>

"It is well established that a district court has discretion to certify an order for interlocutory appeal if the moving party shows that the order (1) involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation."   *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-cv-8852 (JMF), 2014 WL 1881075, at *1 (S.D.N.Y. May 9, 2014) (quoting 28 U.S.C. § 1292(b); other citations omitted); *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 319 F.R.D. 111, 117 (S.D.N.Y. 2017) (granting certification).  Importantly, "Section 1292(b) can be met even where reversal would not result in termination of the action." *Atlantica Holdings*, 2014 WL 1881075, at *1 (citing, *In re Del–Val Fin. Corp. Sec. Litig.*, 874 F. Supp. 81, 83 (S.D.N.Y.1995)).   Rather, all Defendants need show is that reversal would "importantly affect the conduct of this action."  *Id.* (citation & quotation omitted).

Where, as here, "substantial resources may be expended in vain both by the parties and this Court if [this Court's] initial conclusion [regarding a controlling question of law] proves incorrect," certification should be granted.  *In re Dynex Capital, Inc. Securities Litig.*, No. 05-cv-1897 (HB), 2006 WL 1517580, at *3 (S.D.N.Y. Jun. 2, 2006); *see also Pearson Educ., Inc. v. Liu*, No. 08-cv-6152 (RJH), 2010 WL 623470, at *2 (S.D.N.Y. Feb. 22, 2010) (granting certification because "further motion practice, discovery, or trial in this matter would likely be rendered moot should the Circuit find that it disagrees with this Court's answer to" the controlling question of law).

Here, two questions should be certified.  First, whether the scope of copyright protection is limited to the LGO Deposit Copy, which will necessarily and materially affect any trial of this action.  Second, if this Court is unwilling to determine now whether it is the Court's role or the

22

jury's role to determine which elements in a work are protectable, this issue too should be certified (although Defendants submit that the Second Circuit has already made clear that it is the Court's role to make this determination). Both questions present controlling questions of law, and, at the very least, will "importantly affect" the conduct of this action, if not terminate it altogether, as even this Court noted that the bass-line and percussion elements in TOL "may be the elements that are most similar to the sound recording of LGO, although they are not present in the deposit copy." *See* Decision at 16.

While Defendants do not believe that Plaintiffs have provided any legitimate basis to depart from the conclusion that the LGO Deposit Copy defines the scope of protection, a substantial difference of opinion nevertheless exists between Plaintiffs and Defendants and determination of this issue will materially affect the ultimate resolution of this dispute. Accordingly, for these reasons, as well as those set forth below, certification should be granted.[12]

**B.** **If Reconsideration Is Denied, Certification Should Be Granted to Decide Whether the LGO Deposit Copy Defines the Scope of Copyright Protection**

As the Decision reflects, the Ninth Circuit in *Skidmore* "fully and thoughtfully" considered the scope of copyright protection afforded an unpublished musical composition under the 1909 Act and concluded that the deposit copy "define[s] the scope of protectable copyright." *See* Decision at 7 (quoting *Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1131 (9th Cir. 2018)). As Defendants explained in their supplemental authority, the Ninth Circuit's logic and reasoning applies with equal force to published musical compositions under the 1909 Act.

Notwithstanding the Ninth Circuit's cogent reasoning, this Court was not prepared to rule on this pure legal question, noting that "[t]he question whether this Circuit would concur [with the

---

[12] Again, if the Court grants reconsideration and awards summary judgment to Defendants, certification will be moot. In that case, Plaintiffs can appeal from this Court's final judgment as of right.

Ninth Circuit] is open." *Id.* at 8.  The Court further ruled that it "was unnecessary" to rule on this question because "the outcome of this motion is the same under either view." *Id.*  Respectfully, it is necessary for this Court to rule on this issue before trial, and as the Court itself has noted, given that the Second Circuit has not yet weighed in on this issue and given that any ruling on this issue will necessarily be subject to review and potentially be reversible error, it is appropriate to refer this issue to the Second Circuit now.

As discussed above, the Court's conclusion that an issue of fact exists does not free the Court of the necessity of deciding the purely legal issue of whether Plaintiffs' copyright is defined by the LGO Deposit Copy.  Either the jury will compare the LGO Deposit Copy to TOL (without reference to the LGO Recording) or the jury will compare elements in the LGO Recording to TOL. If the jury is permitted to consider (and listen to) allegedly similar elements that are not encompassed by Plaintiffs' copyright, it is likely to result in reversible error, as it will be impossible to "unring the bell."  If the jury is permitted to listen to elements in the LGO Recording, as this Court itself has acknowledged, doing so will have a material impact on any determination that may be made by the jury and will "importantly affect" this case.

Further, regardless of this Court's determination on this issue, if the Second Circuit ultimately disagrees with the Court's conclusion regarding the proper scope of protection, one will not be able to determine what effect considering or not considering these musical elements will have had on any jury decision and hence will be reversible error if this Court's decision is adverse to the appealing party.  The evidentiary egg cannot be unscrambled.

Accordingly, this pure legal question should be determined now – both by this Court and then certified to the Second Circuit because it presents an issue that will necessarily affect this

action in a material way.  *See Atlantica Holdings*, 2014 WL 1881075, at *1-2; *Mei Xing Yu*, 319 F.R.D. at 117; *Dynex Capital*, 2006 WL 1517580, at *3; *Pearson Educ.*, 2010 WL 623470, at *2.

### C.   Certification Should Be Also Be Granted As To Whether Protectability Is To Be Determined By The Court

As detailed above, Defendants believe this Court erred in finding an issue of fact with respect to similarities between the LGO Deposit Copy and TOL because the alleged similarities derive predominantly, if not entirely, from unprotectable elements, and it was the Court's role to extract the unprotectable elements from its consideration.  It is not a jury issue, as Second Circuit precedent (cited above) makes clear.  But the Decision concluded that this was a jury question, and that too would present the potential for a reversible error if unprotectable elements are submitted to the jury for it to determine both protectability and substantial similarity.

This issue is compounded here by the Decision's reliance on Dr. Stewart's naked conclusion, which is contrary to his deposition admission and contrary to the undisputed evidence, that the key elements claimed to be similar  – the harmonic progression and the harmonic rhythm – are not commonplace.  This too presents an outcome determinative issue appropriate for review by the Second Circuit if this Court does not revisit its deferral of this issue to the jury.

### CONCLUSION

It is respectfully submitted that the Court should grant reconsideration and that, upon granting reconsideration, the Court should award summary judgment to Defendants.  In the alternative, in the event the Court does not grant reconsideration and award summary judgment to Defendants, it is respectfully submitted that the Court should certify an interlocutory appeal to the Second Circuit to determine whether the LGO Deposit Copy defines the scope of copyright protection and whether protectability should have been determined by the Court.

Dated:  New York, New York
        January 17, 2019

                              PRYOR CASHMAN LLP

                              By: */s/ Donald S. Zakarin*
                                  Donald S. Zakarin
                                  Ilene S. Farkas
                                  Andrew M. Goldsmith
                              7 Times Square
                              New York, NY 10036
                              (212) 421-4100

                              *Attorneys for Edward Christopher Sheeran,*
                              *Atlantic Recording Corporation and*
                              *Sony/ATV Music Publishing LLC*