```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
KATHRYN TOWNSEND GRIFFIN, HELEN      :
MCDONALD, and The Estate of CHERRIGALE :
TOWNSEND,                            :
                                     :
                    Plaintiffs,      :    Docket No. 17-cv-5221 (LLS)
                                     :
       -against-                     :
                                     :
EDWARD CHRISTOPER SHEERAN, p/k/a     :
ED SHEERAN, ATLANTIC RECORDING       :
CORPORATION, d/b/a ATLANTIC RECORDS, :
SONY/ATV MUSIC PUBLISHING, LLC and   :
WARNER MUSIC GROUP CORPORATION       :
d/b/a ASYLUM RECORDS,                :
                                     :
                    Defendants.      :
------------------------------------- x
```

## PLAINTIFFS' OBJECTION AND COMPANION MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR REARGUMENT OR, IN THE ALTERNATIVE, CERTIFICATION OF AN INTERLOCUTORY APPEAL

FRANK & RICE, P.A.
Attorneys for Plaintiffs
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184

## PRELIMINARY STATEMENT

The Defendants have filed a motion with this Court for reconsideration and, within the context of that motion, ask this Court to revisit its ruling on the Defendants' motion for summary judgment by asserting that the musical elements/vocabulary available to a composer is inherently limited. Thus, the Defendants incorrectly reason that the similarity between musical works is a purported inevitability and, to the extent that such similarities exist, those "coincidental" convergences of identical sound are not actionable because they are attributable to the authors' necessary use of the same 'raw' musical materials.[1]

The Defendants' invocation of this idea of limited musical tools as a basis to justify the copyright infringement at issue is flawed in that it fails to contemplate—or even acknowledge—the time-honored legal tenet that it is the combination and/or expression of those self-same musical tools and/or elements which gives rise to intellectual property protection, not necessarily those tools and/or element, in and of themselves. See *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004); see also *accord Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2nd Cir. 1996).

## ARGUMENT

I. **DEFENDANTS' CONTENTION THAT THIS COURT SHOULD REVERSE ITS PREVIOUS ORDER DENYING SUMMARY JUDGMENT**

The Defendants' motion for reconsideration at issue is predicated upon two (2)

---

[1] Given the Twenty-Seven (27) Year-Old Defendant's, Ed Sheeran's, well-documented history of litigation and pre-suit settlements in his brief professional career (*i.e.*, *HaloSongs, Inc., et.al. v. Sheeran, et.al.*, as filed in the Central District of California, Southern Division, Case Number: *8:16-CV-01062*; *Carey, et.al. v. Sheeran, et.al.*, as filed in the Southern District of New York Case Number: *18-00214*; also see "Ed Sheeran Add's TLC's "No Scrubs" Songwriters to "Shape of You" Credits, *Billboard*, March 21, 2017), attendant to allegations of copyright infringement, the prospect of song similarities being attributable to Defendants' tenuous claims of mere benign 'coincidence', has become progressively more remote. (Notably, the foregoing list does not include infringement litigation in the United Kingdom, nor the companion lawsuit filed by Structured Asset Sales against the Defendant, Ed Sheeran, in connection with the same song, which remains pending in this jurisdiction).

1

separate arguments—first, the Defendants assert that this Court "overlooked" controlling case law precedent as it relates to the alleged appropriate methodology for reviewing actionable similarity of creative works within the context of ruling on a motion for summary judgment.

Second, the Defendants suggest that the Court erred in some fashion by giving inappropriate deference to the presence of divergent opinions among the competing expert witnesses.

### A. The Defendants' motion for rehearing/reconsideration is procedurally barred due to its untimeliness

Pursuant to the *Local Rules of the Southern District Court of New York, Rule 6.3*, a motion for reconsideration of an interlocutory order must be made within **Fourteen (14) Days** of said Order. The Order Denying the Defendants' motion for summary judgment (Doc. 93), was executed on January 2, 2019. The Defendants' motion for rehearing/reconsideration (Doc. 95) was filed on January 17, 2019, **Fifteen (15) Days** after the execution of the Order for which reconsideration was sought and, as such, was untimely.

In the Southern District of New York, a motion for reconsideration of an interlocutory Order must comply with *Local Civil Rule 6.3*. See *Sea Trade Co. v. FleetBoston Financial Corp.*, 2009 WL 4667102, *3 (S.D.N.Y. 2009); see also *DDR Construction Services, Inc. v. Siemens Indus., Inc.*, 2012 WL 4711677, *1 (S.D.N.Y. 2012) ("The failure to timely make a motion for reconsideration pursuant to Rule 6.3 is alone sufficient grounds to deny the motion"). See *Id.* See also *In Re Shengdatech, Inc. Sec. Litig.*, 2015 WL 3422096, *4 (S.D.N.Y. 2015).

Further, the standards governing motions for reconsideration pursuant to *Local Rule 6.3* are "strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the Court overlooked". *Resqet.com v. Lansa,*

2

*Inc.*, No 01 Civ. 3578, 2008 WL 4376367 at *2 (S.D.N.Y. September 25, 2008) (quoting *Rafter v. Liddle*, 288 Fed.App'x 768, 769 (2nd Cir. 2008)).

As described at further length herein below, notwithstanding the manifest untimeliness of the Defendants' motion, the Defendants have neither identified any credible, nor applicable, legal precedent that the Court has overlooked.[2]

### B. Legal Standard

In order to successfully advance a motion for reconsideration, the moving party must identify with specificity either materials facts or legal authority which was overlooked by the Court pursuant to the subject Order for which reconsideration is sought. See *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

As a threshold matter, while the filing of a motion for reconsideration is permissible under the pertinent rules, this jurisdiction has previously cautioned that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple". *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2nd Cir. 2012).

In this instance, the Defendants posit no facts that the Court supposedly overlooked but, rather, suggest that the Court "overlooked controlling law".

### C. Extraction of Unprotectable Elements

"It was the best of times, it was the worst of times….".[3] The opening salvo of Charles

---

[2] Some case law precedent from this jurisdiction has refined the subject inquiry to suggest that the required showing so as to justify a motion for reconsideration contemplates an actual "intervening change of controlling law". *Kolel Beth Yechtil Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2nd Cir. 2013). In other words, the requisite showing for the Court to entertain a motion for reconsideration necessarily entails that controlling law has actually changed in the interim period during the time in which the Order was entered for which appeal is sought. In addition to the fact that the Defendants cannot identify controlling legal precedent that was overlooked, they have not—nor could they—identify any recent developments which have had the operative legal effect of changing the controlling law applicable to this case during the period in which said litigation has been pending.

[3] Charles Dickens, "A Tale of Two Cities" (1859).

3

Dickens' "A Tale of Two Cities" avails itself of the use of literary building blocks in the public domain—to wit, the use of the words "the", "best", "worst", "times"—to which no reasonable minds could ascribe exclusive use and/or ownership to the author.

Despite Charles Dickens' inability to assert personal ownership of the individual words from which the aforementioned acclaimed citation is derived, individuals would be hard-pressed to assert that said quotation, taken as a whole, lacked creativity and, as such, is/was not entitled to copyright protection.

In support of the proposition that this Court apparently overlooked "overwhelming Second Circuit jurisprudence"[4] as it relates to the methodology of comparing creative works, the Defendants merely cite four (4) cases.

Two (2) of the cases that the Defendants cite—*Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2nd Cir. 2014) and *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2nd Cir. 2010), respectively—both specifically address the ability/inability to copyright common architectural fixtures and/or design/construction components of buildings and, as such, have very little, if any, utility for the purposes of comparing similar musical works.

The third case, *Nobile v. Watts*, 289 F.Supp.3D 527 (S.D.N.Y. 2018), involves a comparison of a motion picture screenplay with a novel that contained overlapping and/or allegedly similar plot lines which was dismissed, in part, based on the *scenes-a-faire* doctrine. Herein again, the *Nobile* case holds nominal precedential value within the context of the task which presents herein of analyzing similar musical compositions.

Ironically, the fourth case—what the Defendants characterize as "most salient"[5] to the mode of analysis the Defendants request that this Court undertake—is the case of *McDonald v.*

---

[4] Please refer to the Defendants' motion, Doc. 96, Page Eight (8).
[5] Please refer to the Defendants' motion, Doc. 96, Page Ten (10).

*West*, 138 F.Supp.3d 448, 456 (S.D.N.Y. 2015). In fact, Defendants' counsel(s) self-servingly entreat this Court to defer to their own case as purported controlling legal authority. Specifically, Defendants' counsel(s) herein, Ms. Ilene Farkas, previously represented Kanye West in that lawsuit in which the Plaintiff claimed infringement against Mr. West in connection with his song, "Made In America". *Id.*

The Plaintiff in that case had a song with the same title, "Made in America", and, similar to Kanye West's song, the Plaintiff incorporated references to famous people throughout history. *Id.* The Court granted the instant Defendants' counsel(s)' motion to dismiss because the phrase "Made in America" was not construed as copyrightable. *Id.*[6] Similarly, the Court also found that the references to famous people were not to be considered as protectable expression.

Notwithstanding the vast expanse of previously-delineated similarities between the two (2) songs at issue herein, the Defendants' premise that the Plaintiffs' claims of copyright infringement rely on supposed public domain elements analogous to the scenario which presented in the *McDonald* case (and, as such, presumably subject to peremptory dismissal or summary judgment) strains credulity, at best. If anything, the Defendants' white-knuckled reliance on the *McDonald* case as relevant precedent only serves to underscore by way of juxtaposition/contrast the marked breadth of Defendants' degree of copying at issue herein.

As a preliminary matter, the Defendants' contention that so-called unprotected elements must be 'extracted' pursuant to a summary judgment analysis as to similarity relies on the fictive premise that, in this case, there is 'objective, undisputed evidence of the commonplace nature of elements'.

That is to say, the Defendants falsely assert the existence of supposed 'objective,

---

[6] Notably, upon reasonable information and/or belief, the Plaintiff in the *McDonald* case actually conceded the point.

undisputed evidence' in order to facilitate and/or frame the legal predicate for their ensuing legal argument in the absence of actually demonstrating/identifying the existence, nature, and/or character of any such legitimate 'objective, undisputed evidence'.[7]

Even assuming—*arguendo*—that the Plaintiffs were to agree to the Defendants' characterization of some of the similarities between the subject works as derivative of elements in the public domain (which they do not), the Defendants' proffered methodology for evaluating such similarities is inaccurate. To wit, pursuant to circumstances in which the Court is charged with evaluating works that contain constituent common components, this Court has previously held that "Regardless of whether the Court applies the 'ordinary observer' or the 'more discerning' test, the Court is not required to dissect the works to 'compare only those elements which are in themselves copyrightable.' *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2nd Cir. 2010). Rather, the Court is guided by 'comparing the contested design's 'total concept and overall feel' with that of the allegedly infringing work' as instructed by our 'good eyes and common sense.' *Id.* (quoting *Tufenkin Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2nd Cir. 2001) and *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 102 (2nd Cir. 1999)".

Further, this Court aptly stated in the case of *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2nd Cir. 2001) that, as it relates to the more discerning analysis of creative works that also incorporate common elements, "a court is not to dissect the works at issue into separate components and compare only the copyrightable elements. *Knitwaves*, 71 F.3d at 1003. To do so would be to take the "more discerning" test to an extreme, which would result in almost nothing being copyrightable….". (Citing *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996

---

[7] Please refer to the Defendants' motion, Doc. 96, Page Eight (8)).

(2nd Cir. 1995)).

Finally, in the last Paragraph on Page Ten (10) of the Defendants' motion (Doc. 96), it is abundantly worthy of note that the Defendants state that "Music copyright cases from **THIS JURISDICTION** and others further reinforce that it is the function of the Court, not the factfinder, to determine protectability and to extract unprotectable elements from consideration.. (*Emphasis Supplied*)". Remarkably, however, after stating that music copyright cases from this jurisdiction follow the Defendants' prescribed methodology for determining infringement, the Defendants proceed to cite cases from Louisiana, California, the First Circuit and the Ninth Circuit and a total of **ZERO CASES** from this jurisdiction, despite affirmatively asserting the existence of the same. (Doc. 96, Pages Ten (10) through Eleven (11)). Thus, the claim that "this jurisdiction" adheres to the infringement analysis on behalf of which the Defendants are advocating is disingenuous, at best.

### D. Competing Experts

In an effort to effectuate the reversal of this Court's Order Denying the motion for summary judgment, the Defendants erroneously suggest that there mere existence of competing experts does not, necessarily, preclude the entry of summary judgment in the Defendants' favor. However, as previously set forth in the enumerated Plaintiffs' Objection to the motion for summary judgment, it is black letter law that the "question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection [is] a question for the factfinder". *Matthew Bender & Co., Inc. v. West Pub. Co.,* 158 F.3d 674, 681 (2d Cir. 1998); see also *Tin Pan Apple, Inc. v Miller Brewing Co., Inc.,* 1994 WL 62360, at *4 (S.D.N.Y. 1994)(Plaintiffs are "entitled to test their claims of originality at trial".).

The pertinent case law precedent is clear that it is inappropriate for this Court to decide the issue of summary judgment in the Defendants' favor where the experts disagree as to whether the composition of "Let's Get It On" is, in fact, original. See *Ulloa v. Universal Music & Distribution, Corp.*, 303 F.Supp.2d 409, 413 (S.D.N.Y. 2004); see also *Lessem*, 766 F.Supp.2d 504, 512; *Levine*, 735 F.Supp.2d 92.

In point of fact, the Courts have previously found that even the presentation of mere *indicia* of a dispute pertaining to the issue of substantial similarity requires that the determination be submitted to the jury. See *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

Perhaps recognizing this legal impediment to their argument, the Defendants endeavor to attack the methodology employed by the Plaintiffs' musicologist in analyzing the two (2) songs in dispute. This is effectuated by way of suggesting that the Plaintiffs' musicologist's analysis is/was, in some oblique manner, intrinsically unsound.

Notwithstanding the Defendants' wholesale failure to credibly identify any deficiencies in the opinions proffered by the Plaintiffs' musicologist, Dr. Stewart, applicable case law on this specific issue has resoundingly held that it is not within the province of a District Court to engage in a hyperbolically rigorous dissection, of sorts, as to the validity of an expert opinion's methodology.[8] See *Swirsky v. Carey*, 341 F.3d 841, 846 (9th Cir. 2004); see also *Williams, et.al. v. Gaye, et.al.*, Case Number: *16-55626* (9th Cir. 2018).

Indeed, in connection with the recent appellate ruling in the case of *Williams, et.al. v. Gaye, et.al.*, Case Number: *16-55626*, *54-55 (9th Cir. 2018), the Court held that "to require that

---

[8] Within the contest of the Defendants' argument as to the Plaintiffs' musicologist's analysis, the Plaintiffs would, respectfully, submit that the Defendants appear to be unduly conflating the issue of evidentiary "admissibility" with the question as to the "weight" with which such testimony/evidence may be afforded by the finder of fact.

a case be submitted to a trier of fact if there is any indicia of a disagreement regarding substantial similarity, only to impose on the district court the task of independently scrutinizing the expert testimony presented at trial, **would turn our law on its head** (*Emphasis Supplied*)".

## II. DEFENDANTS' REQUEST FOR CERTIFICATION OF AN APPEAL TO THE SECOND CIRCUIT IS WITHOUT MERIT

The Defendants attempt to evade a jury trial of this lawsuit by incorrectly suggesting that certification of two (2) issues to the Second Circuit is appropriate. First, the Defendants contend that the issue of the scope of copyright protection as it relates to the deposit copy of "Let's Get It On" should be certified. Second, the Defendants request that the matter of whether or not the Court should make the pertinent determination as to copyright protectability (as opposed to the jury) be submitted to the appeals court.

An evaluation of the *prima facie* requirements necessary to justify the certification of an interlocutory appeal as they relate to the rulings of this Court responsive to the Defendants' motion for summary judgment unequivocally demonstrate that prospective certification herein is unwarranted and in stark derogation of the final judgment rule.

### A. Legal Standard

A District Judge may certify an Order for interlocutory appeal if 1.) the Order to be certified involves a controlling question of law; 2.) there exists substantial grounds for difference of opinion; and 3.) an immediate appeal may materially advance the termination of litigation. See *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13 CIV. 5784 CM, 2015 WL 585641, at *1 (S.D.N.Y. February 10, 2015).

### B. Controlling Question of Law

In this instance none of the criteria giving rise to the propriety of an interlocutory appeal are present herein. To wit, with respect to the issue of a purported "controlling question of

law", this jurisdiction defines the same as an Order for which, if reversal is accomplished, would result in the termination of litigation. See *Klinghoffer v. S.N.C. Achille Lauro Ed Altri Gestione Motonave Achille Lauro in Amministrazione*, 931 F.2d 21, 24 (2d Cir. 1990).

As plaintively set forth in the Order from whence the Defendants' contemporaneous motion is derived (Doc. 93), the Court very clearly indicated that the determination as to whether the proper scope of copyright protection was limited to the deposit copy or included the sound recording was/is immaterial for the purposes of ruling on the motion for summary judgment because "the outcome of this motion is the same under either view". (Doc. 93, Page Eight (8)).

As was abundantly evident from the ruling of this Court, the case was still appropriately subject to a jury trial irrespective of a determination as to the scope of copyright protection. Therefore, the Defendants may not plausibly claim herein that such a prospective determination by the Second Circuit would have the operative legal effect of terminating the instant litigation.

### C. Substantial Grounds for Difference of Opinion

To establish a substantial grounds for difference of opinion, a moving party must demonstrate that there is conflicting authority on the issue. See *In Re Trace International Holdings, Inc.*, No. *4-CV-1295* (KMW), 2009 WL 3398515, at *3 (S.D.N.Y. 2009) (citing *Klinghoffer*, 921 F.2d at 25).

While the Defendants attempt to manufacture (and/or satisfy thereby) the requirement as to a "substantial grounds for difference of opinion" *vis a vis* the assertion that the respective Parties to this litigation disagree on the issue for which certification is sought, the only relevant inquiry for this Court is whether there is any actual conflicting authority among the Courts in this jurisdiction. The individualized and/or contrasting opinions of the Parties herein to this action

are completely irrelevant to the inquiry.[9]

Thus, once again, the Order from which the Defendants attempt to take an appeal states in incontrovertible terms that the matter of the scope of copyright protection is an "open" question in the Second Circuit (Doc. 93, Page Eight (8) and, as such, the differing opinion criteria is not met.[10]

### D. <u>Termination of the Litigation</u>

Because this Court's Order (Doc. 93, Page Eight (8)), determined that the outcome of the ruling on the Defendants' summary judgment motion would have been the same and, in fact, did not require the determination of the issues pursuant to which the Defendants now seek interlocutory appeal, the resolution of said issues for prospective certification would not materially advance and/or impact the ultimate goal of shepherding the instant litigation to a conclusion. Under all prospective scenarios, the destination is the same with the instant controversy proceeding to a jury trial.[11] The Defendants being allowed to proceed with their desired interlocutory appeal at this juncture would only unduly delay the Plaintiffs' opportunity to have their claims tried and adjudicated before this Court.

---

[9] Pursuant to the Defendants' interpretation of "substantial grounds for difference of opinion" proffered attendant to their motion, it would seem abundantly reasonable to assert that virtually every single Order in every civil case would satisfy this component of the criteria for interlocutory appeal—of course the respective parties maintain different opinions. Presumably, if there was, in fact, agreement, this matter would have not escalated to the point where it is now a formal lawsuit.

[10] To the extent that the Defendants would continue to rely on its supplementary authority—*Skidmore for Randy Craig Wolfe Tr. V. Led Zeppelin*, 905 F.3d 1116 (9th Cir., September 28, 2018—in order to advance the notion that the likely and/or appropriate outcome of the scope of copyright protection issue will likely be resolved in favor of the deposit copy premise, it should be noted that the Appellant/Plaintiff in the *Skidmore* case recently petitioned the Ninth Circuit for rehearing on the aforementioned deposit copy ruling and the Court thereafter directed Led Zeppelin to file a formal response which would, to all appearances, suggest that the Ninth Circuit, itself, is preparing to revisit this issue.

[11] In point of fact, certifying the Defendants' proffered legal issues for appellate review at this moment would only serve to unduly proliferate the specter of piecemeal litigation and, in so doing, catalyze <u>the exact opposite effect/result</u> for which permissive interlocutory appellate review was intended. From a reciprocal perspective, one (1) might reasonably argue that the specific interest of advancing the litigation toward a conclusion and/or termination would best be served by proceeding with a jury trial. If the Defendants were to prevail in this matter, it would render the issues which the Defendants claim require immediate appellate review as moot. In light of the possibility of the same, the Defendants current efforts attendant to the subject motion are tantamount to the search for a cure in the absence of a cognizable malady.

## CONCLUSION

In sum, the issues giving rise to the Defendants' request for reversal or, in the alternative, certification to the Second Circuit are matters for which the appropriate redress would be pre-trial evidentiary motion practice as to both the admissibility of evidence and the objective propriety of the jury instructions that will be presented to the jury at the close of trial.

For all of the foregoing reasons set forth herein, the Plaintiffs would, respectfully, request that this Court enter an Order Denying the Defendants' motion, as well as providing for any such other relief as this Court should deem equitable and just.

Dated: January 29, 2019

                                **FRANK & RICE, P.A.**
                                Attorneys for Plaintiffs

By: _____
Patrick R. Frank, Esq.
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184
Attorney(s) for Plaintiffs