UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND, | ECF CASE |
| *Plaintiffs*, | 17-cv-5221 (LLS) |
| -against- | |
| EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS | |
| *Defendants*. | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR FIRST MOTION *IN LIMINE*

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony/ATV Music Publishing LLC*

*Of Counsel:*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

   I.    PLAINTIFFS SHOULD BE LIMITED TO COMPARING TOL WITH
       THE LGO COMPOSITION AS REFLECTED IN THE DEPOSIT COPY ........................ 4

        A.    The Deposit Copy Delineates the Scope of Copyright Protection ................................. 4

        B.    Plaintiffs' Prior Arguments Have Already Been Rejected
            by the Ninth Circuit and Should Be Rejected by this Court ......................................... 7

        C.    Plaintiffs Should Be Precluded From Arguing That Elements Contained Only in
            the LGO Recording Are "Implied" in the Deposit Copy of the LGO Composition ...... 9

  II.   PLAINTIFFS SHOULD BE PRECLUDED FROM PLAYING THE
       LGO RECORDING AT TRIAL FOR SOME OTHER PURPOSE .................................... 12

CONCLUSION ..................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**CASES**                                                                     **PAGE(s)**

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
    585 F.3d 267 (6th Cir. 2009) .................................................................. 8

*Data General Corp. v. Grumman System Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994) ................................................................... 5

*Fahmy v. Jay Z*,
    No. 07-cv-05715(CAS), 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ................................ 13

*Knight v. State University of New York at Stony Brook*,
    No. 13-cv-0481(JS), 2016 WL 7046765 (E.D.N.Y. Dec. 2, 2016) ......................................... 12

*Merrell v. Tice*,
    104 U.S. 557 (1881) ................................................................................ 5

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,
    367 F. Supp. 2d 514 (S.D.N.Y. 2005) .................................................... 5, 6

*Prestige Floral Societe Anonyme v. California Artificial Flower Co.*,
    201 F. Supp. 287 (S.D.N.Y. 1962) ........................................................ 5

*Rose v. Hewson*,
    No. 17-cv-1471(DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) .................................... 12

*Rosette v. Rainbo Record Manufacturing Corp.*,
    354 F. Supp. 1183 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976) ................................ 5

*Skidmore v. Led Zeppelin*,
    905 F.3d 1116 (9th Cir. 2018) ....................................................... 5, 6, 7, 8

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................. 8

*Unistrut Corp. v. Power*,
    280 F.2d 18 (1st Cir. 1960) .................................................................... 6

*White-Smith Music Publishing Co. v. Apollo Co.*,
    209 U.S. 1 (1908) ........................................................................... 4, 7, 8

**CASES**                                                                                                    **PAGE(s)**

*Williams v. Bridgeport Music, Inc.*,
  No. 13-cv-06004(JAK), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014) ),
  *aff'd in part and rev'd in part*, 895 F.3d 1106 (9th Cir. 2018) ................................................. 5


**STATUTES**

1909 Copyright Act § 9 .......................................................................................... 2, 4

1909 Copyright Act § 12 ...................................................................................... 2, 4, 6


**RULES**

Fed. R. Evid. 401 .................................................................................................... 12

Fed. R. Evid. 403 .................................................................................................... 12

**TREATISES**

1 M. Nimmer & D. Nimmer, Nimmer on Copyright, § 2.05[A] (Rev. Ed. 2018) ................ 4, 5, 8

William F. Patry, Patry on Copyright, § 9:209.20 (Sept. 2018 ...................................... 8


**LEGISLATIVE HISTORY**

Copyright Law Revision, House Committee on the Judiciary,
87th Cong., 1st Sess. (Comm. Print 1961) .................................................................4, 8

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their First Motion *In Limine* for an Order:  (i) limiting Plaintiffs to comparing *Thinking Out Loud* with the musical composition *Let's Get It On* as reflected in the deposit copy filed with the Copyright Office for that work; (ii) precluding Plaintiffs from eliciting testimony or otherwise adducing evidence that compares *Thinking Out Loud* to elements contained only in a particular recorded version of *Let's Get It On*; (iii) precluding Plaintiffs from offering argument or evidence that elements found only in a recorded interpretation of *Let's Get It On* are "implied" in the sheet music of *Let's Get It On* deposited with the Copyright Office; and (iv) precluding Plaintiffs from playing at trial the recorded version of *Let's Get It On* performed by Marvin Gaye.

## PRELIMINARY STATEMENT

The trial of this action will require the jury to determine whether the musical composition *Thinking Out Loud* ("TOL") infringes the copyright in the musical composition *Let's Get It On* (the "LGO Composition").  This motion asks the Court to address a key legal issue that will shape the trial:  what is the work that is alleged to be infringed to which the jury will compare TOL?

Consistent with more than a century of settled law and accepted practice, Defendants submit that TOL must be compared solely to the sheet music of the LGO Composition deposited with and registered by the Copyright Office, as that is the copyrighted work.  However, Plaintiffs, cognizant that the deposit copy does not contain certain musical elements that underpin their infringement claim, seek to compare TOL to Marvin Gaye's recorded interpretation and performance of the LGO Composition (the "LGO Recording") – a work in which Plaintiffs do not claim to hold any copyright interest.

Defendants submit this pure legal issue can and should be decided as soon as possible, and well in advance of trial, to enable the parties to know in advance what musical elements will be at issue at trial, to ensure that the jury undertakes a proper comparison of TOL to the work in which Plaintiffs purport to hold a copyright, to streamline the trial of this action and to eliminate the potential for significant – and irreversible – jury confusion.[1]  For example, if copyright protection in the LGO Composition is limited, as it should be, to the sheet music deposited with and registered by the Copyright Office, then elements such as the drum pattern and bass-line – which appear only in the LGO Recording in which Plaintiffs have no interest – will not be at issue in this case, which will simplify trial and reduce the evidence to be offered by the parties.

More important, the Court should decide this issue now, before Plaintiffs put on their case-in-chief, to avoid the irreversible jury confusion and significant prejudice that would follow by allowing the jury to hear the LGO Recording – a recording that contains many elements not expressed in the sheet music of the LGO Composition deposited with the Copyright Office.  The proverbial bell cannot be un-rung, and the prejudice to Defendants cannot be undone.  The jury cannot be expected to disregard a recording that it never should have been permitted to hear in the first place.  The Court should rule now that the copyright in the LGO Composition is defined and delimited by the sheet music deposited with the Copyright Office, and Plaintiffs should be precluded from playing the LGO Recording at trial.

That inexorable conclusion necessarily follows because federal copyright law is a creature of statute.  Under Sections 9 and 12 of the 1909 Copyright Act – the law applicable to the LGO Composition – a claimant secured copyright protection by publishing "copies" of his or her work and then depositing with the Copyright Office "two complete copies of the best edition" of the

---

[1] Counsel to Plaintiffs agree that this issue can and should be decided now, having recently sent an email to Defendants in which they expressed hope that the Court would decide this issue well in advance of trial.

work then published.  In turn, "copies," under the 1909 Act, were required to be in "a **written or printed record** … in intelligible notation."

Consistent with the 1909 Act, the proprietors of the LGO Composition secured federal copyright protection by publishing written copies of the LGO Composition – *i.e.*, sheet music – with proper notices and then depositing two complete copies of the "best edition" of that sheet music with the Copyright Office.  The sheet music deposited with and registered by the Copyright Office is what is known as the "deposit copy," and it is the deposit copy that defines and delimits the scope of copyright protection afforded the LGO Composition.

Nor should Plaintiffs be permitted to compare TOL with something that is not expressed in the deposit copy of the LGO Composition but which is supposedly "implied" in it.  The scope of copyright protection is not defined – or enlarged – by how performers and producers may or may not have interpreted, augmented or modified written compositions when they performed and recorded them.  What is "implied" is, by definition, not something that is a written or printed record.  What is "implied" is not in "intelligible notation."

The scope of protection afforded a musical copyright cannot be expanded decades after the deposit copy was registered for copyright protection by expert musicologists opining about what may or may not be "implied" by the sheet music deposited with the Copyright Office.  Congress drafted the copyright laws to promote certainty and to permit others to ascertain what a proprietor claimed to own – the law required written copies in intelligible notation precisely to avoid post-hoc musicological disputes as to what may or may not be "implied" by the deposit copy.  To extend copyright protection to that which is supposedly "implied" would be to rewrite copyright law, extending protection to elements that were never registered for protection and leaving open for any claimant the ability to insist that, notwithstanding what was quite literally written and

deposited with the Copyright Office, there is so much more protected than exists in "intelligible notation." That is not the law.

Accordingly, the jury should compare TOL to the deposit copy of the LGO Composition, and Plaintiffs should be precluded from offering argument or evidence comparing TOL to the LGO Recording, an entirely different work in which Plaintiffs do not claim to hold rights. For all of these reasons, and those set forth below, Defendants respectfully submit that their First Motion *In Limine* should be granted in its entirety.

## ARGUMENT

### I.   PLAINTIFFS SHOULD BE LIMITED TO COMPARING TOL WITH THE LGO COMPOSITION AS REFLECTED IN THE DEPOSIT COPY

#### A.   The Deposit Copy Delineates the Scope of Copyright Protection

To secure copyright protection for published musical compositions such as the LGO Composition under the 1909 Copyright Act, a claimant was required to publish "copies" of the work with proper notices and promptly deposit with the Copyright Office "two complete copies of the best edition" of the work then published. *See* 1909 Copyright Act §§ 9, 12.[2]

Consistent with the Supreme Court's ruling in *White-Smith Music Publ'g Co. v. Apollo Co.*, 209 U.S. 1, 17 (1908), "copies" of musical compositions under the 1909 Act were required to be "visibly intelligible" – the law required a "**written or printed record** in intelligible notation." M. Nimmer & D. Nimmer, 1 *Nimmer on Copyright* ("Nimmer") § 2.05[A] (Rev. Ed. 2018) (emphasis added); *see also* Copyright Law Revision, House Comm. on the Judiciary, 87th Cong., 1st Sess. (Comm. Print 1961) ("It is well established, by a long line of court decisions, that in order to be copyrightable under the statute a work … must be in the form of a <u>writing</u> … ") (emphasis in

---

[2] As later amended on July 30, 1947, Sections 9 and 12 of the 1909 Act became Sections 10 and 13.

original).[3]

Thus, the law as applied to musical compositions under the 1909 Act is and always has been clear: "to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form," and "a musical work could not claim copyright unless the notice and deposit requirements were satisfied with respect to an object that constituted a visibly intelligible notation."  Nimmer § 2.05[A].[4]

The Court of Appeals for the Ninth Circuit – the only Circuit Court of Appeal to squarely address the issue presented on this motion – has definitively ruled that "the deposit copy … rather than a sound recording, define[s] the scope of the protectable copyright" for a musical composition under the 1909 Act.  *Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1131 (9th Cir. 2018).  There is no decision that holds otherwise.

The Ninth Circuit found "persuasive" cases from this District and the First Circuit, which "opined that one of the purposes of the deposit copy requirement is to provide 'sufficient material to identify the work in which the registrant claims a copyright.'"  *Id.* at 1133 (citing, *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161-63 (1st Cir. 1994)); *see also Merrell v. Tice*, 104 U.S. 557, 561 (1881) ("the copyright books deposited with [the Librarian's office] are

---

[3] This Report can be accessed at the following URL:  https://bit.ly/2W78FWo, last accessed May 21, 2019. The Southern District also cited the above-quoted text from this Report in *Prestige Floral Societe Anonyme v. California Artificial Flower Co.*, 201 F. Supp. 287, 289 (S.D.N.Y. 1962).

[4] Under the 1909 Act, sound recordings (or phonorecords) did <u>not</u> constitute "copies" of musical compositions (because sound recordings did not "embody intelligible notations"), and the distribution and sale of sound recordings did not constitute "publication."  *Id.*; *see also Williams v. Bridgeport Music, Inc.*, No. 13-cv-06004 (JAK), 2014 WL 7877773, at *9 (C.D. Cal. Oct. 30, 2014), *aff'd in part and rev'd in part*, 895 F.3d 1106 (9th Cir. 2018); *Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183, 1190, 1192 n. 8 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976); Nimmer § 2.05[A] ("to claim copyright via publication under the 1909 Act [of a musical composition], sheet music was required").  Congress made this clear through Section 303(b) of the 1976 Act.

quasi-records, kept in [the Librarian's] custody for public examination, – one object no doubt being to enable other authors to inspect them in order to ascertain precisely what was the subject of copyright").  Thus, the Ninth Circuit concluded that "the structure of the 1909 Act demonstrates that the deposit copy encompasses the scope of the copyright for unpublished works, as the deposit copy must be filed not only to register the copyright, but for the copyright to even exist." *Skidmore*, 905 F.3d at 1134.

The same logic and holding applies to published works under the 1909 Act, such as the LGO Composition, because claimants seeking protection for published works under the 1909 Act, like claimants seeking protection for unpublished works, were also required to deposit copies of their work with the Copyright Office.  *See* 1909 Copyright Act § 12 ("after copyright has been secured by publication of the work with the notice of copyright as provided in section nine of this Act, there shall be promptly deposited in the copyright office … two complete copies of the best edition thereof then published").

Thus, in all cases, that which the copyright claimant deposited with the Copyright Office delineated that which the copyright claimant claimed to own and defined the scope of protectable expression.  *See, e.g. Unistrut Corp. v. Power*, 280 F.2d 18, 23 (1st Cir. 1960) ("unspecified" "additions" to "later edition" of plaintiff's catalog did not form part of plaintiff's copyright and plaintiff's infringement claim necessarily failed because "there was no proof that copies of this later edition" – which contained the "unspecified" "additions" – "were deposited with the Copyright Office, and there was no proof that the infringed material was contained in the [] edition" deposited with the Copyright Office); *Nicholls*, 367 F. Supp. 2d at 520 ("a copyright does not encompass [elements] that vary in essential respects from what was presented to the Copyright Office.  Otherwise, the purposes of the deposit requirement would be nullified") (citation omitted).

In line with the 1909 Act's requirements and more than a century of settled law and accepted practice, the proprietors of the LGO Composition deposited sheet music for registration with the Copyright Office, representing "the best edition" of the LGO Composition then published. *See* Dkt. Nos. 67-12, 67-13. Accordingly, the deposit copy of the LGO Composition is the copyrighted work, and the deposit copy defines and delimits the scope of protection.

### B. Plaintiffs' Prior Arguments Have Already Been Rejected by the Ninth Circuit and Should Be Rejected by this Court

The parties previously briefed this question on summary judgment, but the Court declined to reach the issue at that time. Because Defendants anticipate that Plaintiffs will recycle these same arguments on this motion, Defendants briefly address them here.

As a threshold matter, on summary judgment, Plaintiffs were unable to cite a single authority supporting the untenable proposition they ask this Court to adopt – that copyright protection afforded to musical compositions under the 1909 Act extends to elements that are not literally and actually expressed in the intelligible notation deposited with the Copyright Office. Instead, Plaintiffs offered three inapposite arguments, which the Ninth Circuit rejected in *Skidmore*.

*First*, citing language in the 1909 Act that granted copyright proprietors the exclusive right to make the first mechanical reproduction (including piano rolls) of their works, Plaintiffs argued that the 1909 Act was intended to overturn *White-Smith's* requirement of "a written or printed record of [a musical composition] in intelligible notation." Yet, as the Ninth Circuit clarified in *Skidmore*, the mechanical reproduction right afforded to copyright owners under the 1909 Act has nothing to do with the scope of copyright or whether the deposit copy defines the scope of protection. While the 1909 Act extended copyright law to protect against infringing <u>uses</u> in different forms beyond sheet music (*e.g.*, piano rolls), the 1909 Act did not extend the scope of <u>protection</u> for copyrighted works beyond "published sheet music or the musical composition

7

transcribed in the deposit copy." *Skidmore*, 905 F.3d at 1132.[5]

*Second*, Plaintiffs cited *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) and *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267 (6th Cir. 2009) to support the supposed proposition that sound recordings may be consulted to ascertain the scope of protection afforded musical compositions under the 1909 Act.  The Ninth Circuit distinguished these cases in *Skidmore*, noting that the former addressed the "complete copy" requirement under the 1909 Act (which addresses subject matter jurisdiction, not the scope of protection), and that the latter addressed a composition subject to the 1976 Act.  *See* 905 F.3d at 1132-33.[6]

*Finally*, disregarding statutory text and more than a century of practice, Plaintiffs argued that copyright claimants should not be held to the "best copies" of the sheet music they deposited with the Copyright Office, speculating claimants "had no reason to transcribe every element of every recording," since, perhaps, the law was unclear at the time.  That conjecture is factually unfounded.  *See, e.g.*, Copyright Law Revision: Report of the Register of Copyrights on the General Revision of U.S. Copyright Law, *supra*.  It is also legally baseless, as it ignores the plain requirements of the 1909 Act (requiring the deposit of the best copies of the work, with copies

---

[5] *See also* Nimmer § 2.05[A] (noting that Congress overruled *White-Smith*, not through the 1909 Act, but only later through the 1976 Act); Study No. 5, *The Compulsory License Provisions of the U.S. Copyright Law* Before the Subcommittee on Patents, Trademarks, and Copyrights of the Committee on the Judiciary, S. Res. 53, 86th Cong., 1st Session, at 19-20 (1956) (by Professor Harry G. Henn) ("While the copyright law since 1909 has protected … musical compositions against recording and mechanical reproduction, it has not changed the ruling in *White-Smith Music Publishing Co. v. Apollo Co.* that recordings were not 'copies' of the musical composition or 'writings' of an author within the scope of the existing copyright statute. Accordingly, the copyright statute provides no basis for protecting the recording itself").

[6] The Sixth Circuit's opinion in *Bridgeport Music* has also been roundly criticized by leading commentators. For example, Patry has remarked that the Court "single-handedly destroy[ed] the field of musical copyright" and "confused musical compositions with sound recordings, thereby giving standing to a party who did not own any copyright interest."  William F. Patry, *Patry on Copyright* § 9:209.20 (Sept. 2018 Update). Nimmer similarly faulted the Court for "[b]lurring the boundaries" "between musical compositions and sound recordings" and concluded "this decision would seem to push the boundaries of musical copyright too far." 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (Rev. Ed. 2018).

being limited to written, intelligible notation) and obscures the distinction between compositions and recordings.  There is no basis to conclude now – indeed, to speculate – that the scope of protection stretches beyond the written "copies" of the "best edition" of the work deposited with the Copyright Office, much less to permit speculation, decades later by an "expert" with no personal knowledge of the work's creation, regarding what might be "implied" by the deposit copy.

Plaintiffs would have this Court rewrite the 1909 Act to retroactively change the deposit requirements – indeed, eliminate the deposit requirements, as the LGO Recording was not what was deposited and it was not what could have been deposited – and expand the scope of copyright to encompass that which some expert might opine supposedly could be implied from the deposit copy (effectively admitting it is not contained in "intelligible notation" in the deposit copy) or that which might have been encompassed in some hypothetical copy of sheet music (or a recording) never deposited with the Copyright Office.  This Court should not accept Plaintiffs' invitation to alter the law so fundamentally.  The Ninth Circuit rejected these public policy arguments, and this Court should do the same.  *Id.* at 1134-35.

For all of these reasons, Plaintiffs should be precluded from attempting to introduce evidence or testimony from anyone, including Plaintiffs' musicologist, that compares TOL to anything other than what is expressed in "intelligible notation" in the sheet music of the LGO Composition deposited with and registered by the Copyright Office.

**C.    Plaintiffs Should Be Precluded From Arguing That Elements Contained Only in the LGO Recording Are "Implied" in the Deposit Copy of the LGO Composition**

Plaintiffs also should be precluded from offering argument or evidence that other musical elements – such as the drum pattern and the bass-line found only in the LGO Recording – are "implied" in the deposit copy of the LGO Composition.

As a legal matter, allowing *ex post facto* expansion of copyright by including what is

supposedly "implied" but nowhere expressed in the deposit copy is contrary to the plain terms and fundamental premise of both the 1909 Act and the 1976 Act, which protect that which is underlined expressed, not that which is unexpressed but supposedly "implied."  What purpose would be served by the Copyright Act's requirement of the "the deposit of copies and registration of [the] work" before an infringement action may be commenced if what is "intelligibly notated" or "fixed in a tangible medium of expression" (the language of the 1976 Act) does not circumscribe the outside limits of copyright protection?  Infringement actions would be unconfined to what has actually been registered for protection and instead become free-for-alls, lacking any certainty as to what is encompassed by a plaintiff's copyright other than the imagination of a musicologist as to what he or she might be willing to claim is "implied" by the deposit copy.

In this case, the drum pattern and the allegedly "unusual" bass-line in the LGO Recording are indisputably not expressed or reflected – not in any "intelligible notation" – in the sheet music of the LGO Composition deposited with the Copyright Office.  Nor does the deposit copy include any notation or expression of Marvin Gaye's vocal performance, guitar, horns, flute, strings or any of the other performance elements (or even the tempo, *i.e.*, beats per minute, at which Marvin Gaye performed the composition) that exist only in the LGO Recording.

Instead, the "intelligible notation" in the deposit copy of the LGO Composition includes only the composition's key, meter, harmonic progression, harmonic rhythm, vocal melody, lyrics and song structure.  The deposit copy sets only the most generalized parameters – ideas, not expression – for what a drum pattern and what a bass-line may encompass: the drum pattern must be played in 4/4 meter (*i.e.*, common time) and the bass-line, as a matter of common musical convention, must include notes in the same key and be related to the chord progression, and it must be played in 4/4 meter.  However, within these parameters, there are hundreds, if not thousands,

of potential drum patterns and scores of potential bass-lines that could accompany the harmonic progression, rhythm and structure reflected in the deposit copy.  Plaintiffs seek to introduce evidence of what <u>one</u> of the potential drum patterns and bass-lines could be, although not contained in the deposit copy.

Are every one of these hundreds or thousands of drum patterns and scores of bass-lines, none of which exists in any intelligible notation in the deposit copy, now subject to Plaintiffs' exclusive control?  No logical basis exists for claiming that only one of the hundreds or thousands of drum patterns and only one of the scores of bass-lines is implied and protected.

In short, the notion that the very specific drum pattern and the very specific – and "unusual" – bass-line used in the LGO Recording are also expressed in intelligible notation in the deposit copy is objectively untrue and contrary to the foundational principle of copyright law that protection only extends to that which is actually and intelligibly expressed and notated in the sheet music deposited with the Copyright Office.[7]  Plaintiffs should be precluded from arguing that the one drum pattern and the one "unusual" bass-line contained in the LGO Recording are "implied" in the deposit copy of the LGO Composition or otherwise part of the protected work at issue.

---

[7] On summary judgment, Plaintiffs' musicologist, Dr. Stewart, opined that the bass-line in the LGO Recording is "unusual" because it features a "descending sixth."  *See* Dkt. No. 81 ¶ 34.  That opinion undermines any claim that the deposit copy implies the bass-line in the LGO Recording.  Indeed, because it is undisputed that the deposit copy does <u>not</u> expressly indicate a descending sixth, the Court recognized that it would be illogical to find that this "unusual" bass-line is implied by the deposit copy.  *See* Dkt. No. 93 at 16-17 ("Plaintiffs argue that the bass-line is 'implied' in the deposit copy because the chord names written above certain lyrics indicate the bass notes and rhythm.  But those chord names merely set parameters for what a potential bass-line could encompass, and do not imply the unusual bass-line in the LGO recording that features a descending sixth").

## II.   PLAINTIFFS SHOULD BE PRECLUDED FROM PLAYING THE LGO RECORDING AT TRIAL FOR SOME OTHER PURPOSE

Because the scope of Plaintiffs' copyright is defined by what is literally expressed in the deposit copy of the LGO Composition, Plaintiffs should not be permitted to play a recorded performance or interpretation of the LGO Composition that includes any element that is not expressly reflected in the deposit copy. *See, e.g.*, *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018) ("In copyright cases alleging infringement of a musical composition, a court considers only a song's composition – the notes, rhythm, and harmony, for example – and does not consider elements of performance of the composition, like the skill with which the composition is played") (citations omitted).

Of course, to be admissible, evidence must be relevant, *i.e.*, it must have a tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401; *see also Knight v. State Univ. of N.Y. at Stony Brook*, No. 13-cv-0481 (JS), 2016 WL 7046765, at *1 (E.D.N.Y. Dec. 2, 2016). Further, under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, there is no basis to admit the LGO Recording, as it does not make any fact of consequence more or less probable. The LGO Recording has no probative value because it is not the copyrighted work at issue. It is a distinct work that includes musical elements nowhere expressly contained in the deposit copy of the LGO Composition.[8]

---

[8] Nor would the existence of similar elements in TOL constitute an infringement of the LGO Composition. Plaintiffs do not own the LGO Recoding and do not allege a sound recording infringement claim in this case (and there is no contention that the sound recording of TOL duplicates the LGO Recording, which is the limited copyright protection afforded sound recordings).

To permit the jury to hear the LGO Recording, which includes elements nowhere found in the deposit copy of the LGO Composition, would be unduly prejudicial and cause substantial confusion, as it would expose the jury to the drum pattern and the "unusual" bass-line – as well as the other performance elements contained only in the LGO Recording – and then require the jury to attempt to ignore what they have heard when they later compare TOL to the deposit copy of the LGO Composition, with no assurance that the jury can or will be able to do so.  In similar circumstances, one district court has refused to permit the playing of sound recordings to avoid the "significant risk of confusing and misleading the jury."  *See Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299, at *14 (C.D. Cal. Sept. 24, 2015).

The proverbial bell cannot be un-rung with curative instructions if the LGO Recording is played for the jury.  And, as this Court already has noted, the elements contained in the LGO Recording but not in the deposit copy of the LGO Composition are the very elements that "may be the elements that are most similar" to TOL.  *See* Dkt. No. 93 at 16.[9]  The jury should only be permitted to consider the allegedly infringed work.

---

[9] On information and belief, in prior music infringement cases decided under the 1909 Act, district courts have required the parties to perform (or create recorded versions of) the compositions that only include elements literally and actually expressed and notated in the sheet music deposited with the Copyright Office. Defendants propose that the same can and should be done in this case, and Plaintiffs have indicated a willingness to do so in the event the Court grants this motion.

13

## CONCLUSION

It is respectfully submitted that Defendants' First Motion *In Limine* should be granted in its entirety.

Dated:  New York, New York
        May 20, 2019

                                    PRYOR CASHMAN LLP

                                    By: */s/ Donald S. Zakarin*
                                        Donald S. Zakarin
                                        Ilene S. Farkas
                                        Andrew M. Goldsmith
                                    7 Times Square
                                    New York, NY 10036
                                    (212) 421-4100

                                    *Attorneys for Defendants Edward*
                                    *Christopher Sheeran, Atlantic Recording*
                                    *Corporation and Sony/ATV Music*
                                    *Publishing LLC*

14