UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KATHRYN TOWNSEND GRIFFIN, HELEN   :
MCDONALD, and The Estate of CHERRIGALE   :
TOWNSEND,   :
  :
                        Plaintiffs,   :        Docket No. 17-cv-5221 (LLS)
  :
         -against-   :
  :
EDWARD CHRISTOPHER SHEERAN, p/k/a   :
ED SHEERAN, ATLANTIC RECORDING   :
CORPORATION, d/b/a ATLANTIC RECORDS,   :
SONY/ATV MUSIC PUBLISHING, LLC and   :
WARNER MUSIC GROUP CORPORATION   :
d/b/a ASYLUM RECORDS,   :
  :
                     Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' OBJECTION AND COMPANION MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' FIRST MOTION *IN LIMINE* AND MEMORANDUM OF LAW IN SUPPORT OF THEIR FIRST MOTION *IN LIMINE*

**FRANK & RICE, P.A.**
Attorneys for Plaintiffs
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184

## PRELIMINARY STATEMENT

The enumerated Defendants have filed a motion *in limine* seeking various forms of relief herein—specifically, a.) the Defendants seek to avoid comparison at trial between the respective sound recordings of the two (2) songs at issue in the instant litigation; b.) the Defendants seek to avoid testimony regarding the similarities between the subject sound recordings; c.) the Defendants seek to avoid Plaintiffs being afforded the opportunity to proffer testimony referencing the elements of "Let's Get It On" in the sound recording which are reflected in the deposit copy of the same; and, finally, d.) the Defendants seek to avoid having the recorded version of "Let's Get It On" played for any reason at the trial of this case.

Notably, within the context of the Defendants' motion and—despite requesting multi-tiered and varied "relief" from this Court—the Defendants never directly request that this Court make a determination as to whether the deposit copy of "Let's Get It On" defines the scope of the Plaintiffs' copyright protection.  Rather, the Defendants attempt to avoid the issue by requesting rulings as to collateral evidentiary issues to the exclusion of said deposit copy issue.

In lieu of the same, the Defendants seek various remedies and/or forms of relief which, if granted, would have the operative legal effect as if the Court had elected to rule directly on the issue of the scope of copyright protection afforded to a deposit copy.[1]

While a motion *in limine* may be appropriate attendant to litigation in limited instances,

---

[1] Responsive to Footnote One (1) in the Defendants' memorandum of law in support of the first motion *in limine*, the Plaintiffs do agree with the Defendants' representation of their posture to the extent that it relates to the Plaintiffs' continuing belief that the resolution of the admissibility of the sound recording of "Let's Get It On" is an important issue that would benefit all parties having resolved prior to trial.  However, excluding the instance of the Defendants' direct address of the sound recording issue, the Plaintiffs would, respectfully, posit that the subject motion *in limine* is improperly utilized by the Defendants as a pretextual device pursuant to which they now seek a **third** "bite at the apple" with which to revisit/reargue previously unsuccessful arguments discarded by this Court in ruling on the respective motion(s) for summary judgment and rehearing.

one (1) of the main prerequisites to the same is specificity as to the actual evidence the moving party is seeking to have excluded. See *National Union Fire Insurance Company v. L.E. Myers Co. Group*, 937 F.Supp.276, 287 (S.D.N.Y. 1996). However, "evidence should be excluded on a motion *in limine* **only when the evidence is clearly inadmissible on all potential grounds** (*Emphasis Supplied*)". *Wechsler v. Hunt Health Systems, Ltd.*, 381 F.Supp.2d 135, 140 (S.D.N.Y. 2003).

Although the Defendants' request to have the sound recording of "Let's Get It On" withheld from the jury's consideration is specific, all of the other relief requested by the Defendants *vis a vis* an Order from this Court preemptively excluding references to potential "arguments" and prospective testimony of unidentified parties presumed to be offered by the Plaintiffs in their case-in-chief are so non-specific and ambiguous as to make the task of fashioning any future Order granting any such requested relief impracticable, should this Court be inclined to grant the same. Further, the relief sought, as presented, is more akin to an attempt to unilaterally disarm the Plaintiffs prior to the commencement of the case, as opposed to that which is traditionally contemplated via a motion *in limine*.

Given the fact that the Plaintiffs' anticipated witnesses for trial were communicated to the Defendants via their *Rule 26* disclosures back on October 12, 2017 and exhaustive discovery took place thereafter between the parties regarding expert testimony and the opinions to be proffered associated therewith, it is not immediately clear how the Defendants would be unable at this point to identify with the requisite specificity pursuant to a motion *in limine* the basic threshold criteria—to wit, the name of the witness(es), the actual statements and/or opinions they seek to have excluded, etc. In lieu of the same, we merely observe oblique

2

and/or apocryphal references to precluding some manner of amorphous "argument" or "evidence".[2]

By way of addendum, as it relates to the one (1) discernible aspect of the relief requested, the Defendants fail to adequately explain and/or connect the proverbial "dots" for this Court as to the nature and/or scope of the so-called anticipated prejudice that would purportedly ensue from actually affording a jury the opportunity to hear the recorded version of "Let's Get It On".

The Defendants merely assert by rote the magic words—"confusion"; "prejudice"— which they believe will pave the way to the relief sought in the absence of providing any explanation and/or the faintest vestige/whit of evidence in support thereof.

Notwithstanding the foregoing, even assuming—*arguendo*—that the Defendants had deigned to make any evidentiary proffer whatsoever in support of the proposition floated as to potential jury "confusion", the Defendants have failed to demonstrate (or even assert) why the sound recording of "Let's Get It On" would not be admissible on other/alternative grounds.

---

[2] Particularly troubling in this regard is the Defendants' request that Plaintiffs preemptively be precluded from arguing or providing evidence regarding implied elements of the deposit copy for "Let's Get It On". If this Court were to proceed from the theory that the Defendants' motion regarding "implied" elements of the deposit copy is intended to be directed to potential testimony from the Plaintiffs' musicologist, this aspect of the Defendants' motion is tantamount to an attempt to rewrite/dictate the Plaintiffs' musicologist's opinions to comport with the Defendants' own. Even in the event that this Court was inclined to exclude the sound recording of "Let's Get It On", such ruling would not necessarily result in the Plaintiffs' musicologist being prevented from testifying regarding his analysis/opinions regarding the sound recording and the deposit copy. The *Federal Rules of Evidence, Rule 703*, specifically permits an expert witness to testify and/or proffer opinions based on observations and/or exposure to evidence that, taken on its own, would be construed as inadmissible. See *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). Thus, the exclusion of the sound recording, itself, does not automatically lend itself to the presumption of the draconian scenario wherein any other evidence referencing, alluding to, or relying on, the sound recording, itself, is barred.

## ARGUMENT

## I.   DEPOSIT COPY VS. SOUND RECORDING

For all of the case law and companion authority on the issue of the scope of copyright protection afforded to a musical composition by the Defendants in their motion, the only two (2) cases that are even tangentially on point are two (2) recent cases from the Ninth Circuit—those cases are *Williams, et.al. v. Gaye, et.al.*, Case Number:  *15-56880* (9th Cir. March 21, 2018) and *Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1131 (9th Cir. 2018), respectively.

### A.   The Ninth Circuit Precedent is Not Dispositive

In the *Williams* case, which resulted in a jury verdict in favor of the family of Marvin Gaye, the District Court originally held that the sound recording of the song "Got to Give It Up" could not be played for the jury.  This issue was taken up by the Gaye family on appeal.

Because the Ninth Circuit ultimately resolved the case on other grounds which did not contemplate remand to the District Court, the Ninth Circuit specifically declined to even rule on the deposit copy question. See *Williams, et.al. v. Gaye, et.al.*, Case Number:  *15-56880*, Page 22 (9th Circuit March 21, 2018).

Although the Ninth Circuit volitionally avoided a ruling on the deposit copy issue in the *Williams* appeal, it is worthy of note that during the oral argument attendant to said appeal which took place on October 6, 2017, the Court appeared to exhibit a predisposition in favor of the notion that the District Court erred in excluding the sound recording— specifically, the Honorable Judge Milan D. Smith, Jr., expressed concerns that limiting the scope of copyright protection to a mere deposit copy would have the untenable effect of unduly prejudicing the rights of songwriters who were not conversant with staff notation or

4

so-called "Harvard-Trained" musicians.[3]

Within the framework of the Defendants' motion *in limine* at issue, the Defendants appear to rely exclusively on the decision in *Skidmore v. Led Zeppelin*, 905 F.3d 1116 (9th Cir. 2018).

The Defendants cite the *Skidmore* case in support of the proposition that a deposit copy defines the scope of protectable copyright for a musical composition and concurrently aver that "no decision holds otherwise".[4]

What the Defendants conspicuously omit herein, however, is the fact that in the wake of the Ninth Circuit's ruling on September 28, 2018, the Plaintiffs/Appellants in the *Skidmore* case filed a Petitioner for Limited Panel Rehearing/Rehearing *En Banc* on October 26, 2018.[5] The limited issue for which the Plaintiffs/Appellants sought rehearing was the self-same deposit copy dispute which presents to this Court.

Thereafter, the Ninth Circuit took the noteworthy and decidedly unusual step of entering an Order on November 19, 2018 directing the Defendants/Appellees ("Led Zeppelin") to file a response to the Petition for Limited Panel Rehearing/Rehearing *En Banc*.[6] The Defendants/Appellees complied with the aforementioned directive of the Ninth Circuit on December 10, 2018 by filing a response.[7]

Since the filing of the response on December 10, 2018, with the exception of several miscellaneous supplementary filings, the case docket has remained dormant and the

---

[3] Said oral argument and attendant exchanges between legal counsel(s) for the respective parties to the appeal and the Ninth Circuit panel are available is available on the official website of the Ninth Circuit Court of Appeals.
[4] See Defendants' motion, Doc. 111, Page Nine (9).
[5] Said Motion is identified as Doc. 74 in the *Skidmore* case.
[6] Said Order is identified as Doc. 83 in the *Skidmore* case.
[7] Said response is identified as Doc. 84 in the *Skidmore* case.

deposit copy question has remained pending before the Ninth Circuit for approximately seven (7) months.

As this Court is, in no way, bound in any shape or form by the Ninth Circuit precedent chronicled herein, even if such was not the case, the reality is that the Ninth Circuit cases chronicled herein provide precious little guidance on the deposit copy dispute by virtue of the fact that the Ninth Circuit has, at best, sent mixed signals as to its ultimate disposition on the matter and no adjudicatory body therein has conclusively resolved the same to date.

### B.  The *Skidmore* Case is Inapplicable to the Instant Case

As demonstrated pursuant to the procedural contours of the continuing *Skidmore* appeal, there appears to be a high probability that the Ninth Circuit is contemplating reversing the District Court on the deposit copy issue.

Even in the event that a.) this Court was bound by the rulings of the Ninth Circuit; and b.) the Ninth Circuit were to uphold the District Court's deposit copy ruling, the Defendants efforts to constrain the Plaintiffs' presentation at trial in this case would still remain unavailing due to the specific facts/circumstances which present in this case before the Court.

By way of illustration, the deposit copy holding upon which the Defendants seek to rely, which is—again—the subject of a long pending Motion for Rehearing in the *Skidmore* case is limited exclusively to "**unpublished works**".  *Id.* at 1134.

As indicated, the facts before this Court are distinguishable deriving from the recording and subsequent publication of "Let's Get It On" on Valentines' Day—February 14, 1973.

Although the historical arc/evolution of "Let's Get It On" was charted in some detail previously by the Plaintiffs attendant to their Response to the Defendants' motion for summary

judgment (Doc. 80)—the gravamen of that history which is relevant for the purposes of this Court's analysis is simply that "Let's Get It On" was actually recorded **and published** well before the deposit copy was ever filed and/or registered.

Perhaps no greater evidence of this unassailable/uncontroverted fact is provided by the Defendants, themselves, as **Exhibit "1"** to the Declaration of Ms. Ilene S. Farkas (Doc. 110) in which the Defendants provide a full copy of the copyright registration for "Let's Get It On" and, quite notably, in Paragraph Four (4) of the subject application, it is clearly stated that "Let's Get It On" was first published on February 14, 1973, approximately four (4) months **before** the copyright application with the deposit copy was ever created and/or filed.

Therefore, because—as demonstrated by the Defendants' own exhibit in support of their motion—"Let's Get It On" was already a published work at the time of the application for copyright and the filing of the deposit copy, the Defendants' reliance on the previous provision of the holding in *Skidmore* relating to the deposit copy which, again, is currently under review pursuant to a long pending Motion for Rehearing, is, respectfully, misplaced.

## II.    THE SOUND RECORDING OF "LET'S GET IT ON" IS ADMISSIBLE IRRESPECTIVE OF A DEPOSIT COPY DETERMINATION

One (1) aspect of the *Skidmore* ruling on appeal has actually withstood scrutiny and is instructive within the context of the Defendants' motion *in limine*.  Specifically, the Plaintiffs/Appellants appealed the exclusion of their sound recording in the case because the Defendants/Appellees ("Led Zeppelin") asserted several defenses including that they allegedly did not have access to the work claimed to be infringed upon and, as such, suggested that "Stairway to Heaven" was the product of independent musical creation.

The Plaintiffs/Appellant in *Skidmore* contended that it was an abuse of discretion for the sound recording at issue to be excluded because they had the right to play the recording to a witness claiming the independent creation defense so as to allow for the jury to evaluate the witness' reactions to the work for credibility purposes. See *Id.*

The Ninth Circuit agreed with the Plaintiffs/Appellant and determined that the sound recording could, in fact, be played in Court before the jury so as to afford the opportunity to assess the witness' reaction. *Id.* at 1135.

Thus, while the Ninth Circuit disallowed the recording to be played within the context of the deposit copy matter, it determined that the sound recording was appropriately played in the presence of the jury on other grounds.

Similar to the scenario in *Skidmore*, while the Defendants have previously conceded access as it relates to "Let's Get It On", the Defendants still steadfastly continue to assert that "Thinking Out Loud" was the product of independent creation.[8]

Consistent with the aspect of the holding in the *Skidmore* case regarding the Defendants' legal defenses, it would constitute an abuse of discretion to prevent the Plaintiffs from being afforded the opportunity to play the sound recording of "Let's Get It On" to the Defendant, Ed Sheeran, so that the jury might evaluate his reactions thereto within the context of the Defendants' affirmative defenses and, in so doing, afford the Plaintiffs purposeful availment of their inherent due process right to challenge and/or refute the legitimacy of said defenses and/or prospectively debunk the same.

---

[8] See Defendants' Answer to Complaint, Doc. 23, Eleventh Affirmative Defense.

8

## CONCLUSION

Despite the varying permutations and significant breadth of the relief requested, the essence of the Defendants' motion can be distilled down to a common denominator/theme which has become all too familiar in recent music-related copyright litigation—the Defendants, at all costs, do not want a jury to hear a sound recording of the predicate song upon which the infringement has been alleged.

In most recent instances this has been a relatively compelling and successful tactic.

The conundrum with which the Defendants are faced in this instance is the fact that while in most previous cases that have garnered attention, the alleged 'infringed upon' work was some manner of obscure and/or esoteric song that had failed to pierce the collective public consciousness,[9] "Let's Get It On" is already universally known.

Notwithstanding the foregoing, the Defendants dual contentions of prospective jury confusion and/or prejudice are demonstrably flawed when reduced to a pragmatic "nuts and bolts" application of the base relief sought pursuant to their motion in *limine*—that is to say, in support of the campaign to exclude the sound recording of "Let's Get It On", the Defendants posit that allowing for a jury to simply listen to the actual song would the operative aggregate effect of confusing a jury panel.[10]

As the narrative goes, the tacit alternative and—by extension—apparent "preferred" and/or less confusing outcome/methodology would be to have the jury rely on their lay evaluations of the sheet music/staff notation set forth in the deposit copy in conjunction with two

---

[9] In point of fact, in this very jurisdiction, the Defendant, Ed Sheeran, was recently sued for allegedly infringing on a heretofore virtually unknown song written by two (2) Australian songwriters in connection with a song he wrote called "The Rest of Our Life". See *Carey, et.al. v. Sheeran, et.al.*, Case Number: *2018-00214* (S.D.N.Y. 2018).
[10] When the Ninth Circuit reversed and remanded the matter in the *Skidmore* case in favor of the Plaintiffs/ Appellants, the Court specifically noted that any potential confusion that might ensue as a result of the ruling to allow for the disputed sound recording to be heard by the jury could readily be addressed via tailored jury instruction(s). See *Skidmore* at 1135.

(2) professional musicologists providing diametrically opposite opinions as to the substance and/or import of said notations contained therein.

To suggest that this so-called alternative to playing the sound recording is likely to result in **less** confusion for a jury is, in a word, absurd.

For all of the foregoing reasons set forth herein, the Plaintiffs would, respectfully, request that this Court enter an Order Denying the Defendants' motion, as well as providing for any such other relief as this Court should deem equitable and just.

Dated: May 31, 2019

$$\qquad$$

**FRANK & RICE, P.A.**
Attorneys for Plaintiffs

By: _____
Patrick R. Frank, Esq.
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile:  (850) 629-4184
Attorney(s) for Plaintiffs