UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND,<br><br>     *Plaintiffs*,<br><br>  -against-<br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS<br><br>     *Defendants*. | ECF CASE<br><br>17-cv-5221 (LLS) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR FIRST MOTION *IN LIMINE***

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Atlantic Recording
Corporation and Sony/ATV Music
Publishing LLC*

*Of Counsel:*
 Donald S. Zakarin
 Ilene S. Farkas
 Andrew M. Goldsmith

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ......................................................................................................................................2

    I.   PLAINTIFFS SHOULD BE LIMITED TO
        COMPARING THE COPYRIGHTED WORKS ...............................................................2

        A.  Plaintiffs Have Conceded that the Sheet Music of the LGO Composition
            Deposited with the Copyright Office Defines the Scope of Copyright Protection ........2

        B.  As A Matter of Law, There Are No "Implied" Elements in the Deposit Copy .............4

        C.  Plaintiffs' Remaining Contentions Should Be Rejected .................................................6

    II.  PLAINTIFFS SHOULD BE PRECLUDED FROM PLAYING THE
        LGO RECORDING AT TRIAL FOR SOME OTHER PURPOSE ...................................8

        A.  The LGO Recording Has No Probative Value ...............................................................9

        B.  Unfair Prejudice and Irreversible Jury Confusion .........................................................9

CONCLUSION.................................................................................................................................11

i

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(s)**

*A.T. Kearney, Inc. v. Global Crossing Telecom., Inc.*,
No. 11-cv-5035(PAC), 2013 WL 4838819 (S.D.N.Y. Sept. 11, 2013) ................................... 7

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) ................................................................................................. 4

*DiTocco v. Riordan*,
496 F. App'x 126 (2d Cir. 2012) ........................................................................................... 9

*Estate of Jaquez v. Flores*,
No. 10-cv-2881(KBF), 2016 WL 1060841 (S.D.N.Y. Mar. 17, 2016) ................................... 7

*Fahmy v. Jay Z*,
No. 07-cv-05715(CAS), 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ............................... 10

*Ferreira v. City of Binghamton*,
No. 13-cv-107(TJM), 2016 WL 4991600 (N.D.N.Y. Sept. 16, 2016) ................................... 7

*In re General Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543(JMF), 2015 WL 9480315 (S.D.N.Y. Dec. 29, 2015) ................................. 7

*L.A. Printex Indus., Inc. v. Pretty Girl of California, Inc.*,
No. 09-cv-4206(KBF), 2012 WL 12886988 (S.D.N.Y. May 24, 2012) ................................. 7

*L.W. Matteson, Inc. v. Sevenson Envtl. Servs., Inc.*,
No. 10-cv-0168(HKS), 2013 WL 2286957 (W.D.N.Y. May 23, 2013) ................................. 7

*Merrell v. Tice*,
104 U.S. 557 (1881) ............................................................................................................. 3

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
232 F. Supp. 3d 558 (S.D.N.Y. 2017) .................................................................................... 7

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,
367 F. Supp. 2d 514 (S.D.N.Y. 2005) ................................................................................. 3, 4

*Price v. Fox Entm't Grp., Inc.*,
499 F. Supp. 2d 382 (S.D.N.Y. 2007) .................................................................................... 6

*Skidmore v. Led Zeppelin*,
905 F.3d 1116 (9th Cir. 2018) ......................................................................................... 7, 8, 9

ii

**CASES**                                                                          **PAGE(s)**

*Unistrut Corp. v. Power*,
   280 F.2d 18 (1st Cir. 1960)..................................................................................... 3, 4

*Williams v. Bridgeport Music, Inc.*,
   No. 13-cv-6004(JAK), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014), *aff'd sub nom,*
   *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018) ............................................. 6, 7, 10

**STATUTE**

17 U.S.C. 408(c)(1)..................................................................................................... 5

1909 Copyright Act, § 11............................................................................................ 8

1909 Copyright Act, § 12......................................................................................... 5, 8

1909 Copyright Act, § 13............................................................................................ 5


**RULES & REGULATIONS**

37 C.F.R. § 202.20(c)(2)(vi) ...................................................................................... 5

37 C.F.R. § 202.20(c)(2)(xi)(A)................................................................................. 5


**COPYRIGHT AUTHORITY**

Report of the Register of Copyrights on the General Revision of U.S. Copyright Law,
   House Comm. on the Judiciary, 87th Cong., 1st Sess. (Comm. Print 1961)............................ 3

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, § 504.2
   (3d ed. 2017) ............................................................................................................ 5

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, § 2.6.2.I
   (Rev. 1973) .............................................................................................................. 7

## PRELIMINARY STATEMENT

Defendants' motion *in limine* seeks straightforward relief on a discrete legal issue: limiting Plaintiffs to comparing TOL to their copyrighted work – the LGO Composition.  Because the LGO Composition is evidenced and defined by the sheet music that was deposited with and registered by the Copyright Office – *i.e.*, the deposit copy, which necessarily represented a "complete copy" of the "best edition" of the work then published – Plaintiffs should be precluded from comparing TOL to anything other than the elements literally expressed and notated in the LGO deposit copy. Plaintiffs have no rejoinder to this straightforward legal proposition and have conceded that the deposit copy defines the scope of their copyright.

Nevertheless, without a shred of authority in support, Plaintiffs seek to compare TOL to a different work – one particular recorded performance and interpretation of the LGO Composition (the LGO Recording) – which contains numerous musical elements that are indisputably not notated in the deposit copy.  The jury must compare TOL to the copyrighted work as evidenced and defined by the deposit copy on file with the Copyright Office.  Whether or not TOL is allegedly similar to works that are <u>not</u> the copyrighted work is irrelevant to these proceedings.  Plaintiffs have no standing to raise such claims, and presenting such other works to the jury would be improper, prejudicial, and cause substantial, irreversible jury confusion, as it could lead the jury to attach undue weight to alleged similarities between the two recordings, as distinct from the musical compositions themselves.

It is respectfully submitted that Defendants' motion should be granted and the Plaintiffs should be limited to comparing TOL with the actual copyrighted work at issue – the LGO Composition, as evidenced and defined by the deposit copy on file with the Copyright Office. Defendants respectfully ask the Court to decide this legal issue in advance of trial as it significantly affects trial preparation and will frame the trial of this action.

**ARGUMENT**

I.     **PLAINTIFFS SHOULD BE LIMITED TO**
**COMPARING THE COPYRIGHTED WORKS**

A.     **Plaintiffs Have Conceded that the Sheet Music of the LGO Composition**
**Deposited with the Copyright Office Defines the Scope of Copyright Protection**

Because Plaintiffs have no rejoinder to the arguments raised in Defendants' moving papers regarding the scope of copyright protection afforded under the 1909 Act, they ignore them altogether.  Indeed, Plaintiffs neglect to mention the 1909 Act a single time in their opposition and neglect to cite a single authority – not one – in support of their position.  To summarize:

- It is undisputed that, under the 1909 Act, to secure copyright protection for published musical compositions such as the LGO Composition, a claimant was <u>required</u> to publish "copies" of the work with proper notices and promptly deposit with the Copyright Office "two <u>complete</u> copies of the best edition" of the work then published. *See* Mov. Mem. at 4 (emphasis added; citations omitted);

- It is undisputed that, under the 1909 Act, "copies" of musical compositions were required to be "visibly intelligible," and that the law required a "written or printed record in intelligible notation." *Id.* (citations omitted);

- It is undisputed that, under the 1909 Act, sound recordings did <u>not</u> constitute "copies" of musical compositions, and that the distribution and sale of sound recordings did not constitute "publication." *Id.* at 5;

- It is undisputed that, under the 1909 Act, the proprietors of the LGO Composition could not and did not deposit the LGO Recording to secure registration for the LGO Composition. *Id.* at 4;

- It is undisputed that, in accordance with the requirements of the 1909 Act and decades

2

of settled practice, the proprietors of the LGO Composition deposited two "complete copies" of the "best edition" of the LGO Composition with the Copyright Office, as reflected in Exhibit 1 to the Farkas Declaration, and that the Copyright Office registered that sheet music.  *See* Mov. Mem. at 7; Farkas Decl. at Ex. 1; Opp. Mem. at 7;

- It is undisputed that "one of the purposes of the deposit copy requirement is to provide 'sufficient material to identify the work in which the registrant claims a copyright.'" *Id.* at 5 (citations omitted); *see also Merrell v. Tice*, 104 U.S. 557, 561 (1881) (deposit requirement "enable[s] other authors to inspect [copyright records] in order to ascertain precisely what was the subject of copyright"); Report of the Register of Copyrights on the General Revision of U.S. Copyright Law, House Comm. on the Judiciary, 87th Cong., 1st Sess. (Comm. Print 1961) ("Under [the 1909 Act], the deposit of copies of copyrighted works is required for two purposes: (1) to identify the work being registered, and (2) to enrich the collections of the Library of Congress")[1]; and

- It is undisputed, in all cases, that which a claimant deposited with the Copyright Office delimited that which the copyright claimant claimed to own.  *See* Mov. Mem. at 6 (citing, *Unistrut Corp. v. Power*, 280 F.2d 18, 23 (1st Cir. 1960); *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005)).

In opposition, Plaintiffs have not even attempted to dispute these settled propositions. Plaintiffs have conceded that the scope of copyright is delimited by the sheet music of the LGO Composition deposited with and registered by the Copyright Office.  That sheet music was presented as a "complete copy" of the "best edition" of the work then published.  If the proprietors of the LGO Composition intended to claim more, or if they believed that a "complete copy" of

---

[1] This Report is available at: https://bit.ly/2K3wglg and https://bit.ly/2W78FWo, last accessed June 7, 2019.

their work encompassed more, they could have and should have included additional elements in the sheet music deposited with the Copyright Office.  They did not do so.

Plaintiffs should be precluded from offering argument or evidence that compares TOL to anything other than the elements literally expressed and notated in the LGO deposit copy.[2]

### B.    As A Matter of Law, There Are No "Implied" Elements in the Deposit Copy

Plaintiffs also fail to cite a single authority for their contention that the copyright in the LGO Composition should be expanded to include musical elements "implied" by the sheet music – *e.g.*, the drum pattern and bass-line present only in the LGO Recording – notwithstanding that none of these "implied" elements is expressly notated in the deposit copy.  Of course, that which is "implied" is the polar opposite of that which is "expressed" in a written or printed record of intelligible notation.  And, as both Plaintiffs' expert and this Court have recognized, the drum pattern and bass-line in the LGO Recording are but one of many drum patterns and bass-lines that could be derived from the generalized parameters set forth in the deposit copy.

Plaintiffs' failure to cite a single authority is unsurprising, as the law is to the contrary.  *See Nicholls*, 367 F. Supp. 2d at 520 ("a copyright does not encompass [elements] that vary in essential respects from what was presented to the Copyright Office.  Otherwise, the purposes of the deposit requirement would be nullified"); *Unistrut Corp.*, 280 F.2d at 23 (claimant under the 1909 Act precluded from claiming ownership over elements not expressed in deposit copy); *Data Gen. Corp.*

---

[2] Plaintiffs' anomalous contention (Opp. Mem. at 1) that Defendants "never directly request that this Court make a determination as to whether the deposit copy … defines the scope of the Plaintiffs' copyright protection," is baffling, as this issue is the heart of Defendants' motion.  *See, e.g.,* Defendants' moving papers at Point I.A., entitled, "The Deposit Copy Delineates the Scope of Copyright Protection."  Further, Plaintiffs' representation that Defendants were previously "unsuccessful" in arguing this point misstates the facts, as the Court has yet to determine this issue.  On summary judgment, the Court specifically declined to reach this issue, finding an issue of fact existed regardless of whether one compared TOL to the LGO Composition or the LGO Recording.  Now, the Court should rule on this issue, in advance of trial, to ensure that the jury does not consider anything beyond the work in which Plaintiffs actually claim to hold a copyright interest.

*v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161 (1st Cir. 1994) (deposit requirement serves "purpose of providing the Library's Copyright Office with sufficient material to identify the work in which the registrant claims a copyright") (citations omitted).

In fact, but for two limited exceptions not applicable here,[3] the Copyright Office recognizes that "a registration for a work of authorship **only covers the material that is included in the deposit copy(ies)**," and "does not cover authorship that does not **appear in** the deposit copy(ies), even if the applicant expressly claims that authorship in the application."  *See* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, § 504.2 (3d ed. 2017) (emphases added).[4] Thus, the proprietor of a musical work owns – and the scope of protection in a musical work is limited to – that which has been deposited with and registered by the Copyright Office.

Ignoring this settled jurisprudence and unequivocal pronouncement of the law by the Copyright Office, Plaintiffs suggest their expert should be permitted to testify "regarding the sound recording" and elements supposedly "implied" in the deposit copy because the Federal Rules of Evidence "permit[] an expert witness to … proffer opinions based" on inadmissible evidence.  *See* Opp. Mem. at 3 n.2.  Plaintiffs miss the point and misunderstand the law.  Although an expert witness may, as a general matter, predicate his or her opinions on inadmissible evidence, an expert still must present <u>relevant</u> evidence and, here, there is no point to "opining" on "implied" elements

---

[3] The two exceptions under the Current Act are: (1) for sculptural works (and certain other works – excluding musical works – whose deposit is impractical) in which case the claimant may deposit identifying portions of the work, and (2) other "exceptional cases," whereby a claimant may seek "special relief from the deposit requirements for a particular work."  *See* Compendium at § 504.2; 37 C.F.R. §§ 202.20(c)(2)(vi), 202.20(c)(2)(xi)(A); 17 U.S.C. 408(c)(1).  Similarly, under the 1909 Act, proprietors of certain types of published works – not musical works – could, where "the Register of Copyrights determine[d] that [it would be] impracticable to deposit copies because of their size, weight, fragility, or monetary value," deposit "identifying reproductions in lieu of copies of the work."  *See* 1909 Copyright Act § 13 (as amended 1956).  Prior to its amendment, by which it became Section 13, Section 12 of the 1909 Act included similar language.

[4] The Compendium is available at: https://bit.ly/2gcsUM6, last accessed June 7, 2019.

when those elements are irrelevant and not encompassed within the scope of Plaintiffs' copyright.

If Plaintiffs are seeking to have Dr. Stewart opine that the scope of copyright in the LGO Composition extends to "implied" elements, that is impermissible, as an expert cannot, under any circumstances, usurp the role of the Court and offer a legal conclusion. *See Price v. Fox Entm't Grp., Inc.*, 499 F. Supp. 2d 382, 387 (S.D.N.Y. 2007) ("Expert testimony may not usurp the role of the court in determining the applicable law.  Although an expert may opine on an issue of fact, an expert may not give testimony stating ultimate legal conclusions"); *Williams v. Bridgeport Music, Inc.*, No. 13-cv-6004 (JAK), 2014 WL 7877773, at *9 (C.D. Cal. Oct. 30, 2014), *aff'd sub nom*, *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018) (holding that musicological "opinions are not admissible as to the legal issue that is presented" – *i.e.*, the scope of copyright – and that "how musicologists define 'composition' or make use of copyright deposits cannot be used to determine the meaning of the term 'composition' as it us used in the 1909 Act").

The copyrighted work at issue is the LGO Composition, as reflected by the deposit copy. Accordingly, Dr. Stewart cannot be permitted to opine regarding alleged similarities that are not at issue and beyond the scope of the deposit copy, including elements that appear only in the LGO Recording.  Nor can he be permitted to opine – and offer the legal conclusion – that the scope of copyright in the LGO Composition supposedly includes additional "implied" elements.

## C.    Plaintiffs' Remaining Contentions Should Be Rejected

*First*, Plaintiffs pretend that the instant motion *in limine* seeks "non-specific" and "ambiguous" relief.  The instant application is quite clear: Defendants ask this Court to preclude Plaintiffs from comparing TOL to anything other than Plaintiffs' copyrighted work: the sheet

6

music of the LGO Composition deposited with and registered by the Copyright Office.[5]

*Second*, Plaintiffs' speculation that the Ninth Circuit might, just perhaps, reverse its

decision in *Skidmore v. Led Zeppelin*, 905 F.3d 1116 (9th Cir. 2018), provides no basis to deny

this motion.  Defendants have cited ample additional authorities that unambiguously mandate a

finding that the LGO Composition, as reflected by the sheet music deposited with and registered

by the Copyright Office, delimits the scope of protectable copyright.  *See supra* at 3-5; Mov. Mem.

at 4-6.  Plaintiffs' contention that Defendants "rely exclusively" on *Skidmore* is simply false.  To

reiterate, Plaintiffs have not cited a single authority that supports their position.[6]

*Third*, Plaintiffs seek to distinguish this case from *Skidmore* (since *Skidmore* involved an

unpublished work), speculating the first published copy of the LGO Composition might differ

from the copy subsequently deposited with the Copyright Office.  Yet, the 1909 Act required the

proprietors of the LGO Composition to "promptly" deposit two "complete copies" of the "best

edition" of the LGO Composition "then published" (thus requiring the deposit copy to correspond,

---

[5] That Defendants move *in limine* to preclude "argument or evidence" regarding works other than the copyrighted work at issue is eminently proper, as courts in this Circuit routinely grant *in limine* motions seeking to preclude "argument or evidence" regarding discrete topics.  *See MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 566 (S.D.N.Y. 2017); *Estate of Jaquez v. Flores*, No. 10-cv-2881 (KBF), 2016 WL 1060841, at *5 (S.D.N.Y. Mar. 17, 2016); *Ferreira v. City of Binghamton*, No. 13-cv-107 (TJM), 2016 WL 4991600, at *17 (N.D.N.Y. Sept. 16, 2016); *In re General Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9480315, at *5 (S.D.N.Y. Dec. 29, 2015); *A.T. Kearney, Inc. v. Global Crossing Telecom., Inc.*, No. 11-cv-5035 (PAC), 2013 WL 4838819, at *1 (S.D.N.Y. Sept. 11, 2013); *L.W. Matteson, Inc. v. Sevenson Envtl. Servs., Inc.*, No. 10-cv-0168 (HKS), 2013 WL 2286957, at *2 (W.D.N.Y. May 23, 2013); *L.A. Printex Indus., Inc. v. Pretty Girl of California, Inc.*, No. 09-cv-4206 (KBF), 2012 WL 12886988, at *1 (S.D.N.Y. May 24, 2012).

[6] Plaintiffs also cite oral argument in *Williams* – which was decided before *Skidmore* – during which one Judge of the Ninth Circuit "expressed concerns" that requiring the deposit of sheet music would "unduly prejudic[e] the rights of songwriters who [are] not conversant with staff notation."  *See* Opp. Mem. at 4-5. However, such concerns are and were unfounded, as the 1909 Act did not require conventional musical notation.  *See* Compendium of Copyright Office Practices, 2.6.2.I (Rev. 1973) ("As long as it is intelligible and capable of being read and visually perceived, a work may be accepted for registration in Class E, even if it does not employ the conventional form of music notation").  And the jury in *Williams* was able to compare the two compositions without hearing the recording of the claimants' song.  Further, Plaintiffs' concern is misplaced in regard to the LGO Composition, as the deposit copy is perfectly well notated.

at least in substantial part, to the first publication).  Regardless, it does not matter whether the deposit copy may have hypothetically differed from the first publication copy because it is the deposit copy in which the proprietors of the LGO Composition hold a registered copyright.  The Court has before it the sheet music deposited with and registered by the Copyright Office, and that is the copyrighted work, and that is the work to which the jury must compare TOL.

Further, as Defendants explained in their moving papers (ignored wholesale by Plaintiffs in opposition), the Ninth Circuit's logic in *Skidmore* applies fully to published musical works because claimants seeking protection for published <u>and</u> unpublished works under the 1909 Act were required to deposit "complete" copies of their work with the Copyright Office.  *See* 1909 Copyright Act §§ 11, 12.  Thus, the deposit and registration requirements (and the rationale for each) applied equally to published and unpublished works alike, and Plaintiffs have not offered any basis (much less any authority) to treat published works differently than unpublished works.[7]

## II.  PLAINTIFFS SHOULD BE PRECLUDED FROM PLAYING THE LGO RECORDING AT TRIAL FOR SOME OTHER PURPOSE

As Defendants demonstrated in their moving papers, Plaintiffs should be precluded from playing the LGO Recording at trial because (1) the LGO Recording does not make any fact of consequence more or less probable – *i.e.*, it is not relevant – as it is not the copyrighted work, and it is not the work to which the jury must compare TOL; and (2) even assuming Plaintiffs could demonstrate that the LGO Recording had some limited probative value for some other purpose (and they have not done so), its probative value is substantially outweighed by the danger of unfair prejudice and irreversible jury confusion.

---

[7] To be sure, while a proprietor of a published work could, in theory, put the public "on notice" of its claim to copyright by publication alone, the proprietor of a published work was still required to promptly deposit two complete copies of the best edition of the work then published and thus confirm the scope of its claim of original authorship.  In either case, the deposit copy represented what the proprietor claimed to own.

## A.      The LGO Recording Has No Probative Value

While conceding the LGO Recording is not the copyrighted work at issue, Plaintiffs, citing *Skidmore*, argue that the LGO Recording may be relevant to the affirmative defense of independent creation.[8] This argument misses the mark and badly misstates the holding in *Skidmore*.

The defendants in *Skidmore* – unlike Defendants here – denied that they had ever heard the plaintiff's work.  905 F.3d at 1135.  Because access is a *prima facie* element of an infringement claim (*DiTocco v. Riordan*, 496 F. App'x 126, 127 (2d Cir. 2012)), the Ninth Circuit ruled the plaintiff should have been permitted to play the recording, solely to permit the jury to observe the defendant's reaction to hearing the song to evaluate his claimed ignorance. *Id.*  The Ninth Circuit's holding had nothing to do with the wholly distinct affirmative defense of independent creation.

Plaintiffs do not explain, because they cannot explain, how playing the LGO Recording for Mr. Sheeran would assist the trier of fact in determining whether Mr. Sheeran independently created TOL.  Mr. Sheeran's reaction to hearing the LGO Recording is irrelevant.  He already has conceded having heard the song before.  The question is not whether Mr. Sheeran has ever heard the LGO Recording; rather, the question is whether, notwithstanding his having heard the LGO Recording, Mr. Sheeran independently created TOL.  The answer to that question has nothing to do with Mr. Sheeran's "reaction" to hearing the LGO Recording.  To permit Plaintiffs to play the LGO Recording for this supposed purpose would be utterly gratuitous.[9]

## B.      Unfair Prejudice and Irreversible Jury Confusion

Plaintiffs also pretend that Defendants have failed to "connect the proverbial dots" as to why the LGO Recording would cause undue prejudice and jury confusion.  Defendants clearly

---

[8] Of course, the burden to establish the relevance of the LGO Recording rests squarely on Plaintiffs.
[9] Even if the Court were to admit the LGO Recording for this limited purpose, Plaintiffs should still be precluded from playing it during their case-in-chief, as independent creation is an affirmative defense.

explained it would be unduly prejudicial and confusing to permit the jury to hear the LGO

Recording because it is not the copyrighted work and because it contains numerous elements that

are not included in the LGO deposit copy.  As this Court previously noted, it is the elements

contained in the LGO Recording but not in the deposit copy that "may be the elements that are

most similar" to TOL.  The jury should not be permitted to hear a different work, and then be asked

to erase it from their mind when comparing TOL to the very different LGO Composition.  The risk

of the jury attaching undue weight to irrelevant similarities between the recordings – not contained

in the LGO Composition – is real and significant and cannot be undone.  The proverbial bell cannot

be un-rung.  *See Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299, at \*14 (C.D. Cal.

Sept. 24, 2015) ("Presenting the sound recordings at trial carries a significant risk of confusing and

misleading the jury … permitting plaintiff to use the exact sound recording of *Khosara* used in *Big*

*Pimpin'* as a representation of his copyright in the written composition of *Khosara* could lead the

jury to attach undue weight to the similarities between the two recordings, as distinct from the

musical composition itself") (emphasis in original).

Finally, the suggestion (Opp. Mem. at 10) that it would be more confusing to require the

jury to compare TOL to the Plaintiffs' work – the LGO Composition – eludes logic.  It is, after all,

the LGO Composition to which the jury must compare TOL (and Defendants' expert already has

undertaken this comparison).  In fact, this precise analysis has been performed in at least two prior

cases decided under the 1909 Act – *Skidmore* and *Williams*.[10]  The notion that Plaintiffs will suffer

prejudice if they are held to the metes and bounds of the copyrighted work is pure fiction.[11]

---

[10] In *Williams*, the copyright claimants succeeded in proving an infringement at trial, despite the District Court forbidding them from playing the sound recording of the composition at issue, *Got To Give It Up*.
[11] Defendants also understand that computer software can be used to create a sound recording consistent with the literal musical expression set forth in sheet music.  Defendants submit that can and should be done here with respect to the LGO Composition.

## CONCLUSION

It is respectfully submitted that Defendants' First Motion *In Limine* should be granted in

its entirety.

Dated: New York, New York
       June 7, 2019

<div style="margin-left:50%;">

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Atlantic Recording
Corporation and Sony/ATV Music
Publishing LLC*

</div>

11