Donald S. Zakarin
dzakarin@pryorcashman.com
Ilene S. Farkas
ifarkas@pryorcashman.com
Andrew M. Goldsmith
agoldsmith@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND,<br><br>     *Plaintiffs*,<br><br>   -against-<br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS<br><br>     *Defendants*. | ECF CASE<br><br>17-cv-5221 (LLS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO PRECLUDE DR. ALEXANDER STEWART FROM TESTIFYING AT TRIAL**

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Atlantic Recording
Corporation and Sony/ATV Music
Publishing LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 5

I.     LEGAL STANDARD ............................................................................................ 5

II.    DR. STEWART'S EXPERT REPORT AND ANY
      TESTIMONY BASED ON IT SHOULD BE EXCLUDED ................................. 8

     A.   Dr. Stewart's Expert Report Improperly Compares
        TOL To The LGO Recording Instead Of The Deposit
        Copy And His Testimony Should Therefore Be Excluded ........................... 8

III.   IN THE ALTERNATIVE, DR. STEWART'S TESTIMONY MUST BE LIMITED ...... 11

     A.   Dr. Stewart Should Be Precluded from Offering Legal Conclusions
        Regarding Substantial Similarity And Protectable Expression ................... 11

     B.   Dr. Stewart Should Be Precluded From Offering Testimony That LGO
        Is "Unique," "Distinctive," "Uncommon," "Unusual" or the Like Because
        He Failed to Provide Any Foundation For Any Such Expert Conclusions ................ 14

        1.   None Of Dr. Stewart's Opinions Appears In The Stewart Report ........................ 15

        2.   Dr. Stewart's Opinions Are Unreliable Because He
           Conducted No Appropriate Musicological Prior Art Search ............................... 15

        3.   Dr. Stewart's Opinions Are Also Unreliable Because They Represent
           Classic Ipse Dixit And Are Not Based On Any Actual Facts Or Data ................ 19

        4.   Dr. Stewart's Opinions Are Contradicted By His
           Prior Statements Or Belied By Indisputable Proof ............................................ 20

           i.   Dr. Stewart Has Admitted The Harmonic
              Progression Is "A Common Progression" ............................................ 20

           ii.   The Harmonic Rhythm At Issue – The "Anticipation" Of
              Chord Changes – Is An Unprotectable Musical Technique ........................... 21

     C.   Dr. Stewart's Testimony Regarding Alleged Similarities Between The Vocal
        Melodies Should Be Precluded Because It Is Based On A Faulty Methodology ........ 22

CONCLUSION .................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                    **PAGE(s)**

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
  514 F. Supp. 2d 571 (S.D.N.Y. 2007)............................................................18

*Allen v. Scholastic Inc.*,
  739 F. Supp. 2d 642 (S.D.N.Y. 2011)............................................................ 12

*Amorgianos v. Amtrak*,
  303 F.3d 256 (2d Cir. 2002)............................................................................ 5

*Baker v. Urban Outfitters, Inc.*,
  254 F. Supp. 2d 346 (S.D.N.Y. 2003)........................................................ 5, 11

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*,
  769 F. Supp. 2d 269 (S.D.N.Y. 2011)............................................................. 7

*Coene v. 3M Co.*,
  303 F.R.D. 32 (W.D.N.Y. 2014)................................................................... 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993).............................................................................. *passim*

*Davis v. Carroll*,
  937 F. Supp. 2d 390 (S.D.N.Y. 2013)............................................................. 6

*Disabled in Action v. City of New York*,
  360 F. Supp. 3d 240 (S.D.N.Y. 2019)........................................................ 6, 19

*Ebewo v. Martinez*,
  309 F. Supp. 2d 600 (S.D.N.Y. 2004)............................................................. 7

*In re Fosamax Products Liability Litigation*,
  707 F.3d 189 (2d Cir. 2013)......................................................................... 21

*Francescatti v. Germanotta*,
  No. 11-cv-5270 (MEA), 2014 WL 2767231 (N.D. Ill. Jun. 17, 2014)................... 22

*Garcia v. Hartford Police Department*,
  706 F.3d 120 (2d Cir. 2013)........................................................................... 6

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997).................................................................................... 6

## TABLE OF AUTHORITIES, *continued*

**CASES**                                                                                           **PAGE(s)**

*Goodness Films, LLC v. TV One, LLC*,
   No. 12-cv-8688 (GHW), 2014 WL 12780291 (C.D. Cal. May 19, 2014)................................ 17

*Gray v. Perry*,
   No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020) ................... 12, 13, 21

*Griffin v. Sheeran*,
   351 F. Supp. 3d 492 (S.D.N.Y. 2019)............................................................................. 12, 13

*Griffin v. Sheeran*,
   No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020) ..... 1, 2, 8, 10

*Hygh v. Jacobs*,
   961 F.2d 359 (2d Cir. 1992)................................................................................................ 6

*Estate of Jaquez v. City of New York*,
   104 F. Supp.3d 414 (S.D.N.Y. 2015) , *aff'd*, 706 F. App'x. 709 (2d Cir. 2017)................ 6, 19

*Johannsongs-Publishing Ltd. v. Rolf Lovland*,
   No. 18-cv-100009 (AB), 2020 WL 2315805 (C.D. Cal. Apr. 3, 2020)............................. 15, 22

*Johnson v. Gordon*,
   409 F.3d 12 (1st Cir. 2005)................................................................................................ 22

*Koppell v. New York State Board of Elections*,
   97 F. Supp. 2d 477 (S.D.N.Y. 2001).................................................................................. 16

*In re Kreta Shipping, S.A.*,
   181 F.R.D. 273 (S.D.N.Y. 1998) ......................................................................................... 7

*Kuhar v. Petzl Co.*,
   No. 16-cv-0395 (JS), 2018 WL 7571319 (D.N.J. Nov. 27, 2018)......................................... 13

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).......................................................................................................... 5

*Laureyssens v. Idea Grp., Inc.*,
   964 F.2d 131 (2d Cir. 1992)............................................................................................... 12

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003) , *aff'd*, 99 F. App'x 274 (2d Cir. 2004)................................. 18

## TABLE OF AUTHORITIES, *continued*

**CASES**                                                                    **PAGE(s)**

*Major League Baseball Props. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008)....................................................................... 6

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015) , *aff'd*, 669 F. App'x 59 (2d Cir. 2016)................ 12, 21

*Morgens, Waterfall, Vintiadis & Co. v. Donaldson, Lufkin & Jenrette Security Corp.*,
    198 F. Supp. 2d 432 (S.D.N.Y. 2002)..................................................... 19

*Nobile v. Watts*,
    289 F. Supp. 3d 527 (S.D.N.Y. 2018) , *aff'd*, 747 F. App'x 879 (2d Cir. 2018).................... 12

*Playtex Products, Inc. v. P&G*,
    No. 02 CIV. 8046 (WHP), 2003 WL 21242769 (S.D.N.Y. May 28, 2003) , *aff'd*, 126
    F. App'x 32 (2d Cir. 2005) ............................................................... 16

*Price v. Fox Entm't Grp., Inc.*,
    499 F. Supp. 2d 382 (S.D.N.Y. 2007)........................................................ 6, 11

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)................................................................ 11

*Redmond v. Teledyne Landis Machine*,
    No. 15-cv-00646 (MAD/ATB), 2017 WL 2465173 (N.D.N.Y. June 7, 2017) ...................... 15

*Richman v. Respironics, Inc.*,
    No. 08-cv-9407 (LMS), 2012 WL 13102265 (S.D.N.Y. Mar. 13, 2012)............................. 21

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
    98–cv–8272 (RPP), 2003 U.S. Dist. LEXIS 17623 (S.D.N.Y. Oct. 2, 2003)........................... 7

*Shatkin v. McDonnell Douglas Corp.*,
    727 F.2d 202 (2d Cir. 1984)............................................................. 5, 10

*Sheldon Abend Revocable Trust v. Spielberg*,
    748 F. Supp. 2d 200 (S.D.N.Y. 2010)..................................................... 12

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ..................................................... 12, 13, 21

*United States v. Articles of Banned Hazardous Substances*,
    34 F.3d 91 (2d Cir. 1994)................................................................ 11

## TABLE OF AUTHORITIES, *continued*

**CASES**                                                                     **PAGE(s)**

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)..................................................................... 6

*United States v. Scop*,
   846 F.2d 135, *modified on other grounds*, 856 F.2d 5 (2d Cir. 1988).....................................11

*United States v. Vulcan Society, Inc.*,
   637 F. Supp. 2d 77 (E.D.N.Y. 2009) ..................................................... 7

*Warner Bros. Inc. v. American Broadcast Companies.*,
   654 F.2d 204 (2d Cir. 1981)..................................................................... 22

*Williams v. Bridgeport Music, Inc.*,
   No. 13-cv-6004 (JAK), 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014) , *aff'd sub nom*,
   Williams v. Gaye, 895 F.3d 1106 (9th Cir. 2018) ..................................... 6

*Wills v. Amerada Hess Corp.*,
   379 F.3d 32 (2d Cir. 2004)..................................................................... 17

*In re Wright Medical Technology Inc., Conserve Hip Implant Production Liability Litigation*,
   127 F. Supp. 3d 1306 (N.D. Ga. 2015) ..................................................... 11

*Zalewski v. Cicero Builder Development, Inc.*,
   754 F.3d 95, 105-106 (2d Cir. 2014) ..................................................... 12

*Zaremba v. GMC*,
   360 F.3d 355 (2d Cir. 2004)..................................................................... 5

*Zenith Electronics Corp. v. WH-TV Broadcast Corp.*,
   395 F.3d 416 (7th Cir. 2005) ..................................................................... 17

*In re Zyprexa Products Liability Litigation*,
   489 F. Supp. 2d 230 (E.D.N.Y. 2007) ..................................................... 16

## **STATUTES**

17 U.S.C. § 102(b) ........................................................................................................... 21

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 26(a)(2)(B) ..................................................................... *passim*

Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii) ...................................................................4

Fed. R. Civ. P. 37(c)(1) ............................................................................ *passim*

Fed. R. Evid. 702 ......................................................................... 1, 5, 6, 19

Fed. R. Evid. 704(a) ............................................................................ 13

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their Second Motion *In Limine* for an Order, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), excluding the testimony of Dr. Alexander Stewart.

## PRELIMINARY STATEMENT

In support of their claim that *Thinking Out Loud* ("TOL") infringes the copyright in the musical composition *Let's Get It On* ("LGO"), Plaintiffs have submitted an expert report by Dr. Alexander Stewart (the "Stewart Report").[1]  The Stewart Report compares TOL with a recorded studio performance of LGO by Marvin Gaye (the "LGO Recording"), one of dozens of recorded performances of LGO.  (*See* Stewart Report at 1 (Dr. Stewart explains that he compared TOL to "'Let's Get It On' (LGIO) **performed by Marvin Gaye**," *i.e.*, the LGO Recording) (emphasis added); *id.* (Dr. Stewart explains that he assessed "[r]ecordings" of LGO and TOL provided to him by Plaintiffs' counsel); *id.* at 2 (comparing TOL to the "single" and "deluxe" versions of the LGO Recording)).[2]

However, this Court has ruled that the LGO copyright is defined and delimited by the written sheet music deposited with and registered by the U.S. Copyright Office (the "Deposit Copy").  *See Griffin v. Sheeran*, No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020).  Yet, the Stewart Report devotes lengthy analysis to elements in the LGO Recording that are nowhere found in the Deposit Copy – *e.g.*, the "bass line" and "drums" in the

---

[1] A copy of the Stewart Report is annexed as Exhibit 1 to the Declaration of Donald S. Zakarin.

[2] In fact, in a footnote on page 1 of Stewart's Declaration in opposition to Defendants' motion for summary judgment (Zakarin Decl. at Exhibit 2), he admitted that all references to LGO in his Declaration were to the LGO Recording.

LGO Recording.  (Stewart Report at 4, 6).  As this Court has determined, because neither of these elements appears in the Deposit Copy, neither is protected by copyright and neither is the subject of Plaintiffs' infringement claim.  *Griffin*, 2020 U.S. Dist. LEXIS 52908, at *3 ("The Gaye sound recording contains many elements: percussion/drums, bass-guitar, guitars, Gaye's vocal performances, horns, flutes, etc., which do not appear in the simple melody of the Deposit Copy. These additional elements … are not protected by copyright, because they are not in the Deposit Copy"); *id.* at *2-3 ("Nor is the field of protected elements enlarged on the theory they are consistent, and harmonize with the work as articulated in the Deposit Copy, and are implied by the way the articulated elements are expressed.  If what is implied is not in the Deposit Copy, it does not have the protection of copyright").

The Stewart Report does not even mention the Deposit Copy, nor does it transcribe, analyze or compare the Deposit Copy with TOL.  Simply put, the Stewart Report and Dr. Stewart's Declaration in opposition to Defendants' summary judgment motion (the "Stewart Declaration") improperly compare TOL to the LGO Recording.

Dr. Stewart's deposition testimony confirmed that he improperly compared TOL to the LGO Recording.  He admitted that, when he compares two compositions, he simply assumes the compositional elements on the commercial recording correspond to what is protected by copyright, rather than looking to what actually has been registered for copyright by the copyright owner. (Zakarin Decl. at Exhibit 3, 30:10-32:8).  Dr. Stewart also admitted that he does not transcribe the actual copyrighted work as reflected in the Deposit Copy but instead listens to a particular, commercially-released recording of the songs at issue and then transcribes the commercial recordings (or portions of them) into musical notation.  (*Id.* at 22:3-24:5).

2

In fact, Dr. Stewart admitted at his deposition that he could not recall whether he even reviewed the Deposit Copy before authoring his original June 2015 report.  (*Id.* at 80:15-82:24). While Dr. Stewart offered that he might have considered the Deposit Copy "at some point" before ultimately authoring the Stewart Report, the Deposit Copy was plainly irrelevant to his opinion, as he admitted that he "didn't include [the Deposit Copy] explicitly in [his] analysis."  (*Id.*).

As will be explained below, because the Stewart Report focuses on a comparison of TOL to the LGO Recording, rather than the actual, copyrighted work at issue, it is irrelevant and the product of improper and unreliable methods in violation of Rule 702.  It should therefore be excluded under *Daubert*.

Moreover, as discussed more fully below, further fundamental flaws exist with Dr. Stewart's proposed testimony.  For example, Dr. Stewart cannot opine on the ultimate legal question as to whether certain musical elements in LGO qualify for copyright protection.  Likewise, Dr. Stewart's opinions – which appear only in the Stewart Declaration but not in the Stewart Report – that LGO, or constituent elements of it, are "unique," "distinctive," "uncommon," and "unusual" also must be excluded.  Beyond the fact that none of those opinions appears in the Stewart Report, the opinions contained only in the Stewart Declaration also contradict Dr. Stewart's prior testimonial admissions, represent classic *ipse dixit* and are undermined by Dr. Stewart's failure to engage in any "prior art" inquiry or analysis, or to eliminate commonplace musical elements from his analysis.

With respect to Dr. Stewart's failure to conduct any prior art analysis in the Stewart Report, he attempted to retroactively cure this failure at his deposition by claiming he had asked "around three to five" "musician friends" if they could think of "other songs like these."  (Zakarin Decl. at Exhibit 3, at 261:13-267:15, 272:8-11).  Yet, Dr. Stewart was unable to "recall exactly whom [he]

asked" or any specifics regarding those conversations.  (*Id.*).  Such "anecdotal" analysis is unreliable and improper and should be excluded.

In addition, Dr. Stewart's analysis of the vocal melodies should be excluded because, in comparing the works, he concededly – and improperly – deleted pitches and altered the melodic sequences in order to create the appearance of similarity.  Thus, his analysis of the vocal melodies is not the product of reliable methods and principles.

Finally, Plaintiffs could not fix the flaws in the Stewart Report by "supplementing" the report at his deposition and cannot now "fix" those flaws by having him belatedly testify as to a comparison between TOL and the Deposit Copy.  As discussed below, Rule 26(a)(2)(B) of the Federal Rules requires a testifying expert witness to provide a written report "if the [expert] witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  Dr. Stewart is being proffered as such an expert.  Further, the written report must include, among other things, "a <u>complete</u> statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them."  Rule 26(a)(2)(B)(i)-(iii) (emphasis added).  The Stewart Report does not include a complete statement – let alone any statement – regarding the Deposit Copy because Dr. Stewart compared TOL only to the LGO Recording.  Under Rule 37(c)(1), any attempt by Dr. Stewart to provide testimony that makes a comparison between TOL and the Deposit Copy that does not appear in the Stewart Report should be excluded.

Accordingly, for the reasons shown below, consistent with Rule 702, *Daubert* and Rules 26(a)(2)(B) and 37(c)(1), the Stewart Report should be excluded, and Dr. Stewart should not be

permitted to offer testimony at trial that purports to compare TOL with the Deposit Copy of LGO, a comparison that the Stewart Report does not make.

## ARGUMENT

### I.    LEGAL STANDARD

An expert witness is qualified to testify only if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods" and (d) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Plaintiffs, as the proponent of Dr. Stewart's proposed expert testimony, as embodied in the Stewart Report, bear the burden of establishing its admissibility by a preponderance of the evidence.  *See Daubert*, 509 U.S. at 592-93 & n.10; *Zaremba v. GMC*, 360 F.3d 355, 358 (2d Cir. 2004).

Central to the inquiry here, "it is critical that an expert's analysis be reliable at every step," and that an expert's opinion be based on actual facts and data.  *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002).  Here, the Stewart Report compares TOL not with the copyrighted version of LGO, as reflected in the Deposit Copy, but with an entirely different work – the LGO Recording– which contains elements nowhere reflected in the Deposit Copy.  Where, as here, an expert offers an opinion that compares "apples to oranges," the opinion must be excluded as irrelevant and unreliable.  *E.g.*, *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 354 (S.D.N.Y. 2003).  Likewise, expert testimony, like the Stewart Report, that "rests on inadequate factual foundations,

problematic assumptions, or a misleadingly partial selection of relevant facts ... must be excluded under Rule 702." *Davis v. Carroll*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013) (citations omitted).

Further, "even otherwise qualified experts may not simply offer conclusory opinions" because "[c]onclusory opinions are a form of '*ipse dixit*,' and often provide an insufficient basis upon which to assess reliability." *Estate of Jaquez v. City of N.Y.*, 104 F.Supp.3d 414, 426 (S.D.N.Y. 2015), *aff'd*, 706 F. App'x. 709 (2d Cir. 2017) (citations omitted); *see also Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("[a]n expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate") (citation omitted); *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127-28 (2d Cir. 2013) ("speculative or conclusory" expert opinions are "inappropriate") (citations omitted).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Disabled in Action v. City of N.Y.*, 360 F. Supp. 3d 240, 244 (S.D.N.Y. 2019) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also* Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'").

Equally important, "[e]xpert testimony may not usurp the role of the court in determining the applicable law." *Price v. Fox Entm't Grp., Inc.*, 499 F. Supp. 2d 382, 387 (S.D.N.Y. 2007) (citation omitted); *see also Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion") (citations omitted).  Thus, "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see also Williams v.*

*Bridgeport Music, Inc.*, No. 13-cv-6004 (JAK), 2014 WL 7877773, at *9 (C.D. Cal. Oct. 30, 2014), *aff'd sub nom*, *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018) (holding that musicological "opinions are not admissible as to the legal issue that is presented" – *i.e.*, the scope of copyright – and that "how musicologists define 'composition' or make use of copyright deposits cannot be used to determine the meaning of the term 'composition' as it us used in the 1909 Act").

The flaws in the Stewart Report cannot be cured by a retroactive attempt to compare TOL with the Deposit Copy of LGO.  Rule 26(a)(2)(B) of the Federal Rules provides that an expert witness must submit a written report, and the report must include, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them."  Fed. R. Civ. P. 26(a)(2)(B).  "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."  *Ebewo v. Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (citations omitted).

Consistent with the foregoing, "[e]xpert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)."  *In re Kreta Shipping, S.A*., 181 F.R.D. 273, 275 (S.D.N.Y. 1998); *see also Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 98–cv–8272 (RPP), 2003 U.S. Dist. LEXIS 17623, at *5 n.3 (S.D.N.Y. Oct. 2, 2003).  Thus, "courts will not admit supplemental expert evidence following the close of discovery when it 'expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first report,' as doing so 'would eviscerate the purpose of the expert disclosure rules.'"  *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011) (quoting *United States v. Vulcan Society, Inc.*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009)).

Here, the Stewart Report is contrary to every one of these well-established rules.  The Stewart Report does not compare TOL with the copyrighted work at issue – LGO as represented by the Deposit Copy – and should therefore be excluded.  Further, Rules 26(a)(2)(B) and 37(c)(1) preclude Dr. Stewart from testifying to an alleged comparison between TOL and the Deposit Copy, which is not contained in the Stewart Report.  Accordingly, the Stewart Report should be excluded, and Dr. Stewart should not be permitted to testify to an alleged claim of infringement based on a comparison nowhere set forth in the Stewart Report.

As further detailed below, Stewart also should be excluded because he improperly attempts (1) to offer legal conclusions, (2) to provide foundationless *ipse dixit* opinions regarding the "uncommon" and "distinctive" nature of certain elements in LGO, opinions that do not appear in the Stewart Report, and opinions that contradict his earlier admissions and which are not the product of any methods and principles, much less reliable methods and principles, and (3) to compare the melodies in the two works by altering the pitch sequences and deleting notes from them.

## II.   DR. STEWART'S EXPERT REPORT AND ANY TESTIMONY BASED ON IT SHOULD BE EXCLUDED

### A.   Dr. Stewart's Expert Report Improperly Compares TOL To The LGO Recording Instead Of The Deposit Copy And His Testimony Should Therefore Be Excluded

It is undisputed that the Stewart Report compares TOL only to the LGO Recording.  In fact, Dr. Stewart's expert report does not even mention the actual work at issue, the Deposit Copy of LGO, nor compare the Deposit Copy of LGO with TOL.  This Court has already ruled that LGO's copyright is defined and delimited by the written sheet music deposited with and registered by the U.S. Copyright Office.  *See Griffin v. Sheeran*, No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020).  As such, Dr. Stewart's expert report and any testimony he could

offer based on the LGO Recording are utterly irrelevant and barred under Rule 702, *Daubert* and its progeny.

Dr. Stewart's deposition testimony confirmed his improper reliance on the LGO Recording in making his comparison.  Specifically, he admitted that, when he compares two compositions, he simply assumes the compositional elements on the commercial recording correspond to what is protected by copyright, rather than looking to what actually has been registered for copyright by the copyright owner. (Zakarin Decl. at Exhibit 3, 30:10-32:8).  His transcriptions here are similarly based on the LGO Recording, as opposed to the Deposit Copy.  (*See generally* Stewart Report). In short, the Stewart Report compares TOL with elements in a particular recorded performance of LGO that are simply not part of any expression that is protectable by LGO's copyright in the composition, as represented in the Deposit Copy.

In fact, as detailed above, Dr. Stewart admitted that he could not recall even looking at the Deposit Copy before authoring his original June 2015 report. (Zakarin Decl. at Exhibit 3, 80:15-82:24).  The Deposit Copy was plainly irrelevant to and omitted from the Stewart Report, as Dr. Stewart admitted that he "didn't include [the Deposit Copy] explicitly in [his] analysis."  (*Id.*). Again, it is not merely that he did not include it "explicitly in [his] analysis"; the Deposit Copy is not even listed in the materials considered, much less mentioned or compared to TOL in the Stewart Report.

At his deposition, in patent violation of Rule 26(a)(2)(B), despite the absence of any previous reference to or reliance on the Deposit Copy – and only after he received the Ferrara Report, which properly compared TOL to the Deposit Copy – Dr. Stewart contended that the Deposit Copy supposedly "informed [his] work to some extent" and that it "supported" his

conclusions in comparing TOL to the LGO Recording.  (*Id.*; emphasis added).[3]  Yet, however much or little the Deposit Copy supposedly "informed" the Stewart Report, one thing is indisputable: the Stewart Report does not compare TOL with the copyrighted Deposit Copy of LGO, but only with the LGO Recording.

Moreover, Dr. Stewart's transparent attempt to salvage the Stewart Report by pretending that the Deposit Copy "informed" his analysis "to some extent" fails to conform the Stewart Report to *Daubert* and Rule 702.  The copyright of LGO is limited to the Deposit Copy.  It is the only thing the Stewart Report should have considered in opining on whether protectable elements of LGO were embodied in TOL.  Yet, the Stewart Report instead solely compared TOL to a different work, the LGO Recording, emphasizing and relying on the allegedly common elements contained only in the LGO Recording; it did not consider the Deposit Copy at all.

Because Dr. Stewart's apples-to-oranges comparison of the TOL composition to the LGO Recording – which devotes lengthy analysis to elements in the LGO Recording that are nowhere found in the Deposit Copy (*e.g.*, the "bass line" and "drums" in the LGO Recording) – is improper as a matter of law, his expert report and any testimony based on it should be excluded.  As this Court has recognized, because neither of the "bass line" nor the "drums" appears in the Deposit Copy, neither is protected by copyright and neither is the subject of Plaintiffs' infringement claim. *Griffin*, 2020 U.S. Dist. LEXIS 52908, at *3.  Dr. Stewart's comparison of TOL to the LGO Recording is irrelevant, unreliable, prejudicial and likely to confuse the jury.  *E.g.*, *Shatkin*, 727 F.2d at 208 ("an 'apples and oranges' [expert] comparison simply cannot withstand scrutiny");

---

[3] At his deposition, Dr. Stewart noted that he "bought the sheet music for both songs" and "attached them to [his] report."  (*Id.* at 80:15-81:19).  However, the sheet music Dr. Stewart claims to have purchased for LGO does <u>not</u> correspond to the Deposit Copy but is instead a transcription of the LGO Recording.  (*Id.* at 146:23-147:20; Zakarin Decl. at Exhibit 4).  Moreover, contrary to his assertion, the purchased sheet music is not appended to his Report.  (*Id.* at Exhibit 1).

*Baker*, 254 F. Supp. 2d at 354 (expert's "'apples and oranges' comparison" rejected as "neither relevant nor reliable"); *Raskin v. Wyatt Co.*, 125 F.3d 55, 67 (2d Cir. 1997) (expert report that made improper comparisons excluded because it "lack[ed] probative value"); *In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.*, 127 F. Supp. 3d 1306 (N.D. Ga. 2015) (rejecting expert's "apples-to-oranges comparison" as "not sufficiently reliable").  The Stewart Report should be excluded under Rule 702 and *Daubert*.

## III.   IN THE ALTERNATIVE, DR. STEWART'S TESTIMONY MUST BE LIMITED

### A.   Dr. Stewart Should Be Precluded from Offering Legal Conclusions Regarding Substantial Similarity And Protectable Expression

The Stewart Report cannot be retroactively converted into a report that compares TOL with the Deposit Copy of LGO without violating Rules 26(a)(2)(B) and 37(c)(1).  As such, not only should the Stewart Report be excluded, he should be precluded from now offering testimony comparing TOL to the Deposit Copy because no such comparison and no such opinion appears in the Stewart Report.

However, if the Court were to permit Dr. Stewart to offer any testimony, in addition to precluding him from now trying to compare TOL with the LGO Deposit Copy, he also should not be permitted to offer any legal or ultimate conclusions that invade the province of the trier of fact. *E.g.*, *United States v. Scop*, 846 F.2d 135, 139-40, *modified on other grounds*, 856 F.2d 5 (2d Cir. 1988); *United States v. Articles of Banned Hazardous Substances*, 34 F.3d 91, 96 (2d Cir. 1994) ("It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions."); *Price*, 499 F. Supp. 2d at 387 (citations omitted).

As this Court stated in its decision denying Defendants' motion for summary judgment, "[e]xpert musicologists may opine on probative or objective similarities between the works and they can provide guidance by translating musical notation and musical concepts into plain English,

but they may not opine that a defendant's work is substantially similar to the plaintiff's work."
*Griffin v. Sheeran*, 351 F. Supp. 3d 492, 496 (S.D.N.Y. 2019) (citing *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992)); *see also Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 204 n.4 (S.D.N.Y. 2010); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 655 n.122 (S.D.N.Y. 2011).   Nor can an expert musicologist opine that isolated elements within a given musical composition qualify as "protectable expression" because this, too, embraces an ultimate legal question.  *E.g.*, *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 98, 105-106 (2d Cir. 2014) (recognizing that it is the province of the court "to explore the limits of copyright protection" and to "[d]etermin[e] the boundaries of copyright protection"); *McDonald v. West*, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) (concluding, as a matter of law, that certain elements in the plaintiff's musical composition were "not copyrightable"); *Nobile v. Watts*, 289 F. Supp. 3d 527, 534-36 (S.D.N.Y. 2018), *aff'd*, 747 F. App'x 879 (2d Cir. 2018) (concluding, as a matter of law, that certain "scènes-à-faire" in the plaintiff's work were "unprotectible").

Two recent decisions in the Ninth Circuit – *Gray* and *Skidmore* – have focused close attention on the Court's role in strictly limiting infringement analysis to only protectable elements in a musical composition.  *See Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221, at *4-5 (C.D. Cal. Mar. 16, 2020) (explaining that courts have an obligation to "carefully limit[] the scope of copyright protection" and that "[m]usical elements that are 'common or trite' – such as the 'use of a long-short-long rhythm,' '***chord progressions***,' certain 'tempos,' a 'recurring vocal phrase,' repeating 'hook phrases,' the alternating 'emphasis of strong and weak beats,' '***syncopation***,' the use of 'tritones,' or the use of 'basic musical devices in different manners,' – are, accordingly, not protectable") (citations omitted); *Skidmore v. Led Zeppelin*, 952 F.3d 1051,

1069 (9th Cir. 2020) ("Nor does copyright extend to 'common or trite' musical elements … These building blocks belong in the public domain and cannot be exclusively appropriated by any particular author") (citations omitted); *id.* at 1071 ("In view of our precedent and accepted copyright principles, the district court did not commit a reversible error by instructing the jury that a limited set of a useful three-note sequence and other common musical elements were not protectable").[4]

For the avoidance of doubt, while an expert musicologist may offer musicological evidence showing that an element within a given composition is a basic building block of music (such as a common chord progression or syncopation), an expert <u>cannot</u> take the further step and offer the ultimate conclusion that the element is itself "protectable." *See generally Kuhar v. Petzl Co.*, No. 16-cv-0395 (JBS)(JS), 2018 WL 7571319, at *7 (D.N.J. Nov. 27, 2018) ("Despite Federal Rule of Evidence 704(a) permitting an expert to proffer testimony that embraces an ultimate issue to be decided, this ultimate issue rule does not enable an expert to merely tell the jury what result to reach," and the "prohibition on experts testifying as to their own legal conclusions is so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle") (brackets, quotations & citations omitted).

Thus, assuming supporting factual evidence is provided, an expert musicologist may opine that musical elements in issue represent commonplace expression or *scenes-a-faire*.  An expert

---

[4] Once the elements contained only in the LGO Recording are stripped out of the allegedly similar elements identified by Dr. Stewart, the allegedly similar elements shared by TOL and LGO, as reflected in the Deposit Copy, are few, not "virtually identical" and instead represent basic musical building blocks that both *Gray* and *Skidmore* found were unprotectable as a matter of law and available to all.  Because the Stewart Report is premised on the alleged similarity between the LGO Recording and TOL, it does not advance an infringement theory based on a combination of unprotectable elements between TOL and the actual work at issue as reflected by the Deposit Copy.  Were Dr. Stewart to make such an argument now, it would violate Rules 26(a)((2)(B) and 37(c)(1), and it also would fail as the alleged similarities are neither numerous nor sufficiently similar as required for a combination of unprotectable elements in a "thin copyright."

may also be able to search for, identify and draw conclusions about whether the elements at issue exist in prior works or are common to a certain genre (whether alone or in combination). However, the expert cannot take the further step of offering the ultimate conclusion that the elements in issue are either "protectable" or "unprotectable."

Accordingly, to the extent that this Court were to permit Dr. Stewart to offer any testimony in this case at all, he should be precluded from offering any testimony that LGO, or constituent elements within it, are "protectable" expression. Similarly, especially given that the Stewart Report is based solely on the LGO Recording, to the extent he is permitted to testify at all, he should not be permitted to testify that TOL is "substantially similar" to the Deposit copy of LGO, as it is both an improper legal conclusion (*Griffin*, 351 F. Supp. 3d at 496), and it is not based on any opinion contained in the Stewart Report in violation of Rules 26(a)(2)(B)) and 37(c)(1). In light of the foregoing, Defendants submit that Dr. Stewart cannot offer any admissible testimony in this case consistent with Rule 26(a)(2)(B), Rule 37(c)(1) Rule 702 and *Daubert.*

**B.     Dr. Stewart Should Be Precluded From Offering Testimony That LGO
Is "Unique," "Distinctive," "Uncommon," "Unusual" or the Like Because
He Failed to Provide Any Foundation For Any Such Expert Conclusions**

The Stewart Declaration offered opinions nowhere found in the Stewart Report (and which are not founded in the Deposit Copy). He opined: (1) that the harmonic progression in LGO "was not commonplace prior to LGO," (2) that the harmonic rhythm (the "anticipation" of chord changes) in LGO "is distinctive" and (3) that the combination of the harmonic progression and harmonic rhythm in LGO is "not found in prior works." (Zakarin Decl. Exhibit 2, ¶¶ 5, 7, sub-heading B). These "opinions," to the extent that Dr. Stewart should seek to testify as to them, should be excluded for at least three reasons.

### 1.   None Of Dr. Stewart's Opinions Appears In The Stewart Report

In violation of Rules 26(a)(2)(B) and 37(c)(1), none of the opinions expressed by Dr. Stewart in the Stewart Declaration appears in the Stewart Report.  (*See* Zakarin Decl. Exhibit 1). On this basis alone, these opinions should not be permitted at trial.  *E.g.*, *Redmond v. Teledyne Landis Mach.*, No. 15-cv-00646 (MAD/ATB), 2017 WL 2465173, at *7 (N.D.N.Y. June 7, 2017); *Coene v. 3M Co.*, 303 F.R.D. 32, 43 (W.D.N.Y. 2014).

### 2.   Dr. Stewart's Opinions Are Unreliable Because He Conducted No Appropriate Musicological Prior Art Search

The foundation of all three opinions offered by Dr. Stewart in the Stewart Declaration – again, nowhere present in the Stewart Report – that the harmonic progression in LGO "was not commonplace prior to LGO;" that the harmonic rhythm in LGO "is distinctive;" and that the combination of the harmonic progression and harmonic rhythm in LGO is "not found in prior works," requires that Dr. Stewart have conducted an appropriate and reliable prior art analysis. Instead, the Stewart Report confirms he made no such analysis.

The Stewart Report does not identify or discuss any search that Dr. Stewart made for prior art.  The absence of any reference to any search for prior art makes the Stewart Report defective, and the three opinions expressed by Dr. Stewart about LGO have no basis in fact and violate Rules 26(a)(2)(B) and 37(c)(1) because they are opinions that are not reflected in the Stewart Report. *E.g.*, *Johannsongs-Publishing Ltd. v. Rolf Lovland*, No. 18-cv-100009 (AB), 2020 WL 2315805, at *5 (C.D. Cal. Apr. 3, 2020) (excluding musicologist opinions as unreliable, among other reasons, because "critically, the Report expressly admits that [the expert] had 'not yet conducted a prior art investigation.'").

At his deposition, Dr. Stewart attempted to backfill his failure to reference any prior art search in his Report, testifying that he believed he had done enough by relying upon his own

personal knowledge of music and asking "around three to five" "musician friends" if they could think of "other songs like these." (Zakarin Decl. at Exhibit 3, at 261:13-267:15, 272:8-11). Not surprisingly, given the completely unscientific and purely anecdotal supposed search he belatedly claimed to have conducted – but failed to disclose in his Report – when asked for specific facts about whom he spoke with and what was said, Dr. Stewart was unable to "recall exactly whom [he] asked" or any specifics regarding those conversations, much less a single song that was identified or analyzed as a result of this "search." (*Id.*).

Moreover, even if one assumes that any of these supposed discussions occurred, Dr. Stewart's own testimony shows he did not ask about prior art on an element by element basis (nor did he eliminate elements that appear only in the LGO Recording). Instead, according to Dr. Stewart, he merely asked these unidentified individuals whether they could think of other songs that had the same claimed elements in common, as heard in the LGO Recording – *i.e.*, including the drums and bass-line that are not included in the Deposit Copy. (*Id.*)..

Regardless, supposedly quizzing several friends if prior art comes to mind does not remotely qualify as a "reliable" methodology. *E.g.*, *Playtex Prods., Inc. v. P&G*, No. 02 CIV. 8046 (WHP), 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003), *aff'd*, 126 F. App'x 32 (2d Cir. 2005) ("Dr. Minken's conclusion, based on anecdote" – specifically, conversations she had with others – "has not and cannot be tested or verified and has an insufficient reliable foundation to permit it to be considered") (citations omitted); *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 481 (S.D.N.Y. 2001) (excluding expert testimony based on "largely anecdotal" evidence); *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) ("Anecdotal evidence and 'generalized assumptions' are inadequate bases for an expert report") (citation omitted).

Dr. Stewart attempted to further backfill the lack of any prior art search or analysis in the Stewart Report by labeling himself as his "primary source" and crediting his "own knowledge" of music based on his experience as a jazz musician (even as he admitted he was less familiar with Pop and Rock 'n Roll). Dr. Stewart claimed that "the music is in my memory" and that it "might take a matter of minutes" to start and then conclude a prior art search. (Zakarin Decl. at Exhibit 3, 266:23-267:15, 269:2-18).

Dr. Stewart's self-described instant recall of all music was apparently not sufficiently comprehensive as, before he received the Ferrara Report, he failed to come up with a single one of the more than a dozen examples of prior art located through Dr. Ferrara's search reflecting the allegedly similar elements in the Deposit Copy. Nor did he analyze them or reference them in the Stewart Report.

But even assuming that Dr. Stewart's informal consultation with his friends and his reliance on his own memory occurred, they too do not qualify as a "reliable" principle or methodology. Were it otherwise, an expert could simply refer to his or her own knowledge or experience as the foundation for his or her opinion with no ability to test the reliability of such opinions by reference to any objective criteria. *E.g.*, *Zenith Electronics Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005); *Goodness Films, LLC v. TV One, LLC*, No. 12-cv-8688 (GHW), 2014 WL 12780291, at *2 (C.D. Cal. May 19, 2014) ("to the extent [the proffered expert] has provided a basis for his opinion, it is his experience in the movie business. While experience is relevant, standing alone, it is not enough … ").

Courts in this Circuit routinely exclude as unreliable expert opinions based on mere "expertise" or "experience" since such opinions cannot be tested or verified. *E.g.*, *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49 (2d Cir. 2004) (affirming exclusion of expert testimony as

unreliable where expert based his opinions on "his own 'background experience and reading,'" among other reasons, because the expert's theory had not been "tested or subjected to peer review"); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 514 F. Supp. 2d 571, 576 (S.D.N.Y. 2007) (excluding as unreliable expert testimony predicated on the expert's "instinct, an approach that cannot be tested, has no known rate of error, and is not subject to any standards") (citations omitted); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ("an expert basing his opinion solely on experience must do more than aver conclusorily that his experience led to his opinion … Rather, an expert who is relying 'solely on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts'") (quoting Fed. R. Evid 702 Advisory Committee's Note (2000 Amendments) (ellipsis, other citation & quotation omitted)).  The Stewart Report satisfied none of these requirements (as it did not contain any prior art analysis).

Moreover, Dr. Stewart admitted that his supposed prior art inquiry "primarily focused" on songs that had the same "combination" of the chord progression, the drum pattern and the bass-line.  Yet, two of the three elements purportedly considered by Dr. Stewart's supposed prior art search appear only in the LGO Recording, not the LGO Deposit Copy (and the chord progression is a commonplace building block of music, used before and after LGO and not copyrightable by anyone).  (Zakarin Decl. at Exhibit 3, 273:13-23).  LGO did not infringe prior works by using this chord progression and neither did Ed Sheeran infringe LGO (or any of the other works using this chord progression) in creating TOL.

Dr. Stewart thus unwittingly admitted that he never conducted a proper prior art search addressed to the harmonic progression and harmonic rhythm, individual elements that he professed,

without performing the slightest actual inquiry, were "distinctive," "not commonplace" and "not found in prior works." These three opinions proffered by Dr. Stewart have no factual basis, exist in an evidentiary vacuum, are unreliable, violate Rules 26(a)(2)(B) and 37(c)(1) and most importantly, are also demonstrably untrue. They should be excluded.

### 3. Dr. Stewart's Opinions Are Also Unreliable Because They Represent Classic *Ipse Dixit* And Are Not Based On Any Actual Facts Or Data

As noted above, without the benefit of any prior art search (and in the absence of any reference to any prior art search in his Report), Dr. Stewart's declaration in opposition to Defendants' motion for summary judgment opined that certain elements in LGO are "uncommon" or "distinctive." Beyond having no basis in the Stewart Report and Dr. Stewart's admission that he had not actually examined any prior art respecting these individual elements, Dr. Stewart's opinions lack any foundation and instead represent pure *ipse dixit,* providing no objective basis for testing their reliability. *Estate of Jaquez*, 104 F. Supp. 3d at 426; *see also Disabled in Action*, 360 F. Supp. 3d at 244 (district courts are not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Morgens, Waterfall, Vintiadis & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 198 F. Supp. 2d 432, 433 (S.D.N.Y. 2002) ("The Court is not required to admit out of hand, Opinion evidence which is substantially connected to existing data only by the *ipse dixit* of the expert and by subjective conclusions that have not been validated or are not objectively verifiable"); Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'").

19

**4.      Dr. Stewart's Opinions Are Contradicted By His
Prior Statements Or Belied By Indisputable Proof**

**i.      Dr. Stewart Has Admitted The Harmonic
Progression Is "A Common Progression"**

The basic I-iii-IV-V harmonic progression – which appears in LGO and a similar, but

different, progression which Plaintiffs contend appears at times in TOL – is such a common, basic

building block of music that it is taught in elementary guitar method books.  (Zakarin Decl. at

Exhibit 5).  One of those elementary guitar method books states that "dozens of other I-iii-IV-V

songs" predated LGO and that the authors of LGO were "simply writing a song using a <u>common</u>

<u>progression,</u> just like every other professional songwriter does."  (*Id.*; emphases added).  At his

deposition, Dr. Stewart admitted he agreed with this passage from the guitar method book.  (*Id.* at

Exhibit 3, 139:16-141:6).[5]

After counsel cited other compositions identified by the guitar method book that use the

same chord progression, counsel read the following passage from the guitar method book to Dr.

Stewart:  "even though *Let's Get It On* was recorded in 1973 which is after dozens of other I-iii-

IV-V songs were recorded, I firmly believe that Marvin Gaye did not plagiarize this song – he was

simply writing a song using a common progression just like every other professional songwriter

does."  (*Id.* at 138:9-140:2).  Counsel then queried: "Is there <u>anything</u> in that sentence that you

disagree with?"  (*Id.* at 140:13-14; emphasis added).

Dr. Stewart responded as follows: "Well, just on your previous sentence that you read I

would like to say that some of these songs that are listed postdate Let's Get It On, so that needs to

be pointed out.  No, I have not listened to all of them.  <u>But in terms of the sentence you just read,</u>

<u>I don't think I have a problem with that</u>."  (*Id.* at 140:15-23; emphasis added).  Dr. Stewart also

---

[5] Another method book identifies the LGO progression as one of the "most frequent progressions" to start
with a "I" chord followed by a "iii" chord.  (Zakarin Decl. at Exhibit 5).

admitted that the I-iii-IV-V progression had "been used in other compositions prior to *Let's Get It On*," that the I-iii-IV-V progression was "not original" to LGO and "other songs have this chord progression." (*Id.* at 134:4-142:15).[6]

> **ii.     The Harmonic Rhythm At Issue – The "Anticipation" Of Chord Changes – Is An Unprotectable Musical Technique**

The rhythmic anticipation of chord changes is a centuries-old, well-worn musical technique. As the prestigious Berklee College of Music explains, anticipation is "[a] <u>technique</u> of melodic or rhythmic alteration which changes a note that occurs on-the-beat to be played early resulting in syncopation." (Zakarin Decl. at Exhibit 6; emphasis added). In fact, a simple Google search reveals various instructional videos and writings that teach the anticipation technique. For example, the website for the famous guitar manufacturer *Fender* includes an instructional video that teaches "Chord Anticipation." (*Id.* at Exhibit 6).

As *Gray* and *Skidmore* make clear (consistent with well-established law), commonplace musical methods and techniques are not protected by Copyright. *E.g.*, *Skidmore*, 952 F.3d at 1069, 1071; *Gray*, 2020 WL 1275221, at *4-5 (syncopation is not protectable); *McDonald*, 138 F. Supp. 3d at 458 ("Plaintiff cannot own a common musical technique like melisma"); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"). The use of the centuries-old anticipation technique in connection with a commonplace chord progression

---

[6] The Stewart Declaration tried to obscure this admission, pretending that he merely intended to convey that he did not have a "problem" with the statement that Marvin Gaye had not plagiarized the I-iii-IV-V progression. Dr. Stewart cannot contradict his sworn testimony, clear on the record, in a subsequent declaration, especially where his contradictory opinion appears nowhere in the Stewart Report. *E.g.*, *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 191 (2d Cir. 2013); *Richman v. Respironics, Inc.*, No. 08-cv-9407 (LMS), 2012 WL 13102265, at *13 (S.D.N.Y. Mar. 13, 2012).

cannot be monopolized by any composer.  The anticipation technique is unprotectable and Dr. Stewart's professed opinion that its appearance in LGO is unique, distinctive or musicologically significant is objectively untrue.

      **C.**     **Dr. Stewart's Testimony Regarding Alleged Similarities Between The Vocal Melodies Should Be Precluded Because It Is Based On A Faulty Methodology**

In comparing the vocal melodies at issue, Dr. Stewart deleted pitches and altered the melodic sequences in order to create the appearance of similarity.  (Zakarin Decl. at Exhibit 8, ¶¶ 81, 84-87, 95-97).  Further, Dr. Stewart failed to provide any analysis of the rhythmic durations of the pitches in the vocal melodies, presumably because the rhythmic durations of the pitches are significantly different as transcribed in the Stewart Report.  (*Id.* ¶¶ 88-92, 99, 113).  In fact, Dr. Stewart admitted that, to properly notate melodies, one must notate each note in the melody and the rhythmic duration of each note.  (*Id.* at Exhibit 3, 91:20-92:4).  Yet, in service of attempting to find similarities where none exists, Dr. Stewart ignored these requirements.

For these reasons, Dr. Stewart's analysis of the vocal melodies should be rejected, as his analysis is not the product of reliable methods and principles.  *E.g.*, *Francescatti v. Germanotta*, No. 11-cv-5270 (MEA), 2014 WL 2767231, at *13 (N.D. Ill. Jun. 17, 2014) ("We may not compare the melodies in their altered states"); *Johnson v. Gordon*, 409 F.3d 12, 21 (1st Cir. 2005) (affirming grant of summary judgment to defendant and rejecting expert analysis of plaintiff in which he "altered the melody" and "altered the rhythm" of the defendant's song to make it more similar to the plaintiff's song); *see also Warner Bros. Inc. v. American Broad. Cos.*, 654 F.2d 204, 211 (2d Cir. 1981) (rejecting "an analysis which alters the actual sequence or construction of plaintiffs' work in order to achieve a juxtaposition that makes for greater similarity with defendants' work") (citation & internal parentheticals omitted); *Johannsongs-Publishing*, 2020 WL 2315805, at *5-6 (faulting musicologist for ignoring intervening melodic pitches in finding similarity).

## CONCLUSION

It is respectfully submitted that Defendants' Second Motion *In Limine* should be granted.

Dated:  New York, New York
        July 8, 2020

                                PRYOR CASHMAN LLP

                                By: */s/ Donald S. Zakarin*
                                    Donald S. Zakarin
                                    Ilene S. Farkas
                                    Andrew M. Goldsmith
                                7 Times Square
                                New York, NY 10036
                                (212) 421-4100

                                *Attorneys for Defendants Edward*
                                *Christopher Sheeran, Atlantic Recording*
                                *Corporation and Sony/ATV Music*
                                *Publishing LLC*

23