# EXHIBIT 1



**PRYOR CASHMAN LLP**                                    New York | Los Angeles

7 Times Square, New York, NY 10036   Tel: 212-421-4100   Fax: 212-326-0806          www.pryorcashman.com

**Donald S. Zakarin**
Partner
Direct Tel: 212-326-0108
Direct Fax: 212-798-6306
dzakarin@pryorcashman.com

December 20, 2017

**VIA EMAIL**

Pat Frank, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, FL 32301
lawatf@aol.com

   Re:   Griffin, et. al. v. Sheeran, et. al., No. 17-cv-5221

Dear Mr. Frank:

   I write in response to your email dated December 15, 2017 regarding Document Request Nos. 7 and 9 addressed to Mr. Sheeran, which seek, among other things, documents concerning indirect profits from Sheeran's performance of *Thinking Out Loud* — namely, US touring revenues subsequent to the song's release and US "merchandising revenue" during the same time period.

   As you know, Mr. Sheeran objected to these Requests, among other reasons, because they seek information that is not relevant to any party's claim or defense and not proportional to the needs of this case. In addition, no causal nexus exists, and certainly none has been established, between these requests and the plaintiffs' claim of infringement.

   As I am sure you are aware, Section 504 of the Copyright Act permits a plaintiff to recover, in addition to actual damages, "any additional profits of the infringer … that are attributable to the infringement." *See* 17 U.S.C. §§ 504(a) and 504(b). In establishing "additional profits," a plaintiff is required to present proof of the "infringer's gross revenue." *Id.* As the Second Circuit has explained, "gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001). Thus, "[d]amages only remotely or speculatively attributable to the infringement should be precluded," and only in "extremely rare" cases do District Courts allow such claims be tried to a jury. *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, No. 08-cv-7497 (KBF), 2013 WL 5970065, at *2-3 (S.D.N.Y. Nov. 8, 2013) (citations & quotations omitted).

   Accordingly, to obtain discovery regarding concert revenues and merchandising revenues — which are not related to the alleged infringement except in the most attenuated way — the

PRYOR CASHMAN LLP

Pat Frank, Esq.
December 20, 2017
Page 2

plaintiffs must demonstrate a causal nexus between the alleged infringement and the indirect profits at issue. *Id.* at *2; *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) ("a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered"); *Fleuimond v. New York University*, No. 09-cv-3737 (ADS)(AKT), 2011 WL 3273876, at *5 (Jul. 29, 2011) (same). Put differently, to obtain discovery regarding indirect profits and ultimately submit the issue to a jury, "there must first be a demonstration that the infringing acts had an effect" on the profits at issue. *Mackie*, 296 F.3d at 915.

Here, your clients' discovery demand ignores the burden imposed on them in seeking discovery of what is at best, indirect and attenuated "profits" allegedly attributable to the claimed infringement. Instead, the requests simply assume satisfaction of the burden without demonstrating any entitlement to the information sought and this is a fatal defect.

For example, in the "Jurisdiction" section of the complaint, plaintiffs allege, in wholly conclusory fashion, that "[t]he Defendants have generated touring revenues" from Mr. Sheeran's performance of *Thinking Out Loud* and that Mr. Sheeran conducts "systematic and continuous business in New York" because he allegedly sells "merchandise" in New York. *See* Complaint ¶¶ 6, 13. This is the sum total of the allegations regarding touring and merchandising and there is not a single fact alleged, only the foregoing conclusion.

Perhaps seeking to supplement the utter absence of facts in your clients' complaint, in your email, you advance a further conclusion (stated as a mere "belief") that a "significant portion" of Mr. Sheeran's touring revenues derives from the success of *Thinking Out Loud*, and you further "posit" that *Thinking Out Loud* played "some role" in his success. Again, beyond offering your non-expert conclusions, nowhere do you provide any factual basis for these beliefs. Have you conducted a survey or do you have any logical factual basis to show that the hundreds of thousands of people who purchased tickets to attend an Ed Sheeran concert did so to hear *Thinking Out Loud*, a song they can stream any time or hear on the radio? Do you have any basis for assuming that people purchased tickets to Ed Sheeran concerts not to hear Mr. Sheeran's performance, but rather to hear him perform the allegedly infringing portions of *Thinking Out Loud* rather than the other portions of that song (including his lyrics, melody and performance) or, for that matter, any of the dozens of other songs he has written? There is no basis provided for your conclusions and we are not going to produce any such collateral documents without such a showing (which I do not believe you can make).

Your email also conspicuously omits any purported basis for obtaining discovery regarding the "merchandising" revenue. To begin with, you have not even identified any connection at all between merchandising and any alleged infringement of *Let's Get It On*. What sort of merchandise do you believe has any linkage to any infringement of your clients' song and what is the supposed evidentiary basis for such linkage? You simply offer up your *ipse dixit*, bereft of any facts to support it and assume that it is sufficient to entitle you to discovery of merchandising revenues. To be clear, the conclusory and speculative assertions in the complaint

# PRYOR CASHMAN LLP

Pat Frank, Esq.
December 20, 2017
Page 3

and your email do not suffice to establish an actual causal link between the alleged infringement and any merchandising revenue. We therefore stand by our objections to Request Nos. 7 and 9.

Finally, while you have not remotely shown any entitlement to the information you seek, it is worth noting that, in a case in which considerably more compelling facts were advanced, the Court rejected an attempt to discover information regarding indirect profits in the form of concert revenues based on the assertion that the alleged infringer publicly performed the copyrighted work at issue (*i.e.*, the plaintiff's song), noting that the concert venues had obtained non-exclusive licenses from a Preforming Rights Organization ("PRO"), which is plainly the case here as well. *See Gray v. Perry*, No. 15-cv-5642 (CAS), 2017 WL 1240740 (Apr. 3, 2017). Hence, there was no infringing use in the concerts as the song was licensed for public performance in any event.

Nothing contained herein shall be deemed to be a waiver of our clients' rights and remedies, all of which are expressly reserved herein.

Sincerely yours,

Donald S. Zakarin