UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**KATHERINE TOWNSEND GRIFFIN, *et.al.*,**

**Plaintiffs,**

**vs.** **CASE NO: 1:17-CV-05221**

**EDWARD CHRISTOPHER SHEERAN, *et.al.*,**

**Defendants.**

______________________________/

**PLAINTIFFS' RESPONSE/OBJECTION TO THE DEFENDANTS' MOTION TO PRECLUDE DR. ALEXANDER STEWART FROM TESTIFYING AT TRIAL AND COMPANION MEMORANDUM OF LAW**

**COME NOW**, the Plaintiffs, collectively, who, by and through their undersigned counsel(s), and pursuant to the *Federal Rules of Evidence, Rule 702*, hereby proffer the following Response/Objection to the Defendants' Motion to Preclude Dr. Alexander Stewart from Testifying at Trial and Companion Memorandum of Law:

## BACKGROUND

1. The enumerated Defendants currently seek an Order from this Court which would wholly exclude the Plaintiffs' musicology expert, Dr. Alexander Stewart (hereinafter to be referred to as "Dr. Stewart"), from participating in the trial of this case, as scheduled for November of 2020.

2. The gravamen of the Defendants' asserted rationale for said exclusion is predicated upon several bases—first, that the Plaintiff's expert allegedly omitted certain aspects of his opinions attendant to this case from his preliminary expert report; second, that the Plaintiff's expert allegedly failed to consider the deposit

copy of "Let's Get It On" in his analyses; third, that the Plaintiff's expert failed to conduct an appropriate prior art analysis; and fourth, that the Plaintiff's expert's methodologies upon which his findings/opinions attendant to this litigation are based is, in some manner, flawed and, accordingly, unreliable.

3. The Defendants' motion at issue herein is without basis for an abundance of reasons—First, the Plaintiff's preliminary expert report proffered in connection with this case was comprehensive and, even assuming—*arguendo*—that there were, in fact, actual material omissions, the Defendants have had ample opportunity for clarification as to Dr. Stewart's opinion via deposition and voluminous materials exchanged regarding said opinions/findings via summary judgment motion practice and, by way of addendum, Dr. Stewart has, in fact, actually evaluated and/or analyzed the deposit copy for "Let's Get it On" in connection with his labors on the instant case. (Please refer again to Stewart Declaration).

4. Second, while the Defendants characterize the subject motion as a motion in *limine* and/or *Daubert* motion, the reality is that the motion at issue is merely an attempt to re-litigate their unsuccessful summary judgment motion through an impermissible collateral attack.

5. Third, by virtue of the fact that the Defendants' motion is merely a repackaging of their summary judgment motion, it is dispositive in form and substance and, accordingly, untimely and in derogation of the operative Case Management and Scheduling Order. (Doc. 32).

6. Fourth, the subject motion improperly conflates the issues of evidentiary admissibility and evidentiary sufficiency.

7. Fifth, to the extent that the motion was construed as an actual *Daubert* motion and/or motion *in limine*, it is legally deficient because it does not even attempt to identify with any measure of required specificity what particular opinions and/or findings from Dr. Stewart's reports, deposition, and previous declarations they actually seek to exclude.

8. Sixth, said motion incorrectly/falsely states that Dr. Stewart did not perform a prior art analysis.

9. Seventh, while attempting to assert that Dr. Stewart failed in some way to abide by time-honored and accepted standards of musicological analysis in connection with his work on this case, the Defendants conspicuously fail to identify and/or establish **any** standards and/or criteria for musicologists from which Dr. Stewart has been alleged to have deviated.

10. For all of the foregoing reasons which shall be discussed at further length herein below, the Defendants' motion in question should be summarily denied.

**RELEVANT TIMELINE**

11. Dr. Stewart was originally engaged by the Law Offices of Frank & Rice, P.A., on or about April 21, 2015, to provide a pre-suit analysis of the similarities between the compositions identified as "Let's Get It On" and "Thinking Out Loud". (Please refer to Declaration of Dr. Alexander Stewart, as filed contemporaneously herewith).

12. In connection with that that preliminary pre-suit analysis, Dr. Stewart was furnished with the audio recordings of the respective compositions as well as preliminary analyses conducted on behalf of the enumerated Defendants by both Anthony Ricigliano and Lawrence Ferrara, which included ten (10) separate examples of what was contended to be prior art by the Defendants. (Please refer again to Stewart Declaration).

13. Dr. Stewart analyzed and specifically transcribed each and every example of supposed prior art proffered by the Defendants in connection with my preliminary pre-suit analysis and provided the same to counsel(s) on or about June 4, 2015. (See Stewart Declaration).

14. In addition to undertaking a rigorous analysis of the ten (10) alleged examples of prior art provided by the Defendants prior to the inception of the instant lawsuit, on his own initiative, Dr. Stewart undertook a separate prior art investigation which included consulting with various musicians with whom he performed, as well as fellow members of the faculty in the Music Department of University of Vermont.

15. The instant lawsuit was commenced after the exchange of pre-suit reports by the respective Parties herein, on or about July 11, 2017.

16. On or about October 9, 2017, this Court issued a Case Management and Scheduling Order (Doc. 32) contemplated notice of filing for dispositive motions to be given prior to the case status conferenced set for June 29, 2018.

17. On or about May 30, 2018, gave a deposition in this case in which he was asked extensively about the issue of his prior art analysis and discussed the matter at length between pages Two-Hundred and Sixty-One (261) through Two-Hundred and Seventy-Four (274). (Please refer to Stewart Declaration, **Exhibit "1"**).

18. During the aforementioned deposition, Dr. Stewart identified consulting with approximately five (5) fellow musicians and/or music professors regarding prior art (See Stewart Declaration, **Exhibit "1"**, Page Two-Hundred and Seventy (270), including, but not limited to, the head of the Guitar Department at the University of Vermont.

19. After litigation was commenced, Dr. Stewart requested—and received—a true copy of the "deposit copy" of the song entitled "Let's Get It On" on November 9, 2017. (See Stewart Declaration).

20. The next month, on or about December 8, 2017, a report was submitted to the Defendants regarding Dr. Stewart's findings pursuant to the *Federal Rules of Civil Procedure, Rule 26*. (Please refer again to Stewart Declaration, **Exhibit "2"**).

21. Said report contained an analysis of prior art and also took into consideration the similarities between both of the compositions, as embodied by the audio recordings of the respective songs, as well as the sheet music of the same (including the deposit copy of "Let's Get It On").

22. At Dr. Stewart's deposition he was asked extensively by the legal representatives of the enumerated Defendants regarding his analysis of the deposit copy at his deposition of May 30, 2018, in excess of two (2) years ago. (Please refer again to Stewart Declaration, **Exhibit "1"**, Pages Twenty-Eight (28), Thirty (30), Eighty-One (81), Eighty-Two (82), Eighty-Three (83), Eighty-Four (84), Eighty Five (85), Eighty-Six (86), Eighty-Eight (88), Eighty-Nine (89), One-Hundred and Eighteen (118), One-Hundred and Twenty-Two (122), One-Hundred and Twenty-Seven (127), One-Hundred and Thirty (130), One-Hundred and Thirty-One (131), One-Hundred and Thirty-Three (133), One-Hundred and Thirty-Four (134), One-Hundred and Thirty-Five (135), and One-Hundred and Forty-Six (146)).

23. Following Dr. Stewart's deposition, on June 15, 2018, the Defendants filed their first letter motion indicating to this Court their anticipated motion for summary judgment (Doc. 49).

24. On July 27, 2018, the Defendants filed their first motion for summary judgment and supporting documentation (Doc. 66).

25. On or about September 7, 2018, the Plaintiffs filed their Memorandum of Law in Opposition to Summary Judgment (Doc. 80).

26. In connection with the Memorandum of Law in Opposition to Summary Judgment, the Plaintiffs also filed the Declaration of Dr. Alexander Stewart (Doc. 81). (Please refer to a true copy of said document, as appended to the Declaration of Dr. Alexander Stewart, **Exhibit "3"**).

27. Responsive to the Plaintiffs' oppositional papers to the Defendants' motion for summary judgment, the Defendants never filed a motion to strike and/or, alternatively, a motion *in limine* with respect to the declaration and/or report of Dr. Stewart, nor the opinions contained therein.

28. On or about January 3, 2019, this Court entered an Order Denying the Defendants' motion for summary judgment, stating with respect to the disputed issue of the scope of copyright protection (*i.e.*, deposit copy vs. sound recording) that "The question whether this Circuit would concur is open, and unnecessary for decision at this point, for the outcome of the motion is the same under either view". (Doc. 93).

29. The Defendants filed their First Motion *in Limine* with respect to eliciting testimony regarding the sound recording of "Let's Get It On" on February 21, 2019. (Doc 109).

30. This Court stayed the case pending the outcome of the rehearing *en banc* in the case of *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). (Doc. 116).

31. This Court entered an Order on the Defendants' First Motion *in Limine*

on March 24, 2020, holding that the sound recording of "Let's Get It On" would be inadmissible "in any way which might confuse the jury into thinking it represents what is protected by copyright". (Doc. 121).

32. On or about July 8, 2020, the Defendants filed a Second Motion *in Limine* seeking the wholesale exclusion of Dr. Stewart's testimony and/or participation in the instant case apparently deriving from the Court's ruling on the Defendants' First Motion *in Limine*. (Doc. 126).

**DR. STEWART HAS PROVIDED COMPREHENSIVE ANALYSIS REGARDING THE SIMILARITIES BETWEEN THE DEPOSIT COPY FOR "LET'S GET IT ON" AND "THINKING OUT LOUD" THROUGHOUT MULTIPLE PHASES OF THIS LITIGATION**

33. As unequivocally set forth in Dr. Stewart's Declaration, as filed with this Response/Objection, Dr. Stewart requested—and received—the deposit copy of "Let's Get It On" well before submitting his *Rule 26* report so that it could be taken into consideration in connection with his analysis.

34. In terms of performing a thorough musicological analysis of the music, it was critical that Dr. Stewart understand the nature of the deposit copy (or lead sheet) within the context of the composition of "Let's Get It On"—per Page 469 of the *Harvard Dictionary of Music*, a lead sheet is defined as "in jazz and popular music, a shorthand score or part". (See Frank Declaration, at **Exhibit "1"**).

35. Per Oxford Music Online, it was explained that "Unlike classical music or that of Tin Pan Alley and ragtime, which was written down in the form of the score, popular music styles such as blues, country, and rhythm and blues were improvised and only later written down and stored as sheet music. The musical event (a record or

a performance) **thus replaced the score as the defining moment of individual creation** (*Emphasis Supplied*). (See Frank Declaration, at **Exhibit "2"**).

36. The foregoing methods of composition and their relation to the lead sheets/deposit copies are particularly salient herein and inform this case by virtue of the fact that it has been unequivocally established that Ed Townsend and Marvin Gaye recorded "Let's Get It On" **well before any deposit copy ever existed**. See *Sounding Out Pop, Analytical Essays in Popular Music, Marvin Gaye as Vocal Composer*. (See Frank Declaration, at **Exhibit "3"**).

37. Dr. Stewart's analysis, necessarily, took into consideration the deposit copy, the composition, as embodied in the sound recordings, and the sheet music in question. If anything, this is a more rigorous, competent, and/or thorough analysis.

38. In this instance, Dr. Stewart's report has been in the possession of the Defendants since December 8, 2017. Thereafter, on May 30, 2018, Dr. Stewart presented at the offices of the Defendants' legal counsel(s) for the purposes of having his deposition taken and at which, quite notably, the Defendants had ample opportunity to inquire as to any and all aspects of Dr. Stewart's findings/opinions.[1]

39. Notwithstanding the *Rule 26* report (Stewart Declaration, **Exhibit "1"**), Dr. Stewart's deposition (Stewart Declaration, **Exhibit "2"**), the Defendants were also furnished with Dr. Stewart's findings in his Declaration offered in opposition to the Defendants' motion for summary judgment approximately two (2) years ago. (See Stewart Declaration, **Exhibit "3"**). Notably, in said Declaration, Dr. Stewart concluded without dispute that the deposit copy of "Let's Get It On" is based on the composition

[1] It is also abundantly worthy of note and/or emphasis herein that the Defendants availed themselves of less than six (6) hours actual deposition time and were afforded every opportunity to continue to inquire. (Please refer again to Stewart Declaration, **Exhibit "1"**).

embodied in the sound recording, but also " a direct transcription" of the 'single' version of the Marvin Gaye recording because the vocal melody in the lead sheet matches Marvin Gaye's recording to such a precise degree". (See Stewart Declaration, **Exhibit "3"**).[2]

40. Significantly, at no time during the several years that have elapsed since being on notice of Dr. Stewart's findings have the Defendants ever previously sought to challenge the admissibility of the same.

41. Tellingly, without stating as much explicitly, the Defendants cite a host of cases that they contend resulted in evidence being excluded so as to avoid the prospect of undue prejudice in support of the tacit premise that the Defendants, themselves, are somehow prejudiced herein by virtue of Dr. Stewart having opinions of which they were fully aware and have had ample opportunity over the course of several years to explore—these cases are inopposite.

42. By way of illustration, in the case of *Ebewo v. Martinez*, 309 F.Supp. 2d 600, 607 (S.D.N.Y. 2004), the Defendants cite the same for the proposition "to prevent the practice of 'sandbagging' an opposing party with new evidence". (Doc. 128, Page Fourteen (14)).

43. In the *Ebewo* case, the Plaintiff improperly attempted to overcome a summary judgment motion by the opposing party by utilizing the affidavit of a physician who had never been disclosed as a witness at all on the Plaintiff's *Rule 26* disclosures in that case. See *Id.*

44. To equate and/or liken the scenario which presented in *Ebewo* (*i.e.*,

---

[2] Also abundantly worthy of emphasis within the context of the Defendants' arguments herein is the fact that, despite being engaged to represent the enumerated Defendants in 2015, the first time Dr. Ferrara even even mentioned/referenced the deposit copy for "Let's Get It On" in any of his previous analyses was in his third report in 2018, three (3) years after his initial retention. (Doc. 67, **Exhibit "3"**).

introducing undisclosed expert witnesses after the close of discovery in connection with dispositive motion practice), or any of the other cases improvidently cited by the Defendants to the circumstances which present in the instant case is puzzling, at best.

**THE MOTION AT ISSUE IS A THINLY-VEILED ATTEMPT TO RE-LITIGATE THE MOTION FOR SUMMARY JUDGMENT**

45. The *Federal Rules of Evidence, Rule 702*, governs the admissibility of expert testimony and states that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles reliably to the facts of the case".

46. The Southern District Court of New York has previously opined that "evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds". *Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. September 25, 1998).

47. This specific Court has previously stated that the "inquiry envisioned by Rule 702 is....a flexible one, and the gatekeeping inquiry must be tied to the facts of a particular case". *Shea v. Long Island Railroad Company*, No. 05 Civ. 9768 (LLS) (S.D.N.Y. May 21, 2009) (citing *Amorgianos v. National Railroad Passenger Corporation*, 3030 F.3d 256, 266 (2d Cir. 2002).

48. In this instance, the Defendants have failed to identify with any manner of

clarity what, if any, prejudice they would unduly suffer is Dr. Stewart were allowed to proceed with his testimony.

49. Further, the Defendants have failed to articular any manner of prospective jury confusion would ensue if Dr. Stewart were permitted to testify or, similarly, why any such potential jury confusion could not be cured by tightly-crafted jury instructions.

50. Additionally, the Defendants have failed to identify/establish what the alleged governing/prevailing standard of reliable musicological analysis from which Dr. Stewart, a musicologist who has been previously admitted as an expert in multiple other cases, allegedly has deviated—in lieu of the same, the Court has been presented with a duplicate copy of the previous expert report of the Defendants' musicologist, Dr. Ferrara, who, as expected, disagrees with the validity of Dr. Stewart's analysis. (Doc. 127, **Exhibit "8"**)[3]

51. If the inclusion of Dr. Ferrara's report was intended by the Defendants to implicitly establish/prove some manner of prevailing professional standard for musicology analysis, it falls short in that regard.

52. The inherent disagreement in methodology and conclusions by the respective musicologists involved in this case does not give rise to the presumption that one (1) of the other should be disqualified and/or excluded from providing testimony.

53. In short, these issues raised by the Defendants in connection with the subject motion are matters of evidentiary sufficiency and/or weight, not admissibility. As such, they are not appropriately adjudicated via motion *in limine* as these are issues clearly

[3] This identical document was previously presented to this Court in connection with the Defendants' summary judgment motion. (Doc. 67, **Exhibit "3"**). The Defendants also rely on the identical combination of deposition pages excerpted/culled from Dr. Stewart's deposition in support of their motion for summary judgment—previously the exhibit was identified as Doc. 67, **Exhibit "7"**. Now, for purposes of the instant motion, it is identified as Doc. 127, **Exhibit "3"**).

within the province of a jury in its capacity as the designated finders of fact attendant to these proceedings.[4]

54. In previous cases, the Federal Courts have taken a particularly dim view of scenarios wherein parties attempt to re-litigate and/or preserve dispositive motions under the guise of motions *in limine*—to wit, "Defendant's motion is more a motion for judgment on the pleadings or for summary judgment…than it is a motion *in limine*. The time for filing such dispositive closed, however, and Defendant cannot evade this Court's summary judgment deadline simply by captioning its dispositive motion in a creative manner". *Goldman v. Healthcare Management Systems, Inc.*, 559 F.Supp. 2d 853, 873 (W.D. Mich. 2008); see also *Louzon v. Ford Motor Company*, 718 F.3d 556 (6th Cir. 2013).

55. Fully cognizant of the fact that in conjunction with their previous motion for summary judgment, they did not attempt to challenge the validity of Dr. Stewart's analyses utilized in overcoming that motion, the Defendants now seek to avail themselves of another "proverbial" bite at the summary judgment apple having previously waived the same.

**DR. STEWART DID, IN FACT, CONDUCT A SUBSTANTIVE PRIOR ART ANALYSIS[5]**

56. Notwithstanding the Defendants' failure to identify what it would contend to be an appropriate prior art analysis by a musicology expert in copyright litigation, the

---

[4] To the extent that the motion *in limine* is recognized as a repackaged summary judgment motion (as demonstrated in no small part by identical exhibits), and, as such, dispositive in character, the motion is untimely pursuant to the Case Management and Scheduling Order of October 9, 2017 which required that said motion be brought on or before June 29, 2018. (Doc. 32).

[5] Ironically, after Dr. Ferrara proffered the initial ten (10) songs which the Defendants posit as prior art in 2015, over the course of the next three (3) years, Dr. Ferrara could only find a mere additional three (3) songs which he asserted constituted prior art which, to all appearances, bore more resemblance to one (1) another then to "Let's Get It On". (Doc. 81).

reality is that Dr. Stewart actually did a comprehensive prior art analysis.

57. As set forth in Dr. Stewart's *Rule 26* report he transcribed and analyzed the alleged prior art that the Defendants claimed constituted the same. (See Stewart Declaration, **Exhibit "2"**).

58. Dr. Stewart, similarly, spoke at length about prior art during his deposition of May 30, 2018 and identified that not only did he analyze the "prior art" examples relied upon by the Defendants, but he also consulted multiple musicologist colleagues and fellow musicians, as well as relied in part upon his own knowledge derived from decades of scholarship in musicology and performance. (See Stewart Declaration, **Exhibit "1"**).[6]

## CONCLUSION

59. The motion at issue is the Defendants' attempt to silence Dr. Stewart with the idea being that without Dr. Stewart the Plaintiffs cannot make a case for copyright infringement at trial and, as such, this nettlesome matter might be otherwise dispensed with *vis a vis* motion practice.

60. Given that the clear similarities between the two (2) compositions at issue herein have been the subject of comparisons unfavorable to the Defendant in the public domain—on June 23, 2014, writer Jason Lipshutz published a review of the Defendant's,

[6] While perhaps moot at this juncture by virtue of the record evidence that shows clear analysis of prior art and conducting his own investigation in consultation with colleagues in the music field, it is worthy of note that the Defendants attempted to debunk Dr. Stewart's personal knowledge as to prior art at the close of Dr. Stewart's deposition on May 30, 2018. The Defendants played nine (9) audio musical selections that constituted some of the previous prior art identified by the Defendants. Presumably the rationale for the exercise was to impugn Dr. Stewart's personal knowledge and/or prior art analysis. However, this exercise was unsuccessful (which is presumably why it has not been alluded to since by the Defendants and has been, conspicuously, omitted from Dr. Stewart's depositional excerpts culled by the Defendants in support of their motions for summary judgment the current motion *in limine* before this Court) in that Dr. Stewart was able to identify all of the selections played for him.

Ed Sheeran's, "Thinking Out Loud", for *Billboard Magazine,* in which he characterized the Defendant's song as "a sleek update of Marvin Gaye's 'Let's Get It On'" (See Frank Declaration, **Exhibit "4"**); on March 11, 2015, writer Andrew Unterberger, published an article in *Spin Magazine* entitled "'Blurred Lines' Isn't Even the Biggest Marvin Gaye Ripoff of This Decade. Ever Heard of Ed Sheeran's 'Thinking Out Loud'?" (See Frank Declaration, **Exhibit "5"**)—it is certainly understandable that the Defendants would avail themselves of any and all procedural devices to avoid trial. However, because the Defendants have failed to articulate any colorable basis and/or arguments which would demonstrate that Dr. Stewart's testimony is inadmissible, the motion at issue should be denied.

61. In addition to all of the foregoing and/or enclosed materials which the Plaintiffs would, respectfully, contend preclude the entry of an Order granting the subject motion *in limine*, this Court's recent ruling of March 24, 2020 with regard to the Defendants' First Motion *in Limine* pertaining to the sound recording and deposit copy of "Let's Get It On" (Doc. 121), does not suddenly have the operative legal effect of invalidating any of Dr. Stewart's opinions/findings attendant to this case, nor does it undercut the methodologies utilized in arriving at the same.

62. Presumably, if any such flaws and/or infirmities existed in that regard, the Defendants would have challenged the admissibility of said findings/opinions two (2) years ago in a timely manner when they initially brought their summary judgment motion.

**WHEREFORE**, the Plaintiffs, respectfully, implore this Court to Deny the Defendants' Second Motion *in Limine*.

**DATED:** July 22, 2020

**FRANK & RICE, P.A.**

By: /s/ Patrick R. Frank, Esq.
Patrick R. Frank, Esq.
Keisha D. Rice, Esq.
Katherine Viker, Esq.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184
Attorney(s) for Plaintiffs