

**ORIGINAL**

# PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569 — Tel: 212-421-4100 Fax: 212-326-0806

www.pryorcashman.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/3/20

**Donald S. Zakarin**
Partner
Direct Tel: 212-326-0108
dzakarin@pryorcashman.com

**MEMO ENDORSED**

August 21, 2020

VIA ECF

Hon. Louis L. Stanton
Daniel Patrick Moynihan
United States Court House
500 Pearl Street
New York, NY 10007-1312

Re:   Griffin v. Sheeran, 17-cv-5221 (LLS)

Dear Judge Stanton:

We represent the Defendants in the above matter and write in response to the letter of Mr. Frank dated August 20, 2020 opposing Defendants' request, pursuant to Rule 2.A of Your Honor's Individual Practices, to arrange a pre-motion conference, so that Defendants may move to bifurcate the trial of this action between liability and damages phases pursuant to Fed. R. Civ. 42(b).

Mr. Frank opposes bifurcation because he claims overlapping witnesses supposedly exist: (1) Ed Sheeran's manager, Stuart Camp; (2) representatives of Atlantic Records and Sony/ATV; and (3) Dr. Stewart (Plaintiffs' musicologist whose testimony this Court has already limited, and whom Mr. Frank claims supposedly would have evidence to offer on apportionment).

First, Mr. Frank contends that he wishes to question Ed Sheeran's management (Stuart Camp) regarding the independent creation of TOL and Ed Sheeran's supposed knowledge of LGO. But Mr. Frank knows, from the deposition of Ed Sheeran, that it is undisputed that Ed Sheeran was aware of LGO. As such, that issue is nonexistent, and no testimony from Mr. Camp is necessary or appropriate (nor would Mr. Camp have any personal knowledge in any event). As to the independent creation of TOL, Mr. Frank also knows, again from the deposition of Ed Sheeran, that TOL was created in February 2014 at Mr. Sheeran's home by Amy Wadge and Ed Sheeran, the authors of TOL, with no one else present. Mr. Camp was not there and has no competent evidence to provide regarding the creation of TOL.

Second, Mr. Frank pretends that representatives of Atlantic Records and Sony/ATV would also supposedly have knowledge of the independent creation of TOL. But in addition to the fact that both Atlantic Records and Sony/ATV are not even the companies with whom Ed Sheeran has contracts (his contracts are with United Kingdom companies), again, Mr. Frank knows, from the depositions of Ed Sheeran, Atlantic Records and Sony/ATV, that no one but Amy Wadge and Ed Sheeran were present when TOL was composed. There are no other witnesses who have any knowledge or information relating to the creation of TOL. Representatives from Atlantic and

*[Handwritten memo endorsement:]* Defendants may move, with no further prelude, for "bifurcation" of the trial, to the extent that the issues of liability would be tried separately, and a verdict taken, before (if that verdict is for plaintiff(s)) trial of the separate issues of damages, to the same jury. Louis L. Stanton 9/3/20

**PRYOR CASHMAN LLP**

Sony/ATV (and Stuart Camp) have knowledge only relating to the income earned in the United States from TOL and other damages issues relating to apportionment and deductible costs. Those issues are entirely separate and distinct from any liability issue.

Third, with respect to Dr. Stewart's supposed testimony regarding apportionment, even assuming Dr. Stewart could provide evidence on that topic – his Report does not include a single sentence remotely addressing it – his deeply flawed and largely stricken Report, based largely on elements nowhere found in the LGO deposit copy and on elements that have already been found to be "common musical techniques," cannot possibly provide any basis for an apportionment based only on what is both in the deposit copy and is protectable. But even if he could provide such testimony, it is a topic wholly discrete from liability. In short, if Dr. Stewart were to offer any such testimony, it would likely be either completely inadmissible or could be part of his liability testimony.

With respect to Mr. Frank's attempted distinction of the cases Defendants have cited, he ignores virtually all of the cases that Defendants cited that support bifurcation. *E.g., Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (affirming bifurcation of trial into liability and damages phases since "the two phases involved different types of evidence"); *Zofcin v. Dean*, 144 F.R.D. 203, 205 (S.D.N.Y. 1992) (bifurcating trial into liability and damages phases because the "introduction of evidence offered only to prove damages poses a substantial risk of impairing the jury's objectivity on the liability issue in this case"); *In Design v. K-Mart Apparel Corp.*, No. 87-cv-8397 (AGS), 1996 WL 4122, at *1 (S.D.N.Y. Jan. 3, 1996); *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 630 (N.D. Cal. 1993), *aff'd & rev'd in part,* 35 F. 3d 1435 (9th Cir. 1994). Otherwise, Mr. Frank tries, but fails, to distinguish *Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299, at *24 (C.D. Cal. Sept. 24, 2015), *Walker v. Carter*, 210 F. Supp. 3d 487, 497-98 (S.D.N.Y. 2016), and *Loussier v. Universal Music Grp., Inc.*, 214 F.R.D. 174, 178 (S.D.N.Y. 2003). But his proffered distinctions of the three cases he mentions are no distinction at all. In fact, they support bifurcation in this case.

In regard to *Fahmy,* Mr. Frank pretends that the issue of Egyptian law factored into the Court's decision to grant bifurcation. It did not. In *Fahmy*, the defendants asked the Court to determine in the first instance, before any jury trial commenced, matters relating to Egyptian law. Separately, the defendants requested that trial be bifurcated into distinct infringement liability and infringement damages phases. The issue of Egyptian law had nothing to do with the decision to bifurcate liability and damages. Instead, bifurcation was predicated on the fact that the evidence on the liability issues and damages issues did not overlap, as they do not in this case.

In *Walker,* Mr. Frank contends that liability and damages discovery were also bifurcated whereas here, liability and damages discovery have already been conducted. In fact, that is a further reason why bifurcation of the trial here is even more appropriate: there will be no need to try this case before two different juries precisely because damages discovery here has already been taken (whereas in *Walker* the parties would have needed to try the case on liability and then conduct damages discovery and then conduct a second trial). If Plaintiffs are able to persuade a jury that TOL is infringing, a damage phase before the same jury can be conducted immediately.

**PRYOR CASHMAN LLP**

In that regard, it is worth emphasizing that the Plaintiffs have virtually no evidence supporting infringement. As this Court has ruled, their expert, Dr. Stewart, cannot opine on prior art; he cannot "imply" a bass-line into the deposit copy because there is no bass-line in the deposit copy; and the remaining two elements he has contended are allegedly similar – the chord progression and harmonic rhythm – have already been found by this Court to be "common musical techniques," which mean that they are unprotectable. As for Dr. Stewart's contention that there are supposedly melodic similarities, that contention is based on his concession that he improperly altered the pitches and notes in order to draw similarities where none actually exists.

Mr. Frank also suggests that it is unlikely that this trial will actually go forward in November due to the continuing Covid-19 threat. That may or may not be the case, but it does not bear on whether the trial should be bifurcated. Whenever this case is tried, bifurcation is appropriate for all of the reasons set forth in Defendants' August 10, 2020 letter. Mr. Frank's further suggestion that jurors would have an incentive to find no liability in order to avoid having to continue to hear a damage phase reflects only a mistrust of the jury system and the good faith of jurors in trying to reach the proper result in a case. If Mr. Frank so mistrusts juries, he can always waive his jury demand and avoid the fabricated prejudice he speculates would occur.

Finally, Mr. Frank tacitly admits why he hopes to combine the liability and damages phases of trial: he hopes to introduce evidence in the liability phase of Ed Sheeran's artistic and financial success and the "multi-million dollar corporations," as if that were an issue on either liability or damages. Plaintiffs have pursued this infringement action for three years based on a deeply flawed report by Dr. Stewart, a report that ignores prior art (because prior art establishes that the elements in TOL that are allegedly similar to LGO are unprotectable and commonplace musical building blocks that were used long before LGO), and on elements nowhere found in the LGO deposit copy. Instead, Mr. Frank hopes to prejudice the jury by offering inadmissible evidence (such as hearsay press articles, Ed Sheeran's wealth and other accusations against Ed Sheeran that have never been found to be infringements).

This case is consistent with the cases Defendants cited in their August 10, 2020 letter and Mr. Frank's distinctions are not distinctions at all. Bifurcation simplifies the trial of this action by focusing, in the first instance, solely on whether TOL infringes LGO, and it will eliminate potential juror confusion from the presentation of complex damages evidence before there has been any finding of infringement (again, here Plaintiffs' evidence of infringement is virtually nonexistent). Plaintiffs have offered no evidence of any prejudice by bifurcation because there is none. In contrast, the Defendants would be prejudiced by intermixing evidence of damages with liability. The trial of this case should be bifurcated.

Respectfully submitted,

*/s/ Donald S. Zakarin*

Donald S. Zakarin