UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

<em>Plaintiffs</em>,

-against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

<em>Defendants</em>.

ECF CASE

17-cv-5221 (LLS)

**DECLARATION OF
DONALD S. ZAKARIN
IN SUPPORT OF DEFENDANTS'
MOTION FOR BIFURCATION
OF TRIAL BETWEEN LIABILITY
AND DAMAGES PHASES**

I, DONALD S. ZAKARIN, declare as follows:

1.      I am a member of Pryor Cashman LLP, counsel for defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation d/b/a Atlantic Records ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV," together with Sheeran and Atlantic, the "Defendants"). I have personal knowledge of, and am fully familiar with, the facts set forth in this Declaration. I submit this Declaration in support of Defendants' motion for an Order bifurcating the trial of this action between liability and damages phases pursuant to Fed. R. Civ. 42(b).

2.      The facts set forth herein correspond to the facts underpinning Defendants' motion as set forth in the accompanying memorandum of law. Undefined capitalized terms have the meanings set forth in the accompanying memorandum of law.

<u>**THE LIABILITY ISSUES AND DAMAGES ISSUES ARE DISTINCT**</u>

3.      The liability issues to be tried in this case will include (i) whether Defendants actually copied from LGO in authoring TOL, or whether the authors of TOL independently created TOL, (ii) whether, and the extent to which, objective musical similarities exist between LGO (as

defined by the deposit copy) and TOL, (iii) whether, and the extent to which, the elements contained in LGO that are allegedly similar to TOL comprises unprotectable subject matter (in this case, the primary allegedly similar elements are a commonplace chord progression and a rhythmic technique, known as "anticipation," which has been used for hundreds of years), and (iv) whether substantial similarities exist between TOL and protectable expression in LGO.[1]

4.      The evidence respecting these issues are discrete and will largely be introduced through the likely testimony of the authors of TOL (Ed Sheeran and Amy Wadge), the producer of TOL and through expert testimony.

5.      On the other hand, the damages issues, which would only be reached in the event that a jury were to find infringement, are far more extensive and will involve a great deal of documentary evidence and testimony.  The evidentiary issues to be tried relating to damages will include (i) a determination of the gross revenues of each of the Defendants attributable to the United States exploitation of TOL from various sources, (ii) a determination of the deductible costs of the each of the Defendants attributable to the creation and United States exploitation of TOL, and (iii) a determination as to apportionment of profits, *i.e.*, what portion of the Defendants' profits are attributable to the alleged infringement and what portion of the Defendants' profits are attributable to other factors (*e.g.*, Sheeran's performance of TOL and his popularity as a singer/songwriter, the success of other singles that drove sales of the album on which TOL is but one track, and TOL specifically, Atlantic's and Sheeran's marketing efforts, including the highly popular music video, and the relative contributions of allegedly infringing and non-infringing elements in TOL, such as the lyrics and melody).

---

[1] As discussed in the accompanying Memorandum of Law, Dr. Stewart also contends there are some alleged similarities in the vocal melodies.  However, it is undisputed that he manufactured those alleged similarities by deleting pitches and altering the melodic sequences.  The actual vocal melodies are not remotely similar.

6.      The witnesses and evidence with respect to liability do not overlap with the witnesses as to profits.[2]  As I have stated, in regard to liability, the authors of TOL (and likely also the producer of TOL) will provide testimony and evidence regarding their independent creation of TOL.  Expert analysis and testimony by musicologists will address, among other things, the alleged musical similarities and dissimilarities between the two compositions.

7.      In this regard, this Court's rulings have significantly narrowed the evidence and testimony that can be provided by the Plaintiffs' musicologist, Dr. Stewart.  This Court's Order (ECF 138), requires Dr. Stewart to comply with numbers 1 and 2 of the Court's Order of March 24, 2020 and precludes him from testifying as to substantial similarity or challenging the undisputed fact that the chord progression and harmonic rhythm – the primary elements which he claims are similar – are common musical techniques and hence are unprotectable.[3]

8.      There is no documentary evidence or testimony that would be necessary from defendants Atlantic or SATV on the question of liability as they have no evidence regarding the creation of TOL.  No representative of either Atlantic or SATV were present when Amy Wadge and Ed Sheeran wrote TOL (on an evening in February 2014 in Ed Sheeran's house in the United Kingdom where only the two of them were present).

9.      There are no documents relating to revenues, marketing, costs or apportionment that would be necessary with respect to the liability phase of trial.

10.      In contrast to the liability phase of trial, where the only witnesses are likely to be Ed Sheeran, Amy Wadge, the producer of TOL and the experts (and possibly one of the plaintiffs,

---

[2] The only possible overlapping witness testimony would relate to a narrow area regarding apportionment of allegedly infringing and non-infringing elements in TOL.

[3] Not only are the chord progression and harmonic rhythm commonplace and unprotectable (existing in an abundance of prior art), both the chord progression and harmonic rhythm in TOL are objectively and indisputably different than the chord progression and harmonic rhythm in LGO.

although she is not a percipient witness as to liability), the damages phase of trial will require testimony, at the very least, from Atlantic representatives, SATV representatives and Sheeran's accountants regarding the "profits" each defendant has earned from the United States exploitation of TOL (revenues and deductible expenses).  That United States revenue derives from a broad array of sources including, without limitation, physical sales, digital sales, digital streaming, public performance income and synchronization income.

11.     In addition, while calculating the individual revenue derived by TOL as a single recording and song is not unduly complicated, because physical and digital sales and streams of single songs is readily ascertainable, allocating the revenue from album sales that is arguably attributable to TOL is more complex and will require testimony and evidence.  Indeed, there are six different versions of the album, *x*, containing TOL.  While one version of *x* includes as few as 12 tracks, another version includes as many as 33 tracks.

12.     In addition, because TOL was released as a single months **after** the album *x* was already hugely successful and after other singles had already been released and achieved commercial success, the expert testimony of Defendants' expert, Barry Massarsky (Plaintiffs have no damages expert), will be important as to the influence of these other singles on album sales relative to that of TOL.  This evidence is unrelated to any issue on liability.  Simply put, the revenue computation alone will entail certain allocations that will require substantial evidence that is irrelevant to a determination of liability in this matter.

13.     While the revenues and expenses could be the subject of a stipulation (and counsel have agreed that the revenue and expense documentation will be the subject of a stipulation), because revenue has to be apportioned between TOL and other tracks on the albums, even with a stipulation as to the admissibility of documents reflecting the revenue and expenses of TOL, it is

virtually certain that there will have to be testimony provided on the allocations of revenue and expense.

14.     Moreover, even with a stipulation as to gross revenue and expenses, there are further issues that will require the taking of evidence in the damages phase trial.  Whether certain expenses are entitled to be deducted may be in dispute and may require testimony and evidence rather than stipulation.  Such evidence is likely to consist of detailed spreadsheets that have been provided to Plaintiffs and the testimony of witnesses, including from Atlantic representatives, SATV representatives and Sheeran's accountants, regarding specific costs that should be deducted from gross revenues related to TOL.

15.     In regard to Atlantic, consistent with detailed spreadsheets produced to Plaintiffs, the evidence may require testimony regarding, among other things, royalty expenses (including royalties payable to Atlantic's licensor in the United Kingdom which include the artist royalties payable by the United Kingdom licensor), mechanical royalties payable to the publishers of TOL, overhead costs, marketing costs, manufacturing costs, marketing and promotional costs and distribution costs and taxes.  Atlantic representatives would also provide testimony regarding the licensing relationship between Atlantic and Warner Music UK Limited (the United Kingdom company with whom Ed Sheeran has a recording agreement) and the allocation of income and costs between them.

16.     In regard to Sheeran, the damages phase should not require testimony from Sheeran. Rather, this phase will likely require testimony from his accountants regarding, among other things, his payment of management commissions, accounting costs, recording costs, video costs, the fees he pays to various collection societies and the taxes he pays on his income attributable to TOL. This will also require testimony and evidence respecting the nature of and basis for the allocations

made on these expenses as Sheeran's income comes into the United Kingdom from all around the world, not just the United States, and it includes income attributable to dozens of songs and recordings, not merely TOL.

17.     In regard to SATV, it is likely that there will be testimony regarding taxes and the relationship that exists between SATV and Sony/ATV Music Publishing (UK) Limited (the United Kingdom company with whom Ed Sheeran has a publishing agreement) and the allocation of income and costs between them.

18.     Finally, the damages phase will also require an apportionment of the profits attributable to the allegedly infringing elements versus the non-infringing elements in TOL (as an infringement claimant is not entitled to profits that are not attributable to allegedly infringing elements).  The apportionment evidence will necessarily include testimony and evidence addressed to Sheeran's popularity, the impact of Atlantic's marketing efforts, the impact on the timing of the release of the album and release of prior successful singles and other factors that bear upon what portion of the profits were attributable to the allegedly infringing elements as compared to other factors.

19.     In sum, the damages phase of trial, if one were necessary, will be distinctly different than the liability phase, with virtually no overlap of witnesses or information.  Even with the stipulation as to the admissibility of the documentary evidence reflecting the United States revenue and expenses of TOL and the album *x*, the damages phase of trial will involve significantly more documentary and testimonial evidence that is highly complex and voluminous.

20.     Importantly, virtually all of this evidence will consist of confidential and proprietary financial evidence that would not require public disclosure at trial if the jury concludes that there is no infringement.  While I am aware that Plaintiffs disagree, what allegedly sounds

6

"similar" in these two songs is attributable to a commonplace chord progression that had been used in many popular songs before LGO and a rhythmic technique known as "anticipation," which was commonplace in music for hundreds of years before LGO.  These elements are unprotectable, cannot be monopolized by Plaintiffs and should not provide any basis for a claim of infringement.

21.     Particularly in a case where the claim of infringement is so tenuous, to force the parties, the Court and the jury to sift through days of financial data without there first having been a finding of infringement would be wasteful and prejudicial.  Sheeran has a significant interest in maintaining the privacy of his personal financial information, just as Atlantic and SATV have an interest in the confidentiality of their proprietary business and financial information.  Further, a jury's consideration of liability should not be potentially influenced by Ed Sheeran's financial success.  Plaintiffs have no corresponding interest that would be prejudiced by bifurcation.  They have already received all of this information in discovery and, if they were to persuade a jury that TOL infringes LGO, the parties could thus immediately proceed to try the damages phase of this case before the same jury that considered liability.

22.     In short, there are considerable efficiencies that would be provided by bifurcation as well as privacy issues.  I respectfully submit that bifurcation should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 8, 2020

_____

DONALD S. ZAKARIN