Donald S. Zakarin
dzakarin@pryorcashman.com
Ilene S. Farkas
ifarkas@pryorcashman.com
Andrew M. Goldsmith
agoldsmith@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND,<br>*Plaintiffs*,<br><br>-against-<br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS<br><br>*Defendants*. | ECF CASE<br><br>17-cv-5221 (LLS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR BIFURCATION OF TRIAL**

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Edward Christopher Sheeran, Atlantic Recording Corporation and Sony/ATV Music Publishing LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 3

I. LEGAL STANDARD .......... 3

II. TRIAL SHOULD BE BIFURCATED INTO LIABILITY AND DAMAGES PHASES .......... 5

A. The Liability Issues And Damages Issues Are Wholly Distinct .......... 5

B. Bifurcation Will Conserve Party And Judicial Resources .......... 11

C. Bifurcation Will Eliminate Juror Confusion And Protect Defendants From Prejudice .......... 12

CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Apple Computer, Inc. v. Microsoft Corp.*,
821 F. Supp. 616 (N.D. Cal. 1993), *aff'd & rev'd in part*,
35 F. 3d 1435 (9th Cir. 1994) .................... 4, 9

*Crown Cork & Seal Co. Master Retirement Trustee v. Credit Suisse First Bos. Corp.*,
288 F.R.D. 335 (S.D.N.Y. 2013) .................... 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993).................... 2

*In Design v. K-Mart Apparel Corp.*,
No. 87-cv-8397 (AGS), 1996 WL 4122 (S.D.N.Y. Jan. 3, 1996) .................... 4, 9

*Fahmy v. Jay Z*,
No. 07-cv-05715 (CAS), 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015).................... *passim*

*Francescatti v. Germanotta*,
No. 11-cv-5270 (MEA), 2014 WL 2767231 (N.D. Ill. June 17, 2014)....................5

*Griffin v. Sheeran*,
No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020) .................... 2

*Helminski v. Ayerst Labs., Division of A.H.P.C.*,
766 F.2d 208 (6th Cir. 1985) .................... 12

*Hopkins v. National Railroad Passenger Corp.*,
No. 08-cv-2965 (NGG), 2016 WL 1588499 (E.D.N.Y. Apr. 19, 2016).................... 11, 12

*Johnson v. Gordon*,
409 F.3d 12 (1st Cir. 2005) ....................5

*Katsaros v. Cody*,
744 F.2d 270 (2d Cir. 1984).................... 4

*Lagudi v. Long Island R.R. Co.*,
775 F. Supp. 73 (E.D.N.Y. 1991) .................... 12

*Loussier v. Universal Music Group., Inc.*,
214 F.R.D. 174 (S.D.N.Y. 2003) .................... 4, 9

*Perry v. Gray*,
Case No. 2:15-cv-05642-CAS-JC (C.D. Cal.) at Dkt. No. 362 ....................4

**TABLE OF AUTHORITIES *(cont'd)***

**CASES** **PAGE(s)**

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
602 F.3d 57 (2d Cir. 2010)........................................................................................ 1, 2

*Swofford v. B & W, Inc.*,
336 F.2d 406 (5th Cir. 1964) .......................................................................................... 4

*Walker v. Carter*,
210 F. Supp. 3d 487 (S.D.N.Y. 2016)......................................................................... 4, 9

*Zofcin v. Dean*,
144 F.R.D. 203 (S.D.N.Y. 1992) ................................................................................ 4, 12

**RULES AND REGULATIONS**

Fed. R. Civ. P. 42(b) ................................................................................................... 1, 3

Fed. R. Evid. 702 ............................................................................................................ 2

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their motion for an Order bifurcating the trial of this action between liability and damages phases pursuant to Fed. R. Civ. 42(b).

**PRELIMINARY STATEMENT**

Pursuant to this Court's authorization, Defendants bring this motion to bifurcate the trial of this action into a liability phase and a damages phase. The damages phase should proceed before the same jury, but only if and after that jury first determines that "Thinking Out Loud" ("TOL") infringes the copyright of the musical composition "Let's Get It On" ("LGO"). Liability and damages are entirely discrete issues in copyright infringement cases, having virtually no overlap. This case is no exception. In fact, the damages issues are far more complicated than liability, involving extensive evidence addressed to revenues over a period of years from multiple sources, expenses incurred to generate each source of revenues and apportionment between the profits that are attributable to the allegedly infringing elements and profits that are attributable to other factors. There is virtually no overlap between the evidence in each phase. Bifurcation of the liability phase from the damages phase of trial thus serves the interests of judicial economy, reduces the prospect of jury confusion and, importantly, minimizes the potential prejudice to defendants from having their financial affairs placed before the same jury that first must assess whether there is any liability to begin with.

To prevail on their claim of infringement, Plaintiffs must prove, among other things, that Defendants actually copied from LGO in authoring TOL, and that the copying was wrongful because a substantial similarity exists between TOL and ***protectable elements*** of LGO. *See Peter*

*F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). In this case, Plaintiffs' infringement claim is predicated on an expert report of Dr. Alexander Stewart which exclusively relies on a Marvin Gaye recording of LGO instead of on the actual work at issue – the musical composition as evidenced by the Deposit Copy.[1] As this Court has already determined, the Deposit Copy defines the metes and bounds of copyright protection here. *See Griffin v. Sheeran*, No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020).[2]

As noted above, bifurcation would conserve judicial and party resources. It simplifies the trial of this action by focusing, in the first instance, solely on whether TOL infringes LGO, an issue that will largely be addressed through the testimony of the authors of TOL and musicology expert(s). On the other hand, even if the parties stipulate as to the documentary evidence reflecting the revenue and expenses attributable to TOL from various sources (and counsel for Plaintiffs and Defendants have agreed to stipulate to the admission into evidence of this documentary evidence, which largely consists of spreadsheets), the damages issues will still be largely based on extensive evidence and testimony of the business people employed by Defendants to collect, account and

---

[1] In response to Defendants' motion pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), this Court has narrowed the permissible testimony and evidence that may be provided by Plaintiffs' musicology expert, Dr. Alexander Stewart. His expert report is predicated on the Marvin Gaye recording rather than the Deposit Copy of LGO, and he has been barred from testifying to anything not in the Deposit Copy. He also cannot challenge the finding that the allegedly similar chord progression and harmonic rhythm are commonplace and unprotectable, and he cannot testify as to conclusions, such as similarity.

[2] Indeed, this Court has recognized the hurdle Plaintiffs must surmount if they are to prevail on a claim of infringement, because the majority of the elements relied upon by Dr. Stewart are not actually part of the copyrighted work at issue. *See Griffin*, 2020 U.S. Dist. LEXIS 52908, at *3 ("The Gaye sound recording contains many elements: percussion/drums, bass-guitar, guitars, Gaye's vocal performances, horns, flutes, etc., which do not appear in the simple melody of the Deposit Copy. These additional elements … are not protected by copyright, because they are not in the Deposit Copy"); *id.* at *2-3 ("Nor is the field of protected elements enlarged on the theory they are consistent, and harmonize with the work as articulated in the Deposit Copy, and are implied by the way the articulated elements are expressed. If what is implied is not in the Deposit Copy, it does not have the protection of copyright"). Dr. Stewart's testimony is, correspondingly, going to be narrow and very little of his Report is admissible.

pay not only for the revenue generated by TOL but the expenses associated with generating the revenue, and these witnesses will explain the spreadsheets to the jury. It will also involve the testimony of Defendants' damages expert (Plaintiffs have no damages expert).

Limiting the presentation of evidence to liability issues in the first instance will reduce or even eliminate potential juror confusion that could arise from presenting complex damages evidence while also asking the jury to evaluate the merit of the infringement claims against Defendants. Indeed, avoiding having the jury consider financial issues before they have made any determination that there is an infringement would avoid the prejudice to Defendants of having a jury that, in considering liability, could be influenced by the success of TOL.

Finally, because damages discovery is complete, in the event that Plaintiffs were able to successfully persuade the jury that TOL infringed LGO, the damages phase of the case can be immediately presented to the same jury. As such, bifurcation will not prejudice any of Plaintiffs' rights or interests.

For these reasons, and those set forth more fully below, the trial of this action should be bifurcated into liability and damages phases.

## ARGUMENT

### I. LEGAL STANDARD

Rule 42(b) of the Federal Rules of Civil Procedure provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

Thus, "[b]ifurcating a trial into a liability and damages phase may be appropriate where doing so would be economical and efficient, and where there is little overlap in the evidence that would be presented at each phase." *Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299,

at *24 (C.D. Cal. Sept. 24, 2015) (citations & quotations omitted); *see also Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (affirming bifurcation of trial into liability and damages phases since "the two phases involved different types of evidence"); *Zofcin v. Dean*, 144 F.R.D. 203, 205 (S.D.N.Y. 1992) (bifurcating trial into liability and damages phases because the "introduction of evidence offered only to prove damages poses a substantial risk of impairing the jury's objectivity on the liability issue in this case").

Courts routinely bifurcate copyright infringement trials into liability and damage phases because there is little or any overlap in the evidence (indeed, often even bifurcating discovery). *E.g.*, *Fahmy*, 2015 WL 5680299, at *24; *Walker v. Carter*, 210 F. Supp. 3d 487, 497-98 (S.D.N.Y. 2016) (noting that "issues of liability and damages were bifurcated for the purposes of discovery and trial"); *In Design v. K-Mart Apparel Corp.*, No. 87-cv-8397 (AGS), 1996 WL 4122, at *1 (S.D.N.Y. Jan. 3, 1996) (noting that trial had been "bifurcated into liability and damages phases"); *Loussier v. Universal Music Grp., Inc.*, 214 F.R.D. 174, 178 (S.D.N.Y. 2003) (noting that the Court in a prior order "ha[d] ordered that the case be bifurcated, and discovery on damages should occur after the liability phase of the trial is completed"); *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp. 616, 630 (N.D. Cal. 1993), *aff'd & rev'd in part*, 35 F. 3d 1435 (9th Cir. 1994) (the court, "in the interest of judicial economy and convenience," bifurcated "the damages phase of the trial from the liability phase") (citation omitted); *see also Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) ("the issues of validity, title, infringement and damages in patent and copyright cases may be separately tried, unless this course will inconvenience the court or seriously prejudice the rights of some of the parties") (citation omitted).[3]

---

[3] In the recent *Gray v. Perry* case, the California District Court also granted bifurcation. (*See Perry v. Gray*, Case No. 2:15-cv-05642-CAS-JC (C.D. Cal.) at Dkt. No. 362).

Here, the trial of this action presents discrete liability and damages issues with virtually no overlap between the two (and the evidence on damages, including documentary evidence and expert analysis is far more complex and extensive than the evidence on liability). Also as noted above, and as set forth more fully in Defendants' "Daubert" motion to exclude or limit the testimony of Dr. Alexander Stewart, a motion this Court has largely granted, this case presents a very tenuous infringement claim, where the only elements allegedly infringed (that are in the Deposit Copy) are a commonplace chord progression (which is not even the same in TOL as in LGO), a rhythmic technique known as anticipation that has been used for hundreds of years and was already in the repertoire of the authors of TOL and, according to Dr. Stewart, some alleged part of the vocal melodies.[4] This Court has held that the chord progression and the harmonic rhythm are common musical techniques (and hence are unprotectable). As such, in a case with a weak claim of infringement, perhaps even more than in other copyright infringement cases, this case should be bifurcated into separate liability and damages phases in the interests of judicial economy and to avoid prejudice to the Defendants.

## II. TRIAL SHOULD BE BIFURCATED INTO LIABILITY AND DAMAGES PHASES

### A. The Liability Issues And Damages Issues Are Wholly Distinct

Bifurcation is appropriate in this case because there is virtually no overlap between the liability issues and the damages issues to be tried in this action. The issues to be determined and the evidence are distinct from one another.

The liability issues to be tried in this case will include, among other things, (i) whether Defendants actually copied from LGO in authoring TOL, or whether the authors of TOL

[4] While Dr. Stewart claims similarities in selected vocal melodies, he admitted that he altered the notes in order to create the alleged similarities, a tactic that has been rejected as an improper methodology. *E.g.*, *Francescatti v. Germanotta*, No. 11-cv-5270 (MEA), 2014 WL 2767231, at *13 (N.D. Ill. June 17, 2014); *Johnson v. Gordon*, 409 F.3d 12, 21 (1st Cir. 2005).

independently created TOL, (ii) whether, and the extent to which, objective musical similarities exist between LGO and TOL, (iii) whether, and the extent to which, the allegedly infringed material comprises unprotectable subject matter – an issue already largely determined by this Court – and (iv) whether substantial similarities exist between TOL and protectable expression in LGO. (Zakarin Decl. ¶ 3). The documentary evidence and aural evidence is narrow and the number of witnesses, inclusive of expert witnesses, is limited.

On the other hand, the damages issues to be tried in this case, even with a stipulation as to the admission of the spreadsheets reflecting revenue and expenses produced by Defendants to Plaintiffs, will include, among other things, (i) a determination of the gross revenues of the Defendants attributable to the United States exploitation of TOL, (ii) a determination of the deductible costs of the Defendants attributable to the creation and United States exploitation of TOL, and (iii) a determination as to apportionment of profits, *i.e.*, what portion of the Defendants' profits are attributable to the alleged infringement and what portion of the Defendants' profits are attributable to other facts (*e.g.*, Sheeran's performance of TOL and his popularity as a singer/songwriter, Atlantic's and Sheeran's marketing and promotional efforts, the success of other singles from the album "x" that preceded the release of TOL as a single, the highly popular music video, and the relative contributions of allegedly infringing and non-infringing elements in TOL, such as the lyrics and melody). (*Id.* ¶ 5).

In regard to liability, the authors of TOL (and also the producer of TOL) will provide testimony and evidence regarding its independent creation. (*Id.* ¶ 6). Expert analysis and testimony by musicologists will address, among other things, the alleged musical similarities and dissimilarities between the two compositions, prior art showing that the allegedly similar elements, as found by this Court, are common musical techniques that preexisted LGO and are unprotectable.

(*Id.*).

However, there is no documentary evidence or testimony that would be necessary from defendants Atlantic or SATV on the question of liability as they have no evidence regarding the creation of TOL. (*Id.* ¶ 8). There are no documents relating to revenues, marketing, costs or apportionment that would be necessary with respect to the liability phase of trial. (*Id.* ¶ 9).

In contrast, the damages phase of trial will require testimony, at the very least, from Atlantic representatives, SATV representatives and Sheeran's accountants regarding the revenue each defendant has earned from the United States exploitation of TOL. (*Id.* ¶ 10). That United States revenue derives from a broad array of sources including, without limitation, physical sales, digital sales, digital streaming, public performance income and synchronization income. (*Id.*).

In addition, while calculating the individual domestic revenue derived by TOL as a single recording and song is not unduly complicated, it is also but one track on an album (that exists in several configurations with differing numbers of tracks) requiring an allocation of the album income attributable to TOL as opposed to the other tracks on the albums. There will be documentary evidence addressed to this subject as well as expert evidence, particularly because TOL was released as a single months **after** the album (known as "x") was already hugely successful and after other singles had already been released. (*Id.* ¶ 11-12). Indeed, there are six different versions of the album, *x*, containing TOL. (*Id.*). While one version of *x* includes as few as 12 tracks, another version includes as many as 33 tracks. (*Id.*). Simply put, even the revenue computation will entail certain allocations that will require substantial evidence that is irrelevant to a determination of liability in this matter. The gross domestic publishing revenue attributable to TOL will also have to be presented and explained to the jury.

But the gross revenue evidence is only the beginning point in the damages phase trial.

Defendants are entitled to prove their deductible costs from the revenues reasonably allocable to alleged infringement in order to determine profits of TOL for each Defendant. Again, even though the expenses are reflected on the spreadsheets that the parties have agreed to stipulate into evidence, it will still require the testimony of witnesses, including from Atlantic representatives, SATV representatives and Sheeran's accountants, regarding the various, specific costs that should be deducted from gross revenues related to TOL. (*Id.* ¶ 13-17).

In regard to Atlantic, consistent with detailed spreadsheets produced to Plaintiffs, this will require testimony regarding, among other things, royalty expenses (including royalties payable to Atlantic's licensor in the United Kingdom which include the artist royalties payable by the United Kingdom licensor and mechanical royalties payable to the publishers of TOL), overhead costs, marketing costs, manufacturing costs, distribution costs and taxes. (*Id.* ¶ 15). Atlantic representatives would also provide testimony regarding the licensing relationship between Atlantic and Warner Music UK Limited (the United Kingdom company with whom Ed Sheeran has a recording agreement) and the allocation of income and costs between them. (*Id.*).

In regard to Sheeran, the damages phase should not require testimony from Sheeran. Rather, this phase will require testimony from his accountants regarding, among other things, his payment of management commissions, accounting costs, recording costs, video costs, the fees he pays to various collection societies and the taxes he pays on his income attributable to TOL. (*Id.* ¶ 16). This will also require testimony and evidence respecting the nature of and basis for the allocations made on these expenses as Sheeran's income comes into the United Kingdom from all around the world, not just the United States, and it includes income attributable to dozens of songs and recordings, not merely TOL. (*Id.*).

In regard to SATV, this will require testimony regarding taxes and the relationship that

exists between SATV and Sony/ATV Music Publishing (UK) Limited (the United Kingdom company with whom Ed Sheeran has a publishing agreement) and the allocation of income and costs between them. (*Id.* ¶ 17).

Finally, Defendants (and presumably Plaintiffs) will also provide evidence and testimony reflecting an apportionment of the profits attributable to the allegedly infringing elements versus the non-infringing elements in TOL. (*Id.* ¶ 18). In addition, apportionment evidence will involve testimony and evidence addressed to other factors that drove sales that are not attributable to the allegedly infringed elements, such as Sheeran's popularity and performance of TOL, the impact of Atlantic's marketing efforts, the momentum of the previously released and successful singles from the album "x" that drove sales of TOL and other factors that bear upon what portion of the profits were attributable to the allegedly infringing elements as compared to other factors. (*Id.*).

In sum, the damages phase of trial, if one should be necessary, will be distinctly different than the liability phase, with virtually no overlap of witnesses or information. The damages phase would involve significantly more documentary and testimonial evidence that is highly complex and far more extensive than the evidence on liability. Moreover, virtually all of this evidence will consist of confidential and proprietary financial evidence that would not require public disclosure at trial if the jury finds for Defendants on liability. Sheeran has a significant interest in maintaining the privacy of his personal financial information, just as Atlantic and SATV have an interest in the confidentiality of their proprietary business and financial information. Plaintiffs have no corresponding interest that would be affected by bifurcation (and have already received all of this information in discovery subject to a protective order). In these circumstances, bifurcation should be granted. *E.g.*, *Fahmy*, 2015 WL 5680299, at *24; *Walker*, 210 F. Supp. 3d at 497-98; *In Design*, 1996 WL 4122, at *1; *Loussier*, 214 F.R.D. at 178; *Apple Computer*, 821 F. Supp. at 630.

The California District Court's holding in *Fahmy* is instructive and on all fours with this case. In *Fahmy*, the plaintiff sued Jay-Z for copyright infringement, alleging that his well-known musical composition *Big Pimpin*' infringed the plaintiff's copyright in a musical composition titled *Khosara*. On Jay-Z's motion seeking bifurcation, the Court ruled that "bifurcating the liability and damages phases of the trial is appropriate," among other reasons, because "the liability and damages portions of the trial involve separate and distinct issues." *Fahmy*, 2015 WL 5680299, at *24. As the Court explained, whereas "[t]he liability portion of the trial centers on whether defendants infringed a copyright owned by plaintiff," "the damages portion of the trial involves calculating plaintiff's actual damages and any profits of defendants attributable to infringement of the *Khosara* copyright." *Id.*

Thus, the Court concluded that the liability and damages questions would "involve largely different documents and witnesses," and that "there will be at most only minimal overlap in the evidence presented at each phase of the trial." *Id.* (citation omitted); *see also id.* (whereas "in the liability phase, the parties will present evidence on … the scope of any copyright in *Khosara*, and whether defendants infringed that copyright," "in the damages phase, the parties will present financial data and records pertaining to defendants' businesses, as well as testimony from experts on methods for apportioning profits to any infringing portions of *Big Pimpin'*"). Given the wholly distinct nature of the liability and damages issues, the Court in *Fahmy* bifurcated trial into liability and damages phases. The analysis and reasons for bifurcation are no different here and fully support bifurcation in this case.[5]

[5] Notwithstanding Plaintiffs' claim to the contrary in their correspondence to this Court, the *Fahmy* Court's decision to grant bifurcation between infringement liability and infringement damages had nothing at all to do with the fact that other, ancillary issues in the case implicated Egyptian law.

**B. <u>Bifurcation Will Conserve Party And Judicial Resources</u>**

Bifurcation also should be granted because it will conserve party and judicial resources in the event the jury returns a verdict for the Defendants on liability. Again, as noted above, in this case, Plaintiffs have based their infringement claim on the infringement of an entirely different work than the one in issue – the Gaye Recording – rather than on the musical composition as evidenced by the Deposit Copy. This Court's Order (ECF 138), requires Dr. Stewart to comply with numbers 1 and 2 of the Court's Order of March 24, 2020 and precludes him from testifying as to substantial similarity or challenging the undisputed fact that the chord progression and harmonic rhythm – the primary elements which he claimed were similar – are common musical techniques and hence are unprotectable. Once one strips out the elements focused on by Dr. Stewart's report that are now precluded, there is very little that he can point to as being actionably similar.

In the event that liability is not found – and Defendants obviously strongly believe that there is no basis for liability – there would be no need for the parties and the Court (and a jury) to have to address the complex evidence regarding damages. *E.g.*, *Fahmy*, 2015 WL 5680299, at *24 ("bifurcating the trial may conserve judicial resources because the liability portion of the trial may obviate the need for a trial on damages"); *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 335, 338 (S.D.N.Y. 2013) ("Bifurcation will also serve the interests of judicial economy. Bifurcation may be appropriate where the two phases involve different types of evidence, or where the litigation of the first issue might eliminate the need to litigate the second issue. Both of these considerations are present here") (internal citations, quotations & brackets omitted); *Hopkins v. Nat'l R.R. Passenger Corp.*, No. 08-cv-2965 (NGG), 2016 WL 1588499, at *3 (E.D.N.Y. Apr. 19, 2016) ("Bifurcation here also serves the interests of

judicial economy. If, following the liability phase, the jury finds that Defendants are not liable, the court and the parties will be spared the cost and time of holding a trial on the damages phase") (citations omitted).

**C. Bifurcation Will Eliminate Juror Confusion And Protect Defendants From Prejudice**

Bifurcation also should be granted because it will help ensure a fair and impartial trial. The jury should not be asked to undertake the task of assessing liability for infringement while simultaneously being asked to assess voluminous evidence concerning damages. As these two issues have nothing at all to do with each other, the simultaneous presentation of liability and damages evidence could cause jury confusion.

Further, permitting the jury to entertain both issues simultaneously, particularly given Ed Sheeran's professional and financial success over the past decade, could unfairly influence the jury, persuading them to find infringement where none exists to provide Plaintiffs with some recompense. The success of TOL and even more so the success of Ed Sheeran should have no place in the determination of whether TOL does or does not infringe protectable elements in LGO. For this reason, as well, bifurcation should be granted. *E.g.*, *Zofcin*, 144 F.R.D. at 205 (bifurcating trial into liability and damages phases to avoid prejudice to the defendants); *Hopkins*, 2016 WL 1588499, at *3 ("courts in this circuit regularly find that evidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault") (citations, quotations & brackets omitted); *Lagudi v. Long Island R.R. Co.*, 775 F. Supp. 73, 74 (E.D.N.Y. 1991) ("bifurcation 'is appropriate when the evidence pertinent to the two issues is wholly unrelated and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination'") (quoting *Helminski v. Ayerst Labs., Div. of A.H.P.C.*, 766 F.2d 208, 212 (6th Cir. 1985).

**CONCLUSION**

It is respectfully submitted that Defendants' motion should be granted, and that the trial of this action should be bifurcated into liability and damages phases.

Dated: New York, New York
September 8, 2020

PRYOR CASHMAN LLP

By: *<u>/s/ Donald S. Zakarin</u>*
Donald S. Zakarin
Ilene S. Farkas
Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony/ATV Music Publishing LLC*