UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHY TOWNSEND GRIFFIN, *et.al.*,

Plaintiffs,

vs.

EDWARD CHRISTOPHER SHEERAN, *et.al.*,

Defendants.

ECF CASE
17-CV-5221 (LLS)

OBJECTION AND COMPANION
MEMORANDUM IN
OPPOSITION TO
DEFENDANTS' MOTION FOR
BIFURCATION OF TRIAL

_____/

      **THE ENUMERATED PLAINTIFFS**, collectively, Object to the Defendants' Motion

for Bifurcation of Trial and, as basis therefore, would state as follows:

      1.   The crux of the Defendants' articulated rationale in favor of bifurcation turns on

the dual contentions as to the purported complexity of the damages component of the trial,[1]

as well as the mutual exclusivity of evidence to be proffered by the Parties herein during the

respective liability and damages phases of trial, were this action to be so bifurcated.

      2.   In support of the asserted complexity and/or likelihood of juror confusion, the

Defendants contend that, while the Parties have entered into an agreement as to the admissibility

of documents related to domestic profits and costs deriving therefrom[2], there would also,

---

[1] In contrast to its preliminary pre-motion filings, the Defendants rely heavily on this argument in support of their current motion.

[2] While the Defendants correctly represent that the Parties have tentatively discussed a stipulation as to the authenticity of profits/revenue information so as to obviate the necessity of calling records custodians, the Plaintiffs reserve the right to object to the admissibility of the so-called "cost" aspect of any records to be proffered by the Defendants to the extent that a.) they were not specifically provided and/or disclosed during the course of discovery; and b.) the Defendants are not able to establish a causal nexus between the subject expense and the marketing, promotion, and dissemination of "Thinking Out Loud"—by way of illustration, the Defendants have expressed an intent of attempting to enter into evidence documents chronicling alleged expenses garnered

necessarily, entail the evaluation of detailed spreadsheets and anticipated testimony from a England-based accountant who would explain said documentation and/or its import.

3.   The Defendants also contend that it is possible that representatives of the corporate Defendants to this action may testify as to monies expended relating to the marketing of "Thinking Out Loud" which the Defendants would content constitute overhead costs to be deducted from profits for the same.

4.   Responsive to the Defendants' efforts to portray the instant case as unduly complicated and/or complex, the Plaintiffs would, respectfully, suggest that any claims as to the purported complexity of this case are overstated.

## THE CASE COMPONENTS

5.   During the course of discovery in this case, the Parties have collectively deposed a grand total of six (6) people.[3]  The Parties have exchanged documentary discovery which covered expert opinions and supporting documentation, profits/costs from the exploitation of "Thinking Out Loud", and materials related to the Plaintiff's, Kathy Townsend Griffin's, paternity and the California probate case which led to her status as an heir to the Estate of the late Ed Townsend.[4]

6.   The Plaintiffs anticipate calling several witnesses at trial, not likely to exceed more than six (6) individuals.

7.   The Defendants have indicated an intention of calling a similarly limited number of witnesses including the Defendants, themselves, or representatives thereof.[5]

---

extraterritorially which, to all appearances, would appear to be an effort to artificially reduce the profits accruing to "Thinking Out Loud" domestically.

[3] The Plaintiffs took three (3) depositions and the Defendants took three (3) depositions.

[4] The Court will recall that a portion of the Defendants' erstwhile motion for summary judgment sought, in part, to impugn the Plaintiff's, Ms. Griffin's, inherent standing as an heir to Ed Townsend.

[5] Defendants' non-party witnesses will, of course, be limited to the extent that they were not duly disclosed in a timely fashion pursuant to the Defendants' *Rule 26* disclosures during the course of discovery in this case.  To that

8.   The Plaintiffs have one (1) expert witness, their musicologist, Dr. Alexander Stewart. the Defendants have two (2) expert witnesses, their musicologist, Dr. Lawrence Ferrara, and their valuation/damages expert, Mr. Barry Massarsky.[6]

9.   In light of the foregoing, it should be clear that, even trying the case with the liability and damages phases combined, the presentation of the cases are likely to be abidingly brief and straight-forward.

## THE CASE LAW PRECEDENT UPON WHICH
## THE DEFENDANTS RELY

10.   By way of addendum, it should be noted that the case law precedent invoked by the Defendants in support of the premise that "Bifurcation between liability and damage phases is particularly common in copyright infringement trials" have very little, if any, utility as it relates to evaluating the circumstances which present herein.

11.   Specifically, the Defendant references *Fahmy*, 2015 WL 5680299, at *24, as a case which is, purportedly, "instructive and on all fours with this case".  However, in point of fact, a review of the issues presented to the Court in *Fahmy* reveal a highly complex scenario involving international law (specifically Egyptian law) and whether or not the Plaintiff in that litigation maintained the requisite standing pursuant to Egyptian law interpretation in light of an earlier assignment of rights to the copyrighted works by the Plaintiff to a third party.

12.   Because there was a threshold issue of legal standing and/or ownership at issue therein, the Court determined that it was appropriate to bifurcate the trial of the case.  See *Id.* The Plaintiffs would, respectfully, submit that in the *Fahmy* case bifurcation actually made sense because there was threshold issue as to whether the Plaintiff even had the requisite legal standing

---

end, the Plaintiffs anticipate bringing forthcoming motions *in limine* covering these issues which, if successful, would reduce the overall evidence produced at trial even further.

[6] Mr. Massarsky has produced an approximately fourteen (14) page pamphlet setting forth theories of valuation which the Plaintiffs reasonably believe will be subject to a forthcoming *Daubert* motion which, again, if successful, would have the operative legal effect of reducing the scope of presentation at trial.

3

to pursue the claims at issue.

13.   No such issues as to international law interpretation, standing, or ownership are before this Court which would serve to justify the bifurcation of this case in comport with the *Fahmy* precedent proffered by the Defendants.

14.   The Defendants also cite *Walker v. Carter*, 210 F.Supp.3d 487 (S.D.N.Y. 2016)—herein again, a review of the *Walker* case reveals it to be distinguishable from this case in three (3) significant ways.  First, the respective Parties in the *Walker* case actually all agreed to bifurcation at the beginning of the case; second, the bifurcation was initially agreed to relating to **all** aspects of the case including discovery and a prospective trial based on concerns of expense related to damages-related discovery prior to the resolution of the liability issue; third, the *Walker* case was resolved via summary judgment motion and never, in fact, actually went to trial.  See *Id.*

15.   Unlike the *Walker* case, the Parties in this case have already conducted damages discovery so the arguments related to prospective litigation expense are unavailing and/or moot. had the concern as to litigation expense been a legitimate motivation for the Defendants in this litigation, they—presumably—would have formally moved for an Order from this Court bifurcating discovery at the inception of this case similar to the Parties in the *Walker* case.[7]

16.   While *Rule 42(b)* of the *Federal Rules of Civil Procedure* confers the Court with some measure of discretion as it relates to the matter of bifurcation, the Federal Courts in this jurisdiction have previously opined that bifurcation "**is the exception, not the rule** (*Emphasis Supplied*)".  *Wedding-Channel.Com, Inc. v. The Knot, Inc.*, 2004 WL 2984305, at *1 (S.D.N.Y. December 23, 2004) (quoting *Gaus v. Conair Corporation*, 2000 WL 1277365, at *3 (S.D.N.Y.

---

[7] The Defendants also cite the case of *Loussier v. Universal Music Group, Inc.*, 258 F.Supp.2d 308 (S.D.N.Y. 2003) in support of bifurcation but omit the fact that that case, too, was bifurcated in the beginning for discovery purposes pursuant to an agreement of the Parties and, significantly, in that instance, the Parties also agreed from the onset that there would be two (2) separate trials.

September 7, 2000).

17.   Notwithstanding the marked distinction in the above-referenced cases—as cited by the Defendants in support of their request for bifurcation—and the facts/circumstances which present in this case,[8] contrary to the Defendants' assertions, there is commonality in the types of evidence to be presented *vis a vis* the liability and damages components of the subject trial.

18.   As the Defendants accurately set forth in their motion, part of the liability calculus entails establishing "whether Defendants actually copied from LGO in authoring TOL, or whether the authors of TOL independently created TOL".  In order to reach the facts attendant to proving this aspect of the liability claim, the Plaintiffs reasonably anticipate eliciting testimony from the self-same members of the Defendant's, Ed Sheeran's, management team upon whom the Defendants have indicated their intention of relying with respect to the damages component of the litigation.  The issue of independent creation and/or the Defendants' knowledge of LGO will similarly be the subject of examination with respect to the testimony of the corporate representatives and/or executives of the Defendants, Sony/ATV Publishing and Atlantic Records.

19.   Similarly, the Plaintiffs' own witnesses are expected to have testimony relevant to both the liability and damages components of the trial—by way of practical illustration, not only is it anticipated that the Plaintiffs' expert musicologist, Dr. Alexander Stewart, will be testifying in the area of liability, he will also be opining as to the overall temporal amount of TOL he concludes to have been "appropriated" from LGO.  This anticipated testimony would, inevitably, tend to bear on the calculation of damages.

20.   By virtue of the fact that the Defendant, Ed Sheeran, and the list of witnesses he has indicated an intention of calling hail from abroad, in conjunction with the fact that the Plaintiffs' own anticipated witnesses will be traveling to the Court from out-of-state, the Defendants are

---

[8] The absence of standing issues; the completion of damages discovery; and the absence of a global agreement to bifurcate from the inception of the case.

hard-pressed to suggest that this case would be more efficiently tried (or be cost effective, for that matter) by inconveniencing these Parties and related witnesses by having them appear multiple times over in what would be, in essence, two (2) separate trials.

21.   From a practical, logistics-based framework, the Defendants' contention that the a damages phase to trial could proceed immediately after the liability phase were completed (assuming Plaintiffs prevail at the liability phase) is unrealistic.

22.   At this point in time, the Parties do not know exactly when a liability phase would end, how long the jury would require to deliberate with respect to said phase, and when the witnesses reasonably anticipated to give testimony/evidence at the damages phase would be required—one (1) would reasonably think that if the Defendants were successful in having the various witnesses they claim to anticipate testifying at trial who reside abroad that said Defendants would wish to be able to provide some measure of certainty as to when these foreign travelers would need to testify.

23.   For the Plaintiffs part, Plaintiffs shall be traveling to the Court from out-of-state, Plaintiff's expert witness (who will be testifying with respect to both liability and damages in that it is reasonably anticipated that Dr. Stewart will explain the amount of "Thinking Out Loud" is attributable to "Let's Get It On" in terms of the duration of the copied elements), and Plaintiffs' counsel(s) shall be traveling from out-of-state.

24.   Given the overlap of damages and liability issues in Dr. Stewart's testimony, the likelihood that some of the corporate representatives of the Defendant, Sony/ATV, and the Defendant, Atlantic Records, will also provide overlapping testimony on liability and damages issues, in conjunction with the fact that the majority of the persons participating in the forthcoming trial will be coming from out-of-town, the circumstances collectively militate toward a trial being more efficiently administered the liability and damages issues

together.

25.   Virtually all civil trials turn on the dual inquiry of liability and damages.  In the instances in which bifurcation is sought, "[T]he moving party bears the burden of establishing that bifurcation is warranted".  *WeddingChannel.Com, Inc. v. The Knot, Inc.*, 2004 WL 2984305, at *1 (S.D.N.Y. Dec. 23, 2004) (quoting *Gaus v. Conair Corporation*, 2000 WL 1277365) (S.D.N.Y. Sept. 7, 2000).  This case contemplates a proverbial "garden variety" civil trial and the Defendants have failed to identify any facts and/or circumstances unique to this litigation which would have the operative legal effect of substantiating the premise that bifurcating the same would promote cost and/or temporal efficiency—or to come under the aegis of the above-chronicled "exception" scenario, as opposed to the rule.

26.   Further, the Defendants unsubstantiated concern, as alleged, as to the jury becoming confused and/or biased as to the fact that the song, "Thinking Out Loud", actually made money falls far short of meeting the burden required to justify treating this civil litigation as different from any other case which is tried with the liability and damages components together.

27.   The Defendants have provided no evidence whatsoever that hearing about the revenues made by "Thinking Out Loud" would have the operative effect of biasing a jury against the same, other than their own subjective concerns related thereto.

28.   Accordingly, and in light of all of the foregoing and/or enclosed, the Plaintiffs would, respectfully, submit that the trial of this case should not be bifurcated.

**WHEREFORE**, the Plaintiffs, collectively, Object to the Defendants' motion to bifurcate and Motion this Court for the entry of an Order Denying said motion, as well as providing for any such other relief as this Court should deem equitable and just.

**DATED** this 22nd day of September, 2020.

**FRANK & RICE, P.A.**

Respectfully Submitted,

_____
Patrick R. Frank, Esq.
Florida Bar Number:  0642770
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida  32301
Telephone:  (850) 629-4168
Facsimile:  (850) 629-4184
Attorney(s) for Plaintiffs