Donald S. Zakarin
dzakarin@pryorcashman.com
Ilene S. Farkas
ifarkas@pryorcashman.com
Andrew M. Goldsmith
agoldsmith@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND, THE ESTATE OF CHERRIGALE TOWNSEND and THE HELEN CHRISTINE TOWNSEND MCDONALD TRUST<br><br>*Plaintiffs*,<br><br>-against-<br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS<br><br>*Defendants*. | ECF CASE<br><br>17-cv-5221 (LLS) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR BIFURCATION OF TRIAL**

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Edward Christopher Sheeran,
Atlantic Recording Corporation and
Sony/ATV Music Publishing LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. Bifurcation Should Be Ordered Because Virtually No Overlap Exists Between The Liability And Damages Evidence ........ 3

II. Plaintiffs' Attempted Distinctions Of Defendants' Authorities Fail ........ 5

III. Bifurcation Will Promote Judicial Economy And Protect Against Jury Confusion And Unfair Prejudice ........ 7

IV. Plaintiffs' Contentions Regarding Complexity Are Baseless ........ 8

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**CASES**                                                                                                                    **PAGE(s)**

*Crown Cork & Seal Co. Master Retirement Trustee v. Credit Suisse First Bos. Corp.*,
   288 F.R.D. 335 (S.D.N.Y. 2013) ............................................................................................... 7

*Fahmy v. Jay Z*,
   No. 07-cv-05715 (CAS), 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ......................... *passim*

*Hopkins v. National Railroad Passenger Corp.*,
   No. 08-cv-2965 (NGG), 2016 WL 1588499 (E.D.N.Y. Apr. 19, 2016) ................................ 7, 8

*Katsaros v. Cody*,
   744 F.2d 270 (2d Cir. 1984) ........................................................................................................ 3

*Lagudi v. Long Island R.R. Co.*,
   775 F. Supp. 73 (E.D.N.Y. 1991) ............................................................................................... 8

*Loussier v. Universal Music Group., Inc.*,
   214 F.R.D. 174 (S.D.N.Y. 2003) ....................................................................................... 2, 5, 6

*Walker v. Carter*,
   210 F. Supp. 3d 487 (S.D.N.Y. 2016) ............................................................................... 1, 5, 6

*Zofcin v. Dean*,
   144 F.R.D. 203 (S.D.N.Y. 1992) ............................................................................................ 3, 8

## PRELIMINARY STATEMENT[1]

This Court granted Defendants leave to make this bifurcation motion after both sides submitted pre-motion letters to the Court addressing the facts and law. (ECF 141). In their letter (and again in their moving papers), Defendants established that there is virtually no overlap between the evidence that will be presented on liability and damages. In their responsive letter, Plaintiffs asserted that there was supposed overlap because they intended to call Atlantic, SATV and Ed Sheeran's manager (whom Defendants contemplate potentially calling only on damages) to testify about the creation of "Thinking Out Loud" ("TOL").

But as Defendants documented in their reply letter (and in their moving papers), this assertion is baseless. It is undisputed that Ed Sheeran and Amy Wadge were the only two people present when TOL was written. Yet, Plaintiffs pretend these letters and these undisputed facts do not exist. Instead, Plaintiffs' opposition simply repeats that they intend to call Atlantic, SATV and Ed Sheeran's manager regarding the creation of TOL, despite the undisputed evidence that they have no knowledge regarding its creation. Plaintiffs' repetition of their intent to call witnesses to testify on a subject about which such witnesses indisputably have no personal knowledge does not make them overlapping witnesses. They are not. Nor would it matter if overlapping witnesses exist, as the pertinent question is whether overlapping evidence exists. It does not.

Similarly, Plaintiffs' letter sought to distinguish only three of the cases cited by Defendants supporting bifurcation in copyright infringement cases (ignoring all other cases cited). Defendants demonstrated that these distinctions were inaccurate in their reply letter. Yet again, in Plaintiffs' opposition, they ignore virtually all of the cases cited by Defendants and again misrepresent *Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015), *Walker v. Carter*,

---

[1] Undefined capitalized terms have the meanings given to them in Defendants' moving papers.

210 F. Supp. 3d 487 (S.D.N.Y. 2016), and *Loussier v. Universal Music Grp., Inc.*, 214 F.R.D. 174 (S.D.N.Y. 2003).  Repeating the misrepresentation of case authority does not change the authority.

Beyond ignoring undisputed evidence and misrepresenting applicable case law, Plaintiffs' opposition argues that this case should not take very long to try.  Defendants agree that the liability phase should not take long, especially given that Plaintiffs' "evidence" of infringement is virtually nonexistent.  Their infringement claim was built on a report by Dr. Alexander Stewart in which he performed no prior art analysis and in which he analyzed the wrong work – ignoring the deposit copy of "Let's Get It On" ("LGO") – and instead compared TOL to elements contained only in the Marvin Gaye recording of LGO.  As this Court has now held, the uncontested evidence establishes that two of the three elements Dr. Stewart relies upon (the chord progression and the harmonic rhythm) are commonplace musical techniques and hence are unprotectable.  As to the third supposed similar element – the vocal melody – the undisputed evidence is that Dr. Stewart manufactured alleged similarities only by altering the music.  This Court has largely excluded Dr. Stewart's Report.  (ECF 138).

Precisely because their infringement claim is objectively unreasonable, Plaintiffs have instead seized on a strategy of trying to prejudice the jury by attempting to introduce "evidence" having nothing to do with infringement.  They want to introduce evidence of other claims of infringement against Ed Sheeran that have never been adjudicated and have nothing to do with this case. They want to introduce evidence of Ed Sheeran's wealth, which also has nothing to do with infringement. They want to introduce hearsay articles from the press.  And they want to introduce how much money TOL has earned in the United States without first having to show that there has been any infringement.  For all of these reasons, too, bifurcation in this case is appropriate.

Plaintiffs are also engaged in extra-judicial efforts to inject unfounded, inadmissible,

irrelevant and prejudicial issues into this case to substitute for the evidence of infringement that they lack, plainly hoping to prejudice a sitting jury and to potentially taint the jury pool. Defendants will address such efforts should they continue.

## **ARGUMENT**

### I. Bifurcation Should Be Ordered Because Virtually No Overlap Exists Between The Liability And Damages Evidence

Plaintiffs do not dispute, because they cannot dispute, that "[b]ifurcating a trial into a liability and damages phase may be appropriate … where there is little overlap in the evidence that would be presented at each phase." *Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299, at *24 (C.D. Cal. Sept. 24, 2015) (citations & quotations omitted); *see also Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984); *Zofcin v. Dean*, 144 F.R.D. 203, 205 (S.D.N.Y. 1992).

Nor have Plaintiffs shown that any liability evidence actually overlaps with damages evidence. As Defendants demonstrated at length in their moving papers, the trial of this action, no matter how short or long, will present wholly discrete liability and damages issues with virtually no overlap whatsoever in the evidence. The liability phase of trial will address, among other things, (a) whether Ed Sheeran and Amy Wadge independently created TOL or whether they copied from LGO in authoring TOL, and (b) whether TOL is substantially similar to protectable elements in LGO. In contrast, in the unlikely event an infringement is found, the damages phase of trial will address (a) the net profits the Defendants have earned in the United States from the exploitation of TOL and (b) what portion of those profits are attributable to the alleged infringement.

Recognizing that bifurcation is appropriate where, as here, "little overlap in the evidence" exists, Plaintiffs carefully ignore undisputed evidence, claiming that the same witnesses supposedly will be called during each phase of trial. Plaintiffs claim they will call Ed Sheeran's management team, Atlantic and SATV to testify on liability about the creation of TOL, whereas

3

Defendants intend to call these witnesses only during the damages phase of trial.[2]

To begin with, it is irrelevant whether the same witnesses are called during different phases of a trial. What is relevant is whether their supposed testimony is discrete as to the two phases. But more importantly, no one but Ed Sheeran and Amy Wadge has any personal knowledge regarding the creation of TOL. Calling a witness to testify on a subject about which they have no knowledge is nonsensical and a waste of party and judicial resources. Defendants have already established that Sheeran's manager, Atlantic and SATV have nothing to offer about the creation of TOL. (ECF No. 140).[3]

It is not merely that Defendants have provided undisputed evidence regarding the creation of TOL but it is also that Plaintiffs know, from the deposition of Ed Sheeran (Reply Zakarin Decl. Exhibit 1 at 62:12-67:2), that Ed Sheeran and Amy Wadge co-authored TOL in February 2014 at Mr. Sheeran's home with no one else present. And because they already knew that only Ed Sheeran and Amy Wadge were present when TOL was created, Plaintiffs did not bother to ask a single question of Atlantic or SATV representatives regarding the creation of TOL at their depositions. (Reply Zakarin Decl. ¶ 5).[4] Nor did they even seek to depose Ms. Wadge.

With respect to Plaintiffs' assertion that Dr. Stewart will supposedly offer testimony as to

---

[2] In the event the Court grants the First Motion *In Limine* filed by Plaintiffs seeking to exclude Sheeran's manager, Stuart Camp, from testifying (which is peculiar given that Plaintiffs have indicated they intend to call Mr. Camp as a witness during their case-in-chief), Defendants reserve the right to call Mr. Sheeran during the damages phase of trial to testify regarding his career trajectory and his success prior to TOL's release. Of course, such testimony is entirely discrete from any liability evidence.

[3] The day after he and Wadge co-authored TOL at his house in England, Sheeran recorded what would become the commercially released version of TOL, with Jake Gosling producing the track. Apart from Sheeran and Wadge, Mr. Gosling and the session musicians appearing on the track are the only other potential witnesses with any knowledge regarding the creation of TOL. Such witnesses have no pertinent information respecting damages.

[4] In fact, Atlantic and SATV are only U.S. licensees of the rights to Sheeran's recordings and music publishing rights. His contracts are with United Kingdom companies that are not defendants in this case. This further supports the fact that Atlantic and SATV have no evidence regarding the creation of TOL.

4

the apportionment of profits between infringing and non-infringing elements in TOL, beyond all of the other flaws in his Report (already addressed in this Court's August 18, 2020 Order), his Report does not include a single sentence addressing apportionment.  (ECF 127-1).  His deeply flawed and largely stricken Report, based as it is on the Marvin Gaye recording, cannot possibly provide any basis for apportionment testimony.  However, even assuming, *arguendo*, that Dr. Stewart were to offer anything on the topic of apportionment – assuming it were admissible – he could provide testimony during the liability phase, thereby obviating Plaintiffs' professed concern about Dr. Stewart having to testify twice.

Ultimately, while Plaintiffs baldly claim overlapping witnesses exist (notwithstanding that they have identified none who actually have any admissible evidence to offer regarding liability), they have not identified any overlapping admissible evidence those witnesses could or would offer.

## II.    Plaintiffs' Attempted Distinctions Of Defendants' Authorities Fail

As they did in their letter to this Court, Plaintiffs contend that the case law cited by Defendants in their moving memorandum is supposedly inapposite.  *See* Opp. Mem. ¶¶ 10-15.  It is not.  Plaintiffs instead misrepresent the three cases that they cherry-pick from all of the law cited by Defendants – *Fahmy*, *Walker* and *Loussier* – and completely ignore all of the other cases Defendants cited that overwhelmingly support bifurcation where, as here, little if any overlap exists between liability and damages evidence.  *See* Mov. Mem. at 3-4 (citing authorities).

*First*, Plaintiffs again misrepresent *Fahmy v. Jay Z*, No. 07-cv-05715 (CAS), 2015 WL 5680299, at *24 (C.D. Cal. Sept. 24, 2015), wherein the Court bifurcated a copyright infringement trial into distinct liability and damages phases since it found "there will be at most only minimal overlap in the evidence presented at each phase of the trial."  In particular, Plaintiffs claim that "[b]ecause there was a threshold issue of legal standing and/or ownership at issue [in *Fahmy*],"

5

implicating Egyptian law, "the Court determined that it was appropriate to bifurcate the trial of the case." *See* Opp. Mem. ¶ 12. That is simply not true. The defendants in *Fahmy* asked the Court to determine, in the first instance and before any jury trial commenced, certain matters relating to Egyptian law. *Id.* at *23. The Court <u>denied</u> that request. *Id.* at *23-24. Separately, the defendants requested that trial be bifurcated into distinct liability and damages phases. *Id.* at *24-25. The Court <u>granted</u> that latter request. *Id.* The issue of Egyptian law had nothing to do with the Court's decision to bifurcate liability and damages, and the Court did not mention the issue of Egyptian law a single time in the section of its decision granting bifurcation of trial into liability and damages phases. *Id.*

*Second*, Plaintiffs misapprehend *Walker v. Carter*, 210 F. Supp. 3d 487 (S.D.N.Y. 2016). Plaintiffs point to the fact that the Court bifurcated liability and damages for purposes of both discovery and trial whereas here, liability and damages discovery were not bifurcated and all discovery has already been conducted. As Defendants noted in their letter to this Court, that is in fact a further reason why bifurcation is appropriate in this case: the trial on damages can proceed before the same jury (should Plaintiffs obtain a finding of infringement) because discovery is concluded (in *Walker* the parties would have needed to try the case on liability and then conduct damages discovery and then conduct a second trial on damages before a different jury).

Further, contrary to Plaintiffs' suggestion, the fact that the plaintiffs agreed to bifurcation in *Walker* and that the Court then granted summary judgment in favor of the defendant has nothing to do with the Court's decision to bifurcate liability and damages for trial (unless it was a reflection, not unlike here, that the Plaintiffs' infringement claim was weak).[5]

---

[5] Similarly, Plaintiffs attempt to distinguish *Loussier v. Universal Music Grp., Inc.*, 214 F.R.D. 174 (S.D.N.Y. 2003), by pointing out that the parties agreed to bifurcation in that case. Once again, however,

### III. Bifurcation Will Promote Judicial Economy And Protect Against Jury Confusion And Unfair Prejudice

In addition to the absence of overlapping evidence, bifurcation will also promote judicial economy and protect against jury confusion and unfair prejudice (which is plainly what Plaintiffs hope to achieve).

Given the virtual nonexistence of evidence of infringement in this case (discussed above), Defendants submit that there is a strong likelihood that a jury (or this Court) will reject any finding of infringement. Thus, "bifurcating the trial would conserve judicial resources because the liability portion of the trial may obviate the need for a trial on damages." *Fahmy*, 2015 WL 5680299, at *24; *see also Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 335, 338 (S.D.N.Y. 2013); *Hopkins v. Nat'l R.R. Passenger Corp.*, No. 08-cv-2965 (NGG), 2016 WL 1588499, at *3 (E.D.N.Y. Apr. 19, 2016).

Plaintiffs' suggestion that it would be inconvenient to require witnesses to testify twice assumes that there are overlapping witnesses, and Plaintiffs have not and cannot show that there are any, as shown above in Section I. In any event, all of the witnesses that supposedly would need to testify twice are defense witnesses, and Defendants do not object to the alleged "inconvenience."[6] Plaintiffs' further suggestion that the jury could take a long time to deliberate is both rank speculation and irrelevant. However long they may deliberate has no bearing on whether bifurcation would conserve judicial and party resources. It plainly would (and in any event, however long or short a time they may deliberate about liability, they would take that much

---

their agreement – and the Court's endorsement of that agreement – only reinforces that liability and damages questions are wholly discrete in most copyright infringement actions.

[6] To the extent Dr. Stewart were permitted to offer testimony regarding apportionment, that testimony would be extremely brief in duration (as Plaintiffs admit, it only will address what amount of TOL includes elements similar to LGO) and can be offered during the liability phase of trial.

7

longer were they also required to hear damages evidence and to deliberate about damages).

Further, Plaintiffs have no response (and offer none) to the fact that "bifurcation is appropriate when the evidence pertinent to the two issues" – *i.e.*, liability and damages – "is wholly unrelated and the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *Lagudi v. Long Island R.R. Co.*, 775 F. Supp. 73, 74 (E.D.N.Y. 1991) (citation & quotation omitted). Although Plaintiffs claim it would be speculative to find a jury could be influenced by learning of the revenues generated by Defendants from TOL, common sense dictates that such evidence could influence a jury (and, in any event, Plaintiffs' thesis that a jury would not be influenced is even more speculative). Further, the courts granting bifurcation have concluded that the risk of such prejudice warrants bifurcation. *E.g.*, *Zofcin*, 144 F.R.D. at 205; *Hopkins*, 2016 WL 1588499, at *3; *Lagudi*, 775 F. Supp. at 74.

Finally, apart from unfair prejudice, presenting the two issues simultaneously could cause jury confusion, as the two issues have nothing at all to do with each other.

## IV.   **Plaintiffs' Contentions Regarding Complexity Are Baseless**

As Defendants demonstrated in their moving papers, the damages phase of trial, should one be necessary, will involve complex documentary evidence and expert analysis relating to Defendants' profits attributable to TOL and the apportionment of those profits between those attributable to the alleged infringement and those that are not. *See* Mov. Mem. at 6-9. For this additional, independent reason, bifurcation also should be granted.[7]

Ignoring Defendants' presentation in their moving papers regarding the nature of the

---

[7] While Defendants understood that they had reached a stipulation with Plaintiffs to introduce the spreadsheets reflecting all revenues and expenses of the Defendants into evidence, Plaintiffs' opposition to this motion appears to be equivocating about that issue. Absent such stipulation, the damages evidence will become far more extensive and complicated.

8

damages evidence, Plaintiffs conclude, without elaboration or support, "that any claims as to the purported complexity of this case are overstated." Opp. Mem. ¶ 4. But this is a conclusion bereft of any facts (especially if Plaintiffs renounce their stipulation as to the admission of the spreadsheets produced by Defendants that reflect the United States revenues and expenses associated with TOL).

Plaintiffs also offer that they intend to object to witnesses (such as Defendants' damages expert), presumably implying that the theoretical exclusion of such witnesses would simplify the damages phase of this case. However, Plaintiffs have not done so (and having failed to even take the deposition of Defendants' damages expert, Defendants find this threat hollow). (Reply Zakarin Decl. ¶ 6). But even if Plaintiffs were successful in trying to limit the number of damages witnesses, the evidence and testimony would still be distinct from the evidence and testimony on liability, and would remain far more extensive and complicated than the evidence on liability.

In short, Plaintiffs' opposition to bifurcation is legally and factually baseless. Defendants respectfully submit that their motion for bifurcation should be granted.

## CONCLUSION

It is respectfully submitted that Defendants' motion should be granted, and that the trial of this action should be bifurcated into liability and damages phases, with the damages phase of trial immediately following the liability phase, if necessary.

Dated: New York, New York
September 29, 2020

                                          PRYOR CASHMAN LLP

                                          By: */s/ Donald S. Zakarin*
                                              Donald S. Zakarin
                                              Ilene S. Farkas
                                              Andrew M. Goldsmith
                                        7 Times Square
                                        New York, NY 10036
                                        (212) 421-4100

                                        *Attorneys for Defendants Edward*
                                        *Christopher Sheeran, Atlantic Recording*
                                        *Corporation and Sony/ATV Music*
                                        *Publishing LLC*