UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, THE ESTATE OF CHERRIGALE TOWNSEND and THE HELEN CHRISTINE MCDONALD TRUST,

*Plaintiffs*,

-against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS

*Defendants*.

ECF CASE

17-cv-5221 (LLS)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' FIRST MOTION *IN LIMINE*

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony/ATV Music Publishing LLC*

*Of Counsel:*
  Donald S. Zakarin
  Ilene S. Farkas
  Andrew M. Goldsmith

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 4

I.   Legal Standard ............................................................................................................... 4

II.  The Omission Is Harmless Because Plaintiffs Can Still Depose Camp ................... 5

CONCLUSION .................................................................................................................................... 6

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                          **PAGE(s)**

*D'Amico v. Department of Children & Families*,
   No. 16-cv-655(JAM), 2018 WL 650371 (D. Conn. Jan. 31, 2018) .......................................... 6

*Design Strategy. Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006) ..................................................................................................... 4

*Downey v. Adloox Inc.*,
   No. 16-cv-1689(JMF), 2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) ......................................... 6

*Harris v. Lewis*,
   No. 16-cv-1214 (JO), 2019 WL 5592747 (E.D.N.Y. Oct. 30, 2019) ............................... 4, 5, 6

*L-3 Commc'ns Corp. v. OSI System, Inc.*,
   No. 02-cv-9144(PAC), 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ................................... 4, 6

*Outley v. City of New York*,
   837 F.2d 587 (2d Cir. 1988) ..................................................................................................... 5

*Pal v. New York University*,
   No. 06-cv-5892 (FM), 2008 WL 2627614 (S.D.N.Y. June 30, 2008) ...................................... 4

*Widman v. Stegman*,
   No. 13-cv-193 (DEP), 2015 WL 13832105 (N.D.N.Y. Apr. 28, 2015) .................................... 5

## **RULES**

Fed. R. Civ. P. Rule 26(a) ................................................................................................................ 4

Fed. R. Civ. P. Rule 26(a) (1)(A) .................................................................................................... 4

Fed. R. Civ. P. Rule 26(e) ............................................................................................................... 4

Fed. R. Civ. P. 37(c)(1) .............................................................................................................. 4, 6

ii

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC ("SATV") respectfully submit this memorandum of law in opposition to the first motion *in limine* filed by the plaintiffs ("Plaintiffs") seeking to exclude Stuart Camp ("Camp") as a trial witness.[1]

## **PRELIMINARY STATEMENT**

Plaintiffs claim that they have been prejudiced by the June 2020 identification of Stuart Camp, Ed Sheeran's long-time manager, as a witness, not because he was unknown to them (on the contrary, Plaintiffs insist that they want to call him themselves on their own case) but because he was not identified by Defendants as a potential witness in their initial disclosures in October 2017.[2] Consistent with the case law cited by the Plaintiffs, this alleged failure is utterly harmless and does not warrant preclusion of Mr. Camp given that Plaintiffs have both known of Mr. Camp's role since 2018 (when Defendants produced documents reflecting his involvement) and have had ample time to depose Mr. Camp between his June 2020 identification and the November 2020 trial.

As Ed Sheeran testified at his deposition, Mr. Camp has been his manager practically since the inception of his career in 2010. (Zakarin Decl. Exhibit 1 at 26:16-28:22). Consistent with that fact, Defendants have produced a number of documents to Plaintiffs that were directed to or emanated from Mr. Camp. (*Id.* ¶ 4).

As this case has evolved since it was filed, Defendants determined that, should this case progress to the damages phase, apportioning the profits earned by the Defendants between allegedly infringing and non-infringing elements may make the arc of Ed Sheeran's career prior

---

[1] As an initial threshold matter, the motion is defective insofar as the Notice of Motion (ECF 155) does not seek specific relief.

[2] It is undisputed that Mr. Camp was identified in Defendants' subsequent amended initial disclosures dated June 11, 2020, five months prior to the current trial date. However, Mr. Camp's role in the professional life of Ed Sheeran was revealed in multiple documents produced to Plaintiffs nearly three years ago.

to the release of TOL relevant to demonstrate, among other things, Sheeran's established popularity and star power.  Mr. Camp has relevant information to provide on this subject, although he would not be the sole witness with information that may bear on the issue.  Accordingly, should this case reach a damages phase, Defendants contemplate calling Mr. Camp with respect to this topic.

In addition, Plaintiffs have continued to assert, without any real evidence to support the contention, that Ed Sheeran supposedly "experienced a sharp and sudden rise … as a direct result" of TOL.  (ECF 1 ¶ 26).  It is not clear why this assertion is at all relevant.  It has no bearing on any damages issue nor on any liability issue.  Plaintiffs offer no expert opinion or testimony to analyze Mr. Sheeran's career as it pertains to TOL.  But because the evidence is to the contrary and because Mr. Camp has information that would bear on this assertion should it somehow be presented at trial, Mr. Camp could also be a witness on this subject.

Notably, much of the information to which Mr. Camp would testify at trial already has been disclosed publicly through the Declaration that Mr. Camp submitted in one of the companion cases commenced by Structured Asset Sales, LLC.  (Zakarin Decl. Exhibit 2).  Further, Sheeran's widespread success and the trajectory of his career – rising from an unknown singer-songwriter playing small venues in obscure English towns to an international megastar headlining sold-out stadium tours, including sold out dates at Madison Square Garden prior to the release of the album *x*, from which TOL was the third, not the first, single – has been a very public matter.  To the extent it becomes relevant, Mr. Camp is in a position to provide information regarding the arc of Sheeran's career before TOL.

Nor can Plaintiffs claim surprise by virtue of Defendants seeking to call Mr. Camp as a trial witness.  Sheeran testified regarding Mr. Camp at his February 2018 deposition, Sheeran's

interrogatory responses identify Camp as having helped prepare the responses,[3] and of the emails the Defendants produced in discovery, Camp appeared on almost all of them.  (*Id.* ¶ 5).

So what is the substance of Plaintiffs' claim of prejudice by virtue of Defendants' failure to identify Mr. Camp in their initial disclosures in October 2017?  There is none.  Plaintiffs have received ample documentary evidence reflecting Mr. Camp's role in the career of Ed Sheeran.  They have had access to his declaration in SAS.  They have had the benefit of Ed Sheeran's deposition testimony identifying Mr. Camp's role.  And they have themselves insisted that he should be a witness at trial.

In the face of these facts, solely because Mr. Camp was not formally identified as a potential witness until Defendants served their Second Amended Initial Disclosures on June 11, 2020 (to which Plaintiffs never objected), Plaintiffs have moved to exclude from trial a witness they themselves claim they want to call as a witness.[4]

Under these circumstances, and especially given that Plaintiffs have had more than ample opportunity to seek Mr. Camp's deposition, the Court should exercise its discretion and deny Plaintiffs' motion to exclude Mr. Camp as a witness.

---

[3] Plaintiffs' interrogatories did not seek any information that would require the identification of Mr. Camp; however, Defendants' November 2017 responses identified Mr. Camp as having assisted in the responses.

[4] Plaintiffs have taken not a single deposition of a single witness other than of the defendants; indeed, not even of Amy Wadge, the co-author of TOL.  So it is not as if Plaintiffs would otherwise have taken Mr. Camp's deposition had they only known he might be a witness (putting to the side they want to call him as a witness on a topic about which he has no firsthand knowledge – the creation of TOL).  But Defendants are certainly willing to make Mr. Camp available for deposition, remotely or otherwise when feasible, if Plaintiffs wish to question him before trial.

**ARGUMENT**

**I.     Legal Standard**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, <u>unless</u> the failure was substantially justified <u>or is harmless</u>."  (Emphases added).

As the Notes Of Advisory Committee On Rules explain, "[l]imiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties."  The Advisory Committee's example is precisely the case here.

Critically, as two of the cases cited by Plaintiffs in their memorandum make clear, "[a] failure to disclose can be considered harmless, so long as the opposing party has an opportunity to depose the witness before trial." *Harris v. Lewis*, No. 16-cv-1214 (PKC) (JO), 2019 WL 5592747, at *1 (E.D.N.Y. Oct. 30, 2019) (citing *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02-cv-9144 (PAC), 2006 WL 988143, at *4 (S.D.N.Y. Apr. 13, 2006)) (other citation omitted).[5]

Moreover, "[d]espite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Pal v. N.Y. Univ.*, No. 06-cv-5892 (PAC) (FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008) (quoting *Design Strategy. Inc. v. Davis*,

---

[5] For the avoidance of doubt, *Harris* misquotes Fed. R. Civ. P. 37(c)(1), stating that a party that fails to disclose certain information "is not permitted to use such information as evidence, unless there is substantial justification provided for the failure <u>and</u> such failure is harmless." *Id.*  Plaintiffs repeat this improper quotation at Paragraph 8 of their memorandum of law.  To be sure, the underlined "and" is a misquote.  Rule 37 uses the disjunctive "or."  So long as the failure is "harmless" – as it is here – the omission of a trial witness in initial disclosures does not preclude the disclosing party from calling that witness at trial.

4

469 F.3d 284, 297 (2d Cir. 2006)).  "'Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses.'" *Widman v. Stegman*, No. 13-cv-193 (BKS) (DEP), 2015 WL 13832105, at *4 (N.D.N.Y. Apr. 28, 2015) (quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)).

Thus, assuming a District Court finds the discovery violation is neither substantially justified nor harmless (which is not the case here), the Court, "[i]n determining whether evidence should be precluded," considers the following factors: "(1) the party's explanation for the failure to disclose, (2) the importance of the evidence to be precluded, (3) the prejudice suffered by the opposing party if the evidence were not precluded, and (4) the possibility of a continuance." *Harris*, 2019 WL 5592747, at *2 (citations & quotations omitted).

Here, the original omission of Mr. Camp from Defendants' initial disclosures is harmless.  Mr. Camp was indeed known to all parties.  As such, the Court need not address the four preclusion factors identified above.  Yet, even if the Court were to do so, preclusion would not be warranted.

## II.     **The Omission Is Harmless Because Plaintiffs Can Still Depose Mr. Camp**

As detailed above, Plaintiffs have known of Mr. Camp's integral role in Sheeran's career since at least the time that Sheeran identified Mr. Camp at his deposition (and indeed before because of the documents produced by Defendants).  Nearly all of the email communications that Defendants produced in this case include Mr. Camp, and Mr. Camp offered a detailed Declaration in the SAS Action regarding Sheeran's career trajectory at the end of 2019.

As such, Mr. Camp was a "witness known to all parties," and his original omission from Defendants' initial disclosures was not purposeful, as his role was fully disclosed. (Zakarin Decl. ¶ 6).  To the extent that there were any prejudice – and there is none – it could be eliminated by

5

affording Plaintiffs the opportunity to depose Mr. Camp before trial, either remotely, given current conditions, or in advance of trial in person, once that is possible.  As confirmed by two of the very cases Plaintiffs cite, the extreme remedy of preclusion is not warranted and should, in any event, be sparingly granted.  *E.g.*, *L-3 Commc'ns Corp.*, 2006 WL 988143, at *4; *Harris*, 2019 WL 5592747, at *1.

Nor do the only other two cases cited by Plaintiffs alter this conclusion.  *See Downey v. Adloox Inc.*, No. 16-cv-1689 (JMF), 2018 WL 794592 (S.D.N.Y. Feb. 8, 2018); *D'Amico v. Dep't of Children & Families*, No. 16-cv-655 (JAM), 2018 WL 650371 (D. Conn. Jan. 31, 2018).  In *Downey*, the plaintiffs identified <u>thirteen</u> witnesses for the first time on the literal eve of trial.  *See Downey*, 2018 WL 794592, at *1.  And, in *D'Amico*, the plaintiff identified a witness for the first time on the eve of trial, whereas here Defendants identified Mr. Camp more than five months before the scheduled trial date (in actuality, Mr. Camp was identified in discovery responses and documents produced some three years ago).

Moreover, while the Court need not consider the four "preclusion" factors since the omission of Mr. Camp was harmless within the meaning of Rule 37(c)(1), even if it were to consider those factors, it weights against preclusion, as the prejudice to Plaintiffs is nonexistent given the disclosures made to them long ago and the ability, should they want to exercise it, to depose Mr. Camp.

For all of these reasons the motion should be denied.

## CONCLUSION

It is respectfully submitted that Plaintiffs' First Motion *In Limine* should be denied.

Dated: New York, New York
October 12, 2020

PRYOR CASHMAN LLP

By: /s/ Donald S. Zakarin
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony/ATV Music Publishing LLC*