UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, THE ESTATE OF CHERRIGALE TOWNSEND and THE HELEN CHRISTINE MCDONALD TRUST,

    *Plaintiffs*,

-against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS

    *Defendants*.

ECF CASE

17-cv-5221 (LLS)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SIXTH MOTION *IN LIMINE* TO PRECLUDE "MASH-UP"/MEDLEY EVIDENCE

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

*Of Counsel:*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................4

    I.    THE MEDLEYS SHOULD BE EXCLUDED .......................................................4

        A.    The Mash-Ups/Medleys Are Not Relevant To Plaintiffs' Claims ................6

        B.    Admission Of The Medleys Would Violate Rule 403 .................................8

        C.    Admission Of The Medleys Will Have A Chilling Effect On Artists And The Public's Consumption Of Music .....................................................................................................10

CONCLUSION.........................................................................................................................11

# TABLE OF AUTHORITIES

**PAGE(s)**

## CASES

*Darrell v. Joe Morris Music Co.*,
   113 F.2d 80 (2d Cir. 1940)...................................................................................................10

*Elwood v. Pina*,
   815 F.2d 173 (1st Cir. 1987).................................................................................................9

*Gray v. Perry*,
   No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020),
   *aff'd sub. nom Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022)..................................................5, 6

*Knight v. State Univ. of N.Y. at Stony Brook*,
   No. 13-cv-0481 (JS), 2016 WL 7046765 (E.D.N.Y. Dec. 2, 2016) .........................................6

*Park W. Radiology v. CareCore Nat. LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009)...................................................................................9

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020), *cert. denied* 208 L. Ed. 2d 145 (Oct. 5, 2020),
   *reh'g denied*, 208 L. Ed. 2d 482 (Dec. 7, 2020) ....................................................................5, 6

*United States v. Edwards*,
   631 F.2d 1049 (2d Cir. 1980).................................................................................................8

*United States v. Hooton*,
   662 F.2d 628 (9th Cir. 1981) ...............................................................................................8, 9

*United States v. Rewald*,
   889 F.2d 836 (9th Cir. 1989), *amended*, 902 F.2d 18 (9th Cir. 1990)......................................9

*United States v. White*,
   No. 08-cr-0682 (NGG), 2009 WL 4730234 (E.D.N.Y. Dec. 4, 2009) ....................................9

## Other Authorities

Fed. R. Evid. 401 ...........................................................................................................................6

Fed. R. Evid. 403 ...................................................................................................................3, 8, 9

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC (n/k/a Sony Music Publishing (US) LLC) ("SMP," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their Sixth Motion *In Limine* for an Order precluding Plaintiffs from introducing at trial any evidence that Sheeran – or any other performer or musician – has "mashed up" *Let's Get It On* ("LGO") with *Thinking Out Loud* ("TOL") or performed a medley of LGO and TOL.

## PRELIMINARY STATEMENT

This Court has ruled that the chord progression and harmonic rhythm used in both TOL and LGO are "common musical techniques" that are unprotectable. (ECF 138).[1] There are dozens if not hundreds of songs that predate and postdate LGO utilizing the same or similar chord progression. A singer can readily segue from singing the lyrics of one song into singing the lyrics of another song that utilizes the same or similar chord progression.

In fact, that is exactly what happened with TOL and LGO. It is undisputed that, during one of Ed Sheeran's dozens of concert performances of TOL – which was uploaded to YouTube – he briefly segued from singing the words of TOL over its chord progression into singing some of the words of LGO over TOL's chord progression (the YouTube video actually reveals that Sheeran did not even know most of the words to LGO, other than the title lyrics). Because TOL and LGO use different variations of a commonplace and unprotectable chord progression (and an equally commonplace and unprotectable harmonic rhythm), the mash-up shows only that where common chord progressions are used in different songs, one can easily transition from singing the

---

[1] In fact, the chord progression in TOL differs from the chord progression in LGO, and the harmonic rhythms are also different.

lyrics of one song to singing the lyrics of the other song over the chord progression.

Ignoring this Court's ruling that the chord progression in LGO is common and unprotectable (and ignoring as well that performing artists perform such medleys on a daily basis), Plaintiffs' Proposed Pre-Trial Order includes this medley or "mash-up" YouTube video as a proposed Exhibit. Plaintiffs also include as a proposed Exhibit a video of a live performance by the group known as *Boyz II Men* during which they performed a medley of the two songs. These medleys are irrelevant to any issue in the case and would be misleading, confuse the jury and require extensive additional evidence to properly contextualize; therefore, they should be excluded from evidence.

As a matter of evidence, the fact that Sheeran segued from singing lyrics from TOL played over a chord progression in TOL to singing a snippet of lyrics from LGO over the same TOL chord progression only speaks to the undisputed fact that the commonplace, unprotectable chord progressions (not the lyrics) are similar. But because there is no dispute in this case that the commonplace, unprotectable chord progressions in TOL and LGO are similar, the video evidence of the medleys that Plaintiffs propose to introduce is irrelevant to any disputed issue of fact in this case. "Mashing-up" snippets of two songs by performing them over similar, commonplace chord progressions does not bear on the disputed issue of whether Sheeran unlawfully copied from LGO in authoring TOL.

Those medleys should thus be excluded at trial because they are not relevant to the sole question in dispute: whether Sheeran infringed LGO. Moreover, not only is such a "mash-up" of the two songs not probative of copying (or, more importantly, wrongful copying, because it is indisputable that the authors of LGO cannot claim any exclusive right to use the "common musical techniques" of the unprotectable chord progression and the equally unprotectable harmonic

rhythm), placing the mash-up of TOL and LGO before the jury would be highly prejudicial, likely result in jury confusion and violate Federal Rule of Evidence 403. For example, the jury may assume, mistakenly, that Sheeran "must have" copied from LGO since Sheeran – having perceived a similarity between the chord progression in TOL and the similar commonplace chord progression in LGO that Ed Townsend did not originate – briefly mashed up TOL and LGO during a concert. But this occurred long after Sheeran created TOL, reflects only the undisputed fact that both songs use similar unprotectable chord progressions and could result in the jury mistakenly elevating the completely non-actionable use of an unprotectable, basic musical building block that does not belong to Townsend (or anyone else) into "evidence" of copying.

The prejudice from the admission of such misleading "evidence" cannot be cured even by permitting Sheeran to present substantial video evidence showing that he often performs "medleys" or "mash-ups" of his songs in concert with other of his songs and with songs written by others (and that other musicians also perform such "mash-ups" in concert). Instead, jurors could be confused into mistakenly believing that Sheeran's segue between TOL and LGO evidences wrongful copying, rather than the fact that the two songs share versions of a similar and unprotectable chord progression that was freely available to all songwriters. As a matter of law, the medley does not lend any evidentiary support for Plaintiffs' claim of wrongful copying and this evidence could therefore override instructions that the chord progression is unprotectable and otherwise confuse the jury.

Finally, as a practical matter, permitting the jury to consider a medley or "mash-up" as evidence of infringement, when it plainly is not such evidence, would have a chilling effect on an exceedingly common practice in the music industry (*i.e.*, the live performance of medleys). If such medleys or "mash-ups" can be used by copyright plaintiffs as "evidence" of copying, then

performing artists will be hesitant to perform medleys at all for fear of exposing themselves to baseless claims of infringement. Indeed, given that Plaintiffs also wish to use a "mash-up" performed by someone other than Sheeran, even if an artist refrained from performing "mash-ups" of his or her own songs, the exposure to infringement claims based on some other artist "mashing up" unprotectable musical elements cannot be protected against unless such evidence is barred. Moreover, as discussed below, music is built on preexisting musical forms. Elements such as tempo, chord progressions, rhythmic devices like syncopation, tritones and other basic musical building blocks cannot be monopolized by any writer without stifling the creation of new music now and in the future.

Where, as here, the "mash-up" consists solely of a singer segueing between lyrics of two songs that are played over a commonplace and unprotectable chord progression that appears in both songs (albeit, the chord progressions are not exactly the same), and where the evidence is not offered to provide proof of access (which is undisputed in this case), such evidence has no probative value addressed to any disputed issue of fact. On the contrary, it can only cause jury confusion and create prejudice.

Accordingly, it is respectfully submitted that the medleys/mash-ups identified in Plaintiffs' sections of the Proposed Pre-Trial Order should be excluded.

## ARGUMENT

### I. THE MEDLEYS SHOULD BE EXCLUDED

Even before turning specifically to why Plaintiffs should be barred from using the medleys at trial, it is important to frame the issue by reference to this Court's existing ruling regarding the scope of the dispute in this case. This Court has held that the chord progressions and harmonic rhythm used in both LGO and TOL are "common musical techniques," which means they are not

4

protectable. (ECF 138). This Court's determination is consistent with significant holdings from other courts. For example, as the District Court held in *Gray v. Perry*, courts have an obligation to "carefully limit[] the scope of copyright protection" and "[m]usical elements that are 'common or trite' – such as the 'use of a long-short-long rhythm,' '**chord progressions**,' certain 'tempos,' a 'recurring vocal phrase,' repeating 'hook phrases,' the alternating 'emphasis of strong and weak beats,' '**syncopation**,' the use of 'tritones,' or the use of 'basic musical devices in different manners,' – are, accordingly, not protectable." No. 15-cv-05642 (CAS), 2020 WL 1275221, at *4-5 (C.D. Cal. Mar. 16, 2020), *aff'd sub. nom Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022) (citations omitted; emphasis added); *see also Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020), *cert. denied* 208 L. Ed. 2d 145 (Oct. 5, 2020), *reh'g denied*, 208 L. Ed. 2d 482 (Dec. 7, 2020) ("Nor does copyright extend to 'common or trite' musical elements … These building blocks belong in the public domain and cannot be exclusively appropriated by any particular author") (citations omitted); *id.* at 1071 ("In view of our precedent and accepted copyright principles, the district court did not commit a reversible error by instructing the jury that a limited set of a useful three-note sequence and other common musical elements were not protectable").

Thus, unless a mash-up provides evidence of access (which is not the case here), where the mash-ups or medleys consist of commonplace building blocks of music available to all songwriters to use and build upon – now and in the future – permitting such mash-ups or medleys to become evidence to prove alleged infringement would impede the ability of performers to perform medleys or "mash-ups" of songs that employ such trite, common elements.

Here, the evidence Plaintiffs propose to offer should be excluded for at least the following three reasons.

### A. The Mash-Ups/Medleys Are Not Relevant To Plaintiffs' Claims

As a threshold matter, the mash-ups/medleys fail to meet the standard for relevance. To be relevant, evidence must have a tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401; *accord Knight v. State Univ. of N.Y. at Stony Brook*, No. 13-cv-0481 (JS), 2016 WL 7046765, at *1 (E.D.N.Y. Dec. 2, 2016). Here, the mash-ups/medleys do not bear on a single disputed fact of consequence.

The fact that Sheeran and *Boyz II Men* have recognized unremarkable, objective similarities between the commonplace, unprotectable chord progressions in each composition (similarities that Defendants never have disputed and which this Court has ruled are common and hence unprotectable) is not evidence of copying, let alone wrongful copying.[2] Even if one set out to copy something freely available in the public domain – and Sheeran and co-author Amy Wadge did not copy LGO in creating TOL – it could not be wrongful. At most, the medleys show that Sheeran and *Boyz II Men* recognized that one can segue from singing lyrics of one song to lyrics of the other song over that commonplace chord progression. Because a commonplace TOL chord progression is similar to the equally commonplace chord progression in LGO, the fact that Sheeran and *Boyz II Men* segued from one song to another that uses the same or similar commonplace and unprotectable chord progression is not probative of any issue in the case.

Further, the performance of medleys at live concerts is exceedingly common. As this Court has previously ruled, and as the Courts in *Gray v. Perry* and *Skidmore v. Led Zeppelin* have concluded, many songs share commonplace, unprotectable elements – like chord progressions. The presence of such nonactionable similarities is what enables a performer to move seamlessly

---

[2] Again, it is undisputed and indisputable that the chord progressions and harmonic rhythms of LGO and TOL are in fact neither identical nor virtually identical.

between one song and another and, while doing so may provide evidence of access where it is disputed, it does not otherwise convert such nonactionable similarities into evidence of infringement.[3]  For example, the band Axis of Awesome has famously played their song *Birdplane*, authored in 2010, as a medley with **46** other songs – all of which predate *Birdplane* – representing nearly every musical genre and including artists as varied as U2, Maroon 5, Elton John, Spice Girls, The Smashing Pumpkins, Avril Lavigne, Lady Gaga, Red Hot Chili Peppers, Toto, Green Day, Bob Marley, The Beatles, and Eminem.[4]  The fact that Axis of Awesome performed this 46-song medley provides no evidentiary support for any argument that Axis of Awesome infringed any or all of the songs featured in the medley, as *Birdplane* is the most recent song in the medley.

As another example, Sheeran has performed other medleys as well during his live performances, including a medley of his songs *Don't* and *Nina* with the famous rap songs *Loyal*, *No Diggity* and *The Next Episode* (all of which predate Sheeran's songs), a medley of his song *Take It Back* with the Stevie Wonder classic *Superstition*, and a medley of his song *Runaway* with the Backstreet Boys song *Everybody*.[5]  These medleys simply reflect that there are unprotectable musical similarities between the songs that permit a performer to segue between the songs.  Their use in a medley or "mash-up" provides no evidence of infringement.

The reality is that, in virtually every instance, medleys and "mash-ups" will involve songs

---

[3] It also reflects the reality that in the course of concert tours, performing artists inevitably will add or subtract performance elements from the songs they perform to create some degree of freshness and spontaneity.

[4] This medley can be viewed on YouTube at: https://www.youtube.com/watch?v=oOlDewpCfZQ.

[5] Examples of these medleys can be viewed on YouTube at the following URLs:
https://www.youtube.com/watch?v=ZpiNUKpGI88&ab_channel=RubySessionsTV
https://www.youtube.com/watch?v=CdY3mJoO88Y&ab_channel=AlexShade
https://www.youtube.com/watch?v=ooZ7h7XoFco&ab_channel=ThisMusicLife.

where the performer can transition from one song to another seamlessly because of the use of common elements, whether melodic or harmonic. Where those common elements are themselves basic musical building blocks available for use by all composers, unless addressed to the issue of access (and here that is not in dispute), the medleys or "mash-ups" provide no evidence of infringement and fail the standard for relevance.

### B. Admission Of The Medleys Would Violate Rule 403

Admission of the medleys also would contravene Rule 403. Defendants do not dispute that (a) Sheeran had "access" to LGO, and (b) that similarities exist between the commonplace, unprotectable chord progressions in each song. As such, there is no disputed issue of fact that is addressed by the medleys. Instead, the admission of this evidence will mislead the jury and cause unjustified prejudice – suggesting to the jury, inaccurately, that segueing from singing the lyrics of TOL over the TOL chord progression to singing a snippet of the lyrics of LGO over the TOL chord progression is "evidence" that Sheeran copied LGO. But the use of commonplace unprotectable elements, such as the similar chord progression used in LGO and TOL, is not evidence of copying, much less wrongful copying.

Given the absence of any disputed issue of fact to which the mash-ups/medleys would be relevant, the only possible purpose to be served by Plaintiffs' attempt to offer the mash-ups/medleys is to confuse the jury into believing that they are somehow evidence of copying. That distracting and improper purpose is indisputably prejudicial to Defendants and should not be allowed where there is no dispute in this case about access and no dispute that the chord progressions, while different from one another, are similar. *See, e.g.*, *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980) (excluding proffered evidence as "irrelevant" and "cumulative" since the issue had been "conceded" by adversary); *United States v. Hooton*, 662 F.2d 628, 636

(9th Cir. 1981) (barring "needless presentation of cumulative evidence"); *United States v. White*, No. 08-cr-0682 (NGG), 2009 WL 4730234, at *7 (E.D.N.Y. Dec. 4, 2009) (excluding evidence since its admission posed an unwarranted "risk of inviting [a] prejudicial inference").

Further, the introduction of such evidence here would require Defendants to offer additional evidence to contextualize Sheeran's frequent use of "mash-ups" in his concert performances, needlessly prolonging trial. Defendants would be required to introduce voluminous evidence showing that Sheeran frequently uses such "mash-ups" in concert (and also would require the introduction of evidence showing how other artists have similarly used "mash-ups" in their concerts).[6] That, too, mandates application of Rule 403 because it will unnecessarily prolong trial and distract the jury from the actual facts at issue in this dispute. *See, e.g.*, *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (excluding evidence of prior disputes where their probative value was "substantially outweighed by the likelihood of unfair prejudice, confusion of the issues, misleading the jury, and waste of time"); *United States v. Rewald*, 889 F.2d 836, (9th Cir. 1989), *amended*, 902 F.2d 18 (9th Cir. 1990) (affirming exclusion of evidence under Rule 403 where admission of evidence would have "considerably delayed" trial and "posed the substantial risk of permitting the trial to degenerate into an unfocused presentation of facts and testimony that would confuse the issues and mislead the jury") (citation omitted); *Elwood v. Pina*, 815 F.2d 173, 178 (1st Cir. 1987) ("Evidence is cumulative if repetitive, and if the small increment of probability it adds may not warrant the time spent in introducing it") (citation & quotation omitted). And yet, because such evidence bears directly on the "mash-up"

---

[6] Such evidence may also require showing the commonality of musical elements in the other songs used in the medleys and "mash-ups," so the jury can understand how basic musical building blocks are repeatedly used and reused in the creation of music and that doing so is not "proof" of infringement.

9

evidence proposed by Plaintiffs, to admit Plaintiffs' evidence, while excluding evidence showing how common such "mash-ups" are with commonplace musical elements, would mislead the jury and increase Defendants' prejudice.

### C. Admission Of The Medleys Will Have A Chilling Effect On Artists And The Public's Consumption Of Music

Admission of the medley evidence also will have negative consequences beyond this case that will compound the prejudice to Defendants as well as other performing artists and, indeed, the public.

Commonalities in music will always exist and should always exist because, as the Second Circuit recognized some 80 years ago in *Darrell v. Joe Morris Music Co.*, 113 F.2d 80, 80 (2d Cir. 1940), "while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear." It is thus hardly surprising that a singer will segue, in medley or "mash-up," between songs that employ commonly used chord progressions precisely because they are pleasing to the ear, and the artist can transition from one song to the other without changing the basic chord progression. Indeed, such "mash-ups" underscore the fact, recognized by the Second Circuit over 80 years ago, that music has been, and always will be, built on commonplace and unprotectable musical building blocks freely available to all composers to use.

Allowing the jury to consider the medleys as evidence of alleged infringement will deter other performing artists from performing medleys at their live concerts in the future for fear of creating a suggestion of infringement and encouraging unfounded claims of infringement by the authors of the "mashed-up" songs (even with completely unprotectable elements being performed). Medleys are an important, enduring aspect of live concerts, and they should not be stunted by permitting evidence of unprotectable commonplace elements being used in medleys of various

songs to be used to suggest wrongful copying in infringement actions (particularly when the only elements at issue are undeniably unprotectable).

For all of these reasons, evidence of the mash-ups/medleys that include TOL and LGO should be excluded.

## CONCLUSION

It is respectfully submitted that Defendants' Sixth Motion *In Limine* should be granted in its entirety.

Dated: New York, New York
February 7, 2023

> PRYOR CASHMAN LLP
>
> By: */s/ Donald S. Zakarin*
>     Donald S. Zakarin
>     Ilene S. Farkas
>     Andrew M. Goldsmith
> 7 Times Square
> New York, NY 10036
> (212) 421-4100
>
> *Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*