UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHY TOWNSEND GRIFFIN, *et.al.*,

**Plaintiffs**,

vs.

EDWARD CHRISTOPHER SHEERAN, *et.al.*,

**Defendants**.

ECF CASE
17-CV-5221 (LLS)

PLAINTIFFS' OBJECTION TO
DEFENDANTS' SIXTH
MOTION *IN LIMINE*

_____/

**THE ENUMERATED PLAINTIFFS**, collectively, Object to the Defendants' Sixth Motion *in Limine* and, as basis therefore, would state as follows:

1. Twenty-Eight (28) months subsequent to the time at which this case was original set for trial but delayed due to *Covid-19*, The Defendants have filed a Sixth Motion *in Limine* seeking an Order precluding the Plaintiffs from utilizing the medley of "Let's Get It On" and "Thinking Out Loud", as performed by the Defendant, Ed Sheeran, himself, in concert.[1]

2. The Defendants claim now specifically that the medley at issue[2] is a.) not relevant to the issues of fact to be litigated at trial; b.) violates *Rule 403* to the extent that it would cause jury confusion; and c.) would have a chilling effect on musicians' abilities to perform musical medleys at concerts for fear of suffering legal consequences deriving therefrom.

3. The Plaintiffs would, respectfully, contend that each of the arguments proffered by the Defendants in support of the subject motion are without merit. They will be addressed herein below in the order in which they presented in Defendants' motion.

---

[1] As the Court Record will reflect, the Defendants filed five (5) separate previous motions *in limine* in the Fall of 2020 but did never deigned to request the relief contemporaneously sought.

[2] Defendants utilize the term "mashup" which the Plaintiffs, respectfully, do not believe accurately depicts the video in question.

## MEMORANDUM OF LAW IN OPPOSITION
## TO SIXTH MOTION *IN LIMINE*

### A. THE MATTER OF RELEVANCE

4. As a preliminary matter, it should be noted that the Defendants arguments herein are already, arguably, barred by the doctrine of *res judicata* or the law of the case—as this Court noted in its previous Order Denying Defendants' erstwhile Motion for Summary Judgment, a jury "**may be impressed by footage of a Sheeran performance which shows him seamlessly transitioning between LGO and TOL**". (Doc. 93, Page Seventeen (17)).

5. Presumably, if the Court believed that the video footage of the medley of the two (2) songs would be improper for a jury to view at trial, the Court would have been reticent to state a jury's possible interest in the same.[3]

6. In order to prove a claim of copyright infringement, the Plaintiffs' charge herein is to establish that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's". *Peter F. Gaito Architecture, LLC v. Simone Development Corporation*, 602 F.3d 57, 63 (2d Cir. 2010).

7. The matter as to whether there is a substantial similarity between artistic works and/or compositions "is frequently a fact issue for jury resolution". *Warner Brothers, Inc. v. Am. Broad. Cos., Inc.*, 720 F.2d 231, 239-40 (2d Cir. 1983); see also *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998).

8. In this instance, the Court has established previously that there are elements of the respective compositions herein that could be construed as being substantially similar including harmony, harmonic rhythm, and vocal melodies.[4]

---

[3] Moreover, within this context, it is also worthy of note that the Court reiterated the prospective relevance of the medley at the case management conference of March 8, 2019.

[4] Defendants focus exclusively on chord progression in their motion, strategically omitting the previous findings of this Court in the Order Denying the Motion for Summary Judgment (Doc. 93).

9. The video of the medley at issue demonstrates the similarities between the two (2) compositions with respect to the disputed areas of similarities in the compositions. The Plaintiffs' expert, Dr. Alexander Stewart, has previously opined in this case as to the similarities between the composition of "Thinking Out Loud" and the deposit copy of "Let's Get It On" and the video medley at issue provides helpful guidance to highlight and/or illustrate those similarities and why they are significant.

10. In the Plaintiffs' anticipated attempts to demonstrate substantial similarity at trial, the video medley is directly relevant to the same.

11. Notwithstanding, there are several other factors which should have the operative legal effect of procedurally and substantively barring the Defendants from seeking the current relief—specifically, the Defendant, Ed Sheeran, himself, raised various affirmative defenses responsive to the Plaintiffs' Complaint (Doc. 23)—

> "**AS AND FOR ELEVENTH AFFIRMATIVE DEFENSE**
>
> 75. The Complaint is barred because TOL was created independently.
>
> **AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE**
>
> 76. The Complaint is barred because the alleged use, which is not admitted, is *de minimis*.
>
> **AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE**
>
> 77. The Complaint is barred because LGO and TOL are not substantially similar.
>
> **AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE**
>
> 78. The Complaint is barred because the elements of LGO and TOL, allegedly infringe are not protectable and are not original".

12. Given the Defendants' affirmative defenses challenging the similarity of the works at issue, claiming independent creation, *de minimis* use, and unprotectability of core elements, the Defendants are hard-pressed to assert the above-chronicled defenses while now

3

simultaneously contending that the Plaintiffs should be deprived of the very evidence at trial which would tend to dispute and/or overcome said defenses. The Defendants have placed various defense issues squarely before this Court which not only serve to underscore and/or emphasize the relevancy of the medley of LGO and TOL, but to, in fact, make the inclusion of said medley necessary.

13. It is also worthy of note within the context of Defendant's, Ed Sheeran's, arguments herein that during the course of his deposition attendant to this litigation, when the Defendant was shown the video medley, on his own initiative he elected to rewind the video medley and attempted to sing other, alternate, songs over the previously-recorded medley for the purported proposition that there was apparently little significance to the combination of the two (2) songs in a medley.[5]

### B. JUROR CONFUSION

14. The Defendants never fully explain the manner in which jurors would allegedly be led to being confused by hearing a medley of the two (2) songs at issue.

15. As indicated herein previously, the Defendant, Ed Sheeran, already availed himself of the opportunity to attempt to explain the supposed 'meaninglessness' of the subject medley by performing a **new medley** at his deposition.

16. The Plaintiffs would, respectfully, posit that the Defendant's, Ed Sheeran's, unfettered reliance on an 'alternative' medley at deposition to support the Defendants' chosen defense narrative/strategy should be construed as a waiver of any objection to the original medley at issue herein. That is to say, the Defendant, Ed Sheeran, should not be permitted to "cherry-pick" and choose which of his own self-serving engineered medleys are

---

[5] Notably, at the time the Defendant, Ed Sheeran, performed his impromptu renewed vocal medley at his deposition, none of the Defendants, or Defendants' counsel(s) for that matter, deigned to object. In point of fact, one of Defendant's counsel(s) jokingly stated that the Parties in attendance were being treated to something akin to a free concert.

4

proper for jury consumption (and, as such, presumably unlikely to cause juror confusion, per the Defendants), while, at the same time, excluding those the Defendants construe as unduly burdensome and those which do not aptly comport with their elected anticipated trial narrative. To allow as much to occur is tantamount to unilateral disarmament.

17. Finally, with regard to potential confusion, the Defendants will, unequivocally, enjoy the benefit of making their arguments as to the meaning and/or import of the medley at trial. By way of addition, the Defendant, Ed Sheeran, will have ample opportunity *vis a vis* his expert musicologist to opine as to why the Defendants take the position as the medley's alleged lack of relevance and/or significance.

### C. CHILLING EFFECT

18. Defendants also argue that the apparent fate of future concert medleys is in the hands of this Court attendant to its motion.

19. It is not immediately clear, nor do Defendants explain, how the admission of a medley of the two (2) songs at issue in this litigation, as performed by the Defendant, Ed Sheeran, himself, would have the operative "real world" chilling effect of extinguishing the use of medleys at live concerts.

20. In this instance, the Defendant, Ed Sheeran, had the opportunity to play a medley of "Thinking Out Loud" and <u>any of the myriad songs he claims are similar</u> in terms of structure and content and yet of those alleged innumerable songs sharing similar elements, he volitionally chose to combine "Thinking Out Loud" with "Let's Get It On"—this is a significant choice and an abidingly relevant event which belies the notion of independent creation and other arguments, as set forth in the Defendants' affirmative defenses.[6]

---

[6] By way of addendum, it is worth chronicling herein that in speaking to the creation of "Thinking Out Loud", the Defendants have suggested that during the development of the song it was actually referred to internally as the so-called "Van Morrison" song. This information was apparently proffered in support of the notion that the Defendants had no idea as to the similarities between TLO and LGO during TLO's creation. It is worthy of note, however, that during the deposition that was taken of Mr. Stuart Camp (*i.e.*, Ed Sheeran's manager), in recent

21. Within the milieu of the Defendants' "chilling effect" argument, the combination of these two (2) songs in a medley was a discrete event which merely serves as evidence of infringement herein. Defendants have provided nothing beyond mere speculation that the inclusion of directly relevant evidence in the instant litigation would have any collateral impact on any aspect of the concert industry. Even assuming—*arguendo*—that the Defendants could actually establish even the slightest vestige of a detrimental effect on the same, it would not serve to abrogate the propriety of the inclusion of the medley in this specific case.

## CONCLUSION

22. To be clear, the medley which the Defendants belatedly seek to exclude from admission at trial attendant to their Sixth Motion in Limine is among the most important and critical evidence in this case, a fact which—it is believed—has previously been recognized by this Court in its Order Denying the Defendant's Motion for Summary Judgment (Doc. 93).

**WHEREFORE**, the Plaintiffs, collectively, Object to the Defendants' Sixth Motion *in Limine* and Motion this Court for the entry of an Order Denying said motion, as well as providing for any such other relief as this Court should deem equitable and just.

**DATED** this 23rd day of February, 2023.

**FRANK & RICE, P.A.**

Respectfully Submitted,

_____
Patrick R. Frank, Esq.
Florida Bar Number: 0642770

---

weeks, given that the song was allegedly previously referred to as the "Van Morrison" song, Mr. Camp was asked whether he could recall a time when the Defendant, Ed Sheeran, had ever performed a medley of "Thinking Out Loud" with any Van Morrison song while in concert. He could not.

Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone:  (850) 629-4168
Facsimile:  (850) 629-4184