UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

        *Plaintiffs*,

      -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

        *Defendants*.

ECF CASE

17-cv-5221 (LLS)

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF THEIR SIXTH MOTION *IN LIMINE*
## TO PRECLUDE "MASH-UP"/MEDLEY EVIDENCE

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Atlantic Recording
Corporation and Sony Music Publishing
(US) LLC*

*Of Counsel*:

    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I.    Plaintiffs Fail To Rebut Defendants' Showing That
          The Mash-Up (Medley) Videos Fail The Standard
          For Relevance ......................................................................................... 3

    II.   Plaintiffs Fail To Rebut Defendants' Showing That
          Admission Of The Mash-Up (Medley) Videos Would
          Violate Rule 403 ................................................................................... 7

    III.  The Motion Also Should Be Granted On Default ................................. 8

CONCLUSION .................................................................................................................. 9

# <u>TABLE OF AUTHORITIES</u>

**PAGE(s)**

**CASES**

*Channer v. Dep't of Homeland Sec.*,
   527 F.3d 275 (2d Cir. 2008)........................................................................................6

*DiLaura v. Power Auth. of State of N.Y.*,
   982 F.2d 73 (2d Cir. 1992)..........................................................................................6

*Henry v. Wyeth Pharms., Inc.*,
   616 F.3d 134 (2d Cir. 2010).......................................................................................7

*United States v. Dupree*,
   No. 10-cr-627 (KAM), 2011 WL 2006295 (E.D.N.Y. May 23, 2011)......................7

*United States v. Edwards*,
   631 F.2d 1049 (2d Cir. 1980).....................................................................................8

*United States v. Hooton*,
   662 F.2d 628 (9th Cir. 1981) .....................................................................................8

*United States v. Morel*,
   751 F. Supp. 2d 423 (E.D.N.Y. 2010) ......................................................................7

*United States v. White*,
   No. 08-cr-0682 (NGG), 2009 WL 4730234 (E.D.N.Y. Dec. 4, 2009) ......................8

**Other Authorities**

Fed. R. Evid. 403 ............................................................................................................6, 7, 8

Local Civil Rule 6.1(b) .........................................................................................................8

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition to Defendants' sixth motion *in limine* essentially ignores the law and undisputed facts set forth in Defendants' motion and instead advances an amalgam of arguments that are irrelevant, factually untrue or both.

*First*, as a procedural matter, Defendants' motion should be granted because Plaintiffs disregarded this Court's rules, failing to timely file an opposition and only did so after Defendants requested that this motion be granted on default.[2]

*Second*, Plaintiffs' opposition ignores that the mash-up (or medley) videos at issue fail to address a single remaining disputed issue of fact and, thus, fail the standard for relevance. Plaintiffs argue that the videos are relevant because they show that "similarities" exist between the harmony (the chord progressions), the harmonic rhythm (anticipation) and supposedly the vocal melodies.[3] As the foundation for this argument, Plaintiffs cling to this Court's reference, in its denial of Defendants' motion for summary judgment on January 2, 2019, of the possibility that the harmony, harmonic rhythm and vocal melodies of the two songs could be construed as being substantially similar. (ECF 93.) However, Plaintiffs ignore (i) that the Court held, in that same Order, that the elements of "key" and "common chord progressions" – among other elements – "are not entitled to copyright protection because they are no longer original and already in the public domain" (ECF 93 at 9); and (ii) that this Court specifically ruled in its August 18, 2020 that

---

[1] Undefined capitalized terms have the meanings given to them in Defendants' moving papers.

[2] Plaintiffs have repeatedly failed to adhere to this Court's rules and Orders (a practice Plaintiffs also have repeated in their sections of the Pretrial Order, which Defendants will address separately).

[3] As discussed below, the only vocal melody that appears in the portion of the video in which Sheeran sings certain lyrics of LGO is that of LGO, not that of TOL. The videos, thus, do not show any similarity of vocal melody of the two songs.

"there is uncontradicted proof" that the chord progression and the harmonic rhythm at issue are "common musical techniques" and, hence, unprotectable.  (ECF 138 at 1-2).[4]

No one disputes that certain similarities exist between these unprotectable elements, and that one could sing the vocal melody of one song while playing the anticipated chords of the other, which is all that the videos reflect.  Nor does anyone dispute that Ed Sheeran and Amy Wadge were aware of LGO.  As such, the videos are completely unnecessary to prove these points and can only provide evidence to support the undisputed and unremarkable fact that the similarity of the chord progression and the harmonic rhythm enables one to sing the vocal melody and lyrics of one song over the (commonplace) chord progression and harmonic rhythm of another.  This is done by performers every day and is completely irrelevant to any disputed issue in this case.  In short, admission of the video "evidence" would not tend to make any <u>disputed</u> fact of consequence more or less probable.[5]

*Third*, Plaintiffs' opposition fails to rebut the substantial, irremediable prejudice and confusion that would be caused by admission of the video "evidence."  Clearly, Plaintiffs' purpose in seeking to introduce the video "evidence" is to suggest to the jury – incorrectly and unfairly – that Ed Sheeran "must have" copied from LGO.  But it does no such thing.  Instead, it simply illustrates that one can sing the lyrics and vocal melody of one song over the chords and rhythm of another song where the two songs share similar chord progressions and harmonic rhythms, both

---

[4] Plaintiffs' argument that the admissibility of the videos has been "decided" and cannot be raised now is entirely baseless, as discussed below.

[5] Defendants <u>do</u> dispute that there are similarities in the vocal melodies.  As set forth in Dr. Ferrara's expert report and as will be documented in his expert declaration, Plaintiffs' expert, Dr. Stewart, altered pitches and note values (and ignored the placement of the alleged similarities in the songs), manufacturing similarities between the melodies that do not actually exist.  The vocal melodies are not even remotely similar.  But, as discussed below, any alleged similarities of the vocal melodies are also not illustrated by the videos.

of which are unprotectable.  The problem created by the videos is that the jury may not be readily able to apprehend that nuance, and there is a substantial risk of jury confusion and prejudice that would be caused by the videos without any countervailing probative value.

For these reasons and those detailed below and in Defendants' moving memorandum, Defendants' sixth motion *in limine* should be granted.

## ARGUMENT

I.    **Plaintiffs Fail To Rebut Defendants' Showing That The Mash-Up (Medley) Videos Fail The Standard For Relevance**

Trying, but failing, to satisfy their burden of demonstrating relevance – *i.e.*, that the mash-up (medley) videos have a tendency to make a fact of <u>consequence</u> more or less probable – Plaintiffs argue that the videos "demonstrate[] the similarities between the two compositions with respect to <u>disputed</u> areas of similarities." (Opp. ¶ 9 (emphasis added; parenthetical omitted)).  This is simply untrue.  As Defendants explained in their moving memorandum, it is <u>undisputed</u> that (a) objective, non-actionable similarities <u>do</u> exist between the commonplace, unprotectable chord progressions and harmonic rhythms at issue in this case, and (b) the co-authors of TOL, Ed Sheeran and Amy Wadge, knew of LGO.  The videos, therefore, supposedly provide evidence on issues where no evidence is needed.  And the videos provide no evidence regarding the level of alleged "similarity," which is the subject of expert musicologist testimony.

Accordingly, the mash-up (medley) videos do not suggest – much less tend to prove – that TOL copied from LGO, or that TOL is substantially similar to protected elements in LGO.  As Defendants will prove, there are literally dozens upon dozens of songs that use the same chord progression at issue (and multiple songs that combine that chord progression with the unprotectable, anticipation technique).  Consistent with the foregoing, the Court ruled these elements are unprotectable as a matter of law.

3

In footnote 4 of their opposition, Plaintiffs contend that Defendants "strategically omit[ed]" mention of the LGO vocal melody that Sheeran sang over the TOL chords, "focus[ing] exclusively on [the] chord progression." This contention misses the point entirely. The issue is whether the video illustrates in any way that the vocal melody of TOL is similar to the vocal melody of LGO – and it does not. And the reason it does not is because Sheeran sang a snippet of the lyrics of LGO while singing the LGO vocal melody (not the TOL vocal melody). Singing the LGO vocal melody (with a few lyrics) of LGO over the <u>chord progression and harmonic rhythm</u> (not the melody) of TOL provides zero evidence of any similarity between TOL's vocal melody and LGO's vocal melody. In fact, the vocal melodies are different, as even Plaintiffs' musicologist has conceded. Singing the vocal melody of LGO over the chord progression of TOL has no probative value to any disputed issue in this case (and permitting the jury to hear it will only cause confusion and prejudice).

Plaintiffs also conclude, without evidence or elaboration, that the videos are somehow "directly relevant" to their "anticipated attempts to demonstrate substantial similarity at trial." (Opp. ¶ 10). They are not. The complete silence of Plaintiffs as to how or why the mash-up (medley) videos are "directly relevant" is not surprising because they are not. The videos merely show that one can sing a snippet of the lyrics of LGO over the commonplace and unprotectable – and similar, but different – chord progression and harmonic rhythm used in TOL. That is not probative of copying or substantial similarity.

For this same reason, it is equally unsurprising that Plaintiffs fail to address the Axis of Awesome example cited by Defendants – *i.e.*, the band Axis of Awesome famously played their song *Birdplane*, authored in 2010, as a medley with <u>**46**</u> other preexisting songs. That medley, like those at issue here, simply demonstrate that if songs share commonplace, unprotectable elements,

one can sing the vocal melody and lyrics of one song over the chord progression and/or rhythms of another song.  The practice of performing mash-ups or medleys in concert has been utilized by musicians well before TOL was written (indeed, well before LGO was written).

Plaintiffs also trumpet the fact that, during his deposition, Sheeran sang "other, alternate songs" over the TOL chord progression and harmonic rhythm.  (Opp. ¶ 13).  Far from confirming the relevance of the videos, as Plaintiffs argue, his testimony only reinforces that the medleys are an irrelevant and misleading distraction, as singing different vocal melodies over common chord progressions is commonplace and does not address any disputed issue in this case.  The sole purpose of the medley "evidence" is to mislead and confuse the jury – an improper purpose.

Next, Plaintiffs cite several of Sheeran's Affirmative Defenses in his Answer – that he independently created TOL, that any alleged use of LGO in TOL is *de minimis*, that the works are not substantially similar and that the allegedly infringing elements are not protectable or original to LGO (which, long after Defendants' pleading was filed, the Court so ruled) – and contend those Affirmative Defenses "challeng[e] the similarity of the works."  (Opp. ¶¶ 11-12).  But these defenses have nothing to do with the videos, which do not bear in the slightest on these defenses.

To be clear, the only point of the videos – which is the Plaintiffs' purpose – is to mislead the jurors by showing that Sheeran and other performers appear to have recognized some similarity between the songs.  But the very similarity illustrated by the videos is essentially undisputed and irrelevant.  When all is said and done, the similarity between these songs that allows the vocal melody of one to be sung over the chords of another is simply due to elements this Court already has ruled are unprotectable.  These elements are not unique, unusual, new or novel, and the videos provide no evidence that bears on Plaintiffs' selection and arrangement claim.  Again, the videos only illustrate that the two songs have similar (but different) chord progressions and harmonic

5

rhythms, which is both undisputed and irrelevant because those elements are not protectable.

Finally, the Court's observation in its January 2, 2019 Order that a jury might "be impressed" by the video footage (ECF 93 at 17) must be examined in light of the Court's subsequent Orders dated March 24, 2020 and August 18, 2020.  Those subsequent Orders significantly narrowed Plaintiffs' claim to the Deposit Copy and excluded unprotectable elements. Those Orders also rendered the videos irrelevant to any disputed issue in this case.  Plaintiffs' failure to even mention the Court's subsequent Orders only reveals that they are fully aware that the scope of issues remaining in this case is much more limited than in January 2019 and make the videos irrelevant.  Further, to the extent a jury might "be impressed" by the videos, it would be for reasons that have nothing to do with any disputed issue of fact in this case.  The videos of the mash-ups (medleys) do not make it more or less likely that Ed Sheeran and Amy Wadge copied from LGO (they did not), or that TOL is substantially similar to protectable elements in LGO (it is not).  The mash-up (medley) videos simply show that one can segue from one song to another that uses the same or similar commonplace and unprotectable chord progression – something that may confuse jurors but which is not relevant to any issue remaining in this case.[6]

---

[6] Plaintiffs opine, without a single citation, that the Court's observation, in its denial of summary judgment (and perhaps again at a Court conference, which Defendants dispute), that a jury might be "impressed" by one of the mash-up (medley) videos is somehow *res judicata* or law of the case. It is not.  The doctrine of *res judicata* only applies where a final judgment exists from a prior action between the same parties or their privies.  *See, e.g.*, *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008).  It is also not law of the case.  The doctrine of law of the case only applies "when a court decides upon a rule of law."  *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (citations & quotations omitted; emphasis added).  The Court's prior comment regarding a juror's hypothetical impression of the medley evidence does not remotely reflect a ruling on an issue of law.  Moreover, at the time of the Court's prior comment, the parties had not addressed the admissibility of the medley evidence, Defendants had not explained the prejudicial reasons requiring its exclusion under Rule 403, and the Court had not yet ruled that the chord progression and harmonic rhythm at issue in the videos are commonplace, unprotectable musical elements.

## II.   Plaintiffs Fail To Rebut Defendants' Showing That Admission Of The Mash-Up (Medley) Videos Would Violate Rule 403

Plaintiffs have no meaningful response to the substantial prejudice that admission of the mash-up (medley) videos would cause in violation of Rule 403.  The videos would mislead the jury and suggest, inaccurately, that segueing from singing the lyrics of TOL over its chord progression to singing a snippet of the lyrics of LGO is somehow "evidence" that Sheeran copied, when, in fact, it is merely "evidence" – like the Axis of Awesome example – that one may sing the lyrics of one song over another song if they share similar elements such as a chord progression and rhythm.  And that "evidence" relates to an issue that is not in dispute in this case.  As such, the video evidence should be excluded under Rule 403.  *See, e.g.*, *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010) ("'Unfair prejudice' is that which might dispose a jury to render a verdict for reasons unrelated to the merits of the case") (citation omitted); *United States v. Morel*, 751 F. Supp. 2d 423, 433 (E.D.N.Y. 2010) (excluding evidence under Rule 403 due to "more than substantial [ ] risk" that "the jury will be misled or will confuse the issues, speculate, or draw improper inferences from the evidence"); *United States v. Dupree*, No. 10-cr-627 (KAM), 2011 WL 2006295, at *4 (E.D.N.Y. May 23, 2011) (excluding evidence under Rule 403 because "the jury is likely to be confused and make improper inferences" from it).

Plaintiffs also ignore that admission of the videos would prolong trial needlessly and distract the jury from the narrow issues actually in dispute because it would require Defendants to contextualize the use of mash-ups or medleys.  Specifically, if the Court permits Plaintiffs to offer the videos of the mash-ups (medleys) in evidence, then Defendants will offer at least <u>eighteen</u> video exhibits demonstrating that Sheeran frequently performs live mash-ups or medleys of his songs with other songs that he or other composers have written.  Defendants also reserve the right to introduce other video exhibits showing the pervasiveness of mash-ups or medleys.  All of that

7

squarely implicates Rule 403 and further requires exclusion of Plaintiffs' videos.  *See, e.g.*, *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980); *United States v. Hooton*, 662 F.2d 628, 636 (9th Cir. 1981); *United States v. White*, No. 08-cr-0682 (NGG), 2009 WL 4730234, at *7 (E.D.N.Y. Dec. 4, 2009).

Once again missing the point, Plaintiffs argue that Defendants "should not be permitted to 'cherry-pick'" which medleys they present at trial.  (Opp. ¶ 16).  Defendants have no intention of cherry-picking videos.  Defendants do not believe that any medley or mash-up videos should be admitted at trial, and Defendants will only offer their own medley or mash-up videos if the videos Plaintiffs want to offer are permitted (or if Plaintiffs are otherwise permitted to refer to the videos).

Finally, Plaintiffs deride as "speculation" the chilling effect of using mash-ups or medleys as supposed evidence of infringement.  Where there is no disputed issue of fact that a mash-up or medleys addresses, then their only purpose can be to confuse, mislead and prejudice the jury, and that will inevitably deter – or at least risk deterring – performing artists from performing mash-ups or medleys at their live concerts in the future out of a reasonable concern that such performance could subject them to (baseless) claims of infringement.

## III.     <u>The Motion Also Should Be Granted On Default</u>

Plaintiffs offer no explanation for their failure to timely oppose the motion consistent with Local Civil Rule 6.1(b).  Their failure is no aberration.  Plaintiffs also twice failed to comply with deadlines imposed by this Court's Scheduling Order dated October 27, 2022.  (ECF 179).  Instead of addressing their own delay, Plaintiffs make the bizarre argument that Defendants waited too long to make this motion.  *In limine* motions are pretrial motions that are typically made shortly before trial.  When this trial was originally scheduled for the fall of 2020, Defendants filed a series of *in limine* motions in the lead-up to the earlier, adjourned trial date.  However, once the Court

adjourned the trial of this action on October 15, 2020 due to the Covid-19 pandemic (ECF 168), Defendants deferred making further *in limine* motions until shortly before the adjourned date. There is no deadline set for the filing of motions *in limine* (nor could there be since the Pretrial Orders, which may raise issues that warrant further motions *in limine*, are not due to be filed until March 15, 2023).

## **CONCLUSION**

It is respectfully submitted that Defendants' Sixth Motion *in limine* should be granted.

Dated: New York, New York
      March 2, 2023

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward*
*Christopher Sheeran, Atlantic Recording*
*Corporation and Sony Music Publishing*
*(US) LLC*