UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHY TOWNSEND GRIFFIN, *et.al.*,

Plaintiffs,

vs.

EDWARD CHRISTOPHER SHEERAN, *et.al.*,

Defendants.

ECF CASE
17-CV-5221 (LLS)

PLAINTIFFS' OBJECTION TO
DEFENDANTS' SEVENTH
MOTION *IN LIMINE*

_____/

**THE ENUMERATED PLAINTIFFS**, collectively, Object to the Defendants' Seventh Motion *in Limine* and, as basis therefore, would state as follows:

1. The Defendants have filed a Seventh Motion *in Limine* seeking an Order precluding the Plaintiffs from providing a live performance of the deposit copy for "Let's Get It On", including vocals and guitar (as exhibited on the deposit copy) by a professional musician at the trial of this matter.

## BACKGROUND

2. In contemplation of going forward with trial in November of 2020, prior to the Covid-19 pandemic, the Plaintiffs prepared the proposed audio file performances with which the Defendants now take issue and had the them overnighted in the Fall of 2020 to the same.

3. Thereafter, Twenty-Six (26) months went by after which the Defendants, on January 10, 2023, provided the Plaintiffs with proposed audio file performances of the deposit copy of "Let's Get It On" at various tempos and with varying instruments.

4. On January 11, 2023, responsive to an inquiry from the undersigned counsel(s), Defendants counsel(s) advised that "the software for the audio files, the piano guitar sounds

were created using a virtual sampler triggered by MIDI data based on the Deposit Copy sheet music, and the computer-generated vocals were creating using software called Vocaloid 6 (by manually entering the sheet music into the software).

5. On February 24, 2023, Defendants proffered a "new" affidavit from their designated musicologist, Dr. Lawrence Ferrara, advising that the audio computer files upon which the Defendants rely were purportedly generated by Mr. Paul Geluso, a professional music recording engineer and the Director of the Music Technology Program at NYU's Steinhardt School, to create the audio files in question.[1]

6. In addition to identifying Mr. Geluso as the "creator", of sorts, of the audio files upon which the Defendants have indicated they will rely, Dr. Ferrera provides a lengthy affidavit in support of the Defendants' central premise that the live performance samples of the deposit copy are not faithful renditions of the same.

## MEMORANDUM OF LAW IN OPPOSITION TO SEVENTH MOTION *IN LIMINE*

7. The new opinions of Dr. Ferrara as they relate to a.) the alleged accuracy of the Defendants' several proposed audio renditions of "Let's Get It On"; and b.) the accuracy of the proposed live performance of "Let's Get It On" by the Plaintiffs' engaged musician coming mere weeks before the commencement of trial are untimely and, accordingly, should not be properly considered by this Court.

8. Similar to this Court's ruling on the Defendants' previous Motions *in Limine*, dated August 18, 2020 (Doc. 138), in which the Plaintiffs' musicologist was precluded from offering Opinions at trial that were not previously disclosed in his Expert Report pursuant to the *Federal Rules of Civil Procedure, Rule 26*, the Defendants herein should be held to a similar standard

---

[1] Presumably, Mr. Geluso is a colleague of Dr. Ferrera as they both appear to be employees of the Steinhardt School.

which prevents them from going back to the proverbial "well" and securing new opinions from their musicologist as needed.

9. Notwithstanding the facial concerns which present from the sheer belated nature of the opinions, more than two (2) years after receiving the Plaintiffs' recordings, in conjunction with the questions that arise as to the provenance of the audio files upon which the Defendants now purport to rely[2], the person identified as having generated the late-arriving audio files from the Defendants was never previously identified in the Defendants' *Rule 26* disclosures as a witness.[3]

10. On the issue of purported contravention and/or violation of the *Federal Rules of Evidence, Rules 401* and *403*, and the Court's March 24, 2020 (Doc. 121), it is, respectfully, submitted that the Defendants have adopted an unduly expansive interpretation of the Order of this Court (Doc. 121)—specifically, the Defendants construe the Order at issue at constituting

---

[2] By way of illustration, although the sound engineer who created the audio files for the Defendants, Mr. Geluso, is identified in the Defendants' filings, there is no affidavit from Mr. Geluso identifying the time, place, and manner as to the circumstances/conditions pursuant to which the audio files described by Dr. Ferrera were generated. Moreover, there has been no evidentiary proffer, nor description, as to the mechanism pursuant to which computer software was utilized to create the subject audio files—all we know based on an electronic mail disclosure from Defendants' counsel(s) was that the materials were generated using so-called "Midi" and "Vocaloid 6" software.

[3] For the purposes of the Plaintiffs' Objection/Response herein, and, in exercising the duty of candor to the Court, the Plaintiffs did not, in fact, identify the musician who previously rendered the deposit copy performances in their *Rule 26* disclosures. The distinction between the Plaintiffs' proposed audio proffers and the Defendants', however, is two-fold—First, with the understanding that the Plaintiffs were going forward with trial prior to Covid-19 in the Fall of 2020, the audio files of the anticipated performance of the deposit copy were provided more than two (2) years ago. Presumably, if the Defendants took issue with the substance of the performance(s), as proposed, they might have taken action at some point during the previous Twenty-Six (26) months to prevent just such 'eleventh hour' motions as that which is at issue herein; Second, while the Defendants' proposed audio files contemplate the use of sophisticated software by a heretofore unknown individual, the Plaintiffs audio files are a mere performance, as proposed. Within the context of the Court evaluating the distinguishable nature of these two (2) scenarios, it is worthy to note that this Court has previously extended some measure of latitude to the Defendants pursuant to instances in which they failed to properly disclose witnesses pursuant to their *Rule 26* obligations—by way of illustration, the Plaintiffs had sought to exclude the testimony of the Defendant's, Ed Sheeran's, manager, Mr. Stuart Camp, when it was learned well after discovery had closed that the Defendants intended on calling the same as a witness at trial. The Court Denied the Plaintiffs' Motion (Doc. 173), on August 26, 2021, based on the rationale that the delay of the trial afforded ample time to depose Mr. Camp. Having been graciously permitted to rectify an erroneous omission as it relates to the disclosure of Mr. Camp (an abidingly significant witness) one (1) might anticipate that the Defendants would have experienced a renewed appreciation of the need for timely disclosure and concurrent action *vis a vis* taking action with respect to the Plaintiffs' performance files, particularly if such action contemplated reliance on previously-undisclosed, novel expert testimony, as is the case herein.

3

some manner of blanket, unbending, edict as to the admissibility of the sound recording of "Let's Get It On".

11. However, a careful review of the language of the Order demonstrates that this is not the case—the Order states that "the Gaye sound recording is inadmissible in any way which might confuse the jury into thinking it represents what is protected by copyright".

12. The Order, otherwise, in plain language <u>reserves until trial</u> determination as to whether proffered elements of the "Let's Get It On" sound recording may be presented at trial for reasons other than the assertion that elements of the sound recording enjoy copyright protection.

13. The Plaintiffs' utilization of a live performance is relevant and appropriate at trial given that one (1) of the central issues identified by this Court as being an area of dispute for resolution by a jury is that of harmonic rhythm—as the Court correctly noted in its Order Denying Summary Judgment, the harmonic rhythm at issue "is notated on the deposit copy by the placement of chord changes above particular rhythms". (Doc. 93, Page Fourteen (14)).

14. The computer-generated audio files which the Defendants suggest should supplant the proposed live performance of "Let's Get It On" from the deposit copy do not faithfully represent the harmonic rhythms set forth in the acknowledged subject deposit copy, and the 'anticipated' chords and musical technique associated therewith—at the end of the day, a deposit copy is generated in contemplation of a live human being giving the performance thereof, not a computer program and/or algorithm—in this case, apparently two (2) separate programs working independently (*i.e.*, Midi and Vocaloid 6).[4]

15. There are performance elements/components embodied in the deposit copy for

---

[4] While the Plaintiffs have not, and do not anticipate, objecting to the Defendants' availment of the computer-generated tracks, it is worth noting herein that the seemingly arbitrary selection of various tempos, and reservation of the right to alter the tempo, appear to highlight and/or hearken back to previous attempts by the Defendants in their motion for summary judgment to obfuscate the distinction between song tempo and harmonic rhythm in an effort to minimize the significance of the latter. (See Doc. 93, Pages Fourteen (14) through Fifteen (15)).

which a computer may not account.

## CONCLUSION

16. In sum, the Defendants motion at issue should be denied by virtue of its untimeliness, its reliance on new opinions by the Defendants' designated expert musicologist, Defendants' availment of an apparent "new" undisclosed expert witness *vis a vis* the sound engineer, Mr. Geluso, who has never been previously disclosed.

17. To consider Defendants' motion at this late juncture, particularly given its reliance on expert opinions, would be unduly prejudicial to the Plaintiffs given Plaintiffs' inability to depose Dr. Ferrara and Mr. Geluso as to the provenance and methodology of their opinions, as well as the creation of the audio files they contend constitute the more faithful rendition of the "Let's Get It On" deposit copy. Herein again, Defendants have been in possession of the performance files for in excess of two (2) years and failed to take any action regarding the same. The reliance on new opinions further exacerbates the prejudice.

18. Notwithstanding the foregoing, and as previously discussed, the deposit copy contains protectable elements which may only be adequately presented via live performance.

**WHEREFORE**, the Plaintiffs, collectively, Object to the Defendants' Seventh Motion *in Limine* and Motion this Court for the entry of an Order Denying said motion, as well as providing for any such other relief as this Court should deem equitable and just.

**DATED** this 9th day of March, 2023.

**FRANK & RICE, P.A.**

Respectfully Submitted,

_____
Patrick R. Frank, Esq.

Florida Bar Number: 0642770
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184