REDACTED FOR PUBLIC FILING

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, THE ESTATE
OF CHERRIGALE TOWNSEND and THE HELEN
CHRISTINE TOWNSEND MCDONALD TRUST

*Plaintiffs*,

-against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

*Defendants*.

ECF CASE

17-cv-5221 (LLS)

**PRETRIAL CONSENT ORDER
[DAMAGES PHASE]**

**THE PARTIES**, having exchanged proposed findings and counter-findings of fact in accordance with the Pretrial Procedures of United States District Judge Louis L. Stanton, hereby submit the following:

**A.     Agreed Findings of Fact**

1.     "Thinking Out Loud" enjoyed commercial success in the United States.

2.     The Defendants, Edward Christopher Sheeran,[1] Sony/ATV Music Publishing, LLC, now known as Sony Music Publishing (US), LLC ("SMP"), and Atlantic Recording Corporation, *d/b/a* Atlantic Records ("Atlantic Records"), have earned revenues from the performance, sales, and/or distribution of the song "Thinking Out Loud" in the United States.

---

[1] While Ed Sheeran Limited ("ESL"), a United Kingdom corporation, is not a defendant in this action, as reflected on Joint Exhibit 5, the revenues and expenses of Edward Christopher Sheeran include both his personal revenue and expenses and those of ESL.

1

REDACTED FOR PUBLIC FILING

     3.     Joint Exhibit 5 reflects that, through and including 2022, Sheeran's and ESL's United States revenues from "Thinking Out Loud" total ▉▉▉▉▉▉▉▉.

     4.     Joint Exhibit 5 further reflects that, through and including 2022, Sheeran and ESL incurred costs, exclusive of taxes, in relation to their United States revenue from "Thinking Out Loud," totaling ▉▉▉▉▉▉▉▉ that Sheeran claims are deductible from their United States revenues from "Thinking Out Loud."

     5.     Joint Exhibit 5 further reflects that, through and including 2022, Sheeran and ESL paid taxes totaling ▉▉▉▉▉▉▉▉ in relation to their United States revenue from "Thinking Out Loud" that Sheeran claims are deductible from their United States revenues from "Thinking Out Loud."

     6.     Joint Exhibit 5 therefore reflects that based on Sheeran's and ESL's United States revenues from "Thinking Out Loud" and the expenses and taxes they incurred in relation to their United States revenue from "Thinking Out Loud" that Sheeran and ESL claim are deductible from their United States revenue from "Thinking Out Loud," Sheeran and ESL had total net after tax United States income from "Thinking Out Loud" through 2022 of ▉▉▉▉▉▉▉▉. For the avoidance of doubt, while Joint Exhibit 5 is admitted into evidence for all purposes without objection by Plaintiffs or Defendants, pursuant to Joint Exhibit 8, the expenses reflected on Joint Exhibit 5 may be challenged by Plaintiffs solely with respect to whether any or all of such expenses and taxes are properly deductible against the revenues shown on Joint Exhibit 5, in whole or in part, under the Copyright Act and applicable law.

REDACTED FOR PUBLIC FILING

7.      Joint Exhibit 6 reflects that, through and including June 2022, Atlantic Record's United States revenues from "Thinking Out Loud" total ■■■■■■■■.[2]

8.      Joint Exhibit 6 further reflects that, through and including June 2022, Atlantic Records incurred costs, exclusive of taxes, in relation to its United States revenue from "Thinking Out Loud," totaling ■■■■■■■■ that it claims are deductible from its United States revenues from "Thinking Out Loud."

9.      Joint Exhibit 6 further reflects that, through and including June 2022, Atlantic Records paid taxes totaling ■■■■■■■■ in relation to its United States revenue from "Thinking Out Loud" that it claims are deductible from its United States revenues from "Thinking Out Loud."

10.     Joint Exhibit 6 therefore reflects that based on Atlantic Records' United States revenues from "Thinking Out Loud" and the expenses and taxes it claims to have incurred in relation to its United States revenue from "Thinking Out Loud" that Atlantic Records claims are deductible from its United States revenue from "Thinking Out Loud," Atlantic Records had total net after tax United States income from "Thinking Out Loud" through June of 2022 of ■■■■■■■■. For the avoidance of doubt, while Joint Exhibit 6 is admitted into evidence for all purposes without objection by Plaintiffs or Defendants, pursuant to Joint Exhibit 8, the expenses reflected on Joint Exhibit 6 may be challenged by Plaintiffs solely with respect to whether any or all of such expenses and taxes are properly deductible against the revenues shown on Joint Exhibit 6, in whole or in part, under the Copyright Act and applicable law.

11.     Joint Exhibit 7 reflects that, through and including the end of 2021, SMP's United States revenues from "Thinking Out Loud" total ■■■■■■■■.

---

[2] As detailed below, Defendants contend Atlantic Records' United States revenues from "Thinking Out Loud" identified in Joint Exhibit 6 is slightly overstated due to an oversimplification in computation made by Atlantic Records.

REDACTED FOR PUBLIC FILING

12. Joint Exhibit 7 further reflects that, through and including the end of 2021, SMP incurred deductible costs, exclusive of taxes, in relation to United States income from "Thinking Out Loud," totaling ▮▮▮▮▮▮▮ (consisting of client royalties payable to Sheeran and royalty payments to Sheeran's United Kingdom publisher) that SMP claims are deductible from its United States revenues from "Thinking Out Loud."

13. Joint Exhibit 7 further reflects that, through and including the end of 2021, SMP paid taxes totaling ▮▮▮▮▮▮▮ in relation to its United States income from "Thinking Out Loud" that SMP claims are deductible from its United States revenues from "Thinking Out Loud."

14. Joint Exhibit 7 therefore reflects that based on SMP's United States revenues from "Thinking Out Loud" and the expenses and taxes it incurred in relation to its United States revenue from "Thinking Out Loud" that SMP claims are deductible from its United States revenue from "Thinking Out Loud," SMP had total net after tax United States income from "Thinking Out Loud" through December of 2021 of ▮▮▮▮▮▮▮ For the avoidance of doubt, while Joint Exhibit 7 is admitted into evidence for all purposes without objection by Plaintiffs or Defendants, pursuant to Joint Exhibit 8, the expenses reflected on Joint Exhibit 7 may be challenged by Plaintiffs solely with respect to whether any or all of such expenses and taxes are properly deductible against the revenues shown on Joint Exhibit 7, in whole or in part, under the Copyright Act and applicable law. .

15. Joint Exhibit 8 reflects the Parties Agreement that Joint Exhibits 5 through 7, which reflect the United States gross revenues and expenses incurred and taxes paid by the Defendants with respect to the United States exploitation of "Thinking Out Loud," are admissible for all purposes, but that Plaintiffs reserve the right to challenge the deductibility of any or all of the expenses and/or taxes reflected on Joint Exhibits 5 through 7.

4

REDACTED FOR PUBLIC FILING

B.   **Plaintiffs' Proposed Findings of Fact**

1. "Thinking Out Loud" borrows heavily from the elements of "Let's Get It On" with the majority of the "Thinking Out Loud" composition being attributable to the same.

2. The deductions asserted by the enumerated Defendants as off-sets and/or overhead are not properly attributable to the creation, dissemination, and/or marketing of "Thinking Out Loud" and, to the extent valid, are duplicative in character.

3. While Plaintiffs stipulate to the amount of taxes Defendants claim to have paid, Plaintiffs do not stipulate that the aggregate tax amounts are directly attributable to "Thinking Out Loud".

4. In the event that Plaintiffs successfully prove infringement at the trial of this case, consistent with the previous Order of this Court (Doc. 211) in the companion case of *Structured Asset Sales, LLC v. Ed Sheeran*, *et.al.*; Case Number: *1:17-CV-5221-LLS*, the Plaintiffs herein would contend entitlement to concert ticket sale revenues by virtue of this Court's previous finding that that there is "a link between the infringing concert performance of TOL and profits arising from concert ticket sales". Consistent with the principles of res judicata, concert ticket revenues have been found to be legally-cognizable damages herein. Accordingly, in the interests of consistency and equal protection, these self-same concert revenue damages must be presented to the jury for consideration at the trial of the instant case.

C.   **Defendants' Objections To Plaintiffs' Proposed Findings Of Fact & Proposed Counter-Findings Of Fact**

   *Objections To Plaintiffs' Proposed Findings Of Fact*

1. **Plaintiffs' Proposed Finding of Fact No. 1**. Defendants object to and dispute Plaintiffs' Proposed Finding of Fact No. 1. As detailed below in Proposed Counter-Finding No. 9, to the extent "Thinking Out Loud" is found to infringe "Let's Get It On," then the elements in

5

REDACTED FOR PUBLIC FILING

"Thinking Out Loud" attributable to such infringement comprise a very small fraction of the work as a whole, 10% at most. Defendants further object to Plaintiffs' Proposed Finding of Fact No. 1 because Plaintiffs have not cited any admissible evidence to support their Proposed Finding.

    2.    **Plaintiffs' Proposed Finding of Fact Nos. 2-3**. Defendants dispute Plaintiffs' Proposed Findings of Fact Nos. 2-3. Joint Exhibits 5, 6 and 7 are, pursuant to Joint Exhibit 8, admissible for all purposes and, by the express terms of Joint Exhibit 8, the "expenses," including taxes, shown in those Exhibits have been stipulated to have been incurred "in relation to" the United States exploitation of "Thinking Out Loud." Joint Exhibit 8 further provides that Plaintiffs' challenge to such expenses is limited to whether they are deductible, in whole or in part, under the Copyright Act and applicable law. There is no dispute that the amount of revenues and expenses (which includes "overhead" and income taxes) as reflected on Joint Exhibits 5, 6 and 7 is true and correct.

    Defendants thus object to Plaintiffs' Proposed Findings of Fact Nos. 2 and 3 because they have been offered in violation of the October 8, 2020 Stipulation of the parties – Joint Exhibit 8. As made clear in Joint Exhibits 5, 6 and 7, the "off-sets," "overhead" and "taxes" that Plaintiffs seek to challenge in their Proposed Findings of Fact Nos. 2 and 3 all represent "expenses in relation to the United States exploitation of 'Thinking Out Loud,'" and Plaintiffs therefore cannot challenge whether such expenses are attributable to "Thinking Out Loud." However, to the extent Plaintiffs are permitted to disavow their stipulation in Joint Exhibit 8 and make the challenges identified in Proposed Findings of Fact Nos. 2 and 3, Defendants will prove that the expenses (including "overhead" and income taxes) were incurred in relation to the United States revenue of "Thinking Out Loud."

3. **Plaintiffs' Proposed Finding of Fact No. 4**.  Defendants object to Plaintiffs' Proposed Finding of Fact No. 4 – which purports to claim entitlement to seek to recover "concert ticket sale revenues" and which does not even articulate a purported statement of fact – because it has been offered in direct violation of the Court's July 24, 2020 Order (ECF 134), which Order rejected Plaintiffs' untimely application to reopen discovery to compel production of documents concerning concert revenues.  Further, Plaintiffs never asserted any claim in their Complaint for concert revenues and have not provided any nexus in their pleading between their claim of infringement and any concert revenues.  Having failed to pursue <u>any</u> discovery regarding concert revenues until long after discovery closed and having had their claim for concert revenues already rejected by this Court's July 24, 2020 Order (ECF 134), Plaintiffs have no basis for their eleventh hour attempt to invent a new financial claim five weeks before trial.

Defendants further object to Plaintiffs' Proposed Finding of Fact No. 4 because permitting Plaintiffs to seek concert revenues at trial five weeks before trial would cause extreme, incurable prejudice to Defendants.  In particular, given Plaintiffs' failure to seek concert revenues during the discovery period of this case, Defendants never engaged an expert witness to address any issues (including apportionment) relating to concert ticket revenues.  There is no possibility of an appropriate evidentiary record being made in this case.

Defendants further object to Plaintiffs' Proposed Finding of Fact No. 4 to the extent Plaintiffs cite the companion case of *Structured Asset Sales, LLC v. Edward Christopher Sheeran, et al.*, Case No. 18-cv-5839 (LLS) (the "SAS Case") (Plaintiffs cited the incorrect case number for the SAS Case).  In the SAS Case, in motion practice directed to discovery made within the discovery period, the Court found that SAS, in its complaint, sufficiently pleaded a nexus between the alleged infringement and concert revenues and granted SAS's motion to compel discovery of

concert revenues, which was produced as confidential information in that case in accordance with the timelines of that case. The parties in the SAS Case thereafter exchanged expert disclosures regarding concert revenues and further engaged in motion practice relating to whether profits from such concerts were shown, in that case, to have a causal nexus to the alleged infringement. None of those things have occurred in this case because no such claim was pleaded, no such claim was ever tested in motion practice and no discovery or expert analysis has been conducted.

Moreover, Plaintiffs' citation to the doctrines of res judicata and "equal protection" are frivolous, make no legal or logical sense and are, in short, incomprehensible.

If nothing else, Plaintiffs' Proposed Finding of Fact No. 4 confirms what Defendants have understood from the outset: this case has nothing to do with whether there is any infringement in this case – there is none. Instead, it is a pure money-grab by Plaintiffs. This Proposed Finding has absolutely no basis in fact or in law, and it is barred by this Court's Order. Plaintiffs have no compunction about ignoring this Court's Orders, treating them as if they were a nullity, which respectfully, at this juncture, warrants the imposition of *sua sponte* Rule 11 sanctions against Plaintiffs and their counsel.

### *Defendants' Proposed Damages Counter-Findings Of Fact*

1. The Defendants' collective United States net profits from "Thinking Out Loud" for the time periods noted above totals ▮▮▮▮▮▮ (Joint Exhibits 5, 6, 7 and 8; trial testimony of Barry M. Massarsky; trial testimony of Stephanie Hardwick; trial testimony of a corporate representative of Atlantic Records; and, trial testimony of a corporate representative of SMP; and Amended Report of Barry M. Massarsky).

2. Although the Profit & Loss Statement of Atlantic Records identifies net profits of ▮▮▮▮▮▮ attributable to "Thinking Out Loud," this calculation assumes that there was only

one version of the album *x* and allocates the income from the album *x* as if there were only 12 tracks on all albums when in fact there were multiple different versions of the album containing "Thinking Out Loud" released which contained a greater number of tracks and, in addition, a significant portion of album sales occurred before the release of "Thinking Out Loud" as a single and such sales were driven by other, earlier singles. (Joint Exhibits 6 and 8; trial testimony of Barry Massarsky; and, trial testimony of a corporate representative of Atlantic Records; Amended Report of Barry Massarsky).

    3.    Upon taking into account the factors identified immediately above, the net profits of Atlantic Records attributable to "Thinking Out Loud" actually equals ▮▮▮▮▮, 22.22% of which is ▮▮▮▮▮ (Trial testimony of Barry Massarsky; Amended Report of Barry Massarsky).[3]

    4.    The net profits of SMP through December 2019 attributable to "Thinking Out Loud" were ▮▮▮▮▮, 22.22% of which is ▮▮▮▮▮ (Joint Exhibits 7 and 8, trial testimony of Barry Massarsky, Amended Report of Barry Massarsky).

    5.    The net profits of Ed Sheeran through December 2020 attributable to "Thinking Out Loud" were ▮▮▮▮▮, 22.22% of which is ▮▮▮▮▮ (Joint Exhibits 5 and 8; trial testimony of Barry Massarsky; Amended Report of Barry Massarsky).

    6.    Accordingly, before apportioning between the Defendants' profits attributable to the alleged infringement and their profits attributable to other factors, the most the Plaintiffs could

---

[3] At the time of his death, Townsend held a beneficial interest in two-thirds of the fifty percent writer's share in "Let's Get It On." The Plaintiffs succeeded to two-thirds of Townsend's interest and thus hold a beneficial interest in two-thirds of two-thirds of fifty percent, which equals two-ninths (and two-ninths equals 0.2222222222222). For shorthand, the parties express this interest as a 22.22% beneficial interest and are calculating out to that four decimal place for simplicity.

recover from the Defendants is 22.22% of ▮▮▮▮▮▮▮, which equals ▮▮▮▮▮▮▮. (Joint Exhibits 5, 6, 7 and 8, trial testimony of Barry Massarsky).

7. Without limitation, the following elements in "Thinking Out Loud" are examples of elements not at issue in this case and which Plaintiffs do not allege are infringing: (1) the drum rhythms; (2) the bass line; (3) certain of the chord progressions; (4) the tempo; (5) the guitar solo; (6) the lyrics and (7) the vast majority of the melodies in "Thinking Out Loud." (Trial testimony of Dr. Lawrence Ferrara).

8. The marketing efforts of Atlantic Records, the release of prior singles driving sales of the album entitled *x* and the musical performance and popularity of Ed Sheeran, including the music video for TOL, helped to drive sales and revenues for "Thinking Out Loud." (Trial testimony of Stuart Camp; trial testimony of Ed Sheeran; trial testimony of Barry Massarsky; trial testimony of a corporate representative of SMP; and, trial testimony of a corporate representative of Atlantic Records).

9. The Defendants' collective United States net profits attributable to the alleged infringing elements as opposed to non-infringing elements totals – at most – 10% of the overall net profits; put differently, only 10% of the net profits of the Defendants from the United States exploitation of "Thinking Out Loud" – at most – is attributable to the alleged infringement of "Let's Get It On." (Trial testimony of Dr. Lawrence Ferrara; trial testimony of Barry Massarsky; trial testimony of Stuart Camp; trial testimony of a corporate representative of SMP; and, trial testimony of a corporate representative of Atlantic Records).

10. Upon apportioning between the Defendants' profits attributable to the alleged infringement and their profits attributable to other factors, the most the Plaintiffs can recover is 10% of ▮▮▮▮▮▮▮, which equals ▮▮▮▮▮▮▮. (Trial testimony of Dr. Lawrence Ferrara; trial

testimony of Barry Massarsky; trial testimony of Stuart Camp; trial testimony of a corporate representative of SMP; and, trial testimony of a corporate representative of Atlantic Records).

11. In or around April 2015, in response to the claim of Plaintiffs, SMP's predecessor-in-interest sought and obtained a preliminary musicological analysis from Dr. Lawrence Ferrara and Anthony Ricigliano; their analysis, which SMP shared with Mr. Sheeran's representatives and with counsel for Plaintiffs, opined, among other things, that TOL did not copy from LGO,. (Trial testimony of Dr. Lawrence Ferrara; trial testimony of a corporate representative of SMP; trial testimony of Stuart Camp).

12. On or about October 6, 2015, Dr. Lawrence Ferrara provided a further musicological analysis to Defendants, a copy of which was also provided to counsel for Plaintiffs, which opined, among other things, that the similarities between LGO and TOL did not suggest copying, and that any similarities were insignificant. (Trial testimony of Dr. Lawrence Ferrara; trial testimony of Stuart Camp).

13. Defendants relied in good faith on the aforementioned analysis of Dr. Ferrara and Mr. Ricigliano in continuing to exploit TOL commercially. (Trial testimony of Stuart Camp; trial testimony of a corporate representative of SMP; trial testimony of a corporate representative of Atlantic Records).

**D.    Expert Witnesses**

The Plaintiffs intend to call upon the following expert witness to testify: Dr. Alexander Stewart

The Defendants intend to call upon the following expert witnesses to testify: Dr. Lawrence Ferrara; Barry Massarsky.

REDACTED FOR PUBLIC FILING

E.  **Pre-marked Joint Trial Exhibits**

**THE PARTIES** hereby stipulate and agree that the following Exhibits may be received, with the Court's approval, in evidence at trial as Pre-marked Joint Trial Exhibits:

| Exhibit No. | Description |
| --- | --- |
| 5 | United States Net Profits Summary for Ed Sheeran (DEF 3609) |
| 6 | United States Net Profits Summary for Atlantic Records (DEF 3608) |
| 7 | United States Net Profits Summary for Sony/ATV (DEF 3610) |
| 8 | Stipulation Regarding DEF 3608, DEF 3609 and DEF 3610 |
| 9 | Official Music Video for "Thinking Out Loud" |
| 10 | Spotify Streaming Data (DEF 3613) |
| 11 | Sheeran – SATV UK Agreement (DEF 924) |
| 12 | Sheeran – Warner UK Agreement (as amended) (DEF 961 and DEF 967) |
| 13 | Producer Agreement with Jake Gosling (DEF 1248) |
| 14 | Mixer Agreement with Spike Stent (DEF 1285) |
| 15 | Sheeran Agreement with Rocket Management (DEF 1775) |
| 16 | Excel Showing that "Thinking Out Loud" is a "Rocket Song" (DEF 1781) |
| 17 | Excel Summary of Costs related to "Thinking Out Loud" Music Video (DEF 1786) |
| 18 | Sample of Invoices relating to Atlantic's Marketing Costs (DEF 1788-1861) |
| 19 | SATV US – SATV UK Sub-Publishing Agreement (DEF 1914) |
| 20 | Sony Inter-Company Agreement (as amended) (DEF 1925, DEF 1926) |
| 21 | Warner / Elektra / Atlantic "License Agreement" (DEF 1980) |
| 22 | "Assignment of Copyright and License Agreement" between Warner Music Group and WEA International Inc. (DEF 2029) |
| 23 | Letter Agreement dated October 1, 2008 between WEA International Inc. and Warner Music UK Ltd. (DEF 2035) |

| Exhibit No. | Description |
|---|---|
| 24 | Excel Summary of Mechanical Royalties Paid by Atlantic to SATV (DEF 3612) |

F.     **Pre-marked Disputed Exhibits**

*Plaintiffs' Disputed Exhibits*

The Plaintiffs will offer the following exhibits to be received in evidence, to which Defendants object:

| Exhibit No. | Description | Objection(s) |
|---|---|---|
| 122 | Sony/ATV Corporate Representative Deposition w/ Exhibits | Rule 401; Rule 403; Rule 802<br><br>Defendants cannot stipulate to the wholesale admission of Sony/ATV's deposition testimony; to the extent Plaintiffs designate specific pages they seek to admit into evidence, Defendants can respond accordingly.<br><br>In addition, Defendants object to Deposition Exhibit 1 under Rule 401. |
| 123 | Atlantic Recording Company Deposition w/ Exhibits | Rule 401; Rule 403; Rule 802<br><br>Defendants cannot stipulate to the wholesale admission of Atlantic's deposition testimony; to the extent Plaintiffs designate specific pages they seek to admit into evidence, Defendants can respond accordingly.<br><br>In addition, Defendants object to Deposition Exhibit 1 under Rule 401. |

*Defendants' Disputed Exhibits*

The Defendants will offer the following exhibits to be received in evidence, to which Plaintiffs object:

| Exhibit No. | Description | Objection(s) |
| --- | --- | --- |
| 300 | Amended and Updated Report of Barry M. Massarsky | Rule 401; Rule 403; Rule 802. Defendants' Massarsky report is inadmissible hearsay. |
| 301 | Billboard Charts for Various Ed Sheeran Songs and Albums that charted prior to the release of *Thinking Out Loud* as a single | Rule 401; Rule 402. Plaintiffs cannot agree to admission of unspecified "charts" of unknown provenance. |
| 302 | April 15, 2015 Email from Bruce Scavuzzo to Keisha Rice, attaching preliminary musicological analysis of Dr. Lawrence Ferrara and Anthony Ricigliano | Rules 408—Settlement Discussions/Negotiations; Violation of Rule 26, expert opinions of Anthony Ricigliano not disclosed |
| 303 | October 8, 2015 Email from Ilene S. Farkas to Keisha Rice, attaching additional preliminary musicological analysis of Dr. Lawrence Ferrara | Rules 408—Settlement Discussions/Negotiations; Violation of Rule 26. |
| 304 | Excel from Atlantic Records re: sales of "x" and Thinking Out Loud (DEF 3615) | Rule 401; Rule 403; Federal Rules of Civil Procedure, Rule 26 |

**G.   Type of Trial and Estimated Length**

1. The Plaintiffs have made a demand for a trial-by-jury.

2. The Plaintiffs estimate that it will take one (1) day(s) to present their damages case.

3. The Defendants estimate that it will take 1-2 days to present their damages case.

REDACTED FOR PUBLIC FILING

Dated this 15th day of March, 2023.

                                FRANK & RICE, P.A.

By: _____
Patrick R. Frank, Esq.
Keisha D. Rice, Esq.
Katherine Viker, Esq.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184
*Attorneys for Plaintiffs*


PRYOR CASHMAN LLP

By: _____
Donald S. Zakarin
Ilene S. Farkas
Andrew M. Goldsmith
Brian M. Maida
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Defendants*


**SO ORDERED.**

Dated this _____ day of March, 2023.


                             _____
The Honorable Louis L. Stanton
United District Court Judge