UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

             *Plaintiffs*,

      -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

             *Defendants*.

ECF CASE

17-cv-5221 (LLS)

**DEFENDANTS' PROPOSED JURY
CHARGES FOR POTENTIAL
DAMAGES PHASE OF TRIAL**

In accordance with Paragraph 7 of the Scheduling Order dated October 26, 2022, Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC (f/k/a Sony/ATV Music Publishing LLC) respectfully submit their Proposed Jury Charges for the potential damages phase of trial.

Dated: New York, New York
       March 15, 2023

                        PRYOR CASHMAN LLP

                        By: */s/ Donald S. Zakarin*
                           Donald S. Zakarin
                           Ilene S. Farkas
                           Andrew M. Goldsmith
                           Brian M. Maida
                      7 Times Square
                      New York, NY 10036
                      (212) 421-4100

                      *Attorneys for Defendants Edward
                      Christopher Sheeran, Atlantic Recording
                      Corporation and Sony Music Publishing
                      (US) LLC*

**TABLE OF CONTENTS**

III.   DAMAGES INSTRUCTIONS ................................................................. 1

Function of the Jury ............................................................................. 1

Remedies for Infringement ................................................................... 3

The Extent of Liability of Each Defendant .......................................... 4

Actual Damages .................................................................................... 8

Profits of the Defendants .................................................................... 10

    A.   What Are Profits ................................................................. 10

    B.   Deduction of Expenses From Revenues .............................. 10

        i.   Burden of Proof On Challenging Deductibility
          of Expenses ................................................................ 11

    C.   Deductibility of Income Taxes ............................................ 12

Willful Infringement ........................................................................... 13

Computing the Plaintiffs' Entitlement To Profits .............................. 15

III.     **DAMAGES INSTRUCTIONS**

**Function of the Jury**

As I told you in my instructions the other day, just as it was your duty to decide the question of infringement in accordance with the law as I explained it to you based on the evidence that was presented to you that I admitted into the record in this case, it is also your duty to decide the question of what financial recovery may be had by the Plaintiffs in accordance with the law and based on the evidence that I have admitted into the record.

You are the sole and exclusive judges of the facts, and what you consider important and what you do not consider important.  You will decide the weight you wish to give to any of the evidence presented, and you will determine the credibility of witnesses.  On the issue of damages, as I will explain, the parties have largely stipulated to the amount of United States revenue of *Thinking Out Loud* and the amount of costs and taxes incurred by the Defendants relating to that revenue.  There is also no dispute that the Plaintiffs have a 22.22% interest in *Let's Get It On*, so their right to recover from the Defendants is also limited to that 22.22% interest.

So there are only a few issues that are in dispute for you to resolve, and I will explain those disputed issues in my instructions.  On those disputed issues, you alone will resolve any conflicts that you find may exist.  And you have the right to draw reasonable inferences from the evidence, based on your common sense and experience.

The evidence consists of, among other things, the stipulated facts and exhibits that were placed in evidence.  Where the facts are in dispute, you must rely upon your own recollection of the evidence, although you can request the right to have any of the evidence, including any testimony, brought into the jury room for you to see or hear again.  What the lawyers said in their opening statements is not evidence, nor is anything they have said in their closing arguments.  The

1

arguments and objections of the lawyers are not evidence, nor are their questions evidence. The only evidence are the exhibits admitted into evidence and the answers of witnesses, unless objected to and stricken from the record by me.

Again, I remind you that nothing that I have said during trial and nothing in these instructions is evidence, nor should you consider any rulings I have made as indicating any view on my part as to what your decision on damages should be. You and you alone will make that determination in accordance with the law as I will give it to you and in accordance with your evaluation of the evidence that has been admitted.

## Remedies for Infringement

You have previously ruled that the Defendants are liable for having infringed protectable elements contained in *Let's Get It On*.  You have now heard the evidence with respect to the damages and profits claimed by the Plaintiffs.

As a remedy for infringement, the Plaintiffs are entitled to recover, to the extent of their 22.22% beneficial ownership of the copyright of *Let's Get It On*: (1) the actual damages, if any, that they have proved to you, by a preponderance of the evidence, to have been suffered by them as a result of the infringement, if any, and (2) any profits of the Defendants that are attributable to the infringement that are not taken into account in computing actual damages.  These two forms of potential recovery cannot duplicate each other – there can be no double recovery.

With respect to the Plaintiffs' recovery being limited to their 22.22% beneficial interest in *Let's Get It On*, so you understand what I mean, if you find that the Defendants' net profits that are attributable to the elements that you have found to be infringing total $100, then the most that the Plaintiffs can recover of that $100 is $22.22.  I will explain what is meant by the Defendants' profits and what is meant by attributable to the elements that you have found to be infringing shortly.

**SOURCE:**  17 U.S.C. § 504.

**<u>The Extent of Liability of Each Defendant</u>**

In a moment, I will explain to you in detail what "actual damages" means and how to calculate the "profits" of each of the Defendants.  For now, it is important for you to understand that, in calculating "profits," each Defendant can only be held liable to the Plaintiffs for the particular profits earned by him or it that are attributable solely to the elements you have found to be infringing.

As I will explain to you, the Plaintiffs and the Defendants have stipulated, in Joint Exhibit 8, to the amount of the revenues and expenses, including income taxes, of each of the Defendants in relation to the United States exploitation of *Thinking Out Loud*.  So you understand what I mean by saying United States exploitation, it is just a short-hand way of referring to the ways in which each Defendant has generated revenues from *Thinking Out Loud* in the United States – for example, by selling CDs that include the song or offering the song on streaming platforms such as Spotify or from radio airplay of the song.

The amounts and types of the revenues, expenses and income taxes of each of the Defendants are shown on Joint Exhibits 5, 6 and 7 and, as I said, the parties have stipulated in Joint Exhibit 8 that these amounts are true and correct and these exhibits accurately and completely show the United States revenue, expenses and income taxes of each of the Defendants in relation to the United States exploitation of *Thinking Out Loud*.  So you will not have to determine what those amounts are, as they are agreed by the parties to be accurate and complete, and you also do not have to determine whether both the revenues and the expenses, including income taxes, are in relation to each Defendant's exploitation of *Thinking Out Loud* in the United States, as the parties have also agreed that for Joint Exhibits 5, 6 and 7 that is the case.

However, while the Plaintiffs and the Defendants have agreed that Joint Exhibits 5, 6 and 7 accurately and completely show all of the revenues and expenses, including the income taxes, of each of the Defendants in relation to the United States exploitation of *Thinking Out Loud*, the Plaintiffs, in Joint Exhibit 8, have reserved their right to challenge whether the expenses, including the taxes, reflected on Joint Exhibits 5, 6 and 7 are properly deductible, in whole or in part, against the revenues reflected on Joint Exhibits 5, 6 and 7 under the Copyright Act and applicable law. As I will explain shortly, there are certain circumstances under the Copyright Act and other applicable law where a defendant cannot deduct certain expenses or income taxes.

Therefore, under the terms of Joint Exhibit 8, which is the stipulation of the parties, the Plaintiffs have the initial burden of coming forward with admissible evidence showing why, under the Copyright Act or applicable law, any or all of the expenses and income taxes of each Defendant should not be deductible from their revenues in determining the profits of each Defendant.  If the Plaintiffs come forward with evidence showing why, under the Copyright Act or applicable law, any or all of the expenses and income taxes paid by each Defendant as shown on Joint Exhibits 5, 6 and 7 should not be deductible from their revenues, then the burden shifts to the Defendants to show you why the expenses and income taxes are properly deductible, under the Copyright Act or applicable law, from their revenues in determining the profits of each of the Defendants.

Again, there is no dispute that the Defendants each incurred the expenses and income taxes in the amounts that are shown on Joint Exhibits 5, 6 and 7 and there is no dispute that the expenses and income taxes are in relation to the United States exploitation of *Thinking Out Loud*, meaning that the expenses and taxes are related to the revenues produced by such exploitation.

So the parties agree on the amount of revenue and the amount of expenses and taxes.  They also agree that the expenses and taxes all were incurred in relation to the United States exploitation

of *Thinking Out Loud*.  It is only on the issue of the deductibility of the expenses and taxes that the parties disagree about whether the expenses and taxes are deductible under the Copyright Act or applicable law.  It is the Plaintiffs' burden, under Joint Exhibit 8, to prove that some or all of the expenses, including income taxes, are <u>not</u> properly deductible under the Copyright Act or applicable law.  If you find that the Plaintiffs have failed to carry that burden, then you must deduct the expenses and taxes recited in Joint Exhibits 5, 6 and 7 from each Defendant's respective revenue.

As I have already stated, in determining profits, Mr. Sheeran cannot be held liable to the Plaintiffs for the profits of Sony Music Publishing or Atlantic Records; Sony Music Publishing cannot be held liable to the Plaintiffs for the profits of Mr. Sheeran or Atlantic Records; and Atlantic Records cannot be held liable to the Plaintiffs for the profits of Mr. Sheeran or Sony Music Publishing.  They are each liable only for their own profits.

Amy Wadge, who testified in this case and who you know is the co-writer of *Thinking Out Loud*, was not sued by the Plaintiffs and is not a defendant in this case.  Plaintiffs therefore have no claim to recover any of the royalties that were paid to her or her music publisher.  However, the songwriter royalties Atlantic Records paid to Ms. Wadge and her publisher are part of the royalty expense shown on Joint Exhibit 6.  The fact that the Plaintiffs did not sue Ms. Wadge does not make Atlantic Records' royalty payments to her any less of a deductible expense than the royalty payments Atlantic Records made to the Defendants that Plaintiffs have sued in this case – Ed Sheeran and Sony Music Publishing.  Here too, Plaintiffs, under Joint Exhibit 8, have the burden to prove to you that the royalties that Atlantic Records paid to Ms. Wadge are not properly deductible under the Copyright Act or applicable law.

**SOURCES:**  17 U.S.C. § 504; *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981); *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467 (2d Cir. 1985).

**Actual Damages**

Under the Copyright Act, actual damages, which the Plaintiffs must prove to you by a preponderance of the evidence, represent the losses that the Plaintiffs have suffered by virtue of the infringement, if any.  For example, if the Plaintiffs can show that they lost income because someone used *Thinking Out Loud* in a commercial instead of using *Let's Get It On*, then that lost income could be considered an actual damage.  However, because, as I have explained to you, actual damages cannot duplicate profits, the Plaintiffs would not be entitled to recover both the lost income and the Defendants' profits for the same use.

The question for you to answer is whether or not the Plaintiffs have established, by a preponderance of the evidence, whether they have suffered any actual losses from the infringement or whether the value of *Let's Get It On* has been diminished by virtue of the infringement and, if so, the amount of such losses or the reduction in the value of *Let's Get It On*.

The Plaintiffs bear the burden of proving, by a preponderance of the evidence, that *Thinking Out Loud* negatively affected the revenues of *Let's Get It On*.  If you find that the Plaintiffs have failed to prove, by a preponderance of the evidence, that *Thinking Out Loud* negatively affected the sales and revenues of *Let's Get It On*, then you cannot award any actual damages to the Plaintiffs.  If you find that the Plaintiffs have not shown either that they suffered a loss or, if you find that they proved a loss, but failed to provide evidence to quantify the amount of the alleged loss, then the Plaintiffs have not satisfied their burden of proof by a preponderance of the evidence to show that they suffered any actual damages.

**SOURCES:**  M. Nimmer & D. Nimmer, 1 *Nimmer on Copyright* §14.02 (Rev. Ed. 2018); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110 (2d Cir. 1986); *Antenna Television v. Aegean Video Inc.*, No. 95-cv-2328 (ERK), 1996 WL 298252 (E.D.N.Y. Apr. 23, 1996).

## Profits of the Defendants

The Plaintiffs may be awarded the United States profits earned by each Defendant that is attributable to the infringement.  There are two steps in this analysis.

### A.   What Are Profits

The first step is to determine the profits of the Defendants.  The meaning of profits here is the same as in your own lives: it is the net amount of money that you end up with from your income after you have paid all of the expenses associated with that income, including your income taxes. For example, if you have a job that paid you $75,000 last year and you had to pay $10,000 to commute back and forth to work and you had to buy certain clothes or equipment for your job that cost you $5,000, your actual net income, before taxes would be $60,000, because your expenses to produce that income were $15,000.  Then if you paid income taxes of $15,000 on that net income, your actual net profits from your job would be $45,000, not the gross amount of $75,000 that you are paid.

Here, just like you do not get to keep all of the income you receive from your job, the Defendants also have incurred expenses and taxes in relation to the revenues they received from the United States exploitation of *Thinking Out Loud* and they too do not get to keep all of their revenues.

It is only the Defendants' net profits, not their gross revenues, that may be recoverable by the Plaintiffs.

### B.   Deduction of Expenses From Revenues

As I have already instructed you, in this case, the parties have stipulated to the amount of the revenue of each Defendant and the amount of expenses and income taxes of each in relation to the United States exploitation of *Thinking Out Loud*.  The Defendants contend that all of those expenses and all of those income taxes are properly deductible, under the Copyright Act or

10

applicable law, from their revenues in determining their profits.  While the Plaintiffs agree that the amounts of the revenues, expenses and income taxes shown on Joint Exhibits 5, 6 and 7 are true and correct and that the revenue and expenses are in relation to the United States exploitation of *Thinking Out Loud*, the Plaintiffs have reserved the right to challenge whether those expenses and income taxes are properly deductible, under the Copyright Act or applicable law, from the revenues in whole or in part.

### (i)      Burden of Proof On Challenging Deductibility of Expenses

The parties have stipulated in Joint Exhibit 8 that Joint Exhibits 5, 6 and 7 are admissible for all purposes, subject only to the Plaintiffs' right to challenge whether the expenses, including income taxes, are deductible, in whole or in part under the Copyright Act or applicable law. Therefore, to satisfy their challenge, the Plaintiffs have the burden of coming forward, in the first instance, with evidence showing that some or all of the expenses and taxes claimed as deductions by the Defendants are not proper deductions under the Copyright Act or applicable law.  If, and only if, the Plaintiffs come forward with such evidence does the burden of proof shift to the Defendants to prove to you, by a preponderance of the evidence, that the expenses and taxes are properly deductible from the revenues under the Copyright Act or applicable law.

In evaluating what expenses are deductible, the Copyright Act and applicable law provides that deductible expenses include, by way of example, (1) direct costs such as marketing costs, promotion costs, recording and manufacturing costs, video costs, distribution costs, management fees that are payable, whether as a percentage of income or otherwise, accounting fees, licensing fees and the payment of royalties, that are related to the creation and exploitation of *Thinking Out Loud*, and (2) indirect costs, such as a reasonable portion of overhead expenses that can be reasonably or fairly allocated or attributed to *Thinking Out Loud*.

11

In considering the deductibility of overhead, where you are dealing with a company like Atlantic Records that obtains revenue from the release of many recordings, there are various methods of allocation that satisfy the legal requirements of the Copyright Act and applicable law. One such method of allocation is to take the total revenues of a company such as Atlantic Records and allocate its total annual overhead expenses based on the share of revenue produced by the allegedly infringing work as compared to the total revenue of the company – in other words, to use mathematical terms, to perform a proportional or ratio analysis. In connection with the Plaintiffs' challenge of the deductibility of Atlantic Records' expenses, if you find that Atlantic Records has allocated its overhead on this basis, then you should find that its overhead expenses are properly allocated and deducted.

### C.  Deductibility of Income Taxes

The Defendants' income taxes, in the amounts shown in Joint Exhibits 5, 6 and 7, are fully deductible from revenue unless the Plaintiffs have proved to you, by a preponderance of the evidence, that the Defendants' infringement of *Let's Get It On* was willful.  I will explain willful infringement to you next.

**SOURCES:**  17 U.S.C. § 504; *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559 (2d Cir. 1994); *Basquiat v. Kemper Snowboards*, No. 96-cv-0185 (RO), 1998 WL 190258 (S.D.N.Y. Apr. 21, 1998); *Clarke-Reliance Corp. v. McNab, Inc.*, 89-cv-1367 (MEL), 1994 WL 62818 (S.D.N.Y. Feb. 23, 1994); *Caffey v. Cook*, 409 F. Supp. 2d 484 (S.D.N.Y. 2006); *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992); *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir. 1984); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390 (1940).

### **Willful Infringement**

In your first deliberation in this case, you found that *Thinking Out Loud* infringes the copyright of *Let's Get It On*.  Because the income taxes paid by each Defendant are fully deductible from their revenues unless you find, on a Defendant by Defendant basis, that such Defendant willfully infringed *Let's Get It On*, you must therefore determine whether each such Defendant willfully infringed.

The Plaintiffs must prove willful or deliberate infringement by a preponderance of the evidence.  Infringement is willful or deliberate (1) if the Plaintiffs prove that a particular Defendant purposefully undertook, with actual knowledge, to infringe *Let's Get It On* or (2) if the Plaintiffs prove that a particular Defendant acted with reckless disregard for their copyright rights.  Reckless disregard for the possibility of infringement may be found when the infringer should have known that the particular acts would constitute infringement.  An infringement is not willful when a party reasonably and in good faith believes that its conduct is innocent.

In evaluating whether any of the Defendants in this case willfully infringed *Let's Get It On*, on an individual Defendant by Defendant basis, you should consider all of the evidence regarding the roles played by each Defendant with respect to *Thinking Out Loud* and their knowledge or lack of knowledge about whether, in creating *Thinking Out Loud*, Ed Sheeran  and Amy Wadge consciously and purposefully copied *Let's Get It On*.  You should consider the evidence presented to you and determine whether the Plaintiffs have proved by a preponderance of the evidence whether or not Ed Sheeran, or Sony Music Publishing, or Atlantic Records willfully infringed the copyright of *Let's Get It On*.

The Plaintiffs here have claimed that even if, in creating *Thinking Out Loud*, Ed Sheeran did not willfully or intentionally infringe *Let's Get It On*, by continuing to license, distribute and

sell *Thinking Out Loud* after the Plaintiffs asserted their claim of infringement, the Defendants engaged in willful infringement.  Again, however, an infringement may not be willful when a party reasonably and in good faith believes that its conduct is innocent – and that remains true even when a defendant receives a notice from the copyright holder alleging an infringement.

Thus, in considering this claim and the Plaintiffs' burden of proof, you may consider the undisputed fact that when the Plaintiffs first made their claim of infringement, even before this lawsuit was started, the Defendants obtained advice from expert musicologists that *Thinking Out Loud* did not copy from *Let's Get It On* and you may also consider whether any or all of the Defendants were entitled to rely on that advice in continuing to sell and distribute *Thinking Out Loud*.  For the Plaintiffs to satisfy their burden of proof that the continued exploitation of *Thinking Out Loud* by a specific Defendant constituted willful infringement, you must determine that each specific Defendant did not have a good faith belief that *Thinking Out Loud* did not infringe *Let's Get It On*, and that each Defendant's reliance on the expert advice I mentioned was unreasonable or reckless.

A defendant's reasonable and good-faith belief that its conduct is not infringing affords complete protection from a finding of willful infringement.

**SOURCES:**  *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110 (2d Cir. 1986); *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250 (2d Cir. 1992).

14

## Computing the Plaintiffs' Entitlement To Profits

Once you determine the total profits of the Defendants, after having deducted the expenses and income taxes that you have found are properly deductible from each Defendant's revenues from *Thinking Out Loud*, you must then determine what portion of those profits – if any – are solely attributable to the infringement and recoverable by the Plaintiffs.  This is for three reasons: first, it is undisputed that *Thinking Out Loud* has elements that the Plaintiffs have not claimed are infringing, such as the lyrics and other musical elements, and the Plaintiffs cannot recover profits that are attributable to musical and lyrical elements in *Thinking Out Loud* that are not infringing; second, some of the Defendants' profits may be attributable – not to the infringement of *Let's Get It On* – but to their own efforts, such as the marketing and promotion of Atlantic Records, the performance of *Thinking Out Loud* by Ed Sheeran and popularity of Ed Sheeran or the impact of other tracks on the album on which *Thinking Out Loud* appeared; and third, the Plaintiffs cannot recover a greater percentage of the Defendants' profits than their own percentage interest in *Let's Get It On*, which as the parties have agreed, is 22.22%.

Accordingly, the Plaintiffs are only entitled to that portion of each of the Defendants' profits that were attributable to elements of *Thinking Out Loud* that you find to be infringing. Profits that are attributable to non-infringing elements – whether to the unprotectable elements of *Thinking Out Loud,* or to the lyrics of *Thinking Out Loud*, or to portions of the melody that are not infringing – or that are attributable to factors other than the infringing elements, such as Ed Sheeran's performance of the song, or to the marketing and promotion of the song, or to the success of other singles released from the album on which *Thinking Out Loud* appeared, or to Ed Sheeran's popularity as an artist or his touring or to the video performance of the song – should be excluded by you from the profits recoverable by the Plaintiffs if you find that the Defendants have proved,

by a preponderance of the evidence, that any such non-infringing factors and elements contributed to the profits.

It is up to you to decide, based on all of the evidence, the extent to which the Defendants' profits were attributable solely to the infringement, and the extent to which the profits are attributable to non-infringing elements and other factors contributed by the Defendants.  All of this is what is known as apportionment or apportioning of profits.

It is also important to understand that in apportioning profits, mathematical exactness is not required.  Based on the evidence you have heard, you may consider the percentages that are commonly allocated to lyrics and to music in valuing songs and whether you think that allocation is appropriate in this case.  You may consider an approximation of what percent of the overall music in *Thinking Out Loud* you think is infringing as compared to the entire song based on the evidence and testimony presented to you.  If you cannot decide with certainty the percentage of each Defendant's profits that you believe are reasonably attributable to factors other than infringement, then you should make an approximation of the appropriate percentage of profit that you find is attributable solely to the elements that you have found to be infringing.

Finally, as I said to you at the outset of these instructions, it is undisputed that the Plaintiffs have a 22.22% beneficial interest in *Let's Get It On*.  This means that, after you have deducted the expenses and taxes that you find are deductible from the revenues to arrive at each Defendant's profits, and after you have apportioned each Defendant's profits between infringing and non-infringing elements and reduced the profits by the percentage of *Thinking Out Loud* you find to be non-infringing and after you have apportioned the profits to further reduce them by the percentage you have found to be attributable to factors other than the infringing elements, such as the popularity of Ed Sheeran or his performance of *Thinking Out Loud*, as I have mentioned, the

16

Plaintiffs are entitled only to 22.22% of those profits.  And that will be the amount of the profits that you will compute on the special verdict form that I will provide to you.


**SOURCES:**  17 U.S.C. § 504; *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559 (2d Cir. 1994); *Basquiat v. Kemper Snowboards*, No. 96-cv-0185 (RO), 1998 WL 190258 (S.D.N.Y. Apr. 21, 1998); *Clarke-Reliance Corp. v. McNab, Inc.*, 89-cv-1367 (MEL), 1994 WL 62818 (S.D.N.Y. Feb. 23, 1994); *Caffey v. Cook*, 409 F. Supp. 2d 484 (S.D.N.Y. 2006); *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992); *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir. 1984); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390 (1940).