UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHRYN TOWNSEND GRIFFIN, HELEN
MCDONALD, and THE ESTATE OF CHERRIGALE
TOWNSEND,

        *Plaintiffs*,

       -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

        *Defendants*.

ECF CASE

17-cv-5221 (LLS)

---

# DEFENDANTS' TRIAL BRIEF

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Atlantic Recording
Corporation and Sony Music Publishing
(US) LLC*

*Of Counsel*:

    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

TRIAL BRIEF ....................................................................................................................... 1

   I.     SCOPE OF COPYRIGHT PROTECTION ................................................................. 1

   II.    LEGAL STANDARD FOR ACTUAL COPYING ..................................................... 4

   III.   LEGAL STANDARD FOR WRONGFUL COPYING ................................................ 4

   IV.   LEGAL STANDARD FOR INFRINGEMENT CLAIMS BASED
         ON A COMBINATION OF UNPROTECTABLE ELEMENTS .................................. 5

   V.     PLAINTIFFS CANNOT ESTABLISH A *PRIMA FACIE* CASE ................................ 8

   VI.    RECOVERY OF ACTUAL DAMAGES FOR INFRINGEMENT ............................ 13

   VII.   RECOVERY OF DEFENDANTS' PROFITS ........................................................... 13

         A.  Deductible Expenses – Direct Costs, Indirect Costs & Taxes .................................. 14

         B.  Elements Of Profits Attributable To Factors Other
             Than The Alleged Infringement – Apportionment .................................................. 16

   VIII.  ANTICIPATED EVIDENTIARY ISSUES .............................................................. 18

         A.  Anticipated Motions In Limine ............................................................................... 18

         B.  The Mash-Up/Medley Evidence .............................................................................. 19

         C.  Additional Objections Defendants Anticipate Making ............................................ 20

         D.  Plaintiffs' Objections To Defendants' Proposed Exhibits ....................................... 21

## **TABLE OF AUTHORITIES**

**CASES**                                                                 **PAGE(s)**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)....................................................................................5

*ABKCO Music v. Harrisongs Music, Ltd.*,
   508 F. Supp. 798 (S.D.N.Y. 1981) ....................................................................17

*Allen v. Scholastic Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011)..................................................................2

*Antenna TV v. Aegean Video Inc.*,
   95-cv-2328 (ERK), 1996 WL 298252 (E.D.N.Y. Apr. 23, 1996) .........................13

*Beyond Blond Prods., LLC v. Heldman*,
   479 F. Supp. 3d 874 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods.,*
   *LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756
   (9th Cir. Apr. 13, 2022) .....................................................................................9

*Boisson v. Banian, Ltd.*,
   273 F.3d 262 (2d Cir. 2001)................................................................................1

*Caffey v. Cook*,
   409 F. Supp. 2d 484 (S.D.N.Y. 2006)..........................................................14, 17

*Clark v. Hudson Bay Music, Inc.*,
   104 F.3d 351 (2d Cir. 1996)..............................................................................14

*Clarke-Reliance Corp. v. McNab, Inc.*,
   89-cv-1367 (MEL), 1994 WL 62818 (S.D.N.Y. Feb. 23, 1994) ...........................15

*Darrell v. Joe Morris Music*,
   113 F.2d 80 (2d Cir. 1940)..................................................................................1

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*,
   807 F.2d 1110 (2d Cir. 1986)........................................................................13, 16

*Folio Impressions, Inc. v. Byer Cal.*,
   937 F.2d 759 (2d Cir. 1991)................................................................................4

*Fox-Rich Textiles v. Malden Mills Industries, Inc.*,
   89-cv-0773 (RO), 1990 WL 235640 (S.D.N.Y. Aug. 2, 1990) ...........................4

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ..........................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u> <u>PAGE(s)</u>

*Gray v. Perry*,
   No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020),
   *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022).........................................*passim*

*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999)...............................................................................14, 16

*In Design v. K-Mart Apparel Corp.*,
   13 F.3d 559 (2d Cir. 1994).........................................................................14, 15, 16

*Jean v. Bug Music, Inc.*,
   No. 00-cv-4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) .........................................2

*Kaye v. Cartoon Network Inc.*,
   297 F. Supp. 3d 362 (S.D.N.Y. 2017)....................................................................2

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996 (2d Cir. 1995)...............................................................................6

*Laureyssens v. Idea Grp., Inc.*,
   964 F.2d 131 (2d Cir. 1992)..............................................................................4

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*,
   365 F.3d 133 (2d Cir. 2004).............................................................................11

*McDonald v. West*,
   138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016).....................2, 5

*N.A.S. Import Corp. v. Chenson Enters., Inc.*,
   968 F.2d 250 (2d Cir. 1992)............................................................................16

*Odegard Inc. v. Safavieh Carpets, Inc.*,
   398 F. Supp. 2d 275 (S.D.N.Y. 2005).................................................................6, 11

*Penguin Random House. LLC v. Colting*,
   270 F. Supp. 3d 736 (S.D.N.Y. 2017)....................................................................4

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010)...............................................................................5

*Peters v. West*,
   776 F. Supp. 2d 742 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) ...........................11

*Rogers v. Koons*,
   960 F.2d (2d Cir. 1992)................................................................................17

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

*Rose v. Hewson*,
    No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ......................................6

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ..............................................................................................2, 6

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    309 U.S. 390 (1940)...............................................................................................................17

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 453 (Oct. 5, 2020),
    *reh'g denied*, 141 S. Ct. 946 (Dec. 7, 2020) ................................................................ *passim*

*Smith v. Little, Brown & Co.*,
    396 F.2d 150 (2d Cir. 1968)..................................................................................................14

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ..................................................................................................2

*Threeline Imports, Inc. v. Vernikov*,
    No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28, 2016) .................6

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000)..................................................................................2, 3

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2d Cir. 2003)....................................................................................................9

*United States v. Hamilton*,
    583 F.2d 448 (9th Cir. 1978) ..................................................................................................2

*Universal Pictures Co. v. Harold Lloyd Corp.*,
    162 F.2d 354 (9th Cir. 1947) ..................................................................................................6

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986)....................................1

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*,
    210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd sub nom.*
    *Well-Made Toy Mfg. Corp v. Goffa Intern. Corp.*, 354 F.3d 112 (2d Cir. 2003) ....................4

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014)..................................................................................................4, 5

**STATUTES**

37 C.F.R. § 202.1(a) ................................................................................................3

17 U.S.C. § 504(b) .............................................................................13, 14, 16, 17

**TREATISES**

Copyright Office Practices § 313.4(C) (3d ed. 2021) ..............................................3

4 *Nimmer on Copyright* § 14.02 (Rev. Ed. 2018) .........................................13

4 *Nimmer on Copyright* § 14.03 (Rev. Ed. 2018) .........................................17

6 Patry on Copyright § 22:145 ..........................................................................16, 17

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony Music Publishing (US) LLC (f/k/a Sony/ATV Music Publishing LLC) ("SMP," together with Sheeran and Atlantic, the "Defendants" and each a "Defendant") respectfully submit the following Trial Brief regarding questions of law that, on information and belief, may be contested by the Plaintiffs.

## TRIAL BRIEF

## I. SCOPE OF COPYRIGHT PROTECTION

As the Second Circuit has explained, "an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001). In that regard, "copyright protection does not extend to historical or contemporary facts, material traceable to common sources or in the public domain, and *scenes a faire*." *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986).

In the context of music, "[a]lthough there is generally a low bar for originality in copyright, given the limited number of notes and chords available to composers, and because common themes frequently reappear in various compositions, many if not most of the elements that appear in popular music are not individually protectable." *Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020) (citations & quotations omitted), *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022). As the Second Circuit stated in *Darrell v. Joe Morris Music*, 113 F.2d 80, 80 (2d Cir. 1940): "It must be remembered that, while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear. Recurrence is not therefore an inevitable badge of plagiarism." And, despite "the famously low bar for originality," *Skidmore v.*

*Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 453 (Oct. 5, 2020),

*reh'g denied*, 141 S. Ct. 946 (Dec. 7, 2020) (citation omitted), "[t]rivial elements of compilation

and arrangement … fall below the threshold of originality."  *United States v. Hamilton*, 583 F.2d

448, 451 (9th Cir. 1978); *accord Satava v. Lowry*, 323 F.3d 805, 811-12 (9th Cir. 2003).

This Court has already held that unprotectable musical building blocks, or *scenes-a-faire*,

include, among other things, chord progressions and syncopation or anticipation.  ECF 93 at 9;

ECF 138 at 2.  This Court also held that tempo, key, common harmonies, common melodies and

common rhythms are also unprotectable basic musical building blocks.  *Id.*; *see also*, *McDonald

v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016)

("common rhythms, song structures, and harmonic progressions are not protected") (citations

omitted); *id.* at 458 ("Tempo … is a basic element of music that is part of the public domain")

(citation omitted); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011); *see also

Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362, 367 (S.D.N.Y. 2017); *Jean v. Bug Music, Inc.*,

No. 00-cv-4022 (DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (common melodic

sequence unprotectable); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (key

unprotectable).

Further, with respect to melodies, as the Ninth Circuit observed in the high-profile music

infringement case involving recording artist Katy Perry:

> [C]reating a melody involves more than writing down a sequence of pitches; at a
> minimum, that sequence must also be "rhythmically organized" so as to form an
> "esthetic whole."  *Melody*, Webster's Third New International Dictionary (2002);
> *cf*. *Swirsky*, 376 F.3d at 848[1] (distinguishing between non-copyrightable "chord
> progressions" standing alone and a copyrightable "chorus," which involves these
> progressions "in combination with rhythm and pitch sequence[s]").  While an eight-
> note melody may be copyrightable, the abstract eight-note pitch sequence that is a
> component of the melody is not.  See U.S. Copyright Office, Compendium of U.S.

---

[1] The full cite for *Swirsky* is *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).

Copyright Office Practices § 313.4(C) (3d ed. 2021) (citing 37 C.F.R. § 202.1(a)) (advising that "short musical phrases consisting of only a few musical notes standing alone are not copyrightable . . . even if the phrase is novel or distinctive," and giving an eight-note pitch sequence as an example).

*Gray*, 28 F. 4th at 99-100 (footnote omitted).

And, as the District Court explained in *Gray* in granting a post-trial motion to set aside a plaintiff's verdict (such rejection of the jury verdict being upheld by the Ninth Circuit), "courts in musical copyright cases have a significant obligation ... **to encourage others to build freely upon the ideas and information conveyed by a work**, and at the same time motivate creative activity, by <u>carefully limiting the scope of copyright protection to truly original expression only</u>." *Gray*, 2020 WL 1275221, at *4 (emphasis added, internal citations, citation, quotations & brackets omitted)); *id.* at *5 (ruling that "[m]usical elements that are 'common or trite' – such as the 'use of a long-short-long rhythm,' **'chord progressions**,' certain 'tempos,' a 'recurring vocal phrase,' repeating 'hook phrases,' the alternating 'emphasis of strong and weak beats,' **'syncopation,'** the use of 'tritones,' or the use of 'basic musical devices in different manners,' – are, accordingly, not protectable") (emphasis added; internal citation, citation omitted); *see also Skidmore*, 952 F.3d at 1069 (musical "building blocks belong in the public domain and cannot be exclusively appropriated by any particular author") (citation omitted).

Here, in regard to the chord progression and harmonic rhythm at issue, this Court has already ruled that "there is uncontradicted proof that those elements in this case are common musical techniques." (ECF No. 138 at 2). Consistent with established law, commonplace musical building blocks or techniques are unprotectable. Further, it is settled – and this Court already has ruled in this case (ECF 93 at 9) – that key is an unprotectable musical building block. *See Tisi*, 97 F. Supp. 2d at 548.

3

## II.    <u>LEGAL STANDARD FOR ACTUAL COPYING</u>

"Actual copying may be established (a) 'by direct evidence of copying' or (b) 'by indirect evidence, including access to the copyrighted work, [of] similarities that are probative of copying between the works, and expert testimony." *Penguin Random House. LLC v. Colting*, 270 F. Supp. 3d 736, 744 (S.D.N.Y. 2017) (quoting *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992)).  However, where a plaintiff relies on indirect evidence to prove actual copying, access alone does not suffice; rather, "[t]here must be probative similarity between the protected work and the allegedly infringing work." *Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147, 166 (E.D.N.Y. 2002), *aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Intern. Corp.*, 354 F.3d 112 (2d Cir. 2003).

Of course, "if the proof establishes that one work was arrived at independently, without copying the other, there is [] no infringement." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 765 (2d Cir. 1991) (citation omitted); *see also Fox-Rich Textiles v. Malden Mills Industries, Inc.*, 89-cv-0773 (RO), 1990 WL 235640, at *1 (S.D.N.Y. Aug. 2, 1990) ("One of the elements of any copyright claim is copying, so that proof of independent creation will necessarily defeat an infringement action") (citations omitted).  In this regard, the law is clear: even if two works are identical, if the authors of the second work independently created their own work and did not actually copy from the first, there can be no infringement

## III.    <u>LEGAL STANDARD FOR WRONGFUL COPYING</u>

As the Second Circuit has cautioned, "copying and wrongful copying … are often confused." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014).  Because "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection," "[c]opying [unprotected] aspects of a work is not wrongful, and thus not <u>all</u> copying is wrongful." *Id.*

(emphasis in original); *see also Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66-67 (2d Cir. 2020). Although one may have actually copied another work, if one has not copied anything that is protectable, then no infringement claim can exist because any such copying is not wrongful under the law. In other words, even if a defendant actually copies an earlier song, unless the second song is substantially similar to <u>protectable</u> elements in the earlier song, actual copying is not wrongful copying. *See, e.g.*, *Zalewski*, 754 F.3d at 101. Thus, to prove wrongful copying, the Plaintiffs must prove, by a preponderance of the evidence, that TOL is substantially similar to legally protectable elements in LGO. *Id.*

Further, "when faced with works that have both protectible and unprotectible elements, [the] analysis must be more discerning." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (citations & quotations omitted). As held in *Peter F. Gaito,* the Court "must attempt to extract the unprotectible elements," and the question for the jury of whether wrongful copying exists turns on "<u>whether the protectible elements, standing alone, are substantially similar</u>." *Id.* (emphasis added; citations & quotations omitted); *see also McDonald*, 138 F. Supp. 3d at 455. Here, notwithstanding Dr. Stewart's distortion of notes and pitches to create the appearance of melodic similarities, Plaintiffs have not identified **any** protectable elements of LGO that TOL supposedly copies, only the chord progression and the harmonic rhythm, both of which this Court has already ruled are unprotectable and both of which, alone and in combination, exist in songs that predate LGO.

## IV.    LEGAL STANDARD FOR INFRINGEMENT CLAIMS BASED ON A COMBINATION OF UNPROTECTABLE ELEMENTS

Copyright protection for a combination of unprotectable elements is thin and exists "'<u>only if</u> those elements are <u>numerous</u> enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Gray*, 2020 WL 1275221, at *3

(emphasis added; quoting *Satava*, 323 F.3d 811).  Thus, "only the '<u>new</u> combination,' that is the '<u>novel</u> arrangement,' and not "<u>any</u> combination of unprotectable elements qualifies for copyright protection."  *Skidmore*, 952 F.3d at 1075 (quoting *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 363 (9th Cir. 1947), *Satava*, 323 F.3d at 811) (emphasis in original; ellipsis omitted); *see also Threeline Imports, Inc. v. Vernikov*, No. 15–cv–02333 (AMD) (RML), 2016 WL 11472749, at *13 (E.D.N.Y. Oct. 28, 2016); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995); *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018).

In addition to (1) the numerosity requirement and (2) the "new" or "novel" requirement, to prove wrongful copying where an infringement claim is based on "the selection, coordination and arrangement of otherwise uncopyrightable elements," the infringement analysis requires showing that the defendant used "the <u>same</u> selection and arrangement" of unprotectable elements.  *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) (emphasis added; citations, quotations and brackets omitted); *see also id.* ("copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is 'thin'").

As relevant here, Plaintiffs, in an eleventh hour effort to satisfy the numerosity requirement, have belatedly purported to add to their combination of unprotectable elements the key signature of LGO (it is written in the key of E Flat major).  Under the undisputed facts in this case, the key signature of LGO cannot be considered as part of the alleged selection and arrangement as a matter of law.

*First*, consistent with unambiguous precedent that the Court already has cited, the key of LGO (which is indisputably different from the key of TOL) is unprotectable as a matter of law. (ECF 93 at 9).  *Second*, the Complaint filed in this action does <u>not</u> even allege infringement with

respect to any purported similarities in the key signatures of the two works (in fact, the Complaint does not use the word "key" a single time).  (ECF 1).  *Third*, nowhere in their opposition to Defendants' summary judgment motion – which required Plaintiffs to lay bare their proof – did Plaintiffs ever claim that LGO's key signature was an element of their "combination" claim; instead, their "combination" claim in their summary judgment opposition (ECF 81 at 21) included other elements (all but two of which, the unprotectable chord progression and the unprotectable harmonic rhythm, have been eliminated from this case by virtue of this Court's March 24, 2020 Order).  (ECF 138 at 2).

*Fourth*, Dr. Stewart admitted under oath at his deposition that he "didn't consider" the key signature of LGO when "comparing the two songs."  Instead, underscoring that the key signatures are actually different, Dr. Stewart testified that he transposed the two songs into the "same key for comparison purposes which is standard musicological procedure."  Plaintiffs cannot transpose the two songs into the same key for purposes of comparison and, at the very same time, claim that the key signature is part of their selection and arrangement claim, especially where, as here, both LGO and TOL are written in major keys.

In any event, if the Court permitted Plaintiffs, at the last minute, to add the key signature as a further unprotectable element of their selection and arrangement claim, it would be self-defeating.  Selection and arrangement claims provide only thin copyright protection, requiring identity or virtual identity of the selection and arrangement of the unprotectable elements in the two works.  Because it is undisputed that the key of LGO is different than the key of TOL, including the key signature in the alleged selection and arrangement, standing alone, makes the selection and arrangement of LGO different from TOL and would require a finding that Plaintiffs have not satisfied, and cannot satisfy, the identity or virtual identity requirement for a selection

and arrangement claim.

Further, as detailed below, with or without the key signature as an alleged element of their selection and arrangement claim, Plaintiffs also cannot establish a *prima facie* case because numerous works predate LGO that use the same selection and arrangement of elements at issue, *i.e.*, Plaintiffs cannot prove that their selection and arrangement was new and novel.

## V.    PLAINTIFFS CANNOT ESTABLISH A *PRIMA FACIE* CASE

This Court's Orders of March 24, 2020 and August 18, 2020 are both clear and consistent with established law.  (ECF 121; ECF 138).  They provide Plaintiffs with only two possible avenues for their infringement claim, neither of which can be sustained by the evidence under applicable law (and hence their case should not be submitted to the jury).

*First*, Plaintiffs allege that disconnected snippets of TOL's melody supposedly infringe the melody of LGO.  But as will be shown at trial, Plaintiffs' expert, Dr. Stewart, has altered notes at issue to create the illusion of alleged similarities that do not exist.  Dr. Stewart's manipulation and misrepresentation of the notes, which are in fact indisputably different, can and will be established through cross-examination on Plaintiffs' direct case and will not permit Plaintiffs to establish a *prima facie* case of infringement.  Indeed, even Dr. Stewart's flawed pitch sequences reveal the pitches to be different.  Far from substantially similar, the melodies at issue are objectively dissimilar and do not support an infringement claim.

*Second*, as noted above, Plaintiffs have advanced a selection and arrangement claim: that LGO's combination of an unprotectable chord progression and an unprotectable harmonic rhythm (and assuming that the key signature were actually a part of their claim, an unprotectable key signature) may be protected by copyright, and that it has been infringed by TOL.  However, as noted above, to succeed on a "selection and arrangement" infringement claim – a thin copyright

claim as a matter of law – with respect to the alleged copying of unprotectable musical elements, Plaintiffs must prove, by a preponderance of the evidence, not only actual copying by Defendants, but that: (1) the combination of unprotectable elements is sufficiently "numerous"; (2) that their selection and arrangement of elements is "new" or "novel" (meaning that both the combination of elements and the manner in which they have been arranged are unique and do not exist in prior art); and (3) that Defendants wrongfully copied the selection and arrangement by replicating it in the same or "virtually identical" manner.  *Skidmore*, 952 F.3d at 1074, 1075 & 1076 n.13; *see also Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136 (2d Cir. 2003) (copyright for selection and arrangement is not infringed "so long as the competing work does not feature the same selection and arrangement") (citation & quotation omitted).

With respect to the numerosity requirement, directly relevant here, in *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022), the Court held that the combination of only two unprotectable elements, as are alleged here, was insufficient for protection.  The Ninth Circuit's determination in *Beyond Blond* is consistent with the dictionary definition of "numerous," which has been defined to mean "great in number, many," "very many, being or existing in great quantity" and "consisting of great numbers of units or individuals." *Merriam-Webster* identifies "few" as an antonym for "numerous" and correspondingly defines "few" to mean "a small number of units or individuals." *See* www.merriam-webster.com/dictionary/numerous#synonyms  and  www.merriam-webster.com/dictionary/few, last accessed March 15, 2023.  Two elements – or even three elements, were the key signature considered – are not "great in number" but instead are "few," the <u>opposite</u> of numerous.

Thus, as a matter of law, Plaintiffs will not be able to establish that the two (or three)

allegedly similar unprotectable elements – the chord progression, the syncopation (anticipation) and, possibly, key signature (which, as noted above, is indisputably different and hence self-defeating of Plaintiffs' claim) – are numerous.  And, as discussed below, these commonplace and unprotectable elements here are, in fact, different.

In addition to their inability to prove that the combination of these unprotectable musical elements is sufficiently numerous, Plaintiffs also cannot prove that their selection and arrangement of these elements was "new" or "novel" to LGO.  Defendants have already identified the use of this same combination in multiple prior songs (if one were to include key in the alleged selection and arrangement – which for the reasons noted above, lacks any legal basis – then Defendants still have identified prior art that uses the exact same combination of musical elements).

Moreover, because he failed to conduct a proper prior art study, this Court already has barred Dr. Stewart from offering any testimony that LGO or its constituent elements – which necessarily includes the unprotectable elements at issue and their selection and arrangement – is "'unique,' 'distinctive,' 'unusual,' or the like."  (ECF 138 at 1-2).  As a result, Plaintiffs cannot establish a *prima facie* case of a selection and arrangement infringement claim because they cannot satisfy the requirement of showing that the specific selection and arrangement is new or novel to LGO (and even if Dr. Stewart were not barred from offering any testimony on this subject, Defendants' incontrovertible evidence will show that the selection and arrangement in LGO was not new or novel).

However, even assuming Plaintiffs could surmount what are legally insurmountable impediments to their claim, they would also need to prove both actual copying and wrongful copying – and they also cannot satisfy either of these requirements.  As noted, to prove wrongful copying where an infringement claim is based on "the selection, coordination and arrangement of

otherwise uncopyrightable elements," the infringement analysis requires showing that the defendant used "the same selection and arrangement" of unprotectable elements.  *Odegard*, 398 F. Supp. 2d at 279 (emphasis added; citations, quotations and brackets omitted); *see also id.* ("copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is 'thin'").

This limitation of protection to the "same" selection and arrangement has been expressed in varying ways by the courts but, consistent with the bedrock principle that no author should obtain a monopoly over the use of unprotectable elements, it comes down to the requirement that for a selection and arrangement infringement claim to exist, the two works must be virtually identical.  Thus, in *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004), the Second Circuit stated that "[t]he protection that flows from [a compilation of unprotected elements] is, of course, quite limited," and "protects only the author's particularized expression of the idea."  (Citations omitted).  Stated differently, "[f]or a plaintiff that seeks to apply this theory of protection to 'works where there is a narrow range of available creative choices, the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work in order to be substantially similar.'"  *Gray*, 2020 WL 1275221, at *3 (quoting *Skidmore*, 952 F.3d at 1076 n.13 (9th Cir. 2020); *see also Peters v. West*, 776 F. Supp. 2d 742, 750-51 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (dismissing claim because, even assuming the plaintiff's song qualified for protection due to its "combination of unprotectable elements," the defendant's song did "not use the contested combination of unprotectable elements … in their entirety in a nearly identical format").

And, here, it is undisputed and indisputable that not only are the chord progressions different, the anticipated chords in each song have different durations, they occur on different beats,

and they anticipate <u>different</u> beats of <u>different</u> measures.  It is also undisputed and indisputable that LGO features a four-bar chord progression while TOL features a two-bar chord progression. As this Court has already ruled, syncopation (*i.e.*, anticipation) is a commonplace musical device (effectively a musical idea) that is unprotectable and here the expression of that unprotectable idea is different.  Plaintiffs' selection and arrangement claim requires that they establish that the chord progression and the syncopation – and their selection and arrangement of those elements – be the same or virtually identical.  Instead, here, both the expression of the chord progression and the syncopation and their selection and arrangement in TOL and LGO are not even substantially similar.

And, finally, if one were to include the key signature as a further unprotectable element in the alleged selection and arrangement claim, that would be self-defeating to Plaintiffs' selection and arrangement claim because, as Dr. Stewart admitted, in order to compare LGO with TOL, he was required to transpose both songs into a common key signature because they are in fact written in different keys.

In the final analysis, what this case is about are two commonplace and unprotectable musical building blocks that have been used alone and together in songs going back years before LGO.  And even those elements have been used and expressed differently in TOL and LGO.  This is an infringement claim that turns the whole Constitutional purpose of copyright on its head. Copyright protection is provided to encourage creation, not to stifle it.  Creators are supposed to be able to build on what exists, not to monopolize basic musical or literary building blocks, removing them from the toolbox of creators which would inevitably reduce the available body of new works.  *See Gray*, 2020 WL 1275221, at *4, *5.

## VI.   RECOVERY OF ACTUAL DAMAGES FOR INFRINGEMENT

This case has been bifurcated for trial such that damages and profits will not be reached unless the Plaintiffs prevail on liability.  Accordingly, Defendants address damages and profits even though they believe, for all of the reasons discussed above, that Plaintiffs cannot even satisfy their burden to establish a *prima facie* case of infringement.

Under the Copyright Act, actual damages represent the extent to which the infringement by the defendant has injured or destroyed the market value of the copyrighted work at the time of the alleged infringement.  *See, e.g.*, *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1118-19 (2d Cir. 1986); *Antenna TV v. Aegean Video Inc.*, 95-cv-2328 (ERK), 1996 WL 298252, at *4 (E.D.N.Y. Apr. 23, 1996); *see also* 17 U.S.C. § 504(b); M. Nimmer & D. Nimmer, 4 *Nimmer on Copyright* §14.02 (Rev. Ed. 2018).  Accordingly, to recover actual damages, a plaintiff must prove either that the defendant's infringement negatively affected sales and revenues for its work or prove a lost licensing fee.  *Id.*

Here, the Plaintiffs have not identified a single dollar of damage to the value of LGO. Despite Defendants serving discovery requests seeking such information, Plaintiffs have not produced any documents (or testimony) showing any diminution in the value of the income earned by LGO or any other damage or loss.  Plaintiffs are not entitled to produce nothing in response to discovery requests showing any loss or damage and then, at trial, put forth an entirely speculative claim for actual damages.

## VII.   RECOVERY OF DEFENDANTS' PROFITS

In lieu of seeking statutory damages or actual damages, a copyright plaintiff may seek to recover an infringer's profits.  Under Section 504(b) of the Copyright Act, a copyright plaintiff is entitled to recover "any profits of the infringer that are attributable to the infringement and are not

taken into account in computing the actual damages."  Further, "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.*

### A.    <u>Deductible Expenses – Direct Costs, Indirect Costs & Taxes</u>

Deductible expenses include (1) direct costs such as marketing costs, manufacturing costs, distribution costs, licensing fees and the payment of royalties or fees that are related to the creation and production of the allegedly infringing work, and (2) indirect costs, such as a reasonable portion of overhead expenses that are related to the creation, production and exploitation of the allegedly infringing work, as well as management and accounting fees charged against the income of the song.  *E.g.*, *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 105 (2d Cir. 1999); *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 565-66 (2d Cir. 1994);[2] *Smith v. Little, Brown & Co.*, 396 F.2d 150, 151 (2d Cir. 1968).  In addition, absent a finding of willful infringement, deductible expenses also include income taxes paid by the defendants.  *E.g.*, *In Design*, 13 F.3d at 566; *Caffey v. Cook*, 409 F. Supp. 2d 484, 506 (S.D.N.Y. 2006).

In this case, through Joint Exhibit 8, the parties have stipulated, for all purposes, to the amount of each Defendant's expenses – including overhead and income taxes – and that those expenses are related to the gross revenues of each Defendant derived from the exploitation of TOL in the United States, as reflected on Joint Exhibits 5, 6 and 7.  Specifically, in Joint Exhibit 8, Plaintiffs stipulated that Joint Exhibits 5, 6 and 7 "reflect[] [each Defendant's] revenues and <u>expenses in relation to</u> the United States exploitation of *Thinking Out Loud*."  (Emphasis added).

---

[2] *In Design* has been overruled on other grounds.  *See Clark v. Hudson Bay Music, Inc.*, 104 F.3d 351 (2d Cir. 1996).

Plaintiffs reserved only the right to challenge "whether any or all of such expenses … are properly deductible … under the Copyright Act or applicable law," thus entitling Plaintiffs to present such evidence as they have that may show that, under the Copyright Act or applicable law, some portion of the expenses (including overhead and income taxes) are not properly deductible from the gross revenues.  However, the quantum of both the revenues and expenses and the fact that the expenses are related to the United States gross revenues of TOL have been agreed upon and are not subject to dispute or challenge.

In this case, in evaluating Plaintiffs' contemplated challenge to the deductibility of Defendants' expenses, there is nothing in the Copyright Act or applicable law that would bar the deduction of any of the expenses (including overhead and income taxes).  Applicable law under the Copyright Act is clear that the expenses need not be precisely or perfectly correlated to the revenue and that, "absent bad faith, reasonable approximations constitute satisfactory evidence." *In Design*, 13 F.3d at 564 (citation omitted); *see also Clarke-Reliance Corp. v. McNab, Inc.*, 89-cv-1367 (MEL), 1994 WL 62818, at *4 (S.D.N.Y. Feb. 23, 1994).

Here, as reflected in Joint Exhibit 8, the parties have agreed to the amount of Defendants' expenses and income taxes and that they relate to the United States revenue of TOL.  The sole open issue under such stipulation is whether Plaintiffs have a basis for challenging the deductibility of any of the expenses under the Copyright Act or applicable law.  Plaintiffs have never identified a single basis under either the Copyright Act or applicable law on which the deduction of any of the expenses (including overhead and income taxes) may be challenged.

Further, with respect to the deduction of overhead expenses, under the Copyright Act, Plaintiffs' challenge must also show (a) that the overhead expenses (and the only overhead expenses sought to be deducted are those of Atlantic Recording Corporation) are unrelated to the

United States revenues of TOL, and (b) that there is an insufficient nexus between the expenses and the alleged infringing sales. *Hamil Am.*, 193 F.3d at 105. In this regard, the Court will not be required to "scrutinize for inclusion or exclusion particular items within the overhead category." *Id.*

In challenging the deductibility of the overhead expenses, in accordance with Joint Exhibit 8, under the Copyright Act, Plaintiffs must also provide evidence showing that Defendants' allocation methodology for the overhead expenses is unfair or unreasonable (again, the overhead expenses are those of Atlantic Recording Corporation; Sony Music Publishing is not claiming any overhead expenses and Ed Sheeran's expenses largely consist of management expenses and commissions he has paid on the collection of income and income taxes). *Id.* (citation, quotation & brackets omitted); *see also In Design*, 13 F.3d at 565-66. On this point, the Second Circuit employs the "full absorption method," which permits a defendant to deduct overhead expenses in the same percentage as the sales of the infringing goods bear to its total sales. *See In Design*, 13 F.3d at 565-66. Defendants' allocation methodology precisely follows this formula. Thus, Plaintiffs will not be able to successfully challenge the deductibility of the overhead expenses.[3]

### B. Elements Of Profits Attributable To Factors Other Than The Alleged Infringement – Apportionment

Pursuant to 17 U.S.C. § 504(b), an infringer's profits must be apportioned "according to the amount, quantitatively or qualitatively, copied." 6 Patry on Copyright § 22:145. Thus, the defendant's burden under the apportionment provision of Section 504(b) is to demonstrate the

---

[3] Income taxes – which, of course, qualify as expenses – are fully deductible absent Plaintiffs proving willful infringement. Here, as Plaintiffs have been fully aware since before this case was brought, Defendants obtained expert musicological advice that TOL did not copy from LGO. As a matter of law, Defendants were entitled to rely on that advice, which precludes any possible finding of willfulness. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986); *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992).

absence of a causal link between the alleged infringement and all or part of its profits.  *See* Nimmer § 14.03.

To do so, the defendant may show "that consumers would have purchased its goods even if it had not infringed."  6 Patry on Copyright § 22:145.  Alternatively, the defendant may show "that though the infringement was responsible for some of its profits, it was not the natural or proximate cause of all the profits since there were other elements of [the] defendant's work[] that had intrinsic or independent value for purchasers."  *Id.*; *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390,  407 (1940) (drawing power of the movie stars and production quality); *Caffey,* 409 F. Supp. 2d at 508 (performers' talent and growing fame in the media); *Rogers v. Koons,* 960 F.2d, 301, 313 (2d Cir. 1992) (artist's fame and reputation in the art world); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549-50 (9th Cir. 1989) (attraction of the costumes/scenery and performers' talent); *ABKCO Music v. Harrisongs Music, Ltd.*, 508 F. Supp. 798, 801-02 (S.D.N.Y. 1981) (value of the lyrics and George Harrison's stature in music industry).

As relevant here, Plaintiffs' infringement claim extends to very few and very limited (and largely unprotectable) elements.  The lyrics, one of the two most important elements of popular music, along with melody, are not alleged to be infringing.  The melody, putting to the side Dr. Stewart's alteration of notes and pitches to manufacture alleged similarities, is not remotely similar. As this Court has already ruled, there are no bass or drum parts protected by LGO's copyright (as they are not expressed in the Deposit Copy).

Defendants will prove that, in addition to the importance of all of the elements of TOL that Plaintiffs do not claim are infringing (including the lyrics and virtually all of the melody), the success of TOL has largely been attributable to Ed Sheeran's recorded performance of the song

(other recorded versions not remotely achieving the success of Sheeran's version), including the video of TOL performed by Sheeran, the marketing and promotional efforts of Atlantic Records and the popularity of Ed Sheeran as an artist.  Even assuming that Plaintiffs were able to prove that TOL infringed LGO – and Defendants submit, for all of the reasons discussed above, that they cannot and will not make out a *prima facie* case – at most some 10% of the net profits of Defendants would be attributable to the alleged infringement.

## VIII.   ANTICIPATED EVIDENTIARY ISSUES

### A.   Anticipated Motions *In Limine*

As of the filing of this Trial Brief, Defendants imminently intend to file at least two additional motions *in limine*:

- **Defendants' Eighth Motion *In Limine* (To Be Filed Imminently)**.  Defendants' Eighth Motion *In Limine* will seek to preclude: (a) Plaintiffs from arguing – or offering any testimony or "evidence" – that the selection and arrangement of unprotectable elements in LGO includes the composition's key signature; (b) Plaintiffs from offering testimony or "evidence" that compares the LGO Deposit Copy to the LGO Sound Recording (as set forth in their Proposed Findings of Fact Nos. 9, 10 and 11 in the Liability Pretrial Order); and (c) Plaintiffs from offering testimony or "evidence" that addresses the purported bass line or drum part in TOL or that otherwise compares those elements in TOL to LGO (as set forth in their Proposed Findings of Fact Nos. 3, 13 and 14 in the Liability Pretrial Order).  It also will seek to exclude Plaintiffs' Proposed Exhibits 103 (an email discussing the drums in TOL and LGO), 108 (published sheet music for TOL accentuating and addressing the bass line in TOL) and 128 (an "Essay" that discusses the LGO Recording at length).

- **Defendants' Ninth Motion *In Limine* (To Be Filed Imminently)**.  Defendants' Ninth Motion *In Limine* will seek to preclude Plaintiffs from offering any argument or "evidence" during the potential damages phase of trial regarding Sheeran's concert revenues, which Plaintiffs have attempted to insinuate, for the first time on March 7, 2023, some six weeks before trial, into their portion of the Damages Pretrial Order, in complete disregard for the Court's prior Order dated July 24, 2020 (ECF 134) barring them from seeking discovery regarding concert ticket revenues and despite Plaintiffs having never pleaded any claim for such concert revenue in their Complaint and having provided no causal nexus to even remotely justify such a claim.

**B.   The Mash-Up/Medley Evidence**

The Court denied Defendants' Sixth Motion *In Limine* concerning mash-up/medley evidence, corresponding to Plaintiffs' Proposed Exhibits 106 and 124, "with leave to renew at trial, when the Court can evaluate the other evidence and the considerations expressed in Fed. R. Evidence 403." (ECF 192).  As set forth in the motion (ECF 180-181) and as will now be addressed at trial,[4] Defendants contend that Plaintiffs should be barred from introducing any evidence that Sheeran or any other performer or musician has "mashed up" LGO with TOL or performed a "medley" of LGO and TOL because (a) such evidence does not address any contested issue of fact at trial, (b) will mislead the jury and prejudice Defendants and (c) will require the introduction of

---

[4] The Court will have to address this issue in advance of Plaintiffs' opening because it is virtually certain that Plaintiffs will try to play or otherwise mention the video of the mash-ups/medleys in their opening statement.  As made clear in Defendants' Fourth and Seventh Motions *In Limine*, which this Court granted on March 10, 2023 (ECF 192), and as will be further shown in Defendants' to be filed Eighth and Ninth Motions *In Limine*, Plaintiffs have recognized the weakness of their claim and therefore hope to confuse or mislead the jury by introducing evidence that is both unrelated to any claim they have ever made in this case (not even in their Complaint) and which this Court already has barred.

extensive further evidence necessary to contextualize and explain such evidence and therefore prolong the trial and focus it on issues having nothing to do with any disputed issue of fact.

      C.      **Additional Objections Defendants Anticipate Making**

Given their repeated refusal to comply with clear and unequivocal Orders of this Court – as reflected by their inclusion of various inappropriate Proposed Findings of Fact and Exhibits in the Pretrial Orders – Defendants also anticipate that Plaintiffs will attempt to introduce evidence during the trial that is in violation of the March 24, 2020 Order (ECF 121) and the August 18, 2020 Order (ECF 138), which will taint the jury and potentially create grounds for a mistrial, which Defendants do not want. In particular, Defendants anticipate that Plaintiffs will attempt to offer "evidence" regarding elements not at issue in this case (the bass line and drums) in violation of the March 24, 2020 Order, and that Dr. Stewart will attempt to offer testimony regarding LGO and its constituent elements that the Court already clearly barred in its August 18, 2020 Order.

Defendants therefore will request that the Court issue a standing order barring Plaintiffs from ignoring the Court's prior Orders and from trying to place prejudicial and barred evidence before the jury. Defendants will request that the Court consider imposing terminating sanctions for violation of such Order. Only by threatening to impose such penalty are Plaintiffs likely to comply with the prior Orders of this Court.

In addition to the foregoing and the motions *in limine* cited above, Defendants also have objected to the following Exhibits proffered by Plaintiffs in the Pretrial Orders. To avoid repetition, Defendants respectfully refer the Court to the Pretrial Orders for a full recitation of their objections to each Exhibit:

- **Exhibit 101**. Exhibit 101 is the LGO Recording by Marvin Gaye. In its March 24, 2020 Order, the Court ruled that "the Gaye sound recording is inadmissible in any way

which might confuse the jury into thinking it represents what is protected by copyright." (ECF 121).  Although the Court "deferred until trial" whether the sound recording "may be played … at trial" for another purpose, it ruled that "it seems" any use of the recording "would be barred by Fed. R. Evid. 403." (*Id.*).  Plaintiffs have not articulated and cannot articulate any proper basis for admission of the LGO Recording.

- **Exhibit Nos. 102 and 112**.  These Exhibits correspond to Dr. Stewart's Pre-Litigation Report and Rule 26 Report, both of which compare TOL to the LGO Recording.

- **Exhibit Nos. 114-117**.  These Exhibits correspond to the pleadings filed in this action, which contain irrelevant, highly prejudicial matter and inadmissible hearsay.

- **Exhibit Nos. 118-123**.  These Exhibits correspond to the deposition testimony of various witnesses (including Dr. Stewart and the sole living plaintiff, Ms. Griffin) and the exhibits marked at each such deposition.

- **Exhibit No. 125**.  This Exhibit corresponds to a demo recording of TOL, which is not the copyrighted work at issue.

- **Exhibit Nos. 126-127**.  These Exhibits correspond to Interrogatories served on Sheeran and Sheeran's responses to those Interrogatories.  Defendants cannot stipulate to the wholesale admission of these Exhibits; various of the Interrogatories address irrelevant, highly prejudicial matter.

### D.   <u>Plaintiffs' Objections To Defendants' Proposed Exhibits</u>

In the Pretrial Orders, Plaintiffs have objected to various of Defendants' Proposed Exhibits. The following summarizes those objections, and provides a concise response (upon which Defendants intend to elaborate at or before trial as necessary):

- **Exhibit 200**.  Exhibit 200 is the LGO Deposit Copy with Dr. Ferrara's handwritten

notations to indicate bar numbers and structural section names, together with Dr. Ferrara's reproduction of the Deposit Copy in more legible format with added markings and Dr. Ferrara's transposed transcription of the Deposit Copy into the key of D major with added markings; Dr. Ferrara's markings serve to distinguish between the various structural sections of LGO.  Although Plaintiffs have objected under Rule 403, they have not articulated a cogent basis for exclusion of this Exhibit.

- **Exhibits 201-204**.  These Exhibits correspond to beginner guitar and piano method books (*i.e.*, instruction books) that teach the chord progression at issue in LGO and also teach the harmonic anticipation of chord changes.  Although Plaintiffs have objected under Rules 401, 403 and 802, they have not articulated how these Exhibits are possibly irrelevant or prejudicial, and Defendants do not offer these Exhibits for the truth of any matter asserted, but only to prove that these commonplace musical building blocks are taught in beginner guitar and piano method books.

- **Exhibit 205**.  Exhibit 205 corresponds to excerpts from the deposition of Helen McDonald, the brother of LGO co-author Ed Townsend and an original plaintiff in this action who has since passed away.  The cited testimony includes Ms. McDonald's discussion of (a) her brother's musical background and influences (and confirms that he was familiar with many of the artists who released songs, prior to LGO, that include the same chord progression at issue in LGO), and (b) his creation of LGO.  Although Plaintiffs have objected under Rule 403, they have not articulated how this evidence possibly contravenes Rule 403.

- **Exhibit 206**.  Exhibit 206 corresponds to Dr. Stewart's written transcription (*i.e.*, "Score") of the TOL sound recording.  Although Plaintiffs have objected under Rules

401, 403 and 802, they have not articulated how this evidence is possibly irrelevant, prejudicial or hearsay.

- **Exhibits 207-209**.  These are Audio Exhibits of Dr. Ferrara playing the melodies that Dr. Stewart has placed at issue in LGO and TOL.  Although Plaintiffs have objected under Rules 401, 403 and 802, this evidence is highly relevant (and has been put at issue by Plaintiffs), not remotely prejudicial, and it is obviously not hearsay under Rule 802.

- **Exhibit 210**.  Exhibit 210 is a list of prior art songs that Dr. Ferrara has identified that use the basic chord progressions at issue in LGO and TOL.  Although Plaintiffs have objected under Rules 401, 403 and 802, this prior art evidence is highly relevant, not remotely prejudicial, and it is obviously not hearsay under Rule 802.

- **Exhibits 217-234**.  Exhibits 217-234 correspond to publicly available YouTube videos of Ed Sheeran (and, in one case, an artist known as *Narmi*) "mashing up" (or playing a "medley") of various songs.  As noted in the Liability Pretrial Order, these Exhibits would only be offered in the event the Court, at trial, permits Plaintiffs to introduce their Proposed Exhibit No. 124 (the "medley" video of LGO and TOL).  These Exhibits demonstrate the ubiquity of mash-ups or medleys, and that Sheeran frequently mashes-up his songs with other of his songs and songs by other artists.  Plaintiffs have objected to these Exhibits on the basis that Defendants failed to produce or disclose them during discovery in alleged violation of Rule 26; however, all of these Exhibits are publicly available, and Defendants had no obligation to disclose them (nor have Plaintiffs identified a specific discovery demand to which these publicly available YouTube videos would have been responsive).

23

- **Exhibit 300**.  Exhibit 300 is the Expert Report of Defendants' Damages Expert, Barry Massarsky.  Although Plaintiffs have objected under Rules 401, 403 and 802, they have not offered any cogent basis to exclude this evidence.

- **Exhibit 301**.  Exhibit 301 corresponds to Billboard Charts for various Ed Sheeran songs and albums that charted prior to the release of TOL as a single.  Although Plaintiffs have objected under Rules 401 and 403, they have not offered any cogent basis to exclude this evidence, which proves that Sheeran achieved massive success prior to the release of TOL.

- **Exhibits 302-303**.  These Exhibits correspond to email discussions between Defendants (and/or their counsel) and counsel to Plaintiffs in which Defendants attach preliminary musicological analysis from Dr. Ferrara and Anthony Ricigliano opining that TOL does not copy from LGO.  Defendants intend to offer this evidence during the damages phase of trial (if necessary) solely to prove that Defendants did not engage in willful infringement because they relied in good faith on the opinions of Dr. Ferrara and Mr. Ricigliano that TOL did not copy LGO.  Although Plaintiffs have objected by citing Rule 408 and arguing this evidence constitutes "Settlement Discussions/Negotiations," these were not settlement documents (and their transmittal to Plaintiffs simply show that Plaintiffs were fully aware, long before they brought this case, that Defendants had been advised that TOL did not infringe LGO).  In any event, Defendants permissibly seek to offer this evidence "for another purpose" under Rule 408(b) – *i.e.*, they do not seek to introduce it "to prove or disprove the validity or amount of a disputed claim."  Plaintiffs also have objected to this evidence under Rule 26, contending Defendants failed to disclose the "expert testimony" of Mr. Ricigliano.

Again, however, Defendants do not seek to use this evidence as "expert testimony" or to have Mr. Ricigliano testify at trial; Defendants only seek to prove that they obtained advice from musicological experts and relied on it in good faith in continuing to exploit TOL.

- **Exhibit 304**.  Exhibit 104 is an Excel file from Atlantic that illustrates various sales figures for TOL and the album *x*; it was relied upon by Defendants' damages expert, Barry Massarsky.  Although Plaintiffs have objected under Rules 401 and 403 (and Rule 26 of the Federal Rules of Civil Procedure), they have not articulated any legitimate basis to exclude this Exhibit.

Dated: New York, New York
      March 15, 2023

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony/ATV Music Publishing LLC*