UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, THE ESTATE OF CHERRIGALE TOWNSEND and THE HELEN CHRISTINE TOWNSEND MCDONALD TRUST

*Plaintiffs*,

-against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS

*Defendants*.

ECF CASE

17-cv-5221 (LLS)

**PRETRIAL DECLARATION OF DR. LAWRENCE FERRARA**

I, **Lawrence Ferrara**, declare as follows:

1. I have personal knowledge of, and am fully familiar with, the facts set forth in this Declaration, which I respectfully submit in accordance with Rule 4(a)(5) of Judge Stanton's Individual Practices to summarize my education, professional experience and anticipated direct testimony at trial. Consistent with Rule 4(a)(5), the following only summarizes my anticipated direct testimony and does not purport to represent a comprehensive recitation of such testimony.

I.   **Education & Professional Experience**

2. I am Professor of Music and Director Emeritus of Music and the Performing Arts at New York University's Steinhardt School. For a full recitation of my education, professional experience, qualifications and background, I respectfully refer the Court to my curriculum vitae, annexed hereto as **Exhibit 1**.

II.     **Summary Of Direct Testimony**

    A.     **Overview & Methodology**

3.      I will testify that I performed a comparative musicological analysis of the musical compositions *Let's Get It On*, written in 1973 by Ed Townsend and Marvin Gaye (hereafter "LGO"), and *Thinking Out Loud*, written in 2014 by Ed Sheeran and Amy Wadge (hereafter "TOL").[1]

4.      I will testify regarding the materials that I considered in performing such analysis and the overall methodology that I employed. Among other things, I reviewed the LGO Deposit Copy, an audio recording of TOL, published sheet music of TOL and published sheet music and/or sound recordings of other music. I also reviewed the Stewart Report dated December 8, 2017 and the Stewart Declaration dated September 8, 2018, as well as the other materials identified below and/or in my Report and/or on Defendants' Exhibit List.

5.      In comparing LGO and TOL, I used the following overall methodology: (1) analysis of LGO and TOL in their entirety, (2) analysis of each of their component elements

---

[1] On January 12, 2018, I submitted a Report (the "Report") in the above-captioned action regarding LGO and TOL. I understand a copy of the Report has been filed to the public docket under ECF Nos. 67-3, 67-4 and 67-5. At the time I submitted my Report, this Court had not ruled on the scope of copyright in LGO. In my analysis of LGO and TOL in my Report (at ¶¶s 10-41), I analyzed the U.S. Copyright Office Deposit Copy of LGO, not the Marvin Gaye recording of LGO (the "LGO Recording"). The report of Dr. Alexander Stewart (the "Stewart Report") to which I responded in my Report (at ¶¶s 42-164, 166-167), exclusively compared TOL to the LGO Recording, which the Plaintiffs served before I submitted my Report. While I did not agree with Dr. Stewart's opinions or his comparison of TOL with the LGO Recording in the Stewart Report, in the portions of my Report identified above, I responded to Dr. Stewart's opinions regarding alleged similarities between TOL and the LGO Recording. I understand that, subsequent to the submission of my Report, the Court ruled that LGO's copyright is limited to the sheet music deposited with and registered by the Copyright Office in 1973 (*i.e.*, the "Deposit Copy"). I further understand that, among other things, the Court has precluded Dr. Stewart from comparing TOL to elements that appear only in the LGO Recording (among other things, the bass line, drum patterns and tempo). To the extent that the rebuttal portion of my Report addresses the LGO Recording, it is no longer relevant and, unless otherwise noted, all references in this Declaration to LGO refer only to the LGO Deposit Copy.

individually and in combination, (3) analysis of other music, and (4) analysis of LGO and TOL in their entirety within the context of the analysis of their component parts and related music.

  **B.**  <u>**Terminology**</u>

  6.  I will testify regarding basic music terminology and the distinct and identifiable elements of musical compositions that can be analyzed separately and in combination.

  7.  Upon defining and explaining the distinct and identifiable elements that comprise a musical composition, I will testify that some elements are more fundamental to determining similarities or differences than others (not in their order of importance), namely: (1) structure; (2) harmony; (3) rhythm; and (4) melody, and when present, (5) lyrics.  On the other hand, similarities or differences in the key, tempo, meter, instrumentation, and style or genre are less significant insofar as they represent musical building blocks and/or commonplace practices used in countless musical compositions.

  **C.**  <u>**The Musical Elements Included In LGO And TOL**</u>

  8.  I will identify the musical elements included in LGO and not included in LGO. The musical elements included in LGO comprise the following:  (1) chord symbols written above the musical staffs on all five pages; (2) vocal melody notated within the musical staffs on all five pages; (3) lyrics written below the musical staffs on all five pages; (4) corresponding curved lines above and straight horizontal lines below the musical staffs that identify the singing of two or more notes on a single syllable on all five pages; (5) the treble clef sign only at the beginning of the first musical staff which indicates the position of all of the pitches on the lines and spaces of the musical staffs; (6) the "key signature" (three lower case "b's") immediately to the right of the treble clef, only at the beginning of the first musical staff, which indicates the key of the musical composition, namely E-flat major; and (7) the meter (a 4 placed over a 4)

immediately to the right of the three lower case "b's", only at the beginning of the first musical staff, which indicates a pattern of four rhythmic quarter-note pulses (beats) per measure.

9.  I also will testify that LGO does <u>not</u> include or indicate: (1) a "tempo"; (2) a bass part; (3) drum rhythms; or (4) any particular instrumentation.

10. As for TOL, I will testify that TOL includes, among other things, key, meter, vocals, lyrics, harmony, rhythm, melody and song structure as well as many elements not present in LGO, including, electric-guitar, bass-guitar, piano, organ, tempo and percussion/drums.

### D. Analysis Of Form & Structure

11. I will testify that, on the basis of my analysis of the structure in LGO and TOL, no objectively significant structural similarities exist and no objective musicological evidence of copying exists.

12. I will rely upon, among other things, the structural chart included at Page 5 within my Report (annexed hereto as **Exhibit 2**) to illustrate the differences between the structures of LGO and TOL.

13. I also will testify that I disagree with several of Dr. Stewart's opinions regarding the structures of each song.

### E. Analysis Of Harmonic Progressions

14. I will testify that, on the basis of my analysis of the harmonic progressions in LGO and TOL, no objectively significant similarities exist and no objective musicological evidence of copying exists.

15. I will testify that the chord progression featured throughout most of LGO – a I-iii-IV-V7 (or basic I-iii-IV-V) chord progression – is commonplace and was in common use prior to LGO and after LGO (but before TOL).

16. In support of this testimony, I will rely upon, among other things, excerpts from (1) *Money Chords: A Songwriter's Sourcebook of Popular Chord Progressions*, an excerpt of which is Visual Exhibit D to my Report, and (2) *Guitar for Advanced Beginners*, an excerpt of which is Visual Exhibit E to my Report, which demonstrate that the basic I-iii-IV-V chord progression is a commonplace musical building block. In addition, I will rely upon *How To Play Rock 'N' Roll Piano*, a book authored in 1967, which also demonstrates that the I-iii-IV-V chord progression was in common use prior to LGO. Excerpts from these books correspond to Defendants' Exhibit Nos 201, 202 and 203 in the Liability Pretrial Order.

17. I also will testify that I performed prior art searches and identified dozens of songs that embody the basic I-iii-IV-V chord progression in LGO or the basic I-I/3-IV-V chord progression that Dr. Stewart opines is featured in TOL, some of which predate LGO and some of which postdate LGO (but all of which predate TOL). All of these songs are listed in Defendants' Exhibit No. 210 in the Liability Pretrial Order.[2]

18. In regard to TOL, I will testify that there are multiple chord progressions in TOL, that not one of them is the same as the I-iii-IV-V7 (or simplified I-iii-IV-V) chord progression in LGO and that the chord progressions in both LGO and TOL, even though different from one another, both represent commonplace musical building blocks that have been used in songs before and after LGO (and before TOL). To support this testimony, I will rely upon, among other things, the published sheet music for TOL (Joint Exhibit No. 4 in the Liability Pretrial Order). I also will rely upon Musical Example 1 from my Report and upon a chart from page 9 of my Report, reproduced immediately below, comparing the chord progression in LGO to the

---

[2] In conjunction with the foregoing, I may perform on the electric piano portions of LGO, TOL and various of the prior art works included in Exhibit 4. I also may perform on the electric piano to illustrate various other portions of my testimony.

various chord progressions in TOL:

| **LGIO:** | I | iii | IV | V7 | |
|---|---|---|---|---|---|
| TOL #1: | I5 | I/3 | IV | Vsus2 | (in Verse) |
| TOL #2: | I5 | I/3 | IV5 | V5 | (in Verse) |
| TOL #3: | I | I/3 | IV | Vsus4 | (in Interlude) |
| TOL #4: | I | I/3 | IV | V | (in Verse, Chorus & Interlude) |
| TOL #5: | I | I/3 | IV | V11 | (in Verse, Chorus & Interlude) |

19. I also will testify that the chord progression and harmonic phrase structure in the chorus of "Get Off Of My Cloud" ("GOMC") (1965) by The Rolling Stones is more similar to the chord progression and harmonic phrase structure in the chorus of TOL than between any section of LGO and the chorus of TOL. In support of this testimony, I will rely upon, among other things, the TOL published sheet music and the GOMC published sheet music (Defendants' Exhibit No. 211 in the Liability Pretrial Order). I also may perform portions of TOL, LGO and GOMC on the electric piano.

20. Finally, I also will testify that the chord progression in measures 9 and 10 of all three choruses in TOL is substantially different from any chord progression in LGO and creates a very different harmonic structure and impact from any harmonic expression in LGO.

  F. <u>**Analysis Of The Harmonic Rhythms**</u>

21. I will testify that, on the basis of my analysis of the harmonic rhythms in LGO and TOL, no objectively significant similarities exist and no objective musicological evidence of copying exists.

22. I will testify that the harmonic rhythm (<u>i.e.</u>, the rate or pace of change of the

chords) in LGO and TOL is objectively different for several reasons as described in my Report. I will testify regarding the specific way in which each chord progression is expressed, rhythmically, in each song and the iterations and emphases in each song.

23.     I will rely upon LGO, the published sheet music for TOL, Joint Exhibit No. 4, and the graphical examples annexed as **Exhibit 3**.

24.     I also will testify that "anticipation" is a commonplace, centuries-old musical building block and technique, and that Ed Sheeran frequently used this technique prior to authoring TOL.  *See* Defendants' Exhibit No. 214 in the Liability Pretrial Order, which is a list of Ed Sheeran songs authored prior to TOL that use the anticipation technique .

25.     Moreover, I will testify that it is commonplace for the second and fourth chords of four-chord progressions to be anticipated (as they are in LGO and TOL), and I will cite well-known examples.  In connection with this testimony, I will rely on published sheet music for these compositions as well as excerpts from previously-identified publications, and I may perform portions of these works on the electric piano.  (*See* Defendants' Exhibit Nos. 204 and 212 in the Liability Pretrial Order).

      G.     **Analysis Of Rhythms**

26.     I will testify that, on the basis of my analysis of the rhythms in LGO and TOL, no objectively significant similarities exist and no objective musicological evidence of copying exists.

27.     I also will testify that LGO and TOL are written in 4/4 meter or "time," also termed "common time," that countless musical compositions are in 4/4 meter, and that "common time" is a foundational musical building block.

### H.  Analysis Of The "Combination" Of The Harmonic Progression And Harmonic Rhythm

28.  I will testify that the combination of an objectively different harmonic progression and objectively different harmonic rhythm in TOL, as compared to LGO, is not indicative of copying.

29.  I also will testify that the alleged similarity between the chord progressions and harmonic rhythms in LGO and TOL exist in at least seven prior art works.  *First*, "You Lost The Sweetest Boy" ("TSB") (as recorded by Mary Wells in 1963) embodies the basic I, iii, IV, V chord progression in which the second and fourth chords anticipate the beat.  *Second*, "Since I Lost My Baby" (1966) ("LMB") (as recorded by Ray French) also embodies the basic I, iii, IV, V chord progression in which the second and fourth chords anticipate the beat.  *Third*, "Georgy Girl" ("GG") (as recorded by 101 Strings Orchestra in 1967, The Seekers in 1966 and The Boston Pops in 1968) embodies a I, iii, IV, V chord progression in which the second and fourth chords anticipate the beat.  *Fourth*, "I've Got Love On My Mind" ("LMM") (as recorded by Natalie Cole in 1977) embodies a I, iii, IV, V chord progression in which the second and fourth chords anticipate the beat.  *Fifth*, "Six Pack Summer" ("SPS") (as recorded by Phil Vassar in 2000) embodies a I, iii, IV, V chord progression in which the second and fourth chords anticipate the beat.  *Sixth*, "Do You Love Me?" (1962) ("DYLM") (by The Contours) embodies the basic I, I/3, IV, V chord progression in which the second and fourth chords are anticipated in the vocal part.  *Seventh*, "Why Must I Always Explain" (1991) (by Van Morrison) embodies the basic I-iii-IV-V chord progression in which the second and fourth chords are anticipated.  To facilitate this

8

testimony, I will rely upon the graphical examples and transcriptions annexed as **Exhibit 4**.[3] I also may use audio recordings and perform portions of these works on the electric piano.

30. I also will testify that the harmonic progression in TOL, coupled with the use of anticipation in TOL, was already in the musical repertoire of TOL co-author Amy Wadge, having been used in her composition "Better Than Me," which I understand she co-authored in or around 2013.

31. In addition, consistent with the anticipated testimony recited in the previous sections, I also will testify that the combination of the harmonic progression and harmonic rhythm in TOL is not the same as, or virtually identical to, the combination of the harmonic progression and harmonic rhythm in LGO.

32. I also will testify that "Thinking Out Loud" bears similarities in style and in musical building blocks – including the chord progression and harmonic anticipation of chord changes – to the works of Van Morrison, whom I understand to be one of Sheeran's biggest musical influences. To facilitate this testimony, I may rely upon the published sheet music and/or commercially released sound recordings for certain Van Morrison songs. (See Defendants' Exhibit No. 213-A, 213-B and 213-C in the Liability Pretrial Order). I also may perform portions of the aforementioned Van Morrison works on the electric piano.

I. **Analysis Of The "Combination" Of The Harmonic Progression, Harmonic Rhythm And Key Signature**

33. To the extent the Plaintiffs seek to include the key signature of LGO in their "selection and arrangement" or "combination" claim, I will testify that: (i) the key signature of two works written in a major key, such as those at issue here, is utterly insignificant in assessing

---

[3] The transcriptions for Georgy Girl in Exhibit 4 correspond to the 1967 version released by 101 Strings Orchestra. "Why Must I Always Explain" is addressed more fully below in Paragraph 32 and in Defendants' Exhibit Nos. 213-B and 213-C.

copying; (ii) it is standard musicological practice to transpose two songs into the same key to facilitate a comparison – a fact that Dr. Stewart has admitted – which further reinforces the insignificance of the key signature of two works written in major keys; (iii) the key in each work is different (and not remotely identical or virtually identical); and (iv) LGO is not the first song to use the basic chord progression and harmonic rhythm at issue in the key of E Flat major. I also attended the deposition of Dr. Stewart in which he admitted, consistent with his having transposed the key of the two works for purposes of his comparison, that he did not "consider" the key of the two works when comparing LGO and TOL, and that he "didn't put any kind of emphasis" on the key of the two works. (Dr. Stewart Deposition at 275:5-16; 103:19-23).

### J. Analysis Of Melodies

34. I will testify that, on the basis of my analysis of the melodies in LGO and TOL, no objectively significant similarities exist and no objective musicological evidence of copying exists. In fact, the melodies in each composition are markedly different, as the pitch sequences, melodic rhythms, and melodic phrase structures are significantly different.

35. Dr. Stewart has put in issue four specific melodic segments: Melodies A, B and C (as defined below), and what he has referred to as the "melodic hook" in LGO as compared with the Verse melody in TOL. I will testify as to the reasons why no objective musicological evidence exists to indicate that TOL has copied from LGO, and that these melodies in TOL are distinctly different from the corresponding melodies in LGO and appear in distinctly different portions of each composition.[4]

---

[4] In analyzing Melodies A, B and C, Dr. Stewart's Report solely analyzes the LGO Recording. Although Melodies B and C are basically the same in the LGO Deposit Copy and in the LGO Recording, there are differences between Melody A in the LGO Deposit Copy and Melody A in the LGO Recording. As such, in this Declaration, I have ignored the claimed similarities in Melody A that exist only in the LGO Recording.

36. Melody A, as identified by Dr. Stewart, is the opening vocal melody of LGO, which Dr. Stewart claims to be comparing to the opening vocal melody of TOL.

37. Melody B, as identified by Dr. Stewart, is the vocal melody at the end of verse 4 of LGO, which Dr. Stewart claims to be comparing to the vocal melody at what Dr. Stewart refers to as the beginning of the chorus in TOL (*i.e.*, Melody B occurs in discrete portions of each work).

38. Melody C, as identified by Dr. Stewart, is the vocal melody at the beginning of verse 2 in LGO, which Dr. Stewart claims to be comparing to the vocal and guitar melodies at the interlude of TOL (*i.e.*, Melody C occurs in discrete portions of each work).

39. I will testify that the fragmentary and minimal similarities in each "Melody" do not indicate copying, especially given the marked differences between each "Melody" at issue.

40. I will also testify regarding the alterations and omissions made by Dr. Stewart in his analyses of each "Melody." I also will testify regarding prior art that features the melodic content that Dr. Stewart has tried to place at issue.

41. To facilitate comparison of the melodies at issue in each work, I will play the melodies on the keyboard. I also will rely upon, among other things, the LGO Deposit Copy, the published sheet music of TOL and the transcriptions annexed hereto as **Exhibit 5**.

42. Finally, in addition to the above testimony, I also will respond to the Stewart Report's opinion that "[b]oth songs occasionally deploy a 'blue' third." In particular, I will testify that the use of an "occasional" 'blue' note is commonplace.

K. **Analysis Of Lyrics**

43. I will testify that, on the basis of my analysis of the lyrics in LGO and TOL, no objectively significant similarities exist between the lyrics and no objective musicological

evidence of copying exists.

### L. Analysis Of LGO And TOL In Their Entirety

44. I will testify that, on the basis of my analysis of LGO and TOL in their entirety within the context of the analysis of their component elements, individually and in combination, and the analysis of prior art and related music, it is my opinion that LGO and TOL are very different songs in their entirety, that no objectively significant similarities exist and that no objective musicological evidence of copying exists.

45. In connection with this analysis, I also will underscore the many elements of TOL that are not at issue.

46. In addition, I will testify that, after removing the similarities between the chord progressions and harmonic rhythms (including the anticipations) in LGO and TOL that are found in prior art works, zero similarity in the chord progressions and harmonic rhythms (including the use of anticipations) remains between LGO and TOL. Even in combination, using the well-worn anticipation technique in a commonplace chord progression does not evidence copying, as there is nothing particularly novel, unique, or distinctive about combining the centuries-old anticipation technique with a commonplace chord progression. Thus, from a musicological perspective, the claimed similarities between the two songs consist of commonplace musical building blocks that preexist LGO and cannot be monopolized by LGO and cannot be used to support a claim of copying.

### M. The Live "Mash-Up" Of LGO And TOL

47. I understand that Plaintiffs intend to rely upon a YouTube video depicting a live Ed Sheeran performance in which he "mashes up" TOL and LGO. I further understand that Defendants have filed a motion *in limine* seeking to exclude such evidence, and that the Court

has denied that motion without prejudice to renewal at trial. In the event the Court overrules that objection, I will testify as follows regarding the "mash-up."

48. In this live performance, during the Interlude section of TOL, Sheeran replaces his singing of the "la, la, la…" melodic phrase with the singing of the opening melody and lyrics in Verse 2 of LGO. That substitution does not remove any of the lyrics in TOL because the phrase from LGO replaces a melodic phrase set to "la, la, la…" in TOL.

49. Segueing from one song to another in a medley or "mash up" has been done by musicians for decades. Given the commonplace similarities in the chord progressions and harmonic rhythms at issue, Sheeran's segueing from the lyrics of TOL to the lyrics of LGO is neither musicologically meaningful, significant nor indicative of copying.

50. Sheeran's inclusion of this passage during a live performance, after he created TOL, like the creation of any "mashup," is not musicological evidence that Sheeran copied LGO during the creation of TOL. Rather, like any other "mashup," the live performance simply recognizes shared, commonly used musical building blocks between two songs – and here, these shared, commonly used musical building blocks exist in many other songs.

### N.    Profits Attributable To The Infringement

51. In the event the jury returns a verdict for the Plaintiffs and finds an infringement necessitating a damages trial, I will testify that a substantial portion of TOL comprises elements not alleged to be infringing at all, and that the elements that are alleged to be infringing comprise a minimal percentage of the song.

### O.    Reservation

52. I reserve the right to rebut and respond to any testimony or evidence offered at trial by Plaintiffs, Dr. Stewart or any other witness.

I declare under penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: March 15, 2023

_____
By: LAWRENCE FERRARA, Ph.D.