UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND,

    *Plaintiffs*,

-against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS

    *Defendants*.

ECF CASE

17-cv-5221 (LLS)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EIGHTH MOTION *IN LIMINE* REGARDING THE KEY SIGNATURE OF *LET'S GET IT ON* AND VARIOUS OBJECTIONABLE "EVIDENCE" CITED BY PLAINTIFFS IN THE PRETRIAL ORDERS

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

*Of Counsel*:
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................2

ARGUMENT ..........................................................................................................................6

    I.    Plaintiffs' Attempt To Insinuate LGO's Key Signature Into
         Their Selection And Arrangement Claim Should Be Rejected ...........................................6

    II.   The Court Should Exclude Plaintiffs' Proposed Findings Of Fact And
         Exhibits That Compare The LGO Deposit Copy To The LGO Recording ........................8

    III.  The Court Should Exclude Plaintiffs' Proposed Findings Of Fact 3, 13 and 14
         And Exhibits 103 And 108, Which Address Thinking Out Loud's Purported
         Bass Line And Drum Part Because Such Matters Are Not At Issue In This Case ............10

CONCLUSION .....................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                             **PAGE(s)**

*Arifin v. Matuszewich*,
   No. 98-C-1591 (JFH), 2000 WL 796146 (N.D. Ill. June 20, 2000) .........................................7

*Gray v. Perry*,
   No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020), *aff'd
   sub. nom Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022) ..............................................................4

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996 (2d Cir. 1995)..........................................................................................................4

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
   No. 93-cv-04001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) ................................6

*Rose v. Hewson*,
   No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ........................................4

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 453 (Oct. 5, 2020),
   *reh'g denied*, 141 S. Ct. 946 (Dec. 7, 2020) .............................................................................4

*Threeline Imports, Inc. v. Vernikov*,
   No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28, 2016) ..................4

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000)..........................................................................................6

*Torah Soft Ltd. v. Drosnin*,
   No. 00-cv-0676 (JCF), 2003 WL 22024074 (S.D.N.Y. Aug. 28, 2003) ...................................7

**RULES AND REGULATIONS**

Fed. R. Evid. 401 ...............................................................................................................5, 10, 11

Fed. R. Evid. 403 ...............................................................................................................5, 10, 11

Fed. R. Evid. 802 ..........................................................................................................................10

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC (n/k/a Sony Music Publishing (US) LLC) ("SMP," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their Eighth Motion *In Limine*. Defendants' motion is based on specific contentions set forth in Plaintiffs' sections of the Liability Pretrial Order ("Liability PTO" or "PTO") which either already have been barred by this Court in prior Orders or which have never been a part of Plaintiffs' claims (at least not until they included them in their sections of the PTO).

Specifically, Defendants' motion seeks an Order: (i) precluding Plaintiffs from arguing – or offering any testimony or "evidence" – that the selection and arrangement of unprotectable elements in *Let's Get It On* ("LGO") includes the composition's key signature of E flat major, as set forth in their Proposed Finding of Fact No. 1; (ii) precluding Plaintiffs from offering any testimony or "evidence" that compares the *Let's Get It On* deposit copy ("Deposit Copy") to the Marvin Gaye sound recording of *Let's Get It On* ("LGO Sound Recording"), as set forth in their Proposed Findings of Fact Nos. 9, 10 and 11 in the PTO; (iii) precluding Plaintiffs from offering any testimony or "evidence" that addresses the purported bass line or drum part in *Thinking Out Loud* ("TOL") or that otherwise compares those elements in TOL to LGO, as set forth in their Proposed Findings of Fact Nos. 3, 13 and 14 in the PTO; and (iv) excluding Plaintiffs' Proposed Exhibits 103, 108 and 128.[1]

---

[1] A copy of the Liability PTO, which includes Plaintiffs' Proposed Findings of Fact, is annexed to the accompanying Declaration of Donald S. Zakarin ("Zakarin Declaration") as Exhibit 1; copies of Plaintiffs' Proposed Exhibits 103, 108 and 128 are annexed to the accompanying Zakarin Declaration, respectively, as Exhibits 2-4.

1

**PRELIMINARY STATEMENT**

On March 24, 2020, this Court issued an Order ruling that "[t]he Deposit Copy is the sole definition of the elements included in the protection of copyright," and "the field of protected elements" is not "enlarged on the theory they are consistent, and harmonize with the work as articulated in the Deposit Copy, and are implied by the way the articulated elements are expressed." (ECF 121 at 2). To avoid any doubt, the March 24, 2020 Order continued, "[i]f what is implied is not in the Deposit Copy, it does not have the protection of copyright." (*Id.*).

In that same March 24, 2020 Order, the Court ruled, consistent with the elements that appear on the face of the Deposit Copy, that the LGO Recording "contains many elements" – including "percussion/drums" and "bass-guitar" – "which do not appear in … the Deposit Copy," and "are not protected by copyright." (*Id.*). The Court further ruled that the LGO Recording "is inadmissible in any way which might confuse the jury into thinking it represents what is protected by copyright." (*Id.* at 3).

Several months later, in an Order dated August 18, 2020, the Court ruled that "there is uncontradicted proof" that the "chord progression" and "harmonic rhythm" at issue in LGO "are common musical techniques" and, hence, unprotectable as a matter of law. (ECF 138 at 2).

Together with the March 24, 2020 Order limiting Plaintiffs' claim to the Deposit Copy, the August 18, 2020 Order unequivocally determined, adversely to Plaintiffs, the precise question that this Court held precluded summary judgment in its Order dated January 2, 2019: the "disagree[ment] of the "parties and their experts" "as to whether the I-iii-IV-V chord progression and the harmonic rhythm present in both compositions are unprotectable as commonplace musical elements." (ECF 93 at 10). The Court also noted in the January 2, 2019 Order that Plaintiffs' musicologist, Dr. Stewart, "opined that '[t]his chord progression was not commonplace prior to

2

LGO,'" creating an issue of fact that precluded summary judgment. (*Id.*). But in the August 18, 2020 Order, the Court specifically ruled that Plaintiffs' musicologist had failed to perform a proper "prior art" search and was therefore barred from testifying that "[LGO] or a constituent element of it, such as a chord progression or harmonic rhythm," was "'unique,' 'distinctive,' 'unusual' or the like." (ECF 138 at 1-2).[2] And, as noted above, the Court further ruled that "there is uncontradicted proof that" the chord progression and harmonic rhythm at issue "are common musical techniques." (*Id.* at 2). In short, the August 18, 2020 Order determined, in Defendants' favor, the very issues of fact that the Court had held precluded summary judgment.[3]

In preparing their sections of the Liability PTO, the Plaintiffs appear to have recognized that the Court has held that all of the musical elements on which their infringement claim is founded are unprotectable and their claim is now largely limited to a "selection and arrangement" claim.[4] A "selection and arrangement" claim requires proof of, among other things, (1) a combination of <u>numerous</u> unprotectable elements, and (2) that the combination of unprotectable

---

[2] In its summary judgment decision, the Court also ruled that unprotectable elements include "key, meter, tempo, common song structures, common chord progressions, common melodies and common percussive rhythms." (ECF 93 at 9 (citations omitted)).

[3] Prior to this Court's March 24, 2020 Order, Plaintiffs' "combination" claim was based on the "harmonic, rhythmic, bass line, hi-hat, bass drum, snare drum and melodic elements." (ECF 81 at 21 (Section Heading E; capitalization altered)). The March 24, 2020 Order eliminated the bass line, hi-hat (part of a drum set), bass drum and snare drum, leaving only the chord progression and the harmonic rhythm (undoubtedly, in recognition of their stark differences, Plaintiffs' Proposed Findings of Fact in the PTO do not include melodic elements as part of their selection and arrangement claim).

[4] Plaintiffs separately still appear to be advancing a claim that certain melodic elements in LGO have been infringed by certain melodic elements in TOL. However, the alleged similarities have been manufactured by Plaintiffs' expert who has, among other things, altered pitches to create an illusion of similarity where none exists.

3

elements has been arranged in a <u>new and novel</u> fashion.[5]

Cognizant of those requirements, Plaintiffs have, at the eleventh-hour, attempted to retrofit their selection and arrangement claim to add an allegedly infringing element – the key signature of LGO – that was not pleaded in their Complaint and was expressly disclaimed by their expert. Thus, for the very first time, Plaintiffs now allege, in their sections of the Liability PTO, that LGO's key signature should be considered as part of the combination at issue. However, legally and factually, no basis exists for LGO's unprotectable key signature to be considered an element of Plaintiffs' selection and arrangement claim.

*First*, as noted above, consistent with unambiguous precedent that the Court already has cited, the key of LGO (which, as discussed below, is indisputably different from the key of TOL) is unprotectable as a matter of law. (ECF 93 at 9). *Second*, the Complaint filed in this action does <u>not</u> even allege infringement with respect to any purported similarities in the key signatures of the two works (in fact, the Complaint does not use the word "key" a single time). (ECF 1). *Third*, nowhere in their opposition to Defendants' summary judgment motion – which required Plaintiffs to lay bare their proof – did Plaintiffs ever claim that LGO's key signature was an element of their "combination" claim. (ECF 81 at 21). Instead, their "combination" claim on summary judgment (*see id.*) included distinct elements (all but two of which, the unprotectable chord progression and the unprotectable harmonic rhythm, have been eliminated from this case by virtue of the March

---

[5] For a full discussion of the legal requirements applicable to a selection and arrangement infringement claim, Defendants respectfully refer the Court to Skidmore v. Led Zeppelin, 952 F.3d 1051, 1075 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 453 (Oct. 5, 2020), *reh'g denied*, 141 S. Ct. 946 (Dec. 7, 2020); *Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221, at *3 (C.D. Cal. Mar. 16, 2020), *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995); *Threeline Imports, Inc. v. Vernikov*, No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749, at *13 (E.D.N.Y. Oct. 28, 2016); and *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018).

24, 2020 Order). (ECF 121). *Fourth*, Dr. Stewart admitted under oath at his deposition that he "didn't consider" the key signature of LGO when "comparing the two songs." (Zakarin Declaration at Exhibit 5, 275:5-16). Instead, underscoring that the key signatures are actually different, Dr. Stewart testified that he transposed the two songs into the "same key for comparison purposes which is standard musicological procedure." (*Id.* at 133:14-134:3). Plaintiffs cannot transpose the key of LGO for purposes of comparing it with TOL because they are in different keys and, at the very same time, claim that the key signature is part of their selection and arrangement claim, especially where, as here, both LGO and TOL are written in major keys.

For all of these reasons, Plaintiffs should be precluded from arguing – or offering any testimony or evidence – that their selection and arrangement claim includes LGO's key signature.

In addition to trying to revamp their selection and arrangement claim on the eve of trial, Plaintiffs also persist in proposing to offer evidence in disregard of this Court's March 24, 2020 Order and in violation of Rules 401 and 403. In particular, Plaintiffs have included Proposed Findings of Fact and Proposed Exhibits in their portion of the Liability PTO that (a) compare the Deposit Copy to the LGO Recording and (b) address elements that appear in TOL (the bass line and drums) that do not appear in the Deposit Copy and, thus, have nothing to do with Plaintiffs' claim of infringement. Plaintiffs' attempt to offer that "evidence" violates the Court's March 24, 2020 Order and Rules 401 and 403.

For all of these reasons and those detailed below, Defendants' eighth motion *in limine* should be granted.

**ARGUMENT**

I. **Plaintiffs' Attempt To Insinuate LGO's Key Signature Into Their Selection And Arrangement Claim Should Be Rejected**

Purporting to rely on their musicologist, Dr. Alexander Stewart, Plaintiffs' Proposed Finding of Fact No. 1 contends that LGO "features a <u>unique</u> selection, coordination and arrangement of elements, specifically (a) I-iii-IV-V harmonic progression; (b) harmonic rhythm of anticipated second and fourth chords; (c) <u>in the key of E flat major</u>." (Emphasis added).

As an initial matter, this Proposed Finding of Fact directly violates this Court's August 18, 2020 Order, which specifically barred Dr. Stewart from "characteriz[ing] Let's Get It On or a constituent element of it … as being '<u>unique</u>,' 'distinctive,' 'unusual' or the like." (ECF 138 at 1-2; emphasis added). It is impossible to understand how Plaintiffs conceive they can propose a finding that LGO supposedly features a "unique selection" of elements based solely on "evidence" from Dr. Stewart (an inadmissible declaration) when this Court has expressly barred Dr. Stewart from offering such "evidence."

In addition, beyond the fact that Dr. Stewart has been barred from offering any testimony that LGO or any element in it is "'unique,' 'distinctive,' 'unusual' or the like," Plaintiffs' effort to add LGO's "key" to their selection and arrangement of unprotectable elements should be barred for independent reasons.[6]

As detailed above, the Complaint in this action does <u>not</u> allege any similarity with regard to key (and does not use the word "key" even a single time) (ECF 1); Plaintiffs <u>never</u> claimed in their opposition to summary judgment (ECF 81 at 21) that their "combination" included LGO's key signature (claiming, instead, that their combination included distinct elements, all but two of

---

[6] As noted above, consistent with well-known law (*see, e.g., Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000)), this Court already has ruled that key is unprotectable. (ECF 93 at 9).

6

which have been ruled outside the scope of LGO's copyright – and those two remaining elements have been held, subsequent to this Court's denial of summary judgment, to be unprotectable) (ECF 138 at 2), and Dr. Stewart has admitted that he did not "consider" key when comparing the two works, and that he instead transposed the two songs into the "same key for comparison purposes which is standard musicological procedure." (Zakarin Declaration at Exhibit 5, 275:5-16, 133:14-134:3).

Accordingly, Plaintiffs should not be permitted to reinvent and redefine their defective infringement claim on the eve of trial. *See, e.g.*, *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93-cv-04001 (NRB), 2002 WL 31856951, at *3-5 (S.D.N.Y. Dec. 19, 2002) (excluding evidence and argument concerning new theory raised "shortly before [ ] scheduled trial" because the Federal Rules do not permit "[t]rial by ambush" and require "[d]isclosure of factual information and commitment to [a] legal theory" throughout the case); *Torah Soft Ltd. v. Drosnin*, No. 00-cv-0676 (JCF), 2003 WL 22024074, at *3 (S.D.N.Y. Aug. 28, 2003) (excluding evidence or argument of legal theory that the plaintiff never articulated in its "pleadings or in its subsequent submissions"); *Arifin v. Matuszewich*, No. 98-C-1591 (JFH), 2000 WL 796146, at *3 (N.D. Ill. June 20, 2000) (excluding evidence relating to "a 'twelfth hour' attempt to introduce a new legal theory to this case" because "[a]llowing such a change in the legal theory of this case would have unfairly prejudiced defendant").

Moreover, before necessity became the mother of invention, Plaintiffs could not, in good faith, have alleged that the key signatures were part of their claim because the reason that Dr. Stewart (and Dr. Ferrara) were required to transpose both songs into the same key for purposes of comparing them is because they are indisputably written in different keys (LGO is written in E flat major while TOL is written in D major).

The key signature of a work – and there are only twelve major keys – typically corresponds to the vocal performer's comfortable range of vocal expression. Key signature has <u>zero</u> significance to whether two compositions are similar or different, especially when both compositions are written in major keys like LGO and TOL and can be transposed into the same key for purposes of comparison. Even were this not the eleventh hour and even were Plaintiffs not trying to make a claim belatedly that they have never made before and, indeed, even were the key signatures not different, permitting Plaintiffs to include such a musically insignificant element as part of a combination of unprotectable elements would undermine the necessarily stringent requirements of the selection and arrangement test.

**II.     The Court Should Exclude Plaintiffs' Proposed Findings Of Fact And Exhibits That Compare The LGO Deposit Copy To The LGO Recording**

Plaintiffs' Proposed Findings of Fact Nos. 9-11 attempt to compare the LGO Deposit Copy to the LGO Recording, stating, in sum and substance, that certain elements included in the Deposit Copy (the structure and certain melodies) supposedly appear in the same manner in the LGO Recording. Plaintiffs' Proposed Exhibit 128 – an "Analytical Essay" that includes a lengthy discussion of the recording process for the LGO Recording – appears to have been included in the Liability PTO for this same purpose. .

Because the LGO copyright is delimited by the sheet music registered with the Copyright Office – *i.e.*, the Deposit Copy – this Court's March 24, 2020 Order unequivocally barred any reference to the LGO Recording "in any way which might confuse the jury into thinking it represents what is protected by copyright." (ECF 121 at 2-3).

Plaintiffs have not identified any possible basis for the inclusion of these Proposed Findings and Exhibit 128 in their sections of the Liability PTO, nor, given the restrictions of the March 24, 2020 Order, is there any basis for their inclusion. When questioned by Defendants as to the basis

8

on which such "evidence" has been included in the PTO, Plaintiffs demurred and responded, simply, that they would not agree to eliminate them from the PTO.

Despite the unexplained failure of Plaintiffs to articulate a basis for including these Proposed Findings of Fact and Exhibit 128 in the Liability PTO, Defendants believe, based on prior filings in this case, that the purpose for which Plaintiffs may be seeking to offer this "evidence" is both improper and completely irrelevant.

Specifically, in opposition to Defendants' Second *Motion In Limine* (which motion the Court substantially granted and which had sought to bar – or at least circumscribe – Dr. Stewart's trial testimony), Plaintiffs cited Exhibit 128 (Exhibit 3 on the prior motion) in an attempt to rebut Defendants' claim that Dr. Stewart failed to analyze the Deposit Copy in performing his musicological analysis. (ECF 131 ¶ 36; ECF 132-3). Plaintiffs argued that because the Deposit Copy was supposedly created after and based on the LGO Recording – a contention lacking any evidence and also lacking in any relevance – Dr. Stewart's consideration of the LGO Recording necessarily "took into consideration" the Deposit Copy. (ECF 131 ¶ 37).[7]

But whether or not the Deposit Copy was based on the LGO Recording in some fashion is entirely irrelevant. The Court has already compared the Deposit Copy to the LGO Recording and found that the LGO Recording contains many elements that are nowhere expressed in the Deposit Copy. The only thing that matters is what is expressed in the Deposit Copy (which the Court has already ruled on), not where those elements came from.

So what is the purpose of this convoluted argument and Plaintiffs' insistence on including these proposed Findings of Fact and Exhibit 128 in their section of the Liability PTO? It is

---

[7] As the Court found, the problem with Dr. Stewart's analysis was not that he took into consideration elements that were in the Deposit Copy. The problem was that he also took into consideration a host of elements that were not in the Deposit Copy.

9

transparently a backdoor attempt by Plaintiffs, yet again, to inject the LGO Recording into evidence in an effort to evade this Court's prior Order.

Ultimately, these Proposed Findings and Exhibit 128 do not address any disputed issue in this case (in violation of Rule 401).  They would confuse the jury and prejudice Defendants (in violation of Rule 403).  And, their inclusion in the PTO flouts this Court's March 24, 2020 Order.  Moreover, every single statement in Exhibit 128 represents inadmissible hearsay in violation of Rule 802.  Accordingly, the Court should preclude Plaintiffs from offering any testimony or "evidence" that compares the LGO Deposit Copy to the LGO Sound Recording, barring Plaintiffs' Proposed Findings of Fact 9-11 and excluding Exhibit 128.

### III. The Court Should Exclude Plaintiffs' Proposed Findings Of Fact 3, 13 and 14 And Exhibits 103 And 108, Which Address *Thinking Out Loud's* Purported Bass Line And Drum Part Because Such Matters Are Not At Issue In This Case

Plaintiffs' Proposed Finding of Fact No. 3 and Proposed Exhibit 103 address the drums in TOL and compare the drums in TOL to the drums in the LGO Recording (Exhibit 103 is an email comparing the drums in TOL to the drums in the LGO Recording).  Plaintiffs' Proposed Findings of Fact Nos. 13 and 14 and Proposed Exhibit 108 address the purported bass line in TOL (Exhibit 108 is the published TOL sheet music with the purported bass notes circled by Dr. Stewart).

Once again, these Proposed Findings of Fact and these Exhibits are being advanced in direct violation of this Court's March 24, 2020 Order, which limited Plaintiffs' infringement claim to elements contained in the Deposit Copy, made clear that the Deposit Copy does not include a bass-line or drum pattern and ruled that those elements cannot be "implied" into the Deposit Copy.  (ECF 121 at 1-3).  Moreover, this Court's September 9, 2021 Order in the parallel case brought by Structured Asset Sales, LLC reiterated the March 24, 2020 Order in this case and specifically held that "[t]here is no genuine question that there is no notation or specification of a bass line in the

Deposit Copy," which "is apparent from a visual inspection, and is beyond dispute." (*See* 18-cv-5839 (LLS), ECF 197 at 3).

Once again, because these Proposed Findings and Exhibits do not address any disputed issue in this case (in violation of Rule 401), because they would confuse the jury and prejudice Defendants (in violation of Rule 403), and because their inclusion in the Liability PTO contravenes this Court's March 24, 2020 Order, the Court should preclude bar Plaintiffs' Proposed Findings of Fact 3, 13 and 14 and exclude Exhibits 103 and 108.

## **CONCLUSION**

It is respectfully submitted that Defendants' eighth motion *in limine* should be granted.

Dated: New York, New York
March 15, 2023

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*