UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KATHRYN TOWNSEND GRIFFIN, HELEN   :
MCDONALD, and The Estate of CHERRIGALE  :
TOWNSEND,   :
   :
   :
   Plaintiffs,   :      Docket No. 17-cv-5221 (RJS)
   :
  -against-   :
   :
   :
EDWARD CHRISTOPER SHEERAN, p/k/a   :
ED SHEERAN, ATLANTIC RECORDING   :
CORPORATION, d/b/a ATLANTIC RECORDS,  :
SONY/ATV MUSIC PUBLISHING, LLC and  :
WARNER MUSIC GROUP CORPORATION   :
d/b/a ASYLUM RECORDS,   :
   :
   :
   Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# PLAINTIFFS' TRIAL BRIEF

FRANK & RICE, P.A.
Attorneys for Plaintiffs
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184

## PRELIMINARY STATEMENT

The Defendants do not dispute that they copied "Let's Get It On" in "Thinking Out Loud". Instead, the Defendants argue that, even though they copied Let's Get It On, they did not infringe the copyright because Thinking Out Loud is not "identical" as a result of different lyrics and other added elements. Of course, this is not the law. The Defendants cannot avoid liability for copying "Let's Get It On" simply by changing the words.

## TRIAL BRIEF

### A.   Copyright Protection Only Requires that the Work be Original to the Author, Not that it be Novel

The Copyright Act provides that a certificate of registration "shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The certificate "establishes a presumption of originality in the work registered." *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.,* 700 F.Supp. 1213, 1231 (S.D.N.Y.1988).

"To qualify for copyright protection, a work must be original to the author." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citations omitted). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345. "[T]he requisite level of creativity is **extremely low**; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* at 345 (quoting 1 M. Nimmer & D. Nimmer, *Copyright* § 1.08[C][1] (1990)).

"Sufficient originality for copyright purposes amounts to **little more than a prohibition of actual copying**." *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 102-03 (2d Cir. 1951) (citations omitted). All that is

needed … is that the 'author' contributed **something more than a 'merely trivial' variation**, something recognizably 'his own.'" *Id.*, at 102-03. "[T]he 'quantum of originality necessary to invoke copyright protection is **very small**.'" *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F. Supp. 2d 525, 528-29 (S.D.N.Y. 2000).

Novelty is not required for copyright protection. *Boisson v. Banian, Ltd.*, 273 F. 3d 262, 270 (2d Cir. 2001) ("Absent evidence of copying, an author is entitled to copyright protection for an independently produced original work despite its identical nature to a prior work, because it is independent creation, and not novelty that is required."). Because novelty is not required, "[t]he 'author' is entitled to a copyright if he independently contrived a work completely identical with what went before .…" *Alfred Bell*, 191 F.2d at 103.

**B.      There is No Prior Art Doctrine in Copyright Law**

Defendants cite a number of musical works that pre-date Let's Get It On as "prior art" to support their claim that Let's Get It On is not original. Def. Memo. However, the law is clear that originality, and **not prior art**, determines whether a work is protectable. *See* 1 Nimmer & Nimmer, *supra*, § 2.01[A], at 2–9. Whether a piece of music incorporates components from **prior musical works is irrelevant** to the question of whether the subject work is original. *Fred Fisher Inc. v. Dillingham*, 298 F.145 (S.D.N.Y. 1924). See *Ulloa v Universal Music and Video Distrib. Corp.*, 2004 WL 840279 (S.D.N.Y. 2004); *Lessem v. Taylor*, 766 F.Supp.2d 504 (S.D.N.Y. 2011); *New Old Music Group, Inc. v. Gottwald*, 122 F.Supp.3d 78 (S.D.N.Y. 2015).

**C.      A Work May be Copyrighted Even if It Consists Solely of a Combination of Pre-Existing Common Elements**

A combination of pre-existing elements qualifies for copyright protection, as long as the author's selection and arrangement "display[s] some minimal level of creativity." *Feist*, 499 U.S. at 358. Further, a work "may be copyrightable even though it is entirely a compilation of

2

unprotectable elements." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003–04 (2d Cir.1995). This is black letter law and is applied equally to music cases. See *Santrayll v. Burrell*, 1996 WL134803 (S.D.N.Y. 1996) ("the repetition of the non-protectable word "uh-oh" in a distinctive rhythm comprises a sufficiently original composition to render it protectable by the copyright laws."); *Levine v. McDonald's Corp.*, 735 F.Supp. 92, 98 (S.D.N.Y. 1990) ("plaintiffs' use of various non-copyrightable [musical] elements is itself copyrightable if they have been arranged in a unique and recognizable way.").

## ELEMENTS OF A COPYRIGHT INFRINGEMENT CLAIM

The elements of a copyright infringement claim are (i) ownership of a valid copyright; and (ii) unauthorized copying. *Feist*, 499 U.S. 340, 361.

### A.    Beneficial Ownership

The right to royalties is a sufficient beneficial interest in the copyright to give standing to seek judicial relief under the copyright law against infringement, both under the 1909 Copyright Act and under the 1976 Copyright Act. *Corner v. Israel*, 732 F.2d 267, 270-271 (2d Cir. 1984). The defendants do not dispute that plaintiffs are the beneficial owners of a 22% interest in "Let's Get It On" and therefore have legal standing.  Townsend created "Let's Get It On" and assigned his copyright in consideration for future royalties.  Plaintiffs are the successors to Townsend's beneficial interest and receive 22.22% of the royalties from Let's Get It On.

### B.    Unauthorized Copying

Unauthorized copying is established by showing that the portion 'actually copied' amounts to an "unlawful appropriation." *Jorgenson v. Epic/Sony Records*, 351 F.3d. 46 (2d Cir. 2003). "Actual copying may be established by direct or indirect evidence." *Id*. Indirect evidence is established by showing that the composer of defendants' work had access to plaintiff's work

and that there are similarities probative of copying." *Id.* A showing of "probative similarity requires only the fact that the infringing work copies something from the copyrighted work." *Ringgold v. Black Ent. Television, Inc.,* 126 F.3d 70, 75 (2d Cir. 1997).

Analysis of the works and expert testimony can be used to prove probative similarities. *Arnstein v. Porter*, 154 F.2d 464 (2d Cir.1946). To prove copying, the similarities between the two works need not be extensive, and need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently. *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992); 4 Nimmer on Copyright § 13.01[B]. The aggregate of commonplace similarities not found in any other work compels the conclusion of copying and requires denial of summary judgment on that issue for defendant. *Lessem v. Taylor*, 766 F.Supp.2d 504, 512 (S.D.N.Y. 2011).

## C.   Access is Not Disputed

Access in this case is not disputed.  "Let's Get It On" has been broadcast more than 1 million times. Ed Sheeran admitted he knew "Let's Get It On".  Video footage of a live concert captured Ed Sheeran singing Let's Get It On at a concert in 2014. "The law is clear that the degree of probative similarity necessary to raise an inference of copying is inversely related to the proof of access." *New Old Music*, at n. 10. ("the greater the proof of access, the less striking the similarities must be in order for actual copying to be inferred"). Copying can be subconscious. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998-999 (2d Cir. 1983). As demonstrated below, the evidence of probative similarities between the songs is substantial and compelling.

## "LET'S GET IT ON" & "THINKING OUT LOUD"
## CONTAIN PROBATIVE SIMILARITIES

Plaintiffs' expert, Dr. Alex Stewart,[1] analyzed Let's Get It On (referred to by defendants as "LGO") and Thinking Out Loud (referred to by defendants as "TOL") by listening to "TOL" transcribing the same, examining sheet music and transcription of "TOL" and comparing them to the deposit copy of "LGO".   He concluded that Lets' Get It On is an original work by virtue of the unique selection, coordination and arrangement of elements, specifically, (a) I-iii-IV-V harmonic progression; (b) harmonic rhythm with anticipated second and fourth chords; (c) melodic hook; (d) syncopate tempo.  Townsend's independent contributions more than satisfy the "extremely low" creativity requirement, even if defendants contend otherwise. *Feist*, 499 U.S. at 358; *Knitwaves*, 71 F.3d 996, 1003–04. Dr. Stewart also found similarities in the songs that are probative of copying.

**A.     Harmony**

First, "harmony *can*, as a matter of law, be the subject of copyright." *Tempo Music, Inc. v. Famous Music Corp.*, 838 F.Supp. 162, 169 (S.D.N.Y. 1993)(emphasis in original). This is because the choice of harmonic relationships may be considered a creative choice. *Id.* at 168. The beginning harmony in both songs in this case is a four-chord progression that can be transposed to the key of D as follows:[2]

|                   | First Chord  | Second Chord  | Third Chord  | Fourth Chord |
|-------------------|--------------|---------------|--------------|--------------|
| Let's Get It On   | D major / I  | F# minor / iii | G major / IV | A major / V  |
| Thinking Out Loud | D major / I  | F# minor / iii | G major / IV | A major / V  |

---

[1] Dr. Stewart is Professor of Music, Director of Jazz Studies and former Director of Latin American and Caribbean Studies at the University of Vermont.

[2] For comparison analytical purposes, musicologists sometimes express harmonies in Roman numerals in which the number denotes the scale degree of the root and upper-case letters indicate major while lower case letter denote minor. Ferrara Report, ¶ 16; Stewart Dec, ¶ 6. The chart expresses the harmonies in both ways.

The chord progressions in the two songs at issue are identical for the first 24 seconds of "Thinking Out Loud", and the same or similar progression appears in over 86% of "Let's Get It On".

## B.   Harmonic Rhythm

Harmonic rhythm is the rate of change of chords.  In "Let's Get It On", the harmonic rhythm of the four-chord progression is distinctive in that the second and fourth chords are "anticipated" or placed ahead of the beat.  The anticipated second and fourth chords gives the musical work a distinctive rhythm or swing - a relaxed, confident groove.  The distinctive harmonic rhythm in "Let's Get It On" is notated on the sheet music deposit copy by the careful placement of the chord changes above particular lyrics. Stewart.  The harmonic rhythm of the four-chord progression in "Let's Get It On" also occurs throughout "Thinking Out Loud". The Defendants have only identified one song that pre-dated "Let's Get It On" with the same chord progression and harmonic rhythm.

Defendants claim that "harmonic rhythm – which derives from the exceedingly common and unprotectible harmonic progression" is unsourced and a false statement.  Harmonic rhythm, or the rate of change of chords, is independent from the chord progression and is not derived from it.  The same chord progression can have any number of different harmonic rhythms. The anticipated second and fourth chord harmonic rhythm of "Let's Get It On" is distinctive and is copied in "Thinking Out Loud".[3]

It must be emphasized that defendants' expert Dr. Ferrara changed his definition of harmonic rhythm in his declaration in support of the erstwhile motion for summary judgment

---

[3] Defendants throughout the course of this litigation have attempted to obfuscate the significance of harmonic rhythm by conflating the same with tempo—as the Court should note, the Defendants have specifically reserved the right to play their computer program-assisted MIDI files at multiple tempos.

from his initial report in an obvious attempt to create a difference in the harmonic rhythms of the two works.

**C.      Vocal Melody**

The "hook" or chorus of Let's Get It On – "Let's get it on – sugar – Let's get it on"- is the most memorable part of the song and features a distinctive and memorable, eleven note pitch sequence 6-5-3-2-6-5-3-5-6-5-3, which features the song's title as a lyric.



The similarity of these melodies is best evidenced by defendant Ed Sheeran himself. In November, 2014, he was performing an acoustic version of "Thinking Out Loud" in concert in Zurich.   Sheeran began singing the chorus of "Let's Get It On" and then transitioned back to "Thinking Out Loud". The two songs flowed seamlessly together and the audience was quite pleased.

**D.      Key, Tempo, Meter, & Genre**

**"**Let's Get It On" and "Thinking Out Loud" share nearly identical keys, tempos, meter, and genres.  "Let's Get It On" is in the key of E flat major, is in 4/4 time, and is a rock or soul ballad.  "Thinking Out Loud" is in the key of D major, has a tempo of 79 beats per minute, is in 4/4 time, and is a rock or a soul ballad. Stewart.  The key of D major is the closest key to E Flat major; D major is a "half step" or "semitone" below E flat).

| | Melody | Harmony | Harmonic Rhythm | | Drums | Key | Tempo | Genre |
|---|---|---|---|---|---|---|---|---|
| LGO | **6-5-3-2-6-5-3-5-6-5-3** | I-iii-IV-V | Anticipated 2nd and 4th chords | | Hi-hat: 8th Snare: 2, 4 Bass: 1, &(2), &(3), 4 | Eb | 82 bpm | Rock/Soul Ballad |
| TOL | **6-5-3-2-1-2-3-6-1-3-5-6-5-3** | I-iii-IV-V | Anticipated 2nd and 4th chords | | Hi-hat: 8th Snare: 2, 4 Bass: 1, &(2), &(3) | Dmaj | 79 bpm | Rock/Soul Ballad |

**Yellow column is notated on deposit copy.**

As Defendants' own expert has previously opined, the fact that two songs share the same tempo can be probative of copying. *New Old Music* at n. 9 ("as "**Dr. Ferrara** himself suggests, the fact that two songs share the same tempo can be probative of copying.")(citing *Glover v. Austin*, 289 Fed.Appx. 430, 432 (2d Cir. 2008)(emphasis added). The same is true in the substantial similarity context. *Id.* (citing *Levine v. McDonald's Corp.*, 735 F.Supp. 92, 97 (S.D.N.Y.1990) (use of "rapid tempo" may be protectable in "compilation" with other elements); *see also Swirsky*, 376 F.3d at 848 n. 13.

## E.  Defendants Do Not Dispute Copying "Let's Get It On" in "Thinking Out Loud"

Prior art may be used to rebut an inference of copying, *Baxter v MCA Inc.*, 812 F.2d 421, 425 (9th Cir. 1987), however, the defendants do not dispute copying Let's Get It On.[4] Accordingly, the prior art is irrelevant.

Defendants' cite to *Allen v. Scholastic Inc.*, 739 F.Supp.2d. 642, 655 n.122 (S.D.N.Y. 2011) for the holding that "expert musicologists can opine . . . whether constituent elements of [the infringed work] existed in prior art and that it is therefore not original to the plaintiff," however nothing remotely close to this sentence appears in *Allen*, nor could it as it is contrary to well settled law. *Vargas* at 373 ("the presence of similar compositions or elements of the

---

[4] Independent creation is an affirmative defense to copyright infringement. *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997). "Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

composition in other works is irrelevant in assessing originality"); *Fred Fisher*, 298 F.145

(L.Hand)("it is [no] defense that there was in the prior art substantially the same figure."). The

only question then is whether Thinking Out Loud bears substantial similarity to "Let's Get It

On".

<strong>"THINKING OUT LOUD" BEARS SUBSTANTIAL SIMILARITY<br>TO PROTECTED EXPRESSION IN "LET'S GET IT ON"</strong>

A Plaintiff must show that the portion of the work that was actually copied amounts to an

"improper or unlawful appropriation." *New Old Music*, at 93 (citing *Jorgensen*, 351 F.3d at 51).

In order to show that "improper appropriation" has occurred, a plaintiff must establish that "a

substantial similarity exists between the defendant's work and the protectable elements of

plaintiff's." *New Old Music* (citing *Hamil*, 193 F.3d at 99). In order to determine if there is a

substantial similarity between two music works, courts normally apply the ordinary observer test.

*Id.* (internal citation omitted). The plaintiff must prove that defendant "took from plaintiff's work

so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such

. . . music is composed, that defendant wrongfully appropriated something which belongs to the

plaintiff." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)(quoting *Arnstein v. Porter*, 154 F.2d

464, 473 (2d Cir.1946).

**A.    The Appropriate Inquiry is Quantitative and Qualitative Significance of the Copied
Material to the Original Work**

The appropriate inquiry under the substantial similarity test is whether "the copying is

quantitatively and qualitatively sufficient to support the legal conclusion that infringement

(actionable copying) has occurred. *Warner Bros. Entertainment v. RDR Books*, 575 F.Supp.2d

513, 534 (citing Ringgold, 126 F.3d at 75, (2d. Cir. 1997). *TufAmerica,* 968 F.Supp.2d 588, 598

(S.D.N.Y. 2013). The relevant "question in each case is whether the similarity relates to matter

that constitutes a substantial portion of [the pre-existing] work—not whether such material constitutes a substantial portion of [the allegedly infringing] work." *TufAmerica*, 968 F at 599 (quoting *Williams v. Broadus*, 2001 WL 984714, at *3 (S.D.N.Y.2001)) (alterations in original).

Quantitatively, the combination of elements is present in 86% of "Let's Get it On" and is repeated throughout it. Qualitatively, the combination of elements provides the entire harmonic and rhythmic foundation of "Let's Get It On" as well as the central melodic hook of the song. The combination of rhythm, harmony and melody is present in 70% of "Thinking Out Loud" and is what gives "Let's Get It On", its defining and distinctive relaxed, confident swing, as expressed in the deposit copy of the same. A reasonable juror could find that defendants "took from plaintiffs' work so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *Repp.*, 132 F.3d at 889.

**B.      The Combination of Elements in "Let's Get It On" is Protectable**

Even assuming that the individual elements are not original, the "selection, coordination, and arrangement" of the copied elements in "Let's Get It On" is sufficiently original, *i.e.,* contains a modicum of creativity, that "Let's Get It On" is protectable. *New Old Music quoting Knitwaves* ("unoriginal elements, combined in an original way, can constitute protectable elements of a copyrighted work."). "[P]lagiarism of any substantial component part, either in melody or accompaniment, would be the proper subject of [a copyright infringement] suit.*" Fred Fisher v Dillingham*, 298 F. 145, 147 (S.D.N.Y. 1924). Substantial similarity can be found in a combination of elements such as chord progression, key, tempo, rhythm, and genre, even if those elements are individually unprotected. See, *Swirksy v. Carey*, 376 F.3d 841 (9th Cir. 2004). Defendants have not shown that the combination of harmony and harmonic rhythm, existed in

prior art let alone in combination with the melody or the drum part and bass line. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("Originality, as the term is used in copyright, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.)"

C.    **Total "Concept and Feel"**

Defendants argue that substantial similarity cannot exist because "Thinking Out Loud" has additional "parts" that were not copied from "Let's Get It On" and that are not in dispute. Def. Memo, pp. 4 (lyrics, additional bass-guitar line, additional chord progressions). In *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) the Second Circuit held it was error to grant summary judgment by analyzing the "total concept and feel," or "overall aesthetic," of the works without considering whether "*material portions* of the [defendants' work] infringed on corresponding parts of the [plaintiff's work.]" *Id.* at 135. The court concluded that whatever effect the addition of certain elements in the defendants' work would have on a comparison of the two works' "overall feel," it did not "alter the fact that the rest of the [defendants' work] is a near—exact copy of the [plaintiff's work], and therefore infringing." *Id.* at 137. Likewise here, we ask the Court to consider whether the plaintiff's work "selected, coordinated, or arranged uncopyrightable [elements] in an original way," and whether the subsequent work "feature[s] the same selection and arrangement." *Id.* at 136 (quoting *Feist*, 499 U.S. at 362, 349, 111 S.Ct. 1282). It is "entirely immaterial that, in many respects, plaintiff's and defendants' works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." 4 Nimmer § 13.03(B), at 13–52 to 53. "It is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his

work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d. 49 (2d Cir. 1936)(L. Hand).

**D.        Musical Compositions are Entitled to Broad Copyright Protection**

Musical compositions are entitled to broad copyright protection. *Williams v. Gaye*, 2018 WL 1403577, *6 (9th Cir. 2018)("the Gayes need not prove virtual identity to substantiate their infringement action."). Defendants have repeatedly argued that Plaintiffs' copyright in "Let's Get It On" enjoys only thin protection because it is a combination of unprotectable elements. Case law precedent, however, is clear that 'thin' protection applies factual compilations such as phone books, not musical works. *Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*, 945 F.2d 509, 514 (2d Cir. 1991)(even thin copyright is "not anorexic").

Second, the cases that have been relied upon by the Defendants throughout the course of this litigation do not support their argument that copying must be identical in order to constitute actionable infringement. See *Beaudin v. Ben and Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996)(rejecting defendants' claim that "identical copying" was required); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014)("close copying" sufficient). The protection of a copyright "cannot be limited literally to the text, else a plagiarist would escape by immaterial variations." *Nichols v. Universal Pictures Corporation*, 45 F.2d 119, 121 (2d Cir. 1930).

**E.   Disagreement Between Opposing Experts Makes Summary Judgment or Directed Verdict Inappropriate**

It is black letter law that the "question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection [is] a question for the factfinder." *Matthew Bender & Co., Inc. v. West Pub. Co.,* 158 F.3d 674, 681 (2d Cir. 1998); *Tin Pan Apple, Inc. v Miller Brewing Co., Inc.,* 1994 WL 62360, at *4 (S.D.N.Y. 1994)(plaintiffs "entitled to test their claims of originality at trial."). The case law is clear that it is inappropriate for this Court to decide the issue of summary judgment in defendants' favor where the experts disagree on whether the composition of Lets' Get It On is original. See *Ulloa v. Universal Music & Distribution, Corp.,* 303 F.Supp.2d 409, 413 (S.D.N.Y. 2004); *Lessem,* 766 F.Supp.2d 504, 512; *Levine,* 735 F.Supp.2d 92.

**E.   There is Substantial Similarity Between the Deposit Copy Elements of "Let's Get it On" and "Thinking Out Loud"**

Although the Court is not allowing the jury to consider elements of "Let's Get It On" embodied on the sound recording, there is substantial similarity of protectible musical expression between the "Let's Get It On" deposit copy and "Thinking Out Loud". The identical and distinctive rhythmic expression of anticipated second and fourth chords of the 1-iii-IV-V chord progression and the substantially similar melodic hook in "Let's Get It On" and "Thinking Out Loud" is sufficient similar to constitute infringement. As this Court noted in its Order Denying Summary Judgment, the outcome of the motion for summary judgment would have been the same, irrespective of whether the analysis was limited solely to the deposit copy or, alternatively, took into consideration the sound recording of "Let's Get It On". (Doc. 93).

FRANK & RICE, P.A.
Attorneys for Plaintiffs


By:    <u>/s/ Patrick R. Frank, Esq.</u>
         Patrick R. Frank, Esq.
         Keisha D. Rice, Esq.
         Katherine L. Viker, Esq.
         Frank & Rice, P.A.
         325 West Park Avenue
         Tallahassee, Florida 32301
         Telephone: (850) 629-4168
         Facsimile:  (850) 629-4184
         Attorney(s) for Plaintiffs