UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**KATHY TOWNSEND GRIFFIN,** *et.al.*,

**Plaintiffs,**

vs.

**EDWARD CHRISTOPHER SHEERAN,** *et.al.*,

**Defendants.**

**ECF CASE**
**17-CV-5221 (LLS)**

**PLAINTIFFS' OBJECTION TO DEFENDANTS' NINTH MOTION *IN LIMINE***

_____/

**THE ENUMERATED PLAINTIFFS**, collectively, Object to the Defendants' Ninth Motion *in Limine* and, as basis therefore, would state as follows:

### FOREWORD

1. The Defendants currently take issue with the Plaintiffs' assertion of entitlement to concert ticket revenues enjoyed by the Defendants as a result of their infringement of "Let's Get It On" *vis a vis* "Thinking Out Loud".

2. While the enumerated Plaintiffs had initially not intended on actually seeking concert ticket revenues attendant to the forthcoming trial of this matter but had, instead, merely included an assertion of entitlement to the same in the Parties Joint Pre-Trial Stipulation (Doc. 194) as a means to preserve said issue and, in so doing, circumvent any subsequent arguments by the Defendants that the issues had, somehow, been waived, the Defendants' Ninth Motion *in Limine* has the likely unintended effect of placing the matter squarely at issue before this Court.

### BACKGROUND

3. In the Plaintiffs' preliminary "Complaint for Copyright Infringement" (Doc. 1), they very clearly on Page Fourteen (14) of said document requested "judgment assessing

Defendants for the Damages suffered by Plaintiffs, including **an award of actual damages and Defendants' profits attributable to the infringement** (*Emphasis Supplied*)".

4. Thereafter, the Plaintiffs followed up upon that initial Complaint by serving the Defendant, Ed Sheeran, with a First Request for Production on October 14, 2017 which requested, specifically, the following item:

> "7. *A true copy of any and all documents, reports, memoranda, correspondence (electronic or tangible) reflecting any and all income/revenue generated from the Defendant's, Edward Christopher Sheeran's, touring activities between June of 2014 and the Present"*.

5. The Defendants responded by the above-styled request by Objecting to the same.

6. Thereafter, the Plaintiff, Structured Assets, LLC, in the companion litigation to this matter, pursued a successful Motion to Compel in connection with the self-same requested concert revenue materials.

7. Based on this Court Granting the Motion to Compel in the companion litigation, the Plaintiffs herein sought an Order from this Court similarly compelling the Defendants to produce the same materials in the instant litigation on July 9, 2020. (Doc. 129).

8. This Court Denied the Motion to Compel said materials in this case based on the premise that discovery had closed and the Plaintiffs' request for untimely.

9. On September 26, 2020, the Plaintiffs filed their First Motion *in Limine* regarding the proposed testimony of Mr. Stuart Camp as a witness at trial. (Doc. 156).

10. Among other things, pursuant to the First Motion *in Limine*, the Plaintiffs took issue with the fact that Mr. Camp had never been referenced in any of the Defendants' *Rule 26* Disclosures until the first time on June 11, 2020 via the Defendants' Second Amended *Rule 26* Disclosures which were proffered Twenty-Seven (27) Months after the close of discovery. In those disclosures, Mr. Camp was identified by the Defendants as someone who

would testify as to the Defendant's, Ed Sheeran's, "management, career, and career trajectory more generally".

11. Responsive to the First Motion *in Limine*, this Court determined that the Defendants' failure to ever timely list the Defendant's, Ed Sheeran's, manager as a witness was not prejudicial due to the fact that the trial was being continued as a result of Covid-19 and there would be time for the Plaintiffs to take Mr. Camp's deposition.

12. Subsequent to all of the foregoing, this Court determined in the aforementioned companion litigation involving *Structured Assets, LLC* that there was evidence attendant to the case to demonstrate that concert revenues should be construed as direct and actual damages.

13. Consistent with that opinion, as offered by this Court, the Plaintiffs asserted entitlement to said concert revenues to preserve the matter. The Defendants' Ninth Motion *in Limine* ensued.

## MEMORANDUM OF LAW

### A. NOTICE TO DEFENDANTS

14. As a preliminary matter, the Defendants herein are hard-pressed to contend that they were not aware that the Plaintiffs took the position that concert ticket revenues were part of the legally-cognizable damages at issue in this litigation.

15. Notwithstanding the fact that the *Federal Rules of Civil Procedure, Rule 8*, contemplates "notice" pleading, this jurisdiction has previously held that the exclusion of certain elements and/or information from a pleading does not control the admissibility of evidence at trial. See *Robert Doran, et.al. v. New York State Department of Health, et.al.*, Case Number: *15-CV-7217-PKC-SN* (S. D. NY, October 18, 2018).

16. Even assuming—*arguendo*—herein that the Plaintiffs' Complaint did not make it clear that they were seeking concert ticket revenues as actual damages, it would have been

expressly clear as early as October 14, 2017, **more than six (6) years ago**, that the Plaintiffs were seeking concert ticket revenues as act damages when those materials were requested in the very First Request for Production to the Defendant, Ed Sheeran.

### B. BURDEN ON DEFENDANTS

17. To the extent that the Defendants would claim that the provision of and/or reference to concert ticket revenues is somehow prejudicial at this juncture, it should be noted that that material appears to have already been provided to the Plaintiffs in the companion litigation.

18. Therefore, the subject materials are readily available for the Defendants to provide to the Plaintiffs in connection with this litigation with little or no additional effort and/or resources to be expended.

### C. THE DEFENDANTS' STUART CAMP CONUNDRUM

19. The Defendants herein, despite not timely disclosing the Defendant's, Ed Sheeran's, own manager, as a witness until **Twenty-Seven (27) Months after the close of discovery**, were granted permission by this Court to correct said inexplicable error by allowing for discovery to be reopened for the purposes of having Mr. Camp deposed.

20. The problem posed by Mr. Camp's prospective testimony, however, is that Mr. Camp's testimony as to the Defendant's, Ed Sheeran's, "career, and career trajectory more generally" will, necessarily, contemplate Mr. Camp testifying as to the impact (or purported lack thereof) that the infringing song, "Thinking Out Loud" has had on the Defendant's, Mr. Sheeran's, career 'trajectory'.

21. In so doing, Mr. Camp will attempt to—improbably[1]—make the argument that, "Thinking Out Loud", despite winning a Grammy for Song of the Year, had little to no impact

---

[1] In the most recent issue of *Rolling Stone* magazine, released earlier this month, in which the Defendant, Mr. Sheeran, graces the cover, he self-identifies as the individual who wrote, "Thinking Out Loud".

4

on the Defendant's, Ed Sheeran's, career 'trajectory', downplaying the significance of the same thereby.

22. Part-and-parcel of the criteria Mr. Camp will inevitably allude to and/or rely upon is the Defendant's, Ed Sheeran's, concert ticket sales before and after the release of "Thinking Out Loud".

23. In light of the same, it is not immediately clear how the Defendants might reasonably reference concert ticket sales and/or attendance selectively for the contention that "Thinking Out Loud" had minimal impact on the Defendant's, Ed Sheeran's, career, while attempting to preclude the Plaintiffs from availing themselves of the self-same topics and/or information.

### D. PRINCIPLES OF JUDICIAL EFFICIENCY FAVOR THE INCLUSION OF CONCERT REVENUE INFORMATION/ MATERIALS

24. To the extent that the Plaintiffs prevail in the liability portion of the forthcoming trial of this case and pursue solely the non-concert revenue-related damages at issue currently in the instant litigation, it will be necessary to file a second lawsuit to pursue the concert revenue damages if they are not included in this litigation.

25. In the interest of judicial efficiency and, of course, consistency with this Court's recent rulings with respect to concert revenues in the companion *Structured Assets* litigation, the Plaintiffs would, respectfully, contend that the concert revenue information should be included at trial.

### CONCLUSION

26. As indicated previously herein, the Plaintiffs would, respectfully, contend that the Defendants' Ninth Motion *in Limine* places the admissibility of the concert revenue materials/ information squarely before this Court.

**WHEREFORE**, the Plaintiffs, collectively, Object to the Defendants' Ninth Motion

5

*in Limine* and Motion this Court for the entry of an Order Denying said motion, as well as an Order Compelling the Defendants to immediately provide the concert revenue information to the Plaintiffs for purposes of publication to the jury at trial in the event that the Plaintiffs prevail on the liability component of the same and are, otherwise, permitted to proceed forward with the damages component of the case, as well as providing for any such other relief as this Court should deem equitable and just. To the extent that the Defendant's Ninth Motion *in Limine* is Granted by this Court, the Plaintiffs would request that Stuart Camp be similarly barred from testifying as to the Defendant's, Ed Sheeran's, concert and tour history, attendance, crowd size, etc., as well as the purported impact of the success of "Thinking Out Loud" (or asserted lack thereof) thereupon.

**DATED** this 28th day of March, 2023.

**FRANK & RICE, P.A.**

Respectfully Submitted,

/s/ Patrick R. Frank

Patrick R. Frank, Esq.
Florida Bar Number: 0642770
Keisha D. Rice, Esq.
Katherine L. Viker, Esq.
Frank & Rice, P.A.
325 West Park Avenue
Tallahassee, Florida 32301
Telephone: (850) 629-4168
Facsimile: (850) 629-4184