UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND, <br><br>    *Plaintiffs*, <br><br>    -against- <br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS <br><br>    *Defendants*. | ECF CASE <br><br> 17-cv-5221 (LLS) |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR NINTH MOTION *IN LIMINE*

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

*Of Counsel*:
 Donald S. Zakarin
 Ilene S. Farkas
 Andrew M. Goldsmith
 Brian M. Maida

## PRELIMINARY STATEMENT

Six weeks before the trial of this action, Plaintiffs attempted to insinuate concert revenues into this case in a Proposed Finding of Fact in the Damages Pretrial Order. They did so despite the fact that their Complaint asserted no claim (and alleged no causal nexus) for any concert revenues. They did so despite the fact that they made no effort to pursue concert revenues at any time during discovery in this case or at any time from the close of discovery on March 28, 2018 until over two years later when they belatedly sought to reopen discovery to compel concert revenue information in their July 9, 2020 letter application to this Court. (ECF 129). They did so despite the fact that, nearly three years ago, this Court barred them from pursuing concert revenues in its July 24, 2020 Order. (ECF 134). And they did so despite the fact that they entered into a Stipulation, Joint Exhibit 8 (ECF 211-2), that expressly provides that Defendants' United States gross revenues and expenses in relation to the United States exploitation of TOL are only what is reflected on Joint Exhibits 5, 6 and 7 – and those Exhibits reflect no concert revenues or expenses.

Defendants therefore moved, in their ninth motion *in limine*, to enforce this Court's July 24, 2020 Order and the stipulated Joint Exhibit 8 and to bar Plaintiffs from belatedly insinuating concert revenues into this case.

And what is Plaintiffs' opposition to Defendants' motion? *First*, nowhere do they mention the Stipulation they entered into which makes clear that concert revenues are not at issue in this case. And while they briefly mention the Court's July 24, 2020 Order, they offer no basis on which it should be ignored. And, as to their Complaint, they fail to identify a single allegation that even references concert revenues, much less one that alleges any causal nexus between the alleged infringement and any concert revenues.

1

*Second*, in an argument that makes no sense at all, Plaintiffs contend they did not attempt to insinuate concert revenues back into this case, suggesting they were only seeking "to preserve said issue." (ECF 235 ¶ 2). Clearly, Plaintiffs somehow believed that by including a Proposed "Finding of Fact" on concert revenues they might later figure out some way to evade the Court's prior Order.

Defendants' ninth motion *in limine* should be granted, Plaintiffs should be precluded from offering or attempting to elicit any argument, testimony or "evidence" concerning concert revenues, and Plaintiffs and their counsel should be sanctioned for requiring the Court and Defendants to again address an issue that the Court has already decided.

## ARGUMENT

**I.     Undisputed Facts Bar Plaintiffs' Attempt To Claim Concert Revenues**

As noted above and in Defendants' motion, the following facts, nearly all of which are ignored by Plaintiffs, are undisputed:

(1)     Plaintiffs' "Proposed Finding of Fact" regarding concert revenues has been offered in <u>direct violation</u> of the Court's July 24, 2020 Order. (ECF 134).

(2)     While Plaintiffs point to their October 14, 2017 discovery request (Frank Decl. Exhibit 1), they omit Defendants' objection to Plaintiffs' discovery demands seeking concert revenues, and they ignore the fact that they <u>never</u> moved to compel such discovery during discovery (or for over two years after discovery closed).[1]

(3)     More than two years ago, in the lead up to the originally scheduled trial of this action, the parties negotiated a Stipulation – Joint Exhibit 8 – by which they agreed

---

[1] A copy of Sheeran's Responses & Objections to Plaintiffs' discovery demands is annexed as Exhibit D to the Reply Declaration of Donald S. Zakarin.

that Joint Exhibits 5, 6, 7 (profit & loss statements for each Defendant) reflected the United States gross revenues and expenses of Defendants in relation to the United States exploitation of TOL. Those Joint Exhibits do <u>not</u> include any concert revenues or expenses.[2]

(4) Plaintiffs' Complaint makes no claim to concert revenues, nor does it allege any causal nexus between the alleged infringement and any concert revenues. Plaintiffs' opposition effectively admits this, pointing solely to an allegation that they are entitled to "Defendants' profits attributable to the [alleged] infringement." (ECF 1 at 14). In contrast, in the SAS Case, the Court found – only after SAS filed a motion to compel during discovery – that SAS sufficiently pleaded a causal connection between the alleged infringement and concert revenues to permit discovery. Here, there was neither any such motion nor any pleaded claim or nexus.

(5) Because Plaintiffs did not plead any claim or pursue any discovery relating to concert revenues and because the July 24, 2020 Order foreclosed their pursuit of such a claim, Defendants never examined or produced any concert revenue or expense information, never retained an expert to examine such information and never pursued any evidence relating to such information.

## II.   Plaintiffs' Analogy To The Stuart Camp Testimony Is Baseless

Plaintiffs offer an analogy that does not make the slightest sense, arguing that because the Court denied their motion (ECF 155) to bar Stuart Camp (Ed Sheeran's manager) from testifying at trial – Mr. Camp had not been originally identified in Defendants' Rule 26(a)(1) Initial

---

[2] Joint Exhibits 5, 6 and 7 have been updated since 2020 to include Defendants' revenues and expenses through more recent time periods. At no time did Plaintiffs suggest, request or demand that Joint Exhibits 5, 6 and 7 include concert revenues and expenses.

3

Disclosures, but the Court denied Plaintiffs' motion since there was ample time before trial for Plaintiffs to conduct his deposition – the Court now should allow Plaintiffs to add a claim for concert revenues to this case on the eve of trial.

Plaintiffs' purported analogy ignores that the Court issued an Order barring Plaintiffs from pursuing concert revenues nearly three years ago. It ignores Joint Exhibits 5, 6, 7 and 8 in which Plaintiffs stipulated that Defendants' gross revenues and expenses do not include any concert revenues or expenses. It ignores that Plaintiffs' Complaint makes no claim for concert revenues. And it ignores the obvious difference between Mr. Camp's testimony and Plaintiffs' eve of trial effort to inject concert revenues into this case.

As Defendants explained in their opposition to Plaintiffs' motion to preclude Mr. Camp, their failure to identify Mr. Camp in their Initial Disclosures was "harmless" because Mr. Camp was "a witness known to all parties." (ECF 166 at 5; *id.* at 4 quoting the Notes Of Advisory Committee On Rules for Rule 26). Subsequent to serving Initial Disclosures, Defendants produced numerous documents during discovery detailing Mr. Camp's involvement in Sheeran's career; Sheeran testified at his deposition regarding Mr. Camp's intimate involvement in his career; Mr. Camp offered a detailed, publicly-filed Declaration in the SAS Case regarding much of the information to which he is (and was) expected to testify at trial; and Plaintiffs still had ample time to depose Mr. Camp in advance of trial (at that time, the trial date was indefinite owing to the Covid-19 pandemic).[3]

In contrast, Defendants timely objected to Plaintiffs' discovery requests seeking concert revenues long before the close of discovery, and Plaintiffs did <u>nothing</u> to pursue such discovery

---

[3] Plaintiffs' motion to exclude Mr. Camp was plainly pretextual. They never made any effort to depose the co-writer or producer of *Thinking Out Loud*, and they never sought to depose Defendants' expert musicologist or their damages expert.

4

before the close of discovery in March 2018 and continued to do <u>nothing</u> for more than two years thereafter.  On this record, when Plaintiffs finally made an application to this Court on July 9, 2020, the Court rejected their demand for discovery of concert revenues and expenses.  And then, more than two years ago, Plaintiffs stipulated in Joint Exhibit 8 that Defendants' revenues and expenses do not include any concert revenues and expenses.  Simply put, there is no analogy that can be drawn between Mr. Camp and concert revenues.

Plaintiffs also speculate that, during his trial testimony, Mr. Camp will "inevitably allude to and/or rely upon" Sheeran's "concert ticket sales before and after the release of [TOL]."  (ECF 235 ¶ 22).  This unfounded speculation is both irrelevant and completely untrue.  Defendants have no reason to refer to or rely on the sale of concert tickets before or after the release of TOL.

In fact, the undisputed evidence, which has nothing to do with ticket sales, will show that: Ed Sheeran and the *X* (Multiply) album were hugely successful before TOL was released as the <u>third</u> single from the album at the end of September 2014; Sheeran's 2014 United States concert tour began (in August 2014) and ended (in September 2014) before TOL's release as a single; and Sheeran's prior concert tour, undertaken in support of his prior album + (Plus), ended in the fall of 2013 with three sold out dates at Madison Square Garden.  None of this has anything to do with the revenue produced by ticket sales before or after TOL's release as a single.

### III.   Plaintiffs' "Burden" And "Judicial Efficiency" Arguments Are Baseless

Plaintiffs' assertion that the "burden" on Defendants would be minimal since they already produced concert revenue discovery in the SAS Case is self-serving and completely untrue.  *First*, Plaintiffs ignore that the concert revenue information for this case and the SAS case are subject to different statutes of limitation (as this Court's discovery decision in the SAS case noted) and hence cover different time periods (and different concerts with different revenues and expenses).

*Second*, Plaintiffs ignore that addressing a claim that has never been in this case in the less than four weeks now remaining before trial would interfere dramatically with Defendants' trial preparation. And the disruption to Defendants' trial preparation does not take into account that Defendants have not retained an expert to address this unpleaded and heretofore nonexistent claim. The law is clear that such "ambush" tactics of changing or adding a new damages theory on the eve of trial will not be permitted. *See, e.g.*, *Harkabi v. SanDisk Corp.*, No. 08-cv-8203 (WHP), 2012 WL 826892, at *7-8 (S.D.N.Y. Mar. 12, 2012); *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93-cv-04001 (NRB), 2002 WL 31856951, at *3-5 (S.D.N.Y. Dec. 19, 2002); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 416, 418-20 & n.3 (S.D.N.Y. 1999).

Finally, Plaintiffs' "judicial efficiency" argument is equally baseless (and, frankly, a makeweight argument given that Plaintiffs contend they only were trying to "preserve" their claim for concert revenues and not actually pursue such claim). As the cited cases make clear, just because Plaintiffs have a case pending before this Court does not mean they can advance, on the literal eve of trial, claims they never asserted or pursued. Should Plaintiffs somehow prevail on liability at trial, they can choose to commence a new action and attempt to recover concert revenues.

Regardless of the lack of economic value of a claim for concert revenues, any claim for "concert revenues" implicates disparate issues and pertains to concert dates, revenues and expenses that are not the same as the SAS case. It would not remotely promote "judicial efficiency" to permit Plaintiffs to seek concert revenues in this case, especially when they did not plead any such claim and have not pursued any such claim in six years. It, instead, would ignore an existing Order of this Court, ignore the operative Complaint in this action, violate a binding stipulation (Joint Exhibit 8) and interfere with the orderly trial of this action, to the extreme prejudice of Defendants.

## **CONCLUSION**

It is respectfully submitted that Defendants' ninth motion *in limine* should be granted and that their companion motion for sanctions (ECF 224) also should be granted.

Dated: New York, New York
March 30, 2023

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*