UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD, and THE ESTATE OF CHERRIGALE TOWNSEND,<br><br>        *Plaintiffs*,<br><br>-against-<br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS<br><br>        *Defendants*. | ECF CASE<br><br>17-cv-5221 (LLS) |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR EIGHTH MOTION *IN LIMINE*

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

*Of Counsel*:
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT .......................................................................................................................2

    I.     Plaintiffs Fail To Rebut That Their Attempt To Insinuate LGO's Key Signature Into Their Selection And Arrangement Claim Should Be Rejected ...........................................2

    II.    Plaintiffs Fail To Articulate Any Good Faith Basis To Introduce The LGO Recording.....4

        A.  Plaintiffs' Proposed Findings Of Fact Nos. 9-11: Plaintiffs' Proposed Comparison Of The LGO Deposit Copy To The LGO Recording Fails The Standard For Relevance And Contravenes Rule 403 ................. 4

        B.  Exhibit No. 128: The Essay Regarding Marvin Gaye's Recording Of Let's Get It On Is Irrelevant, Prejudicial And Complete Hearsay ....................................................................................6

    III.   Plaintiffs' Proposed Findings Of Fact Nos. 3, 13 And 14 And Exhibits Nos.103 And 108 Should Be Barred Because They Address Elements In TOL – The Bass Line And Drum Pattern – That Are Not At Issue In This Case ...............................7

CONCLUSION....................................................................................................................9

# **TABLE OF AUTHORITIES**

**CASES**                                                                **PAGE(s)**

*Arifin v. Matuszewich*,
  No. 98-C-1591 (JFH), 2000 WL 796146 (N.D. Ill. June 20, 2000) ..........................................4

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009)........................6

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
  No. 93-cv-04001 (NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) ................................4

*Torah Soft Ltd. v. Drosnin*,
  No. 00-cv-0676 (JCF), 2003 WL 22024074 (S.D.N.Y. Aug. 28, 2003) ...................................4

## **STATUTES AND RULES**

Fed. R. Civ. P. Rule 26 ...................................................................................................................8

Fed. R. Civ. P. Rule 401 .................................................................................................................5

Fed. R. Civ. P. Rule 403 .................................................................................................................5

**PRELIMINARY STATEMENT**

Every single one of the four motions *in limine* that Defendants have filed in recent weeks (their sixth through ninth motions *in limine*) has been made to enforce this Court's prior Orders, most specifically its March 24, 2020 Order (ECF 121; the "March Order") and its August 18, 2020 Order (ECF 138; the "August Order"). These motions have been necessitated because Plaintiffs have refused to comply with those Orders. The March Order restricted the infringement claim in this case to what is literally expressed in the Deposit Copy filed with the Copyright Office and excluded the LGO Recording, which contains elements that nowhere appear in the Deposit Copy. The August Order compelled Plaintiffs' musicologist, Dr. Stewart, to abide by the March Order and barred him from offering legal conclusions and from offering any testimony that LGO or any constituent element in it is "unique, distinctive, unusual or the like."

As shown in Defendants' eighth motion *in limine* and as specifically laid out below, unless this Court's prior Orders are enforced, Defendants will be forced, repeatedly, to object to Plaintiffs' efforts to introduce evidence that this Court already has barred. While ruling on objections one-by-one at trial may, in some cases, have the benefit of allowing the Court to evaluate the specific evidence as it is offered, in this case and with respect to the evidence at issue in the recent motions *in limine*, that benefit will not be realized because Plaintiffs have made clear that they intend to ignore this Court's Orders, and they have made equally clear exactly how they intend to do so.

Further, in this case, not only will the benefit of deferred rulings not be realized, deferring rulings until trial comes at a substantial prejudicial cost to Defendants precisely because they will be forced to repeatedly object, in front of the jury, to the introduction of evidence this Court has clearly and unequivocally barred. And compounding that prejudice, because some of the evidence Plaintiffs intend to introduce is auditory, the jury cannot unhear the evidence once it is played.

1

Defendants have and had no interest in the proliferation of motions. But these motions are intended to protect the integrity of the trial, seeking enforcement of this Court's Orders and assuring that the claim of infringement the jury hears and adjudicates is the claim of infringement this Court has limited to the Deposit Copy. And the Plaintiffs, because their claim of infringement in this case is so lacking in merit, are insistent upon trying to buttress it with additional elements that this Court already has excluded or that have never been a part of their claim (indeed, the key signature is an element they expressly disclaimed).

Defendants respectfully submit that addressing these critical evidentiary issues should not be deferred to trial and ruled on one-by-one. And, if they are to be deferred, then Defendants respectfully request that the Court require Plaintiffs to make a proffer, out of the presence of the jury, before they propose to offer evidence that is inconsistent with this Court's Orders. Indeed, requiring them to do so is itself consistent with the March Order, which specifically requires Plaintiffs to provide advance notice before making any submission relating to the LGO Recording. At the very least, advance notice should be provided sufficiently in advance of any attempted introduction of such evidence, so the Court and Defendants are not in the position of having to deal with improper evidence after it has been presented to the jury.

## ARGUMENT

### I. Plaintiffs Fail To Rebut That Their Attempt To Insinuate LGO's Key Signature Into Their Selection And Arrangement Claim Should Be Rejected

The question before the Court with respect to key signature is not whether key can be protected by itself (it cannot, as Plaintiffs concede) or even whether a plaintiff can ever include key in a selection and arrangement of unprotected elements (Defendants submit that key can never be an element, as it is too basic to consider). The question is whether, under the undisputed facts in this case, Plaintiffs should be barred from including LGO's key signature in their selection and

2

arrangement of unprotected elements when they expressly disclaimed it for more than five years.

On that narrow question, Plaintiffs ignore the following undisputed facts: (a) they <u>never</u> previously included key in their "combination" of unprotected elements – not in their Complaint and not in opposition to summary judgment; (b) Dr. Stewart repeatedly <u>admitted</u> under oath that he did <u>not</u> consider LGO's key when comparing the two works; and (c) Dr. Stewart admitted that, to compare the songs, he had to transpose them into a common key because their keys are different.

Moreover, Plaintiffs ignore that their first Proposed Finding of Fact – which claims that the selection and arrangement of unprotected elements in LGO (now adding "key") is "unique" – is based solely on proposed testimony from Dr. Stewart that is <u>expressly barred</u> by the August Order. Again, the August Order barred him from testifying that any element in LGO is "'<u>unique</u>,' 'distinctive,' 'unusual' or the like." (Emphasis added). The Court has all of the information it needs to enforce the August Order now. There is no need or benefit to wait until trial.

Plaintiffs have no legitimate response. Instead, they mischaracterize Defendants' position and offer unfounded claims. They contend, for example, that Defendants seek to bar them from even "identifying the key signature" of LGO. (ECF 237 ¶ 2). Defendants have done no such thing, nor would they, as it is undisputed that the keys are different.

Bowing to the clear case law cited by Defendants, Plaintiffs concede that key is not protectable but argue, without the slightest basis in fact or any case authority, that key "taken in conjunction and/or combination with other elements" may be protected by copyright. (*Id.* ¶ 4). Although Defendants maintain that key is so basic an element that it should <u>never</u> be included as an element in a selection and arrangement claim, the Court does not need to reach that question.[1]

---

[1] As Defendants explained in their moving papers, there are only twelve major keys, and it is standard musicological procedure to transpose the key of two songs for purposes of comparison – as both musicologists did in this case – which comports with Dr. Stewart's admission that he did

3

That is because the law does not permit Plaintiffs to retrofit their selection and arrangement claim on the eve of trial when they never previously included key in their "combination" of unprotected elements – a party cannot inject new legal theories into their case on the eve of trial. *See, e.g.*, *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93-cv-04001 (NRB), 2002 WL 31856951, at *3-5 (S.D.N.Y. Dec. 19, 2002); *Torah Soft Ltd. v. Drosnin*, No. 00-cv-0676 (JCF), 2003 WL 22024074, at *3 (S.D.N.Y. Aug. 28, 2003); *Arifin v. Matuszewich*, No. 98-C-1591 (JFH), 2000 WL 796146, at *3 (N.D. Ill. June 20, 2000).[2]

Plaintiffs should not be permitted to argue or offer any testimony or "evidence" that the selection and arrangement of unprotected elements in LGO includes the composition's key signature (and, with or without the key, they cannot argue that the selection and arrangement is "unique" based on testimony from Dr. Stewart that this Court already has barred).

## II. Plaintiffs Fail To Articulate Any Good Faith Basis To Introduce The LGO Recording

### A. Plaintiffs' Proposed Findings Of Fact Nos. 9-11: Plaintiffs' Proposed Comparison Of The LGO Deposit Copy To The LGO Recording Fails The Standard For Relevance And Contravenes Rule 403

This case involves a comparison of TOL and the LGO Deposit Copy. Yet, Plaintiffs propose to compare the LGO Deposit Copy to the LGO Recording. (*See* Plaintiffs' Proposed Findings of Fact Nos. 9-11). That comparison has no possible relevance to any issue in this case, especially since the Court already has performed that comparison in its March Order and identified

---

not consider key in comparing the two works and confirms that it would be inappropriate to consider key as part of a selection and arrangement.

[2] Plaintiffs' attempt to include LGO's key signature in their "combination" of unprotected elements reflects that they are scrambling to satisfy the numerosity requirement for selection and arrangement claims (though, even three elements clearly does not suffice as "numerous"). They fail to recognize that in so doing, they run afoul of the "identity" or "virtual identity" requirement, because it is undisputed that the key signatures are different.

4

elements in the LGO Recording that are not in the Deposit Copy.

Plaintiffs' Proposed Findings of Fact Nos. 9-11 are purely an attempt to place the LGO Recording before the jury in plain violation of Rules 401 and 403 and the Court's March Order. And deferring a ruling on this attempt until trial risks putting inadmissible, highly prejudicial evidence before the jury which it cannot unhear.

At the Pretrial Conference, this Court stated that, having reviewed its prior Orders, they are "clear," and that it expects the parties to abide by them to the letter. Yet, Plaintiffs' pretrial filings show they have no intention of complying with them. Their opposition purposefully misrepresents the Court's March Order, contending the Court merely precluded them from "representing to the jury that unprotected elements of the sound recording are, in fact, protected." (ECF 237 ¶ 7). The Order stated, clearly and unequivocally, that "the Gaye sound recording is inadmissible in any way which might confuse the jury into thinking it represents what is protected by copyright." (ECF 121 at 3). The Court also ruled that "comparison of elements in Thinking Out Loud which are similar to elements in the Gaye sound recording (but not the Deposit Copy) will not be allowed." (*Id.*).

Plaintiffs also suggest they should be able to play the LGO Recording, so the jury can hear some of the elements that are in the Deposit Copy, ignoring that there is no way to do that without having the jury hear, at the same time, the many elements that are not in the Deposit Copy, in direct violation of the March Order. Further, it is entirely unnecessary to play the LGO Recording so the jury can hear some of the Deposit Copy elements because the computer-generated audio files that Defendants engaged a sound engineer to create – Defendants' Proposed Exhibit No. 216 – accurately represent only those elements in the Deposit Copy. Defendants established this fact in their seventh motion *in limine* (ECF 186-189), which motion the Court granted. (ECF 192).

It could not be any clearer that the Plaintiffs' sole purpose in comparing the LGO Recording to the LGO Deposit Copy is to play the LGO Recording, confusing the jury as to what elements are actually at issue in this case, which are only those elements contained in the Deposit Copy.  This is in direct violation of the March Order.  Because the jury cannot unhear elements in the LGO Recording that are not in the Deposit Copy, Plaintiffs' proposed comparison of the LGO Recording to the LGO Deposit Copy has an improper purpose and would irretrievably taint this trial to the prejudice of Defendants.

Again, Plaintiffs have made their intentions clear.  There is neither any need nor benefit to wait until trial to bar the Plaintiffs from violating the March Order.  It should be enforced now.

### B. Exhibit No. 128: The Essay Regarding Marvin Gaye's Recording Of *Let's Get It On* Is Irrelevant, Prejudicial And Complete Hearsay

As Defendants explained in their moving papers, Plaintiffs' Proposed Exhibit No. 128 is an essay that purports to recount how Marin Gaye created the vocals for the LGO Recording.

Plaintiffs claim they should be able to introduce Exhibit No. 128 "for the purpose of [proving] Marvin Gaye's vocal composition style and how such style is reflected in the deposit copy." (ECF 237 ¶ 21).  That argument is both pretextual and deeply flawed.  *First*, Marvin Gaye's vocal style is not at issue in this case.  The Deposit Copy – and the vocal melody expressed in it – is an objective, empirical fact.  *Second*, introduction of Exhibit No. 128 would cause substantial confusion and prejudice – again, Plaintiffs' clear aim – because it references the LGO Recording for no legitimate purpose.  *Third*, the entire article – which Plaintiffs seek to admit for the truth of the matters asserted in it – is rank hearsay.  *See, e.g.*, *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) (articles "offered for the truth of the matter asserted are inadmissible hearsay") (citations omitted).

### III. Plaintiffs' Proposed Findings Of Fact Nos. 3, 13 And 14 And Exhibits Nos. 103 And 108 Should Be Barred Because They Address Elements In TOL – The Bass Line And Drum Pattern – That Are Not At Issue In This Case

As the Court noted in its March Order, there are musical elements in the LGO Recording which may appear in TOL that are not in the LGO Deposit Copy.[3] Two such elements are the TOL bass line and drum pattern.

Despite the sole question in this case being whether TOL infringes the LGO Deposit Copy, Plaintiffs attempt to drag TOL's bass line and drum pattern into this case, purportedly to compare them to the Deposit Copy. But the March Order determined that there was no bass line or drum pattern in the Deposit Copy and held that unexpressed elements cannot be implied by the way the articulated elements are expressed. The March Order also provided that elements in TOL (such as the bass line and drum pattern) cannot be compared to elements that are not in the Deposit Copy.

While TOL's bass line and drum pattern (among other elements) may show differences between the works (since they are absent from LGO), they cannot be used to try to show similarities that do not exist in the Deposit Copy. The March Order is clear: "comparison of elements in Thinking Out Loud which are similar to elements in the Gaye sound recording (but not the Deposit Copy)" – *i.e.*, the TOL bass line and drum pattern – "will not be allowed."

In opposition, with respect to the bass line, Plaintiffs contend the TOL bass line is somehow relevant because it derives from the "root note" of TOL's chords.[4] (ECF ¶¶ 13-15). But there is no bass line in the LGO Deposit Copy, and how TOL's bass line was "derived" is irrelevant. Moreover, as noted above, the Court already rejected this exact argument in the March Order,

---

[3] While not at issue in this case, those elements are commonplace and unprotectable and also different in both works.

[4] Plaintiffs' characterization of Sheeran's deposition testimony is completely inaccurate, as shown in the deposition excerpt attached as Exhibit 2 to Mr. Frank's declaration.

holding that unexpressed elements (here the bass line) cannot be implied from the way articulated elements (here the chords) are expressed in the Deposit Copy.  There is no purpose to the TOL bass line evidence other than to confuse the jury, prejudice Defendants and evade the March Order.  Again, what Plaintiffs are seeking to do is clear and clearly in direct violation of the March Order.  There is no reason to wait until trial to enforce the March Order and bar Plaintiffs' Proposed Findings of Fact Nos. 13 and 14 and Exhibit 108.

As for TOL's drum pattern, Plaintiffs try to shoehorn it into this case based on the completely false assertion that "Plaintiffs have contended that the drums and/or rhythmic pattern of [TOL] mimics the protected musical expression embodied in the [LGO Deposit Copy]."  (ECF 237 ¶ 16).  To start, Plaintiffs have never made that claim – not in their Complaint, not in Dr. Stewart's largely excluded Rule 26 Report, not during Dr. Stewart's deposition, not in opposition to summary judgment and not in Dr. Stewart's skeletal, untimely Pretrial Declaration.

Moreover, this newly minted and demonstrably untrue assertion does not even make sense.  The only elements notated in the Deposit Copy are key, meter, harmony, rhythm, melody and lyrics.  It is utterly impossible for the TOL drum pattern to "mimic" any of those elements.  This argument is just another iteration of the "implied" argument already rejected in the March Order.  It is a stalking horse that Plaintiffs hope to ride into playing the LGO Recording (or referring to the LGO Recording) to mislead the jury and "show" that the TOL drum pattern "mimics" something that is not expressed in the LGO Deposit Copy.

Plaintiffs also seek to offer Proposed Finding of Fact No. 3 and Exhibit 103 to show that Sheeran, in denying copying from LGO and noting that TOL sounded more similar to a Van Morrison song than anything else, remarked that TOL's drums "make it sound" like the LGO Recording.  But whether the TOL drums sound like the drums in the LGO Recording is irrelevant

because there are no drums in the LGO Deposit Copy, which the March Order makes clear. As such, this "evidence" addresses an issue not in this case and would be unduly prejudicial. Accordingly, Plaintiffs' Proposed Finding of Fact No. 3 and Exhibit 103 also should be excluded.

Finally, Plaintiffs' assertion that Defendants seek "to exclude the drums and bass of [their] own sound recording" (ECF 237 ¶ 17), is not true. The TOL sound recording is included in the Liability Pretrial Order as a Joint Exhibit, and Defendants intend to play it during trial. Defendants' motion does not seek to exclude playing of the TOL sound recording. The motion, instead, seeks to preclude Plaintiffs from attempting to offer "evidence" that compares elements in TOL to elements that are not actually in the LGO Deposit Copy and which this Court already ruled in the March Order are not in the LGO Deposit Copy.

## CONCLUSION

It is respectfully submitted that Defendants' eighth motion *in limine* should be granted.

Dated: New York, New York
April 3, 2023

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

9