UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHRYN TOWNSEND GRIFFIN, THE ESTATE
OF CHERRIGALE TOWNSEND and THE HELEN
CHRISTINE MCDONALD TRUST,

               *Plaintiffs*,

            -against-

EDWARD CHRISTOPHER SHEERAN, p/k/a ED
SHEERAN, ATLANTIC RECORDING
CORPORATION, d/b/a ATLANTIC RECORDS,
SONY/ATV MUSIC PUBLISHING, LLC, and
WARNER MUSIC GROUP CORPORATION, d/b/a
ASYLUM RECORDS

               *Defendants*.

ECF CASE

17-cv-5221 (LLS)

---

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW**

 

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward*
*Christopher Sheeran, Atlantic Recording*
*Corporation and Sony Music Publishing*
*(US) LLC*

*Of Counsel:*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

   (i)   Melodies ...............................................................................................................3

   (ii)   Selection and Arrangement of Unprotectable Elements .....................................5

ARGUMENT ..................................................................................................................6

   I.   LEGAL STANDARDS ..........................................................................................6

      A.  Rule 50(a): Judgment As A Matter Of Law ..................................................6

      B.  Copyright Infringement Standard ....................................................................7

          1.  Scope of Copyright Protection ..................................................................7

          2.  Legal Standard For Wrongful Copying ...................................................10

          3.  Legal Standard For Infringement Claims
              Based On A Combination Of Unprotected Elements ...........................11

   II.   DEFENDANTS SHOULD BE GRANTED JUDGMENT AS A MATTER OF LAW....12

      A.  No Reasonable, Properly Instructed Jury Could Find That The
          Melodies At Issue In TOL Infringe The Melodies At Issue In LGO ..........................14

      B.  No Reasonable, Properly Instructed Jury Could Find
          An Infringement Of The Selection And Arrangement At Issue ..................................16

          1.  Plaintiffs Failed To Satisfy Their Burden Of Establishing
              That The Selection And Arrangement Is Sufficiently Numerous.........................16

          2.  Plaintiffs Failed To Satisfy Their Burden Of Establishing That
              The Selection And Arrangement Was "New" Or "Novel" To LGO ....................18

          3.  Plaintiffs Failed To Satisfy Their Burden Of Establishing That TOL
              Uses The "Same" Or "Virtually Identical" Selection And Arrangement .............19

CONCLUSION ..............................................................................................................21

# TABLE OF AUTHORITIES

## CASES                                                                PAGE(s)

*Abdin v. CBS Broad. Inc.*,
  971 F.3d 57 (2d Cir. 2020).................................................................10

*Allen v. Scholastic Inc.*,
  739 F. Supp. 2d 642 (S.D.N.Y. 2011).................................................8

*Beaudin v. Ben & Jerry's Homemade, Inc.*,
  95 F.3d 1 (2d Cir. 1996)...................................................................20

*Beyond Blond Prods., LLC v. Heldman*,
  479 F. Supp. 3d 874 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods.,*
  *LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13,
  2022) ...............................................................................................16, 17

*Boisson v. Banian, Ltd.*,
  273 F.3d 262 (2d Cir. 2001)...............................................................7

*Cottrill v. Spears*,
  No. 02-cv-3646 (BMS), 2003 WL 21223846 (E.D. Pa. May 22, 2003),
  *aff'd*, 87 F. App'x 803 (3d Cir. 2004)................................................17

*Darrell v. Joe Morris Music*,
  113 F.2d 80 (2d Cir. 1940)..................................................................8

*Erickson v. Blake*,
  839 F. Supp. 2d 1132 (D. Or. 2012) ................................................17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..........................................................................11

*Francescatti v. Germanotta*,
  No. 11 CV 5270, 2014 WL 2767231 (N.D. Ill. June 17, 2014)............14

*Gray v. Hudson*,
  28 F.4th 87 (9th Cir. 2022) .............................................................3, 9

*Gray v. Perry*,
  No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020),
  *aff'd sub nom. Gray v. Hudson*, 28 F. 4th 87 (9th Cir. 2022)......... *passim*

*Home Design Servs, Inc. v. Turner Heritage Homes, Inc.*,
  101 F. Supp. 3d 1201 (N.D. Fla. 2015), *aff'd*, 825 F.3d 1314 (11th Cir. 2016)....................15

*James v. City of Albany*,
  833 F. App'x 346 (2d Cir. 2020) .........................................................7

ii

**CASES**                                                                             **PAGE(s)**

*Jean v. Bug Music, Inc.*,
No. 00-cv-4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) .........................................8

*Kaye v. Cartoon Network Inc.*,
297 F. Supp. 3d 362 (S.D.N.Y. 2017)...........................................................................................8

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
71 F.3d 996 (2d Cir. 1995)............................................................................................................12

*Logan v. Bennington Coll. Corp.*,
72 F.3d 1017 (2d Cir. 1995)............................................................................................................7

*McDonald v. West*,
138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016)..................8, 11

*Merrill Lynch Interfunding, Inc. v. Argenti*,
155 F.3d 113 (2d Cir. 1998).........................................................................................................15

*Morrill v. Stefani*,
338 F. Supp. 3d 1051 (C.D. Cal. 2018) ......................................................................................17

*Nwosuocha v. Glover*,
No. 21-cv-04047 (VM), 2023 WL 2632158 (S.D.N.Y. Mar. 24, 2023)...................................8

*Odegard Inc. v. Safavieh Carpets, Inc.*,
398 F. Supp. 2d 275 (S.D.N.Y. 2005)................................................................................12, 19, 20

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010)................................................................................................7, 10, 11

*Pierce v. City of New York*,
805 F. App'x 70 (2d Cir. 2020) ...................................................................................................15

*Rose v. Hewson*,
No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ....................................12

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .................................................................................................8, 12

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020), *cert. denied* 208 L. Ed. 2d 145 (Oct. 5, 2020),
*reh'g denied*, 208 L. Ed. 2d 482 (Dec. 7, 2020) ............................................................. *passim*

**CASES**                                                                                      **PAGE(s)**

*Smith v. Weeknd*,
   No. 19-cv-2507 (PA), 2020 WL 4932074 (C.D. Cal. July 22, 2020), *aff'd sub
   nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) ........................................17

*Streetwise Maps, Inc. v. VanDam, Inc.*,
   159 F.3d 739 (2d Cir. 1998) ................................................................................12

*Sweet Gisele, Inc. v. True Rock CEO, LLC*,
   No. 17-cv-5170 (FB) (RML), 2018 WL 4863650 (E.D.N.Y. Sept. 4, 2018),
   *report and recommendation adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28,
   2018) ................................................................................................................20

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ................................................................................8

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ...............................................................................17

*Threeline Imports, Inc. v. Vernikov*,
   No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28,
   2016) ................................................................................................................12

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000) ...................................................................8

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
   338 F.3d 127 (2d Cir. 2003) ................................................................................11

*United States v. Hamilton*,
   583 F.2d 448 (9th Cir. 1978) ...............................................................................8

*Universal Pictures Co. v. Harry Lloyd Corp.*,
   162 F.2d 354 (9th Cir. 1947) ...............................................................................12

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) ....................8

*Warner Bros. Inc. v. American Broad. Companies, Inc.*,
   654 F.2d 204 (2d Cir. 1981)................................................................................15

*Williams v. County of Westchester*,
   171 F.3d 98 (2d Cir. 1999)....................................................................................7

*Zalewski v. Cicero Builder Dev., Inc.*,
   754 F.3d 95 (2d Cir. 2014)..................................................................................10

**FEDERAL STATUTES & RULES**                                                        **PAGE(s)**

37 C.F.R. § 202.1(a).............................................................................................4

Fed. R. Civ. P. 50(a) .........................................................................................6

U.S. Copyright Office,
Compendium of U.S. Copyright Office Practices § 313.4(C) (3d ed. 2021)..................................3

**DICTIONARY**

*Melody*, Webster's Third New International Dictionary (2002)......................................................4

*Numerous*, Merriam-Webster,
   www.merriam-webster.com/dictionary/numerous#synonyms, last accessed
   November 3, 2022...............................................................................................17

*Few*, Merriam-Webster
   www.merriam-webster.com/dictionary/few, last accessed November 3, 2022......................17

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC (n/k/a Sony Music Publishing (US) LLC) ("SMP," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their motion for judgment as a matter of law pursuant to Rule 50(a).

## PRELIMINARY STATEMENT

Plaintiffs, having been fully heard on their claim that certain musical elements in the musical composition *Thinking Out Loud* ("TOL") infringe the copyright of the musical composition *Let's Get It On* ("LGO"), failed to satisfy their burden of proof to establish a *prima facie* claim of infringement. Even before Defendants have put on their case, there is no legally sufficient evidentiary basis for a reasonable jury, properly instructed on the law, to return a verdict in Plaintiffs' favor. As such, Plaintiffs' claims should not be submitted to the jury and this Court should grant Defendants judgment as a matter of law.

This Court's Pretrial Orders of March 24, 2020 and August 18, 2020 limited Plaintiffs' possible avenues for their infringement claim. On March 24, 2020, the Court "limit[ed] Plaintiffs to comparing [TOL] with the musical composition [LGO] as reflected in the deposit copy filed with the Copyright Office for that work." (ECF 121 at 2). Thus, elements that appear in the Marvin Gaye sound recording of LGO but <u>not</u> in the deposit copy filed with the Copyright Office (the "Deposit Copy"), [1] such as "percussion/drums, bass-guitar, guitars, Gaye's vocal performances, horns, flutes, etc., … are not protected by copyright, because they are not in the Deposit Copy" and therefore are not a part of Plaintiffs' infringement claim. (*Id.* at 2).

Then, on August 18, 2020, the Court specifically barred Plaintiffs' musicological expert

---

[1] The Deposit Copy was admitted as Joint Exhibit 2.

from "characteriz[ing] Let's Get It On or a constituent element of it, such as a chord progression or harmonic rhythm, as being 'unique,' 'distinctive,' 'unusual' or the like." (ECF 138 at 1-2). The Court's ruling was based on "uncontradicted proof that those elements in this case are common musical techniques." (*Id.* at 2).

Plaintiffs proceeded at trial with only two paths to infringement: (1) pursuing a claim that certain melodies of TOL infringe certain melodies of LGO, and (2) that the specific combination of three unprotectable and commonplace musical building blocks in LGO – chord progression, rhythmic anticipation and key signature, known as a "selection and arrangement" claim – has been infringed by the combination of these elements in TOL.

In their own Proposed Findings of Fact in the Pre-Trial Order, Plaintiffs claimed that their "selection and arrangement" claim consisted of only the foregoing three elements. (*See* ECF 194 at 3). However, at trial, Dr. Stewart abandoned the key signature as one of the elements of such claim, admitting that they were different and offering no testimony whatsoever that included the key signature as an element of a selection and arrangement claim. In fact, Dr. Stewart referred to the key as "irrelevant." Thus, Plaintiffs advanced only two elements to support their "selection and arrangement" claim.

In direct contradiction of their own Proposed Findings of Fact, which nowhere included melody as an element of their "selection and arrangement" claim, in his trial testimony, Dr. Stewart tried to connect certain of the melodies to the indisputably commonplace and unprotectable chord progression and anticipation, apparently trying to swap out the key signature for melodies. But not only is this belated attempt to substitute a new element improper, it is also futile because, as Dr. Stewart was forced to concede, the melodies are different. They have different notes. They have different time values.

Instead, Dr. Stewart has simply plucked individual pitches from different locations in the two songs and tried to compare only the pitches divorced from any rhythmic value.  The melodies he claims are similar are different, not remotely identical and not remotely virtually identical. Indeed, they are not melodies at all.

**(i)**     **Melodies**

On March 10, 2023, this Court barred Plaintiffs from trying to mislead the jury with audio performances that did not correspond to the Deposit Copy.  The Court specifically held:

> Defendants' Seventh Motion in limine, for exclusion from evidence plaintiffs' proposed performance(s) of the Let's Get it On Deposit Copy, is granted. Omissions, additions and errors in the creation of Exhibits 01 and 02 render them unreliable and inadmissible as evidence of true performances of the Let's Get It On Deposit Copy.

(ECF 192 at 2).

Undeterred by this explicit Order and this Court's August 18, 2020 Order, Plaintiffs initially propounded a series of demonstratives in which Dr. Stewart referenced a bass line and drum pattern in LGO that nowhere exists in the Deposit Copy.  Before the hearing, out of the presence of the jury on April 24, 2023, Plaintiffs culled these demonstratives to avoid risking having the Court bar Dr. Stewart from testifying at all.

However, Dr. Stewart also included slides that omitted notes and altered the duration of notes of the Deposit Copy of LGO, thereby directly contradicting both this Court's March 24, 2020 Order and its August 18, 2020 Order.   At trial, the Court then struck slides 48, 50 and 51 as being in direct violation of the Orders and applicable law.  But Dr. Stewart also altered the notes of TOL in an effort to manufacture similarities in the melodies that do not exist, which was demonstrated on cross examination.  And while he claimed the melodies are similar, he admitted that they are

different.[2]   And because they are different, in linking the melodies to the "selection and arrangement" claim, Dr. Stewart defeats the selection and arrangement claim because the melodies are not identical nor virtually identical.

Thus, if Plaintiffs are claiming that the melodies standing alone support a claim of infringement, they have failed to make out a *prima facie* case as the melodies are indisputably different and no jury, properly instructed, could find the melodies substantially similar.  And if Plaintiffs are claiming that the melodies are part of their "selection and arrangement" claim, then they have also failed to prove a *prima facie* case as a combination including the different melodies cannot satisfy the test of identity or virtual identity and no jury properly instructed could find otherwise.

The law mandates that the jury must exclude unprotectable elements (chord progression, rhythmic anticipation and key signature) in order to assess whether, without regard to the unprotectable elements, the melodies, standing alone, are even actually similar and only if they are, whether they are substantially similar.  But once the unprotectable elements are excluded, what Plaintiffs contend are melodies, even with Dr. Stewart's improper alterations of TOL, are, instead, simply a series of pitches that are not "'rhythmically organized' so as to form an 'esthetic whole.'"  *Gray v. Hudson*, 28 F.4th 87, 99 (9th Cir. 2022) (quoting *Melody*, Webster's Third New International Dictionary (2002)).  As the Copyright Office has made clear, while a melody may be copyrightable, a series of pitch sequences that is only a component of a melody is not.  *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.4(C) (3d ed. 2021) (citing 37 C.F.R. § 202.1(a)).

_____

[2] In fact, as Dr. Stewart's cross examination established, the melodies are not at all similar, let alone substantially similar.  So even if Dr. Stewart were claiming that the melodies, standing alone, were sufficient for a claim of infringement, such claim has not been remotely proved.

Thus, whether on a stand-alone basis or as part of a "selection and arrangement" claim, Plaintiffs failed to prove a *prima facie* case involving the melodies.  They are not melodies but a series of individual pitches.  Even the pitches are different in TOL and LGO and are not substantially similar.  And because they are different, as part of a "selection and arrangement" they fail to satisfy the identical or virtually identical requirement.

**(ii)      Selection and Arrangement of Unprotectable Elements**

Plaintiffs' selection and arrangement claim has a higher evidentiary hurdle that they must satisfy.  There (1) must be numerous unprotectable elements, (2) that are arranged in a new, novel (unique or distinctive) manner, and (3) the unprotectable elements and their arrangement in both songs must be identical or nearly identical.  Selection and arrangement claims are entitled only to thin copyright protection so as to avoid restricting the use of commonplace musical building blocks in future works.  Plaintiffs failed to put forth sufficient evidence to submit any of the three elements to the jury, though failing on even a single element would entitle Defendants to judgment as a matter of law.

*First*, the law is clear that a combination of three unprotectable elements is not sufficiently numerous; there must be a combination of <u>at least</u> four or five unprotectable elements.  Plaintiffs fall short of that bar.

*Second*, because this Court's August 18, 2020 Order specifically barred Plaintiffs' expert from "characteriz[ing] Let's Get It On or a constituent element of it … as being '<u>unique</u>,' 'distinctive,' 'unusual' or the like" (ECF 138 at 1-2; emphasis added), even if Plaintiffs could satisfy both the first and third required elements (and they have not done so) they had no

permissible means of satisfying the second required element – and they failed to do so.[3]

*Third*, there is no question that the selection and arrangement of the unprotectable elements is not identical or virtually identical in the two works as each individual constituent element differs in the two works.  Dr. Stewart admitted that the second chord of the four-chord progression in LGO (a iii chord) is different from the second chord of the four-chord progression in TOL (a I/3 chord).  The rhythmic anticipation occurs on different beats and is expressed differently in the two works.  And while Dr. Stewart abandoned the key signature as an element of the claim, in any event, the key of LGO (E Flat major) is objectively and indisputably different from the key signature of TOL (D Flat major).  And if Dr. Stewart's swapping key for melodies were permitted, the melodies (pitches only really) are also different.  Plaintiffs failed to provide a legally sufficient evidentiary basis for a reasonable jury to find in their favor on any of the three elements of their selection and arrangement claim, entitling Defendants to judgment as a matter of law.

In sum, a reasonable jury following the law has no basis to arrive at a verdict that Defendants infringed LGO.  Plaintiffs' claims should not be submitted to the jury and this Court should bring this trial to a close by granting Defendants judgment as a matter of law.

## ARGUMENT

## I.   LEGAL STANDARDS

### A.   Rule 50(a): Judgment As A Matter Of Law

Pursuant to Rule 50(a), a party may move for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial."  Fed. R. Civ. P. 50(a).  "Rule 50(a) permits a

---

[3] Plaintiffs' attempt to anticipate the prior art evidence of Dr. Ferrara is both improper and futile. Even though Dr. Stewart tried to challenge Defendants' prior art evidence, he admitted that the combination of the chord progression and anticipation was not new and novel.  His attempt to add the supposed melodies (pitches only) to the "selection and arrangement" claim defeats the claim because the melodies are neither identical nor virtually identical.

district court to enter judgment as a matter of law against a party on an issue where there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *James v. City of Albany*, 833 F. App'x 346, 347 (2d Cir. 2020) (citation omitted); *accord Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1022 (2d Cir. 1995) (judgment as a matter of law is appropriate "where there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant") (citations & quotations omitted).[4]

## B.   Copyright Infringement Standard

Ordinarily, to prevail on a copyright infringement claim, a plaintiff must prove, among other things, that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the ***protectible elements*** of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation & quotation omitted; emphasis added). Here, however, as detailed below, significant additional requirements exist with respect to Plaintiffs' selection and arrangement infringement claim – requirements that Plaintiffs failed to prove.

### 1.   Scope of Copyright Protection

Before addressing the onerous requirements for selection and arrangement infringement claims and the standard for wrongful copying, it is important to delineate the limited scope of copyright protection for LGO.

As the Second Circuit has explained, "an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Boisson v. Banian, Ltd.*, 273 F.3d

---

[4] An earlier denial of summary judgment does not preclude a court from granting judgment as a matter of law. *See Williams v. County of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999).

262, 268 (2d Cir. 2001).  In that regard, "copyright protection does <u>not</u> extend to historical or contemporary facts, material traceable to common sources or in the public domain, and *scenes a faire*." *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) (emphasis added).

In the context of music, "[a]lthough there is generally a low bar for originality in copyright, given the limited number of notes and chords available to composers, and because common themes frequently reappear in various compositions, many if not most of the elements that appear in popular music are not individually protectable."  *Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020) (citations & quotations omitted), *aff'd sub nom. Gray v. Hudson*, 28 F. 4th 87 (9th Cir. 2022).  As the Second Circuit stated in *Darrell v. Joe Morris Music*, 113 F.2d 80, 80 (2d Cir. 1940): "It must be remembered that, while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear.  Recurrence is not therefore an inevitable badge of plagiarism."  And, despite "the famously low bar for originality" (*Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020), *cert. denied* 208 L. Ed. 2d 145 (Oct. 5, 2020), *reh'g denied*, 208 L. Ed. 2d 482 (Dec. 7, 2020)), "[t]rivial elements of compilation and arrangement … fall below the threshold of originality."  *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978); *accord Satava v. Lowry*, 323 F.3d 805, 811-12 (9th Cir. 2003).

As relevant here (and as this Court already has ruled), unprotectable musical building blocks, or *scenes-a-faire*, include, among other things, key signature, common chord progressions and rhythmic anticipation.  (ECF No. 138 at 2; ECF 93 at 9).  The Court's rulings are consistent with other courts, which have uniformly ruled that key, common harmonies, common melodies and common rhythms are unprotectable basic musical building blocks.  *See, e.g., McDonald v.*

8

*West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ("common rhythms, song structures, and harmonic progressions are not protected") (citations omitted); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011); *see also Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362, 367 (S.D.N.Y. 2017); *Jean v. Bug Music, Inc.*, No. 00-cv-4022 (DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (common melodic sequence unprotectable); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (key unprotectable); *Nwosuocha v. Glover*, No. 21-cv-04047 (VM), 2023 WL 2632158, at *7 (S.D.N.Y. Mar. 24, 2023) (lyrical theme "categorically ineligible for copyright protection").

Further, with respect to melodies, as the Ninth Circuit observed in *Gray*, the recent infringement case involving Katy Perry:

> [C]reating a melody involves more than writing down a sequence of pitches; at a minimum, that sequence must also be "**rhythmically organized**" so as to form an "esthetic whole." *Melody*, Webster's Third New International Dictionary (2002); *cf. Swirsky*, 376 F.3d at 848[5] (distinguishing between non-copyrightable "chord progressions" standing alone and a copyrightable "chorus," which involves these progressions "in combination with rhythm and pitch sequence[s]"). While an eight-note <u>melody</u> may be copyrightable, the abstract eight-note <u>pitch sequence</u> that is a component of the melody is not. *See* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313.4(C) (3d ed. 2021) (citing 37 C.F.R. § 202.1(a)) (advising that "short musical phrases consisting of only a few musical notes standing alone are not copyrightable . . . even if the phrase is novel or distinctive," and giving an eight-note pitch sequence as an example).

28 F.4th at 99-100 (underlined emphasis in original; bolded emphasis added; footnote omitted).

And, as the District Court explained in *Gray* in granting defendants' post-verdict motion for judgment as a matter of law (which the Ninth Circuit affirmed), "courts in musical copyright cases have a significant obligation … **to encourage others to build freely upon the ideas and information conveyed by a work**, and at the same time motivate creative activity, by <u>carefully</u>

---

[5] The full cite for *Swirsky* is *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).

limiting the scope of copyright protection to truly original expression only." *Gray*, 2020 WL 1275221, at *4 (emphasis added); *id.* at *5 (ruling that "[m]usical elements that are 'common or trite' – such as the 'use of a long-short-long rhythm,' **'chord progressions**,' certain 'tempos,' a 'recurring vocal phrase,' repeating 'hook phrases,' the alternating 'emphasis of strong and weak beats,' **'syncopation,'** the use of 'tritones,' or the use of 'basic musical devices in different manners,' – are, accordingly, not protectable") (emphasis added; citations, quotations & brackets omitted); *see also Skidmore*, 952 F.3d at 1069 (musical "building blocks belong in the public domain and cannot be exclusively appropriated by any particular author").[6]

Here, in regard to the LGO chord progression and rhythmic anticipation, this Court already has ruled "there is uncontradicted proof that those elements in this case are common musical techniques." (ECF 138 at 2). This Court also has ruled that key is unprotectable. (ECF 93 at 9).

### 2.   Legal Standard For Wrongful Copying

As the Second Circuit has cautioned, "copying and wrongful copying … are often confused." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014). Because "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection," "[c]opying [unprotected] aspects of a work is not wrongful, and thus not <u>all</u> copying is wrongful." *Id.* (emphasis in original); *see also Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66-67 (2d Cir. 2020). Thus, "the term 'substantial similarity' is properly reserved for similarity that exists between the <u>protected</u> elements of a work and another work." *Zalewski*, 754 F.3d at 101 (emphasis added).

Further, "when faced with works that have both protectible and unprotectible elements, [the] analysis must be <u>more discerning</u>." *Peter F. Gaito*, 602 F.3d at 66 (citations & quotations omitted; emphasis added). The Court "must attempt to extract the unprotectible elements," and

---

[6] Syncopation is synonymous with anticipation.

the question for the jury of whether wrongful copying exists turns on "<u>whether the protectible elements, standing alone, are substantially similar</u>." *Id.* (emphasis added; citations & quotations omitted); *see also McDonald*, 138 F. Supp. 3d at 455.  And, here, as detailed below, with respect to Plaintiffs' selection and arrangement infringement claim, the legal standard for wrongful copying is <u>not</u> merely substantial similarity; rather, Plaintiffs were required – but failed – to prove that TOL and LGO feature an identical or virtually identical combination of unprotected elements and that the combination is new and novel (meaning unique or distinctive, something Plaintiffs cannot show and have not shown).

### 3. Legal Standard For Infringement Claims Based On A Combination Of Unprotected Elements

Plaintiffs' Proposed Findings of Fact in the Pre-Trial Order predicated their selection and arrangement infringement on three unprotectable elements: LGO's commonplace chord progression, ubiquitous rhythmic anticipation and even more ubiquitous key signature.  (*See* ECF 194 at 3).  They have now abandoned the key signature and substituted certain supposed melodies.

To avoid restricting the use of commonplace musical building blocks in future works, only thin protection exists for a selection and arrangement of unprotected elements, and a higher, more rigorous standard of proof exists.  Specifically, Plaintiffs were required to prove: (1) a selection and arrangement of <u>numerous</u> elements in LGO combined together in a coherent fashion; (2) that LGO's combination of unprotected elements was "<u>new</u>" or "<u>novel</u>;" and (3) that the combination of elements in LGO is <u>identical</u> or <u>virtually identical</u> to the combination of elements in TOL.  *See Skidmore*, 952 F.3d 1051, 1074, 1075 & 1076 n.13; *Gray*, 2020 WL 1275221, at *3; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 & 350-51 (1991); *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136 (2d Cir. 2003).  They failed on all counts.

Copyright protection for a combination of unprotectable elements exists "'<u>only if</u> those

11

elements are <u>numerous</u> enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'"  *Gray*, 2020 WL 1275221, at *3 (emphasis added; quoting *Satava*, 323 F.3d 811).  Thus, "only the '<u>new</u> combination,' that is the '<u>novel</u> arrangement,' and not '<u>any</u> combination of unprotectable elements qualifies for copyright protection.'"  *Skidmore*, 952 F.3d at 1075 (quoting *Universal Pictures Co. v. Harry Lloyd Corp.*, 162 F.2d 354, 363 (9th Cir. 1947), *Satava*, 323 F.3d at 811) (emphasis in original; ellipsis omitted); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998) (affirming dismissal of infringement claim where unprotectable elements were used in prior works); *Threeline Imports, Inc. v. Vernikov*, No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749, at *13 (E.D.N.Y. Oct. 28, 2016); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995); *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018).

In addition to the numerosity and "new" and "novel" requirements, to prove wrongful copying where an infringement claim is based on "the selection, coordination and arrangement of otherwise uncopyrightable elements," the infringement analysis requires showing that the defendant used not only the same unprotectable elements but also "the <u>same</u> selection and arrangement" of those unprotectable elements.  *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) (emphasis added; citations, quotations and brackets omitted); *see also id.* ("copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is 'thin'").

## II.   DEFENDANTS SHOULD BE GRANTED JUDGMENT AS A MATTER OF LAW

Plaintiffs failed to prove that certain alleged melodies in TOL infringe certain melodies in LGO.  Plaintiffs also failed to prove that the specific combination of LGO's unprotectable chord progression, unprotectable harmonic rhythm and unprotectable key signature (E Flat major) – or

now the supposed melodies instead of the key signature – has been infringed by the combination of TOL's unprotectable – and different – chord progression, harmonic rhythm and key signature (D Flat major) – and different melodies.  As summarized immediately below and addressed in more detail in Section II.A and II.B, with respect to both paths, Plaintiffs failed to satisfy their burden of proof to establish a *prima facie* claim of infringement.

**"Melodies" on a Stand-alone basis:**

Plaintiffs claimed that certain melodies in TOL supposedly infringe certain melodies in LGO.  But recognizing that the melodies as reflected in the Deposit Copy are distinctly different from the melodies in TOL, Plaintiffs' expert instead plucked pitches from different places in the two songs, altered pitches in TOL and tried to compare pitches alone as supposedly reflecting melodies.  As the Ninth Circuit recognized in *Gray*, "[w]hile an eight-note *melody* may be copyrightable, the abstract eight-note *pitch sequence* that is a component of the melody is not."  28 F. 4th at 100 (emphasis in original; footnote & citations omitted).

Moreover, even setting aside that Dr. Stewart failed to compare the actual melodies in each work and that he manipulated pitch sequences to feign nonexistent similarities, the as-manipulated pitch sequences are not remotely similar, as is manifest upon listening to the as-manipulated melodies.  To the extent that Plaintiffs are still claiming the melodies on a stand-alone basis, Plaintiffs failed to establish a *prima facie* infringement claim with respect to the melodies and no jury, properly instructed, could find any similarity, let alone substantial similarity, in the "melodies."

**Selection and Arrangement Of Unprotectable Elements**

Plaintiffs also attempted to prove a selection and arrangement infringement claim regarding LGO's combination of an unprotectable chord progression, unprotectable harmonic rhythm and

unprotectable key signature (now apparently substituting "melodies" for key signature).  However, whether including the key signature or alleged melodies, Plaintiffs failed to establish a *prima facie* case of infringement for even a single element of the three required elements for their selection and arrangement claim.

   With respect to the first requirement, the trial evidence Plaintiffs presented on their direct case established that their selection and arrangement includes, at most, only three elements, which fails to satisfy the numerosity requirement as a matter of law.  With respect to the second requirement, because this Court's August 18, 2020 Order specifically barred Dr. Stewart from "characteriz[ing] Let's Get It On or a constituent element of it … as being 'unique,' 'distinctive,' 'unusual' or the like" (ECF 138 at 1-2), Plaintiffs failed to present – and could not permissibly present – any evidence that their selection and arrangement was "new" and "novel."  Indeed, Dr. Stewart admitted that with respect to the chord progression and anticipation, it was not "new and novel."  With respect to the third requirement, the trial evidence Plaintiffs presented establishes that the selection and arrangement of elements in TOL is not identical or virtually identical to the selection and arrangement of elements in LGO; on the contrary, they are distinctly and indisputably different.  Indeed, Dr. Stewart admitted that the chord progression was not identical or virtually identical and if one adds in the supposed melodies, it is undisputed that they too are not identical or virtually identical (and it is undisputed that the key signature is different as well).

   Ultimately, based on the evidence presented by Plaintiffs on their direct case, even before Defendants have presented any evidence, a reasonable jury does not have a legally sufficient basis to render a verdict for Plaintiffs, and Defendants should be granted judgment as a matter of law.

   **A.     No Reasonable, Properly Instructed Jury Could Find That The Melodies At Issue In TOL Infringe The Melodies At Issue In LGO**

   Dr. Stewart identified three melodies in LGO that supposedly were "copied" by TOL: (1)

14

the opening vocal melody of LGO and the opening vocal melody of TOL, (2) the vocal melody at the end of verse 4 of LGO and the vocal melody at the beginning of the chorus in TOL, and (3) the vocal melody at the beginning of verse 2 in LGO and the vocal melody at the interlude and the second verse of TOL.  Cross examination of Dr. Stewart established not only that these melodies are objectively and overwhelmingly different – the similarity being feigned – but that the snippets of pitches referenced by Dr. Stewart are divorced from any rhythmic organization and, hence, are not actual melodies but uncopyrightable pitch sequences (moreover, the pitch sequences appear in different parts of the two songs).

As an initial matter, Dr. Stewart conceded on cross-examination that he did not compare the rhythmic organization of the pitch sequences he placed at issue – and, thus, did not analyze actual melodies.  That, alone, is sufficient to demonstrate that no melodic similarities exist, and that the pitch sequence "similarities" Dr. Stewart identified in fact reflect the differences between the two songs.  They are not identical nor virtually identical.

Moreover, the trial evidence established that the pitch sequences are not remotely similar, much less substantially similar and are most certainly not identical or virtually identical.

Accordingly, Plaintiff failed to present evidence during their direct case from which a properly instructed jury could conclude that any melodies in TOL infringe any melodies in LGO. *See, e.g.*, *Pierce v. City of New York*, 805 F. App'x 70, 72 (2d Cir. 2020); *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122-24 (2d Cir. 1998); *see also Home Design Servs, Inc. v. Turner Heritage Homes, Inc.*, 101 F. Supp. 3d 1201, 1215 (N.D. Fla. 2015), *aff'd*, 825 F.3d 1314 (11th Cir. 2016) (granting judgment as a matter of law in infringement action because "no jury following the Court's instructions on the law could reasonably find the … designs substantially similar … ").

15

**B.     No Reasonable, Properly Instructed Jury Could Find**
**An Infringement Of The Selection And Arrangement At Issue**

    **1.     Plaintiffs Failed To Satisfy Their Burden Of Establishing**
**That The Selection And Arrangement Is Sufficiently Numerous**

In their Proposed Findings of Fact, Plaintiffs advanced a selection and arrangement claim based on LGO's combination of three unprotectable elements: (1) the chord progression; (2) the harmonic rhythm and (3) the key signature. While they abandoned the key signature – Dr. Stewart offering nothing other than his admissions that the key signatures are different and "irrelevant" – as a matter of law, the combination of three elements (and certainly not two) <u>cannot</u> satisfy the numerosity requirement and, thus, Plaintiffs failed to satisfy the first requirement for a selection and arrangement claim.[7]

On the subject of numerosity, the Court's holding in *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022), is instructive. There, the Court held that the "combination of two unprotectable elements is not sufficiently numerous … to constitute [an] original work entitled to copyright protection." *Id.*

That holding, as affirmed by the Ninth Circuit, is consistent with the overwhelming weight

---

[7] Prior to trial, Defendants filed a motion *in limine*, arguing that Plaintiffs should be barred, as a procedural matter, from including the key signature in their selection and arrangement because they belatedly attempted to inject the key signature into their claim on the eve of trial. The Court rejected that procedural argument. (ECF 243). Nevertheless, Defendants submit that key signature can <u>never</u> be considered as an element in a selection and arrangement claim because there are only twelve major keys, and it is standard musicological procedure to transpose the key of two songs for purposes of comparison – as both musicologists did in this case (which comports with Dr. Stewart's prior admission that he did <u>not</u> consider key in comparing the two works). Regardless, to the extent Plaintiffs' "selection and arrangement" claim includes the key signatures of the two songs, that itself defeats Plaintiffs' selection and arrangement claim because it is undisputed that the key signatures are different. The same is also true with respect to Plaintiffs belated attempt to inject melody into their selection and arrangement claim. As previously explained, Dr. Stewart has not presented melodies but only pitches and they are indisputably different.

of authority, which makes clear that there must be <u>at least</u> four or five distinct elements combined together in a coherent, purposeful fashion to satisfy the numerosity requirement. *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (combination of five elements qualified for protection); *Smith v. Weeknd*, No. 19-cv-2507 (PA), 2020 WL 4932074, at *7 (C.D. Cal. July 22, 2020), *aff'd sub nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) (combination of three elements did not qualify for protection); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1139 (D. Or. 2012) (combination of four elements qualified for protection).  In fact, even four or five elements may not satisfy the numerosity requirement; that is just the bare minimum. *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018) (combination of five elements did not qualify for protection); *Cottrill v. Spears*, No. 02-cv-3646 (BMS), 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004) (combination of four elements did not qualify for protection).

The Ninth Circuit's determination in *Beyond Blond* is further consistent with the dictionary definition of "numerous," which has been defined to mean "great in number, many," "very many, being or existing in great quantity" and "consisting of great numbers of units or individuals." *Merriam-Webster* identifies "few" as an antonym for "numerous" and correspondingly defines "few" to mean "a small number of units or individuals." *See* www.merriam-webster.com/dictionary/numerous#synonyms and www.merriam-webster.com/dictionary/few, last accessed November 3, 2022.  Two or even three elements are not "great in number" but instead are "few," the <u>opposite</u> of numerous.

Moreover, the two or three unprotectable elements at issue are essentially one element, which is the admittedly unremarkable manner in which the commonplace chord progression is performed, a form of syncopation (*i.e.*, anticipation) established by the trial evidence to have been

in use for hundreds of years.  And the key signature which is different in each work – and there only twelve major key signatures – adds nothing of substance as a purported element of Plaintiffs' selection and arrangement claim (on the contrary, it underscores its deficiency).  And as noted above, if the "melodies" are included, they are not melodies but pitches only and they are different.

These two or three commonplace musical building blocks simply cannot satisfy the numerosity requirement.  No one can or should be able to claim the exclusive right to a chord progression and the unremarkable and unprotectable rhythm at which it is performed.  The numerosity requirement provides that important limit on converting what is unprotectable into something protectable and removing it from the available building blocks for use by future composers.  Plaintiffs failed to present legally sufficient evidence to satisfy this requirement, and Defendants should be granted judgment as a matter of law.

### 2. Plaintiffs Admitted That The Selection And Arrangement Was Not "New" Or "Novel" To LGO

As noted above, a selection and arrangement claim also requires that the combination of numerous unprotectable elements be arranged in a new and novel fashion, *i.e.*, that no prior song combined these two or three elements together in the same manner.

On Plaintiffs' direct case, they provided zero evidence – because they had none – that the combination of the chord progression and harmonic rhythm (and even the key signature in LGO) was "new" and "novel" to LGO (and, in fact, it was not, as Dr. Stewart admitted that it preexisted LGO in at least several different songs).  Not only did he admit that the chord progression and anticipation pre-existed LGO, because this Court's August 18, 2020 Order barred Dr. Stewart from "characteriz[ing] Let's Get It On or a constituent element of it … as being 'unique,' 'distinctive,' 'unusual' or the like" (ECF 138 at 1-2), Plaintiffs could not offer any evidence to satisfy their burden of proving that the combination of unprotectable elements in LGO was unique, new, novel,

distinctive or the like.  As such, even if Plaintiffs could satisfy the numerosity requirement and the identical or virtually identical requirement, Defendants still should be granted judgment as a matter of law because Plaintiffs did not and could not satisfy their burden of proving that the selection and arrangement of unprotectable elements in LGO was "new" and "novel."

Based on this uncontroverted, incontrovertible evidence, no legally sufficient basis exists on which a properly instructed jury could find the combination at issue new and novel to LGO because there is no evidence in the record that it is new and novel.

### 3.    Plaintiffs Failed To Satisfy Their Burden Of Establishing That TOL Uses The "Same" Or "Virtually Identical" Selection And Arrangement

Plaintiffs also failed to prove that TOL used "the same selection and arrangement" of unprotectable elements as LGO.  *Odegard*, 398 F. Supp. 2d at 279 (emphasis added; citations, quotations and brackets omitted); *see also Gray*, 2020 WL 1275221, at *4 (holding that, for a selection and arrangement claim, "the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work in order to be substantially similar") (emphasis added; quoting *Skidmore*, 952 F.3d at 1076 n.13).

Dr. Stewart not only abandoned the key signature as an element of Plaintiffs' selection and arrangement claim, he also admitted that the key signatures are different.  He also admitted that the two commonplace, unprotectable elements – the chord progression and the harmonic rhythm – are also not expressed in the same or virtually identical manner.  And if the "melodies" are now part of Plaintiffs' selection and arrangement claim, they too are not identical or virtually identical. On the contrary, they are different.

Dr. Stewart admitted that LGO utilizes a I-iii-IV-V chord progression, which never appears in TOL.  Rather, segments of TOL utilize a I-I/3-IV-V chord progression.  The second chord in LGO (a iii chord) is a minor chord, whereas the second chord in TOL (a I/3 chord) is a major chord;

the distinction between a minor chord and a major chord is harmonically significant.  Dr. Stewart also admitted that TOL has multiple other chord progressions which nowhere appear in LGO.

As for the harmonic rhythm, the anticipation of chord changes – a rhythmic technique that no one can own – is also objectively different in each work.  The trial evidence established that LGO uses a four-bar chord progression with two chords in bar 1, the continuation of the second chord in bar 1 into bar 2, two chords in bar 3, and the continuation of the second chord in bar 3 into bar 4.  In contrast, TOL uses a two-bar chord progression, with two chords in bar 1 and two chords in bar 2.  In addition, whereas the second chord in LGO is on beat 4 and anticipates beat 1 of measure 2, the second chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 1.  Similarly, whereas the fourth chord in LGO is on beat 4 and anticipates beat 1 of measure 4, the fourth chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 2.  Further, the trial evidence established that the manner in which this technique is expressed is different in each composition.  Anticipation in LGO occurs before beat 1 while anticipation in TOL occurs before beat 3.  Additionally, each anticipated chord in LGO has a duration of one quarter note, while each anticipated chord in TOL has the duration of an eighth note.  Thus, to find identity between the harmonic rhythms, one would need to disregard the objective differences cited above and also cut in half the value of the notes and chords in LGO.

Because the chord progression and harmonic rhythm in LGO are each plainly different from those elements in TOL (and because the key signature in both songs are also different and the "melodies" are different), there is no legally sufficient evidentiary basis on which a properly instructed jury could conclude that TOL copies the "combination" of elements in LGO in an identical or virtually identical manner.  *See, e.g., Odegard*, 398 F. Supp. 2d at 279; *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996); *Sweet Gisele, Inc. v. True Rock CEO, LLC*,

No. 17-cv-5170 (FB) (RML), 2018 WL 4863650, at *8-9 (E.D.N.Y. Sept. 4, 2018), *report and recommendation adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018); *Gray*, 2020 WL 1275221; *Skidmore*, 952 at 1076 n.13.

## **CONCLUSION**

It is respectfully submitted that the Court should grant Defendants judgment as a matter of law under Rule 50(a).

Dated:  New York, New York
        April 27, 2023

PRYOR CASHMAN LLP

By:_____
        Donald S. Zakarin
        Ilene S. Farkas
        Andrew M. Goldsmith
        Brian M. Maida
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

21