# EXHIBIT B

## TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ....................................................................................... 1

   Introduction ........................................................................................................... 1

   Function of the Court ............................................................................................ 2

   Function of the Jury .............................................................................................. 3

   Sympathy or Prejudice ......................................................................................... 5

   Burden of Proof – Preponderance of the Evidence ............................................ 6

   Direct and Circumstantial Evidence .................................................................... 8

   Inferences .............................................................................................................. 9

   Witness Credibility ............................................................................................. 10

   Impeachment ....................................................................................................... 12

   Preparation of Witnesses .................................................................................... 13

   Stipulations ......................................................................................................... 14

   Depositions ......................................................................................................... 15

   Redacted Exhibits ............................................................................................... 16

   Publicity During Trial ........................................................................................ 17

II.  COPYRIGHT INFRINGEMENT ............................................................................. 18

   Definition and Nature of Copyrights ................................................................. 18

   Musical Composition and Sound Recordings .................................................... 20

      Deposit Copy ................................................................................................... 20

      Sound Recordings ............................................................................................ 22

   The Parties and Their Claims ............................................................................. 24

   Beneficial Interest .............................................................................................. 29

   Independent Creation .......................................................................................... 30

   Actual Copying ................................................................................................... 32

   Scope of Protection ............................................................................................ 36

   Wrongful Copying .............................................................................................. 39

   Melody ................................................................................................................ 42

Copyright Protection For a Selection and Arrangement
of Unprotectable Elements...........................................................................45

Expert Testimony of Musicologists ..........................................................51

I.      **<u>GENERAL INSTRUCTIONS</u>**

<u>**Introduction**</u>

Members of the jury, we have reached the final stage in these proceedings before your deliberations begin and the case is put in your hands.  This stage is called the Court's charge – or instructions – to the jury.

A jury charge does three basic things.  First, it explains certain rules and procedures generally applicable to a jury trial.  Second, it explains the applicable rules of law.  Third, it explains the procedures by which you should conduct your deliberations.

Before I turn to the charge itself, I want to thank you for your patience and attentiveness during the trial.  Having paid careful attention to the evidence as it was presented to you, you are now fully prepared to decide whether the Plaintiffs, who have the burden of persuading you, by what is known as a preponderance of the evidence, have proved their claim that the Defendants' song, *Thinking Out Loud* infringes protectable elements contained in the song *Let's Get It On*.  I want to reiterate to you, right at the outset of these instructions, that the recording of *Let's Get It On* is not involved in this case.  I will explain, in the course of these instructions, the difference between a copyright in a composition and a recording because it is only the composition *Let's Get It On*, as written on the sheet music registered with the United States Copyright Office, that is at issue in this case.

In the course of this charge, I will explain to you what is meant by a burden of proof by a preponderance of the evidence, what is meant by protectable elements and what is necessary for the Plaintiffs to prove a claim of infringement.  You will decide this case based on all of the facts that have been presented to you that I have allowed into evidence consistent with the law that I will explain to you in this charge.

1

## **Function of the Court**

You have heard all the evidence in the case as well as the final arguments of the lawyers.

The Court, in a jury trial, is not the trier of fact. That is your role. But the role of the Court is to explain the law under which you must evaluate the evidence that has been introduced at trial and presented to you. It is your duty to accept these instructions of law and to apply them to the facts admitted into evidence as you determine the facts to be.

The law that will frame your deliberations is as I state it to be in this charge. If any attorney has stated legal principles different from any that I state to you in my instructions, it is my instructions you must follow, as that is the law. You should not single out any one instruction as stating the law; rather you should consider my instructions as a whole while you deliberate. Regardless of whether or not you agree with the law, or any opinion that you may have as to what the law may be – or should be – it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.

**Function of the Jury**

Your duty is to decide this case in accordance with the law as I explain it to you based on the evidence that has been presented to you during this trial and which I have admitted into the record in this case. You are the sole and exclusive judges of the facts, and what you consider important and what you do not consider important. You and you alone will decide the weight you wish to give to any of the evidence presented. You will decide on the credibility of witnesses, who you believe has told you the truth about what they know, saw or heard and who you do not believe has told you the truth about what they know, saw or heard. As in any case, there has been conflicting evidence and testimony provided to you. You alone will resolve any conflicts that you find may exist, whether between the perceptions of different witnesses or even in the case of conflicts in the evidence provided by a single witness. And you have the right to draw reasonable inferences from the evidence, based on your common sense and experience.

The evidence before you consists of certain agreed upon facts, to which the parties have stipulated, the answers given by witnesses and the exhibits that were received in evidence. Exhibits marked for identification but not accepted into evidence may not be considered as evidence. Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded entirely.

In determining the facts, you must rely upon your own recollection of the evidence, although you can request the right to have any of the evidence, including any testimony, brought into the jury room for you to see or hear again. What the lawyers said in their opening statements is not evidence, nor is anything they have said in their closing arguments. During the course of this trial, the lawyers have made arguments and objections regarding evidence. Their arguments and their objections are not evidence. Also, the questions asked by the lawyers

3

are not evidence.  Only the answers of a witness, unless objected to and stricken from the record by me, are evidence that you may consider.

In that regard, any answer that I directed you to disregard or that I struck from the record is not evidence and should not be considered by you.  Nothing that I have said during trial and nothing in these instructions is evidence nor should you consider any rulings I have made as indicating any view on my part as to which of the parties, the Plaintiffs or the Defendants, has the better of this case.  You and you alone will make that determination in accordance with the law as I will give it to you and in accordance with your evaluation of the evidence that has been admitted.

**<u>Sympathy or Prejudice</u>**

Under your oath as jurors, you are not to be swayed by sympathy.  Nor are you to be swayed by any prejudice of any kind.  You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is:  Have the Plaintiffs proven their case against the Defendants by a preponderance of the evidence?  In my instructions that will follow, I will explain to you what the Plaintiffs have to prove to you to prevail on their claim of copyright infringement.

It is for you to decide whether or not the Plaintiffs have met this burden of proof on the basis of the evidence or lack of evidence and subject to the law as I charge you.  The Defendants do not have to prove to you that they did not copy *Let's Get It On*.  Rather, it is the Plaintiffs who must prove to you that Ed Sheeran and Amy Wadge, who is not a defendant in this case – there is no claim of infringement against her – copied from *Let's Get It On* in creating *Thinking Out Loud* and that such copying is what is known as "wrongful" under the law, which is a term I will explain to you shortly.  Sympathy for one side or the other is not part of the decision making process.  Only the law and the evidence presented to you should form your decision.

**Burden of Proof – Preponderance of the Evidence**

Shortly, I will provide detailed instructions regarding what the Plaintiffs must prove to you to succeed on their claim of copyright infringement.  But first, I want you to understand what is meant by burden of proof and preponderance of the evidence.

As I have said and as you know from having heard and seen all of the evidence, the Plaintiffs claim that the song *Thinking Out Loud*, written by Ed Sheeran and Amy Wadge, wrongfully copies certain elements in the song *Let's Get It On* which was written by Ed Townsend and Marvin Gaye, who are both deceased.  The Plaintiffs claim that *Thinking Out Loud* infringes or violates the copyright of *Let's Get It On*.  The Plaintiffs in this case are some, but not all, of the heirs of Ed Townsend.  The heirs of Marvin Gaye have not brought any infringement action and the legal owner of the copyright in *Let's Get It On*, music publishers Stone Diamond Music Corp and Jobete Music, also have not made any claim that Ed Sheeran or Amy Wadge copied any elements in *Let's Get It On* and have made no claims that *Thinking Out Loud* infringes or violates the copyright of *Let's Get It On*.

As is typical in non-criminal cases, which are called civil cases, such as this is, the Plaintiffs have the burden of proving their claims, and the Defendants do not have any burden of disproving the Plaintiffs' claims.  The Plaintiffs must prove every element of their claims to you by a preponderance of the evidence, and I will explain what that means shortly.

Two of the elements that the Plaintiffs must ordinarily prove in infringement actions are not disputed by the Defendants in this case.  First, the Defendants do not dispute that the song *Let's Get It On* is protected by a valid copyright.  However, the fact that the song *Let's Get It On* is protected by a copyright does not mean that all of the elements of that composition are protected by copyright.  That is a very important point in this case, and I will explain it in more detail in a few minutes.  Second, the Defendants do not dispute that Ed Sheeran and Amy Wadge

were aware of *Let's Get It On*, which is known as access.  However, no matter how well a defendant may have known an earlier song, it does not mean it was copied.

The Plaintiffs must prove to you by a preponderance of the evidence all of the other elements for a claim of infringement, as they are in dispute in this case, and I will explain what those elements are.  Unless the Plaintiffs prove all of these elements by a preponderance of the evidence, then the Plaintiffs will have failed to establish their claim and you should therefore return a verdict in favor of the Defendants.

Now, what do I mean by a preponderance of the evidence?  To establish a fact by a preponderance of the evidence means to prove that a fact is more likely true than not true.  It refers to the quality of the evidence and substantiality of the evidence, not to the number of witnesses or documents.  The common image is of the scale of justice, with two sides equally balanced.  For the Plaintiffs to satisfy their burden of proof by a preponderance of the evidence, the scale must be tipped in their direction by the weight of credible evidence.

If you find that it is equally probable that one side is right as it is that the other side is right, then the party having the burden of proof, here the Plaintiffs, have not carried their burden of proof and your decision would be in favor of the other party, the Defendants.  The party with the burden of proof must satisfy you that the evidence presented tilts the balance of the scale in its favor.

## **Direct and Circumstantial Evidence**

There are two types of evidence that you may consider in reaching your verdict – direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a disputed fact directly.  For example, where a witness testifies to what he or she saw, heard or did, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  To give a simple example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Then, assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Now, you cannot look outside of the courtroom, and you cannot see whether or not it is raining.  So, you have no direct evidence of that fact, but, on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining outside.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or nonexistence of some other fact, bearing in mind again that the Plaintiffs have the burden of proving their claims to you by a preponderance of the evidence.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that before finding a fact for or against any of the parties, the jury must be satisfied that the specific fact has been proved by the Plaintiffs by a preponderance of the evidence from all of the evidence of the case.

## Inferences

During the trial you may have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence or nonexistence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that you can draw from a fact or facts that you know to be true, or which have been proven to you to be true, in order to conclude that a disputed fact is also true.  There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The Plaintiffs may ask you to draw one set of inferences, while the Defendants may ask you to draw a different set of inferences.  It is for you, and you alone, to decide whether the evidence presented to you is sufficient for you to draw any inferences from that evidence and what those inferences reasonably are.

An inference is a deduction or conclusion which you, the jury, are permitted – but not required – to draw from the facts that have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

## Witness Credibility

You have had the opportunity to observe all the witnesses.  How do you evaluate the credibility or believability of those witnesses?  There is no magic formula for evaluating testimony.  You bring to this courtroom all of the experience and background of your lives in your everyday affairs.  You determine for yourselves every day, and in a multitude of settings and circumstances, the reliability of statements which are made to you by others.  The methods that you use in your everyday lives are the same methods that you must use in your deliberations.

Your decision whether or not to believe a witness may depend on how that witness impressed you.  Did the witness seem to be candid, frank and forthright?  Did the witness offer testimony about things that you do not believe he or she really knew, or did he or she personally know or experience the things that he or she testified about to you?  Did the witness appear evasive, as if he or she was trying to hide something?  How did the way in which the witness testified on direct examination compare with the way in which he or she testified on cross-examination?  Was the witness's testimony consistent or contradictory?

How much you choose to believe a witness, if at all, may be influenced by the witness's bias.  Does the witness have some incentive, loyalty or motive that might cause him or her to shade the truth; or does the witness have some bias, prejudice or hostility that may have caused the witness – consciously or not – to give you something other than a completely accurate account of the facts?  A witness who has a personal stake, financial or otherwise, in the outcome of the case is not necessarily unworthy of belief, but the personal interest of a witness is a factor or possible motive that you may consider in determining the weight and credibility to be given to his or her testimony, if any.  Again, I emphasize that, just because a witness has an interest in the outcome of this litigation, does not render him or her unworthy of your belief.  As you do in your daily lives, the personal interest of a witness in the outcome of this case is one factor, among other

factors, that you may consider in determining what weight and credibility to attach to his or her testimony.

You are not required to accept testimony even though the testimony is uncontradicted, and the witness's testimony is not challenged.  You may decide, because of the witness's bearing or demeanor, or because of the inherent improbability of the testimony, or for other reasons, that the testimony is not worthy of belief.

If you find that a witness willfully testified falsely as to any topic, you have the right to reject the testimony of that witness in its entirety.  On the other hand, even if you find that a witness has testified falsely or inaccurately about one matter, you may reject as false or inaccurate that portion of his or her testimony and accept as true any other portion of his or her testimony.  It is for you to determine how much of the witness's testimony, if any, you wish to believe.

In essence, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward and accurate.  In deciding the question of credibility, remember that you should use your common sense, your good judgment, and your experience.

**<u>Impeachment</u>**

During the course of this trial, you may have heard evidence that at some earlier time, a witness has said or done something, or failed to say or do something, which an attorney argues is inconsistent with the witness's trial testimony. We call such evidence "impeachment evidence."

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining the facts. Evidence of a prior inconsistent statement, impeachment evidence, has a more limited use. It is offered for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who one side or the other claims has contradicted himself or herself with prior statements or actions. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether you believe that there really is a difference in the witness's testimony, whether the witness may have simply forgotten something from the past and made an innocent mistake or whether the witness purposely made a false statement. If you find that there is any inconsistency in a witness's testimony, you may also consider whether the inconsistency concerns an important fact, or whether it had to do with a small detail, whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether what is claimed to be a prior inconsistent statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

12

## **Preparation of Witnesses**

You may have heard evidence during the trial that a witness discussed the facts of the case and his or her testimony with his or her lawyers before the witness appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing unusual or improper about a witness meeting with his or her lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness from their side without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion, but it is important for you to know that there is nothing unusual or improper about a witness meeting with the attorneys in this case.

**Stipulations**

In this case you have heard evidence either in the form of stipulations or that has been stipulated to by the parties.  There are several types of stipulations that are applicable.  One stipulation is an agreement among the parties that, if called, a witness would have given certain testimony and that testimony is admitted into evidence.  A second stipulation can provide for the admission into evidence of a documentary exhibit, and then the information contained in that document becomes part of the evidence for you to consider.  A third stipulation is a fact that is agreed to be true.

Stipulations are helpful because they simplify the trial process by allowing evidence to be introduced by agreement of the parties.  Stipulated evidence is as important as any other evidence. All that the stipulation means is that the parties agree that the witness would have testified as the parties have stipulated, or that the parties agree that the documentary evidence stipulated to is truthful and accurate.  As with all evidence, it remains up to you to give the stipulated testimony and the stipulated documentary exhibit whatever weight you think it should have.  With respect to stipulations of fact, you must accept the facts as true.  The significance of a stipulated fact or the lack of significance will be determined solely by you.

**<u>Depositions</u>**

The lawyers have read portions of deposition testimony to you.  Depositions are testimony taken under oath before trial.  Deposition testimony can be used in several ways.  One way is where a witness is no longer available, either because of illness or death or because they simply are not available.  Subject to any objections made by counsel that I have sustained, such sworn deposition testimony may be considered by you as if it were given in this Courtroom in front of you. Deposition testimony can also be used for impeachment, which as I have discussed before, is to show that a witness's testimony at a prior time is different than his or her testimony here at trial. A witness's testimony at his or her deposition can be used to compare it to their testimony to you in this courtroom.  To the extent that you believe that such deposition testimony is inconsistent with the witness's testimony in this courtroom, it is up to you how you evaluate the credibility of the witness.

**<u>Redacted Exhibits</u>**

Some exhibits are redacted.  "Redacted" simply means that part of the document was removed, blacked out or whited out.  The parties have many reasons for redacting information from an exhibit, and it is entirely proper for information to be redacted.  You need not be concerned with why an exhibit has been redacted and should instead only focus on the portion of the exhibit that is provided to you and which has been admitted into evidence.

16

## **Publicity During Trial**

As you know, this trial has involved well-known people and there has been some press attention paid to this trial.  You must ignore anything that has been written or broadcast about this case.  You should not read, watch or listen to any news media account or commentary about the case or anything to do with it.  You, not the press or media, have heard and seen all of the evidence in this case, and you, not the press or media, are in the position to determine this case based solely and exclusively on the evidence admitted in this case and my instructions as to the law.  Anything that may be said in the press, on the Internet, on social media, on television or otherwise outside the courtroom about this case is not evidence and should not be considered at all by you.

## II.   COPYRIGHT INFRINGEMENT

### Definition and Nature of Copyrights

A copyright is a type of protection provided by the law to authors or creators of certain original works, including musical compositions.  You are probably accustomed to hearing the word "author" used for writers.  But under the copyright law, any creator of an original work is referred to as an author, including composers or songwriters who write musical compositions and lyricists who write lyrics – the words – for musical compositions.

As I will explain, a copyright does not protect all musical compositions..  More importantly for this case, the fact that a composition as a whole may be copyrighted does not mean that every musical element included in the composition is itself individually protected under the law.  That is because musical compositions are very often built on, and therefore contain, commonplace musical building blocks as elements of the full composition.  These commonplace musical elements cannot be exclusively owned by anyone, but are instead freely available to all authors to use and build upon, which means they are not protectable under the law.  So some musical elements in two songs which may cause the two songs to sound similar may be due to both songs using the same or similar unprotectable musical building blocks.

As I will explain, commonplace musical building blocks include things like the key of a song, its tempo, its chord progressions and rhythmic techniques such as syncopation or anticipation.  I have already ruled that these commonplace musical building blocks are unprotectable.  The experts have explained all of these basic musical building blocks to you.

Copyright law protects only against wrongful, unauthorized copying of an author's original and protectable expression in a musical composition.  It does not protect against the use of any unprotectable elements because no author can exclusively own unprotectable elements, not Ed

18

Townsend and Marvin Gaye, the authors of *Let's Get It On*, and not Ed Sheeran and Amy Wadge, the authors of *Thinking Out Loud*.  Just as Ed Townsend was free to use unprotectable elements, so too were Ed Sheeran and Amy Wadge.

**SOURCE:**  *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014); *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001); *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986); *Darrell v. Joe Morris Music*, 113 F.2d 80 (2d Cir. 1940); https://www.copyright.gov/circs/circ01.pdf.

## Musical Compositions and Sound Recordings

As I mentioned to you at the very beginning of these instructions, there is a difference between a copyright in a song and a recording of that song.  There are separate copyrights in a musical composition and in the various sound recordings that are made of that composition.  A musical composition is the underlying song that consists of music – melody, rhythm, harmony and structure expressed in a system of musical notation – and usually with accompanying words or lyrics.  A musical composition is <u>not</u> a recording of the composition.  A recording is someone's recorded performance of a musical composition.  In this case, there is no claim of infringement of any of the commercial recordings of *Let's Get It On*.  In fact, the Plaintiffs do not own or have any copyright interest in any recording of *Let's Get It On*.  I will now explain the difference between the copyright in a musical composition and recordings of that composition.

### Deposit Copy

The musical composition *Let's Get It On* was registered for copyright protection in 1973.  At the time, the 1909 Copyright Act was in place and it required that sheet music be filed to obtain a copyright.  And the copyright was limited to what is actually written in the sheet music registered or deposited with the United States Copyright Office.  This sheet music is known as the "Deposit Copy" of the composition, and it defines the outside limits of copyright protection for the composition.

I say the outside limits because, as I already said to you, many elements, such as chord progressions or key or syncopation, that may be written down in the Deposit Copy, are not individually protectable because they are basic building blocks of music that can be freely used by anyone.   In fact, as I mentioned and will explain shortly, I have already ruled that such things as the key of the song, its chord progression and a form of syncopation known as anticipation that are

written in the Deposit Copy of *Let's Get It On* are commonplace musical building blocks that are not protectable.

While the copyright in the sheet music registered with the Copyright Office under the 1909 Copyright Act is limited to, at most, what is written in the Deposit Copy, a musician can take a musical composition and then, on a recording, perform that composition in a number of ways that add or subtract musical elements from what is literally written down in the Deposit Copy.  For instance, a musician may add drums or a bass or vocal embellishments that do not appear in the Deposit Copy.  Different recordings by different singers of a composition may be, and often are, different from each other, and each recording may contain different elements or embellishments that are not written down in the Deposit Copy.  Any of those elements or embellishments in the recordings that are not written down in the Deposit Copy are not part of the copyright in the musical composition.  Again, at most, the copyright only protects what is written down in the Deposit Copy and, then, only those elements that are protectable.

Because recordings are different works under copyright and often contain musical elements that are not written in the Deposit Copy, and because the recordings of *Let's Get It On* are not at issue in this case, I have not permitted any of the commercial recordings of *Let's Get It On* to be played during trial.  In fact, I have already determined that those commercial recordings contain musical elements that are not a part of the copyright the musical composition of *Let's Get It On* at issue in this case, and have excluded them from this case.  So, if any of you are familiar with any of the commercial recordings of *Let's Get It On* or have any recollection of them, please put them out of your mind, as they are irrelevant to your decision in this case.

Instead, what you have heard during trial are recordings which depict only what is actually contained in the *Let's Get It On* Deposit Copy.  I have allowed these recordings to be played

because they accurately reflect what is literally expressed in the Deposit Copy, no more and no less.  Again, because I have already ruled that certain musical elements in the Deposit Copy are not protectable, even the recordings of the *Let's Get It On* Deposit Copy that have been played for you contain musical elements that are not protected by copyright and, as I will explain, you have to eliminate these unprotectable elements from your consideration in this case.

To more clearly explain the difference between a musical composition and a sound recording, it may be helpful to give you an example of how recordings of a musical composition can be different than the musical composition itself.

**<u>Sound Recordings</u>**

John Lennon and Paul McCartney authored the musical composition *With A Little Help From My Friends*, and The Beatles recorded that song on their album *Sgt. Pepper's Lonely Hearts Club Band*.  The sheet music registered with the Copyright Office – the Deposit Copy - represents the musical composition.  However, the recorded performance of the song by The Beatles that is on the *Sgt. Pepper's* album may have musical elements that were added during production of the recording and are not written down in the composition's Deposit Copy.  Those added elements in the recording are not part of the copyright in the musical composition.

After the Beatles recorded *With A Little Help From My Friends*, Joe Cocker recorded his own, very successful version and you may have heard that recording.  If you have heard the Joe Cocker version, you know that it is very different from the Beatles recording.  Like the Beatles recording, the Cocker recording contains musical elements that are included in the Deposit Copy, but it also includes musical elements that are not in the Deposit Copy and are therefore not part of the musical composition's copyright.  These recordings are not only different from each other but

they are also different than the copyright in the Lennon and McCartney musical composition, which again, is at most, only what is in the Deposit Copy.

Finally, with respect to the Deposit Copy, what is at issue in this case is the music, not the lyrics, of *Let's Get It On*.  There is no claim that the lyrics of *Thinking Out Loud* copy any of the lyrics of *Let's Get It On*.

**SOURCE:**  *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588 (S.D.N.Y. 2013); *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018); *Gray v. Perry*, No. 15-cv-5642 (CAS), Dkt. No. 441 at Jury Instruction No. 26 (C.D. Cal. Jul. 25, 2019); *Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2003); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016); *Griffin v. Sheeran*, No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020); *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

## <u>The Parties and Their Claims</u>

The Plaintiffs have sued the Defendants for copyright infringement, alleging that the musical composition *Thinking Out Loud* infringes rights the Plaintiffs claim are protected by the copyright in the musical composition *Let's Get It On*.

To prevail on their claim of copyright infringement, the Plaintiffs must prove, by a preponderance of the evidence, four distinct elements.  The four principal elements that the Plaintiffs must prove are as follows:

First, the legal owners of the copyright in *Let's Get It On*, Stone Diamond Music Corp. and Jobete Music Co. Inc., do not claim that the copyright in *Let's Get It On* has been infringed by *Thinking Out Loud*.  Plaintiffs would therefore normally have to prove that they have what is known as a beneficial interest in the copyright in the musical composition *Let's Get It On*.  A beneficial interest means simply that Plaintiffs are entitled to a share of the income earned by *Let's Get It On*.  Defendants have stipulated that Plaintiffs, who are paid a share of the royalties earned by *Let's Get It On*, have a beneficial interest, so in this case, you do not need to determine that issue.

Second, Plaintiffs must also prove that there exists a valid copyright in the musical composition *Let's Get It On*.  In this case, the Defendants have also stipulated that there is a valid copyright in the *Let's Get It On* musical composition as a whole.  You therefore do not need to consider whether there is a valid copyright in the *Let's Get It On* musical composition.  Again, as I have instructed you, and as I will explain in more detail, even though *Let's Get It On*, as a whole, has a valid copyright, that does not mean that every musical element of *Let's Get It On* is protected by copyright.  I have already ruled that the key, chord progression and the harmonic rhythm, known as anticipation, of *Let's Get It On* are not individually protected by copyright.

24

Third, the Plaintiffs must prove by a preponderance of the evidence that Ed Sheeran and Amy Wadge, in authoring *Thinking Out Loud*, actually copied from *Let's Get It On*. Actual copying means what it sounds like – it means that, in creating his or her work, the defendant actually copied from the plaintiff's work. Actually copying is not the same thing as wrongful copying, which is a further element that the Plaintiffs must prove and which I will explain to you shortly.

Because the distinction between actual copying and wrongful copying is important, and I do not want you to confuse the two different requirements, I want to emphasize the difference between them. Simply put, one may actually copy another work, but if they are not copying anything that is protectable or copyrightable, then no infringement claim can exist because any such copying is not wrongful. And even if a defendant actually copies an earlier song, unless the second song is substantially similar to protectable elements of the earlier song, actual copying is not wrongful copying. I will explain these concepts in more detail shortly.

As an example of the difference between actual copying and wrongful copying, while a musical composition as a whole may be copyrighted, if a later author copies unprotectable elements in an earlier song or elements that as a matter of law are not copyrightable, it is not wrongful to do so. In fact, copyright law does not prevent a later author from creating a musical composition that may even be identical to an earlier musical composition, so long as the later author independently created the later musical composition, it is not an infringement of the earlier composition.

Fourth, even if you find that Ed Sheeran and Amy Wadge did not independently create *Thinking Out Loud*, as I will explain that term to you, and even if you also find that they actually copied *Let's Get It On* as it is expressed in the Deposit Copy – and I am not suggesting that they

did so – that does not satisfy Plaintiffs' burden of proving their claim of infringement to you.  That is because, as I have said, actual copying is not wrongful copying, and the Plaintiffs have to prove not only that Ed Sheeran and Amy Wadge actually copied *Let's Get It On* as expressed in the Deposit Copy, but they must also prove that such copying is wrongful under the law.

To prove wrongful copying, the Plaintiffs must prove, by a preponderance of the evidence, that *Thinking Out Loud* is substantially similar to legally protectable elements in *Let's Get It On*. I will explain what I mean by substantial similarity shortly, but I also want to alert you that for one of Plaintiffs' claims, which is known as a "selection and arrangement" claim, and I will explain what a "selection and arrangement" claim is shortly, Plaintiffs have to prove more than substantial similarity for such a claim.  They have to prove three requirements for such a claim, and one of them is identity or virtual identity of the combined elements at issue in the two works, not substantial similarity.

In this case, as I mentioned, I have already ruled that certain musical elements contained in the Deposit Copy of *Let's Get It On* are not protectable: specifically, the key of the songs, the chord progressions in both songs and the harmonic rhythm at which the chords are played, which is called anticipation or syncopation.  Thus, in this case, the distinction between elements that are protectable and those that are unprotectable and what elements of *Let's Get It On* the Plaintiffs allege have been copied is of great importance.  That is because, if Ed Sheeran and Amy Wadge actually copied musical elements that are unprotectable – and I am not suggesting that they did so, that is for you to determine – that would not be wrongful because commonplace musical elements, such as key, chord progressions, and harmonic rhythm, that are used in many songs, are unprotectable because they are available to all songwriters to use in creating new songs, and no songwriter or plaintiff can claim such elements as his or her own.

26

Finally, I mentioned independent creation.  While the Plaintiffs have the burden of proving both actual copying and wrongful copying by a preponderance of the evidence, Ed Sheeran and Amy Wadge, the authors of *Thinking Out Loud*, have the burden of proving to you that they independently created *Thinking Out Loud*.  If you find that Ed Sheeran and Amy Wadge independently created *Thinking Out Loud*, then that will end your inquiry, as they could not have actually copied or wrongfully copied *Let's Get It On* if they independently created *Thinking Out Loud*.

I will explain independent creation, actual copying, wrongful copying and "selection and arrangement" claims in more detail shortly.  However, I want to be clear on this issue of independent creation.  It is not necessary for Ed Sheeran and Amy Wadge to prove to you that they independently created *Thinking Out Loud* for you to return a verdict in their favor that they did not infringe *Let's Get It On*.  If they do prove independent creation, then of course there can be no infringement.  But even if they do not prove independent creation, the Plaintiffs still have to prove to you both that Ed Sheeran and Amy Wadge  actually copied and also that they wrongfully copied protectable elements in *Let's Get It On* in creating *Thinking Out Loud*.  If the Plaintiffs do not prove both of those requirements to you, by a preponderance of the evidence, then they will not have satisfied their burden of proof.

**SOURCE:**  *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010); *Moose Toys Pty LTD v. Addition*, No. 18-cv-9262 (AJN), 2020 WL 2832767 (S.D.N.Y. May 31, 2020); *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001);

*Walker v. Time Life Films, Inc.*, 615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986); *Darrell v. Joe Morris Music*, 113 F.2d 80 (2d Cir. 1940).

**Beneficial Interest**

As I have said, the Defendants have stipulated that the Plaintiffs have a 22.22% beneficial interest in *Let's Get It On*, which comes from their fractional interest in Ed Townsend's share of the song (who was credited as a two-thirds author of *Let's Get it On*).  That means they have the right to receive 22.22% of the royalties generated from the commercial use of *Let's Get It On*. Therefore, it is undisputed that the Plaintiffs have the right to sue for infringement, and their claim of infringement is limited to their 22.22% interest in *Let's Get It On.*

**SOURCE:**  *Jones v. Virgin Records, Ltd.*, 643 F. Supp. 1153 (S.D.N.Y. 1986); *Cortner v. Israel*, 732 F.2d 267 (2d Cir. 1984); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1144 (9th Cir. 2003) ("Beneficial owners include, 'for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.'") (quoting H.R. Rep. No. 94–1476, at 159.)

### **Independent Creation**

As I have said, while Ed Sheeran and Amy Wadge are not required to disprove copyright infringement, because it is the Plaintiffs' burden of proving infringement to you by a preponderance of the evidence, Ed Sheeran and Amy Wadge were entitled to present you with evidence showing that they did not infringe *Let's Get It On* by proving to you, by a preponderance of the evidence, that they independently created *Thinking Out Loud*.  If Ed Sheeran and Amy Wadge proved to you that they independently created *Thinking Out Loud*, then you must find for the Defendants.

The evidence that you can consider in determining whether *Thinking Out Loud* was independently created includes, but is not limited to: (1) the testimony and evidence of Ed Sheeran and Amy Wadge regarding how they wrote *Thinking Out Loud*; (2) the testimony and evidence regarding other songs created by Ed Sheeran and/or Amy Wadge prior to *Thinking Out Loud* that contain similar elements to the ones at issue in the case; (3) the testimony and evidence regarding other songs written prior to *Thinking Out Loud* by other authors that contain similar elements to the ones at issue in this case; (4) testimony and evidence that the similarities claimed by the Plaintiffs include or are focused on commonplace musical elements – the chord progressions and anticipation – that I already have ruled are not protectable; (5) testimony and evidence that the "melodies" that Plaintiffs claim are similar are actually different or not even melodies at all but only sequences of pitches that are not copyrightable; and (6) testimony and evidence as to the differences between *Let's Get It On* and *Thinking Out Loud* as a whole.

If you find, by a preponderance of the evidence, that Ed Sheeran and Amy Wadge independently created *Thinking Out Loud*, then your inquiry ends there, as there can be no

infringement if you conclude that Ed Sheeran and Amy Wadge independently created *Thinking Out Loud*.


**SOURCE:**  *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498 (2d Cir. 1982); *Novak v. Nat'l Broad. Co.*, 752 F. Supp. 164 (S.D.N.Y. 1990); *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir. 1991); *Fox-Rich Textiles v. Malden Mills Industries, Inc.*, 89-cv-0773 (RO), 1990 WL 235640 (S.D.N.Y. Aug. 2, 1990); *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y. 2000); *Cox v. Abrams*, No. 93-cv-6899 (RJW), 1997 WL 251532 (S.D.N.Y. May 14, 1997); *Cartier v. Jackson*, 59 F.3d 1046 (10th Cir. 1995); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000). *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718 (9th Cir. 1976).

**Actual Copying**

Now, I will explain to you what is meant by actual copying.  As I have said, the Defendants do not have to disprove infringement, as the Plaintiffs have the burden of proving infringement by a preponderance of the evidence.  Thus, even if you find that Ed Sheeran and Amy Wadge did not independently create *Thinking Out Loud*, Plaintiffs must still prove that Ed Sheeran and Amy Wadge, in authoring the composition *Thinking Out Loud*, actually copied from the composition *Let's Get It On*.  And even if you find that Ed Sheeran and Amy Wadge <u>actually</u> copied elements contained in *Let's Get It On*, that is not <u>wrongful</u> copying, which is a separate element that the Plaintiffs also have to prove.  However, if you conclude that Ed Sheeran and Amy Wadge did not actually copy *Let's Get It On* in writing *Thinking Out Loud*, that is the end of your inquiry, and you must find for Defendants.

Under the law, no matter how similar two compositions may be or may sound to you, unless the Plaintiffs have proved to your satisfaction, by a preponderance of the evidence, that Ed Sheeran and Amy Wadge actually copied *Thinking Out Loud* from *Let's Get It On*, there can be no infringement because absent actual copying, there can be no wrongful copying.  Similar musical sounds or elements may be the result of independent creation or may be because both songs use commonplace musical elements that are basic musical building blocks used by many composers in many songs and are not protected by copyright and those elements may cause the songs to sound similar to one another.  In this regard, you may consider that in the field of popular music, there are only a limited number of combinations of musical notes which are pleasing to the ear.

In this case, *Let's Get It On*, although written some 50 years ago, is a well-known song, and Ed Sheeran and Amy Wadge have not disputed that they were aware of its existence.  But being aware of an earlier composition does not mean that it was copied.  It merely means that

copying was possible because a person cannot possibly copy a song that he or she has never heard. Because access is not in dispute, but because Ed Sheeran and Amy Wadge deny that they copied *Let's Get It On* in writing *Thinking Out Loud*, the evidence in this case addressing actual copying has focused on – and you should focus on – what the claimed similarities are between the two compositions, if any, and how unique or unusual those claimed similarities are, and the circumstances of how Ed Sheeran and Amy Wadge created *Thinking Out Loud*.

It is therefore important for you to focus on whether the similarities are of a kind which would be likely to occur in the absence of actual copying.  For example, where the similarities between the two compositions are basic musical building blocks that exist in other compositions, you may decide that the evidence points to the fact that Ed Sheeran and Amy Wadge did not actually copy *Let's Get It On* but simply drew upon some of the same commonplace musical building blocks that preexisted *Let's Get It On* or which were used in other songs before *Thinking Out Loud*, and which the authors of *Let's Get It On* also may have drawn upon, as they and all other authors were and are free to do.

So, in determining whether Ed Sheeran and Amy Wadge actually copied, you may consider whether the claimed similarities between *Thinking Out Loud* and *Let's Get It On* are of unique or unusual elements that are in *Let's Get It On* and not found elsewhere, or whether the claimed similarities are of commonplace, basic musical building blocks that exist in other songs.

Turning to the specifics of this case, if you find that the musical elements that the Plaintiffs claim are similar are primarily the chord progression and harmonic rhythm, and some pitch sequences or claimed melodies, I have already ruled that the chord progressions and harmonic rhythm known as anticipation are commonplace and unprotectable.  Therefore, such a finding may lead you to conclude that Ed Sheeran and Amy Wadge did not actually copy *Let's Get It On* but

simply drew upon commonly used musical building blocks.  Further, as I will explain shortly, pitch sequences are not melodies and are not in themselves copyrightable.  Here, it is undisputed that the pitch sequences of the two songs are different.  The fact that they are different may also lead you to conclude that Ed Sheeran and Amy Wadge did not actually copy *Let's Get It On*.

In contrast, if the Plaintiffs prove that the musical elements in *Let's Get It On* that they claim are similar are unique or unusual, then that may lead you to conclude that Ed Sheeran and Amy Wadge did actually copy.  As I have said, what the Plaintiffs claim has been copied from *Let's Get It On* is important in this case because, as I have ruled, several musical elements in *Let's Get It On* are not protectable because they are commonplace.

Ultimately, in deciding whether the Plaintiffs have proved actual copying, you may consider any relevant circumstance from which you may draw an inference that it is more or less likely than not whether actual copying has taken place.  Again, I emphasize that actual copying is not the same thing as wrongful copying.  Unless you find that there has been actual copying, there is no need for you to consider whether any copying is wrongful, which is a separate legal requirement that the Plaintiffs must satisfy by a preponderance of the evidence and which I will explain shortly.  If you find there is no actual copying, your inquiry is done and you must find for Defendants.

**SOURCE:**  *Penguin Random H. LLC v. Colting*, 270 F. Supp. 3d 736 (S.D.N.Y. 2017); *Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Intern. Corp.*, 354 F.3d 112 (2d Cir. 2003); *Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988); *Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996); *Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987); *Tracy v. Skate Key, Inc.*, No. 86-cv-3439 (MBM),

1990 WL 9855 (S.D.N.Y. Feb. 2, 1990); *Cartier v. Jackson*, 59 F.3d 1046 (10th Cir. 1995); *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976).

**Scope of Protection**

As I have mentioned, copyright law only provides protection to protectable elements in a plaintiff's work and not to commonplace basic musical building blocks that can be found in many songs.  Copyright law protects only specific expression, not musical themes, or ideas or "vibes" or a type or genre of music.  Copyright law also does not protect any subject matter which is in the public domain.  For example, all of the music written by Mozart, Bach and Beethoven, their melodies, chord progressions and rhythms, having been authored hundreds of years ago, is in the public domain.  That means that any songwriter today can freely use any and all of the musical elements contained in the music written by these great masters because it is freely available to all of us.  Also, as I previously explained, copyright protection is further limited to no more than what is expressly contained in the Deposit Copy of the work.

As I have explained to you, I have already ruled that three of the elements that the Plaintiffs had claimed are similar, the key, the chord progression and the harmonic rhythmic technique of anticipation that are used in *Let's Get It On*, are commonplace musical building blocks that are unprotectable.  Since Plaintiffs abandoned their claim that the keys of the two songs were similar during the testimony of their expert, Dr. Stewart, you need not consider that.  You must also screen out from your consideration the two remaining elements: the chord progression and anticipation.

But there are other commonplace, basic musical building blocks that are also not protectable, including a composition's meter, tempo, common song structures and even common or short musical phrases consisting of only a few musical notes; these are also not protectable.  Those terms have been explained to you by the expert musicologists of the Plaintiffs and the Defendants.  To the extent that the Plaintiffs have claimed that those elements are also similar in

the two songs, those elements too must be screened out of your consideration because they are also basic musical building blocks that are not protectable and are freely available to all authors to use.

Copyright protection also does not extend to musical styles, musical methods, or musical techniques.  By style, I mean the type of music and the manner of performance.  For example, reggae is a type or style of music, and it's generally performed in a certain style and emphasizes the sound of particular musical instruments.  You are probably familiar with many other common styles of music such as jazz, country, "pop" music, soul music, hip hop, rock 'n' roll and rhythm and blues.  Every songwriter has the right to compose and arrange a composition in any of these styles, and every performer has the right to perform in any of these styles.  As I have said, a style or genre of music cannot be owned by any author but is freely available to all.

By methods and techniques, I mean methods or techniques used to play an instrument or to sing or to otherwise produce a musical sound.  For example, you may be familiar with the technique of "finger-picking" a guitar, or "slapping" a bass-guitar; you may be familiar with a singing technique called "scatting" where the vocalist imitates the sound of an instrument or "rapping."  All of these methods or musical techniques are unprotectable and are freely available to all to use.

**SOURCE:**  *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010); *McDonald v. West*, 138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016); *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir. 1984); *Tisi v. Patrick*, 97 F. Supp. 2d 539 (S.D.N.Y. 2000); *Jean v. Bug Music, Inc.*, No. 00-cv-4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002); *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Gray v. Perry*, No. 15-cv-5642 (CAS),

Dkt. No. 441 at Jury Instruction No. 23 (C.D. Cal. Jul. 25, 2019); *Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020), *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022); *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001); *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986); *Darrell v. Joe Morris Music*, 113 F.2d 80 (2d Cir. 1940); U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.4(C) (3d ed. 2021) (citing 37 C.F.R. § 202.1(a)).

**Wrongful Copying**

If you find that Ed Sheeran and Amy Wadge did not independently create *Thinking Out Loud*, or if you find that any similarities between *Thinking Out Loud* and *Let's Get It On* are not due to both songs having used commonplace and unprotectable musical building blocks but, instead, that the similarities are due to actual copying, then you must proceed to the fourth element of an infringement claim: whether or not Ed Sheeran and Amy Wadge wrongfully copied from *Let's Get It On*.

For the Plaintiffs to prove that copying was wrongful, the Plaintiffs must prove to you, by a preponderance of the evidence, that the claimed similarities between the songs are of protectable elements and, in addition, the similarities are substantial, not minimal. As I mentioned before, Plaintiffs also assert a "selection and arrangement" claim and for such a claim, as I will explain shortly, the test is not whether the claimed similarities are substantial but instead whether, among other requirements I will explain, the selected and arranged elements are identical or virtually identical.

The appearance of similar musical elements in *Thinking Out Loud* – or if the two songs sound somewhat alike to you – does not, in itself, mean that there was any wrongful copying and is not, in itself, sufficient to support a claim of copyright infringement. To find wrongful copying, the Plaintiffs must prove more than that there are similarities between the two songs. Wrongful copying requires that you focus your attention on what the claimed similarities are and whether they are substantial relative to the totality of the songs.

To determine whether two works are substantially similar – and thus whether any copying is wrongful – we usually apply what is known as the "ordinary observer" test. That test asks whether the ordinary observer, unless he or she set out to detect the differences in the two works,

39

would be likely to overlook the differences, and regard the aesthetic appeal of the two works as the same. In other words, whether an ordinary observer would recognize the defendant's work as having been taken from the protectable elements in the plaintiff's work.

However, when the similarities claimed by the Plaintiffs include commonplace and unprotectable musical building blocks, which is the case here, the examination being made by the ordinary observer – you the jury – must become what the law refers to as "more discerning." In deciding whether any copying was wrongful, you have to filter out from your consideration the unprotectable elements and consider whether, without including those elements, the two songs are substantially similar.

Because I have already ruled that two of the elements that the Plaintiffs claim are similar in the two compositions – the chord progression and the rhythmic "anticipation" technique – are commonplace musical building blocks that are unprotectable, you must eliminate these two elements from your consideration, except in the very specific and limited situation of a "selection and arrangement" claim that I will explain shortly.

Thus, subject to the "selection and arrangement" exception I mentioned, after you have excluded the unprotectable elements from your consideration, the question for you to answer is whether the Plaintiffs have identified any other musical elements that they claim are similar and if they have, whether they have proved, by a preponderance of the evidence, that these other musical elements are copyrightable or protectable in *Let's Get It On* and whether these other elements are substantially similar to elements in *Thinking Out Loud* sufficient for you to find that the two works, as a whole, are substantially similar.

Because you have to exclude the unprotectable elements from your consideration, even assuming that you were to find – and I am not suggesting that you will or should so find – that the

Defendants have copied the Plaintiffs' song, if what is copied, if anything has been copied, are only those unprotectable elements – the chord progression and the anticipation and pitch sequences which are not copyrightable – then there is no infringement.  In addition, if after you exclude the unprotectable elements, what allegedly has been copied is insubstantial or is not in fact substantially similar or is actually different, then there also is no wrongful copying and no infringement.  It is the Plaintiffs' burden to prove to you, by a preponderance of the evidence, that what they claim has been copied is both protectable and substantially similar.

**SOURCE:**  *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010); *McDonald v. West*, 138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016); *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003); *Abdin v. CBS Broad. Inc.*, 971 F.3d 57 (2d Cir. 2020).

**Melody**

A sequence of pitches alone is <u>not</u> a melody.  Instead, to qualify as a melody, a sequence of pitches – musical tones without duration – must be organized in a coherent fashion with specific rhythmic durations and metric placements in a given sequence in order to form a melody.  A sequence of pitches, even if identical between two songs – and, here, as you have heard, Plaintiffs' expert has admitted that the sequence of pitches in the two songs is, in fact, different – is not copyrightable as a melody.  In contrast, a sequence of notes – *i.e.*, a sequence of pitches with specific rhythmic durations and metric placements – may be copyrightable.  But, even if rhythmically organized, if the claimed melody <u>only consists of several notes</u>, it is not sufficient to qualify for copyright protection.

Thus, you must first decide whether the Plaintiffs have proved, by a preponderance of the evidence, that they have compared actual melodies – *i.e.*, a sequences of notes and not merely a sequence of pitches without corresponding rhythmic durations and metric placements – in *Let's Get It On* and *Thinking Out Loud*.  Unless Plaintiffs prove to you, by a preponderance of the evidence, that the pitch sequences they have identified are rhythmically organized in a coherent fashion and are found unaltered in the Deposit Copy, then they are <u>not</u> a sequence of notes and <u>not</u> melodies.  Pitch sequences, as opposed to a sequence of notes – are not copyrightable.  If you find that what Plaintiffs have called melodies are only pitch sequences, then you must find for Defendants with respect to Plaintiffs' melody claim.

However, if you find that the Plaintiffs have satisfied their burden of proving that the pitch sequences are rhythmically organized such that they satisfy the definition of a protectable melody, then you must further consider first, whether the melodies of the two songs are at all similar and second, whether Ed Sheeran and Amy Wadge, in authoring *Thinking Out Loud*, actually copied

42

melodies as they are actually expressed in the Deposit Copy of *Let's Get It On*, or whether they independently created the melodies in *Thinking Out Loud*.  Only if you find that one or more of the melodies are similar and that Ed Sheeran and Amy Wadge copied one or more of the melodies as expressed in the Deposit Copy of *Let's Get It On* do you need to further consider whether the melodies are substantially similar, which is what I have explained is required to find wrongful copying.

If you have found that Plaintiffs have satisfied the definition for melodies and compared actual melodies in both works, then for the Plaintiffs to prove wrongful copying of the melodies, they must prove to you, by a preponderance of the evidence, that there are substantial similarities between the actual protected melodic elements as expressed in the Deposit Copy of *Let's Get It On* and melodies in *Thinking Out Loud*.  In addressing the question of substantial similarity of the melodies, because there are several individual melodic elements that Plaintiffs claim are similar, you should consider whether none, some or all of the melodies, if any, are similar and if you find that less than all of the melodies are similar, whether that lesser number of similar melodies are sufficient to satisfy the requirement of substantial similarity.

In sum, it is up to you to determine: first, whether the Plaintiffs have proved to you, by a preponderance of the evidence, that what Plaintiffs claim is similar are protectable melodies in *Let's Get It On* or whether they are merely uncopyrightable sequences of pitches; second, whether Ed Sheeran and Amy Wadge actually copied melodies from *Let's Get It On*, or, instead, independently created different melodies in *Thinking Out Loud*; and, third, whether any of the melodies in *Thinking Out Loud* are substantially similar to protected melodies in *Let's Get It On*.

As I have said, the Plaintiffs have also asserted a "selection and arrangement" claim that includes elements that I have found to be unprotectable.  Their "selection and arrangement" claim

also includes what Plaintiffs have claimed are melodies in *Let' Get It On.*  As I will now explain, if what Plaintiffs claim are melodies are instead only uncopyrightable pitch sequences, then the pitch sequences cannot be considered an element within Plaintiffs' "selection and arrangement" claim.

**SOURCE:** *Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022); Webster's Third New International Dictionary (2002); U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313.4(C) (3d ed. 2021); 37 C.F.R. § 202.1(a)

**Copyright Protection For a Selection and Arrangement of Unprotectable Elements**[1]

I now want to explain what is meant by a "selection and arrangement" of musical elements that includes commonplace and otherwise unprotectable musical elements in a composition. Plaintiffs originally claimed that their "selection and arrangement" claim consisted of three elements, the key signature, the chord progressions and anticipation in *Let's Get It On*, all of which I have ruled are individually unprotectable and cannot support an infringement claim by themselves. During the testimony of Plaintiffs' expert, Dr. Stewart, Plaintiffs abandoned their claim that the key signature was an element of their "selection and arrangement" claim and instead claimed that their "selection and arrangement" claim consists of certain "melodies" in combination with the chord progressions and anticipation that I have already ruled are unprotectable basic musical building blocks.

Where a plaintiff claims that unprotectable commonplace elements have been combined in a new or unique or unusual way, that combination of elements, not the elements themselves, may be protectable if very specific requirements are satisfied. The Plaintiffs here make such a claim, which, as I have mentioned, is known as a "selection and arrangement" claim.

Before I tell you the specific requirements that the Plaintiffs must satisfy to prove an infringement claim that is based on a combination of elements, including commonplace unprotectable elements, it may be helpful to you in your deliberations if I explain why these requirements exist.

---

[1] The Defendants submit that it is a pure question of law whether the Plaintiffs can satisfy the first element of the selection and arrangement test: whether the combination of unprotectable elements in *Let's Get It On* is sufficiently numerous. As such, the Defendants submit that question should not be submitted to the jury. The Defendants solely include that matter in this instruction for reference in the event that the Court disagrees and finds that question appropriate for the jury.

Copyright law is not merely intended to protect original creative works, it is also intended to encourage and support the creation of new works that can be drawn from and incorporate preexisting commonplace building blocks.  To create a balance between providing protection for original works and allowing future authors to create new works which incorporate commonplace elements, the law provides only what is called "thin copyright protection" to combinations that include otherwise unprotectable commonplace elements.  Thin copyright protection means what it sounds like: the protection provided is limited and, for there to be an infringement, the Plaintiffs must satisfy specific requirements that are intended to restrict such protection in order to provide such balance and encourage the creation of new works built on preexisting commonplace elements.

The first requirement for a selection and arrangement that includes commonplace and unprotectable musical elements is that the Plaintiffs must prove to you, by a preponderance of the evidence, that the combination of musical elements is sufficiently "numerous" to warrant protection as a selection and arrangement.  Here, the Plaintiffs have argued to you that their selection and arrangement claim consists of three elements: the unprotectable chord progression, the unprotectable element of anticipation and certain alleged melodies.

To begin with, if you find that what Plaintiffs claim to be melodies are instead only uncopyrightable pitch sequences and not melodies – again, to qualify as a melody, a sequence of pitches, musical tones without duration, must be organized in a coherent fashion with specific rhythmic durations and metric placements in a given sequence – then the Plaintiffs' "selection and arrangement" claim cannot include the pitch sequences because they are not copyrightable to begin with.

Accordingly, only if you find that what Plaintiffs claim to be melodies satisfy the definition for melody that I have given you, may you include the melodies as one of the elements in Plaintiffs'

46

"selection and arrangement" claim.  It is up to you to determine if the combination consists of three elements, the chord progression, anticipation and certain melodies or only two elements, the chord progression and anticipation.

Whether Plaintiffs "selection and arrangement" claim consists of two or three elements, it is up to you to decide whether two or three elements are sufficiently numerous to warrant protection under a selection and arrangement claim.  If you find that two or three elements are not sufficiently numerous to support a selection and arrangement claim, then your verdict on Plaintiffs' "selection and arrangement" claim must be for the Defendants.  If you find that the two or three elements are sufficient to satisfy the numerosity requirement, then you must continue to consider whether Plaintiffs have satisfied the other two requirements for a selection and arrangement claim of infringement that I will now explain.

The second requirement for a selection and arrangement claim is that the Plaintiffs must prove to you, by a preponderance of the evidence, that the specific combination, including unprotectable elements in *Let's Get It On*, is unique or unusual, meaning that it is new or novel. To be new or novel means that the specific combination of unprotectable elements does not exist in prior musical compositions.  Here, that means that the Plaintiffs must prove to you, by a preponderance of the evidence, that the combination of the musical elements at issue – and again, if you find that Plaintiffs have not compared actual melodies in the two songs consistent with the definition I gave you, then the combination only includes two elements, the chord progression and anticipation – cannot be found in any musical compositions authored before *Let's Get It On*.

Again, if you have found that the Plaintiffs have not compared actual melodies consistent with the definition I provided but only uncopyrightable pitch sequences, then Plaintiffs must prove to you, by a preponderance of the evidence, that the chord progression and anticipation, which

would be the only two elements of their "selection and arrangement" claim, were never used in songs prior to *Let's Get It On*.  If you conclude that the Plaintiffs have compared actual melodies consistent with the definition of melody I provided, then the Plaintiffs have to prove that the combination of the chord progression, anticipation and melodies does not exist in any prior songs. To be clear, the Defendants do not have to prove to you that the same combination exists in compositions that predate *Let's Get It On*; instead, it is the Plaintiffs' burden to prove to you that the specific combination of unprotectable elements for which they claim protection is unusual or unique and, thus, that it is not found in prior songs, which is what is called "prior art."

In this regard, if you find that what Plaintiffs' claim are melodies are instead only uncopyrightable pitch sequences, the Plaintiffs expert already has admitted that the same combination of chord progression and anticipation was used in songs prior to *Let's Get It On* and, therefore, you must find that the Plaintiffs fail to satisfy the new or novel requirement.  If you find that Plaintiffs have compared actual melodies in the two songs consistent with the definition I gave you, then it is up to you to decide whether Plaintiffs have proved that the combination of chord progression, anticipation and the melodies do not exist in songs prior to *Let's Get It On*.

With respect to the Plaintiffs' burden to prove to you that the combination of elements in their selection and arrangement claim are new or novel, I have previously ruled that the Plaintiffs' expert may not testify that *Let's Get It On* or any elements within it are unusual or unique or distinctive because I found he did not properly perform what is known as a prior art search and therefore did not have a sufficient basis to offer such testimony.  That is why the Plaintiffs have not provided any expert evidence supporting their claim that the selection and arrangement of elements in *Let's Get It On* is unique or unusual or distinctive.  Instead, the Plaintiffs' expert merely opined that certain songs identified by Defendants' expert supposedly did not include the

combination of the three elements the Plaintiffs have tried to place at issue; Plaintiffs' expert did not testify – because he was not permitted to testify – that there are no prior songs that include the same combination of the three elements the Plaintiffs have tried to place at issue.  In contrast, you have heard from the Defendants' expert about songs that preceded *Let's Get It On* that have the same combination of musical elements as *Let's Get It On*.

Regardless of whether you find that the Plaintiffs' claim consists of two or three unprotectable elements, you must determine whether the selection and arrangement of those particular elements in *Let's Get It On* is unusual, unique, new or novel.  If you find that the Plaintiffs failed to sustain their burden of proof in this regard, then again, your verdict will be for the Defendants.  On the other hand, if you find that the selection and arrangement in *Let's Get It On* is unique, new or novel, and did not occur in songs prior to *Let's Get It On,* then you must continue to consider the third requirement for a selection and arrangement claim of infringement.

The third requirement for a selection and arrangement claim is that the Plaintiffs must prove to you, again by a preponderance of the evidence, that the combination of the elements at issue in *Thinking Out Loud* is identical or virtually identical to the combination of those elements as expressed in the Deposit Copy of *Let's Get It On*.  I have explained to you already what is meant by substantial similarity, which applies to musical elements that are protectable.  But, as I said, because selection and arrangement claims only provide for thin copyright protection, for such a claim, it is not enough for you to find that the combination of elements in the two songs is substantially similar.  Instead, the Plaintiffs must satisfy a higher standard: they must prove to you that the combination of elements is also identical or virtually identical in both songs.

These heightened requirements are intended to limit copyright protection for a combination that includes unprotectable elements to avoid interfering with the use of commonplace and

unprotectable musical elements by all authors by restricting the protection only to a unique or novel combination that includes unprotectable elements that is not merely substantially similar to the allegedly infringing work but is identical or virtually identical to it.  If you find that the selection and arrangement of the elements in *Let's Get It On*, whether including the purported melodies together with the chord progression and anticipation or only including the chord progression and anticipation, is not identical or virtually identical to the selection and arrangement of those elements in *Thinking Out Loud*, your verdict must be for the Defendants.

Again, the Plaintiffs must satisfy all three of these requirements, proving each of them to you by a preponderance of the evidence.  If they fail to do so for any one or more of the three requirements, they will not have established wrongful copying, and your verdict must be for the Defendants.

**SOURCE:**  *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020), *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95 (2d Cir. 2014); *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1 (2d Cir. 1996); *Boisson v. Banian, Ltd.*, 273 F.3d 262 (2d Cir. 2001); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995); *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275 (S.D.N.Y. 2005); *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003); *Threeline Imports, Inc. v. Vernikov*, No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28, 2016); *Universal Pictures Co. v. Harry Lloyd Corp.*, 162 F.2d 354 (9th Cir. 1947).

### Expert Testimony of Musicologists

During the trial, you heard expert testimony of musicologists from both the Plaintiffs and the Defendants.  To the extent you find this testimony credible and helpful, you may consider this testimony in conjunction with deciding the questions of independent creation and of actual copying – that is, whether the Defendants in authoring *Thinking Out Loud* actually copied from *Let's Get It On*.  Their testimony also may be helpful to you in determining whether wrongful copying has been proved.

However, expert musicologists cannot opine directly that copying is either "wrongful" or not "wrongful" under the law.  The question of wrongful copying is for you the jury to decide.  To be clear, while the testimony of the expert musicologists may aid you in reaching your conclusion on independent creation, actual copying, "wrongful" copying and substantial similarity and while the expert musicologists can opine on whether or not the two songs are identical or virtually identical, they cannot testify about whether any alleged copying is wrongful.  That must be decided by you.

**SOURCE:**  *Griffin v. Sheeran*, 351 F. Supp. 3d 492 (S.D.N.Y. 2019); *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131 (2d Cir. 1992); *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200 (S.D.N.Y. 2010).