UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN TOWNSEND GRIFFIN, THE ESTATE OF CHERRIGALE TOWNSEND and THE HELEN CHRISTINE MCDONALD TRUST,<br><br>        *Plaintiffs*,<br><br>        -against-<br><br>EDWARD CHRISTOPHER SHEERAN, p/k/a ED SHEERAN, ATLANTIC RECORDING CORPORATION, d/b/a ATLANTIC RECORDS, SONY/ATV MUSIC PUBLISHING, LLC, and WARNER MUSIC GROUP CORPORATION, d/b/a ASYLUM RECORDS<br><br>        *Defendants*. | ECF CASE<br><br>17-cv-5221 (LLS) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SECOND MOTION FOR JUDGMENT AS A MATTER OF LAW

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

*Of Counsel:*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
    Brian M. Maida

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

   (i)   Melodies...........................................................................................................3

   (ii)  Selection and Arrangement of Unprotectable Elements...................................6

ARGUMENT .......................................................................................................................9

  I.   LEGAL STANDARDS ..............................................................................................9

     A.  Rule 50(a): Judgment As A Matter Of Law.......................................................9

     B.  Copyright Infringement Standard ......................................................................9

        1.  Scope of Copyright Protection.................................................................10

        2.  Legal Standard For Wrongful Copying ...................................................12

        3.  Legal Standard For Infringement Claims<br>            Based On A Combination Of Unprotected Elements ...........................13

  II.   DEFENDANTS SHOULD BE GRANTED JUDGMENT AS A MATTER OF LAW....15

     A.  No Reasonable, Properly Instructed Jury Could Find That The<br>        Melodies At Issue In TOL Infringe The Melodies At Issue In LGO..........................18

     B.  No Reasonable, Properly Instructed Jury Could Find<br>        An Infringement Of The Selection And Arrangement At Issue ..................................19

        1.  Plaintiffs Failed To Satisfy Their Burden Of Establishing<br>            That The Selection And Arrangement Is Sufficiently Numerous.........................19

        2.  Plaintiffs Failed To Satisfy Their Burden Of Establishing That<br>            The Selection And Arrangement Was "New" Or "Novel" To LGO ....................21

        3.  Plaintiffs Failed To Satisfy Their Burden Of Establishing That TOL<br>            Uses The "Same" Or "Virtually Identical" Selection And Arrangement .............23

     C.  No Reasonable, Properly Instructed Jury Could Find<br>        That Defendants Did Not Independently Create TOL ..................................25

CONCLUSION....................................................................................................................27

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(s)**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)................................................................................12

*Allen v. Scholastic Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011)..............................................................11

*Beaudin v. Ben & Jerry's Homemade, Inc.*,
   95 F.3d 1 (2d Cir. 1996)....................................................................................25

*Beyond Blond Prods., LLC v. Heldman*,
   479 F. Supp. 3d 874 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods.,*
   *LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13,
   2022) ..................................................................................................................20

*Boisson v. Banian, Ltd.*,
   273 F.3d 262 (2d Cir. 2001)..............................................................................10

*Cottrill v. Spears*,
   No. 02-cv-3646 (BMS), 2003 WL 21223846 (E.D. Pa. May 22, 2003),
   *aff'd*, 87 F. App'x 803 (3d Cir. 2004)...............................................................20

*Cox v. Abrams*, No. 93-cv-6899 (RJW),
   1997 WL 251532 (S.D.N.Y. May 14, 1997) ......................................................25

*Darrell v. Joe Morris Music*,
   113 F.2d 80 (2d Cir. 1940).................................................................................10

*Dimmie v. Carey*,
   88 F. Supp. 2d 142 (S.D.N.Y. 2000)..................................................................25

*Erickson v. Blake*,
   839 F. Supp. 2d 1132 (D. Or. 2012) ..................................................................20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)............................................................................................14

*Folio Impressions, Inc. v. Byer California*,
   937 F.2d 759 (2d Cir. 1991)...............................................................................25

*Gray v. Hudson*,
   28 F.4th 87 (9th Cir. 2022) ..............................................................................3, 9

*Gray v. Perry*,
   No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020),
   *aff'd sub nom. Gray v. Hudson*, 28 F. 4th 87 (9th Cir. 2022)......................... *passim*

**CASES** PAGE(s)

*Home Design Servs, Inc. v. Turner Heritage Homes, Inc.*,
101 F. Supp. 3d 1201 (N.D. Fla. 2015), *aff'd*, 825 F.3d 1314 (11th Cir. 2016)......................19

*James v. City of Albany*,
833 F. App'x 346 (2d Cir. 2020) .............................................................................................9

*Jean v. Bug Music, Inc.*,
No. 00-cv-4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) ......................................11

*Kaye v. Cartoon Network Inc.*,
297 F. Supp. 3d 362 (S.D.N.Y. 2017).....................................................................................11

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
71 F.3d 996 (2d Cir. 1995)......................................................................................................14

*Logan v. Bennington Coll. Corp.*,
72 F.3d 1017 (2d Cir. 1995)......................................................................................................9

*McDonald v. West*,
138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016).................11, 13

*Merrill Lynch Interfunding, Inc. v. Argenti*,
155 F.3d 113 (2d Cir. 1998).....................................................................................................19

*Morrill v. Stefani*,
338 F. Supp. 3d 1051 (C.D. Cal. 2018) ...................................................................................20

*Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*,
367 F. Supp. 2d 514 (S.D.N.Y. 2005).....................................................................................27

*Novak v. Nat'l Broad. Co.*,
752 F. Supp. 164 (S.D.N.Y. 1990) ..........................................................................................25

*Nwosuocha v. Glover*,
No. 21-cv-04047 (VM), 2023 WL 2632158 (S.D.N.Y. Mar. 24, 2023)................................11

*Odegard Inc. v. Safavieh Carpets, Inc.*,
398 F. Supp. 2d 275 (S.D.N.Y. 2005)..............................................................................14, 15, 23, 25

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010).........................................................................................9, 13, 25

*Pierce v. City of New York*,
805 F. App'x 70 (2d Cir. 2020) ...............................................................................................19

**CASES**                                                                                              **PAGE(s)**

*Procter & Gamble Co. v. Colgate-Palmolive Co.*,
    199 F.3d 74 (2d Cir. 1999)..................................................................................27

*Rose v. Hewson*,
    No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ....................................14

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ......................................................................................11, 14

*Siskind v. Newton-John*, No. 84-cv-2634 (TPG),
    1987 WL 11701 (S.D.N.Y. May 22, 1987) ............................................................27

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020), *cert. denied* 208 L. Ed. 2d 145 (Oct. 5, 2020),
    *reh'g denied*, 208 L. Ed. 2d 482 (Dec. 7, 2020) .............................................. *passim*

*Smith v. Weeknd*,
    No. 19-cv-2507 (PA), 2020 WL 4932074 (C.D. Cal. July 22, 2020), *aff'd sub
    nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021).......................20

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998)..................................................................................14

*Sweet Gisele, Inc. v. True Rock CEO, LLC*,
    No. 17-cv-5170 (FB) (RML), 2018 WL 4863650 (E.D.N.Y. Sept. 4, 2018),
    *report and recommendation adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28,
    2018) .....................................................................................................................25

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ................................................................................11

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................................20

*Threeline Imports, Inc. v. Vernikov*,
    No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28,
    2016) .....................................................................................................................14

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000)....................................................................11

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2d Cir. 2003)..................................................................................14

*United States v. Hamilton*,
    583 F.2d 448 (9th Cir. 1978) ................................................................................10

**<u>CASES</u>**                                                                                         **<u>PAGE(s)</u>**

*Universal Pictures Co. v. Harry Lloyd Corp.*,
    162 F.2d 354 (9th Cir. 1947) ...................................................................................14

*Velez v. Sony Discos*, No. 05-cv-0615 (PKC),
    2007 WL 120686 (S.D.N.Y. Jan. 16, 2007) ........................................................26

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) ..................10

*Williams v. County of Westchester*,
    171 F.3d 98 (2d Cir. 1999)........................................................................................9

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014)................................................................................12, 13


**<u>FEDERAL STATUTES & RULES</u>**                                                      **<u>PAGE(s)</u>**

37 C.F.R. § 202.1(a)..........................................................................................................6

Fed. R. Civ. P. 50(a) .........................................................................................................9

U.S. Copyright Office,
Compendium of U.S. Copyright Office Practices § 313.4(C) (3d ed. 2021)...................6

**<u>DICTIONARY</u>**

*Melody*, Webster's Third New International Dictionary (2002).......................................6

*Numerous*, Merriam-Webster,
    www.merriam-webster.com/dictionary/numerous#synonyms, last accessed
    November 3, 2022...........................................................................................21

*Few*, Merriam-Webster
    www.merriam-webster.com/dictionary/few, last accessed November 3, 2022.......................21

Defendants Edward Christopher Sheeran ("Sheeran"), Atlantic Recording Corporation ("Atlantic") and Sony/ATV Music Publishing LLC (n/k/a Sony Music Publishing (US) LLC) ("SMP," together with Atlantic and Sheeran, the "Defendants" and each a "Defendant"), respectfully submit this memorandum of law in support of their second motion for judgment as a matter of law pursuant to Rule 50(a) at the close of evidence.

## PRELIMINARY STATEMENT

Plaintiffs were fully heard on their claim that certain musical elements in the musical composition *Thinking Out Loud* ("TOL") infringe the copyright of the musical composition *Let's Get It On* ("LGO"). Indeed, Plaintiffs' case-in-chief closed on April 27, 2023. Because Plaintiffs failed to satisfy their burden of proof to establish a *prima facie* claim of infringement, immediately after Plaintiffs' case-in-chief ended, Defendants moved for judgment as a matter of law. (ECF 263-64). The Court deferred ruling on the motion pursuant to Rule 50(b).

However, the evidence admitted during Defendants' case further underscored Plaintiffs' failure, and conclusively proved, unrebutted by any evidence from Plaintiffs, that Sheeran and co-author Amy Wadge independently created TOL – they did not copy from LGO. Thus, now that Defendants' case has closed, in accordance with Rule 50(a), they again move for judgment as a matter of law on the basis that not only did Plaintiffs fail to prove a *prima facie* case on their direct case but the evidence provided during Defendants' case conclusively establishes that Plaintiffs' claim of infringement is baseless as a matter of law.

Defendants fully respect and deeply appreciate the service of the jurors but in this case, Plaintiffs' claims should not be submitted to the jury and this Court should grant Defendants judgment as a matter of law.

This Court's Pretrial Orders of March 24, 2020 and August 18, 2020 limited Plaintiffs'

1

possible avenues for their infringement claim.  On March 24, 2020, the Court "limit[ed] Plaintiffs to comparing [TOL] with the musical composition [LGO] as reflected in the deposit copy filed with the Copyright Office for that work."  (ECF 121 at 2).  Thus, elements that appear in the Marvin Gaye sound recording of LGO but <u>not</u> in the deposit copy filed with the Copyright Office (the "Deposit Copy"), [1] such as "percussion/drums, bass-guitar, guitars, Gaye's vocal performances, horns, flutes, etc., … are not protected by copyright, because they are not in the Deposit Copy" and therefore are not a part of Plaintiffs' infringement claim.  (*Id.* at 2).

Then, on August 18, 2020, the Court specifically barred Plaintiffs' musicological expert from "characteriz[ing] Let's Get It On or a constituent element of it, such as a chord progression or harmonic rhythm, as being 'unique,' 'distinctive,' 'unusual' or the like."  (ECF 138 at 1-2).  The Court's ruling was based on "uncontradicted proof that those elements in this case are common musical techniques."  (*Id.* at 2).

Plaintiffs proceeded at trial with only two paths to infringement: (1) pursuing a claim that certain melodies of TOL infringe certain melodies of LGO, and (2) that the specific combination of three unprotectable and commonplace musical building blocks in LGO – chord progression, rhythmic anticipation and key signature, known as a "selection and arrangement" claim – has been infringed by the combination of these elements in TOL.

In their own Proposed Findings of Fact in the Pre-Trial Order, Plaintiffs claimed that their "selection and arrangement" claim consisted of only the foregoing three elements.  (*See* ECF 194 at 3).  However, at trial, Dr. Stewart abandoned the key signature as one of the elements of such claim, admitting that they were different and offering no testimony whatsoever that included the key signature as an element of a selection and arrangement claim.  In fact, Dr. Stewart referred to

---

[1] The Deposit Copy was admitted as Joint Exhibit 2.

the key as "irrelevant."

Instead, in direct contradiction of their own Proposed Findings of Fact, which nowhere included melody as an element of their "selection and arrangement" claim, in his trial testimony, Dr. Stewart tried to connect certain of what he claimed were "melodies" to the indisputably commonplace and unprotectable chord progression and anticipation, swapping out, for the first time at trial, the key signature for melodies. But not only is this belated attempt to substitute a new element improper, it is also futile because, as Dr. Stewart was forced to concede, what he falsely labeled "melodies" are different. In fact, what Dr. Stewart presented were only a series of pitches, which are uncopyrightable and which are not melodies.

Indeed, Dr. Stewart has simply plucked individual pitches from different locations in the two songs and compared only the pitches divorced from any rhythmic value. And not only did he only compare pitch sequences, the evidence established that Dr. Stewart manipulated the pitches to make them appear to line up between the two songs even when they did not line up. But whether called melodies or simply pitch sequences, as everyone in the courtroom could hear, the supposed "melodies" or pitch sequences are very different. They are not similar and they are anything but identical or virtually identical.

**(i)     The Supposed "Melodies"**

On March 10, 2023, this Court barred Plaintiffs from trying to mislead the jury with audio performances that did not correspond to the Deposit Copy. The Court specifically held:

> Defendants' Seventh Motion in limine, for exclusion from evidence plaintiffs' proposed performance(s) of the Let's Get it On Deposit Copy, is granted. Omissions, additions and errors in the creation of Exhibits 01 and 02 render them unreliable and inadmissible as evidence of true performances of the Let's Get It On Deposit Copy.

(ECF 192 at 2).

Undeterred by this explicit Order and this Court's August 18, 2020 Order, Plaintiffs

3

initially propounded a series of demonstratives in which Dr. Stewart referenced a bass line and drum pattern in LGO that nowhere exists in the Deposit Copy.  Before the hearing, out of the presence of the jury on April 24, 2023, Plaintiffs culled these demonstratives to avoid risking having the Court bar Dr. Stewart from testifying at all.

However, Dr. Stewart also included slides that omitted notes and altered the duration of notes of the Deposit Copy of LGO, thereby directly contradicting both this Court's March 24, 2020 Order and its August 18, 2020 Order.   At trial, the Court then struck slides 48, 50 and 51 as being in direct violation of the Orders and applicable law.  But Dr. Stewart also altered the notes of TOL in an effort to manufacture similarities in the pitch sequences that do not exist, which was demonstrated on cross examination.  Defendants' own evidence also demonstrated these improper manipulations.  Sheeran himself testified that Dr. Stewart's addition of "blue notes" to certain melodies in TOL utterly changed the sound and rendered them not TOL, which of course the pitch sequences Dr. Stewart fabricated are not.  Defendants' expert musicologist – Dr. Lawrence Ferrara – further demonstrated how Dr. Stewart had altered TOL in a failed effort to manufacture similarities that do not exist in the actual two songs.

Further, while Dr. Stewart claimed what he incorrectly called melodies (indeed, contrary to his own definition of "melody") were similar, in fact, played as written and not as altered by Dr. Stewart, not only are the pitch sequences not similar, he admitted that they are different.[2]  The testimony of both Ed Sheeran and Dr. Ferrara likewise made clear that what Dr. Stewart mislabeled as melodies are nothing alike.  Indeed, Dr. Ferrara referred to one such supposed "melodic" similarity claim of Dr. Stewart's as "absurd" from a musicological standpoint.  Because whether

---

[2] In fact, as Dr. Stewart's cross examination established, the "melodies" are not at all similar, let alone substantially similar.  So even if Dr. Stewart were claiming that the melodies, standing alone, were sufficient for a claim of infringement, such claim has not been remotely proved.

labeled pitch sequences, which they are, or melodies, which they are not, they are different.

Because a "selection and arrangement" claim requires not substantial similarity but identity or virtual identity, by belatedly including the "melodies" as an element in the "selection and arrangement" claim, Dr. Stewart succeeded only in defeating the selection and arrangement claim because it is indisputable that what he calls "melodies" are not remotely identical nor virtually identical.

Thus, to the extent Plaintiffs are claiming that what Dr. Stewart mislabeled as "melodies," standing alone, support a claim of infringement, not only did they fail to make out a *prima facie* case as the "melodies" are indisputably different and not remotely substantially similar such that no jury, properly instructed, could find the melodies substantially similar, but Defendants have provided indisputable and overwhelming evidence showing that the supposed melodies are not even similar.

Further, to the extent that Plaintiffs are claiming that the mislabeled "melodies," which are only uncopyrightable pitch sequences, are part of their "selection and arrangement" claim, then again, they have not only failed to prove a *prima facie* case as a combination including the different so-called "melodies" because they are not remotely similar and certainly not identical or virtually identical, but Defendants again have proved that the "melodies" are completely different.  No jury, properly instructed could find otherwise.

The law mandates that the jury must exclude unprotectable elements (chord progression, rhythmic anticipation) in order to assess whether, without regard to the unprotectable elements, the so-called melodies, standing alone, are even actually similar and only if they are, whether they are substantially similar.  But once the unprotectable elements are excluded, what Plaintiffs contend are "melodies," though they are actually only uncopyrightable pitch sequences, even with

Dr. Stewart's improper alterations of TOL, are different, not similar.

Most compelling, the supposed "melodies" are not melodies at all but only a series of pitches that are not "'rhythmically organized' so as to form an 'esthetic whole.'" *Gray v. Hudson*, 28 F.4th 87, 99 (9th Cir. 2022) (quoting *Melody*, Webster's Third New International Dictionary (2002)). As the Copyright Office has made clear, while a melody may be copyrightable, a series of pitch sequences that is only a component of a melody is not. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313.4(c) (3d ed. 2021) (citing 37 C.F.R. § 202.1(a)).

Thus, whether on a stand-alone basis or as part of a "selection and arrangement" claim, Plaintiffs failed to prove a *prima facie* case involving the melodies and Defendants have provided unrebutted and compelling evidence conclusively showing that Plaintiffs' claim of infringement, based on supposed melodies, on a stand-alone basis and as part of a "selection and arrangement" claim are baseless. What Plaintiffs have presented are not, in any event, "melodies." They are instead only a series of individual pitches and even the pitches, which the Copyright Office has said are not copyrightable, are different in TOL and LGO.

**(ii)   <u>Selection and Arrangement of Unprotectable Elements</u>**

Plaintiffs' selection and arrangement claim has a higher evidentiary hurdle that they must satisfy. There (1) must be numerous unprotectable elements, (2) that are arranged in a new, novel (unique or distinctive) manner, and (3) the unprotectable elements and their arrangement in both songs must be identical or nearly identical. Selection and arrangement claims are entitled only to thin copyright protection so as to avoid restricting the use of commonplace musical building blocks in future works. Plaintiffs failed to put forth sufficient evidence to submit any of the three elements to the jury – and Defendants' evidence in fact made it clear that Plaintiffs could not possibly prove

all three elements – though failing on even a single element would entitle Defendants to judgment as a matter of law.

*First*, the law is clear that a combination of three unprotectable elements is not sufficiently numerous; there must be a combination of <u>at least</u> four or five unprotectable elements.  Plaintiffs fall short of that bar.

*Second*, because this Court's August 18, 2020 Order specifically barred Plaintiffs' expert from "characteriz[ing] Let's Get It On or a constituent element of it … as being '<u>unique</u>,' 'distinctive,' 'unusual' or the like" (ECF 138 at 1-2; emphasis added), even if Plaintiffs could satisfy both the first and third required elements (and they have not done so) they had no permissible means of satisfying the second required element – and they failed to do so.[3]  In any event, Defendants identified six songs that use the combinations at issue that pre-date TOL, and four of those songs pre-date LGO.  The combination was therefore indisputably not new and novel to LGO.

*Third*, there is no question that the selection and arrangement of the unprotectable elements is not identical or virtually identical in the two works as each individual constituent element differs in the two works.  Dr. Stewart, Dr. Ferrara and Sheeran all testified that the second chord of the four-chord progression in LGO (a iii chord) is different from the second chord of the four-chord progression in TOL (a I/3 chord).  While Dr. Stewart tried to pretend that for the first 24 seconds of TOL the second chord was the same as in LGO, both Ed Sheeran and Dr. Ferrara conclusively refuted that contention.

---

[3] Plaintiffs' attempt to anticipate the prior art evidence of Dr. Ferrara is both improper and futile. Even though Dr. Stewart tried to challenge Defendants' prior art evidence, he admitted that the combination of the chord progression and anticipation was not new and novel.  His attempt to add the supposed melodies (pitches only) to the "selection and arrangement" claim defeats the claim because, as discussed above, the mislabeled "melodies" are neither identical nor virtually identical.

Further, while Dr. Stewart tried, through a convoluted explanation, to argue that the anticipation in TOL is the same as in LGO, Dr. Ferrara also scuttled that argument, showing that the rhythmic anticipation occurs on different beats and is expressed differently in the two works. And as discussed above, Dr. Stewart's belated change of Plaintiffs' claim, swapping key for "melodies" (pitches only really) is futile because whether properly labeled as "pitches" or as "melodies," they are different and not remotely identical or virtually identical.  Plaintiffs failed to provide a legally sufficient evidentiary basis for a reasonable jury to find in their favor on any of the three elements of their selection and arrangement claim and Defendants have conclusively shown there is no such basis.  Defendants should receive judgment in their favor as a matter of law.

Despite the fact that Plaintiffs failed to establish a *prima facie* claim of infringement, Defendants separately established that Sheeran and Wadge independently created TOL. Defendants' evidence established that Sheeran and Wadge created TOL not by copying LGO, but rather by utilizing basic musical building blocks that are exceedingly commonplace in popular music and that have long been available to songwriters – both before and after LGO.  They did not copy anything from LGO or any other song.  There is no evidence rebutting their independent creation of TOL and that alone, even without considering the fact that the two songs are distinctly different, sharing only a similar and unprotectable chord progression and anticipation, entitles them to judgment as a matter of law.

In sum, a reasonable jury following the law has no basis to arrive at a verdict that Defendants infringed LGO.  Plaintiffs' claims should not be submitted to the jury and this Court should bring this trial to a close by granting Defendants judgment as a matter of law.

# ARGUMENT

## I.   LEGAL STANDARDS

### A.   Rule 50(a): Judgment As A Matter Of Law

Pursuant to Rule 50(a), a party may move for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a).  "Rule 50(a) permits a district court to enter judgment as a matter of law against a party on an issue where there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *James v. City of Albany*, 833 F. App'x 346, 347 (2d Cir. 2020) (citation omitted); *accord Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1022 (2d Cir. 1995) (judgment as a matter of law is appropriate "where there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant") (citations & quotations omitted).[4]

### B.   Copyright Infringement Standard

Ordinarily, to prevail on a copyright infringement claim, a plaintiff must prove, among other things, that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the ***protectible elements*** of plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation & quotation omitted; emphasis added).  Here, however, as detailed below, significant additional requirements exist with respect to Plaintiffs' selection and arrangement infringement claim – requirements that Plaintiffs failed to prove.

---

[4] An earlier denial of summary judgment does not preclude a court from granting judgment as a matter of law.  *See Williams v. County of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999).

1.   **Scope of Copyright Protection**

Before addressing the onerous requirements for selection and arrangement infringement claims and the standard for wrongful copying, it is important to delineate the limited scope of copyright protection for LGO.

As the Second Circuit has explained, "an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001). In that regard, "copyright protection does <u>not</u> extend to historical or contemporary facts, material traceable to common sources or in the public domain, and *scenes a faire*." *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) (emphasis added).

In the context of music, "[a]lthough there is generally a low bar for originality in copyright, given the limited number of notes and chords available to composers, and because common themes frequently reappear in various compositions, many if not most of the elements that appear in popular music are not individually protectable." *Gray v. Perry*, No. 15-cv-05642 (CAS), 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020) (citations & quotations omitted), *aff'd sub nom. Gray v. Hudson*, 28 F. 4th 87 (9th Cir. 2022). As the Second Circuit stated in *Darrell v. Joe Morris Music*, 113 F.2d 80, 80 (2d Cir. 1940): "It must be remembered that, while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear. Recurrence is not therefore an inevitable badge of plagiarism." And, despite "the famously low bar for originality" (*Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020), *cert. denied* 208 L. Ed. 2d 145 (Oct. 5, 2020), *reh'g denied*, 208 L. Ed. 2d 482 (Dec. 7, 2020)), "[t]rivial elements of compilation and arrangement … fall below the threshold of originality." *United States v. Hamilton*, 583 F.2d 448,

451 (9th Cir. 1978); *accord Satava v. Lowry*, 323 F.3d 805, 811-12 (9th Cir. 2003).

As relevant here (and as this Court already has ruled), unprotectable musical building blocks, or *scenes-a-faire*, include, among other things, key signature, common chord progressions and rhythmic anticipation.  (ECF No. 138 at 2; ECF 93 at 9).  The Court's rulings are consistent with other courts, which have uniformly ruled that key, common harmonies, common melodies and common rhythms are unprotectable basic musical building blocks.  *See, e.g.*, *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ("common rhythms, song structures, and harmonic progressions are not protected") (citations omitted); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011); *see also Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362, 367 (S.D.N.Y. 2017); *Jean v. Bug Music, Inc.*, No. 00-cv-4022 (DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (common melodic sequence unprotectable); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (key unprotectable); *Nwosuocha v. Glover*, No. 21-cv-04047 (VM), 2023 WL 2632158, at *7 (S.D.N.Y. Mar. 24, 2023) (lyrical theme "categorically ineligible for copyright protection").

Further, with respect to melodies, as the Ninth Circuit observed in *Gray*, the recent infringement case involving Katy Perry:

> [C]reating a melody involves more than writing down a sequence of pitches; at a minimum, that sequence must also be **"rhythmically organized"** so as to form an "esthetic whole."  *Melody*, Webster's Third New International Dictionary (2002); *cf. Swirsky*, 376 F.3d at 848[5] (distinguishing between non-copyrightable "chord progressions" standing alone and a copyrightable "chorus," which involves these progressions "in combination with rhythm and pitch sequence[s]").  While an eight-note <u>melody</u> may be copyrightable, the abstract eight-note <u>pitch sequence</u> that is a component of the melody is not.  *See* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313.4(C) (3d ed. 2021) (citing 37 C.F.R. § 202.1(a)) (advising that "short musical phrases consisting of only a few musical notes standing alone are not copyrightable . . . even if the phrase is novel or distinctive,"

---

[5] The full cite for *Swirsky* is *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).

and giving an eight-note pitch sequence as an example).

28 F.4th at 99-100 (underlined emphasis in original; bolded emphasis added; footnote omitted).

And, as the District Court explained in *Gray* in granting defendants' post-verdict motion for judgment as a matter of law (which the Ninth Circuit affirmed), "courts in musical copyright cases have a significant obligation … **to encourage others to build freely upon the ideas and information conveyed by a work**, and at the same time motivate creative activity, by <u>carefully limiting the scope of copyright protection to truly original expression only</u>." *Gray*, 2020 WL 1275221, at *4 (emphasis added); *id.* at *5 (ruling that "[m]usical elements that are 'common or trite' – such as the 'use of a long-short-long rhythm,' **'chord progressions,'** certain 'tempos,' a 'recurring vocal phrase,' repeating 'hook phrases,' the alternating 'emphasis of strong and weak beats,' **'syncopation,'** the use of 'tritones,' or the use of 'basic musical devices in different manners,' – are, accordingly, not protectable") (emphasis added; citations, quotations & brackets omitted); *see also Skidmore*, 952 F.3d at 1069 (musical "building blocks belong in the public domain and cannot be exclusively appropriated by any particular author").[6]

Here, in regard to the LGO chord progression and rhythmic anticipation, this Court already has ruled "there is uncontradicted proof that those elements in this case are common musical techniques." (ECF 138 at 2).  This Court also has ruled that key is unprotectable.  (ECF 93 at 9).

### 2.   <u>Legal Standard For Wrongful Copying</u>

As the Second Circuit has cautioned, "copying and wrongful copying … are often confused." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014).  Because "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection," "[c]opying [unprotected] aspects of a work is not wrongful, and thus not <u>all</u> copying is wrongful." *Id.*

---

[6] Anticipation is a form of syncopation.

(emphasis in original); *see also Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66-67 (2d Cir. 2020). Thus, "the term 'substantial similarity' is properly reserved for similarity that exists between the <u>protected</u> elements of a work and another work." *Zalewski*, 754 F.3d at 101 (emphasis added).

Further, "when faced with works that have both protectible and unprotectible elements, [the] analysis must be <u>more discerning</u>." *Peter F. Gaito*, 602 F.3d at 66 (citations & quotations omitted; emphasis added). The Court "must attempt to extract the unprotectible elements," and the question for the jury of whether wrongful copying exists turns on "<u>whether the protectible elements, standing alone, are substantially similar</u>." *Id.* (emphasis added; citations & quotations omitted); *see also McDonald*, 138 F. Supp. 3d at 455. And, here, as detailed below, with respect to Plaintiffs' selection and arrangement infringement claim, the legal standard for wrongful copying is <u>not</u> merely substantial similarity; rather, Plaintiffs were required – but failed – to prove that TOL and LGO feature an identical or virtually identical combination of unprotected elements and that the combination is new and novel (meaning unique or distinctive, something Plaintiffs cannot show and have not shown).

### 3. Legal Standard For Infringement Claims Based On A Combination Of Unprotected Elements

Plaintiffs' Proposed Findings of Fact in the Pre-Trial Order predicated their selection and arrangement infringement on three unprotectable elements: LGO's commonplace chord progression, ubiquitous rhythmic anticipation and even more ubiquitous key signature. (*See* ECF 194 at 3). They have now abandoned the key signature and substituted certain supposed melodies.

To avoid restricting the use of commonplace musical building blocks in future works, only thin protection exists for a selection and arrangement of unprotected elements, and a higher, more rigorous standard of proof exists. Specifically, Plaintiffs were required to prove: (1) a selection and arrangement of <u>numerous</u> elements in LGO combined together in a coherent fashion; (2) that

LGO's combination of unprotected elements was "<u>new</u>" or "<u>novel</u>;" and (3) that the combination of elements in LGO is <u>identical</u> or <u>virtually identical</u> to the combination of elements in TOL.  *See Skidmore*, 952 F.3d 1051, 1074, 1075 & 1076 n.13; *Gray*, 2020 WL 1275221, at *3; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 & 350-51 (1991); *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136 (2d Cir. 2003).  They failed on all counts.

Copyright protection for a combination of unprotectable elements exists "'"<u>only if</u> those elements are <u>numerous</u> enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'"  *Gray*, 2020 WL 1275221, at *3 (emphasis added; quoting *Satava*, 323 F.3d 811).  Thus, "only the '<u>new</u> combination,' that is the '<u>novel</u> arrangement,' and not '<u>any</u> combination of unprotectable elements qualifies for copyright protection.'"  *Skidmore*, 952 F.3d at 1075 (quoting *Universal Pictures Co. v. Harry Lloyd Corp.*, 162 F.2d 354, 363 (9th Cir. 1947), *Satava*, 323 F.3d at 811) (emphasis in original; ellipsis omitted); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998) (affirming dismissal of infringement claim where unprotectable elements were used in prior works); *Threeline Imports, Inc. v. Vernikov*, No. 15-cv–02333 (AMD) (RML), 2016 WL 11472749, at *13 (E.D.N.Y. Oct. 28, 2016); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995); *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018).

In addition to the numerosity and "new" and "novel" requirements, to prove wrongful copying where an infringement claim is based on "the selection, coordination and arrangement of otherwise uncopyrightable elements," the infringement analysis requires showing that the defendant used not only the same unprotectable elements but also "the <u>same</u> selection and arrangement" of those unprotectable elements.  *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) (emphasis added; citations, quotations and brackets omitted);

14

*see also id.* ("copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is 'thin'").

## II.        DEFENDANTS SHOULD BE GRANTED JUDGMENT AS A MATTER OF LAW

Plaintiffs failed to prove that certain alleged melodies in TOL infringe certain melodies in LGO.   And Defendants, through the testimony and evidence of Ed Sheeran and Dr. Ferrara, conclusively proved that not only were the "melodies" claimed by Dr. Stewart not melodies (but only pitch sequences) but whatever label one attached to them, they were distinctly different. Plaintiffs also failed to prove that the specific combination of LGO's unprotectable chord progression, unprotectable harmonic rhythm and now the supposed melodies instead of the key signature has been infringed by the combination of TOL's unprotectable – and different – chord progression, harmonic rhythm and different melodies.   As summarized immediately below and addressed in more detail in Section II.A and II.B, with respect to both paths, Plaintiffs failed to satisfy their burden of proof to establish a *prima facie* claim of infringement and Defendants' evidence conclusively proved the exact opposite.

### "Melodies" on a Stand-alone Basis

Plaintiffs claimed that certain melodies in TOL allegedly infringe certain supposed "melodies" in LGO.   But recognizing that the melodies as reflected in the Deposit Copy are distinctly different from the melodies in TOL, Plaintiffs' expert instead plucked pitches from different places in the two songs, altered pitches in TOL and tried to compare this altered series of pitches alone as supposedly reflecting melodies.   As the Ninth Circuit recognized in *Gray*, "[w]hile an eight-note *melody* may be copyrightable, the abstract eight-note *pitch sequence* that is a component of the melody is not."   28 F. 4th at 100 (emphasis in original; footnote & citations omitted).   Pitches are like letters of the alphabet.   They are not words.   They are not sentences.

15

Just as letters of the alphabet are not copyrightable, so too are pitches not copyrightable.

Moreover, even setting aside that Dr. Stewart failed to compare the actual melodies in each work and that he manipulated pitch sequences to feign nonexistent similarities, the as-manipulated pitch sequences are not remotely similar, as Dr. Ferrara and Sheeran testified and as is obvious to anyone upon listening to them.  To the extent that Plaintiffs are still claiming the mislabeled "melodies" on a stand-alone basis, Plaintiffs failed to establish a *prima facie* infringement claim with respect to the "melodies" and Defendants proved that they were not remotely similar, let alone substantially similar.  No jury, properly instructed, could find any similarity, let alone substantial similarity, in the "melodies."

### Selection and Arrangement Of Unprotectable Elements

Plaintiffs also attempted to prove a selection and arrangement infringement claim regarding LGO's combination of an unprotectable chord progression, unprotectable harmonic rhythm and now substituting "melodies" for key signature.  However, Plaintiffs failed to establish a *prima facie* case of infringement for even a single element of the three required elements for their selection and arrangement claim and Defendants established that Plaintiffs have not come close to satisfying the requirements for such a claim.

With respect to the first requirement, the trial evidence Plaintiffs presented on their direct case established that their selection and arrangement includes, at most, only three elements, which fails to satisfy the numerosity requirement as a matter of law.  With respect to the second requirement, because this Court's August 18, 2020 Order specifically barred Dr. Stewart from "characteriz[ing] Let's Get It On or a constituent element of it … as being 'unique,' 'distinctive,' 'unusual' or the like" (ECF 138 at 1-2), Plaintiffs failed to present – and could not permissibly present – any evidence that their selection and arrangement was "new" and "novel."  Indeed, Dr.

Stewart admitted that with respect to the chord progression and anticipation, it was not "new and novel." Further, Dr. Ferrara's testimony and prior art evidence made it abundantly clear that the combination was not "new and novel" to LGO but was in fact found in numerous songs that were created both before and after LGO.

And adding in Dr. Stewart's belated "melodies" to the chord progression and anticipation does not help Plaintiffs because not only are the "melodies" only uncopyrightable pitch sequences – and therefore cannot be considered an element for a "selection and arrangement" claim – but even if they could be considered, they are completely different. Therefore, with respect to the third requirement, the trial evidence establishes that the selection and arrangement of elements in TOL is not identical or virtually identical to the selection and arrangement of elements in LGO; on the contrary, they are distinctly and indisputably different. Despite Dr. Stewart's false pretense that the chord progression in the first 24 seconds of TOL is other than what actually appears on the recording, in the sheet music and consistently played by Ed Sheeran (as he testified), Plaintiffs do not and cannot dispute that  the chord progression was not identical or virtually identical. Adding in the distinctly different pitch sequences (or "melodies"), even Dr. Stewart was forced to admit that they are different, meaning they too are not identical or virtually identical.

Setting aside that Plaintiffs failed to establish their *prima facie* case and addressed in more detail in Section II.C, Defendants also established that they independently created TOL, and, thus, no legally sufficient evidentiary basis existed to conclude that Defendants copied from LGO.

Ultimately, based on the evidence at trial, a reasonable jury does not have a legally sufficient basis to render a verdict for Plaintiffs, and Defendants should be granted judgment as a matter of law.

**A.      No Reasonable, Properly Instructed Jury Could Find That The Melodies At Issue In TOL Infringe The Melodies At Issue In LGO**

Dr. Stewart mislabeled three "melodies" in LGO that he claimed were supposedly "copied" by TOL: (1) the opening vocal melody of LGO and the opening vocal melody of TOL ("Melody A"), (2) the vocal melody at the end of verse 4 of LGO and the vocal melody at the beginning of the chorus in TOL ("Melody B"), and (3) the vocal melody at the beginning of verse 2 in LGO and the vocal melody at the interlude and the second verse of TOL ("Melody C").

First of all, as Dr. Stewart's slides showed, these were not melodies to begin with but only pitch sequences.  Second, cross examination of Dr. Stewart established that these so-called melodies are objectively and overwhelmingly different – the similarity being feigned by altering the pitches from TOL.  These snippets of pitches referenced by Dr. Stewart are divorced from any rhythmic organization and, hence, are not actual melodies but uncopyrightable pitch sequences (moreover, the pitch sequences appear in different parts of the two songs).

Further, Dr. Stewart conceded on cross-examination that he did not compare the rhythmic organization of the pitch sequences he placed at issue – and, thus, did not analyze actual melodies in contradiction of his definition of melody in a different case.  That, alone, is sufficient to demonstrate that no melodic similarities exist, and that the pitch sequence "similarities" Dr. Stewart identified in fact reflect the differences between the two songs.  They are not identical nor virtually identical.    Dr. Ferrara, however, did analyze the pitches in conjunction with their rhythmic duration and metric placement – *i.e.*, he analyzed actual melodies – and he concluded that, in Melodies A, B and C, there was not one single note that had the same pitch, rhythmic duration and metric placement in the two songs.  Not surprisingly, as Ed Sheeran's testimony showed, that is why the supposed "melodies" do not sound anything alike.

Moreover, even as to the pitch sequences, which are not copyrightable to begin with, the

trial evidence established that the pitch sequences are not remotely similar, much less substantially similar and are most certainly not identical or virtually identical.  With respect to the pitches of the melodies at issue, (1) for Melody A, only 3 pitches out of the respective 14-pitch (LGO) and 11-pitch (TOL) melodies line up in the same order, (2) for Melody B, only 4 pitches out of the respective 11-pitch (LGO) and 10-pitch (TOL) melodies line up in the same order, and (3) for Melody C, only 5 pitches out of the respective 15-pitch (LGO) and 13-pitch (TOL) melodies line up in the same order.  The similarities between the pitches, which again are not copyrightable to begin with, are fragmentary, minimal and insignificant at best.

Indeed, Dr. Ferrara conclusively demonstrated that the actual melodies, not merely the pitch sequences, are dissimilar, as he played the melodies at issue on his keyboard.  Listening to his audio demonstration could lead a reasonable jury to but one conclusion: that no probative or actionable similarities exist between the melodies at issue.

Accordingly, Plaintiffs failed to present evidence from which a properly instructed jury could conclude that any melodies in TOL infringe any melodies in LGO.  *See, e.g.*, *Pierce v. City of New York*, 805 F. App'x 70, 72 (2d Cir. 2020); *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122-24 (2d Cir. 1998); *see also Home Design Servs, Inc. v. Turner Heritage Homes, Inc*., 101 F. Supp. 3d 1201, 1215 (N.D. Fla. 2015), *aff'd*, 825 F.3d 1314 (11th Cir. 2016) (granting judgment as a matter of law in infringement action because "no jury following the Court's instructions on the law could reasonably find the … designs substantially similar … ").

**B.    No Reasonable, Properly Instructed Jury Could Find**
**An Infringement Of The Selection And Arrangement At Issue**

**1.    Plaintiffs Failed To Satisfy Their Burden Of Establishing**
**That The Selection And Arrangement Is Sufficiently Numerous**

In their Proposed Findings of Fact, Plaintiffs advanced a selection and arrangement claim based on LGO's combination of three unprotectable elements: (1) the chord progression; (2) the

harmonic rhythm and (3) the key signature. While Dr. Stewart abandoned the key signature at trial and adopted instead the supposed "melodies," as a matter of law, the combination of three elements (and certainly not two) <u>cannot</u> satisfy the numerosity requirement and, thus, Plaintiffs failed to satisfy the first requirement for a selection and arrangement claim.

On the subject of numerosity, the Court's holding in *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022), is instructive. There, the Court held that the "combination of two unprotectable elements is not sufficiently numerous … to constitute [an] original work entitled to copyright protection." *Id.*

That holding, as affirmed by the Ninth Circuit, is consistent with the overwhelming weight of authority, which makes clear that there must be <u>at least</u> four or five distinct elements combined together in a coherent, purposeful fashion to satisfy the numerosity requirement. *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (combination of five elements qualified for protection); *Smith v. Weeknd*, No. 19-cv-2507 (PA), 2020 WL 4932074, at *7 (C.D. Cal. July 22, 2020), *aff'd sub nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) (combination of three elements did not qualify for protection); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1139 (D. Or. 2012) (combination of four elements qualified for protection). In fact, even four or five elements may not satisfy the numerosity requirement; that is just the bare minimum. *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018) (combination of five elements did not qualify for protection); *Cottrill v. Spears*, No. 02-cv-3646 (BMS), 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004) (combination of four elements did not qualify for protection).

The Ninth Circuit's determination in *Beyond Blond* is further consistent with the dictionary

definition of "numerous," which has been defined to mean "great in number, many," "very many, being or existing in great quantity" and "consisting of great numbers of units or individuals." *Merriam-Webster* identifies "few" as an antonym for "numerous" and correspondingly defines "few" to mean "a small number of units or individuals." *See* www.merriam-webster.com/dictionary/numerous#synonyms and www.merriam-webster.com/dictionary/few, last accessed November 3, 2022.  Two or even three elements are not "great in number" but instead are "few," the opposite of numerous.

Moreover, two of the unprotectable elements at issue are essentially one element, which is the admittedly unremarkable manner in which the commonplace chord progression is performed, a form of syncopation (*i.e.*, anticipation) established by the trial evidence to have been in use for hundreds of years.  And as noted above, if the "melodies" are included, they are not melodies but pitches only and they are different and the Copyright Office has held that pitches, like letters of the alphabet, are not copyrightable.

These two or three commonplace musical building blocks simply cannot satisfy the numerosity requirement.  No one can or should be able to claim the exclusive right to a chord progression and the unremarkable and unprotectable rhythm at which it is performed.  The numerosity requirement provides that important limit on converting what is unprotectable into something protectable and removing it from the available building blocks for use by future composers.  Plaintiffs failed to present legally sufficient evidence to satisfy this requirement, and Defendants should be granted judgment as a matter of law.

>    **2.**    **Plaintiffs Failed To Satisfy Their Burden Of Establishing That The Selection And Arrangement Was "New" Or "Novel" To LGO**

As noted above, a selection and arrangement claim also requires that the combination of numerous unprotectable elements be arranged in a new and novel fashion, *i.e.*, that no prior song

combined these two or three elements together in the same manner.

On Plaintiffs' direct case, they provided zero evidence – because they had none – that the combination of the chord progression and harmonic rhythm was "new" and "novel" to LGO (and, in fact, it was not, as Dr. Stewart admitted that it preexisted LGO in at least several different songs). Not only did he admit that the chord progression and anticipation pre-existed LGO, because this Court's August 18, 2020 Order barred Dr. Stewart from "characteriz[ing] Let's Get It On or a constituent element of it … as being 'unique,' 'distinctive,' 'unusual' or the like" (ECF 138 at 1-2), Plaintiffs could not offer any evidence to satisfy their burden of proving that the combination of unprotectable elements in LGO was unique, new, novel, distinctive or the like.  And of course, for the same reason, even assuming the pitch sequences were something more than the equivalent of the letters of the alphabet, Dr. Stewart provided zero evidence, none, that these pitch sequences had not been used in prior songs.

Defendants' evidence, however, further established that the combination of the chord progression and harmonic rhythm at issue was not new or novel to LGO.  Specifically, Dr. Ferrara identified four songs that pre-date TOL – three of which also pre-date LGO – that use the same exact combination at issue in LGO: (1) "You Lost The Sweetest Boy" (1963) by Mary Wells, (2) "Since I Lost My Baby" (1966) by Ray French, (3) "Georgy Girl" (1967) by 101 Strings Orchestra,[7] and (4) "I've Got Love On My Mind" (1977) by Nat King Cole.  Dr. Ferrara additionally identified two songs – one of which also pre-dates LGO – that use the same exact combination at issue in TOL:  (1) "Do You Love Me" (1962) by the Contours, and (2) "Six Pack Summer" (2000) by Phil Vassar.  Further, three of those songs – two of which pre-date LGO –

---

[7] The 1967 version of "Georgy Girl" by The Seekers also includes the same combination of chords and harmonic rhythm.

also include the limited "melodic" similarities at issue in the case.[8]

As such, even if Plaintiffs could satisfy the numerosity requirement and the identical or virtually identical requirement, Defendants still should be granted judgment as a matter of law because Plaintiffs did not and could not satisfy their burden of proving that the selection and arrangement of unprotectable elements in LGO was "new" and "novel." And Defendants in fact conclusively proved the exact opposite.

Based on this uncontroverted, incontrovertible evidence, no legally sufficient basis exists on which a properly instructed jury could find the combination at issue new and novel to LGO because there is no evidence in the record that it is new and novel.

### 3. Plaintiffs Failed To Satisfy Their Burden Of Establishing That TOL Uses The "Same" Or "Virtually Identical" Selection And Arrangement

Plaintiffs also failed to prove that TOL used "the same selection and arrangement" of elements as LGO. *Odegard*, 398 F. Supp. 2d at 279 (emphasis added; citations, quotations and brackets omitted); *see also Gray*, 2020 WL 1275221, at *4 (holding that, for a selection and arrangement claim, "the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work in order to be substantially similar") (emphasis added; quoting *Skidmore*, 952 F.3d at 1076 n.13).

Having jettisoned the key signature as an element of Plaintiffs' selection and arrangement claim, Dr. Stewart admitted that the two commonplace, unprotectable elements – the chord progression and the harmonic rhythm – are also not expressed in the same or virtually identical

---

[8] The trial evidence also established another prior work – "Better Than Me" – authored by TOL co-author Amy Wadge (who contributed the chord progression at issue in TOL) that includes a I-I[6]-IV-V chord progression that anticipates chord changes on the second, third, and fourth chords. Thus, the only salient difference between "Better Than Me" and TOL is that TOL anticipates the second and fourth but not the third chord change.

manner and by adding the distinctly different and uncopyrightable pitch sequences (even if they were melodies, which they are not), Dr. Stewart has only succeeded in conclusively defeating Plaintiffs' selection and arrangement claim because the pitch sequences/melodies are not remotely identical or virtually identical.  On the contrary, they are very different.

Dr. Stewart and Dr. Ferrara both testified that LGO utilizes a I-iii-IV-V chord progression, which never appears in TOL.  Rather, segments of TOL utilize a I-I/3-IV-V chord progression. The second chord in LGO (a iii chord) is a minor chord, whereas the second chord in TOL (a I/3 chord) is a major chord; the distinction between a minor chord and a major chord is harmonically significant.  Dr. Ferrara testified – and Dr. Stewart also admitted – that TOL has multiple other chord progressions which nowhere appear in LGO.

As for the harmonic rhythm, the anticipation of chord changes – a rhythmic technique that no one can own – is also objectively different in each work.  The trial evidence established that LGO uses a four-bar chord progression with two chords in bar 1, the continuation of the second chord in bar 1 into bar 2, two chords in bar 3, and the continuation of the second chord in bar 3 into bar 4.  In contrast, TOL uses a two-bar chord progression, with two chords in bar 1 and two chords in bar 2.  In addition, whereas the second chord in LGO is on beat 4 and anticipates beat 1 of measure 2, the second chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 1.  Similarly, whereas the fourth chord in LGO is on beat 4 and anticipates beat 1 of measure 4, the fourth chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 2.  Further, the trial evidence established that the manner in which this technique is expressed is different in each composition.  Anticipation in LGO occurs before beat 1 while anticipation in TOL occurs before beat 3.  Additionally, each anticipated chord in LGO has a duration of one quarter note, while each anticipated chord in TOL has the duration of an eighth note.  Thus, to find

24

identity between the harmonic rhythms, one would need to disregard the objective differences cited above and also cut in half the value of the notes and chords in LGO.

Because the chord progression and harmonic rhythm in LGO are each plainly different from those elements in TOL (and because the "melodies" are different), there is no legally sufficient evidentiary basis on which a properly instructed jury could conclude that TOL copies the "combination" of elements in LGO in an identical or virtually identical manner. *See, e.g., Odegard*, 398 F. Supp. 2d at 279; *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996); *Sweet Gisele, Inc. v. True Rock CEO, LLC*, No. 17-cv-5170 (FB) (RML), 2018 WL 4863650, at *8-9 (E.D.N.Y. Sept. 4, 2018), *report and recommendation adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018); *Gray*, 2020 WL 1275221; *Skidmore*, 952 at 1076 n.13.

### C.    No Reasonable, Properly Instructed Jury Could Find That Defendants Did Not Independently Create TOL

As noted above, Plaintiffs must establish that Defendants actually copied from LGO in authoring TOL to prevail upon their infringement claim. *See Peter F. Gaito*, 602 F.3d at 63; *accord Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir. 1991) (Because "actual copying" is an element of an infringement claim, "if the proof establishes that one work was arrived at independently, without copying the other, there is [] no infringement") (citation omitted).  In this regard, the law is clear: even if two works are identical, if the authors of the second work independently created their own work and did not actually copy from the first, there can be no infringement. *Dimmie v. Carey*, 88 F. Supp. 2d 142, 150 (S.D.N.Y. 2000) (granting judgment to defendants based on evidence that allegedly copied work was independently created); *Cox v. Abrams*, No. 93-cv-6899 (RJW), 1997 WL 251532, at *7-8 (S.D.N.Y. May 14, 1997) (same); *Novak v. Nat'l Broad. Co.*, 752 F. Supp. 164, 170-71 (S.D.N.Y. 1990) (same).

Here, Defendants presented uncontradicted affirmative evidence of TOL's independent

creation. Both Sheeran and Wadge testified that, in February 2014, they together wrote TOL at Sheeran's house in Suffolk County, England without copying from LGO. A day or two later, Sheeran recorded what would become the commercially released version of TOL at Jake Gosling's studio. Sheeran and Wadge (and the producer Gosling) all testified that LGO played no role whatsoever – and was not in any way on their minds – during the creation and recording of TOL. This affirmative evidence, which was not rebutted or impeached by Plaintiffs, unequivocally established that Defendants independently created TOL.

Moreover, the trial evidence established that both the I-iii-IV-V chord progression and the rhythmic technique of anticipating the second and fourth chord changes of a four-chord progression are ubiquitous in popular music. Indeed, Dr. Ferrara identified 80 songs that pre-date TOL – 33 songs that also pre-date LGO – that utilize the chord progression at issue in LGO. Dr. Ferrara additionally identified 21 songs that pre-date TOL – four songs that also pre-date LGO – that utilize the chord progression at issue in TOL. Dr. Ferrara further identified five songs that pre-date TOL – two songs that also pre-date LGO – which, like LGO and TOL, feature four-chord progressions that anticipate the second and fourth chords. The trial evidence further established that Ed Sheeran has used syncopation or anticipation in at least 20 songs that he authored before TOL. The exceedingly commonplace nature of those elements reinforces independent creation and that the alleged similarities arose not by copying but by virtue of the commonality of the musical elements at issue in this case and their free availability to all songwriters. *See, e.g.*, *Velez v. Sony Discos*, No. 05-cv-0615 (PKC), 2007 WL 120686, at *10 (S.D.N.Y. Jan. 16, 2007) (use of popular musical device in allegedly infringing song "is so commonplace that it is not unlikely to arise [in] independently created works"); *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976) ("Evidence of similar musical phrases appearing in prior works …

demonstrates that the musical language was of such ordinary and common occurrence that the probability of independent, coincidental production was great."); *Procter & Gamble Co. v. Colgate-Palmolive Co.*, 199 F.3d 74, 78 (2d Cir. 1999) (holding that allegedly copied work was independently created because any similarities were the product of "basic conventions"); *Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 522 (S.D.N.Y. 2005) (allegedly copied similarity was commonplace such "that coincidence could [not] reasonably be ruled out"); *Siskind v. Newton-John*, No. 84-cv-2634 (TPG), 1987 WL 11701, at *5 (S.D.N.Y. May 22, 1987) (no infringement where "[t]he lyrics in both choruses are a series of commonplace phrases," because that "is consistent with independent creation rather than copying").

## **CONCLUSION**

It is respectfully submitted that the Court should grant Defendants judgment as a matter of law under Rule 50(a).

Dated: New York, New York
        May 3, 2023

PRYOR CASHMAN LLP

By: _____

     Donald S. Zakarin
     Ilene S. Farkas
     Andrew M. Goldsmith
     Brian M. Maida
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Edward Christopher Sheeran, Atlantic Recording Corporation and Sony Music Publishing (US) LLC*

27